**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

SOUTHERN DISTRICT OF FLORIDA

Case number *(if known)* _____

Chapter you are filing under:

☐ Chapter 7

■ Chapter 11

☐ Chapter 12

☐ Chapter 13

☐ Check if this an amended filing

# Official Form 101

# Voluntary Petition for Individuals Filing for Bankruptcy          **12/15**

**The bankruptcy forms use you and Debtor 1 to refer to a debtor filing alone. A married couple may file a bankruptcy case together—called a *joint case*—and in joint cases, these forms use you to ask for information from both debtors. For example, if a form asks, "Do you own a car," the answer would be yes if either debtor owns a car. When information is needed about the spouses separately, the form uses *Debtor 1* and *Debtor 2* to distinguish between them. In joint cases, one of the spouses must report information as *Debtor 1* and the other as *Debtor 2*. The same person must be *Debtor 1* in all of the forms.**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

| Part 1: | Identify Yourself |
| --- | --- |

|  |  | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
| --- | --- | --- | --- |
| 1. | **Your full name** | **Liza** | |
| | Write the name that is on your government-issued picture identification (for example, your driver's license or passport). | First name | First name |
| | | Middle name | Middle name |
| | Bring your picture identification to your meeting with the trustee. | **Hazan** | |
| | | Last name and Suffix (Sr., Jr., II, III) | Last name and Suffix (Sr., Jr., II, III) |
| 2. | **All other names you have used in the last 8 years** | **Elizabeth Hazan** | |
| | Include your married or maiden names. | | |
| 3. | **Only the last 4 digits of your Social Security number or federal Individual Taxpayer Identification number (ITIN)** | **xxx-xx-7473** | |

Debtor 1   **Liza Hazan**                                                    Case number *(if known)* _____

| | About Debtor 1: | About Debtor 2 (Spouse Only in a Joint Case): |
|---|---|---|
| **4. Any business names and Employer Identification Numbers (EIN) you have used in the last 8 years**<br><br>Include trade names and *doing business as* names | ■ I have not used any business name or EINs.<br><br>_____<br>Business name(s)<br><br>_____<br>EINs | ☐ I have not used any business name or EINs.<br><br>_____<br>Business name(s)<br><br>_____<br>EINs |
| **5. Where you live** | **6913 Valencia Drive**<br>**Miami Beach, FL 33109**<br>Number, Street, City, State & ZIP Code<br><br>**Miami-Dade**<br>County<br><br>**If your mailing address is different from the one above, fill it in here.** Note that the court will send any notices to you at this mailing address.<br><br>_____<br>Number, P.O. Box, Street, City, State & ZIP Code | **If Debtor 2 lives at a different address:**<br><br>_____<br>Number, Street, City, State & ZIP Code<br><br>_____<br>County<br><br>**If Debtor 2's mailing address is different from yours, fill it in here.** Note that the court will send any notices to this mailing address.<br><br>_____<br>Number, P.O. Box, Street, City, State & ZIP Code |
| **6. Why you are choosing *this district* to file for bankruptcy** | *Check one:*<br><br>■ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.)<br><br>_____ | *Check one:*<br><br>☐ Over the last 180 days before filing this petition, I have lived in this district longer than in any other district.<br><br>☐ I have another reason.<br>Explain. (See 28 U.S.C. § 1408.)<br><br>_____ |

Debtor 1    **Liza Hazan**        Case number *(if known)* _____

| Part 2: | **Tell the Court About Your Bankruptcy Case** |
|---|---|

**7.** **The chapter of the Bankruptcy Code you are choosing to file under**

*Check one.* (For a brief description of each, see *Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)).* Also, go to the top of page 1 and check the appropriate box.

☐ Chapter 7
■ Chapter 11
☐ Chapter 12
☐ Chapter 13

**8.** **How you will pay the fee**

■ **I will pay the entire fee when I file my petition.** Please check with the clerk's office in your local court for more details about how you may pay. Typically, if you are paying the fee yourself, you may pay with cash, cashier's check, or money order. If your attorney is submitting your payment on your behalf, your attorney may pay with a credit card or check with a pre-printed address.

☐ **I need to pay the fee in installments.** If you choose this option, sign and attach the *Application for Individuals to Pay The Filing Fee in Installments* (Official Form 103A).

☐ **I request that my fee be waived** (You may request this option only if you are filing for Chapter 7. By law, a judge may, but is not required to, waive your fee, and may do so only if your income is less than 150% of the official poverty line that applies to your family size and you are unable to pay the fee in installments). If you choose this option, you must fill out the *Application to Have the Chapter 7 Filing Fee Waived* (Official Form 103B) and file it with your petition.

**9.** **Have you filed for bankruptcy within the last 8 years?**

■ No.
☐ Yes.

| District | _____ | When | _____ | Case number | _____ |
|---|---|---|---|---|---|
| District | _____ | When | _____ | Case number | _____ |
| District | _____ | When | _____ | Case number | _____ |

**10.** **Are any bankruptcy cases pending or being filed by a spouse who is not filing this case with you, or by a business partner, or by an affiliate?**

■ No
☐ Yes.

| Debtor | _____ | | Relationship to you | _____ |
|---|---|---|---|---|
| District | _____ | When _____ | Case number, if known | _____ |
| Debtor | _____ | | Relationship to you | _____ |
| District | _____ | When _____ | Case number, if known | _____ |

**11.** **Do you rent your residence?**

■ No.    Go to line 12.
☐ Yes.    Has your landlord obtained an eviction judgment against you and do you want to stay in your residence?

     ☐   No. Go to line 12.

     ☐   Yes. Fill out *Initial Statement About an Eviction Judgment Against You* (Form 101A) and file it with this bankruptcy petition.

Debtor 1   **Liza Hazan**

Case number *(if known)*

---

**Part 3:**   **Report About Any Businesses You Own as a Sole Proprietor**

**12. Are you a sole proprietor of any full- or part-time business?**

A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC.

If you have more than one sole proprietorship, use a separate sheet and attach it to this petition.

■ No.   Go to Part 4.

☐ Yes.   Name and location of business

_____
Name of business, if any

_____

_____
Number, Street, City, State & ZIP Code

*Check the appropriate box to describe your business:*

☐   Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐   Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐   Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐   Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐   None of the above

---

**13. Are you filing under Chapter 11 of the Bankruptcy Code and are you a *small business debtor*?**

For a definition of *small business debtor*, see 11 U.S.C. § 101(51D).

*If you are filing under Chapter 11, the court must know whether you are a small business debtor so that it can set appropriate deadlines.* If you indicate that you are a small business debtor, you must attach your most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. 1116(1)(B).

☐ No.   I am not filing under Chapter 11.

■ No.   I am filing under Chapter 11, but I am NOT a small business debtor according to the definition in the Bankruptcy Code.

☐ Yes.   I am filing under Chapter 11 and I am a small business debtor according to the definition in the Bankruptcy Code.

---

**Part 4:**   **Report if You Own or Have Any Hazardous Property or Any Property That Needs Immediate Attention**

**14. Do you own or have any property that poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety? Or do you own any property that needs immediate attention?**

*For example, do you own perishable goods, or livestock that must be fed, or a building that needs urgent repairs?*

■ No.

☐ Yes.   What is the hazard?   _____

If immediate attention is needed, why is it needed?   _____

Where is the property?   _____

_____
Number, Street, City, State & Zip Code

---

Debtor 1    **Liza Hazan**                                          Case number *(if known)*

**Part 5:** | **Explain Your Efforts to Receive a Briefing About Credit Counseling**

| | **About Debtor 1:** | **About Debtor 2 (Spouse Only in a Joint Case):** |
|---|---|---|

**15. Tell the court whether you have received a briefing about credit counseling.**

The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices.  If you cannot do so, you are not eligible to file.

If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

**About Debtor 1:**

*You must check one:*

■ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy. If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

**About Debtor 2 (Spouse Only in a Joint Case):**

*You must check one:*

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, and I received a certificate of completion.**

Attach a copy of the certificate and the payment plan, if any, that you developed with the agency.

☐ **I received a briefing from an approved credit counseling agency within the 180 days before I filed this bankruptcy petition, but I do not have a certificate of completion.**

Within 14 days after you file this bankruptcy petition, you MUST file a copy of the certificate and payment plan, if any.

☐ **I certify that I asked for credit counseling services from an approved agency, but was unable to obtain those services during the 7 days after I made my request, and exigent circumstances merit a 30-day temporary waiver of the requirement.**

To ask for a 30-day temporary waiver of the requirement, attach a separate sheet explaining what efforts you made to obtain the briefing, why you were unable to obtain it before you filed for bankruptcy, and what exigent circumstances required you to file this case.

Your case may be dismissed if the court is dissatisfied with your reasons for not receiving a briefing before you filed for bankruptcy.

If the court is satisfied with your reasons, you must still receive a briefing within 30 days after you file. You must file a certificate from the approved agency, along with a copy of the payment plan you developed, if any. If you do not do so, your case may be dismissed.

Any extension of the 30-day deadline is granted only for cause and is limited to a maximum of 15 days.

☐ **I am not required to receive a briefing about credit counseling because of:**

☐ **Incapacity.** I have a mental illness or a mental deficiency that makes me incapable of realizing or making rational decisions about finances.

☐ **Disability.** My physical disability causes me to be unable to participate in a briefing in person, by phone, or through the internet, even after I reasonably tried to do so.

☐ **Active duty.** I am currently on active military duty in a military combat zone.

If you believe you are not required to receive a briefing about credit counseling, you must file a motion for waiver of credit counseling with the court.

Debtor 1 __Liza Hazan__                                          Case number *(if known)* _____

| Part 6: | Answer These Questions for Reporting Purposes |
|---|---|

**16.** What kind of debts do you have?

**16a.** **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

☐ No. Go to line 16b.

■ Yes. Go to line 17.

**16b.** **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.

☐ No. Go to line 16c.

☐ Yes. Go to line 17.

**16c.** State the type of debts you owe that are not consumer debts or business debts

_____

**17.** Are you filing under Chapter 7?

■ No. I am not filing under Chapter 7. Go to line 18.

Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available for distribution to unsecured creditors?

☐ Yes. I am filing under Chapter 7. Do you estimate that after any exempt property is excluded and administrative expenses are paid that funds will be available to distribute to unsecured creditors?

☐ No

☐ Yes

**18.** How many Creditors do you estimate that you owe?

■ 1-49
☐ 50-99
☐ 100-199
☐ 200-999

☐ 1,000-5,000
☐ 5001-10,000
☐ 10,001-25,000

☐ 25,001-50,000
☐ 50,001-100,000
☐ More than100,000

**19.** How much do you estimate your assets to be worth?

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

☐ $1,000,001 - $10 million
■ $10,000,001 - $50  million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**20.** How much do you estimate your liabilities to be?

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million

■ $1,000,001 - $10 million
☐ $10,000,001 - $50  million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million

☐ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

| Part 7: | Sign Below |
|---|---|

**For you**

I have examined this petition, and I declare under penalty of perjury that the information provided is true and correct.

If I have chosen to file under Chapter 7, I am aware that I may proceed, if eligible, under Chapter 7, 11,12, or 13 of title 11, United States Code. I understand the relief available under each chapter, and I choose to proceed under Chapter 7.

If no attorney represents me and I did not pay or agree to pay someone who is not an attorney to help me fill out this document, I have obtained and read the notice required by 11 U.S.C. § 342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I understand making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**/s/ Liza Hazan**

__Liza Hazan__                                        _____
Signature of Debtor 1                                Signature of Debtor 2

Executed on   __January 11, 2016__                   Executed on  _____
              MM / DD / YYYY                                       MM / DD / YYYY

Debtor 1    **Liza Hazan** _____

Case number *(if known)* _____

---

**For your attorney, if you are represented by one**

**If you are not represented by an attorney, you do not need to file this page.**

I, the attorney for the debtor(s) named in this petition, declare that I have informed the debtor(s) about eligibility to proceed under Chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each chapter for which the person is eligible. I also certify that I have delivered to the debtor(s) the notice required by 11 U.S.C. § 342(b) and, in a case in which § 707(b)(4)(D) applies, certify that I have no knowledge after an inquiry that the information in the schedules filed with the petition is incorrect.

**/s/ Geoffrey S. Aaronson** _____
Signature of Attorney for Debtor

Date    **January 11, 2016** _____
     MM / DD / YYYY

**Geoffrey S. Aaronson**
Printed name

**Aaronson Schantz Beiley P.A.**
Firm name

**100 SE 2nd Street, Floor 27**
**Miami, FL 33131**
Number, Street, City, State & ZIP Code

Contact phone    **786-594-3000** _____

Email address _____

**349623**
Bar number & State

---

**Fill in this information to identify your case:**

Debtor 1        Liza Hazan
                First Name          Middle Name          Last Name

Debtor 2
(Spouse if, filing)    First Name          Middle Name          Last Name

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF FLORIDA

Case number
(if known)    _____

☐ Check if this is an
   amended filing

## B 104

# For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims Against You and Are Not Insiders

**If you are an individual filing for bankruptcy under Chapter 11, you must fill out this form. If you are filing under Chapter 7, Chapter 12, or Chapter 13, do not fill out this form. Do not include claims by anyone who is an insider. Insiders include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20 percent or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Also, do not include claims by secured creditors unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.**

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information.**

**Part 1:    List the 20 Unsecured Claims in Order from Largest to Smallest.  Do Not Include Claims by Insiders.**

|  |  | Unsecured claim |
|---|---|---|

**1**  900 North Michigan, LLC
       c/o W. Allen Woolley, Esq.
       Wildman Harrold Allens Dixon,
       LLP
       225 West Wacker Drive, Suite
       3000
       Chicago, IL 60606

What is the nature of the claim?    **Judgment**          $ **$500,000.00**

As of the date you file, the claim is: Check all that apply
☐  Contingent
☐  Unliquidated
■  Disputed
☐  None of the above apply

Does the creditor have a lien on your property?
■  No
☐  Yes. Total claim (secured and unsecured)      $ _____
           Value of security:             - $ _____
           Unsecured claim             $ _____

_____
Contact

_____
Contact phone

**2**  Allied Collection Service
       1607 Central Ave
       Columbus, IN 47201

What is the nature of the claim?    **Hotel Bill**          $ **$312.00**

As of the date you file, the claim is: Check all that apply
■  Contingent
■  Unliquidated
■  Disputed
☐  None of the above apply

Does the creditor have a lien on your property?
■  No
☐  Yes. Total claim (secured and unsecured)      $ _____
           Value of security:             - $ _____

_____
Contact

B104 (Official Form 104)            For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims            Page 1

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com            Best Case Bankruptcy

Debtor 1 **Liza Hazan**  Case number *(if known)* _____

Contact phone _____    Unsecured claim    $ _____

---

| 3 | | What is the nature of the claim? | **Telephone Bill** | $ **$3,910.00** |

**ATT Mobility**
PO Box 536216
Atlanta, GA 30353

As of the date you file, the claim is: Check all that apply
■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
■ No
☐ Yes. Total claim (secured and unsecured)    $ _____
Value of security:    - $ _____
Unsecured claim    $ _____

Contact _____
Contact phone _____

---

| 4 | | What is the nature of the claim? | **Car Loan** | $ **$20,792.15** |

**Car Southeast Financial, LLC**
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431

As of the date you file, the claim is: Check all that apply
■ Contingent
■ Unliquidated
☐ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
■ No
☐ Yes. Total claim (secured and unsecured)    $ _____
Value of security:    - $ _____
Unsecured claim    $ _____

Contact _____
Contact phone _____

---

| 5 | | What is the nature of the claim? | **Legal Fees** | $ **$11,023.83** |

**Cross Simon**
PO Box 1380
Wilmington, DE 19899-1380

As of the date you file, the claim is: Check all that apply
■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

Does the creditor have a lien on your property?
■ No
☐ Yes. Total claim (secured and unsecured)    $ _____
Value of security:    - $ _____
Unsecured claim    $ _____

Contact _____
Contact phone _____

---

| 6 | | What is the nature of the claim? | **Cable Bill** | $ **$461.00** |

**Direct TV**
PO Box 6550
Englewood, CO 80155-6550

As of the date you file, the claim is: Check all that apply
■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

---

B 104 (Official Form 104)    For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims    Page 2

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1  __Liza Hazan_____   Case number *(if known)* _____

_____

**Does the creditor have a lien on your property?**

■ No

☐ Yes. Total claim (secured and unsecured)    $ _____
Contact

Value of security:    - $ _____

Contact phone    Unsecured claim    $ _____

---

**7**  **Enhanced Recovery Company**    What is the nature of the claim?    __Telephone Bill__    $ **$123.00**
8014 Bayberry Rd
Jacksonville, FL 32256    **As of the date you file, the claim is:** Check all that apply

■ Contingent

■ Unliquidated

■ Disputed

☐ None of the above apply

_____

**Does the creditor have a lien on your property?**

■ No

☐ Yes. Total claim (secured and unsecured)    $ _____
Contact

Value of security:    - $ _____

Contact phone    Unsecured claim    $ _____

---

**8**  **First National Collection Bureau, Inc.**    What is the nature of the claim?    __Bank Fees__    $ **$246.08**
610 Waltham Way
Sparks, NV 89434    **As of the date you file, the claim is:** Check all that apply

■ Contingent

■ Unliquidated

■ Disputed

☐ None of the above apply

_____

**Does the creditor have a lien on your property?**

■ No

☐ Yes. Total claim (secured and unsecured)    $ _____
Contact

Value of security:    - $ _____

Contact phone    Unsecured claim    $ _____

---

**9**    What is the nature of the claim?    __Homeowner's Association Fees__    $ **$0.00**
**Fisher Island Community Association**
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319    **As of the date you file, the claim is:** Check all that apply

■ Contingent

■ Unliquidated

■ Disputed

☐ None of the above apply

_____

**Does the creditor have a lien on your property?**

■ No

☐ Yes. Total claim (secured and unsecured)    $ _____
Contact

Value of security:    - $ _____

Contact phone    Unsecured claim    $ _____

---

**10**    What is the nature of the claim?    __Cable Bill__    $ **$332.00**

B 104 (Official Form 104)    For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims    Page 3

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com    Best Case Bankruptcy

Debtor 1    Liza Hazan                            Case number *(if known)* _____

---

**Focus Management**
**10284 NW 47th St**
**Fort Lauderdale, FL 33351**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ☐ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
    - Value of security:    - $ _____
    - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**11**

**Halsted Management Company**
**c/o David A. Tane, Esq.**
**Tane Waterman & Wurtzel, PC**
**120 Broadway, Suite 948**
**New York, NY 10271**

What is the nature of the claim?    **Condominium Association Fees**    $ **$0.00**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
    - Value of security:    - $ _____
    - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**12**

**Internal Revenue Service**
**P.O. Box 7317**
**Philadelphia, PA 19101**

What is the nature of the claim?    **Federal Income Taxes**    $ **$0.00**

As of the date you file, the claim is: Check all that apply
- ■ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No
- ☐ Yes. Total claim (secured and unsecured)    $ _____
    - Value of security:    - $ _____
    - Unsecured claim    $ _____

Contact _____

Contact phone _____

---

**13**

**Marzec Law Firm**
**225 Broadway, Suite 3000**
**New York, NY 10007**

What is the nature of the claim?    **Legal Fees**    $ **$0.00**

As of the date you file, the claim is: Check all that apply
- ☐ Contingent
- ■ Unliquidated
- ■ Disputed
- ☐ None of the above apply

Does the creditor have a lien on your property?
- ■ No

---

B 104 (Official Form 104)      For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims      Page 4

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com      Best Case Bankruptcy

Debtor 1 __Liza Hazan__                                    Case number *(if known)* _____

Contact _____

Contact phone _____

☐ Yes. Total claim (secured and unsecured)   $ _____
　　　　Value of security:              - $ _____
　　　　Unsecured claim                 $ _____

---

| 14 | | |
|---|---|---|

**Mercedes Benz Financial Services**
**PO Box 685**
**Roanoke, TX 76262**

**What is the nature of the claim?** _____   $ **$0.00**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No

Contact _____

☐ Yes. Total claim (secured and unsecured)   $ _____
　　　　Value of security:              - $ _____
　　　　Unsecured claim                 $ _____

Contact phone _____

---

| 15 | | |
|---|---|---|

**Mount Sinai Medical Center**
**PO Box 403429**
**Miami Beach, FL 33140**

**What is the nature of the claim?**   __Medical Bill__   $ **$31,414.15**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No

Contact _____

☐ Yes. Total claim (secured and unsecured)   $ _____
　　　　Value of security:              - $ _____
　　　　Unsecured claim                 $ _____

Contact phone _____

---

| 16 | | |
|---|---|---|

**Newman Ferrara, LLP**
**1250 Broadway, 27th Floor**
**New York, NY 10001**

**What is the nature of the claim?**   __Legal Fees__   $ **$24,654.22**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No

Contact _____

☐ Yes. Total claim (secured and unsecured)   $ _____
　　　　Value of security:              - $ _____
　　　　Unsecured claim                 $ _____

Contact phone _____

---

| 17 | | |
|---|---|---|

**Ray Garcia P.A.**
**14850 SW 26th Street, Suite 204**
**Miami, FL 33185**

**What is the nature of the claim?**   __Legal Bills__   $ **$1,000.00**

**As of the date you file, the claim is:** Check all that apply

■ Contingent

B 104 (Official Form 104)          For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims          Page 5

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

Debtor 1   **Liza Hazan**  _____   Case number *(if known)* _____

■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No

_____

Contact

_____

Contact phone

| | | |
|---|---|---|
| ☐ Yes. Total claim (secured and unsecured) | $ | _____ |
| Value of security: | - $ | _____ |
| Unsecured claim | $ | _____ |

---

**18**

**Sterling Emergency Serv. of Miami Beach**
**PO Box 975213**
**Dallas, TX 75397-5213**

What is the nature of the claim?   **Medical Bills**   $ **4,442.40**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
☐ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)   $ _____
       Value of security:   - $ _____
       Unsecured claim   $ _____

_____

Contact

_____

Contact phone

---

**19**

**Valencia Estates**
**c/o Jonathan Scott Goldstein, Esq.**
**Haber Slade**
**201 S. Biscayne Boulevard, Suite 1205**
**Miami, FL 33131**

What is the nature of the claim?   **Homeowner's Association Fees**   $ **100,000.00**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
☐ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)   $ _____
       Value of security:   - $ _____
       Unsecured claim   $ _____

_____

Contact

_____

Contact phone

---

**20**

**Verizon**
**PO Box 1100**
**Albany, NY 12250-0001**

What is the nature of the claim?   **Telephone Bill**   $ **1,758.00**

**As of the date you file, the claim is:** Check all that apply

■ Contingent
■ Unliquidated
■ Disputed
☐ None of the above apply

**Does the creditor have a lien on your property?**

■ No
☐ Yes. Total claim (secured and unsecured)   $ _____
       Value of security:   - $ _____

_____

Contact

B 104 (Official Form 104)   For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims   Page 6

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com   Best Case Bankruptcy

| Debtor 1 | **Liza Hazan** | Case number *(if known)* | |
|---|---|---|---|
| | Contact phone | Unsecured claim | $ |

---

Part 2:  **Sign Below**

**Under penalty of perjury, I declare that the information provided in this form is true and correct.**

X   **/s/ Liza Hazan** _____          X _____
  **Liza Hazan**                                      Signature of Debtor 2
  Signature of Debtor 1


Date   **January 11, 2016** _____          Date _____

B 104 (Official Form 104)          For Individual Chapter 11 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims          Page 7

Software Copyright (c) 1996-2015 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

900 North Michigan, LLC
c/o W. Allen Woolley, Esq.
Wildman Harrold Allens Dixon, LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606

Allied Collection Service
1607 Central Ave
Columbus, IN 47201

ATT Mobility
PO Box 536216
Atlanta, GA 30353

Car Southeast Financial, LLC
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431

Chase Bank, NA
c/o Jennifer Kopf, Esq.
Shapiro, Fishman & Gashe, LLP
2424 N. Federal Highway, Suite 360
Boca Raton, FL 33431

Cross Simon
PO Box 1380
Wilmington, DE 19899-1380

Direct TV
PO Box 6550
Englewood, CO 80155-6550

Enhanced Recovery Company
8014 Bayberry Rd
Jacksonville, FL 32256

First National Collection Bureau, Inc.
610 Waltham Way
Sparks, NV 89434

Fisher Island Community Association
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319

Focus Management
10284 NW 47th St
Fort Lauderdale, FL 33351


Halsted Management Company
c/o David A. Tane, Esq.
Tane Waterman & Wurtzel, PC
120 Broadway, Suite 948
New York, NY 10271


Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101


Jacobs Keeley, PLLC
c/o Bruce Jacobs, Esq.
169 East Flagler Street, Suite 1620
Miami, FL 33131


Mark D. Cohen, PA
c/o Mark D. Cohen, Esq.
4000 Hollywood Boulevard, Suite 435
Hollywood, FL 33021


Marzec Law Firm
225 Broadway, Suite 3000
New York, NY 10007


Mercedes Benz Financial Services
PO Box 685
Roanoke, TX 76262


Mount Sinai Medical Center
PO Box 403429
Miami Beach, FL 33140


Newman Ferrara, LLP
1250 Broadway, 27th Floor
New York, NY 10001


NLG, LLC
c/o Juan Ramirez, Esq.
Diaz, Reus, & Targ LLP
100 SE 2nd Street, Suite 3400
Miami, FL 33131

```
Presidential Auto Leasing & Sales
3201 South Federal Highway
Delray Beach, FL 33483


Ray Garcia P.A.
14850 SW 26th Street, Suite 204
Miami, FL 33185


Real Time Solutions
1349 Empire Central Drive
Suite 150
Dallas, TX 75247


Robert P. Lithman P.A.
c/o Robert P. Lithman, Esq.
18001 Old Cutler Road, Suite 600
Miami, FL 33157


Scott Paul Mackoff, Esq.
Mitofsky, Shapiro, Neville & Hazen LLP
152 Madison Avenue, 3rd Floor
New York, NY 10016


Select Portfolio Servicing, Inc.
ATTN: Bankruptcy Department
PO Box 66250
Salt Lake City, UT 84165


Simon & Sigalos
c/o Michael Simon, Esq.
3839 NW Boca Raton Boulevard, Suite 100
Boca Raton, FL 33431


Sterling Emergency Serv. of Miami Beach
PO Box 975213
Dallas, TX 75397-5213


Tracy Peterson, Esq.
Braverman Greenspun, PC
110 East 42nd Street, 17th Floor
New York, NY 10017
```

```
US Bank
c/o Lawrence Lambert, Esq.
Frankel Lambert LLP
53 Gibson Street
Bay Shore, NY 11706


Valencia Estates
c/o Jonathan Scott Goldstein, Esq.
Haber Slade
201 S. Biscayne Boulevard, Suite 1205
Miami, FL 33131


Verizon
PO Box 1100
Albany, NY 12250-0001
```

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI-DADE DIVISION**
**www.flsb.uscourts.gov**

In re:

                                     CASE NO.:  16-10389-AJC

LIZA HAZAN,
     Debtor.                            CHAPTER 11
_____/

**FIFTH AMENDED DISCLOSURE STATEMENT**

*Table of Contents*

I.      **INTRODUCTION**                                          **page 2**
     A.     **Purpose of This Document**
     B.     **Deadlines for Voting and Objecting;**
              **Date of Plan Confirmation Hearing**
     C.     **Disclaimer**
II.     **BACKGROUND**                                      **page 4**
     A.     **Description and History of the Debtor's Business**
     B.     **Insiders of the Debtor**
     C.     **Management of the Debtor Before and During the Bankruptcy**
     D.     **Events Leading to Chapter 11 Filing**
     E.     **Significant Events During the Bankruptcy Case**
     F.     **Projected Recovery of Avoidable Transfers**
     G.     **Claims Objections**
     H.     **Current and Historical Financial Conditions**
III.    **SUMMARY OF THE PLAN OF REORGANIZATION**             **page 13**
     **AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**
     A.     **What is the Purpose of the Plan of Reorganization?**
     B.     **Unclassified Claims**
           1.     *Administrative Expenses*
           2.     *Priority Tax Claims*
     C.     **Classes of Claims and Equity Interests**
           1.     *Classes of Secured Claims*
           2.     *Classes of Priority Unsecured Claims*
           3.     *Class[es] of General Unsecured Claims*
           4.     *Class[es] of Equity Interest Holders*
     D.     **Means of Implementing the Plan**
     E.     **Risk Factors**
     F.     **Executory Contracts and Unexpired Leases**
     G.     **Tax Consequences of Plan**
IV.    **CONFIRMATION REQUIREMENTS AND PROCEDURES**    **page 27**
     A.     **Who May Vote or Object**

B.     **Votes Necessary to Confirm the Plan**
     1.     *Votes Necessary for a Class to Accept the Plan*
     2.     *Treatment of Nonaccepting Classes*
C.     **Liquidation Analysis**
D.     **Feasibility**
     1.     *Ability to Initially Fund Plan*
     2.     *Ability to Make Future Plan Payments*
            *And Operate Without Further Reorganization*

V.     **EFFECT OF CONFIRMATION OF PLAN**     **page 31**
     A.     **Discharge Of Debtor**
     B.     **Modification of Plan**
     C.     **Final Decree**

**EXHIBITS**
**Exhibit A** Historical Earnings and Assets
**Exhibit B** Liquidation Analysis
**Exhibit C** Cash on hand on the effective date of the Plan
**Exhibit D** Projections of Cash Flow and Earnings for Post-Confirmation Period
**Exhibit E** Ballot

## INTRODUCTION

This is the fifthamended disclosure statement (the "Disclosure Statement") in the Chapter 11 case of Liza Hazan (the "Debtor"). This Disclosure Statement contains information about the Debtor and describes theFourthAmended Plan of Reorganization (the "Plan") filed by the Debtor on November 15, 2017. A full copy of the Plan is filed herewith. ***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at dividend of 41% to 100% of total allowed claims accrued for up to sixty months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid by 7/11/18.

A.     **Purpose of This Document**

This Disclosure Statement describes:

     The Debtor and significant events during the bankruptcy case,
     How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*,what you will receive on your claim or equity interest if the plan isconfirmed),
     Who can vote on or object to the Plan,
     What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
     Why the Proponent believes the Plan is feasible, and how the treatment

of your claim or equity interest under the Plan compares to what you wouldreceive on your claim or equity interest in liquidation, and
The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes thePlan, but it is the Plan itself that will, if confirmed, establish your rights.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan described in this Disclosure Statement. This sectiondescribes the procedures pursuant to which the Plan will or will not be confirmed.

1.      *Time and Place of the Hearing to [Finally Approve This Disclosure Statement and] Confirm the Plan*

2.      *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot andreturn the ballot inthe enclosed envelope to Clerk Bankruptcy Court U.S. Courthouse C. ClydeAtkins United States Courthouse301 North Miami Avenue, Room 150 Miami, FL 33128. Seesection IV.A. below for a discussion of votingeligibility requirements.

Your ballot must be received by the date indicated in the order of the court or it will not be counted.

3.      *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Courtand served pursuant to orders served herewith.

4.      *Identity of Person to Contact for More Information*

If you want additional information about the Plan, you should contact:

David W. Langley
Counsel for Debtor
8551 W. Sunrise Blvd., Suite 303
Plantation, FL 33322
954-356-0450
dave@flalawyer.com

**C.      Disclaimer**

***The Court must approve this Disclosure Statement as containing adequate information toenable parties affected by the Plan to make an informed judgment about its terms. TheCourt***

3

*has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

## II.   BACKGROUND

### A.   Description and History of the Debtor's Business

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has historically earned in excess of $350,000 per year. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele. The Debtor has several projects under contract that will provide sufficient income to confirm and fund her plan. The Debtor presently has closed contracts that will earn her significant funds (comparable to past earnings) in the next six months.

Debtor works with other major hospitality brands, restaurants, lounges and nightclubs that will earn her millions of dollars of income in the near future.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") scheduled at $12,000,000.00.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in the Fisher Island Property would support a refinancing, which could also be used to support funding a plan if necessary.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings Group, L.D.C. which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. Real Estate Holdings Group, L.D.C. has committed to contribute funds from the proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan.

### B.   Insiders of the Debtor

Debtor is an individual and constitutes Debtor's insiders as defined in §101(31) of the United States Bankruptcy Code (the "Code"). For the past two years there has been no salaries paid except professional earnings.

### C.   Management of the Debtor Before and During the Bankruptcy

During the two years prior to the date on which the bankruptcy petition was filed, the officers, directors, managers or other persons in control of the Debtor (collectively the "Managers") were the Debtor.

The Managers of the Debtor during the Debtor's Chapter 11 case have been: The Debtor.

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the

Debtor, or successor of the Debtorunder the Plan (collectively the õPost Confirmation Managersö), will be: The Debtor.

### D.   Events Leading to Chapter 11 Filing

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization, which will resolve all disputes without needlessly jeopardizing the Debtorøs equity in her various assets.

In 2007 Debtor purchased the property located at 6913 Valencia Drive, Fisher Island, Florida (the õPropertyö) now scheduled at $12 million for $5.1 million from NLG, LLC (õNLGö) through its then claimed principal Chris Kosachuk. The Debtor has been involved in litigation with NLG and Kosachuk since that time as more fully described below.

### Chase Bank

In March 7, 2007 Debtor signed a first promissory note and mortgage with Washington MutualBank in the amount of $3,825,000. JP Morgan Chase Bank claims to now own the Washington Mutual Bank promissory note and mortgage signed by Debtor in March 7, 2007.

Chase filed a foreclosure action in August 2013, which remains pending as case 2013-CA-025902. Chase did not file an assignment of mortgage to itself until 5/26/16. The maturity date of the Loan is August 2051.

### NLG

### NLG FL litigation

NLGøs self-titled manager Chris Kosachukprovideda gift of equity or an õequity contributionö $1,275,000 stating that Debtor does not have to pay back the amount of $1,275,00on the closing statement andalso had Debtor execute a note and second mortgage on the Fisher Island property forthat same amount from Debtor after Closing.

NLG sued within four months of the closing in 2007, and has pursued Debtor to this date in an attempt to wrongfully obtain Debtorøs property. Litigation between the parties hasoccurred in four states, multiplecourts and has continued for over a decade, and continued in this court, costing Debtor millions in legal fees, adversely affectingher health and her career, and putting her in the financial position of having to seek relief in a Chapter 11reorganization.

Chris Kosachuk asserted that he was the manager and representative of NLG.Kosachuk has testified that he transferred NLGin 2007to Luxcom, a Russian company. In 2012 Chris Kosachuktestified that NLG is now owned by Meridian Trust Company located in BVI but he could not recall to whom he reported. In 2014 Chris Kosachuktestified in deposition that NLG is now owned by Meridian Trust Company located in Nevis and the owner of Meridian Trust Company is Ernie Dover.From prior to the purchase date, more than a decade ago, to today, the

parties have had multiple disputes and have engaged in litigation in multiple courts in Florida, New York, Pennsylvania and Delaware. Final orders have been entered in various courts setting forth the rights of these parties. But the litigation nevertheless has continued, and was now in this Court.

NLG obtained a judgment on the promissory note signed by Debtor on April 28, 2008. ("The Scola Judgment").NLG also sued Debtor for foreclosure in 2011. In 2014, Judge Peter Lopez assigned NLG's judgment against Debtor, the Scola Judgment along with all NLG's rights, claims and benefits against Debtor to Selective Advisors Group, LLC. ("Selective")  and also ordered Selective to provide a partial credit in theamount of $2,746,953.34 which amount includes principal and interest through August 31, 2014(representing the full amount of the Scola judgment) at the 11% interest per annum. Selective did so.

NLG appeared in this case but failed to timely file a proof of claim. NLG is merely a notice party. NLG is not a secured creditor in this case. Selective is listed in Debtor's schedule as her secured creditor. On May 13, 2016 NLG moved for stay relief in this court (D.E. 66) but said relief was denied (D.E. 176) on August 23, 2016.  Selective Advisors Group, LLC, an affiliate of Debtor's husband, owns NLG's claim through execution on a judgment against NLG. On August 23, 2016 the bankruptcy court entered its decision denying NLG's motion for relief from the automatic stay. ECF 176.
In June 12, 2017 NLG moved again for Relief for Stay D.E. 475. Said Motion was denied on June 28, 2017. D.E. 500.

### NLG NY Litigation

NLG domesticated the judgment obtained against debtor on April 28, 2008 ("the Scola Judgment") in New York in 2014.New York Supreme Court Judge Barbara Jaffee,having recognized the Miami-Dade Judge Peter Lopez Order of Assignment of the NLG's Judgment ("The Scola Judgment") against the Debtor to Selective Advisors Group, LLC ("Selective") and having accepted the Selective's Satisfaction of NLG's Judgment against the Debtor Ordered on November 5, 2014:

"That the caption of the case, *NLG, LLC vs Elizabeth Hazan,* be changed to substitute Selective Advisors Group, LLC as Plaintiff in place of NLG and that the New York County Clerk is directed to accept for filing the Florida Court Order of assignment, judicially assigning the underlying Florida judgment from plaintiff to Selective; it is further

ORDERED, that the County Clerk is directed to reflect on the docket of this case that the Florida judgment between plaintiff against defendant, domesticated here, has been satisfied; it is further

ORDERED, that the County Clerk is directed to accept for filing the satisfaction of Judgment or other appropriate satisfaction piece; and it is further

ORDERED, that the County Clerk is directed to remove and strike any judgments of record in this action under Index No. 108020/08."

NLG also filed a lawsuit in New York alleging Debtor fraudulently transferred the New York condo (described below). On November 2014, Hon. Judge Barbara Jaffee dismissed bothactions filed by NLG.

### Spencer Condominium

Debtor bought a condominium in New York City on Fifth Avenue and 62nd Street on December 2005 in the Spencer Condominium, Unit 1A of 1 East 62nd Street, New York, New York 10065 (öThe New York Condominiumö).

**Debtor transferred this New York Condominium in August, 2011. The Board of Managers alleges that the transfer was madewithout the consent of Spencer Condominium. The Board of Managers has agreed to the approval of this Disclosure Statement. The Internal Revenue Service has filed a Proof of Claim in this case. The statute of limitations for the IRS to contest the transfer has not yet run, but IRS has taken no such position and has not appeared in the case other than the filing of a Proof of Claim. The New York Condominium had no equity at the time of the transfer.**

Debtorøs husband controls the corporation, Real Estate Holdings Group LDC which now owns the condominium. The Spencer Condominium Board of Managers has been involved with The Debtor and REHG in litigation since 2008 resulting in a confidentialsettlement agreement executed in March 2015. Spencer Condominium disputes that the Settlement Agreement is enforceable at this time, but in March 2017 Judge Singh of the New York Supreme Court has ordered the parties to comply with the Settlement Agreement; The settlement includes a resolution of the following lawsuits:

*Board of Managers of Spencer Condominium v. Elizabeth Hazen, et al;*
     No. 111644/09.
*Real Estate Holding Group, LDC v. Board of Managers of Spencer Condominium et al*;
     No. 154149/2012
*Real Estate Holdings Group, vs. Spencer Condominium*
     No. 159254/2013

All three cases have been dismissed and settled and REHG is presently hiring a real estate broker to list the condominium unit for sale to satisfy thealleged mortgages (alleged creditors of this Debtor) as well as toresolve the assessments allegedly due the Board of Managers.The unit will be listed for sale.

On July 21, 2016 Debtor filed the following motions: Motion for Relief from Stay Spencer Condominium, (D.E. 115), Motion to Seal or for in Camera Review (D.E. 116) and Motion for Abstention (D.E. 117). All three Debtorøs Motions have been withdrawn without prejudice. On February 24, 2017 Debtor filed three new motions in this case: A Motion to Seal, D.E. 387, A Motion for Abstention D.E. 388, A Motion for Relief from Stay D.E. 389 and An Amended Motion for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 390.Debtor also filed an objection to SpenceroøsProof of Claim. On March 1, 2017,This Court granted the agreed Order granting Debtorøs Amended Motion for Order for Stay relief Spencer Condominium litigation and request for expedited Hearing, D.E. 392. The Court ruled as follows: öThe Debtorøs Motion is granted. The automatic Stay is lifted solely for the purpose of permitting the New York Supreme Court to exercise jurisdiction over the litigation

between the Debtor and Spencer Condominium and related parties and thestipulation for settlement therein. The 14 day Stay period pursuant to Bankruptcy Rule 4001(a)(3) is waived. No property of theestate will be affected by this Orderö.

In the case of *Real Estate Holdings Group, vs. Spencer Condominium* No. 159254/2013in July 27, 2016, Real Estate Holdings Group, L.D.C. (õREHGö) Owner of The New York Condominium filed an Order to Show Cause to enforce the confidential Stipulation of settlement executed by thepartiesin March 2015. In March 2, 2017, Honorable Judge Singh granted Plaintiff REHGøs Motion to enforce the Confidential Settlement with Spencer Condominium as the stay has been vacated and ordered the parties to comply with the terms of the settlement within 30 days of the Order. The matter was adjourned to April 25, 2017 (2:30pm) to monitor compliance.

On April 25, 2017 Honorable New York Supreme Judge Singh granted the Plaintiff REHGøs Motion to enforce the terms of the settlement agreement dated 3/2015 and ruled as follows: õAfter a conference held today the Court finds that all parties are in compliance with the terms of stipulation dated 3/2015.ö

In the case of *Board of Managers of Spencer Condominium v. Elizabeth Hazan* No. 109083/2008 Spencer has obtained an award in the amount of $109,554.86.This awardwas never converted to a judgmententered or recorded in any court. However the parties have agreed that this amount of alleged money owed by the Debtor to Spencer prior to her transfer of ownership of the New York condo in 2011 over six years ago shall be paid by REHG and not by the Debtor in theplan. Spencer has no standing to object to the Debtorøs plan or object to her confirmationandis bound by theirconfidential Stipulation of Settlement executed on March2015 and enforced by New York Judge Singh in April 25, 2017.

### Reorganization

The Debtor intends to reorganize her debts and liabilities through a combination of: (a) negotiating and/or litigating as may be necessary, resolutions with certain secured and unsecured creditors; and (b) making distributions funded by her assets and income from her consulting work, or if necessary, refinancing and contributions from her husbandøs companies.

To date, the Debtorøs efforts have focused on negotiating resolutions with several creditors, litigatingwith two other creditors, conferring with counsel to begin formulating the structure and terms of a proposedPlan, and expanding her consulting income for the eventual benefit of her estate and creditors.

E.    **Significant Events During the Bankruptcy Case**

\*    Date of Order for Relief under Chapter 11 on 1/11/16.

\*    Meeting of Creditors Chapter 11 held on 2/17/16 at 2PM.

\*    Deadline for complaint re dischargeability was 4/18/16.

* Professionals approved by the court
  Geoffrey Aaronson appointed 5/3/16 DE 85 nunc pro tunc to petition date.
  Joel Arestywas substituted as counsel for Debtor in Possession on 7/29/2016 (D.E. 126).
  David W. Langley entered an appearance as counsel for the Debtor on 9/6/2016 and was approved by the Court on October 19, 2016.

* Contested claim disallowance proceedings: pending; see claim treatments.

* Claims bar, proofs of claim due 5/17/16; For a governmental unit: 7/11/16

* Debtor hasmanaged her affairs to enhance the value of her assets. Post petition, the bankruptcy filing, has allowed Debtor toreorganize allowing Debtor to propose a plan for payment of creditors.

*

## ADVERSARY PROCEEDINGS *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* Adv. Case No. 16-1439-AJC

On August 21, 2016 Selective filed an Adv. Case No. 16-1439-AJC D.E.1. On 10/21/2016 Debtor moved to amend the Complaint to add Debtor, Liza Hazan as Plaintiff. On October 20, 2016. D.E.8. NLG filed their answer and their counterclaims. D.E5 and D.E 6.

On 11/08/16 Plaintiffs Selective and Hazan filed their motions to dismiss Count I and Count II of NLGøs counterclaims and Motion for Judgment on the pleading D.E. 11 and D.E. 12. On December 6, 2016 Plaintiffs Selective and Hazan filed their Motion for leave to file Amended Complaint against NLG to add a count under Florida Statute § 65.08and Florida Statute § 65.011for quieting title and a count for damages. D.E. 32. On December 19, 2016 This Court ordered the parties to submit Orders on Plaintiffsø motions to dismiss NLGøs counterclaims and Plaintiffsø motions for Judgment on the Pleadings. In December 23, 2016 Debtor Hazan amended her Complaint to add additional Counts D.E. 40. In 12/30/2016 This Court entered an Order granting Plaintiffs Motion to amend and allowing Second Amended Complaint. On January 3, 2017 Plaintiffs filed their Second Motion to Amend Complaint to add additional Tort claims, D.E 47 and D.E 48, adding additional torts.

On 01/13/17 NLGøs counsel, Michael Friedman, filed his expedited Motion to Withdraw as attorney of record for NLG citing irreconcilable differences D.E 54. In 01/23/17 thisCourt granted Michael Friedmanøs Motion to Withdraw, D.E 61, andalso granted Plaintiffs Selective and Hazanøs Second Motion to amend Complaint. D.E 62.

On 02/22/17 NLGøs third counsel filed his notice of appearance - James Miller, D.E.75. On 03/01/17 NLGøs third counsel filed his expedited motion to withdraw citing once again irreconcilable differences and also filed his motion to allow NLG to extend time to meet the Courtøs deadlines. D.E. 76. On 03/03/2017 Plaintiffs Selective and Hazan filed their Motion for Default against NLG for failing to answer Plaintiffsø Third Amended Complaint. D.E. 85.On 03/10/17 this court denied NLGøs motion to extend time. D.E. 94.

On 03/17/17 this Court granted in part Plaintifføs Motion for Default against Defendant NLG and denied Plaintiffsømotion for judgment on pleadings as moot because of the subsequent

filings and amendments. This Court granted a Default in favor of Plaintiffs and against Defendant NLG and ruled as follows:

> The Court also finds that the withdrawal and retention of multiple counsel by theDefendant does not constitute "cause" or "excusable neglect" warrantingan extension of time to comply with filing requirements. The Court set deadlines in this case for the filing of pleadings, specifically the filing of aresponsivepleading to the second amended complaint; but the Defendant did not meet those deadlines and has failed to demonstrate sufficient cause existsto extend those deadlines. Accordingly, the Court believes the Plaintiff is entitled to a default" "D.E 100.

NLG moved to vacate the default in March 24, 2017 (D.E. 104). The Court denied the Motion on April 20, 2017 (D.E. 112).

Former counsel for NLG (its fourth) filed an Expedited Motion to Withdraw on May 4, 2017.  This follows an expedited Motion to Withdraw filed by prior counsel, James Miller, in March 1, 2017 which followed an Expedited Motion to Withdraw filed by the Genovese firm on January 12, 2017. NLG's initial counsel moved to withdraw in the main case on September 12, 2016.

The default against NLG, LLC was set aside in May 8, 2017 D.E 132 and the Court entered an order setting the matter for trial in July 13, 2017. The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 14, 2017.

In November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows:

"The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective. Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective,the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to

be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

   LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor hasgood title to said Property against the claims or purported claims by, through, under, oragainst it by NLG, LLC and the title to the property is forever quieted as to all claims ofNLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG'soutstanding debt to Selective pursuant to the Quebec Judgment.

3. NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.

4. Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.ö


**Valencia Estates Homeowners' Association**

The Debtor has entered into a Stipulation for Settlement with Valencia Estates Homeowners' Association, Inc.  The Debtor has agreed to approval of the stipulation by this Court and the Association has agreed to support the Debtor's reorganization.

F.     **Projected Recovery of Avoidable Transfers**

The Debtor has completed her investigation with regard to prepetition transactions.

11 USC 547(b) preferences limits the look back for an insider preference to one year. Florida statute726.106(2) likewise has a one year limitation.

11 USC 548 fraudulent transfers has a two year look back, and incorporates Florida Statute 726 whichhas a four year look back, but only as to avoidance for intentional hinder delay or fraud, or lack of reasonableequivalent value, which facts are not relevant to the plan in this case.

**The Internal Revenue Service has filed a Proof of Claim in this case.  The statute of limitations for the IRS to contest a transfer is ten years and has not yet run.  IRS has not challenged any transfers in this case and has not appeared in the case other than to file of a Proof of Claim. Debtor transferred the New York Condominium more than six years ago, in August, 2011.The Debtor contends that the New York Condominium had no equity at the time of the transfer.**

G.     **Claims Objections**

The Debtor has not completed claim objections but the current plan reflects the objectionscontemplated.

H.     **Current and Historical Financial Conditions**

The identity and fair market value of the estate's assets are listed in an Exhibit A and B to thisstatement. Debtor is the source of this information and Debtor's experience with her assets is the basis of valuation.

Debtor's income based on consulting is not a regular monthly income which wouldlend itself to making monthly payments. Debtor's income, while significant, is sporadic, as a result of which payments are proposed on quarterly or bi-yearly basis.

I. Taxes

Debtor has tax liabilities as evidenced by priority claim in plan Class 1.

III.   **SUMMARY OF THE PLAN OF REORGANIZATION AND TREATMENT OF CLAIMS AND EQUITYINTERESTS**

A.     **What is the Purpose of the Plan of Reorganization?**

12

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired. If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B.      **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class:

1.      *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under §507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

2.      *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by §507(a)(8) of the Code. Unless the holder of such a §507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

See class 1 below

C.      **Classes of Claims and Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

*Classes of Priority Unsecured Claims*

Certain priority claims that are referred to in §§507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The following chart lists all classes containing claims under §§507(a)(1), (4), (5), (6), and (a)(7) of the Code and their proposed treatment under the Plan:

13

*Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will [be classified as a general unsecured claim].

The following chart lists all classes containing Debtor's secured prepetition claims and their proposed treatment under the Plan:

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code.

The following chart identifies the Plan's proposed treatment of Class contains general unsecured claims against the Debtor:

*Class[es] of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. With respect to an individual who is a debtor, the Debtor is the equity interest holder.

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim.<br><br>SETTLED |
| | Joel Aresty | Attorney Joel Aresty has agreed to accept $35,000.00 in fees and $1,500.00 in costs payable as follows: $3000 within 5 days of entry of Order Approving Settlement followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. Stipulation |

|  |  | amended between the parties on November 1, 2017. Monthly payments in the amount of $1000 starting on November 1, 2017 Remaining Balance owed $28,000.<br><br>SETTLED |
|  | David W. Langley | Paid as awarded or agreed. |
|  | US Trustee | paid in full at confirmation |

## Priority Claims

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | **IRS**<br><br>**Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Equal Payments of $2,674.34 every six months to include interest on anyunpaid claim amounts after theeffective date of the plan at 3%. |

## Secured Claims

### 6913 Valencia Drive Property Fisher Island Florida

| 2 | **Chase Bank** | yes | **First Secured Mortgage –**<br>The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim.   Chase was scheduled as |

|  |  |  |  |  | disputed, contingent and unliquidated. |
|--|--|--|--|--|--|
|  |  |  |  |  | The Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 in favor of Washington Mutual Bank. Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, ownership of the loan and standing issues.  If the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final. |
|  |  |  |  |  | Pending adjudication of Chase's alleged interest in the loan and the subject property Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan.  See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996). |
|  |  |  |  |  | **Chase has agreed to withdraw all objection to this Disclosure Statement and the Debtor has agreed that any objections to confirmation are preserved.** |

| | | | | |
|---|---|---|---|---|
| | | yes | | Selective Advisors Group, LLC (õSelectiveö) is the rightful assignee of the satisfied second mortgage previously held by NLG (õNLGö). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG gainstThe Debtor in the amount of $1,618,068.00 plus interest at 11% per annum (õthe Scola Judgmentö) from April 28, 2008,<br><br>Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August 20, 2014 and August 21, 2014.per the Final Order of Assignment of Hon. Judge Peter Lopez entered on August 20, 2014. |
| 3 | **Selective Advisors Group, LLC** | | yes | On August 21, 2016, Selective sued NLGin this bankruptcy Court**ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** for avoidance of NLGøs alleged claimed lien on Debtorøs Homestead property on Valencia Drive Fisher Island Florida. On January3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend theirComplaint to add a count seeking to Quiet Title to the property, and a number oftort claims,which motion was granted on January 23, 2016.<br><br>The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 14, 2017. |

| | | | | | In November 1, 2017 Honorable Judge AJ Cristolissued Final Judgment on Counts I, II and III of Plaintiffsø Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLGøs Amended Counterclaim as follows:

ðThe Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLGøs right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtorøs Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLGøs judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLGøs debt to Selective under the domesticated Quebec Judgment.

        The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and |

owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no staning in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1.  NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260,

CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272
CFN2007R0410013, NLG, LLCøs foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLCøs foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtorøs homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLGøsoutstanding debt to Selective pursuant to the

| | | | | |
|---|---|---|---|---|
| | | | | Quebec Judgment.<br><br>3.  NLGøs proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.<br><br>4. Counts IV, V, VI, VIII, and IX of Plaintifføs Third Amended Complaint are set for trial by separate order.ö . |
| 4 | **6913 Valencia LLC** | | yes | **Second Secured Mortgage** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of 6913 Valencia LLCøs Mortgage on her Homestead property claim.<br><br>Insider claim will subordinate and not be paid until all other allowed claimsbut reserves right to vote for the plan |
| 5 | **Valencia Estates Community Assn, Inc claim #10** | | yes | **Valencia Estates Community Association's ("Valencia")**Claim#10 in the amount of $195,072.14. Treated in settlement as follows:<br><br>1.  Debtor paid $2,193.17 Aug 17, 2016 for due maintenance.<br><br>2.  Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00as per the Stipulation.<br><br>3.  Debtor has paidthe 2016 special assessment in the amount of |

$6250.00 as per the Stipulation.

4. The Parties agreed that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month.

**Valencia Estates Community Association, Incwithdrew its objections to Debtor's disclosure and has agreed to vote for Debtor's plan**.

### Claim settled.

Agreed Order Approving Stipulation of Settlement of Claim # 10 filed by Valencia Estates Homeownersø Association entered on 11/18/16 D.E 302.

All Valenciaøs post petitions regular assessments and special assessment in 2016 have all been paid and are current.

A Post petition special assessment dated on September 15, 2017 to be paid as follows: $1,041.66 every month in addition to the monthly assessments starting at confirmation date for a period of five years.

In October, 2017, Debtor incurred

| | | | | |
|---|---|---|---|---|
| | | | | substantial damages caused jointly and severally by both Fisher Island Community Association Inc(ôFICAö) and Valencia Estates Community Association Inc(ôVALENCIAö) to her homestead property fence. TheDebtorøs Homestead residence is damaged and the fence needs to be completely removed and replaced. Debtor is planning to bring an action for damages against Fisher Island Community Association Inc and Valencia Estates Community Association Inc jointly and severally. This will offset some or the entirety of Valenciaøs post-petitionspecial assessment in the amount of $62,500.00 assessed on September 15, 2017 and also offset the FICAøs post petitions assessments in the amount of $46,555.48. |
| 6 | **Fisher Island Community Ass'n, Inc Claim #18** | | yes | FICAøs Late filed Proof Of Claim in the amount of $216,278.97 in 10/20/16 ó**Disputed by Debtor and Disallowed by this Court.**<br><br>The Debtor has filed an objection to the amount of the Claim challenging Fisher Islandøs standing as a ôparty in interest.ö In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been deniedin November 16, 2016.<br><br>Claimant 3343 West Commercial |

Blvd. 100 (Fisher Island Community Association).

Order granting Fisher Island Community Association, Inc.øs Motion for relief from Stay entered on 11/23/16

**Claim Disallowed Claim by this Court.No payment through Plan.**

**Debtor plans to reinstate stay and pay thenet amount if any of all FisherIsland Community Association's post petitions feesin the amount of $46,555.48 lessthe damages caused to Debtor by FICAand Valencia (more explained below) after the filing of the petition at confirmation date. Debtor will obtain a discharge for all the prepetition fees.**

In October, 2017, Debtor incurred substantial damages caused jointly and severally by both Fisher Island Community Association Inc (õFICAö) and Valencia Estates Community Association Inc (õVALENCIAö) to her homestead propertyøs fence on Fisher Island. The Debtor Homestead residenceøs fence is substantially damaged and needs to be completely removed and replaced. Debtor is planning to bring an action for damages against FICA and VALENCIA. This will offset some or the entirety of Valenciaøs post petition special assessment in the amount of $62,500 assessed on September 15, 2017 and also offset the FICAøs post petitions assessments in the amount of

| | | | | |
|---|---|---|---|---|
| | | | | $46,555.48.<br><br>FICA has also caused substantial damages to the Debtor by denying access to all Debtor's guests and all business associates for years and has singled out the Debtor for many years. FICA has enjoined the Debtor to enjoy her home and conduct business. FICA has also endangered the Debtor's life by allowing access to the alleged principal of NLG, LLC a former creditor of the debtor, on Fisher Islandwho has caused Debtor harassment, trespassing her home,intimidation and caused Debtor additional damages that will be set for trial at a later date in **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** |
| 7 | **Miami-Dade Water andSewer claim #7** | no | yes | **Claim #7 $1502.54 to be paid on the EffectiveDate of The Plan** |
| 8 | **IRS claim #3** | no | yes | $393,985.17 - Secured claim shall be paidover ten years with interest Equal paymentsin the amount of $22,948.00 every 6 months to include interest on anyunpaid claim amounts after the effectivedate of the plan at 3%. |
| 9 | **Miami-Dade County Tax Collector**<br><br>**Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full.<br><br>**Claim #6  paid in full**. |

**Other Disputed Claims**

| **Class #** | **Description** | **Insider** | **Impairment** | **Treatment** |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 10 | **Real Time Resolutions, Inc claim #8** | no | yes | Claim #8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor.<br><br>Alleged Creditor has agreed to complete stay relief in settlement of this claim in this case and has agreed tosupport Debtor's plan of reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163)<br><br>**Claim settled.** |

| **Class #** | **Description** | **Insider** | **Impairment** | **Treatment** |
|---|---|---|---|---|
| 11 | **Board of Managers Spencer Condominium claim #14** | no | yes | The Debtor disputes the Claim#14 filed by The Board of ManagersSpencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement in March 2015 in New York.TheDebtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance feesowed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065.This amount will be paid by Real Estate Holdings Group, L.D.C. ("REHG"),the owner of the |

| | | | | | New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Debtor Hazan and other parties are bound by the Confidential Stipulation of Settlementexecuted in March 2015 (õSettlementö).The vast remaining portion of the Spencer Condo Boardof Managersø claimis to be paid by the owner of the unit,REHG,per the Settlement executedin March 2015 by the parties.

**On March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowingtheNew York Court toexercise jurisdiction over and enforce the confidential Settlement Agreement.**

**On March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce TheConfidential Stipulation entered in March 2015 between the parties.**

On April 25, 2017 Honorable New York Supreme Judge Singh ordered that the Plaintiff REHGøs Motion to enforce the terms of the settlement agreement dated 3/2015 is granted . õAfter a conference held today the Court finds that all parties |

27

| | | | | are in compliance with the terms of stipulation dated 3/2015.õ<br><br>The Deadline for *Board of Managers of Spencer Condominium* toFile Complaint to determine the Debtorøs Dischargeability of Certain Debt has expired.<br><br>**No payment through the plan. Claim settled.**<br><br>**SETTLEMENT ENFORCED BY NEW YORK COURT** |
|---|---|---|---|---|
| | | | | |

**Convenience Class Undisputed Unsecured Small Claims**

**Paid in full on the Effective Dateat confirmation**

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 12 | IRS Claim #3 | no | | 1085.00 |
| | American InfoSource T Mobile Claim #2 | no | | 1130.00 |
| | American InfoSource Direct TV Claim # 9 | no | | 461.00 |
| | FPL Claim #11 | no | | 2906.93 |
| | Mount Sinai | no | | 3,240.00 |
| | Mount Sinai | no | | 295.91 |
| | HSBC Bank USA NA | no | | 1070.66 |
| | Sterling Emerg Svc | no | | 2445.30 |

| | | | |
|---|---|---|---|
| | Bank of America NA has waived all prepetition fees | no | 0.00 |
| | Wells Fargo Claim #12 | no | 323.24 |
| | Real Time Resolutions (ŏRTRö) Claim #5 Although Debtor settled this claim for $12,000 after misrepresentations made by alleged creditor Real Time Resolutions that it had a valid claim. Debtor,afterfurther investigation has determined that the statute of limitations has run and that Claim #5 is not a valid claim. Real time Resolutions has sued the debtor in case 08-47664 CA 32 in Miami-Dade County Court in October 21, 2008. The case 08-47664 CA 32 was dismissed in for lack of prosecution on January 08, 2010. The Statute of limitations has run. | no | 0.00 |
| | **S&S Collections Simon &Sigalos claim #13 partial paid amount $1740.96** | no | 0.00 |
| | Total | | 12958.04 |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims**

| Class # | Description | Insider? (Yes or No) | Impaired | Treatment |
|---|---|---|---|---|
| <u>13</u> | <u>**JMB Urban 900 Dev. claim #4***</u> | no | X | Claim # 4 in the amount of $664,380.47. Claim # 4 will be paid 41% of the amount or 275,000.00 per settlement before the second anniversary of the entry of the agreed final judgment on or before July 20, 2018 in favor of JMBin case **Adversary proceedings 16-01188-AJC. Adversary proceeding case closed on 7/22/16 and <u>Case settled 16-01188-AJC</u>. DOC 21 Case 16-01188-AJC Order approving  agreed final Judgment in favor of JMB entered on July 20, 2016..** <br><br> <u>**CLAIM SETTLED**</u> |
| | <u>**S&S Collections Simon &Sigalos claim #13**</u> | no | X | Claim # 13 in the amount of$21,242 <u>**Claim settled**</u> for 41% $8,709.22.Amount of $1740.96 moved to convenience class. Amount of $1740.96 paid by third party on July 10, 2017. Remaining balance owed $6,968.04 to be paid same treatment as JMB. <br><br> <u>**CLAIM SETTLED**</u> |

| | | | | |
|---|---|---|---|---|
| | **Southeast Financial LLC** | **no** | **X** | Stipulation Of Settlement DE 98 approved by this Court DE 101. <br><br> Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLCøs Secured Lien is guaranteed by the Debtor. <br><br> Secured claim allowed $17,000 value to be paid at 5.25% for 48 months payments in the amount of $393 began on August 1, 2016 and are current. <br><br> CLAIM SETTLED |
| | | | | |

**Disputed Unsecured Claims**

**not paid until and unless allowed**

**and then paid within 5 years after confirmation**

| | | | | |
|---|---|---|---|---|
| | **Cross & Simon Claim #1** | no | | Claim #1 in the amount of $11,023.83 Legal Bill for corporation other than Debtor. <br><br> **Unallowed claim.** <br><br> **No payment through Plan** |

| | | | | |
|---|---|---|---|---|
| | | | | Claim #15 in the amount of $24,818.44 Legal bill Legal work for Corporation other than the Debtor. |
| | **Newman Ferrara LLP claim #15** | no | | **The Claims bar date has passed. No payment through plan. Unallowed claim.** |

| | | | | |
|---|---|---|---|---|
| | | | | |
| **FuerstIttleman David & Joseph, P.L.** **Claim #16** | **no** | | Disputed Proof of Claim filed after Claim Bar Date. FuerstIttleman David & Joseph, P.L. is not a creditor of this Debtor. Debtor has filed an objection to this claim. FuerstIttlemanDavid & Joseph, P.L. have agreed that they are not a creditor of this estate. **No payment through plan.Unallowed Claim.** |

### Unsecured Scheduled Disputed and No Claim Filed

### Therefore Disallowed

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | Unknown The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371. |

| | |
|---|---|
| | US Bank did not file a proof of claim and will not be paid through the Plan. |
| NLG, LLC | NLG, LLC did not timely file a proof of claim and **NLG, LLC's alleged Claim has been judicially** assigned per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan**. |
| | NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate. |
| | NLG appeared in this case but failed to timely file a proof of claim. NLG, LLC is merely a notice party. NLG, LLC is not a secured creditor in this case. Selective Advisors Group, LLC ("Selective"), is listed in Debtor's schedule as her creditor. |
| | The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 15, 2017. |
| | In November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows: |
| | "The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by |

satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no standing in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II

and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

   LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

   have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt to Selective pursuant to the Quebec Judgment.

| | |
|---|---|
| | 3.  NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor<br><br>Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.<br><br>4.  Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.ö . |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 14 | Equity Individual interest holder | no | retained |

D.    **Means of Implementing the Plan**

1.    *Source of Payments*

Debtor works as a business consultant specializing in identifying locations for high-end restaurants andretailers around the world. She has always earned at least $350,000 per year and in 2014 a personal income of $420,000.

Debtor has executed in the last quarter of 2016 and 2017 contracts that have earned her income comparable to past years, to be paid in installments, and additional payments throughout the construction phase, and the last remaining portion upon opening of the clients for business.

Debtor has contracts to expand a nationwide and worldwide very high end retail operator that has already over 50 existing stores and is planning to open over 100 new locations in the next five years.

Debtor has also exclusive contracts with high end restaurants and is responsible for their expansion nationwide. Debtor is in charge of finding new locations and is also responsible of their construction, architectural plans etc. all the way through their opening of their new locations.

Debtor's husband controls a company called Real Estate Holdings Group, L.D.C. ("REHG") which owns a New York condominium on Fifth Avenue and 62nd street New York Apt 1 A NYC NY 10065 appraised at $4,500,000.00 that has in excess of $2,500,000.00 in equity. The company, REHG, has agreed to refinance and also sell the condominium to fund the plan in order to assure successful reorganization and completion of the plan.

The New York condominium will be on the market listed for sale with New York Real Estate Broker The Corcoran Group.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island,Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics andclothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

The equity in Fisher Island would also support a refinancing, which could also be used supportfunding a plan if necessary.

2.   *Post-confirmation Management*

The Post-Confirmation Managers of the Debtor, and their compensation, shall be as follows:

| Name | Affiliations | Insider (yes or no)? | Position | Compensation |
|------|--------------|----------------------|----------|--------------|
| Liza Hazan | Debtor | yes | Debtor | n/a |

E.   **Risk Factors**

Certain substantial risk factors are inherent in most plans of reorganization in Chapter 11 cases.  If such Plans are accepted, it is usually because they represent a greater return in dividends than in a liquidating Chapter 7 case.  This Plan bears the risk that the Debtor's income may be reduced or her expenses may increase, all of which may reduce the Debtor's ability to make payments under this Plan.  However, any distribution to unsecured creditors will be greater than what would be realized in liquidation.

ALL THE RISK FACTORS INHERENT IN A PLAN OF REORGANIZATION UNDER CHAPTER 11 ARE PRESENT IN THIS CASE.  CREDITORS ARE URGED TO CAREFULLY READ THIS DISCLOSURE STATEMENT AND THE ACCOMPANYING PLAN OF REORGANIZATION SO THAT AN INFORMED JUDGMENT CAN BE MADE WITH RESPECT TO VOTING ON THE PLAN.

F.   **Executory Contracts and Unexpired Leases**

The Plan, in Article 6, lists all executory contracts and unexpired leases that the Debtor will assumeunder the Plan. There are none. Assumption means that the Debtor has elected to continue to perform theobligations under such contracts and unexpired leases, and to cure defaults of the type that must be curedunder the Code, if any. Article also lists how the Debtor will cure and compensate the other party to suchcontract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of anydefaults, or the adequacy of assurance of performance, you must file and serve your objection to the Planwithin the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in Article 6 will be rejected under thePlan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Planwithin the deadline for objecting to the confirmation of the Plan.

*The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of a Lease or Contract is*no later than thirty (30) days after the date of the order confirming this Plan. Any claim based onthe rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court ordersotherwise.

G.     **Tax Consequences of Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their TaxLiability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

A summary description of certain United States ("U.S.") federal income tax consequences of the Plan is providedbelow. The description of tax consequences below is for informational purposes only and, due to lack of definitivejudicial or administrative authority or interpretation,substantial uncertainties exist with respect to various U.S.federal income tax consequences of the Plan as discussed herein. Only the potential material U.S. federal income taxconsequences of the Plan to the Debtor and to a hypothetical investor typical of the holders of Claims andInterestswho are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought orobtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this DisclosureStatement. No rulings or determinations of the Internal Revenue Service (the "IRS") or any other tax authorities havebeen obtained or sought with respect to any tax consequences of the Plan, and the discussion below is not bindingupon the IRS or such other authorities. No representations are being made regarding the particular tax consequencesof the confirmation and consummation of the Plan to the Debtor or to any holder of Claims in Impaired Classes orClass 4 Equity Interests. No assurance can be given that the IRS would not assert, or that a court would not sustain, adifferent position from any discussed herein.

The discussion of the U.S. federal income tax consequences below is based on the InternalRevenue Code of 1986,as amended (the "Tax Code"), Treasury Regulations promulgated and proposed thereunder, judicial decisions, andadministrative rulings and pronouncements of the IRS and other applicable authorities, all as in effect on the datehereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future couldalter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any taxlegislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the taxconsequences to the holders of Claims. Any such changes or interpretations

may be retroactive and couldsignificantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAXCONSEQUENCES OFTHE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL INCOME TAXCONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGNENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH ASPARTNERSHIPS ANDHOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPORATIONS,MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESSINVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITESTRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATEAND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TOTHEALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OFTHE PLAN TO ANY HOLDER OF CLAIMS. EACH HOLDER OF A CLAIM IS STRONGLY URGED TOCONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL ANDFOREIGN TAXCONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

## IV.   CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. Theseinclude the requirements that: the Plan must be proposed in good faith; at least one impaired class of claimsmust accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equityinterest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidationcase, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible.These requirements are not the only requirements listed in §1129, and they are not the only requirements forconfirmation.

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder ofan allowed unsecured claim objects to the confirmation of the planô
(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account ofsuch claim is not less than the amount of such claim; or
(B) the value of the property to be distributed under the plan is not less than the projected disposable incomeof the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the datethat the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In the case at bar, Debtor has provided for payments not less than projected disposable income of thedebtor during a five year period beginning with the first payment due under the plan.

## A.     Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party believes that therequirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor orequity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder hasa claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each ofthese classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes thatclasses are unimpaired and that holders of claims in each of these classes, therefore, do not have the right tovote to accept or reject the Plan.

### 1. *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan. Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled theclaim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated,or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proofof claim or equity interest. When a claim or equity interest is not allowed, the creditor or equity interest holderholding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules theobjection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the FederalRules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was 5/17/16 for claims and 7/16/16 forgovernment units.***

### 2. *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in aclass that is *impaired* under the Plan. As provided in §1124 of the Code, a class is considered impaired if thePlan alters the legal, equitable, or contractual rights of the members of that class.

### 3. *Who is **Not**Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

Éholders of claims and equity interests that have been disallowed by an order of the Court;

Éholders of other claims or equity interests that are not õallowed claimsö or õallowed equityinterestsö (as discussed above), unless they have been õallowedö for voting purposes.

Éholders of claims or equity interests in unimpaired classes;

Éholders of claims entitled to priority pursuant to §§507(a)(2), (a)(3), and (a)(8) of the Code; and

Éholders of claims or equity interests in classes that do not receive or retain any value under thePlan;

Éadministrative expenses.

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of thePlan [and to the Adequacy of the Disclosure Statement].***

### 4. *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim,or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, andshould cast one ballot for each claim.

## B.   **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class ofcreditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impairedclasses have voted to accept the Plan, unless the Plan is eligible to be confirmed by õcram downö on non-acceptingclasses, as discussed later in Section B.2.

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) ofthe allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at leasttwo-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept thePlan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of theallowed equity interests in the class, who vote, cast their votes to accept the Plan.

### 2. *Treatment of Non-accepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if thenon-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that bindsnonaccepting classes is commonly referred to as a õcram downö plan. The Code allows the Plan to bindnonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmationexcept the voting requirements of §1129(a)(8) of the Code, does not õdiscriminate unfairly,ö and is õfair andequitableö toward each impaired class that has not voted to accept the Plan.

***You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.***

### C.   Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as exhibit B.

### D.   Feasibility

The Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

#### 1. *Ability to Initially Fund Plan*

The Plan Proponent believes that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the effective date of the Plan, and the sources of that cash are attached to this disclosure statement as Exhibits C and D.

#### 2. *Ability to Make Future Plan Payments And Operate Without Further Reorganization*

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information. Those projections are listed in Exhibit D.

***You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.***

## V.   EFFECT OF CONFIRMATION OF PLAN

### A.   DISCHARGE OF DEBTOR

Discharge. In a case in which the debtor is an individual—

**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if—

**(i)**the value, as of the effective date of the plan, of property actually distributed under the plan onaccount of each allowed unsecured claim is not less than the amount that would have been paid onsuch claim if the estate of the debtor had been liquidated under chapter 7 on such date;

**(ii)**modification of the plan under section 1127 is not practicable; and

**(iii)**subparagraph (C) permits the court to discharge; and

**(C)**(*)the court may grant a discharge if, after notice and a hearing held not more than 10 days beforethe date of the entry of the order granting the discharge, the court finds that there is no reasonablecause to believe thatô

**(i)**section522(q)(1) may be applicable to the debtor; and

**(ii)** there is pending any proceeding in which the debtor may be found guilty of a felony of the kinddescribed in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); andif the requirements of subparagraph (A) or (B) are met.

      Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to unsecured and priority creditors. Upon thesatisfaction of all payments required under the Plan to unsecured and priority creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case onthe Court approved local form.

      (a)    Notwithstanding the above, the Debtor may request that the Court close this bankruptcyproceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

      (b)    The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry ofOrder of Discharge (the ôMotion to Closeö) after the following events have occurred: (I) payment ofthe Initial Payment (defined in the Plan) to unsecured and priority creditors; (ii) payment of alloutstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion toTemporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion toClose shall certify that each of the above conditions have been met.

      (c)    The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors andinterested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if eachof the above conditions have been met.

      (d)    During the time that this bankruptcy case is temporarily closed, the provisions of theconfirmation order shall remain in effect with respect to thetreatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtorcontinues to be in compliance with the Plan and the Courtøs Order Confirming Debtorøs Plan ofReorganization (the ôConfirmation Orderö), and as long as the Debtor timely makes all of thepayments to unsecured and priority creditors, as contemplated under the Plan.

      (e)    Upon the satisfaction of all payments required under the Plan to creditors, the Debtormay file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk ofCourt fees associated with filing of the motion to reopen shall be waived. The motion to reopen shallbe verified and served upon all creditors and parties in interest and shall demonstrate that the Debtorhas made all of the payments contemplated under the Plan to creditors.

      (f)    Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a FinalReport of Estate and Motion for Final Decree Closing Case on the Court-approved local

form, whichshall certify that all payments required under the Plan to creditors have been made. The Court maythen grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

### B.    Modification of Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, theCourt may require a new disclosure statement and/or revoting on the Plan.

The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Planhas not been substantially consummated *and* (2) the Court authorizes the proposed modifications after noticeand a hearing.

### C.    Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules ofBankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the PlanConfirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively,the Court may enter such a final decree on its own motion.

Respectfully submittedNovember 15, 2017:

By: /s/ Liza Hazan
The Plan Proponent

By: David W. Langley, Esq
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954ô 356-0450
By: /s/*David W. Langley*

Attorney for the Plan Proponent

44

**Exhibit A  Historical Earnings and assets**

**EXHIBIT A  Historical Earnings and Assets**

Debtor's educational background includes:

- 07/03/1992-Academy Of Paris Brevet De Technicienne Superieure Informatique De Gestion

- 06/28/1989-Academy De Bordeaux Baccalaureat De L'enseignement Du Second Degre Mathematiques & Sciences De La Nature

-1995-1996- University Of Montreal Law School

Debtor works as a business consultant specializing in identifying locations for high-end restaurants and retailers around the world. She has generally earned approximately $400,000.00 per year with the exception of the year preceding the filing of this Chapter 11 case following a period of declined income due to temporary health issues. The Debtor is now again earning at rates comparable to previous years. As part of her consulting business, Debtor presently has an exclusive contract to place new locations for an international beauty and skin care company selling luxury brand products to high-end clientele.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") with a scheduled value of $12,000,000.00. Additionally, Debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

Additionally, the equity in the Fisher Island homestead could support refinancing, which could be used in funding a plan if necessary.

Debtor sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country, to bring all matters into a single forum, and to fashion a Plan of Reorganization which will resolve all disputes without needlessly sacrificing the Debtor's equity in her various assets. The Debtor intends to reorganize her debts and liabilities through a combination of:

(a) negotiating and/or litigating as may be necessary, resolutions with certain secured creditors, and unsecured creditors; and

(b) making distributions funded by her assets and income from her consulting work, or if necessary refinancing. To date, the Debtor's efforts have focused on settling with all her legitimate creditors, obtaining Stay relief from this Court in order to have the New York Court enforce her Confidential Settlement with Spencer, conferring with counsel to begin formulating the structure and terms of a proposed Plan, and expanding her consulting income for the eventual benefit of her estate and creditors.

Exhibit D below is a projection showing the feasibility of making the payments required under the plan, from projected net income of approximately $450,000.00 to $650,000.00 per year. Receipts of consulting income are not regular monthly payments, which is why payments range from quarterly to every six (6) months, or even less frequently, in the plan.

She sought relief under Chapter 11 in order to end years of litigation between multiple creditors in various disputes across the country by bringing all matters into a single forum, and to fashion a Plan of Reorganization that will resolve all disputes without needlessly sacrificing the Debtor's equity in her various assets.

The Debtor's primary asset is her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property") valued at $12 million.

Additionally debtor has scheduled household furniture, dishes and china, household electronics and clothing, shoes and accessories and jewelry, fixtures and art valued at $327,500.

In addition to the foregoing, Debtor's husband controls a corporation, Real Estate Holdings group, L.D.C. ("REHG") which owns a condominium in New York City in the Spencer Condominium, Unit 1A at 1 East 62nd Street, New York, New York 10065. REHG has committed to contribute funds from the proceeds of refinancing and ultimate sale of the condominium unit to Debtor's estate to fund the plan in order to assure the Debtor's successful reorganization and completion of the plan.

**Exhibit B Liquidation Analysis**

**Plan Proponent's Estimated Liquidation Value of Assets**

**Assets**

| | |
|---|---|
| a. Cash on hand at the effective date | $65,000.00 |
| b. Accounts receivable | $400,000.00 |
| c. Personal property including office furniture & equipment | $327,500.00 |
| d. Automobiles | $17,000.00 |
| e. Real Estate – Homestead on Fisher Island – appraised at$ 9,500,000 | |
|       Non-exempt value | $0 |
| f. Lawsuits or other claims against third-parties: | |
|       Potential claims against NLG, LLC | $ unknown |
| k. Other intangibles (such as avoiding powers actions) | $0.00 |

| | |
|---|---|
| **Total Non-exempt Assets at Liquidation Value** | **$809,500.00** |

**Less:**

| | |
|---|---|
| IRS Priority claim | ($24,663.00) |
| SE Financial lien on vehicle(secured portion of 24,970.70 claim) | ($17,000.00) |
| Chapter 7 estimated liquidation expenses | ($50,000.00) |
| Costs of sale (auctioneer fees) | ($32,750.00) |
| Chapter 11 administrative expenses - Geoffrey Aaronson | ($150,000.00) |
|       Joel Aresty | ($35,000.00) |
|       David W. Langley | ($30,000.00) |
| Amount available for distribution to unsecured creditors | **$470,087.00** |
| Percentage distribution to unsecured creditors | |
| (Total dollar amount of unsecured claims is $2,600,000 from claims docket) | **18% Distribution** |

The Amended Plan provides 41% to 100% distribution to allowed unsecured claims

**Exhibit C: Cash on hand on the effective date of the Plan**

**Cash on hand on effective date of the Plan**:                                                          $65,178

*Less --*

       Amount of administrative expenses payable on effective date of the Plan          TBD
       Amount of statutory costs and charges UST                                         TBD
       Plan Payments due on effective date of the Plan                                   TBD

       Balance after paying these amounts                                                TBD

The sources of the cash Debtor will have on hand by the effective date of the Plan are estimated as follows:

Cash in Debtor's bank account now                                                                    $20,178
+ Additional cash Debtor will accumulate from net earnings between now
and effective date of the Plan                                                                       $45,000

(Basis for projection in anticipated income) see Exhibit D

Total                                                                                               $65,178

ELIZABETH HAZAN
FEB 1, 2018 - JAN 31, 2019

| | February 2018 | March 2018 | April 2018 | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 | November 2018 | December 2018 | January 2019 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 120,000 | 100,000 | 80,000 | 80,000 | 80,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 810,000 |
| **TOTAL** | 120,000 | 100,000 | 80,000 | 80,000 | 80,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 810,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL $62,500 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | 53,285 | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 80,205 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | 54,617 | | | 54,617 | |
| INCOME TAXES ESTIMATED | | | | | | | | | 60,000 | | | | 60,000 |
| **TOTAL** | 62,616 | 5,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 76,061 | 9,331 | 9,331 | 70,678 | 322,848 |
| **NET RESULT** | 57,384 | 90,669 | 63,939 | 70,669 | 70,669 | 33,939 | 40,669 | 24,615 | -26,061 | 40,669 | 40,669 | -20,678 | 487,152 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST OF PAYMENTS TO CREDITORS | 38,381 | 1,393 | 1,393 | 1,393 | 1,393 | 296,705 | 27,015 | 1,393 | 1,393 | 1,393 | 21,705 | 1,393 | 386,959 |
| **NET RESULT** | | | | | | | | | | | | | |
| BEGINNING | 27,003 | 85,276 | 62,545 | 69,276 | 69,276 | -262,766 | 13,654 | 23,222 | -27,454 | 39,276 | 18,964 | -22,071 | 100,202 |
| **CUMULATIVE NET AMOUNT** | 27,003 | 156,279 | 178,823 | 248,101 | 317,377 | 54,611 | 68,265 | 91,487 | 64,033 | 103,309 | 122,273 | 100,202 | 100,202 |

LIST OF PAYMENTS TO CREDITORS PRE-PETITION

| | February 2018 | March 2018 | April 2018 | May 2018 | June 2018 | July 2018 | August 2018 | September 2018 | October 2018 | November 2018 | December 2018 | January 2019 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| IRS - 393,985.17 (120 months) with 3% interest CLAIM 3 | | | | | | | | | | | | | |
| IRS 24 605 - YEAR 2014 with 5% interest Claim 5 | | | | | | | 22,948 | | | | | | 22,948 |
| | | | | | | | 2,674 | | | | | | 2,674 |
| VALENCIA ESTATES COMMUNITY 185,020 - 48M CLAIM 10 | 4,052 | | | | | 28,112 | | | | | 20,112 | | 45,686 |
| VALENCIA ESTATES - arrear interest | | | | | | | | | | | | | 0 |
| SOUTHEAST FINANCIAL - CAS 48 MONTHS | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| **UNSECURED** | | | | | | | | | | | | | |
| JIW URBAN 920 275,232.82 | | | | | | 275,000 | | | | | | | 275,000 |
| S&S COLLECTIONS - 10KYR & 15.6 KCR CLAIM 13 | 6,938 | | | | | | | | | | | | 5,064 |
| LIST OF UNSECURED CLAIMS $28 259.04 $1,501.95 $12,000 | 12,868 | | | | | | | | | | | | 11,954 |
| ADMINISTRATIVE CLAIM | | | | | | | | | | | | | |
| JOEL ARESTY | | | | | | | | | | | | | 0 |
| **TOTAL** | 33,361 | 1,393 | 1,393 | 1,595 | 1,393 | 296,705 | 27,015 | 1,393 | 1,393 | 1,393 | 21,705 | 1,396 | 386,959 |

**ELIZABETH HAZAN**
**FEB 1, 2019 - JAN 31, 2020**

| | February 2019 | March 2019 | April 2019 | May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 | November 2019 | December 2019 | January 2020 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| **BUSINESS INCOME** | | | | | | | | | | | | | |
| **TOTAL** | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| HOUSEHOLD (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | 6,730 | 6,730 | | | 6,730 | 26,930 |
| INSURANCE (FISHER ISLAND) | | | | | | | | | | | | | |
| TAXES (FISHER ISLAND) | | | | | | | | | 150,000 | | | | 150,000 |
| INCOME TAXES ESTIMATED | | | | | | | | 16,054 | | | | 54,617 | 54,617 |
| **TOTAL** | 9,331 | 9,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 166,061 | 9,331 | 9,331 | 70,678 | 359,563 |
| **NET RESULT** | 40,669 | 40,669 | 33,939 | 40,669 | 40,669 | 33,939 | 40,669 | 24,615 | -116,061 | 40,669 | 40,669 | -20,678 | 240,437 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST OF PAYMENTS TO CREDITORS | 33,485 | 39,276 | 32,546 | 18,564 | 39,276 | 32,546 | 13,654 | 23,222 | 21,705 | 39,276 | 39,276 | -21,071 | 126,383 |
| **NET** | 7,184 | 1,393 | 1,393 | 21,706 | 1,393 | 1,393 | 27,015 | 1,393 | -137,766 | 1,393 | 393 | 393 | 114,054 |
| **PREVIOUS YEAR** | 88,202 | | | | | | | | | | | | 88,202 |
| **CUMULATIVE NET AMOUNT** | 95,386 | 134,662 | 167,208 | 186,172 | 225,448 | 257,994 | 271,648 | 294,870 | 157,104 | 196,380 | 235,656 | 214,585 | 214,585 |

**LIST OF PAYMENTS TO CREDITORS**

| | February 2019 | March 2019 | April 2019 | May 2019 | June 2019 | July 2019 | August 2019 | September 2019 | October 2019 | November 2019 | December 2019 | January 2020 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| IRS - $91,985.17 (120 months) with 3% interest | 22,948 | | | | | | 22,948 | | | | | | 45,895 |
| IRS 24-663 - YEAR 2014 | 2,674 | | | | | | 2,674 | | | | | | 3,365 |
| VALENCIA ESTATE 395,500 | 0 | | | 28,312 | | | 0 | | 28,312 | | | | 48,624 |
| VALENCIA ESTATES ANNUAL INTEREST | 6,470 | | | | | | | | | | | 6,470 | 6,470 |
| SOUTHEAST FINANCIAL - C/A 48 MONTHS | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 393 | 4,716 |
| **UNSECURED** | | | | | | | | | | | | | |
| IRV. URBAN 888 - 275,000.00 | | | | | | | | | | | | | |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| ADMINISTRATIVE CLAIM | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | |
| JOEL MESSY | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 0 | 11,000 |
| **TOTAL** | 33,485 | 1,393 | 1,393 | 1,393 | 1,393 | 1,393 | 27,015 | 1,393 | 21,705 | 1,393 | 1,393 | 393 | 116,654 |

**ELIZABETH HAZAN**
**FEB 1, 2020 - JAN 31, 2021**

| | February 2020 | March 2020 | April 2020 | May 2020 | June 2020 | July 2020 | August 2020 | September 2020 | October 2020 | November 2020 | December 2020 | January 2021 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **TOTAL** | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,654 | | | | | 16,654 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 150,000 | | | | 150,000 |
| **TOTAL** | 9,331 | 9,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 166,061 | 9,331 | 9,331 | 70,678 | 359,563 |
| **NET RESULT** | 40,669 | 40,669 | 33,939 | 40,669 | 40,669 | 33,939 | 40,669 | 24,615 | -116,061 | 40,669 | 40,669 | -20,678 | 240,437 |
| SCHEDULED PAYMENTS OF CREDITORS LIST | 30,210 | 20,705 | 393 | 393 | 393 | 393 | 45,934 | 0 | 0 | 0 | 0 | 28,312 | 118,733 |
| **NET** | 10,459 | 19,964 | 33,546 | 40,276 | 40,276 | 33,546 | -5,265 | 24,615 | -116,061 | 40,669 | 40,669 | -48,990 | 121,704 |
| PREVIOUS YEAR | 214,585 | | | | | | | | | | | | 214,585 |
| **CUMULATIVE NET AMOUNT** | 225,044 | 245,008 | 278,554 | 318,830 | 359,106 | 392,652 | 387,387 | 412,002 | 295,941 | 336,610 | 377,229 | 336,289 | 336,289 |
| **LIST OF PAYMENTS TO CREDITORS** | | | | | | | | | | | | | |
| **SECURED** | | | | | | | | | | | | | |
| IRS - 393,385.17 (120 months) with 3% interest | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| IRS 24 663 YEAR 2014 | 2,674 | 0 | 0 | 0 | 0 | 0 | 2,674 | 0 | 0 | 0 | 0 | 0 | 5,348 |
| VALENCIA ESTATE 195,566 | 0 | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 0 | 0 | 0 | 0 | 20,312 | 69,596 |
| VALENCIA ESTATE ANNUAL INTEREST | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,315 |
| SOUTH EAST FINANCIAL, CAR 48 MONTHS | 893 | 893 | 893 | 893 | 893 | 893 | 893 | 0 | 0 | 0 | 0 | 0 | 2,358 |
| **UNSECURED** | | | | | | | | | | | | | |
| IBM URBAN $69  275,566.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 35,210 | 20,705 | 393 | 393 | 393 | 393 | 45,934 | 0 | 0 | 0 | 0 | 25,312 | 118,733 |

**ELIZABETH HAZAN**
**FEB. 1, 2021 - JAN 31, 2022**

| | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | December 2021 | January 2022 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **TOTAL** | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,030 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 150,000 | | | | 150,000 |
| **TOTAL** | 9,331 | 9,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 166,061 | 9,331 | 9,331 | 70,678 | 359,563 |
| **NET RESULT** | 40,669 | 40,669 | 33,939 | 40,669 | 40,669 | 33,939 | 40,669 | 24,615 | -116,061 | 40,669 | 40,669 | -20,678 | 240,437 |
| **SCHEDULED PAYMENTS OF CREDITORS** | 28,098 | 0 | 0 | 0 | 20,312 | 0 | 25,622 | 0 | 0 | 26,312 | 0 | 0 | 94,344 |
| **NET** | 12,571 | 40,669 | 33,939 | 40,669 | 20,357 | 33,939 | 15,047 | 24,615 | -116,061 | 20,357 | 40,669 | -20,678 | 146,093 |
| PREVIOUS YEAR | 336,289 | | | | | | | | | | | | 336,289 |
| **CUMULATIVE NET AMOUNT** | 348,860 | 389,529 | 423,468 | 464,137 | 484,494 | 518,633 | 533,480 | 558,095 | 442,036 | 462,391 | 503,050 | 482,382 | 482,382 |

**LIST OF PAYMENTS TO CREDITORS**

| | February 2021 | March 2021 | April 2021 | May 2021 | June 2021 | July 2021 | August 2021 | September 2021 | October 2021 | November 2021 | December 2021 | January 2022 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| RES - 393,985.17 ($120 monthly, with 3% interest) | 22,048 | | | | | | 22,048 | | | | | | 45,896 |
| RES 28,603 - YEAR 2014 | 2,674 | | | | | | 2,674 | | | | | | 5,348 |
| VALENCIA ESTATE 195,000 | | | | | 20,312 | | | | | 20,312 | | | 41,924 |
| VALENCIA ESTATE ANNUAL INTEREST | 2,476 | | | | | | | | | | | | 2,476 |
| SOUTH EAST FINANCIAL - C&I 48 MONTHS | 0 | | | | 0 | | 0 | | | 0 | | | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| IRM URBAN 992- 275,000.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 28,198 | 0 | 0 | 0 | 20,312 | 0 | 25,622 | 0 | 0 | 20,312 | 0 | 0 | 94,344 |

**ELIZABETH HAZAN**
**FEB 1, 2022 - JAN 31, 2023**

| | February 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 | August 2022 | September 2022 | October 2022 | November 2022 | December 2022 | January 2023 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **TOTAL** | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| VALENCIA ESTATES COMMUNITY ASS - SPECIAL | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 1,042 | 12,504 |
| FISHER ISLAND COMMUNITY ASS | 0 | 0 | 6,730 | 0 | 0 | 6,730 | 0 | 0 | 6,730 | 0 | 0 | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 16,054 | 0 | 0 | 0 | 0 | 16,054 |
| TAXES (FISHER ISLAND) | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 150,000 | 0 | 0 | 0 | 150,000 |
| **TOTAL** | 9,331 | 9,331 | 16,061 | 9,331 | 9,331 | 16,061 | 9,331 | 25,385 | 166,061 | 9,331 | 9,331 | 70,678 | 359,563 |
| **NET RESULT** | 32,669 | 32,669 | 25,939 | 32,669 | 32,669 | 25,939 | 32,669 | 16,615 | -124,061 | 32,669 | 32,669 | -28,678 | 144,437 |
| SCHEDULED PAYMENTS OF CREDITORS | 26,440 | 0 | 8,126 | 0 | 0 | 0 | 25,622 | 0 | 0 | 0 | 0 | 0 | 60,188 |
| LIST | | | | | | | | | | | | | |
| **NET** | 6,229 | 32,669 | 17,813 | 32,669 | 32,669 | 25,939 | 7,047 | 16,615 | -124,061 | 32,669 | 32,669 | -28,678 | 84,249 |
| PREVIOUS YEAR | 482,382 | | | | | | | | | | | | 482,382 |
| **CUMULATIVE NET AMOUNT** | 488,611 | 521,280 | 539,093 | 571,762 | 604,431 | 630,370 | 637,417 | 654,032 | 529,971 | 562,640 | 595,309 | 566,631 | 566,631 |
| **LIST OF PAYMENTS TO CREDITORS** | | | | | | | | | | | | | |
| **SECURED** | | | | | | | | | | | | | |
| #1 - 395,985.17 [120 months] with 3% interest | 22,548 | | | | | | 22,348 | | | | | | 45,896 |
| #3 - 24 635 - YEAR 2014 | 2,674 | | | | | | 2,674 | | | | | | 3,343 |
| VALENCIA ESTATE 195,000 | | | 8,126 | | | | | | | | | | 8,126 |
| VALENCIA ESTATE ANNUAL INTEREST | 814 | | | | | | | | | | | | 814 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | | | | | | 0 | | | | | | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| IBM URBAN 550- 275,000.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 26,440 | 0 | 8,126 | 0 | 0 | 0 | 25,622 | 0 | 0 | 0 | 0 | 0 | 64,168 |

**ELIZABETH HAZAN**
**FEB 1, 2023 - JAN 31, 2024**

| | February 2023 | March 2023 | April 2023 | May 2023 | June 2023 | July 2023 | August 2023 | September 2023 | October 2023 | November 2023 | December 2023 | January 2024 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | | | | | | | | | | | | | |
| TOTAL | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,620 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,064 | | | | | 16,064 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 140,000 | | | | 140,000 |
| TOTAL | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 69,636 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 166,941 |
| SCHEDULED PAYMENTS OF CREDITORS | 25,622 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 48,570 |
| LIST | | | | | | | | | | | | | |
| NET | 8,089 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 118,371 |
| PREVIOUS YEAR | 566,631 | | | | | | | | | | | | 566,631 |
| CUMULATIVE NET AMOUNT | 574,720 | 608,431 | 635,412 | 669,123 | 702,834 | 729,815 | 740,578 | 758,235 | 645,216 | 678,927 | 712,638 | 685,002 | 685,002 |
| **LIST OF PAYMENTS TO CREDITORS** | | | | | | | | | | | | | |
| **SECURED** | | | | | | | | | | | | | |
| HS - 393,985.17 (12m months) with 5% interest | 22,948 | | | | | | 22,948 | | | | | | 45,896 |
| HS 24 663 - 1439 2024 | 2,624 | | | | | | | 3 | | | | | 2,624 |
| VALENCIA ESTATE 195,000 | | | | | | | | | | | | | |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| IBM URBAN 900  275,000.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 25,622 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 48,570 |

# ELIZABETH HAZAN
## FEB 1, 2024 - JAN 31, 2025

| RECEIPTS | February 2024 | March 2024 | April 2024 | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 | December 2024 | January 2025 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **TOTAL** | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | 6,730 | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 15,654 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 140,000 | | | | 140,000 |
| **TOTAL** | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 69,636 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 166,941 |
| **SCHEDULED PAYMENTS OF CREDITORS** | | | | | | | | | | | | | |
| LIST | 22,948 | | | | | | 22,948 | | | | | | 45,896 |
| **NET** | 10,763 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 111,045 |
| PREVIOUS YEAR | 685,002 | | | | | | | | | | | | 685,002 |
| **CUMULATIVE NET AMOUNT** | 695,765 | 729,476 | 756,457 | 790,168 | 823,879 | 850,860 | 861,623 | 879,280 | 766,261 | 799,972 | 833,683 | 806,047 | 806,047 |

## LIST OF PAYMENTS TO CREDITORS

| | February 2024 | March 2024 | April 2024 | May 2024 | June 2024 | July 2024 | August 2024 | September 2024 | October 2024 | November 2024 | December 2024 | January 2025 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| IRS - $95,595.17 (120 months) with 3% interest | 22,948 | | | | | | 22,948 | | | | | | 45,896 |
| IRS 24,663 - YEAR 2014 | | | | | | | | | | | | | |
| VALENCIA ESTATE $45,000 | | | | | | | | | | | | | |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | | | | |
| SOUTHEAST FINANCIAL - CAR 48 MONTHS | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  275,382.80 | | | | | | | | | | | | | |
| LIST OF UNSECURED CLAIMS | | | | | | | | | | | | | |
| **TOTAL** | 22,948 | | | | | | 22,948 | | | | | | 45,896 |

# ELIZABETH HAZAN
## FEB 1, 2025 - JAN 31, 2026

| | February 2025 | March 2025 | April 2025 | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | January 2026 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | | | | | | | | | | | | | |
| TOTAL | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATE COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 140,000 | | | | 140,000 |
| TOTAL | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 69,636 | 337,069 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 166,941 |
| SCHEDULED PAYMENTS OF CREDITORS | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| LIST | | | | | | | | | | | | | |
| NET | 10,763 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 121,045 |
| PREVIOUS YEAR | 886,047 | | | | | | | | | | | | 806,047 |
| CUMULATIVE NET AMOUNT | 816,810 | 850,521 | 877,502 | 911,213 | 944,924 | 971,905 | 982,668 | 1,000,325 | 887,306 | 921,017 | 954,728 | 927,092 | 927,092 |

## LIST OF PAYMENTS TO CREDITORS

| | February 2025 | March 2025 | April 2025 | May 2025 | June 2025 | July 2025 | August 2025 | September 2025 | October 2025 | November 2025 | December 2025 | January 2026 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| BS - 393,985.71 (120 months) with 3% interest | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |
| BS 24 665 - YEAR 18/24 | | | | | | | | | | | | | |
| VALENCIA ESTATE 195,500 | | | | | | | | | | | | | |
| VALENCIA ESTATE ANNUAL INTEREST | | | | | | | | | | | | | |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | | | | | | | | | | | | | |
| **UNSECURED** | | | | | | | | | | | | | |
| BW URBAN 560 - 275,250.00 | | | | | | | | | | | | | |
| LIST OF UNSECURED CLAIMS | | | | | | | | | | | | | |
| **TOTAL** | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 0 | 45,896 |

## ELIZABETH HAZAN
### FEB 1, 2026 - JAN 31, 2027

| | February 2026 | March 2026 | April 2026 | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | November 2026 | December 2026 | January 2027 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| TOTAL | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD, FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD, REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 140,000 | | | | 140,000 |
| TOTAL | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 69,636 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 166,941 |
| SCHEDULED PAYMENTS OF CREDITORS LIST | 22,948 | | | | | | 22,948 | | | | | | 45,896 |
| **NET** | 10,763 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 121,045 |
| PREVIOUS YEAR | 927,092 | | | | | | | | | | | | 927,092 |
| CUMULATIVE NET AMOUNT | 937,855 | 971,566 | 998,547 | 1,032,258 | 1,065,969 | 1,092,950 | 1,103,713 | 1,121,370 | 1,008,351 | 1,042,062 | 1,075,773 | 1,048,137 | 1,048,137 |

### LIST OF PAYMENTS TO CREDITORS

| | February 2026 | March 2026 | April 2026 | May 2026 | June 2026 | July 2026 | August 2026 | September 2026 | October 2026 | November 2026 | December 2026 | January 2027 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| RES - $93,993.17/120 months) with 3% interest | 22,948 | | | | | | 23,248 | | | | | | 45,896 |
| RES 24 663 YEAR 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE $95,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SOUTH EAST FINANCIAL - CAR 48 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JBM URBAN 900  235,920.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 22,948 | | | | | | 22,948 | | | | | | 45,895 |

## ELIZABETH HAZAN
### FEB 1, 2027 - JAN 31, 2028

| | February 2027 | March 2027 | April 2027 | May 2027 | June 2027 | July 2027 | August 2027 | September 2027 | October 2027 | November 2027 | December 2027 | January 2028 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **RECEIPTS** | | | | | | | | | | | | | |
| BUSINESS INCOME | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| TOTAL | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 42,000 | 504,000 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| HOUSEHOLD: FOOD & CLOTHING | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| HOUSEHOLD: REPAIRS & MAINTENANCE | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| INSURANCE (CAR) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| TRAVEL AND ENTERTAINMENT | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| VEHICLES EXPENSES | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UTILITIES (ELECTRICITY AND WATER) | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| VALENCIA ESTATES COMMUNITY ASS | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 1,289 | 15,468 |
| FISHER ISLAND COMMUNITY ASS | | | 6,730 | | | 6,730 | | | 6,730 | | | 6,730 | 26,920 |
| INSURANCE (FISHER ISLAND) | | | | | | | | 16,054 | | | | | 16,054 |
| TAXES (FISHER ISLAND) | | | | | | | | | | | | 54,617 | 54,617 |
| INCOME TAXES ESTIMATED | | | | | | | | | 140,000 | | | | 140,000 |
| TOTAL | 8,289 | 8,289 | 15,019 | 8,289 | 8,289 | 15,019 | 8,289 | 24,343 | 155,019 | 8,289 | 8,289 | 69,636 | 337,059 |
| **NET RESULT** | 33,711 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 33,711 | 17,657 | -113,019 | 33,711 | 33,711 | -27,636 | 166,941 |
| SCHEDULED PAYMENTS OF CREDITORS | | | | | | | | | | | | | |
| LIST | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 22,948 | 68,844 |
| **NET** | 10,763 | 33,711 | 26,981 | 33,711 | 33,711 | 26,981 | 10,763 | 17,657 | -113,019 | 33,711 | 33,711 | -50,584 | 98,097 |
| PREVIOUS YEAR | 1,048,137 | | | | | | | | | | | | 1,048,137 |
| CUMULATIVE NET AMOUNT | 1,058,900 | 1,092,611 | 1,119,592 | 1,153,303 | 1,187,014 | 1,213,995 | 1,224,758 | 1,242,415 | 1,129,396 | 1,163,107 | 1,196,818 | 1,146,234 | 1,146,234 |

### LIST OF PAYMENTS TO CREDITORS

| | February 2027 | March 2027 | April 2027 | May 2027 | June 2027 | July 2027 | August 2027 | September 2027 | October 2027 | November 2027 | December 2027 | January 2028 | total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **SECURED** | | | | | | | | | | | | | |
| IRS - 393,985.13 (123 months) with 3% interest | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 22,948 | 68,844 |
| IRS 24 663 YEAR 2014 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE 191,390 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VALENCIA ESTATE ANNUAL INTEREST | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| SOUTH EAST FINANCIAL - CDR. 60 MONTHS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **UNSECURED** | | | | | | | | | | | | | |
| JIM URBAN 909  275,000.03 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| LIST OF UNSECURED CLAIMS | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TOTAL** | 22,948 | 0 | 0 | 0 | 0 | 0 | 22,948 | 0 | 0 | 0 | 0 | 22,948 | 68,844 |

**UNITED STATES BANKRUPTCY COURT FOR THE**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:

LIZA HAZAN                                    Case No. 16-10389-AJC
                                              Chapter 11

_____ Debtor _____/

**BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN**

*TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE DEADLINE INDICATED BELOW [AS SET PURSUANT TO LOCAL RULE 3018-1(B)]*

*The plan filed by Liza Hazan on September 6, 2016 can be confirmed by the court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class rejecting it.*

*This ballot is for creditor _____ for the following type of claim placed in the indicated class in the indicated amount:*

| *TYPE OF CLAIM* | *CLASS IN PLAN* | *AMOUNT OF CLAIM* |
|---|---|---|
| ☐ General Secured | | $ |
| ☐ General Unsecured | | $ |
| ☐ Bond Holder | | Amount of Bond/debenture $ |
| ☐ Equity Security Holder | | Number of Shares of Stock |

The undersigned [Check One Box]        ☐ Accepts          ☐ Rejects

the plan for reorganization of the above-named debtor.

Signed:

Print Name:

Address:

Phone:

Date:

**★ ★ ★ FILE THIS BALLOT ON OR BEFORE ★ ★ ★**

with:   Clerk of Bankruptcy Court
         ✓  301 N. Miami Ave., Room 150, Miami, FL 33128
         ☐ 299 E. Broward Blvd., Room 112, Ft. Lauderdale, FL 33301
         ☐ 1515 North Flagler Drive, Room 801, West Palm Beach, FL 33401

**If you have more than one type of claim against this debtor, separate ballots must be filed and you should receive a ballot for each type of claim eligible to vote.   Contact the plan proponent regarding incorrect or insufficient ballot(s).**

LF-33 (rev. 10/10/14)

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF FLORIDA

### MIAMI-DADE DIVISION

#### www.flsb.uscourts.gov

In re:

LIZA HAZAN,                                                CASE NO.:  16-10389 AJC

Debtor.                                                CHAPTER 11

_____/

#### FOURTH AMENDED PLAN OF REORGANIZATION

### ARTICLE I

#### SUMMARY

This Fourth Amended Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Debtor (the "Debtor") from sources of payment, such as equity in properties and future income.

Debtor has an exclusive period during which only debtor may propose a plan. The exclusive period was extended through July 11, 2016 by motion filed on 5/10/16 at DE 63 and granted at hearing on 5/26/16 without objection and ordered on 7/7/16 at DE 99, and again extended through November 7, 2016, by Order entered on August 22, 2016 (DE 173), and again extended through April 30, 2017 by Order entered on January 26, 2017, D.E. 373, and again extended through November 15, 2017 by motion filed on 9/10/2017 at DE 543 and granted at hearing on October 3, 2017.

This Plan provides classes of claims; classes of priority claims, classes of secured claims, and classes of unsecured claims and equity. Unsecured creditors holding allowed claims will receive distributions which the proponent of this Plan has valued at a dividend of 41% to 100% of total allowed claims over up to 60 months and paid every six months with the first payment due in month 6, while undisputed unsecured claims are paid 100% by 7/11/18.

This Plan also provides for the payment of administrative claims. If payment is not made in full on the effective date of this Plan with respect to any such claim (to the extent permitted by the Code or the claimant's agreement), the paragraphs below will identify such claim and briefly summarize the proposed treatment.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one).**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    This Plan includes a class of priority claims, classes of secured claims, classes of unsecured claims, and a class of equity interests.

## ARTICLE III

## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,

## U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

3.01    Unclassified Claims. Under section §1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under §502(f) of the Code,] and priority tax claims are not in classes.

3.02    Administrative Expense Claims. Each holder of an administrative expense claim allowed under §503 of the Code, will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. Counsels for Debtor Geoffrey Aaronson, Joel Aresty and David W. Langley will be paid outside of the plan and have agreed to such treatment.

3.03    Priority Tax Claims. Each holder of a priority tax claim will be paid by terms of treatment consistent with §1129(a)(9)(C) of the Code.

3.04    United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6)(U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

| Admin | Description | Treatment |
|---|---|---|
| | Geoffrey Aaronson | Mr. Aaronson has agreed to accept payment in the amount of $142,686.86 in fees and $2,313.13 in costs reimbursement, from a third party in full satisfaction of this claim.<br><br>SETTLED |
| | Joel Aresty | Attorney Joel Aresty has agreed to accept $35,000.00 in fees and $1,500.00 in costs payable as follows: $3000 within 5 days of entry of Order Approving Settlement followed by 19 payments of $1500 starting May 1, 2016 and an additional $5000 at confirmation. Stipulation amended between the parties on November 1, 2017. Monthly payments in the amount of $1000 starting on November 1, 2017 Remaining |

3

| | | |
|---|---|---|
| | | Balance owed $28,000.<br><br>SETTLED |
| | David W. Langley | Paid as awarded or agreed. |
| | US Trustee | paid in full at confirmation |

**Priority Claims**

**Priority Claims**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 1 | **IRS**<br><br>**Claim #3** | yes | The $24,663.00 priority tax claim will be paid within five years of the petition date. Equal Payments of $2,674.34 every six months to include interest on anyunpaid claim amounts after the effective date of the plan at 3%. |

**Secured Claims**

**6913 Valencia Drive Property Fisher Island Florida**

| 2 | **Chase Bank** | no | yes | **First Secured Mortgage –** The claim bar date has passed in this case, and Chase has not filed a Proof Of Claim.  Chase was scheduled as disputed, contingent and unliquidated. Original note in the amount of $3,825,000.00 signed by Debtor on March 2007 with Washington Mutual Bank.  Chase Bank filed an Assignment of mortgage on 5/26/16 alleging an interest in the loan. Debtor has obtained stay relief on November 16, 2016 to continue State Court litigation regarding the alleged default, ownership of the loan and standing issues.  If the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final. Pending adjudication of Chase's alleged interest in the loan and the subject property Chase shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan.  See *In re DiMaria*, 202 B.R. 634 (S.D. Fla 1996). |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | | | | **Chase has agreed to withdraw all objection to this Disclosure Statement and the Debtor has agreed that any objections to confirmation are preserved.** |
| 3 | **Selective Advisors Group, LLC** | yes | yes | Selective Advisors Group, LLC ("Selective") is the rightful assignee of the satisfied second mortgage previously held by NLG ("NLG"). Selective is the rightful assignee of the satisfied promissory Note, Mortgage and Judgment previously held by NLG gainst The Debtor in the amount of $1,618,068.00 plus interest at 11% per annum ("the Scola Judgment") from April 28, 2008,<br><br>Selective has recorded a Satisfaction of this Mortgage and Judgment against the Debtor and her property on August 20, 2014 and August 21, 2014. per the Final Order of Assignment of Hon. Judge Peter Lopez entered on August 20, 2014.<br><br>On August 21, 2016, Selective sued NLG in this bankruptcy Court **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* **Adv. Case No. 16-1439-AJC** for avoidance of NLG's alleged claimed lien on Debtor's Homestead property on Valencia Drive Fisher Island Florida. On January 3, 2016 Hazan, additional Plaintiff and Selective filed their Motion to amend their Complaint to add a count seeking to Quiet Title to the property, and a number of tort claims, which motion was granted on |

January 23, 2016.

The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submitted on August 14, 2017.

On November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffsø Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLGøs Amended Counterclaim as follows:

ðThe Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLGøs right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtorøs Debt to NLG has been paid, including the New York State Supreme courts, wherein

Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's

Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no staning in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II and III of Plaintiffos Third Amended Complaint and NLGøs Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLCøs judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLCøs foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLCøs foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtorøs homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description: LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to

| | | | | |
|---|---|---|---|---|
| | | | | the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.<br><br>have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.<br><br>2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLGøs outstanding debt to Selective pursuant to the Quebec Judgment.<br>3. NLGøs proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order.<br>4. Counts IV, V, VI, VIII, and IX of Plaintifføs Third Amended Complaint are set for trial by separate order.ö |
| 4 | **6913 Valencia LLC** | | yes | **Second Secured Mortgage** in the amount of $2,000.000.00 plus accrued interest from March 14, 2012.<br><br>The Debtor does not contest the validity or extent of 6913 Valencia LLCøs Mortgage on her Homestead property claim.<br><br>Insider claim will subordinate and not be paid until all other allowed claims but reserves right to vote for the plan |

| | | Yes | | |
|---|---|---|---|---|
| 5 | **Valencia Estates Community Assn, Inc claim #10** | no | yes | **Valencia Estates Community Association's ("Valencia")**Claim#10 in the amount of $195,072.14. Treated in settlement as follows: <br><br> 1.  Debtor paid $2,193.17 Aug 17, 2016 for due maintenance. <br><br> 2.  Debtor has paid 4 months in advance for September, October, November and December 2016 assessments for a total amount of $4,484.00 as per the Stipulation. <br><br> 3.  Debtor has paid the 2016 special assessment in the amount of $6250.00 as per the Stipulation. <br><br> 4.  The Parties agreed that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made annually on the twelfth month. <br><br> **Valencia Estates Community Association, Inc withdrew its objections to Debtor's disclosure and has agreed to vote for Debtor's plan**. <br><br> <u>**Claim settled.**</u> <br><br> Agreed Order Approving Stipulation of Settlement of Claim # 10 filed by Valencia Estates Homeownersø |

| | | | | |
|---|---|---|---|---|
| | | | | Association entered on 11/18/16 D.E 302. |
| | | | | All Valencia's post petitions regular assessments and special assessment in 2016 have all been paid and are current. |
| | | | | A Post petition special assessment dated on September 15, 2017 to be paid as follows: $1,041.66 every month in addition to the monthly assessments starting at confirmation date for a period of five years. |
| | | | | In October, 2017, Debtor incurred substantial damages caused jointly and severally by both Fisher Island Community Association Inc ("FICA") and Valencia Estates Community Association Inc ("VALENCIA") to her homestead property's fence. The Debtor's Homestead residence is damaged and the fence needs to be completely removed and replaced. Debtor is planning to bring an action for damages against Fisher Island Community Association Inc and Valencia Estates Community Association Inc jointly and severally. This will offset some or the entirety of Valencia's post petition special assessment in the amount of $62,500 assessed on September 15, 2017 and also offset the FICA's post petitions assessments in the amount of $46,555.48. |
| 6 | **Fisher Island Community Ass'n, Inc** | | yes | FICA's Late filed Proof Of Claim in the amount of $216,278.97 in 10/20/16 – **Disputed by Debtor and** |

| | **Claim #18** | | | **Disallowed by this Court.** |
|---|---|---|---|---|
| | | | no | The Debtor has filed an objection to the amount of the Claim challenging Fisher Island's standing as a "party in interest." In re E.S. Bankest, L.C. 321 B.R. 590 (Bankr. S.D. Fla. 2005). Fisher Island Community Association, Inc. did not timely file a Proof Of Claim and its Motion to Allow a Late Filed Claim has been denied in November 16, 2016. |
| | | | | Claimant 3343 West Commercial Blvd. 100 (Fisher Island Community Association). |
| | | | | Order granting Fisher Island Community Association, Inc.'s Motion for relief from Stay entered on 11/23/16 |
| | | | | **Claim Disallowed Claim by this Court. No payment through Plan.** |
| | | | | **Debtor plans to reinstate stay and pay the net amount if any of all Fisher Island Community Association's post petitions fees in the amount of $46,555.48 less the damages caused to Debtor by FICA and Valencia (more explained below) after the filing of the petition at confirmation date. Debtor will obtain a discharge for all the prepetition fees.** |
| | | | | In October, 2017, Debtor incurred substantial damages caused jointly and severally by both Fisher Island Community Association Inc ("FICA") and Valencia Estates Community Association Inc ("VALENCIA") to |

| | | | | her homestead property's fence on Fisher Island. The Debtor Homestead residence's fence is substantially damaged and needs to be completely removed and replaced. Debtor is planning to bring an action for damages against FICA and VALENCIA. This will offset some or the entirety of Valencia's post petition special assessment in the amount of $62,500 assessed on September 15, 2017 and also offset the FICA's post petitions assessments in the amount of $46,555.48. |
|---|---|---|---|---|
| | | | | FICA has also caused substantial damages to the Debtor by denying access to all Debtor's guests and all business associates for years and has singled out the Debtor for many years. FICA has enjoined the Debtor to enjoy her home and conduct business. FICA has also endangered the Debtor's life by allowing access to the alleged principal of NLG, LLC a former creditor of the debtor, on Fisher Island who has caused Debtor harassment, trespassing her home, intimidation and caused Debtor additional damages that will be set for trial at a later date in **ADVERSARY PROCEEDINGS** *Selective Advisors and Elizabeth Hazan v. NLG, LLC,* Adv. Case No. 16-1439-AJC |
| 7 | **Miami-Dade Water and Sewer** <br> **claim #7** | no | yes | **Claim #7  $1502.54 to be paid on the Effective Date of The Plan** |

| | | | | |
|---|---|---|---|---|
| 8 | **IRS**<br><br>**claim #3** | no | yes | $393,985.17 - Secured claim shall be paid over ten years with interest Equal payments in the amount of $22,948.00 every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%. |
| 9 | **Miami-Dade County Tax Collector**<br><br>**Claim #6** | no | yes | $57649.47 Miami-Dade County Tax Collector Secured claim on 6913 Valencia Drive property Fisher Island FL 33109 has been paid in full.<br><br>**Claim #6  paid in full**. |

**Other Disputed Claims**

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 10 | **Real Time Resolutions, Inc**<br><br>**claim #8** | | yes | Claim #8 in the amount of $322,846.72 allegedly secured second mortgage Line of credit on property located at 1 East 62nd Street Apt 1 A NYC NY 10065 is disputed by Debtor.<br>Alleged Creditor has agreed to complete stay relief in settlement of this claim in this case and has agreed to support Debtor's plan of |

| | | | | reorganization and vote the entire amount of its alleged claim in favor of Debtor's plan. (ECF 163) |
| | | | no | |
| | | | | **Claim settled.** |

| Class # | Description | Insider | Impairment | Treatment |
|---|---|---|---|---|
| 11 | **Board of Managers Spencer Condominium claim #14** | | yes<br><br><br><br><br><br><br><br><br><br>no | The Debtor disputes the Claim #14 filed by The Board of Managers Spencer Condominium ("Spencer"). The parties reached a Confidential Stipulation Of Settlement in March 2015 in New York. The Debtor is only personally liable for the amount of $109,554.86 representing the alleged disputed outstanding maintenance fees owed by Debtor prior to her transfer of ownership of the property located at 1 East 62nd Street Apt 1 A NYC NY 10065. This amount will be paid by Real Estate |

| | | | | Holdings Group, L.D.C. ("REHG"), the owner of the New York condominium located at 1 East 62nd Street Apt 1A, New York, NY 10065. REHG, Spencer and Debtor Hazan and other parties are bound by the Confidential Stipulation of Settlement executed in March 2015 ("Settlement"). The vast remaining portion of the Spencer Condo Board of Managers' claim is to be paid by the owner of the unit, REHG, per the Settlement executed in March 2015 by the parties.<br><br>**In March 1, 2017 this Court granted Debtor's Motion for Stay relief, allowing theNew York Court to exercise jurisdiction over and enforce the confidential Settlement Agreement.**<br><br>**In March 2, 2017, New York Supreme Court Judge Singh granted REHG's Motion to Enforce The Confidential Stipulation entered in March 2015 between the parties.** |
|---|---|---|---|---|

| | | | | In April 25, 2017 Honorable New York Supreme Judge Singh ordered that the Plaintiff REHG's Motion to enforce the terms of the settlement agreement dated 3/2015 is granted . "After a conference held today the Court finds that all parties are in compliance with the terms of stipulation dated 3/2015." |
| | | | | The Deadline for *Board of Managers of Spencer Condominium* toFile Complaint to determine the Debtor's Dischargeability of Certain Debt has expired. **No payment through the plan. Claim settled.** **SETTLEMENT ENFORCED BY NEW YORK COURT** |

**Convenience Class Undisputed Unsecured Small Claims**

**Paid in full on the Effectiver Date at confirmation**

| Class # | Description | Insider? (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 12 | IRS Claim #3 | no | | 1085.00 |
| | American InfoSource T Mobile Claim #2 | no | | 1130.00 |
| | American InfoSource Direct TV Claim # 9 | no | | 461.00 |
| | FPL Claim #11 | no | | 2906.93 |
| | Mount Sinai | no | | 3,240.00 |
| | Mount Sinai | no | | 295.91 |
| | HSBC Bank USA NA | no | | 1070.66 |
| | Sterling Emerg Svc | no | | 2445.30 |
| | Bank of America NA has waived all prepetition fees | no | | 0.00 |
| | Wells Fargo Claim #12 | no | | 323.24 |
| | Real Time Resolutions (õRTRö) Claim #5  Although Debtor settled this claim for $12,000 after | | | 0.00 |

| | | | |
|---|---|---|---|
| | misrepresentations made by alleged creditor Real Time Resolutions that it had a valid claim. Debtor after further investigation has determined that statute of limitations has run and that Claim #5 is not a valid claim. Real time Resolutions has sued the debtor in case 08-47664 CA 32 in Miami-Dade County Court in October 21, 2008. The case 08-47664 CA 32 was dismissed in for lack of prosecution on January 08, 2010. The Statute of limitations has run. | no | | |
| | **<u>S&S Collections</u>** <br> **<u>Simon &Sigalos</u>** <br> **<u>claim #13 partial paid amount $1740.96</u>** | no | | 0.00 |
| | Total | | | 12958.04 |

**Settled Unsecured Claims**

**Allowed Undisputed Unsecured Claims**

| Class # | Description | Insider? (Yes or No) | Impaired | Treatment | |
|---|---|---|---|---|---|
| **13** | **JMB Urban 900 Dev. claim #4*** | **no** | **X** | Claim # 4 in the amount of $664,380.47. Claim # 4 will be paid 41% of the amount or 275,000.00 per settlement before the second anniversary of the entry of the agreed final judgment on or before July 20, 2018 in favor of JMBin case **Adversary proceedings 16-01188-AJC. Adversary proceeding case closed on 7/22/16 and <u>Case settled 16-01188-AJC</u>. DOC 21 Case 16-01188-AJC Order approving  agreed final Judgment in favor of JMB entered on July 20, 2016..** <br><br> **<u>CLAIM SETTLED</u>** | |
| | **<u>S&S Collections Simon &Sigalos claim #13</u>** | **no** | **X** | Claim # 13 in the amount of$21,242 **<u>Claim settled</u>** for 41% $8,709.22.Amount of $1740.96 moved to convenience class. Amount of $1740.96 paid by third party on July 10, 2017. Remaining balance owed $6,968.04 to be paid same treatment as JMB. <br><br> **<u>CLAIM SETTLED</u>** | |

| | | | | |
|---|---|---|---|---|
| | **Southeast Financial LLC** | **no** | **X** | Stipulation Of Settlement DE 98 approved by this Court DE 101.<br><br>Vehicle owned by Holdings Trust Management Group LLC. Southeast Financial LLCøs Secured Lien is guaranteed by the Debtor.<br><br>Secured claim allowed $17,000 value to be paid at 5.25% for 48 months payments in the amount of $393 began on August 1, 2016 and are current.<br><br>CLAIM SETTLED |
| | | | | |

**Disputed Unsecured Claims**

**not paid until and unless allowed**

**and then paid within 5 years after confirmation**

| | | | | |
|---|---|---|---|---|
| | **Cross & Simon<br>Claim #1** | no | | Claim #1 in the amount of $11,023.83 Legal Bill for corporation other than Debtor.<br><br>**Unallowed claim.**<br><br>**No payment through Plan** |

| | | | | |
|---|---|---|---|---|
| | | | | Claim #15 in the amount of $24,818.44 Legal bill Legal work for Corporation other than the Debtor. |
| | **Newman Ferrara LLP<br>claim #15** | no | | **The Claims bar date has passed. No payment through plan. Unallowed claim.** |

22

| | | | | |
|---|---|---|---|---|
| | | | | |
| **FuerstIttleman David & Joseph, P.L.** <br> **Claim #16** | **no** | | Disputed Proof of Claim filed after Claim Bar Date. FuerstIttleman David & Joseph, P.L. is not a creditor of this Debtor. Debtor has filed an objection to this claim. FuerstIttlemanDavid & Joseph, P.L. have agreed that they are not a creditor of this estate. <br><br> **No payment through plan.Unallowed Claim.** |

## Unsecured Scheduled Disputed and No Claim Filed

## Therefore Disallowed

| | |
|---|---|
| Allied Collection | 318 |
| ATT Mobility | 3919 |
| First National Collection | 246.08 |
| Focus Mgt | 772 |
| Marzec Law Firm | 0 |
| Mount Sinai Medical | 31414.15 |
| Ray Garcia PA | 7026.15 |
| Verizon | 1758 |
| US Bank NA | Unknown <br><br> The Debtor entered into a Stipulation of Settlement with US Bank NA (D.E. 345) granting the parties complete stay relief which was approved by the Court by Order dated 1/18/2017, D.E. 371. |

| | |
|---|---|
| | US Bank did not file a proof of claim and will not be paid through the Plan.**Claim settled.** |
| NLG, LLC | NLG, LLC did not timely file a proof of claim and**NLG, LLC's alleged Claim has been judicially** assigned per The Final Order entered by Judge Peter Lopez on August 2014. **NLG, LLC will not be paid through the Plan**.

NLG, LLC has no standing in this case and is not a creditor of the Debtor's Estate.

NLG appeared in this case but failed to timely file a proof of claim. NLG, LLC is merely a notice party. NLG, LLC is not a secured creditor in this case. Selective Advisors Group, LLC ("Selective"), is listed in Debtor's schedule as her creditor.

 The Trial in the Adversary proceedings 16-10389-AJC was concluded on July 13, 2017 and Proposed Orders by all parties were submittedon August 15, 2017.

In November 1, 2017 Honorable Judge AJ Cristol issued Final Judgment on Counts I, II and III of Plaintiffs' Selective and Liza Hazan aka Elizabeth Hazan Third Amended Complaint and NLG's Amended Counterclaim as follows:

  "The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said Judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose securing the debt traveled to the assignee Selective . Although NLG's right to foreclose against Hazan, as established by the Third District of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose, Assuming the validity of the Gordo Foreclosure Judgment, the Debtor exercised her right to redeem the property by |

satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's Debt to NLG has been paid, including the New York State Supreme courts, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,878,654.29, which credit will leave the mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the property fully redeemed prior to foreclosure sale, as provided in the Gordo case, as provided in the Gordo foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date., it is disallowed and the Court finds that NLG has no staning in this case based upon the note, claim or lien emanating therefrom. Accordingly it is

ORDERED AND ADJUDGED that Count I, II

and III of Plaintiff's Third Amended Complaint and NLG's Amended Counterclaim are GRANTED IN PART AND DENIED IN PART as follows:

1. NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against CFN200R0410013 NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment recorded at Book 29902 Pages 3737-3742 CFN20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami Florida 33109 with the following legal description:

LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157 Page 64, of the Public Records of Miami-Dade County, Florida.

have been satisfied and paid, and are deemed **SATISFIED OF RECORD** and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the property is forever quieted as to all claims of NLG, LLC.

2. Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt to Selective pursuant to the Quebec Judgment.

| | |
|---|---|
| | 3.  NLG's proof of claim #17 is disallowed and NLG, LLC has no claim against the Debtor Liza Hazan a/k/a Elizabeth Hazan under the Note, Mortgage or any court order. 4. Counts IV, V, VI, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order." . |
| Total | 45453.38 |

**Equity**

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 14 | Equity Individual interest holder | no | retained |

**ARTICLE V**

**ALLOWANCE AND DISALLOWANCE OF CLAIMS**

5.01    Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03     Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01     Assumed Executory Contracts and Unexpired Leases.

(a)     The Debtor assumes the following executory contracts and/or unexpired leases effective upon the date of the entry of the order confirming this Plan: none.

(b)     The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the entry of the order confirming this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII

## GENERAL PROVISIONS

7.01     Definitions and Rules of Construction. The definitions and rules of construction set forth in §§101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.02     Effective Date of Plan. The effective date of this Plan is the fourteenth business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

7.03     Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04     Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05     Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06    Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE VIII

## DISCHARGE

8.01.   **Debtor is an individual.**

11 USC 1129(a)(15) provides: In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the planô

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325 (b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

In this case the Debtor has provided for payments not less than Projected disposable income of the debtor during a five year period beginning with the first payment due under the plan.

Discharge. In a case in which the debtor is an individualô

(A)unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;

(B)at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan ifô

(i)the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;

(ii)modification of the plan under section 1127 is not practicable; and

(iii)subparagraph (C) permits the court to discharge; and

(C)(*)the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe thatô

(i)section522(q)(1) may be applicable to the debtor; and

(ii)there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to all unsecured and deficiency creditors. **Upon payment of all required Plan payments the Debtor shall be discharged of all allowed and disallowed claims**. Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a) Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b) The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the õMotion to Closeö) after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to unsecured creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c) The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d) During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, that being 1/11/16, as long as the Debtor continues to be in compliance with the Plan and the Courtøs Order Confirming Debtorøs Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the õConfirmation Orderö), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e) Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to unsecured creditors.

(f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to unsecured creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

Respectfully submitted, 11/15/17

By: /s/ Liza Hazan

The Plan Proponent

By: /s/ David W. Langley, Esq.
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
dave@flalawyer.com
Phone 954356-0450

By: /s/ David W. Langley
Attorney for the Plan Proponent



**ORDERED in the Southern District of Florida on December 13, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                           16-10389-AJC

LIZA HAZAN,                              Chapter 11

Debtor.

_____/

## ORDER (I) APPROVING DISCLOSURE STATEMENT; (II) SETTING HEARING ON CONFIRMATION OF PLAN; (III) SETTING HEARING ON FEE APPLICATIONS; (IV) SETTING VARIOUS DEADLINES; AND (V) DESCRIBING PLAN PROPONENT'S OBLIGATIONS

CONFIRMATION HEARING AND HEARING ON FEE APPLICATIONS

January 24, 2018 at 2:30 p.m.

LOCATION:
United States Bankruptcy Court
301 North Miami Ave, Courtroom 7
Miami, Florida 33128

PROPONENT'S DEADLINE FOR
SERVING THIS ORDER,
DISCLOSURE STATEMENT, PLAN,
AND BALLOT:

December 15, 2017 (40 days before Confirmation Hearing)

DEADLINE FOR OBJECTIONS TO CLAIMS:

LF-32B (rev. 12/01/09)                    Page 1 of 6

<u>December 15, 2017</u> (40 days before Confirmation Hearing)

DEADLINE FOR FEE APPLICATIONS:

<u>January 3, 2018</u> (21 days before Confirmation Hearing)

PROPONENT'S DEADLINE FOR SERVING NOTICE OF FEE APPLICATIONS:

<u>January 10, 2018</u> (14 days before Confirmation Hearing)

DEADLINE FOR OBJECTIONS TO CONFIRMATION:

<u>January 10, 2018</u> (14 days before Confirmation Hearing)

DEADLINE FOR FILING BALLOTS ACCEPTING OR REJECTING PLAN:

<u>January 10, 2018</u> (14 days before Confirmation Hearing)

PROPONENT'S DEADLINE FOR FILING PROPONENT'S
REPORT AND CONFIRMATION AFFIDAVIT:

<u>January 19, 2018</u> (three business days before Confirmation Hearing)

DEADLINE FOR INDIVIDUAL DEBTOR TO FILE "CERTIFICATE FOR CONFIRMATION REGARDING
PAYMENT OF DOMESTIC SUPPORT OBLIGATIONS AND FILING OF REQUIRED TAX RETURNS":

<u>January 19, 2018</u> (three business days before Confirmation Hearing)

The court conducted a hearing on May 4, 2017 to consider approval of the disclosure statement filed by Liza Hazan (the "plan proponent"). The court finds that the disclosure statement (as amended, if amendments were announced by the plan proponent or required by the court at the hearing) contains "adequate information" regarding the plan in accordance with 11 U.S.C. §1125(a). Therefore, pursuant to 11 U.S.C. §1125(b) and Bankruptcy Rule 30l7(b), the disclosure statement is approved.

This order sets a hearing to consider confirmation of the plan ("confirmation hearing"), a hearing on fee applications and sets forth the deadlines and requirements relating to confirmation provided in the Bankruptcy Code, Bankruptcy Rules and Local Rules of this court.

## 1.    HEARING TO CONSIDER CONFIRMATION OF PLAN

The court has set a hearing to consider confirmation of the plan for the date and time indicated above as "CONFIRMATION HEARING". The confirmation hearing may be

continued to a future date by notice given in open court at the confirmation hearing.

### 2.    DEADLINE FOR FILING AND HEARING ON FEE APPLICATIONS

The last day for filing and serving fee applications is indicated above as "DEADLINE FOR FEE APPLICATIONS". All prospective applicants for compensation, including attorneys, accountants and other professionals, shall file applications which include actual time and costs, plus an estimate of additional time and costs to be incurred through confirmation. At or prior to confirmation, applicants must file a supplement with documentation supporting the estimated time and costs. Fee applications shall be timely filed with the court and served (with all exhibits, including documentation of estimated time) on (i) the debtor; (ii) the plan proponent (if other than the debtor); (iii) all committees that have been appointed; (iv) any chapter 11 trustee or Examiner that has been appointed; and (v) the U.S. Trustee.

Fee applications will be set for hearing together with the confirmation hearing. The plan proponent shall serve notice of all fee applications pursuant to paragraph 6 below. The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

### 3.    DEADLINE FOR OBJECTIONS TO CONFIRMATION

The last day for filing and serving objections to confirmation of the plan is indicated above as "DEADLINE FOR OBJECTIONS TO CONFIRMATION". Objections to confirmation shall be filed with the court and served on (i) the debtor; (ii) the plan proponent (if other than the debtor); (iii) all committees that have been appointed; (iv) any chapter 11 trustee or examiner that has been appointed; and (v) the U.S. Trustee.

### 4.    DEADLINE FOR FILING BALLOTS ACCEPTING OR REJECTING PLAN

The last day for filing a ballot accepting or rejecting the plan is indicated above as

"DEADLINE FOR FILING BALLOTS ACCEPTING OR REJECTING PLAN". All parties entitled to vote should receive a ballot from the plan proponent by U.S. Mail pursuant to paragraph 6(A) of this order. If you receive a ballot but your entire claim has been objected to, you will <u>not</u> have the right to vote until the objection is resolved, unless you request an order under Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.

**5.   DEADLINE FOR OBJECTIONS TO CLAIMS**

The last day for filing and serving objections to claims is indicated above as "DEADLINE FOR OBJECTIONS TO CLAIMS". All objections to claims must be filed before this date unless the deadline is extended by further order.

**6.   PLAN PROPONENT'S OBLIGATIONS**

**(A)** On or before the date indicated above as "PROPONENT'S DEADLINE FOR SERVING THIS ORDER, DISCLOSURE STATEMENT, PLAN, AND BALLOT" the plan proponent shall serve a copy of this order, the approved disclosure statement (with all amendments, if amendments were announced by the plan proponent or required by the court at the disclosure hearing), and the plan on all creditors, all equity security holders, and all other parties in interest, as required by the Bankruptcy Rules (including those entities as described in Bankruptcy Rule 3017(f)) and the Local Rules, including those listed on a "Master Service List" required to be filed pursuant to Local Rules 2002-1(H). At the time of serving this order, the Local Form "Ballot and Deadline for Filing Ballot Accepting or Rejecting Plan", customized as required by Local Rule 3018-1 shall be served via U.S. Mail on all creditors and equity security holders entitled to vote on the plan. The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

**(B)** On or before the date indicated above as "PROPONENT'S DEADLINE FOR SERVING NOTICE OF FEE APPLICATIONS", the plan proponent shall serve a notice of

hearing of all fee applications, identifying each applicant and the amounts requested. The notice shall be served on all creditors, all equity security holders, and all other parties in interest as required by the Bankruptcy and Local Rules, including those listed on a "Master Service List" required to be filed pursuant to Local Rules 2002-1(H). The plan proponent shall file a certificate of service as required under Local Rule 2002-1(F).

**(C)** On or before 5:00 p.m. on the date indicated above as "PROPONENT'S DEADLINE FOR FILING PROPONENT'S REPORT AND CONFIRMATION AFFIDAVIT", the plan proponent shall file with the court the Local Form "Certificate of Proponent of Plan on Acceptance of Plan, Report on Amount to be Deposited, Certificate of Amount Deposited and Payment of Fees," and the Local Form "Confirmation Affidavit". The "Confirmation Affidavit" shall set forth the facts upon which the plan proponent relies to establish that each of the requirements of 11 U.S.C. §1129 are satisfied. The "Confirmation Affidavit" should be prepared so that by reading it, the court can easily understand the significant terms of the plan and other material facts relating to confirmation of the plan. The individual executing the "Confirmation Affidavit" shall be present at the confirmation hearing.

If the plan proponent does not timely comply with any of the requirements of this order, the court may impose sanctions at the confirmation hearing without further notice including dismissal, conversion of the case to chapter 7, or the striking of the plan. The court will also consider dismissal or conversion at the confirmation hearing at the request of any party or on the court's own motion.

### ###

**Submitted by:**

DAVID W. LANGLEY
*Attorney for Debtor*

8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:      954-356-0450
Fax:            954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

The party submitting this order shall serve a copy of the signed order on all parties listed below and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| IN RE: | **Case No.: 16-10389-AJC** |
| **LIZA HAZAN** a/k/a Elizabeth Hazan, | **Chapter 11** |
| Debtor. | |

CREDITOR, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC.'S:

(A) OBJECTION TO CONFIRMATION OF DEBTOR'S FOURTH AMENDED PLAN
OF REORGANIZATION; AND

(B) MOTION TO CONVERT OR DISMISS CASE, OR ALTERNATIVELY, MOTION
FOR STAY RELIEF TO FILE ADDITIONAL LIEN

Creditor, Valencia Estates Homeowners' Association, Inc. (the "Association"), by and through its undersigned counsel, hereby files this its: (A) Objection to Confirmation of the Debtor's Fourth Amended Plan of Reorganization [D.E. 563], and (B) its Motion to Convert or Dismiss Case, or Alternatively, Motion for Stay Relief to File Additional Lien, and in support thereof, states the following:

SUMMARY OF OBJECTION AND MOTION

1.      The Association objects to the Debtor's Fourth Amended Plan of Reorganization[1] (the "Plan") because **the Debtor is in violation of the Stipulation previously entered by this Court as between Debtor and the Association**. A copy of the Stipulation is attached hereto and incorporated herein as **Exhibit "A"** (the "Stipulation").

---

[1] The Association previously filed an Objection to Debtor's Fifth Amended Disclosure Statement and Motion to Dismiss/Convert [D.E. 566]; however, on December 11, 2017, the Court vacated its prior Order Setting Hearing on Approval of Disclosure Statement (*see* D.E. 574 and 576) and entered instead an Order Approving Disclosure Statement and Setting Hearing on Confirmation of Plan (D.E. 580). Accordingly, the Association now files this Objection to Confirmation of the Plan.

2.      The Stipulation requires Debtor to pay all monthly and/or special assessments on an ongoing basis as required by the Association's Declaration of Covenants (the "Ongoing Assessments"), and if she fails to do so, **the Stipulation provides the Plan will not be confirmed**. Exhibit "A" at ¶ 9.  Furthermore, the Association has the right to file and foreclose upon a new lien against the Subject Property if Debtor fails to pay the Ongoing Assessments.  *See* **Exhibit "A"** at ¶¶ 7 and 9.

3.      Debtor has failed to pay the Special Assessment (defined below) despite notice and demand, and Debtor is therefore in violation of the Stipulation.  **Indeed, Debtor even admits in her recent filings that she has not paid the Special Assessment.**  D.E. 562 at pp. 22-23; D.E. 563 at p. 12.  Accordingly, pursuant to the Stipulation entered by this Court, Debtor's Plan cannot be confirmed, and the Association is entitled to stay relief to file a new lien and seek enforcement thereof against the Subject Property.

4.      **The Debtor's games have gone on long enough, and cause exists under 11 U.S.C. § 1112(b)(4) to dismiss or convert this case to a Chapter 7 proceeding**.  This Bankruptcy Action was filed almost two (2) years ago in January 2016.  During that time, Debtor has filed **six (6) different Disclosure Statements and five (5) different proposed Plans**, and nearly all of them have been attacked by objections from various creditors.

5.      In each Disclosure Statement and proposed Plan since December of 2016, Debtor states she will soon earn "significant funds (comparable to past earnings) in the next six months", which past earnings she claims are historically in excess of $350,000.00.  She proposes to fund her Plan by using this mysterious consulting income, despite the fact that **she has received $0.00 in business income from January 2017 to present**.  Her monthly Debtor-in-Possession Operating Reports demonstrate that her alleged expected business income is non-existent, if not an outright

**Haber Slade, P.A.**

fabrication, as she consistently receives $0.00 in business income per month. *See* D.E. 394, 422, 437, 461, 493, 515, 530, 558, 559, and 564.  She receives only some amounts of household income per month (anywhere from $800/month to $12,000/month) - - the majority of which is not earned income, but rather appears to be monetary gifts from her husband.  *See id.*

6.      Debtor's creditors, including the Association, should be paid what they are owed through conversion of this Action to a Chapter 7 proceeding, followed by liquidation of the Debtor's primary asset, i.e. - - the Subject Property.

## BACKGROUND

7.      The Association previously objected [D.E. 138] to Debtor's original Disclosure Statement [D.E. 103] for several reasons, including because Debtor failed to adequately describe Debtor's alleged consulting and rental incomes which were to fund the Plan, and which, to date, do not appear to have materialized or have been misdirected elsewhere.

8.      On or about August 17, 2016, Debtor and the Association entered into a Stipulation for Settlement of the Association's Claim #10, as well as the Association's pending Motion for Adequate Protection [D.E. 94], both of which were set to be heard by the Court on August 17, 2016.  The Stipulation for Settlement was signed by the Debtor outside the courtroom to resolve the Association's Motion for Adequate Protection, as well as to solicit the vote of the Association in favor of the Debtor's eventual amended plan.  *See* **Exhibit "A"** at ¶¶ 5, 11.

9.      On or about November 17, 2016, the Court entered an Agreed Order approving the Stipulation, a copy of which is attached hereto and incorporated herein as **Exhibit "B"**.

10.     The Stipulation clearly requires that Debtor pay Ongoing Assessments, failing which her plan will not be approved. *See* **Exhibit "A"** at ¶¶ 7, 9. Furthermore, pursuant to the Stipulation, in the event of non-payment by the Debtor for the Ongoing Assessments, the

Association has "the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same." *Id.* at ¶ 7.

11.     On or about August 9, 2017, the Association passed a special assessment for certain site plan and landscape improvements to the Common Elements of the Association (the "Special Assessment").   Debtor was notified of same in accordance with the Association's standard procedures.   *See* a copy of the Notice to Owners dated August 14, 2017, attached hereto and incorporated herein as **Exhibit "C"**.

12.     The Board voted that each Owner's contribution to the Special Assessment was to be paid in one (1) lump sum payment on or before September 15, 2017.   *See* **Exhibit "C"**. Specifically, Debtor's portion of the Special Assessment to be paid on or before September 15, 2017, was $62,500.00.

13.     On or about August 22, 2017, the undersigned law firm wrote to Debtor's counsel regarding Debtor's failures to maintain and repair the Subject Property in accordance with the Association's Covenants, and also to remind Debtor's counsel that the Special Assessment in the amount of $62,500.00 was coming due from Debtor on or before September 15, 2017.   A copy of said correspondence is attached hereto and incorporated herein as **Exhibit "D"**.

14.     **Despite Debtor's clear obligations under the Stipulation and the Association's Declaration, and despite multiple notices of same, Debtor failed to pay the Special Assessment.** Therefore, Debtor is in clear violation of the Stipulation, and per the Stipulation, Debtor's proposed plan must be denied.   Additionally, under the Stipulation, the Association is entitled to initiate and purse a new collections action against Debtor's Subject Property, and should be provided stay relief for same.

**BASES FOR OBJECTION, CONVERSION/DISMISSAL, AND/OR STAY RELIEF**

**A. Objection to Confirmation**

15. The Stipulation, which was executed by the Debtor well over a year ago, and also approved and adopted by this Court, is crystal clear in that if Debtor fails to fulfill her obligations under the Stipulation, her Plan must be denied. *See* **Exhibits "A" and "B"**.

16. In her most recent Fifth Amended Disclosure Statement and Fourth Amended Plan, Debtor **admits** that she has not paid the Special Assessment, and offers to pay same in installments over five (5) years as part of her Plan. *See* D.E. 562 at p. 22; D.E. 563 at p. 12.

17. This offer to pay in installments over time was **not** agreed to, and was indeed, **specifically rejected** by the Association on August 23, 2017 and on August 31, 2017, since no other Owner at the Association was permitted to pay over time, and no exceptions would or could be made for Debtor without treating the Debtor differently than all of the other Owners. Indeed, such a regime would not only be unfair to the other Unit Owners, but would fall woefully short of the financial needs of the Association to complete the renovations, which are notably already underway.

18. The Debtor then goes on in her proposed Plan to concoct a completely bogus story about damage to her fence, which she claims must be reimbursed by the Association and/or by the Fisher Island Community Association, Inc. ("FICA"). Her theory is that this reimbursement would offset the Special Assessment amount owed by Debtor to the Association, as well as other amounts owed by Debtor to FICA. She offers no legal support which would authorize such an "offset", especially in light of the fact that Debtor has no pending claim against the Association for any damage to the fence.

19.     To be clear, the Association did not cause any damage to Debtor's fence.  Hurricane Irma caused a tree on Debtor's Subject Property to fall on the fence, and when FICA removed the tree during post-hurricane clean-up, the fence was already broken.  Photos of the broken fence, as well as a report dated October 21, 2017, describing that the tree fell during Hurricane Irma, are attached hereto and incorporated herein as **Composite Exhibit "E"**.

20.     Furthermore, it is Debtor's responsibility to maintain her fence and landscaping. Pursuant to the Association's Covenants at Section 5.1, Owners are responsible for maintaining all structures located on their Lots, including fences, which must be kept "in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance" of the Valencia Estates community. A copy of Section 5 of the Covenants is attached hereto and incorporated herein as **Exhibit "F"**.  Owners are also responsible for maintaining their trees, shrubbery, grass and landscaping on their Lots, and keeping same in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole.  *See id.* at Section 5.2.  So, at best, Hurricane Irma caused the damage to the fence, and Debtor needs to submit an insurance claim like everyone else - - or, at worst, perhaps the fence was already broken due to Debtor's tree before Hurricane Irma, due to Debtor's neglect of the Subject Property, and Debtor is now once again trying to avoid responsibility to maintain and repair the Subject Property.

21.     In light of the above, Debtor has no claim for a "setoff" to excuse her failure to pay the Special Assessment, in clear and direct violation of the Stipulation.  Thus, unless and until she pays the Special Assessment due and owing to the Association, her Plan cannot be confirmed.  *See* **Exhibit "A"** at ¶ 9.

22.     Further, pursuant to 11 USC § 1129, one of the requirements to confirm a plan is that the plan is "not likely to be followed by the liquidation, or the need for further financial

reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan,  unless such liquidation or reorganization is proposed in the plan."

23.     Here, Debtor's monthly Operating Reports reflect that her proposed Plan is **not feasible**.  Her Plan states that she will have $65,000.00 in cash on hand at confirmation, and depends on her obtaining being paid $120,000.00 in business income in February 2018; $100,000.00 in March 2018; $80,000.00 in April, May and June 2018, and then $50,000.00 per month in business income for the rest of the year.  But, in the past year, she has earned **$0.00 business income**, and appears to be subsisting solely on handouts from her husband.  This is simply not feasible, nor is fair or equitable to Debtor's creditors to allow her charade to continue while she lives in the Subject Property without paying all assessments coming due on same.  *See, e.g., In re Glades Health Care, Ltd.,* 88 B.R. 439 (Bankr. S.D. Fla. 1988) (holding that Chapter 11 plan was not feasible, and thus would not be confirmed, where funding for plan would require 150% increase in operating profit from previous year's experience, while there had been no change from pre-bankruptcy circumstances affecting debtor's income and expenses).

24.     Thus, not only has Debtor **stipulated** that her Plan cannot be confirmed if she defaults under the parties' stipulation, but the requirements for confirmation under 11 USC § 1129 are also not met here.

**B.  Request for Dismissal or Conversion of Case to Chapter 7**

25.     Debtor's transparent attempt to avoid payment of the Special Assessment, and to avoid the clear remedies under the Stipulation for her non-payment, is just the latest example in a long saga of shenanigans and misrepresentations made by the Debtor to this and other Courts to avoid complying with her legal obligations.

26.    **Debtor simply believes that the rules do not apply to her.  This Court should remind her that she must comply with the rules just as anyone else.**  Her cavalier attitude and wanton disregard of Court Orders and the Stipulation is knowing and willful and should not be tolerated.

27.    Debtor's creditors, including the Association, have been severely prejudiced by Debtor's manipulation efforts and non-stop litigation tactics. With respect to the Association specifically, the Association is a non-profit organization and is dependent upon homeowners paying their share of the Common Expenses.   The Association has not been timely paid maintenance assessments by Debtor **since 2007**, all the while the Debtor has resided in the Property for free, at great cost to the Association's other members.  Now, Debtor is refusing to pay her portion of the Special Assessment, and fabricating claims against the Association for damages to her fence to try to avoid payment - - once again seeking to have the other Unit Owners pay her financial obligations.  At what point will she actually be held responsible for her obligations?

28.    It is simply inequitable to continue to allow Debtor to take advantage of and manipulate the judicial system, including this Bankruptcy Court, in this manner.  *See, e.g., In re On the Ocean, Inc.,* No. 16-16204-BKC-RBR, 2016 WL 8539791, at *3 (Bankr. S.D. Fla. June 6, 2016) (noting that "[c]ourts have routinely found bad faith and dismissed cases in circumstances where debtors have filed to purposely delay a creditor's inevitable recovery of its property" and that "[t]he law requires more of a Chapter 11 Debtor than the mere desire to stay pending litigation or use the bankruptcy to gain a tactical litigation advantage.").

29.    Her monthly Operating Reports reflect that her proposed Plan is not feasible.  She has earned **$0.00 business income** in the past year, and appears to be subsisting solely on handouts from her husband!  Now, with her clear violation of the Stipulation, her Plan cannot be confirmed

**Haber Slade, P.A.**

regardless of its lack of feasibility. Accordingly, the Court should dismiss or convert the case to a Chapter 7 proceeding.

30.    Pursuant to 11 U.S.C. § 1112(b)(1):

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court **shall** convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, **whichever is in the best interests of creditors and the estate**, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate. [Emphasis added.]

31.    Under 11 U.S.C. § 1112(b)(4), cause includes numerous conditions or circumstances, including the following instances which are relevant here:

> a)  substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; and

> e)  failure to comply with an order of the court.

32.    Debtor has failed to comply with the Stipulation, which was ratified by Court Order. That alone is enough to dismiss or convert this case, especially in light of the Stipulation's provision that Debtor's Plan **cannot be confirmed** if she violates the Stipulation. *See, e.g., In re Efron,* 529 B.R. 396, 412 (B.A.P. 1st Cir. 2015) (upholding grounds for dismissal where debtor failed to comply with Court orders directing him to make post-petition payments, and noting that "[w]ithout question and despite his objections, the debtor was nonetheless obligated to comply with the DSO Order and the subsequent orders directing him to commence the monthly DSO payments."). In addition, the Bankruptcy Court for the Eastern District of New York described when cause arises under 11 U.S.C. § 1112(b)(4)(E) in the following manner:

> This Section gives effect to the notion that compliance with court orders is a fundamental obligation of any party, and a debtor's failure to comply with a court order is a troubling matter indeed. As one court noted, "[b]ecause ... violations [of a court's orders] are disrespectful to the Court, they are disrespectful to the judicial process." *Babakitis v. Robino (In re Robino),*

**Haber Slade, P.A.**

243 B.R. 472, 487 (Bankr.N.D.Ala.1999). And Section 1112(b)(4)(E) also reflects the fact that the protections that a debtor gains under the Bankruptcy Code travel in tandem with many obligations that the debtor must meet. **As the _Robino_ court noted, "[i]n the bankruptcy context, if a debtor wants the protection the Bankruptcy Code offers, that debtor must be willing to abide by the orders a court enters." _Id._ Notably, Section 1112(b)(4)(E) does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud**.

_In re Babayoff_, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011) (emphasis added).

33.     In addition, it is more than clear at this stage that Debtor does not have the ability to fund her Plan as she proposes - - the "consulting income" she claims she will earn is nothing but a fairytale, causing this matter to be drawn out for almost two (2) years with no real relief for the creditors.  Debtor's Plan is not feasible, and her continuous delay and manipulation of the judicial system is harmful to her creditors, many of whom, like the Association, have been trying to collect from her for multiple years.  Thus, the case should be dismissed or converted to a Chapter 7 proceeding.  _See, e.g., In re Brooks_, 488 B.R. 483, 490 (Bankr. N.D. Ga. 2013) ("[A] **debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial toward creditors**…and which is adequate justification, in and of itself, for dismissal of a Chapter 11 case for cause.") (citations omitted) (emphasis added); _In re Erkins_, 351 B.R. 218, 219 (Bankr.M.D.Fla.2006) (upholding original order to dismiss, which was based on the debtor's failure to propose a plan over a three year period, thus indicating little potential for successfully effectuating such a plan and creating delay that was unreasonably prejudicial to the creditor); _In re Tucker_, 411 B.R. 530 (Bankr. S.D. Ga. 2009) (Upon determining that "cause" existed to dismiss or convert debtor's individual Chapter 11 case based on his continued delay in filing monthly operating reports, and based on inaccurate or misleading nature of such schedules and reports as debtor filed, bankruptcy court would exercise its authority to convert case to Chapter 7 rather than to dismiss, where case

had been pending for more than one year, during which time debtor had benefited from automatic stay despite his failure to adhere to his duties as debtor-in-possession); *In re Babayoff*, 445 B.R. 64 (Bankr. E.D.N.Y. 2011) (Cause to convert or dismiss Chapter 11 case arose from debtor's **inability to effectuate a plan**; debtor's creditors had objected to the plan, these objections presented an insurmountable obstacle to confirmation, and **the long history of the case showed that debtor had been unable to formulate a plan of reorganization or to make meaningful progress toward confirmation**, as neither of debtor's proposed plans was complete or satisfied the requirements of the Bankruptcy Code, and the disclosure statement similarly omitted required information, including a meaningful liquidation analysis or description of the risk factors or tax consequences under the plan).

34.     Additionally, there are no "unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate" under 11 U.S.C. § 1112(b)(2), and moreover, even if there were such "unusual circumstances" (which there are not), Debtor cannot meet the requirements of subsection (b)(2)(A) and (B) to avoid the Court's mandatory dismissal or conversion of this action.

35.     In light of the foregoing, the Court must dismiss or convert this proceeding, as there is plain cause to do so under 11 U.S.C. § 1112(b)(4).

**C.  Request for Stay Relief to Pursue New Collections Action**

36.     Again, the Stipulation is clear that the Association is entitled to initiate and pursue a new collection and foreclosure action, including a lien upon the Subject Property, if the Debtor fails to pay the Ongoing Assessments.  *See* **Exhibit "A"** at ¶ 7.

37.     However, for the avoidance of doubt and in light of the Debtor's prior bad-faith litigation tactics, the Association seeks the Court's permission to pursue same, but only in the event this action is not dismissed and/or converted to Chapter 7.

WHEREFORE, the Association respectfully requests that this Court enter an Order:

A.  Sustaining the Association's Objection to, and denying confirmation of, the Debtor's Fourth Amended Plan for the reasons set forth herein; and

B.  Ordering that the case be dismissed, or converted to a Chapter 7 proceeding so that the Subject Property can be sold, since Debtor's proposed Plan cannot be confirmed, is not feasible, and is continuing to cause severe prejudice to her Creditors; or

C.  Alternatively, awarding stay relief to the Association to pursue an additional collections and foreclosure action due to Debtor's non-payment of the Special Assessment; and

D.  Awarding the Association, per the Stipulation, attorney's fees and costs incurred in seeking enforcement of the Stipulation, as well as any such other and further relief this Court may deem just and proper.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY**, that a true and correct copy of the foregoing was furnished by CM/ECF to all electronic notice parties on the CM/ECF service list on December 20, 2017.

Respectfully submitted,

**HABER SLADE, P.A.**
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
(305) 379-2400
(305) 376-1106 (fax)
dbhpaservice@dhaberlaw.com

By: _/s/ David B. Haber, Esq._
**DAVID B. HABER, ESQ.**
Florida Bar No.: 435368
dhaber@dhaberlaw.com
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@dhaberlaw.com
cpla@dhaberlaw.com

Exhibit "A"

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**
www.flsb.uscourts.gov

IN RE:

CaseNo:16-10389AJC
Chapter 11

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

**DEBTOR.                    /**

## STIPULATION OF SETTLEMENT CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

1. On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

2. On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

3. On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

4. On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

5. Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

   A. Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

   B. Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

   C. Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

6. Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

annually on the twelfth (12th) month.  All monies are to be paid on or before the 48th month after the Effective Date.  Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments"). *The Claim Amount of $195,000.00 includes pre-petition and post-petition attorney's fees & costs absent a breach bcp Debtor as referenced below*

7.     Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments").  Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8.     Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000.  The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien").  Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below.  However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9.     Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement.  Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10.    If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period").  Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees").  The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief.  Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11.    Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the

*Valencia State court Action, claims, counterclaims, All defenses, proposed counterclaims + proposed third party claims against Valencia, it's agents, managers, attorneys, members & officers, raised or unraised, are released & waived.*

stipulated treatment.

12.   This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq.
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

EXHIBIT "B"



**ORDERED in the Southern District of Florida on November 17, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**THE SOUTHERN DISTRICT OF**
**FLORIDA MIAMI DIVISION**

**www.flsb.uscourts.gov**

IN RE:

                                        CaseNo:16-10389AJC
                                          Chapter 11

Liza Hazan
a/k/a ELIZABETH HAZAN

DEBTOR. _____/

**AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10**
**Valencia Estates Homeowners Assn, Inc.**

THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10 (Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter the "Stipulation"). The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

\* \* \*

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

EXHIBIT "C"



VALENCIA ESTATES
AT FISHER ISLAND

August 14, 2017

Dear Residents,

On Wednesday, August 9, 2017 the Association held a special meeting of the Board of Directors to consider and vote on the approval of an updated proposed new site plan and treescape landscaping modifications, both at the Associations front entrance and Valencia Drive. The membership approved the Special Assessment in the total amount of $750,000.00 to fund theses two projects.

A one time lump sum payment is due on September 15, 2017. Included with this letter you will find a payment coupon indicating the amount to be paid.

Please send your payment and the coupon to the address notated on the coupon.

Valencia Estates

c/o Marquis Association Management

PO. Box 521056

Miami, FL33152-1056

Valencia Estates continues to enjoy one of the lowest Operating Budgets of Fisher Island and continues to limit increases to monthly maintenance assessments.

The Board of Directors looks forward to continuing this precedent of careful and conservative fiscal management and appreciates your understanding as we ensure the Association's financial steadiness through the balance of the budget year.

If you should have any questions regarding the foregoing, please feel free to contact me at mercy.rodriguez@marquishoa.com or on my cell phone 305-962-2537.

Very truly yours,

_____

Mercy V Rodriguez, LCAM
On Behalf of the Board of Directors
Valencia Estates Home Owners Association, Inc.

EXHIBIT "D"



**REBECCA NEWMAN CASAMAYOR, Esq.**
305.379.2400 ext. 134
rcasamayor@dhaberlaw.com

August 22, 2017

**VIA E-MAIL ONLY:**
David Langley, Esq.
8551 W. Sunrise Blvd.
Suite 303
Plantation, FL 33322
E-mail: dave@flalawyer.com

RE:   **In re: Liza Hazan, Debtor**
      **Case No.: 16-10389-AJC – Chapter 11**

Dear Mr. Langley:

As you know, this law firm represents Valencia Estates Homeowners' Association, Inc. (the "Association") in the above-styled case (hereinafter the "Bankruptcy") filed by your client, Elizabeth Hazan (the "Debtor"). We write to notify you of two (2) major issues involving the Debtor and her home at Valencia Estates (hereinafter the "Subject Property"), which must be addressed forthwith.

**I. FIVE (5) DAY DEMAND TO REPAIR/MAINTAIN EXTERIOR OF SUBJECT PROPERTY**

The Debtor is failing to maintain the exterior of the Subject Property, including but not necessarily limited to, the landscaping, trees, and the pool. The exterior landscaping around the Subject Property is extremely overgrown, and the roots of the large tree in the front of the house are causing damage to the driveway. Photos of the front of the Subject Property, depicting the overgrown landscaping and the tree roots growing into and lifting up the driveway, are attached hereto as **Composite Exhibit "1"**. In addition, the pool maintenance personnel have reported that the Debtor's pool has not been properly maintained (despite their weekly routine maintenance efforts) and is consistently a green color, which is believed to be caused by the Debtor turning off the pool mechanical equipment and/or potentially another defect with the equipment, which is the Debtor's responsibility to maintain, repair and replace. These factors are both unsightly and well afoul of the acceptable standards set by the Association (and most probably, in violation of applicable zoning and housing codes).

Pursuant to the Association's Declaration of Covenants and Restrictions (the "Covenants") at Section 5.2, Owners are responsible for maintaining trees, shrubbery, landscaping, sidewalks, driveways, and their pools, which must be kept "in good working condition and all in a neat, orderly and attractive manner consistent with the general appearance of Fisher Island as a whole." A copy of Section 5 of the Covenants is attached hereto for you reference as **Exhibit "2"**. While the Association provides some basic routine services for these items, such as cutting the lawn and chemically treating/skimming the pool, Owners are responsible for landscape replacements, as well as for pool mechanical and surface repairs and maintenance. The Debtor has ignored those responsibilities, and the Subject Property is

**HABER SLADE, P.A.**
MIAMI CENTER | SUITE 1205 | 201 S. BISCAYNE BLVD. | MIAMI, FLORIDA 33131 | T: 305.379.2400 | F: 305.379.1106 | www.dhaberlaw.com

*Demand Letter – Elizabeth Hazan*
*August 22, 2017*
*Page 2 of 3*

visibly deteriorating, devaluing the Association as a whole and otherwise impairing the Members' rights to reside in a well-kept community.

In accordance with Section 5.3 of the Covenants, the Association hereby notifies the Debtor that if the Debtor fails to correct these issues and provide for the proper maintenance of the Subject Property within **five (5) days** of the date of this correspondence, the Association reserves its right to enter onto the Subject Property and cause the work to be performed, in order to bring the Subject Property into compliance with the Covenants. The costs of this work, as well as a twenty-five percent (25%) surcharge, will be specially assessed against the Subject Property, as permitted by Section 5.4 of the Covenants.

As an alternative to performing the work and specially assessing the costs and surcharge for same against the Subject Property, the Association also reserves its right to move for the appointment of a Trustee in the Bankruptcy Action, and to seek the Court's approval for the Trustee to cause the work to be performed and/or to liquidate the Subject Property. There can be no doubt that the Subject Property is the primary, if not the sole, asset of the Debtor in the Bankruptcy proceeding, yet the Debtor is nonetheless inexplicably failing to maintain and preserve that asset for the benefit of her numerous creditors, including the Association, and is otherwise materially wasting same. We anticipate that the Bankruptcy Court, and the other creditors, will have no patience for this. Despite the Debtor's petulance she must either conform her behavior or be prepared to lose the protection the Court is temporarily graciously affording her.

## II. SPECIAL ASSESSMENT PASSED AUGUST 9, 2017 AND DUE SEPTEMBER 15, 2017

As the Debtor should be aware, on August 9, 2017, the Association held a Special Meeting of the Board of Directors to consider and vote on: (i) the approval of the updated proposed New Site Plan ("New Site Plan") and Treescape Landscaping Modifications ("Treescape Improvements"), both at the Association's front entrance and Valencia Drive (collectively, the "Project"); and (ii) the authorization of the Board of Directors to pay for the Project using the Association's operating account (the "Funding Authorization"), through a special assessment of up to, but not to exceed $750,000.00, and/or through a loan of up to, and not to exceed, $750,000.00.

The votes for the Project and the Funding Authorization both passed. With respect to the Funding Authorization, the Board voted that each Owner's contribution to same shall be paid in one (1) lump sum payment on or before September 15, 2017. The Debtor's lump sum amount due on or before September 15, 2017 is $62,500.00 (the "Project Assessment").

Pursuant to the Stipulation of Settlement of Claim 10, executed by the Parties on August 17, 2016 and thereafter approved and ratified by the Bankruptcy Court (the "Stipulation"), the Debtor is responsible to pay all ongoing monthly and/or special assessments, which would include both of the special assessments referenced herein (i.e. - - the costs and surcharge if the Association is forced to carry out repair and maintenance work to the exterior of the Subject Property, and the $62,500.00 Project Assessment). *See* Stipulation at Paragraph 7.

In the event that the Debtor fails to pay these special assessment amounts, she will be in violation of the Stipulation, in which case **her proposed Plan cannot be confirmed**. *See id.* at Paragraph 9. Therefore, we suggest that you immediately address these issues with the Debtor, in order to ensure that

**HABER SLADE, P.A.**
MIAMI CENTER | SUITE 1205 | 201 S. BISCAYNE BLVD. | MIAMI, FLORIDA  33131 | T: 305.379.2400 | F: 305.379.1106 | www.dhaberlaw.com

*Demand Letter – Elizabeth Hazan*
*August 22, 2017*
*Page 3 of 3*

she remains in compliance with both the Covenants and the Stipulation, and advise us of same.  Failure to comply will result in the Association exercising any and/or all of its legal and equitable remedies pertaining to same.

      This correspondence reserves all rights of the Association, without limitation and/or reservation.

      PLEASE GOVERN YOURSELF ACCORDINGLY.

                  Sincerely,

                  **HABER SLADE, P.A.**

                  */s/ Rebecca N. Casamayor*

                  DAVID B. HABER, ESQ.
                  REBECCA NEWMAN CASAMAYOR, ESQ.

Enclosures:  As noted
cc:    Elizabeth Hazan [via FedEx]
        Tracking Number 770083435236

# Exhibit 1













# Exhibit 2

OFF. REC BK.
21004PC0398

from time to time sooner at the sole election of the Developer), be conveyed by quit claim deed to the Association, which shall automatically be deemed to have accepted such conveyance. Beginning from the date this Declaration is recorded, the Association shall be responsible for the maintenance, insurance and administration of such Common Properties (whether or not then conveyed to the Association), all of which is to be performed in a continuous and satisfactory manner without cost to the general taxpayers of the County. It is intended that all real estate taxes assessed against that portion of the Common Properties owned or to be owned by the Association shall be (or have been, because the purchase prices of the Lots and Homes have already taken into account their rights in and to the Common Properties) proportionally assessed against and payable as part of the taxes of the applicable Lots within the Neighborhood. However, in the event that, notwithstanding the foregoing, any such taxes are assessed directly against the Common Properties, the Association shall be responsible for the payment of same (subject to protest or appeal before or after payment), including taxes on any improvements and any personal property located thereon, which taxes accrue from and after the date this Declaration is recorded, and such taxes shall be prorated between Developer and the Association as of the date of such recordation. Developer and its affiliates shall have the right from time to time to enter upon the Common Properties and other portions of the Neighborhood for the purpose of the installation, construction, reconstruction, repair, maintenance, replacement, operation, expansion and/or alteration of any improvements or facilities on the Common Properties or elsewhere within Fisher Island that Developer and its affiliates elect to effect, and to use the Common Properties and other portions of the Neighborhood for sales, displays and signs or for any other purpose during the period of construction and sale of any portion of the Neighborhood. Without limiting the generality of the foregoing, the Developer and its affiliates shall have the specific right to maintain upon any portion of the Neighborhood, sales, administrative, construction and/or other offices without charge, and appropriate easements of access and use are expressly reserved unto the Developer and its affiliates, and its and their successors, assigns, employees and contractors, for this purpose. Any obligation to complete portions of the Common Properties shall, at all times, be subject and subordinate to these rights and easements and to the above-referenced activities. Accordingly, the Developer shall not be liable for delays in such completion to the extent resulting from the need to finish the above-referenced activities prior to such completion.

### ARTICLE 5.

### MAINTENANCE OF HOMES AND LOTS

5.1.    Homes.  Each Owner shall be solely responsible for maintaining all structures (including the Home) located on his Lot, all screens, fences, walls and glass surfaces on or within the Lot, and all mechanical components serving such structures (including, without limitation, air conditioning, electrical and plumbing, and wiring, panels and conduits for any alarms, monitoring or security devices, if any, installed in a Home) in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance of The Neighborhood. The minimum (though not sole) standard for the foregoing shall be consistency with the general appearance of Fisher Island as initially constructed and otherwise improved by Developer (taking into account, however, normal weathering and fading of exterior finishes, but not to the point of unsightliness, in the judgment of the Architectural Control Board). Each Owner shall repaint or restain, as appropriate, the exterior portions of his Home (with the same colors as initially used on the Home or as otherwise approved by the Architectural Control Board) as often as is necessary to comply with the foregoing standards. Notwithstanding the foregoing, however, the Association shall, approximately once every five (5) years, repaint the exteriors of each Home (with the costs thereof to be paid for through assessments).

- 9 -

OFF. REC. BK.
21004PG0399

5.2.   **Lots.**  Each Owner shall be solely responsible for maintaining his Lot, including, without limitation, the trees, shrubbery, grass and other landscaping thereon, the irrigation system, the sidewalks and driveways thereon and the swimming pool thereon, in good working condition and all in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole.  The minimum (though not sole) standard for the foregoing shall be the general appearance of Fisher Island as initially constructed and otherwise improved by Developer, and as to landscaping, as initially landscaped by Developer (such standard being subject to being raised by virtue of the natural and orderly growth and maturation of applicable landscaping, as properly trimmed and maintained).  The foregoing maintenance obligations of the Owner shall also apply to the land up to the centerline of any unimproved road right of way which a Lot abuts, unless the Association assumes such maintenance responsibilities. Notwithstanding the foregoing, the Association shall provide the following services to each Lot: routine lawn cutting, weed pulling and hedge trimming and routine pool chemical treatment and skimming.  Any and all other necessary or desired landscape or pool maintenance shall be performed solely by the Owner, at the Owner's sole cost and expense, including, without limitation, seasonal plantings, landscape replacements, pool mechanical repairs, maintenance and replacements and pool surface repairs, maintenance and replacements.

5.3.   **Remedies for Noncompliance.**  In the event of the failure of an Owner to maintain his Home or Lot in accordance with this Article, the Association shall have the right, upon five (5) days' prior written notice to the Owner at the address last appearing in the records of the Association, to enter upon the Owner's Lot and perform such work as is necessary to bring the Lot or Home, as applicable, into compliance with the standards set forth in this Article.  The remedies provided for herein shall be cumulative with all other remedies available under this Declaration (including, without limitation, the imposition of fines or special assessments or the filing of legal or equitable actions).

5.4.   **Costs of Remedial Work; Surcharges.**  In the event that the Association performs any remedial work on a Home or Lot pursuant to this Article, the costs and expenses thereof shall be deemed a special assessment under Section 6.4 of this Declaration and may be immediately imposed by the Board of Directors.  In order to discourage Owners from abandoning certain duties hereunder for the purpose of forcing the Association to assume same, and, additionally, to reimburse the Association for administrative expenses incurred, the applicable entity may impose a surcharge of not more than twenty-five percent (25%) of the cost of the applicable remedial work, such surcharge to be a part of the aforesaid special assessment.  No bids need be obtained for any of the work performed pursuant to this Article and the person(s) or company performing such work may be selected by the Association in the sole discretion of the Board.

5.5.   **Right of Entry.**  There is hereby created an easement in favor of the Association and its applicable designees over each Lot for the purpose of entering onto such Lot in the performance of the work herein described.

5.6.   **Limited Exemption.**  To the extent that a Home on a Lot is under construction by the Developer or a builder bound to comply with construction-related requirements or restrictions imposed by the Developer, the provisions of this Article shall not apply to such Lot until such time as the construction of the Home is completed as evidenced by the issuance of a certificate of occupancy therefor.

- 10 -



| Fisher Island |
|:---:|
| 1 Fisher Island Drive |
| Miami Beach, FL 33109 |
| **Case Report** |

| | | | |
|---|---|---|---|
| **Report Type:** | **Complaint** | **Case #:** | **17-10-0069** |
| **Location:** | **6913 - FICA HOT LIST Valencia Drive** | | |
| **Submitted:** | **10/21/2017 6:00:51 PM** | | |
| **Written By:** | **Juan Meza** | | |
| **Caller:** | **Mobile Initiation** | | |

| Mobile Unit Event | Timestamp | User |
|---|---|---|
| Arrival | 10/21/2017 6:00:51 PM | Juan Meza |
| Departure | 10/21/2017 6:15:36 PM | Juan Meza |

| Mobile Unit Question | Response |
|---|---|
| **Occurence Date/Time** | 10/21/2017 06:00:07 PM |
| **Name(s) of parties involved?** | Elizabeth Haven |
| **Describe Exact Location** | Backyard in unit 6913. |
| **Narrative** | Elizabeth Hazen complained about the removal of her fence in her backyard. Elizabeth said she approved the removal of fallen trees that were in her property but not her fence. Pictures were taken.<br><br>Sergio Ortiz said the fence was part of debris and damage caused by Hurricane Irma. Sergio said removal of debris was authorized by property management and FICA.<br><br>Property manager Mercy Rodriguez was advised on complaint. Mercy said she'll contact Elizabeth on Monday. |
| **Did you get any written statements?** | No |
| **Reporting Party - Contact Details** | First Name: Elizabeth<br>Last Name: Haven<br>Custom: NA |
| **Person Notified** | First Name: Mercy<br>Last Name: Rodriguez<br>Company Name: Marquis<br>Custom: NA |

| Attached Media Below |
|:---:|



| Attached Media | Download |
| --- | --- |
| 10/21/2017 5:59:29 PM | https://pulse2.abdi.net/gTour/get/?i=063B391D-E2A1-4A76-B455-EA9F79832E33 |



10/21/2017 File Upload by Juan Meza (JPG) : 6913 backyard fence (Uploaded by: Juan Meza)

| 10/21/2017 6:25:40 PM | https://pulse2.abdi.net/gTour/get/?i=727EE2E4-AAF2-4C2F-9B9A-B534363DCA5E |



10/21/2017 File Upload by Juan Meza (JPG) : debris removed from 6913 (Uploaded by: Juan Meza)

















# EXHIBIT "F"

OFF. REC BK.

2 1 0 0 4 PG 0 3 9 8

from time to time sooner at the sole election of the Developer), be conveyed by quit claim deed to the Association, which shall automatically be deemed to have accepted such conveyance. Beginning from the date this Declaration is recorded, the Association shall be responsible for the maintenance, insurance and administration of such Common Properties (whether or not then conveyed to the Association), all of which is to be performed in a continuous and satisfactory manner without cost to the general taxpayers of the County. It is intended that all real estate taxes assessed against that portion of the Common Properties owned or to be owned by the Association shall be (or have been, because the purchase prices of the Lots and Homes have already taken into account their rights in and to the Common Properties) proportionally assessed against and payable as part of the taxes of the applicable Lots within the Neighborhood. However, in the event that, notwithstanding the foregoing, any such taxes are assessed directly against the Common Properties, the Association shall be responsible for the payment of same (subject to protest or appeal before or after payment), including taxes on any improvements and any personal property located thereon, which taxes accrue from and after the date this Declaration is recorded, and such taxes shall be prorated between Developer and the Association as of the date of such recordation. Developer and its affiliates shall have the right from time to time to enter upon the Common Properties and other portions of the Neighborhood for the purpose of the installation, construction, reconstruction, repair, maintenance, replacement, operation, expansion and/or alteration of any improvements or facilities on the Common Properties or elsewhere within Fisher Island that Developer and its affiliates elect to effect, and to use the Common Properties and other portions of the Neighborhood for sales, displays and signs or for any other purpose during the period of construction and sale of any portion of the Neighborhood. Without limiting the generality of the foregoing, the Developer and its affiliates shall have the specific right to maintain upon any portion of the Neighborhood, sales, administrative, construction and/or other offices without charge, and appropriate easements of access and use are expressly reserved unto the Developer and its affiliates, and its and their successors, assigns, employees and contractors, for this purpose. Any obligation to complete portions of the Common Properties shall, at all times, be subject and subordinate to these rights and easements and to the above-referenced activities. Accordingly, the Developer shall not be liable for delays in such completion to the extent resulting from the need to finish the above-referenced activities prior to such completion.

### ARTICLE 5.

### MAINTENANCE OF HOMES AND LOTS

5.1.    <u>Homes</u>.  Each Owner shall be solely responsible for maintaining all structures (including the Home) located on his Lot, all screens, fences, walls and glass surfaces on or within the Lot, and all mechanical components serving such structures (including, without limitation, air conditioning, electrical and plumbing, and wiring, panels and conduits for any alarms, monitoring or security devices, if any, installed in a Home) in good working condition and in a neat, orderly and attractive manner and consistent with the general appearance of The Neighborhood. The minimum (though not sole) standard for the foregoing shall be consistency with the general appearance of Fisher Island as initially constructed and otherwise improved by Developer (taking into account, however, normal weathering and fading of exterior finishes, but not to the point of unsightliness, in the judgment of the Architectural Control Board). Each Owner shall repaint or restain, as appropriate, the exterior portions of his Home (with the same colors as initially used on the Home or as otherwise approved by the Architectural Control Board) as often as is necessary to comply with the foregoing standards. Notwithstanding the foregoing, however, the Association shall, approximately once every five (5) years, repaint the exteriors of each Home (with the costs thereof to be paid for through assessments).

- 9 -

OFF. REC. BK.

21004PG0399

5.2. Lots. Each Owner shall be solely responsible for maintaining his Lot, including, without limitation, the trees, shrubbery, grass and other landscaping thereon, the irrigation system, the sidewalks and driveways thereon and the swimming pool thereon, in good working condition and all in a neat, orderly and attractive manner and consistent with the general appearance of Fisher Island as a whole. The minimum (though not sole) standard for the foregoing shall be the general appearance of Fisher Island as initially constructed and otherwise improved by Developer, and as to landscaping, as initially landscaped by Developer (such standard being subject to being raised by virtue of the natural and orderly growth and maturation of applicable landscaping, as properly trimmed and maintained). The foregoing maintenance obligations of the Owner shall also apply to the land up to the centerline of any unimproved road right of way which a Lot abuts, unless the Association assumes such maintenance responsibilities. Notwithstanding the foregoing, the Association shall provide the following services to each Lot: routine lawn cutting, weed pulling and hedge trimming and routine pool chemical treatment and skimming. Any and all other necessary or desired landscape or pool maintenance shall be performed solely by the Owner, at the Owner's sole cost and expense, including, without limitation, seasonal plantings, landscape replacements, pool mechanical repairs, maintenance and replacements and pool surface repairs, maintenance and replacements.

5.3. Remedies for Noncompliance. In the event of the failure of an Owner to maintain his Home or Lot in accordance with this Article, the Association shall have the right, upon five (5) days' prior written notice to the Owner at the address last appearing in the records of the Association, to enter upon the Owner's Lot and perform such work as is necessary to bring the Lot or Home, as applicable, into compliance with the standards set forth in this Article. The remedies provided for herein shall be cumulative with all other remedies available under this Declaration (including, without limitation, the imposition of fines or special assessments or the filing of legal or equitable actions).

5.4. Costs of Remedial Work; Surcharges. In the event that the Association performs any remedial work on a Home or Lot pursuant to this Article, the costs and expenses thereof shall be deemed a special assessment under Section 6.4 of this Declaration and may be immediately imposed by the Board of Directors. In order to discourage Owners from abandoning certain duties hereunder for the purpose of forcing the Association to assume same, and, additionally, to reimburse the Association for administrative expenses incurred, the applicable entity may impose a surcharge of not more than twenty-five percent (25%) of the cost of the applicable remedial work, such surcharge to be a part of the aforesaid special assessment. No bids need be obtained for any of the work performed pursuant to this Article and the person(s) or company performing such work may be selected by the Association in the sole discretion of the Board.

5.5. Right of Entry. There is hereby created an easement in favor of the Association and its applicable designees over each Lot for the purpose of entering onto such Lot in the performance of the work herein described.

5.6. Limited Exemption. To the extent that a Home on a Lot is under construction by the Developer or a builder bound to comply with construction-related requirements or restrictions imposed by the Developer, the provisions of this Article shall not apply to such Lot until such time as the construction of the Home is completed as evidenced by the issuance of a certificate of occupancy therefor.

- 10 -

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION
www.flsb.uscourts.gov**

In re:

LIZA HAZAN,                                   CASE NO.: 16-10389 AJC

    Debtor.                                   CHAPTER 11

_____/

## SECURED CREDITOR'S FISHER ISLAND COMMUNITY ASSOCIATION, INC.'S LIMITED OBJECTION TO CONFIRMATION

    COMES NOW, Secured Creditor Fisher Island Community Association, Inc., (herein "Fisher Island", by and through the undersigned counsel, files this Limited Objection to Confirmation, and as grounds states as follows:

1. The Debtor filed for Bankruptcy Protection under Chapter 11 of the United States Bankruptcy Code on January 11, 2016.

2. The Debtor is the owner of, and resides at, a residence located at 6913 Valencia Drive, Fisher Island FL 33109.

3. The Property maintains a Legal Description as follows:

   Lot No. 7, Block No. 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, as recorded in Plat Book 157, at Page 64 of the Public Records of Miami-Dade County,Florida. A/K/A 6913 VALENCIA DRIVE FISHER ISLAND FLORIDA 33109.

4. The Debtor purchased the Property on March 7, 2007 from NLG, LLC.

5. On January 29, 2008, Fisher Island filed a Complaint in Miami-Dade County Court to foreclose on the lien rights provided to it under Fla. Stat. §720.3085 pursuant to its Declaration of Covenants (Exhibit A).

6.  The Debtor's Fourth Amended Plan (D.E. 563) indicates a dispute to, and no distribution on the currently unliquidated claim of Fisher Island.

7. In addition, the Debtor will obtain a discharge on the personal obligation on the pre-petition amounts, however the Debtor's plan is silent on the pre-petition *in rem* amounts which are collectable against the property pursuant to Fla. Stat. §720.3085 and the Declaration of Covenants for Fisher Island, the Property at issue and all potential subsequent purchasers of the property jointly and severally liable for the delinquent assessments.

8. It appears the Debtor seeks to treat the disputed pre-petition *in rem* obligation to Fisher Island Direct, and Outside the Bankruptcy.

9. The Debtor has taken no action to remove Fisher Island's Lien on the property pursuant t0 11 U.S.C. §506, and could not do so as it is argued by the Debtor that the property retains equity even above the Mortgages and Association Liens held on the property by various parties.

10. As such the lien should survive the Bankruptcy and confirmation of the plan to be fully collectible, both pre-petition and post-petition, *in rem*.

11. In addition the post-petition assessments are rendered non-dischargeable pursuant to 11 U.S.C. §523 (a)(16) which states:

> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable,

or possessory ownership interest in such unit, such corporation, or such lot, but nothing in this paragraph shall except from discharge the debt of a debtor for a membership association fee or assessment for a period arising before entry of the order for relief in a pending or subsequent bankruptcy case;

12. 11 U.S.C. §1141(c) of the Bankruptcy Code states:

> Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

13. While some claims on the property are being treated in the plan, the lien rights of the associations run with the land pursuant to Fla. Stat. §720.3085 and should not be voidable.

14. Extinguishing the lien rights of the Secured Creditor pursuant to 11 U.S.C. §1141(c) would not only be a massive windfall for the Debtor, but would also expand the debtor's personal discharge to cover non-filing parties by eliminating Fisher Island's rights to recover *in rem* and from future purchasers.

15. Furthermore, the Debtor's plan indicates the Debtor will bring an action against Fisher Island and Creditor Valencia Homeowners Association for an issue regard the Debtor's fence as well as an allegation accusing Fisher Island of not allowing the guests of the Debtor on the property.

16. The issue regarding the fence is strongly disputed and would be defended should the Debtor take legal action on that claim.

17. The issue of not allowing guests on the property was made pursuant to a Motion for Contempt and Sanctions against Fisher Island and Valencia Homeowners Association, which was subsequently withdrawn by the Debtor with prejudice.

18. As such retaining that allegation in a confirmed plan is not only inappropriate but flatly false.

## MEMORANDUM AT LAW

The general rule that a bankruptcy filing by a borrower does not affect the enforceability of a security interest in collateral has been part of U.S. bankruptcy jurisprudence for well over a century. See *Long v. Bullard*, 117 U.S. 617 (1886); accord *Dewsnup v. Timm,* 502 U.S. 410, 417 (1992) ("the creditor's lien stays with the real property until the foreclosure"); *Farrey v. Sanderfoot,* 500 U.S. 291, 297 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy."); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor in personam—while leaving intact another—namely, an action against the debtor in rem.").

Courts in this Circuit have held that the lien is not extinguished by operation of 11 U.S.C. 1141(c). See *Bowen v. United States (In re Bowen)*, 174 B.R. 840 (S.D. Ga. 1994) (holding that a "lien" is not an "interest" within the meaning of section 1141(c); any release of a lien must rely on section 506(d)); *see also* 11 U.S.C. §§ 1123(a)(5) (a chapter 11 plan must "provide adequate means for the plan's implementation, such as . . . (D) sale . . . either subject to or free of any lien or (E) satisfaction or modification of any lien") and 1123(b)(5) (a plan may "modify the rights of holders of secured claims").

Specifically, in this case there is no modification of the rights of Fisher Island, besides discharging the pre-petition *in personam* obligation. The plan simply deals with the pre-petition *in rem* obligation Direct, and Outside the Plan and as such all rights, aside from being able to proceed *in personam,* should be available to Fisher Island, the lien holder.

WHEREFORE, the Secured Creditor, Fisher Island Community Association, Inc., prays this Honorable Court Sustain the foregoing Limited Objection to Confirmation, indicate that the pre-petition rights to *in rem* recovery and recovery against subsequent purchasers are maintained by Fisher Island pursuant to Fla. Stat. §720.3085, and for any and all further relief the Court deems just and proper.

/s/ Robert A Gusrae, Esq.
Law Office of Robert A. Gusrae, Esq.
560 Lavers Cir # 147
Delray Beach, FL 33444
Phone: 561-716-4690
Email: Gusraelaw@gmail.com
FBN: 99793

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing was served by electronic service via the CM/ECF this 2nd Day of January 2018 to all parties who have made an appearance on this case including but not limited to the Debtor by mail to all parties on the Courts Mailing Matrix.

/s/ Robert A Gusrae, Esq.
Law Office of Robert A. Gusrae, Esq.
560 Lavers Cir # 147
Delray Beach, FL 33444
Phone: 561-716-4690
Email: Gusraelaw@gmail.com
FBN: 99793

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                              Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                     Chapter 11
_____/

### SECURED CREDITOR NLG, LLG'S
### AMENDED OBJECTION TO CONFIRMATION OF FOURTH AMENDED PLAN

Secured Creditor, NLG, LLC ("NLG"), through undersigned counsel, objects to the

Confirmation of the Fourth Amended Plan [ECF 563] filed by Elizabeth Hazan (the "Debtor") on

November 15, 2017, and states as follows:

### BACKGROUND

1.      The Debtor filed her Chapter 11 Petition on January 11, 2016 (the "Petition

Date"), the day before the Miami-Dade County Clerk was set to auction the Debtor's Property

pursuant to NLG's Foreclosure Judgment.  Twenty-four months later, as of December 29, 2017,

the Debtor had only **$1952.13 in cash** on hand per her late filed monthly operating report. [ECF

595].

2.      Although the Debtor claims in the Fifth Amended Disclosure Statement that she

earns in excess of $350,000 per year, [ECF 562 p. 4], she earned only a fraction of that (about

$125,000) through the calendar year of 2016 and even less in 2017. *Id.* Incredibly the Debtor

claims projected income of $810,000 in the financial projections attached to the Fifth Amended

Disclosure Statement. [*See* ECF 562-4].

3.      The Debtor's primary asset is her residence located at 6913 Valencia Drive,

Fisher Island, Florida (the "Property"). The Debtor has filed an appraisal in this case valuing the

Property at $9.5 million, and has scheduled claims secured by the Property, including NLG's claim, totaling over $12 million. [ECF 20, 81-1].

4.     The Debtor and her husband's solely-owned company, Selective Advisors Group, LLC ("Selective"), filed an adversary proceeding challenging NLG's secured claim (the "NLG Adversary"),[1] but each and every issue raised in the NLG Adversary was decided in NLG's favor by all the state court judges in Miami-Dade Circuit Court, *NLG, LLC v. Elizabeth Hazan, et al.*, Case No. 2011-42770-CA-01 (02) (the "Foreclosure Action") and by the Third District Court of Appeal. The Foreclosure Action resulted in NLG obtaining a Final Judgment of Foreclosure with respect to the Property in the amount of $4,876,654.29 (the "Foreclosure Judgment") on December 2, 2015.  [*See* ECF 66-1].  This Court entered judgment in favor of the Debtor and Selective in the adversary (a judgment which directly conflicts with the Foreclosure Judgment) and NLG has filed an appeal which is pending before the Honorable Darrin Gayles under case number 17-24127-DPG.  The Debtor fails to mention that NLG has filed an appeal even though the appeal was filed before the Fifth Amended Disclosure Statement and Fourth Amended Plan were filed.  As such, this Court can't proceed to a confirmation, when there is a pending appeal and if the Court does proceed to a confirmation hearing, then the Court must deny confirmation or delay confirmation until the pending appeal is adjudicated.

5.     The Fifth Amended Disclosure Statement and Fourth Amended Plan fail to mention the Foreclosure Action, the Foreclosure Judgment, the pending appeal of the NLG Adversary, or a host of other issues material to this case. Indeed, the Fifth Amended Disclosure Statement and Fourth Amended Plain fail to remedy any of the defects that resulted in the Court denying all of the Debtor's previous disclosure statements. The Court should deny confirmation

---

[1] *Hazan, et al. v. NLG, LLC*, Adv. No. 16-1439-AJC.

2

of the Debtor's Fourth Plan for all the reasons it denied the Debtor's prior disclosure statements,[2] and for the reasons discussed in detail below.

6.     The Fifth Amended Disclosure Statement filed on November 15, 2017, was approved by the Court on December 13, 2017 [ECF 580] without a hearing.   The order approving the Fifth Amended Disclosure Statement references a hearing on May 4, 2017, some six months before the operative Disclosure Statement was filed.    The Fifth Amended Disclosure Statement failed to remedy any of the defects noted by the Court back in May including the libelous allegations against Mr. Kosachuk, NLG's manager.

7.     NLG objects to confirmation to the extent that the Fourth Amended Plan attempts to discharge, terminate, modify or satisfy NLG's rights or claims which it had at the inception of this case and now are subject of the pending appeal before the Honorable Darrin Gayles under case number 17-24127-DPG.

8.     NLG incorporates and adopts by reference creditor Valencia Estates' Objection to Confirmation and exhibits [ECF 590] as if fully re-written herein.

## ARGUMENT

9.     Section 1125(b) of the Bankruptcy Code requires a disclosure statement to provide "adequate information," that is, "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of debtor's books and records … that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(b). Mere allegations or opinions unsupported by factual information do not meet the "adequate information" standard of

---

[2]  NLG incorporates herein the objections to the Debtor's initial disclosure and amended statements. *See* [ECFs 136, 138, 139, 140, 143, 278, 279, 281, 282, 283, 284, 431, 547 and 569].

Section 1125. *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D. Pa. 1981). The Debtor's Third Amended Disclosure Statement falls well short of this standard and must be denied.

**Inadequate Disclosures Concerning**
**the Debtor's Income and other Sources of Plan Funding**

10.    First, the Fifth Amended Disclosure Statement fails to provide any meaningful information about the income with which the Debtor intends to fund her plan. *See In re Newkirk*, 2012 WL 830552, *3 (Bankr. E.D.N.C. March 9, 2012) (disclosure statement must provide adequate information of the debtor's ability to fund and maintain a proposed plan). The Debtor states that she intends to fund a plan through (a) her income as a "business consultant specializing in identifying locations for high-end restaurants and retailers round the world," and (b) refinancing the Property and refinancing the New York Condo. [ECF 562 pp. 29-30]. These claims are dubious at best.  Specifically the Debtor has no ability to refinance either property because of her insufficient income, bad credit and debts to creditors already secured by those properties.  Even her phantom $810,000 per year of income as outlined in the Fifth Amended Disclosure Statement is insufficient to support the multi-million dollar refinancing needed to pay off her creditors.

11.    With respect to her consulting income, the Debtor claims variously and inconsistently in the Fifth Amended Disclosure Statement that she either earns "in excess of $350,000 per year," that she "has always earned at least $400,000/year," and that she "has always earned at least $350,000 per year" [ECF 562 pp. 4, 29]. Without any explanation, the financial projections attached to the Fifth Amended Disclosure Statement project $810,000 in annual income [ECF 562-1].  Meanwhile, as noted above, the Debtor earned roughly $125,000 through the calendar year of 2016 [ECF 374] and approximately $70,000 in 2017, (none of which appears to be regular business income). The Debtor makes no effort at all to explain this

4

inconsistency between the claims concerning her income in the Fifth Amended Disclosure Statement and the reality that she has earned only a fraction of that amount in 2016 or 2017. Further, the Debtor has provided no records, such as tax returns, evidencing her alleged high-income earning potential. The Debtor needs to demonstrate her significant earning capacity has some basis in reality if she proposes to fund a plan with it.

12.     The disparity between the Fifth Amended Disclosure Statement and the income disclosed in the Debtor's monthly operating reports is particularly troubling considering that according to the Debtor, she intends to begin contributing between $50,000 and $120,000 per month—consistently, every month—to plan payments starting February 2018 (*i.e.*, less than 2 months from now). That projection is totally detached from reality in light of the Debtor's monthly operating reports, but if the Debtor intends to fund her plan using this income, she needs to disclose, for example, what clients the Debtor currently has that she believes will yield income of $50,000 to $120,000 per month starting less than 2 months from now.

13.     Additionally, the Debtor has indicated that Real Estate Holdings Group LDC, an entity controlled by the Debtor's husband, has committed to contribute funds from the proceeds of refinancing of a condominium in New York to Debtor's estate in order to fund a plan. [ECF 562 p. 4]. Yet the Debtor offers no real information whatsoever concerning this source of plan funding: how much has the Debtor's husband (through an entity he controls) "committed" to contributing? What is the nature of that commitment—a note? A mortgage? What is the value of the condo that is being refinanced? Is the refinancing already in place or is this source of funding contingent on the ability to find a lender? Is there a financing commitment for a lender already in place?   None of this necessary information is included in the Fifth Amended Disclosure Statement.

**Inadequate Disclosures Concerning the Litigation Regarding the Property**

14.     The Fifth Amended Disclosure Statement should be denied because it fails to provide adequate information concerning the NLG Adversary, the pending NLG Appeal and other actions that will impact the equity in the Property and the Debtor's ability to use the Property to confirm a plan. *See In re Fierman,* 21 B.R. 314, 315 (Bankr. E.D. Pa. 1982) (a disclosure statement must provide a factual basis to support any valuations of real property and must disclose the existence of any litigation and explain the possible effect these lawsuits may have on the feasibility of a plan).

15.     As noted above, the Fifth Amended Disclosure Statement does not discuss the pending appeal of the NLG Adversary at all nor their potential impact on the Property. Yet, when NLG prevails in the appeal, then according to the Debtor's own appraisal, the Property will be significantly underwater.[3] This is critical, among other reasons, because the Debtor proposes to fund a plan, if necessary, by refinancing and using the equity from the Property. Simply put, there is *no* equity in the Property and the Debtor has no ability to refinance anything. The Fifth Amended Disclosure Statement mentions none of this.

16.     The Fifth Amended Disclosure Statement does not discuss JP Morgan Chase's pending foreclosure action which this Court granted stay relief to JP Morgan to pursue a final judgment of foreclosure [ECF 315] and to NLG to defend itself in that foreclosure action.  If JP Morgan is successful in its foreclosure action then there is no equity at all in the Property and such a judgment would decimate the entire proposed plan of reorganization. The Fifth Amended Disclosure Statement mentions none of this.

---

[3] The Debtor claims throughout the Fifth Amended Disclosure Statement that the Property is worth $12 million even though her own appraisal of record in this bankruptcy case values the Property at $9.5 million. The Debtor fails to acknowledge or explain this discrepancy in the Fifth Amended Disclosure Statement.

**Inadequate Disclosures Concerning NLG's Secured Claim**

17.     The Fifth Amended Disclosure Statement also fails to discuss the treatment of NLG's $4,876,654.29 secured claim (claim number 17-1) which is based on the Foreclosure Judgment. The Fifth Amended Disclosure Statement needs to explain how the Debtor will pay will pay NLG the full amount due under the non-appealable Foreclosure Judgment upon adjudication of the pending NLG Appeal.   The Fifth Amended Disclosure Statement completely ignores NLG's Foreclosure Judgment and the pending NLG Appeal.

18.     Section 1123(b)(5) of the Bankruptcy Code states that an individual chapter 11 debtor may not modify a claim secured by a security interest in real property that is the debtor's principal residence (which is precisely what this Debtor is trying to do to both NLG and JP Morgan). In turn, section 1129(a)(1) provides that for a plan to be confirmed, it must comply with the provisions of the Bankruptcy Code.

19.     Because the Plan on its face violates section 1123(b)(5), it cannot be confirmed under section 1129(a)(1). On this basis alone, the Court should deny approval of the Disclosure Statement. In I*n re Dakota Rail, Inc*., 104 B.R. 138 (Bankr. D. Minn. 1989), for instance, the bankruptcy court denied approval of the disclosure statement, reasoning that "[w]here the disclosure statement on its face relates to a plan that cannot be confirmed . . . the court [has] an obligation not to subject the estate to the expense of soliciting votes and seeking confirmation of the plan … Allowing a facially non-confirmable plan to accompany a disclosure statement is both inadequate disclosure and a misrepresentation.

20.     It should also be noted that, even if NLG does not have standing to object to the Plan (and NLG does have standing), the Court would have an independent duty to determine that the Plan complies with all of the provisions of the Bankruptcy Code in order for the Plan to be

confirmed. *See*, 11 U.S.C. §1129(a)(1); *Ala. Dep't of Econ. & Cmty. Affairs v. Ball Healthcare–Dallas, LLC (In re Lett)*, 632 F.3d 1216, 1229 (11th Cir.2011) ("Importantly, the Bankruptcy Code envisions a bankruptcy court exercising an independent duty to ensure that the strictures of §1129(b) are met with regard to impaired dissenting classes of creditors in a Chapter 11 cram down.") Because the Plan as drafted cannot be confirmed, the Court should deny approval of the Fifth Amended Disclosure Statement.

<u>**The Debtor's Undisclosed Asset and Transfer**</u>

21.     Prior to August 15, 2011, the Debtor owned a residential condo unit located at 1East 62nd Street No. 1A, New York, New York (the "New York Condo"). On August 15, 2011, the Debtor transferred the New York Condo out of her name and into the name of an individual named Raymond Houle for no consideration (the "New York Condo Transfer").[4] *See* Deed [ECF 290 pages 15 – 23] Mr. Houle eventually transferred the condo to Real Estate Holding Group, LDC, an entity controlled by the Debtor's husband, Sean Meehan. *See* Deed and Affidavit by Mr. Meehan [ECF 290 pages 24 – 37], respectively.

22.     The New York Condo Transfer occurred just a little over four years prior to the Petition Date. Although that is outside the four-year statute of limitations under Chapter 726 of the Florida Statutes, it is well within the six-year statute of limitations period applicable to fraudulent transfers under the law of New York, where the transfer occurred.[5] Also, the Debtor owes substantial tax liability to the IRS (about $374,526) that was incurred before the New York Condo Transfer. *See* [ECF 21 p. 13]. In addition to being actionable under New York law, the

---

[4] Mr. Houle is the same individual that obtained a fraudulent judgment against NLG in New York state court as part of the Debtor's efforts to frustrate NLG's attempts to exercise its lien rights in certain property owned by the Debtor. *See* NLG's Counterclaim [ECF 5] in *Selective Advisors Group, LLC v. NLG, LLC*, Adv. No. 16-1439-AJC.
[5] *See In re Bernard L. Madoff Inv. Sec. LLC*, 445 B.R. 206, 229-30 (Bankr. S.D.N.Y. 2011) (citing NYCPLR § 213).

New York Condo Transfer may also be avoidable under Florida law and Section 544(b) under the holding of *In re Kipnis*, 555 B.R. 877 (Bankr. S.D. Fla. 2016), which holds that a trustee may stand in the shoes of the IRS to avoid a transfer that occurred outside of the four-year look back period under Florida law.

23.     Although the Debtor claims in the Fifth Amended Disclosure Statement that she has completed her investigation into potentially avoidable transfers, the New York Condo Transfer is not mentioned at all in her Fifth Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [ECF 190 p. 8 and ECFs 21, 90].

### Other Inadequate Disclosures

24.     The exhibits that the Debtor has provided in support of the Fifth Amended Disclosure Statement reflect a variety of defects which must be explained before the document can be considered for approval:

- The Debtor had about **$375 in cash** on hand at the end of November 2017, but her Disclosure Statement states that she will have $65,000 on hand on the effective date of the Plan. What will be the source of those funds? Curiously every disclosure statement claimed the debtor will have $65,000 on hand at confirmation, yet the maximum amount of cash that the debtor every had in her DIP account was $29,000 on July 8, 2016.

- The Debtor is on her third bankruptcy attorney since she filed this case 23 months ago in January 2016, and has accumulated well over $200,000 in unpaid attorney's fees according to the Fifth Amended Disclosure Statement—far more than the $65,000 that the Debtor claims she will have on hand on the effective date. [ECF 562-2]. How does she propose to pay those administrative claims as required to confirm a plan?

- The Debtor lists as assets two "potential" claims against NLG and other defendants of an "unknown" value. *Id.* What is the nature of those claims, how will the Debtor prosecute them if at all, and why can she offer no estimate of their potential value?

- The Debtor's plan refuses to pay various creditors who filed proofs of claim without any ruling from the Court on those same claims.  [See Claims 1-1, 3-1, 14-1 and 17-1].

- The Debtor discloses a $400,000 account receivable without explanation. What is the nature of that receivable and what is the Debtor doing to collect it?  The Debtor disclosed this same $400,000 account receivable in her original plan filed on July 11, 2016 [ECF 103 p. 22] and 14 months later has still not collected a penny of this receivable.  It is obvious that this $400,000 account receivable is pure fantasy and a blatant misrepresentation to this Court and all the creditors.

- The Debtor proposes to make payments under the plan in a "range" of monthly to every six months to "even less frequently." How much less frequently? Further, this statement cannot be reconciled with the projections in the Fifth Amended Disclosure Statement indicating that the Debtor will make plan payments of about $60,000 every month, as opposed to every quarter or six months as the Debtor claims elsewhere in the Fifth Amended Disclosure Statement.

- The Debtor fails to address the $62,500 due to the Valencia Estates Homeowner's Association which must be paid before a plan can be confirmed.  Pursuant to an Order of this Court [ECF 302], a plan can't be confirmed if the HOA is not current which indeed the Valencia Estates HOA is not.

10

- The Debtor is projecting $810,000 of income and only $60,000 of income tax which is less than an 8% tax rate which does not exist for this level of income even with the recently passed tax cuts.

- Some undisclosed third party is supposed to pay the Debtor's previous lawyer, Geoffrey $145,000 in legal fees. Can this undisclosed party pay the other creditors on the same percentage basis?

### This Confirmation should be Denied and this Case should be Dismissed or Converted because the Debtor's Plan is Patently Unconfirmable

25.     For the reasons explained in NLG's objections to the Debtor's prior disclosure statements as well as all the other objections raised to the previous disclosure statements by other creditors, the Fourth Amended Plan should be denied because it was not filed in good faith and is patently unconfirmable. *See* [ECF 140 pp. 9-12]. The inadequacies demonstrate that the Debtor plainly has no realistic ability or intent to confirm a plan in this bankruptcy case.

26.     A plan accompanying a disclosure statement which clearly does not meet the requirements of 11 U.S.C. § 1129 should not proceed to certain defeat at confirmation. Instead, courts may consider confirmation issues at the hearing on approval of the disclosure statement if "the plan is so fatally and obviously flawed that confirmation is impossible." *In re Mahoney Hawkes, LLP*, 289 B.R. 285, 294 (Bankr. D. Mass. 2002) (citation omitted); *see also In re Am. Capital Equip., LLC*, 688 F.3d 145 (3d Cir. 2012) (bankruptcy court may address confirmability at disclosure statement stage if it is patently obvious that the plan described by the disclosure statement cannot be confirmed.); *In re Valrico Square Ltd. P'ship*, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990) ("Soliciting votes and seeking court approval on a clearly fruitless venture is a waste of the time of the Court and the parties.").

27.     A plan is not confirmable if it is not feasible, which requires the Court to consider "whether the things to be done under the plan can be done as a practical matter under the facts." *In re M & S Assocs., Ltd.*, 138 B.R. 845, 848 (Bankr. W.D. Tex. 1992) (citations omitted). Additionally, in considering feasibility, "a bankruptcy court must evaluate the possible impact of the debtor's ongoing civil litigation," and a "plan will not be feasible if its success hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely." *Am. Capital Equip.*, 688 F.3d at 156 (citations omitted).

28.     Here, the plan is infeasible and unconfirmable on its face: it is premised on a regular stream of consecutive $50,000 to $120,000 monthly payments totaling over $800,000 per year, yet the Debtor has disclosed that she is *incapable* of making consistent monthly payments because her income is irregular. Further, the Debtor has earned only a fraction (about $70,000) through all of 2017 of the roughly $800,000 that she purportedly intends to contribute towards the plan on annual basis. Very simply, the Debtor's plan is premised on a high six-figure income that the Debtor has admitted (through her filings in this case) does not actually exist.

29.     Further, the Debtor's plan hinges on her success in the pending NLG Appeal (where NLG already has a Foreclosure Judgment) and the JP Morgan Foreclosure: if she loses the JP Morgan foreclosure then there is no equity in the Property according to the Debtor's own appraisal. That means that there will be no equity for the Debtor to borrow against to fund the plan, and no basis to deny NLG relief from the automatic stay to continue its foreclosure sale under the Foreclosure Judgment. The Debtor's plan, premised entirely on her success in pending litigation, is not confirmable, and so the Fifth Amended Disclosure Statement should be denied.

30.     NLG incorporates its pending Motion to Dismiss or Convert [ECF 462] and its pending Motion to Appoint Chapter 11 Trustee [ECF 481] as if fully rewritten herein and does hereby move the Court to dismiss or convert or appoint Chapter 11 Trustee.

**The Disclosure Statement and Plan were not submitted in good faith as required by 11 U.S.C. § 1129(a)(3).**

31.     In order to be confirmed, a Chapter 11 reorganization plan must be submitted in good faith and not by any means forbidden by law. 11 U.S.C. § 1129(a)(3). "While the Bankruptcy Code does not define the term, courts have interpreted 'good faith' as requiring that there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Code." *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir.1995).

32.     Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of section 1129(a)(3) are satisfied. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2nd Cir.1988); *In re Sun Country Development, Inc.*, 764 F.2d 406, 408 (5th Cir.1985); *In re Mulberry Phosphates, Inc.*, 149 B.R. 702, 707 (Bankr.M.D.Fla.1993).

33.     The focus of a court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the plan, *Block Shim*, 939 F.2d at 292; *Madison Hotel*, 749 F.2d at 425, keeping in mind the purpose of the Bankruptcy Code is to give debtors a reasonable opportunity to make a fresh start. Sun Country, 764 F.2d at 408.

34.     To be in good faith, a plan must have "a true purpose and fact-based hope of either `preserving [a] going concern' or `maximizing property available to satisfy creditors.'" *S. Beach Sec.,* 606 F.3d at 376 (*quoting Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 453, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999)). To find that a plan does not comply with § 1129(a)(3) generally requires "misconduct in bankruptcy proceedings, such as

fraudulent misrepresentation or serious nondisclosures of material facts to the court." *In re* \*342 *River Vill. Assocs.,* 161__B.R.__127, 140 (Bankr.E.D.Pa.1993), *aff'd,* 181__B.R. 795 (E.D.Pa.1995).

35.     The Debtor has committed just this type of misconduct in this bankruptcy proceeding by misrepresenting numerous facts to this Court in regards to NLG's Foreclosure Judgment and is impermissibly seeking that this Court vacate NLG's Foreclosure Judgment as detailed herein.

36.     The Debtor has concealed her second most significant asset, that being the New York Condo with an approximate value of $3.4 million.  [*See* ECF 384].  This asset concealment alone is reason enough to deny the Fifth Amended Disclosure Statement.

37.     Clearly the Fifth Amended Disclosure Statement and Plan were not submitted in good faith as they seek to ignore NLG's Foreclosure Judgment (which this Court has no authority or jurisdiction to do), modify a security interest in the debtor's principal residence (which is specifically prohibited by the Bankruptcy Code), not pay back any creditor what they are actually owed and conceal a multi-million dollar apartment beneficially owned by the Debtor.

38.     The Debtor is seeking to defraud this Court the same way that she has defrauded other courts over the years of litigation with her creditors.

**<u>The Fifth Amended Disclosure Statement and Plan were submitted in bad faith</u>**

39.     Bad faith exists if there is no realistic possibility of reorganization and the debtor seeks merely to delay or frustrate efforts of secured creditors." Id. *SE Property Holdings, LLC v. Seaside Engineering & Surveying, Inc.* (citing *In re Seaside Engineering & Surveying, Inc.*), No.

14

14-11590 (11th Cir. March 12, 2015)  (citing *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir .1984)).

40.     This bankruptcy was filed the day before the foreclosure sale of the Debtor's Property pursuant to NLG's Foreclosure Judgment.  It is very clear that the sole purpose of this bankruptcy has been to delay and frustrate secured creditor NLG's efforts to foreclosure on its collateral; the Property.

41.     None of the filed disclosure statements and plans put forth even a remotely feasible plan of reorganization nor were they proposed in good faith as required by the Code. Quite frankly they were all proposed in bad faith.  The income to fund the plan is suspect at best and more accurately a blatant misrepresentation to the Court as detailed herein. The financial projections are hogwash and not supported by any document in the record.   This entire bankruptcy and the related adversary manifest the extreme bad faith of the Debtor and her counsel.

## CONCLUSION

42.     For the reasons explained above, the Court should deny confirmation of the Fourth Amended Plan and dismiss or convert or appoint a Chapter 11 Trustee in this case.

Dated:  January 10, 2018

Respectfully submitted,

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with

the Clerk of Court using the CM/ECF system on this 10th day of January, 2018.  I also certify

that the foregoing was served on this day by either U.S. Mail or Electronic mail via the CM/ECF

system to the parties on the attached service list.

> /s/ Astrid E. Gabbe
> The Law Office of Astrid E. Gabbe, P.A.
> Florida Bar No. 635383
> P.O. Box 4216
> Hollywood, FL 33083
> Tel. (954) 303-9882
> Fax. (954) 983-1427
> astridgabbe@gmail.com
> *Attorneys for NLG, LLC*

## SERVICE LIST

**_Served via CM/ECF_**

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Michael A Friedman on behalf of Counter-Claimant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Michael A Friedman on behalf of Defendant NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

17

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Juan Ramirez, Jr., Esq. on behalf of Secured Creditor NLG, LLC
Jr@adrmiami.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com, rross@stearnsweaver.com; larrazola@stearnsweaver.com;
cgraver@stearnsweaver.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:

LIZA HAZAN                                          Case No. 16-10389-AJC
a/k/a ELIZABETH HAZAN,
                                                    Chapter 11

        Debtor.
_____/

## MOTION TO APPROVE COMPROMISE AND SETTLEMENT OF CONTROVERSY

> *Any interested party who fails to file and serve a written response to this motion within 21 days after the date of service stated in this motion shall, pursuant to Local Rule 9013-1(D), be deemed to have consented to the entry of an order in the form attached to this motion. Any scheduled hearing may then be canceled.*

Debtor, LIZA HAZAN a/k/a ELIZABETH HAZAN ("Debtor"), through undersigned counsel, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Local Rule 9013-1(D), files this Motion to Approve Compromise and Settlement of Controversy between the Plaintiff and Defendant in the related Adversary Proceeding titled LIZA HAZAN a/k/a ELIZABETH HAZAN, Plaintiff, vs. Fisher Island Community Association, Inc., Defendant, Case No. 18-01008-AJC, and states as follows:

1.      The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code onJanuary 11, 2016, Case No. 16-10389.

2.      The Debtorfiled theabove-referenced Adversary Complaint on January 9, 2018.

3.      The Debtor and the Defendant have agreed to settle this matter pursuant to the attached stipulation (the "Stipulation") and seek Court approval pursuant to Rule 9019 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      Rule 9019(a) of the Bankruptcy Rules provides that a court may approve a proposed settlement of a claim after notice and hearing. Acceptance or rejection of a compromise lies within the sound discretion of this Court. *In re Arrow Air, Inc.*, 85 B.R. 886, 890-91 (Bankr. S.D. Fla. 1988); *GMGRSST, LTD. V. Menotte (Air Safety Int'l, L.C.)*, 336 B.R. 843, 852 (S.D. Fla. 2005).

5.      In ruling, the Court must determine whether a proposed settlement is fair or equitable. *Chira v. Saal (In re Chora)*, 367 B.R. 888, 896 (S.D. Fla. 2007). The Court must evaluate whether the compromise falls below the ōlowest point in the range of reasonableness.ö *In re S & I Investments*, 421 B.R. 569, 583 (Bankr. S.D. Fla. 2009) (citing In re Bicoastal Corp., 164 B.R. 1009, 1016 (Bankr. M.D. Fla. 1993)); *In re Arrow Air, Inc.*, 85 B.R. at 886.

6.      The case of *Justice Oaks II*[1] established a four-part test as to whether a proposed compromise should be approved: (i) the probability of success in litigation, (ii) the difficulties, if any, to be encountered in the matter of collection, (iii) the complexity of the litigation involved and the expense, inconvenience and delay necessary attending it, and (iv) the paramount interest of the creditors and a proper defense to their reasonable views in the premises.

7.      Applying the foregoing, the proposed settlement satisfies the requirements of Bankruptcy Rule 9019. Notwithstanding a likelihood of success in the potential litigation, the resultant expense, inconvenience and delay would be contrary to the best interests of the parties.

8.      The parties submit that resolution in this manner set forth in **Exhibit "A"** is reasonable as required by Bankruptcy Rule 9019 and applicable law.

**WHEREFORE**, the Debtor/Plaintiff, requests that this Court enter an order (i) granting this Motion, (ii) authorizing the compromise and settlement as set forth herein by entering the

---

[1] *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990).

proposed form of order attached hereto as **Exhibit "B"**, in the event that no written objections are filed within the time prescribed by Local Rule 9013-1(D), and (iii) granting such other and further relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States Bankruptcy Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that true and correct copy of the foregoing was filed electronically and served electronically or by mail to: Debtor, trustee, and all interested parties on this 5th day of March, 2018

DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:     954-356-0450
Fax:     954-356-0451
E-mail: dave@flalawyer.com

By:  ___*/s/ David W. Langley*_____
David W. Langley, Esq.
Florida Bar Number 348279

## SERVICE LIST

*16-10389-AJC Notice will be electronically mailed to:*
Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Robert P. Charbonneau, Esq. on behalf of Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

Tamara D McKeown on behalf of Debtor Liza Hazan
tdmckeown@mckeownpa.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Michael A. Friedman, mfriedman@gjb-law.com on behalf of NLG, LLC

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

*16-10389-AJC Notice will not be electronically mailed to:*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov

In re:

LIZA HAZAN
a/k/a ELIZABETH HAZAN,

Case No. 16-10389-AJC

Chapter 11

Debtor.

_____/

LIZA HAZAN a/k/a ELIZABETH HAZAN,

Plaintiffs,

ADV. NO.: 18-01008-AJC

v.

Fisher Island Community Association, Inc.

Defendant.

_____/

## STIPULATION FOR SETTLEMENT

Plaintiff, LIZA HAZAN a/k/a ELIZABETH HAZAN ("Plaintiff"), through undersigned

counsel and Defendant, FISHER ISLAND COMMUNITY ASSOCIATION, INC, LLC ("FICA"),

through counsel, and allege as follows:

WHEREAS, on January 9, 2018, the Debtor filed an Adversary Complaint against FICA

in the United States Bankruptcy Court for the Southern District of Florida, Case No. 18-01008-

AJC;

WHEREAS, FICA timely responded and in said proceedings;

WHEREAS, the Parties have participated in good faith settlement negotiations and have

reached an agreement to compromise the claims of the Debtor;

1

WHEREAS, in order to avoid the high costs and uncertainties of litigation, and without any of the Parties admitting any fault or liability, the Parties desire to settle this matter amicably; and

WHEREAS, the Parties wish to set forth the terms of their agreement in this Agreement.

NOW, THEREFORE, in consideration of the premises aforesaid and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.      Recitals Incorporated. Recitals and prefatory phrases and paragraphs set forth above are hereby incorporated in full and made a part of this Agreement.

2.      Pre-Petition Assessments.     The Parties stipulate that FICA's claim for pre-petition assessments, if any, is only in rem. The Debtor is not personally liable for any pre-petition assessments. Any in rem liability on the pre-petition assessments only shall be determined in the Circuit Court for Miami-Dade County.

3.      Post-Petition Assessments. The Parties stipulate that FICA's claim for post-petition assessments shall be determined in the Circuit Court for Miami-Dade County. Post-Petition assessments are both collectible in rem and in personam, to the extent they are determined in the Circuit Court for Miami-Dade County.

4.      Motion to Reinstate Stay. As further consideration for this Stipulation, the Debtor shall withdraw her Motion to Reinstate Stay, D.E. 602 pending in the Main Case, Case No. 16-10389. Should FICA obtain a Final Judgment in a State Court case before Confirmation of the Debtor's Chapter 11 Plan, FICA will not be permitted to go to Foreclosure Sale after the entry of a Final Judgment by the Circuit Court for Miami-Dade County without a specific order allowing, pursuant to Judge Cristol's Order of November 23, 2016, D.E. 305 in the Main Case.

2

Should FICA obtain a Final Judgment in a State Court case after entry of a Confirmation Order on the Debtor's Chapter 11 Plan, FICA will be permitted to go to Foreclosure Sale after the entry of a Final Judgment by the Circuit Court for Miami-Dade County absent further order of the Bankruptcy Court.

5.      Objection to Confirmation. As further consideration for this Stipulation, FICA shall withdraw its Objection to Confirmation, D.E.598 pending in the Main Case, Case No. 16-10389.

6.      Debtor's Plan. The Debtor hereby modifies her Fourth Amended Plan, D.E. 563 in the Main Case, Case No. 16-10389, to remove any language concerning payment to FICA and to provide that all issues concerning FICA shall be resolved in the Circuit Court for Miami-Dade County. The Debtor will treat the secured portion of the alleged claim Direct, and Outside the Plan to the extent they are determined in the Circuit Court for Miami-Dade County.

7.      Debtor's Fence Damage Claim. The Parties agree that Debtor/Plaintiff Ms Hazan's claim against FICA for damage to her Homestead residence's fence shall be litigated in the Circuit Court for Miami-Dade County. This shall not be construed as an admission of liability or responsibility to either party.

8.      Fees and Costs. Each of the Parties agrees to bear its own attorneys' fees and costs with respect to this Agreement and this Adversary Proceeding.

9.      Binding Effect. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

3

IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this

Agreement to be executed on the dates shown below:

By: _____ Date: 2/26/18
Liza Hazan aka Elizabeth Hazan
Debtor-in-Possession/Plaintiff

By: _____ Date: 2/23/18
_____ for Fisher Island Community Association, Inc.
Gary Snider, Pres. ; CEO

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States Bankruptcy

Court for the Southern District of Florida, and I am in compliance with the additional

qualifications to practice in this Court set forth in Local Rule 2090-1(A); and that true

and correct copy of the foregoing was filed electronically and served electronically or by

mail to: Debtor, trustee, and all interested parties on this 16th day of February, 2018

DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone:    954-356-0450
Fax:    954-356-0451
E-mail: dave@flalawyer.com

By:    */s/ David W. Langley*
David W. Langley, Esq.
Florida Bar Number 348279

## SERVICE LIST

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
530 Lavers Cir #158 Delray Beach FL 33444
ROBERT.GUSRAE@GMAIL.COM

5



**ORDERED in the Southern District of Florida on April 20, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

IN RE:                                                    Case No. 16-10389-AJC

LIZA HAZAN                                          Chapter 11
a/k/a ELIZABETH HAZAN,

         Debtor.
_____/

**ORDER GRANTING MOTION TO APPROVE COMPROMISE AND**
**SETTLEMENT OF CONTROVERSY [D.E. 658]**

**THIS CAUSE** came on before the Court upon Debtor Motion to Approve Compromise and

Settlement of Controversy [ECF #658] (the "Motion"). The Court having been advised of agreement

between the parties, and otherwise being fully advised in the premises, it is

**ORDERED:**

1. The Motion  is **GRANTED**.

2. The Settlement Agreement dated February 26, 2018, is approved by this Court and

incorporated herein as this Court's Order. The parties are directed to comply with terms thereof.

3. Adversary Proceeding No. 18-1008-AJC shall be dismissed without prejudice by separate

order.

# # #

**Submitted by:**
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Fax: 954-356-0451
E-mail: dave@flalawyer.com
Florida Bar Number 348279

Attorney Langley is directed to serve a copy of the signed order on all parties listed below
and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to:** Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest



**ORDERED in the Southern District of Florida on June 11, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:                                        Case No: 16-10389 AJC
                                              Chapter 11
Liza Hazan
 Debtor.                    /

ORDER CONFIRMING PLAN OF REORGANIZATION

THIS MATTER came before the Court on May 30, 2018 at 2:00 PM. upon Doc 563 Liza Hazan a/k/a Elizabeth Hazan's Fourth Amended Plan of Reorganization and Doc 562 Liza Hazan a/k/a Elizabeth Hazan's Fifth Amended Disclosure Statement both filed 11/15/17 proposed by (the "Debtor" or "Proponent") and Order Approving Amended Disclosure Statement and Setting Hearing on Confirmation of Plan entered 12/13/17 Doc 580.

In connection with the confirmation of the Plan, the Court has reviewed and considered the: (i) *Certificate on Acceptance of Plan and Tabulation of Ballots Filed by Debtor Doc 681 ,* (the "Ballot Certificate") and (ii) *Confirmation Affidavit Filed by Debtor Doc 680,* (the "Confirmation Affidavit"). The Court has also: (i) reviewed and considered the entire record in this Chapter 11 Case, including the *Proponent's Disclosure Statement* and the Plan; (ii) considered the argument of counsel; (iii) considered the testimony of the Debtor as set forth in the Confirmation Affidavit which was proffered at the Confirmation Hearing without objection, and representations of counsel at the hearing, and (iv) considered the other evidence presented at the hearing.

The only creditors who previously objected to or voted against the plan were present, and announced that they were changing their votes to support the plan or had no objection.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based upon the above and in consideration of the record in this case, the Court makes the following findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule 52(a), Federal Rules of Civil Procedure. Where appropriate, findings of fact shall constitute conclusions of law and conclusions of law shall constitute findings of fact. *See In re American Family Enterprises,* 256 B.R. 377, 385 n,2 (Bankr. N.J, 2000); *In re Antar,* 122 B,R, 788, 789 (Bankr. S.D. Fla. 1990).

A. The Court conducted a hearing to consider approval of the Disclosure Statement and Plan filed by the Debtor.

B. There has been adequate and sufficient notice of: (i) the Plan and the Disclosure Statement; (ii) the deadline to file and serve objections to the confirmation of the Plan and to the adequacy of the Disclosure Statement; (iii) the deadline for voting on the Plan; and (iv) the hearing date on the approval of the Disclosure Statement and Confirmation of the Plan.  Debtor has afforded all parties in interest with an adequate opportunity to be heard regarding the Disclosure Statement and the Plan. The Plan and Disclosure Statement were served upon all parties entitled to vote thereon.

C. The Court has jurisdiction over this matter pursuant to 11 U.S.C. §§ 105, 1121 through 1129; 28 U.S.C. §§ 157(a), (b)(I) and (b)(2)(L), 1334(a) and (b), the United States District Court's general Order of reference, and other various applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

D. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409(a);

E. In accordance with section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies all Claims that are substantially similar to each other in discrete classes. The Plan, therefore, satisfies section 1122(a) of the Bankruptcy Code;

F. The Plan adequately and properly classifies all Claims and Interests required to be classified and, accordingly), satisfies section 1123(a)(1) of the Bankruptcy Code;

G. Articles II through V  of the Plan specify any class of Claims or Interests that are impaired or unimpaired under the Plan, and accordingly, satisfy section 1123(a)(2) and (3) of the Bankruptcy Code;

H. The Plan provides the same treatment for each Claim or Interest in each Class unless the holder of such a Claim or Interest agrees to less favorable treatment, if applicable, and accordingly, satisfies section 1123(a)(4) of the Bankruptcy Code;

I. The Disclosure Statement Article III  sets forth the means by which the Plan will be implemented, and accordingly, makes adequate means for its implementation and satisfies section 1123(a)(5) of the Bankruptcy Code; the Plan will be funded through funds from the ongoing operation of the Debtor's properties and jobs;

J. Each of the Voting Classes have accepted the Plan in the requisite number of

2

ballots, and in the requisite dollar amount, as required pursuant to 11 U.S.C
§ 1126(c) and as set forth in the Ballot Certificate;

K. The Ballot Certificate correctly set forth the tabulation of votes, as required by the
Bankruptcy Code, Bankruptcy Rules, and the Local Rules of the Bankruptcy Court for the
Southern District of Florida;

L. The Plan was voted on by all Classes of Impaired Claims that were entitled to
vote pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Confirmation
Procedures Order;

M. The Ballot Certificate and evidence at the hearing reflects that all Classes have accepted or
not rejected the Plan;

N. All other objections to confirmation were announced to be settled at the Confirmation
Hearing;

O. The Plan complies with all applicable provisions of the Bankruptcy Code,
including 11 U.S.C. § 1129(a) and (b) with respect to all Classes of Claims and Interests under
the Plan, and, as required by Bankruptcy Rule 3016(a), the Plan is dated and identifies the
Debtor as the Proponent;

P. The Proponents of the Plan complied with all applicable provisions of the
Bankruptcy Code, including 11 U.S.C. § 1129;

Q. The Plan has been proposed and submitted to all Creditors and Interest Holders in good
faith and not by any means forbidden by law and therefore 11 U.S.C. § 1129(a)(3) is satisfied;

R. All payments made, or to be made, by the Debtor in connection with this Chapter 11 case or
in connection with the Plan either have been approved by or are subject to the approval of the
Bankruptcy Court, including applications for compensation and reimbursement of expenses
and, therefore, the Plan satisfies the requirements of 11 U .S.C. § 1129(a)(4);

S. The Proponent of the Plan has disclosed the identity of the individual Reorganized Debtor,
who will serve after the Confirmation Date and, therefore, the Plan satisfies the requirements
of II U.S.C. § 1129(a)(5);

T. The Plan does not discriminate unfairly, is fair and equitable, and otherwise
complies with all of the provisions of Section 1129(b) of the Bankruptcy Code with respect to
each Class of Claims or Interests that are impaired under the Plan, including without limitation,
creditors holding Unsecured Claims who will receive more on account of their Claims under
this Plan, than they would receive in a chapter 7 liquidation;

U. The Plan and Disclosure Statement were accompanied by projections that support the
financial viability of the Reorganized Debtor, and, accordingly, the requirements of 11U.S.C. §
1129(a)(11) are satisfied;

V. The ongoing operation of the properties and incomes of Debtor will provide sufficient funds available for the payment in whole of: (i) Allowed Administrative Expense Claims (unclassified), which will be paid on the Effective Date; (ii) United States Trustee's Fees (unclassified); secured claims and a dividend to unsecured creditors.

**THEREFORE, BASED UPON THE FOREGOING FINDINGS, IT IS ORDERED AS FOLLOWS**:

1**.** The Plan is **CONFIRMED** pursuant to 11 U.S.C. § 1129.

2. The findings of fact and conclusions of law set forth above shall constitute the findings of fact and conclusions of law of this Court pursuant to Bankruptcy Rule 7052. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. All of the Terms and provisions of the Disclosure Statement and Plan are approved.

4. There are no allowed Administrative Expense Claims other than those of the Debtor's professionals and US Trustee fees. Administrative Expense Claims related to professional fees and costs shall be awarded by separate order of the Court.

5. Discharge. Because the Debtor is an individual—
**(A)** unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan;
**(B)** at any time after the confirmation of the plan, and after notice and a hearing, the Court may grant a discharge to the Debtor who has not completed payments under the plan if—
**(i)** the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the Debtor had been liquidated under chapter 7 on such date;
**(ii)** modification of the plan under section 1127 is not practicable; and **(iii)** subparagraph (C) permits the court to discharge; and **(C)** the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that—
**(i)** section 522(q)(1) may be applicable to the Debtor; and **(ii)** there is pending any proceeding in which the Debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B); and if the requirements of subparagraph (A) or (B) are met.

6. As of the Effective Date all pre-petition property of the estate shall re-vest in the Reorganized Debtor.

7. Any judgment obtained in any court other than this Court is null and void as a determination of the individual liability of the Debtor with respect to debts dischargeable or determined by this Court to be discharged under 11 USC § 1141.

8.  All creditors whose judgments are declared null and void (if any) are enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any such debts as personal liability of the Debtor, or from property of the Debtor, whether or not discharge of such Debtor is waived

9. All creditors are also enjoined from commencing, continuing, or employing any action, process, or act to collect, recover, or offset any debts, or enforce any liens against the Debtor on account of any debt that existed as of the Petition Date.

10. The Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. Section 1930(a)(6), through Confirmation, within ten (10) business days of entry of this Confirmation Order. The Reorganized Debtor shall file with the Court post-confirmation Quarterly Operating Reports and pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements, until the earlier of the closing of this case by the issuance of a order by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.

11. To the extent applicable, the Reorganized Debtor shall have the standing and authority to pursue all claims objections. Upon the resolution of all claims objections, if any, and upon this Confirmation Order becoming final, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case (the "Final Report") on the Court approved local form.

12. The Reorganized Debtor shall pay all allowed claims at such time an in such amounts as provided for in the Plan.

13. The failure to reference or address all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect, or enforceability of such provision, and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan. To the extent that any inconsistencies exist between the terms of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control, except as otherwise provided herein.

14. If any provision of this Confirmation Order is hereafter modified, vacated, or reversed by subsequent order of this Court, or any court, such reversal, modification, or vacation shall not affect the validity of the obligations incurred or undertaken under or in connection with the Plan, nor shall such reversal, modification, or vacation of this Confirmation Order affect the validity or enforceability of such obligations. Notwithstanding any reversal, modification, or vacation of this Confirmation Order, any such obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacation, shall be governed in all respects by the provisions of this Confirmation Order and the Plan, and all documents, instruments, and agreements related thereto, or any amendments or modifications thereto.

15. The Debtor has complied with all of the provisions of the U.S. Bankruptcy Code and the Federal Bankruptcy Rules concerning notice, disclosure, and solicitation in connection with the

5

Plan, the Disclosure Statement, the Modification, and all other matters considered by this Court in connection with this Chapter 11 case. The Debtor properly served the Confirmation Procedures Orders and gave proper notice of the Confirmation Hearing in accordance with Bankruptcy Rules 2002, 3017(d), and 3020(b)(2). The Notice and the opportunity given for a hearing before the Court on the approval of the Disclosure Statement and the confirmation of the Plan was adequate and satisfactory under the circumstances of this case.

16. **All executory contracts and unexpired leases listed in Article VI of the Plan are deemed either assumed or rejected as indicated in the Plan as of the date of the Confirmation Hearing, and the Reorganized Debtor is authorized to enter into such contracts as they deem appropriate in the exercise her business judgment without the need for a motion and hearing in this Court.**

17. The Bankruptcy Court shall retain jurisdiction:

(a) To enable the Debtor to consummate the Plan and any amended or modified Plan and to resolve any disputes arising with respect thereto;

(b) To enable the Debtor to consummate any and all proceedings that it may bring prior to the entry of the Confirmation Order;

(c) To determine all controversies relating to or concerning the classification, subordination, allowance, valuation or satisfaction of Claims;

(d) To liquidate or estimate for purposes of allowance all contested, contingent or unliquidated Claims;

(e) To determine the validity, extent and priority of all liens, if any, against property of the estate;

(f) To determine all assertions or an ownership interest in, the value of, or title to, any property of the estate;

(g) To determine all objections to Administrative Claims;

(h) To determine all (1) adversary proceedings, contested or litigation matters brought before the Bankruptcy Court; and, (2) any and all claims or Causes of Action asserted by the Debtor, either by and through the Debtor or Reorganized Debtor;

(i) Without limiting the generality of the preceding paragraph, to determine any Avoidance Action brought by the Debtor;

(j) To determine all controversies arising out of any purchase, sale, or contract made or undertaken by the Debtor prior to the Confirmation Date;

(k) To enforce all agreements assumed, if any, and to recover all property of the estate, wherever located;

(I) To determine any tax Iiability of the estate in connection with the Plan, actions taken, distributions or transfers made thereunder;

(m) To enforce any and all injunctions created pursuant to the terms of the Plan;

(n) To modify the Plan or to remedy any defect or omission or reconcile any inconsistencies in the Plan either before or after the entry of the Confirmation Order;

(0) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation or enforcement of the Plan;

(p) To make such orders as are necessary or appropriate to carry out the provisions of the Plan.

18.         Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein,

upon completion all payments required under the Plan to unsecured creditors. Upon the satisfaction of all payments required under the Plan to unsecured creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

(a)     Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

(b)     The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment (defined in the Plan) to Unsecured Creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

(c)     The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

(d)     During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, as long as the Debtor continues to be in compliance with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executory Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to unsecured creditors, as contemplated under the Plan.

(e)     Upon the satisfaction of all payments required under the Plan to Unsecured Creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to Unsecured Creditors.

(f)     Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to Unsecured Creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

###

Submitted by: David W. Langley who will serve copies to: all creditors and appearances.

7



**ORDERED in the Southern District of Florida on December 6, 2018.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                          Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,               Chapter 11

             Debtor.
_____/

**ORDER GRANTING MOTION TO REOPEN CASE TO APPROVE FINAL REPORT,
AND ENTER DISCHARGE TO REORGANIZED DEBTOR**

**THIS MATTER** came before the Court for hearing on August 9, 2018 at 10:30 a.m. upon

the Reorganized Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Reorganized Debtor")'s Corrected

Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a

Final Decree and to re-close the case [ECF No. 713] (the "Motion"), and again on October 24,

2018 at 2:00 p.m. upon the Court's Order Setting Further Hearing to Consider Issuance of

Discharge and Dismissal of Pending Non-Core Personal Injury Tort Claims for October 24, 2018

[ECF 745].  The Court has further considered the following:

CASE NO. 16-10389-BKC-AJC

- The Final Report [ECF No. 703] ("Final Report");

- The Notice of Deadline to Object to Debtor's[1] Statement Re: 11 U.S.C. § 522(q)(1) Applicability, *et al*. [ECF No. 704];

- NLG, LLC's Opposition to Debtor Motion to Reopen Case and Motion for Discharge (ECF No. 733);

- NLG, LLC's Objection to Debtor Statement and Discharge [ECF No. 729], which the Court notes was withdrawn on the record by counsel for NLG during the August 9, 2018 hearing;

- NLG, LLC's *ore tenus* Objection to Debtor's Discharge during the October 24, 2018 hearing;

- Creditor Valencia Estates Homeowners' Association, Inc.'s Limited Objection to Debtor's Corrected Motion for Discharge [D.E. 713] [ECF No. 728], which was resolved by Agreed Order [ECF No. 734];

- Real Time Resolutions, Inc.'s Objection to Debtor's Motion to Reopen, Final Report and Motion for Discharge, and Motion for Entry of Final Decree and to Reclose [ECF No. 731], which was withdrawn prior to the hearing [ECF No. 732]; and

- NLG, LLC's motion to reopen Chapter 11 case [ECF No. 757], and amended and expedited motion to reopen case [ECF No. 763].

---

[1] For purposes of this Order, the term "Debtor" shall also mean the "Reorganized Debtor" pursuant to this Court's Order Confirming Plan of Reorganization [ECF No. 691] (the "Confirmation Order").

*CASE NO. 16-10389-BKC-AJC*

Having considered the record, including NLG's Objection and Opposition,[2] and finding that due and adequate notice has been given and no additional notice is required, the Court grants the Motion in part and herein enters the discharge of the Reorganized Debtor, and approves the Final Report.  The Motion and Final Report demonstrate the Reorganized Debtor is entitled to to a discharge pursuant to 11 U.S.C. § 1141(d)(5).  However, a Final Decree will not yet be issued and the case shall not be re-closed at this time.

> **I.      11 U.S.C. § 1141(d)(5)(B) – authorizes issuance of discharge to individual debtor who has not completed all plan payments**

The Bankruptcy Code provides that an individual debtor's discharge shall not be entered by the Court until completion of all payments under the confirmed plan.  *11 U.S.C. §1141(d)(5)(A)*.  An exception exists, however, pursuant to 11 U.S.C. § 1141(d)(5)(B), if, *inter alia*, an individual debtor has made all plan payments to unsecured creditors.  Section 1141(d)(5)(B) provides:

> (B) at any time after the confirmation of the plan, and after notice and a hearing, the court may grant a discharge to the debtor who has not completed payments under the plan if –
>
> (i) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 on such date;
> (ii) modification of the plan under section 1127 is not practicable; and
> (iii) subparagraph (C) permits the court to grant a discharge.

---

[2] Although this Court previously determined that NLG is not a creditor and has no claim against the Reorganized Debtor [*see*, *Final Judgment on Counts I, II and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV Through IX*, Adv. No. 16-1439-BKC-AJC-A, ECF No. 238], the Court has reviewed the Objection and Opposition and overrules same.

Subsection (C) of that same statue further states:

> (C) the court may grant a discharge if, after notice and a hearing held not more than 10 days before the date of the entry of the order granting the discharge, the court finds that there is no reasonable cause to believe that –
>
> > (i) section 522(q)(1) may be applicable to the debtor; and
> > (ii) there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B);
> >
> > and if the requirements of subparagraph (A) or (B) are met.

11 U.S.C. § 1141(d)(5)(C).

Section 1141(d)(5) allows an individual debtor to seek a discharge after confirmation but before plan payments are completed as long as the debtor satisfies the requirements of 11 U.S.C. § 1141(d)(5)(B).  *See*, *11 U.S.C. § 1141(d)(5)*; *see also*, *In re Necaise*, 443 B.R. 483 (Bankr. S.D. Miss. 2010) ("after the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), completion of plan payments (rather than plan confirmation) discharges an individual debtor.  In the alternative, an individual debtor may seek a discharge before completion of his plan payments, an early discharge, under either 11 U.S.C. § 1141(d)(5)(A) or (B).").

The Court finds that the Reorganized Debtor has complied with the provisions of 11 U.S.C. § 1141(b)(5)(B) so as to be entitled to an early discharge.[3]  Exhibit "A" attached to both the Motion

---

[3]  The Court notes that during the hearing, counsel for the United States Trustee concurred with the Debtor's position regarding her entitlement to entry of discharge upon payment to unsecured creditors:

> MS. ARMENGOL:
>
> … I can speak as to the procedural propriety of the Court awarding a discharge now.  I concur with Mr. Pugatch -- and for the record, the code section is 1141(d)(5)(A) and (B) -- that if unsecured claims are paid, the

and Final Report demonstrates that the general unsecured creditors, whose claims were to be paid

in the Plan, have been paid in full.  As a result, the value of property [payments] distributed under

the Fourth Amended [Chapter 11] Plan of Reorganization [ECF No. 563] (the "Fourth Amended

Plan") on account of each unsecured claim is not less than the amount that would have been paid

on such claim if the bankruptcy estate would have been liquidated under chapter 7.  Therefore, the

Reorganized Debtor has complied with 11 U.S.C. § 1141(b)(5)(B)(i).   The Court takes judicial

notice of Debtor's Monthly Operating Report (Individual) Corrected for the Period May 1, 2018

to May 31, 2018 [ECF No. 727] and Debtor's Monthly Operating Report (Individual) for the

Period June 1, 2018 to June 30, 2018 [ECF No. 725] evidencing the total disbursements made

pursuant to the Fourth Amended Plan and Confirmation Order.  Moreover, the Court finds 11

U.S.C. § 1141(b)(5)(B)(ii) is not applicable as modification of the Fourth Amended Plan is not

practicable under 11 U.S.C. § 1127.

**II.      The Fourth Amended Plan, the Confirmation Order and this Court's prior Orders provide additional bases to grant relief**

The Fourth Amended Plan, together with the Confirmation Order and this Court's prior

rulings provide additional authority for issuance of a discharge to the Reorganized Debtor prior to

completion of payments under the Plan.  The foregoing documents indicate that the Reorganized

---

individual debtor can receive a discharge.
Looking at the plan, Your Honor, the only other claims were secured.  So
even if she gets a discharge – Ms. Hazan gets a discharge and doesn't pay
pursuant to the plan, they still have that security and that lien.  And a
priority claim with the IRS – and I'm not sure where that stands, but Your
Honor, I believe that under 1141(d)(5)(B), Your Honor has the authority
to grant the discharge at this time.

Transcript, August 9, 2018 Hearings [17:15-25, 18:1-4].

CASE NO. 16-10389-BKC-AJC

Debtor intended to seek the issuance of a discharge upon payments in full to unsecured creditors. For instance, Article VIII of the Fourth Amended Plan, as confirmed by the Court, provides, in pertinent part:

> (e) Upon the satisfaction of all payments required under the Plan to *unsecured creditors*, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b).  Any Clerk of Court fees associated with filing of the motion to reopen shall be waived.  The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to *unsecured creditors*.

*See*, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 30 of 31. [Emphasis added].  The Court finds that the Reorganized Debtor complied with Article VIII(e) of the Fourth Amended Plan by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, Article VIII of the Fourth Amended Plan, as confirmed by the Court, states, in relevant part:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to *unsecured creditors* have been made.  The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See*, *Fourth Amended Plan, Article VIII* [ECF No. 563], page 31 of 31. [Emphasis added].  The Court finds that the Reorganized Debtor complied with Article VIII(f) of the Fourth Amended Plan by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

CASE NO. 16-10389-BKC-AJC

On or about June 12, 2018, this Court entered its Confirmation Order which confirmed the Fourth Amended Plan and contemplated the issuance of a discharge to the Reorganized Debtor upon the completion of plan payments to unsecured creditors under the Plan.  Specifically, paragraph 18(e) of the Confirmation Order states:

> (e) Upon the satisfaction of all payments required under the Plan to **Unsecured Creditors**, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b).  Any Clerk of Court fees associated with filing of the motion to reopen shall be waived.  The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all payments contemplated under the Plan to **Unsecured Creditors**.

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added].  The Court finds that the Reorganized Debtor complied with paragraph 18(e) of the Confirmation Order, by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, paragraph 18(f) of the Confirmation Order states:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to **Unsecured Creditors** have been made.  The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added].  The Court finds that the Reorganized Debtor complied with paragraph 18(f) of the Confirmation Order by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

CASE NO. 16-10389-BKC-AJC

On or about June 13, 2018, this Court entered its Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After Confirmation [ECF No. 692] (the "Agreed Order").  The Agreed Order provides, *inter alia*:

> Upon the re-opening of this bankruptcy case, the Reorganized Debtor shall promptly file a Final Report and Motion for Final Decree Closing Case on the Court-approved local form in effect at that time, which shall certify, that all payments required under the Plan to the ***unsecured creditors*** have been made.  The Court may then grant the Reorganized Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5) if all other conditions are satisfied.

*See*, *Agreed Order* [ECF No. 692], page 2 of 3. [Emphasis added].  The Court finds that the Reorganized Debtor complied with the Agreed Order by filing the Motion and Final Report, with Exhibit "A" attached to both pleadings, indicating all payments were made by the Debtor to Class 12 unsecured creditors.

## III.    NLG's Objection and Opposition

NLG, LLC is the only entity objecting to the granting of a discharge in this case. NLG, whose claim the Court disallowed, asserted that a discharge should not be granted at this time because the Debtor has not yet paid Creditor JMB Urban Development Partners, LTD in full.  The Court took the matter under advisement to consider the objection; and upon further consideration and review of the record, the Court overrules the objection.

NLG argues that the Court may not enter a discharge order until the Reorganized Debtor pays JMB in full. The Court disagrees. JMB is not affected by the relief sought and has not objected to the Debtor receiving a general discharge. Pursuant to the settlement of the adversary proceeding, in Adv No. 16-1188-BKC-AJC-A [ECF No. 21], the Reorganized Debtor and JMB agreed that

CASE NO. 16-10389-BKC-AJC

JMB has a non-dischargeable judgment of $275,000.00. Thus, after receiving its *pro rata* share of distributions under the Plan, JMB may continue to pursue payment of its claim outside the Plan. Likewise, the Reorganized Debtor and the Board of Managers of Spencer Condominium have agreed that Debtor's liability in the amount of $109,554.06 to the Board of Managers of Spencer Condominium would be non-dischargeable. Therefore, this Creditor has also agreed to the granting of Debtor's discharge.

Section 1141(5)(B) of the Bankruptcy Code provides for the granting of a discharge to a debtor who has not completed payments, if modification of a plan is not practicable and creditors have received value "not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7." *In re Belcher*, 410 B.R. 206, 215 (Bankr. W.D. Va. 2009) (explaining that "§ 1141(d)(5)(B) provides for early discharge in a manner similar to the 'hardship discharge' in chapter 13 cases under § 1328(b)."). In this case, all unsecured creditors were to be paid in accordance with the Plan, and those payments have been made in full. JMB and the Board of Managers of Spencer Condominium may pursue the remaining amounts of their respective non-dischargeable debts outside the Plan. Because the entry of a discharge [of the claims of the unsecured creditors who were paid in full under the Plan] will not affect JMB or the Board of Managers of Spencer Condominium, the Court sees no reason to withhold the discharge when the Debtor has otherwise established entitlement to same.

The entry of a non-dischargeable judgment, and the outstanding debt thereunder, does not prevent the early entry of an order of discharge, because a discharge in no way impacts the non-dischargeable debts. Unsecured creditors holding nondischargeable claims are entitled to collect the balance of their debts outside the plan. In *Newman v. United States (In re Newman)*, 399 B.R.

541, 548 (Bankr. M.D. Fla. 2008), the court held that a creditor holding a nondischargeable claim is not prevented from pursuing post-confirmation collection efforts outside of bankruptcy, regardless of whether such claim was provided for in the confirmed plan. A nondischargeable debt may remain after a debtor has emerged from bankruptcy.

Although the Court believed that, following the August 9, 2018 hearing, the Debtor had demonstrated compliance with the requirements of 11 U.S.C. § 1141(d)(5), the Court set another hearing for October 24, 2018 to address whether a discharge should be issued while the Reorganized Debtor's non-core tort claims remained pending in an adversary proceeding. [ECF No. 745]. At the October 24, 2018 hearing, the Reorganized Debtor announced she was withdrawing her non-core tort claims, thereby alleviating the Court's concerns.  Adv. No. 16-1439-BKC-AJC-A [ECF No. 358].

For the foregoing reasons, the Court finds that the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B) by demonstrating her completion of all plan payments to general unsecured creditors under the Fourth Amended Plan and Confirmation Order and has otherwise complied with the requirements to receive a discharge.  However, the Court will refrain from closing this case at this time as there remains pending the parties' motions for sanctions and for contempt, as well as several appeals.  It is the policy of the Court to not close a case until all appeals are finally resolved and over.  Therefore, it is

**ORDERED AND ADJUDGED**:

1. The Motion [ECF No. 713] is **GRANTED IN PART,** and this bankruptcy case is **RE-OPENED** for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order.

2.   The Final Report is **APPROVED.**

3.   NLG, LLC's motion and amended motion to re-open Chapter 11 case [ECF Nos. 757 and 763] are **GRANTED IN PART** with respect to reopening this case, and not closing the case until the final disposition of all pending motions and appeals herein, but NLG, LLC's Opposition and Objection to the granting of the discharge are **DENIED** and **OVERRULED**.

4.   The Reorganized Debtor is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

5.   The discharge issued to the Reorganized Debtor does not discharge or otherwise affect the JMB non-dischargeable judgment.

6.   The discharge issued to the Reorganized Debtor does not discharge the Reorganized Debtor from her personal monetary liability in the amount of One Hundred Nine Thousand Five Hundred Fifty-Four and 06/100 Dollars ($109,554.06) to the Board of Managers of Spencer Condominium. The Reorganized Debtor has other non-monetary obligations under the Settlement Agreement with the Board of Managers of Spencer Condominium, as provided for in the treatment of Class 11 under the Fourth Amended Plan and the Confirmation Order, and such non-monetary obligations are not impacted by the discharge.  The New York courts have exclusive

*CASE NO. 16-10389-BKC-AJC*

jurisdiction over the settlement between those parties.

7.    This case shall remain open pending the final disposition of all motions herein and the outstanding appeals, after which the Court will direct the Clerk of Court to enter a Final Decree closing this case.

**###**

Submitted by:

Geoffrey S Aaronson, Esq
Aaronson Schantz Beiley P.A.
Florida Bar No. 349623
One Biscayne Tower, 34th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Reorganized Debtor*

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                   CASE NO.:   16-10389-AJC

LIZA HAZAN,                         CHAPTER 11

      Debtor.

_____/

**UNITED STATES' MOTION TO**
**DISMISS DEBTOR'S BANKRUPTCY CASE**

The United States of America, on behalf of the Internal Revenue Service (the "IRS"), hereby moves for an order dismissing the Debtor's bankruptcy case for cause, pursuant to Title 11, U.S.C. § 1112(b), (4)(N), and in support thereof states as follows:

**FACTS**

1.      On January 11, 2016, Liza Hazan, (the "Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.      On February 8, 2016, the IRS filed a Claim 3-1 setting forth a secured claim in the amount of $393,985.17, an unsecured priority claim in the amount of $49,663.00, and a general unsecured claim in the amount of $1,085.00

3.      On November 22, 2016, the IRS filed an Amended Claim 3-2 (the "Claim") setting forth a secured claim in the amount of $393,985.17, an unsecured priority claim in the amount of $24,663.00, and a general unsecured claim in the amount of $1,085.00.

4.      On November 15, 2017, the Debtor filed a *Fourth Amended Plan of Reorganization* [D.E. 563] (the "Plan").

5.      On June 12, 2018, the Court entered an *Order Confirming Plan of Reorganization*

[D.E. 691](the "Confirmation Order").

6.      Under the confirmed Plan, the Debtor was to provide for the IRS' Claim, as follows:

**Priority Claims**

| Class # | Description | Treatment |
|---------|-------------|-----------|
| 1 | **IRS** <br><br> **Claim #3** | The $24,663.00 priority tax claim will be paid within five years of the petition date. Equal Payments of $2,674.34 every six months to include interest on any unpaid claim amounts after the effective date of the plan at 3%. |

**Secured Claims**

| | | |
|---|---|---|
| 8 | **IRS** <br><br> **claim #3** | $393,985.17 - Secured claim shall be paid over ten years with interest Equal payments in the amount of $22,948.00 every 6 months to include interest on any unpaid claim amounts after the effective date of the plan at 3%. |

**Convenience Class Undisputed Unsecured Small Claims**
**Paid in full on the Effectiver (sic) Date at confirmation**

| | | |
|---|---|---|
| 12 | IRS Claim #3 | $1085.00 |

*See* Plan pg. 4, 15 and 19.

7.     The IRS hereby moves for an order dismissing the bankruptcy case entered because of the Debtor's material default under the confirmed Plan.

## **ARGUMENT**

8.     Under Title 11, U.S.C. § 1112(b), upon the request of a party in interest, a court may dismiss a bankruptcy case "for cause."  11 U.S.C. § 1112(b).

9.     "Cause includes 'material default by the debtor with respect to a confirmed plan.'" In re Sundale, Ltd., 471 B.R. 300, 303 (Bankr. S.D. Fla. 2012)(citing 11 U.S.C. § 1112(b)(4)(N)).

10.     Here, the Debtor has materially defaulted with respect to the confirmed Plan because the Debtor has failed to make payments pursuant to the Plan. The Debtor has only made $25,622.34 in plan payments since confirmation of the case and has not made a payment since June 21, 2018.  The Debtor currently owes $179,356.38 in Plan payments.

11.     Accordingly, sufficient cause exists to dismiss the Debtor's bankruptcy case.

**WHEREFORE,** the United States requests that the Debtor's bankruptcy case be dismissed pursuant to 11 U.S.C. § 1112(b),(4)(N).

Respectfully submitted,

**JUAN ANTONIO GONZALEZ**
**UNITED STATES ATTORNEY**

By: s/  RaychelleTasher
        Raychelle Tasher
        Assistant United States Attorney
        FL Bar No. 109291
        E-mail: Raychelle.Tasher@usdoj.gov
        United States Attorney's Office
        99 N.E. 4th Street, Suite 300
        Miami, Florida 33132
        Tel: 786-439-3185
        Fax: 305-530-7139
        *Counsel for United States of America*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on June 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case or via U.S. mail to all parties listed on the attached mailing matrix.

### <u>VIA CM/ECF:</u>

**16-10389-AJC Notice will be electronically mailed to:**

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Horizon Hospitality Group, LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Portefolio Onesource Advisor, LLC, A Florida LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Portfolio Onesource Advisors, LLC, A Delaware LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Liza Hazan
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Sean Neil Meehan
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Counter-Defendant Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Plaintiff Liza Hazan
aresty@mac.com

Daniel A Bushell on behalf of Debtor Liza Hazan
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Defendant Liza Hazan
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Plaintiff Selective Advisors Group, LLC
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Plaintiff Liza Hazan
dan@bushellappellatelaw.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, LDaugherty@lockelord.com;David.Rankin@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, LDaugherty@lockelord.com;David.Rankin@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@haber.law, jfelipe@haber.law

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@agentislaw.com,
nsocorro@agentislaw.com;bankruptcy@agentislaw.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Michael S Feldman on behalf of Respondent Stuart Zoberg
mfeldman@shirlawgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com, anhsalaw@infoex.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com;gjbecf@ecf.courtdrive.com;jzamora@gjb-law.com;chopkins@gjb-law.com;vlambdin@gjb-law.com;btraina@gjb-law.com;preynolds@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-law.com;gjbecf@ecf.courtdrive.com;jzamora@gjb-law.com;chopkins@gjb-law.com;vlambdin@gjb-law.com;btraina@gjb-law.com;preynolds@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
ltitus@furrcohen.com,

atty_furrcohen@bluestylus.com;cworkinger@furrcohen.com;staff1@furrcohen.com;furrrr84158@notify.bestcase.com

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Creditor NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Defendant NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Plaintiff NLG, LLC
astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Debtor Liza Hazan
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Liza Hazan
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM, gusraelaw@gmail.com;gusrae.robertr101832@notify.bestcase.com

Robert A Gusrae on behalf of Defendant Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM, gusraelaw@gmail.com;gusrae.robertr101832@notify.bestcase.com

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@haber.law, mpomares@haber.law;wmarquez@haber.law;service@haber.law

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, LOGSECF@logs.com

Heather L. Ries, Esq. on behalf of Trustee Alfred T. Giuliano
hries@foxrothschild.com, ralbert@foxrothschild.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,
jless@stearnsweaver.com;fsanchez@stearnsweaver.com;cgraver@stearnsweaver.com;mfernand
ez@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
ppaoletti@simonsigalos.com, dgasser@simonsigalos.com

Raychelle A Tasher on behalf of Creditor United States of America, IRS
Raychelle.Tasher@usdoj.gov, Milton.Pacheco@usdoj.gov;Shannon.Patterson@usdoj.gov

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, eperez@leoncosgrove.com

**and VIA U.S. MAIL to all parties listed on the attached mailing matrix on June 7, 2022**

                                                        *s/      RaychelleTasher*
                                                        Raychelle Tasher

```
Label Matrix for local noticing        Aaronson Schantz Beiley P.A.           Board of Managers of Spencer Condominium
113C-1                                  c/o Geoffrey S. Aaronson               c/o Robert C. Furr Esq
Case 16-10389-AJC                       100 SE 2nd Street 27th Floor           Furr and Cohen PA
Southern District of Florida            Miami, FL 33131-2122                   2255 Glades Rd #337W
Miami                                                                          Boca Raton, FL 33431-7379
Tue Jun  7 13:15:59 EDT 2022

Fisher Island Community Association, Inc.   JMB/Urban 900 Development Partners, Ltd   JPMorgan Chase Bank, National Association
c/o PeytonBolin                         JMB/Urban 900 Development Partners, Ltd   Shapiro, Fishman & Gache, LLP
3343 West Commercial Blvd, Suite 100    900 North Michigan Ave                 c/o Steve Powrozek
Fort Lauderdale, FL 33309-3425          Chicago, IL 60611-1542                 4630 Woodland Corporate Blvd.#100
                                                                               Tampa, FL 33614-2429


Joel M. Aresty P.A.                     (p)MIAMI DADE COUNTY TAX COLLECTOR     NLG, LLC
Joel M. Aresty, Esq.                    ATTN WENDY MONTOYA                     Nicholas B. Bangos, P.A.
309 1st Ave S                           200 NW 2ND AVENUE                      c/o Nicholas B. Bangos
Tierra Verde, FL 33715-2231             MIAMI FL 33128-1733                    100 S.E. 2nd Street, Suite 3400
                                                                               Miami, FL 33131-2122


(c)S&S COLLECTIONS, INC.                Selective Advisors Group, LLC         SouthEast Financial, LLC
SIMON & SIGALOS, LLP                    c/o Marshall Socarras Grant, P.L.     Albertelli Law
3839 NW 2ND AVE STE 100                 197 S. Federal Highway                c/o Jeffrey S. Fraser
BOCA RATON FL  33431-5862               Suite 300                             PO Box 23028
                                        Boca Raton, FL 33432-4946             Tampa, FL 33623-2028


U.S. Bank National Association          (p)INTERNAL REVENUE SERVICE           Valencia Estates Homeowners' Associatio
SHD Legal Group, P.A.                   CENTRALIZED INSOLVENCY OPERATIONS     c/o Haber Slade, P.A.
PO BOX 19519                            PO BOX 7346                           201 S. Biscayne Blvd.
Fort Lauderdale, FL 33318-0519          PHILADELPHIA PA 19101-7346            Suite 201
                                                                              Miami, FL 33131-4324


3343 West Commercial Blvd, 100          6913 Valencia, LLC                    900 North Michigan, LLC
3343 West Commercial Blvd, 10           3839 NW Boca Raton Boulevard          c/o W. Allen Woolley, Esq.
Fort Lauderdale, FL 33309-3425          West Palm Beach, FL 33413             Wildman Harrold Allens Dixon, LLP
                                                                              225 West Wacker Drive, Suite 3000
                                                                              Chicago, IL 60606-3007


ATT Mobility                            Allied Collection Service             American InfoSource LP as agent for
PO Box 536216                           1607 Central Ave                      DIRECTV, LLC
Atlanta, GA 30353-6216                  Columbus, IN 47201-5370               PO Box 5008
                                                                              Carol Stream, IL  60197-5008


American InfoSource LP as agent for     Board of Managers of Spencer Condominium   Chase Bank, NA
T Mobile/T-Mobile USA Inc               c/o Robert C. Furr Esq                c/o Jennifer Kopf, Esq.
PO Box 248848                           2255 Glades Rd #337W                  Shapiro, Fishman & Gashe, LLP
Oklahoma City, OK  73124-8848           Boca Raton, FL 33431-7379             2424 N. Federal Highway, Suite 360
                                                                              Boca Raton, FL 33431-7701


Cross & Simon, LLC                      Cross & Simon, LLC                    David J. Fischer
c/o David Holmes, Esq.                  David G. Holmes, Esquire              Locke Lord LLP
1105 North Market ST, Suite 901         1105 North Market Street              111 South Wacker Drive
Wilmington, DE 19801-1216               Suite 901                             Chicago, IL 60606-4409
                                        Wilmington, DE 19801-1216


(p)DIRECTV LLC                          Enhanced Recovery Company             First National Collection Bureau, Inc.
ATTN BANKRUPTCIES                       8014 Bayberry Rd                      610 Waltham Way
PO BOX 6550                             Jacksonville, FL 32256-7412           Sparks, NV 89437-6695
GREENWOOD VILLAGE CO 80155-6550
```

Fisher Island Community Association
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319-2877

Florida Power & Light
ATTN: General Mailing Facility
Miami, FL 33188-0001

Focus Management
10284 NW 47th St
Fort Lauderdale, FL 33351-7967

Fuerst Ittleman David & Joseph, P.L.
c/o Robert P. Charbonneau, Esq.
501 Brickell Key Drive, Suite 300
Miami, FL 33131-2624

HSBC Bank USA, NA
PO Box 2013
Buffalo, NY 14240-2013

Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101-7317

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JMB/Urban 900 Development Partners, Ltd.
David J. Fischer
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606-4409

Marzec Law Firm
225 Broadway, Suite 3000
New York, NY 10007-3067

Miami Dade Water & Sewer Department
Attn: Collection Branch/Bankruptcy Unit
P.O. Box 149089 Coral Gables, FL 33114

Miami-Dade Water & Sewer Department
PO Box 026055
Miami, FL 33102-6055

(c)MICHAEL W. SIMON, ESQ.
SIMON & SIGALOS, LLP
3839 NW 2ND AVE STE 100
BOCA RATON FL   33431-5862

Mount Sinai Medical Center
PO Box 403429
Miami Beach, FL 33140-1429

NLG, LLC
c/o Juan Ramirez, Esq.
Diaz, Reus, & Targ LLP
100 SE 2nd Street, Suite 3400
Miami, FL 33131-2122

Newman Ferrara LLP
1250 Broadway, 27th Floor
New York, NY 10001-3717

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Ray Garcia P.A.
14850 SW 26th Street, Suite 204
Miami, FL 33185-5931

Real Estate Holdings Group, LDC
60 Market Square
PO Box 364
Belize City, Belize

Real Time Resolutions, Inc.
1349 Empire Central Drive, Suite #1
Dallas, Texas 75247-4029

Real Time Solutions
1349 Empire Central Drive
Suite 150
Dallas, TX 75247-4029

Robert A Gusrae
3343 West Commercial Blvd, 100
Fort Lauderdale, FL 33309-3425

(c)S & S COLLECTIONS, INC.
MICHAEL W. SIMON, ESQ.
3839 NW 2ND AVE STE 100
BOCA RATON FL   33431-5862

Scott Paul Mackoff, Esq.
Mitofsky, Shapiro, Neville & Hazen LLP
152 Madison Avenue, 3rd Floor
New York, NY 10016-5424

Select Advisors Group, LLC
6499 Powerline Road, Suite 304
Fort Lauderdale, FL 33309-2043

(c)SIMON & SIGALOS
C/O MICHAEL SIMON, ESQ.
3839 NW 2ND AVE STE 100
BOCA RATON FL   33431-5862

Southeast Financial, LLC
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431-4527

Spencer Condominium
d/b/a Halstead Management Co., LLC
c/o David A. Tane, Esq.
120 Broadway, Suite 948
New York, NY 10271-0996

Sterling Emergency Serv. of Miami Beach
PO Box 975213
Dallas, TX 75397-5213

Tracy Peterson, Esq.
Braverman Greenspun, PC
110 East 42nd Street, 17th Floor
New York, NY 10017-8515

US Bank
c/o Lawrence Lambert, Esq.
Frankel Lambert LLP
53 Gibson Street
Bay Shore, NY 11706-8369

Valencia Estates
c/o Jonathan Scott Goldstein, Esq.
Haber Slade
201 S. Biscayne Boulevard, Suite 1205
Miami, FL 33131-4317

Valencia Estates Homeowners Assn, Inc.
42205 Fisher Island Drive
Miami Beach, FL 33109-1291

Verizon
PO Box 1100
Albany, NY 12250-0001

Wells Fargo Bank
Box 5058 MAC P6053-021
Portland, OR 97208-5058

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Daniel A Bushell
6400 North Andrews Ave # 505
Fort Lauderdale, FL 33309-9112

David W. Langley
8551 W Sunrise Blvd # 303
Fort Lauderdale, FL 33322-4007

Joe M. Grant Esq.
Lorium Law PLLC
197 S. Federal Hwy #200
Boca Raton, FL 33432-4946

Joel M. Aresty Esq.
309 1st Ave S
Tierra Verde, FL 33715-2231

Juan Ramirez, Jr.
ADR Miami, LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146-2918

Liza Hazan
6913 Valencia Drive
Miami Beach, FL 33109-0601

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Miami-Dade County Tax Collector
c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430
Miami, FL 33128-1733

United States of America, IRS
c/o Raychelle Tasher
99 NE 4th Street Suite 300
Miami, FL 33132

Direct TV
PO Box 6550
Englewood, CO 80155-6550

(d)Miami-Dade County Tax Collector
Attn: Paralegal Bankruptcy Unit
200 NW 2 Ave, suite 430
Miami, Fla. 33128-1733

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

S&S Collections, Inc.
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd
Suite 100
Boca Raton, FL 33431

Michael W. Simon, Esq.
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, FL 33431

S & S Collections, Inc.
Michael W. Simon, Esq.
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, FL 33431

Simon & Sigalos
c/o Michael Simon, Esq.
3839 NW Boca Raton Boulevard, Suite 100
Boca Raton, FL 33431

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Fuerst, Ittleman David & Joseph, P.L. | (u)Real Time Resolutions, Inc. | (u)Miami |
| (u)Car Southeast Financial, LLC<br>Per DE#23 | (u)Cross Simon<br>Per DE #23 | (u)Halsted Management Company<br>Per DE #23 |
| (u)Jacobs Keeley, PLLC<br>Per DE #23 | (u)Mark D. Cohen, PA<br>Per DE #23 | (u)Mercedes Benz Financial Services<br>Per DE #23 |
| (u)Newman Ferrara, LLP<br>Per DE #23 | (d)Newman Ferrara, LLp<br>1250 Broadway, 27th Floor<br>New York, NY 10001-3717 | (u)Presidential Auto Leasing & Sales<br>Per DE #23 |
| (u)Robert P. Lithman P.A.<br>Per DE #23 | (u)Select Portfolio Servicing, Inc.<br>Per DE #23 | (u)Alfred T. Giuliano |
| (u)Michael Friedman | (u)Stuart Zoberg | End of Label Matrix<br>Mailable recipients    70<br>Bypassed recipients    17<br>Total                  87 |

Form CGFCRD3T  (2/16/2021)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

In re:
Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109
SSN: xxx–xx–7473

## NOTICE OF HEARING

**PLEASE TAKE NOTICE**  that a hearing will be held before the Honorable A. Jay Cristol to consider the following:

**Motion to Dismiss Case Filed by Creditor United States of America, IRS. ECF#1157**

1.  This matter has been set on the Court's motion calendar for a non–evidentiary hearing. The allotted time for this matter is ten minutes. The hearing will be held:

     **Date:**        **June 30, 2022**
     **Time:**        **03:00 PM**
     **Location:**    **Telephone by CourtSolutions LLC**

2.  The hearing scheduled by this notice will take place only by telephone. DO NOT GO TO THE COURTHOUSE. Attorneys must advise their clients not to appear at the courthouse. Individuals not represented by counsel will be able to use the telephonic services free of charge. Although conducted by telephone, the hearing is a court proceeding. The formalities of the courtroom must be observed. All participants must exercise civility, and otherwise conduct themselves in a manner consistent with the dignity of the Court.

3.  To participate through CourtSolutions, you must make a reservation in advance no later than 3:00 p.m., one business day before the date of the hearing. Reservations should be arranged online at https://www.court–solutions.com. If a party is unable to register online, a reservation may also be made by telephone at (917) 746–7476.

4.  The movant, or movant's counsel if represented by an attorney, must:

     (a)   serve a copy of this notice of hearing and, unless previously served, the above–described document(s) on all required parties within the time frame required by the Federal Rules of Bankruptcy Procedure, the local rules of this Court, and orders of the Court, and

     (b)   file a certificate of service as required under Local Rules 2002–1(F) and 9073–1(B).

     Any party who fails to properly serve any pleading or other paper may be denied the opportunity to be heard thereon.

5.  PLEASE NOTE: No person may record the proceedings from any location by any means. The audio recording maintained by the Court will be the sole basis for creation of a transcript that constitutes the official record of the hearing.

**Dated: 6/7/22**

**CLERK OF COURT**
By: Susan Gutierrez
Courtroom Deputy

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                          CASE NO.:    16-10389-AJC

LIZA HAZAN,                                CHAPTER 11

　　　Debtor.
_____/

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the NOTICE OF HEARING [D.E.

1158] on the UNITED STATES' MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE

[D.E. 1157] was served on June 7, 2022 by transmission of Notices of Electronic Filing

generated by CM/ECF to those parties registered to receive electronic notices of filing in this

case and via U.S. mail to all parties listed on the attached mailing matrix on June 8, 2022.

Respectfully submitted,

**JUAN ANTONIO GONZALEZ**
**UNITED STATES ATTORNEY**

By: s/  RaychelleTasher
　　　Raychelle Tasher
　　　Assistant United States Attorney
　　　FL Bar No. 109291
　　　E-mail: Raychelle.Tasher@usdoj.gov
　　　United States Attorney's Office
　　　99 N.E. 4th Street, Suite 300
　　　Miami, Florida 33132
　　　Tel: 786-439-3185
　　　Fax: 305-530-7139
　　　*Counsel for United States of America*

**VIA CM/ECF:**

**16-10389-AJC Notice will be electronically mailed to:**

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Horizon Hospitality Group, LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Portefolio Onesource Advisor, LLC, A Florida LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Portfolio Onesource Advisors, LLC, A Delaware LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Liza Hazan
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Sean Neil Meehan
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Counter-Defendant Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Plaintiff Liza Hazan
aresty@mac.com

Daniel A Bushell on behalf of Debtor Liza Hazan
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Defendant Liza Hazan
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Plaintiff Selective Advisors Group, LLC
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Plaintiff Liza Hazan
dan@bushellappellatelaw.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, LDaugherty@lockelord.com;David.Rankin@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, LDaugherty@lockelord.com;David.Rankin@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@haber.law, jfelipe@haber.law

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@agentislaw.com,
nsocorro@agentislaw.com;bankruptcy@agentislaw.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Michael S Feldman on behalf of Respondent Stuart Zoberg
mfeldman@shirlawgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com, anhsalaw@infoex.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-
law.com;gjbecf@ecf.courtdrive.com;jzamora@gjb-law.com;chopkins@gjb-
law.com;vlambdin@gjb-law.com;btraina@gjb-law.com;preynolds@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-
law.com;gjbecf@ecf.courtdrive.com;jzamora@gjb-law.com;chopkins@gjb-
law.com;vlambdin@gjb-law.com;btraina@gjb-law.com;preynolds@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
ltitus@furrcohen.com,
atty_furrcohen@bluestylus.com;cworkinger@furrcohen.com;staff1@furrcohen.com;furrrr84158
@notify.bestcase.com

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Creditor NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Defendant NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Plaintiff NLG, LLC
astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Debtor Liza Hazan
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Liza Hazan
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM,
gusraelaw@gmail.com;gusrae.robertr101832@notify.bestcase.com

Robert A Gusrae on behalf of Defendant Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM,
gusraelaw@gmail.com;gusrae.robertr101832@notify.bestcase.com

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@haber.law, mpomares@haber.law;wmarquez@haber.law;service@haber.law

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC
bkcmiami@gmail.com

4

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, LOGSECF@logs.com

Heather L. Ries, Esq. on behalf of Trustee Alfred T. Giuliano
hries@foxrothschild.com, ralbert@foxrothschild.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,
jless@stearnsweaver.com;fsanchez@stearnsweaver.com;cgraver@stearnsweaver.com;mfernand
ez@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
ppaoletti@simonsigalos.com, dgasser@simonsigalos.com

Raychelle A Tasher on behalf of Creditor United States of America, IRS
Raychelle.Tasher@usdoj.gov, Milton.Pacheco@usdoj.gov;Shannon.Patterson@usdoj.gov

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, eperez@leoncosgrove.com


**and VIA U.S. MAIL to all parties listed on the attached mailing matrix on June 8, 2022**

_s/      RaychelleTasher_

Raychelle Tasher

Label Matrix for local noticing
113C-1
Case 16-10389-AJC
Southern District of Florida
Miami
Tue Jun  7 13:15:59 EDT 2022

Aaronson Schantz Beiley P.A.
c/o Geoffrey S. Aaronson
100 SE 2nd Street 27th Floor
Miami, FL 33131-2122

Board of Managers of Spencer Condominium
c/o Robert C. Furr Esq
Furr and Cohen PA
2255 Glades Rd #337W
Boca Raton, FL 33431-7379

Fisher Island Community Association, Inc.
c/o PeytonBolin
3343 West Commercial Blvd, Suite 100
Fort Lauderdale, FL 33309-3425

JMB/Urban 900 Development Partners, Ltd
JMB/Urban 900 Development Partners, Ltd
900 North Michigan Ave
Chicago, IL 60611-1542

JPMorgan Chase Bank, National Association
Shapiro, Fishman & Gache, LLP
c/o Steve Powrozek
4630 Woodland Corporate Blvd.#100
Tampa, FL 33614-2429

Joel M. Aresty P.A.
Joel M. Aresty, Esq.
309 1st Ave S
Tierra Verde, FL 33715-2231

(p)MIAMI DADE COUNTY TAX COLLECTOR
ATTN WENDY MONTOYA
200 NW 2ND AVENUE
MIAMI FL 33128-1733

NLG, LLC
Nicholas B. Bangos, P.A.
c/o Nicholas B. Bangos
100 S.E. 2nd Street, Suite 3400
Miami, FL 33131-2122

(c)S&S COLLECTIONS, INC.
SIMON & SIGALOS, LLP
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Selective Advisors Group, LLC
c/o Marshall Socarras Grant, P.L.
197 S. Federal Highway
Suite 300
Boca Raton, FL 33432-4946

SouthEast Financial, LLC
Albertelli Law
c/o Jeffrey S. Fraser
PO Box 23028
Tampa, FL 33623-2028

U.S. Bank National Association
SHD Legal Group, P.A.
PO BOX 19519
Fort Lauderdale, FL 33318-0519

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Valencia Estates Homeowners' Associatio
c/o Haber Slade, P.A.
201 S. Biscayne Blvd.
Suite 201
Miami, FL 33131-4324

3343 West Commercial Blvd, 100
3343 West Commercial Blvd, 10
Fort Lauderdale, FL 33309-3425

6913 Valencia, LLC
3839 NW Boca Raton Boulevard
West Palm Beach, FL 33413

900 North Michigan, LLC
c/o W. Allen Woolley, Esq.
Wildman Harrold Allens Dixon, LLP
225 West Wacker Drive, Suite 3000
Chicago, IL 60606-3007

ATT Mobility
PO Box 536216
Atlanta, GA 30353-6216

Allied Collection Service
1607 Central Ave
Columbus, IN 47201-5370

American InfoSource LP as agent for
DIRECTV, LLC
PO Box 5008
Carol Stream, IL  60197-5008

American InfoSource LP as agent for
T Mobile/T-Mobile USA Inc
PO Box 248848
Oklahoma City, OK  73124-8848

Board of Managers of Spencer Condominium
c/o Robert C. Furr Esq
2255 Glades Rd #337W
Boca Raton, FL 33431-7379

Chase Bank, NA
c/o Jennifer Kopf, Esq.
Shapiro, Fishman & Gashe, LLP
2424 N. Federal Highway, Suite 360
Boca Raton, FL 33431-7701

Cross & Simon, LLC
c/o David Holmes, Esq.
1105 North Market ST, Suite 901
Wilmington, DE 19801-1216

Cross & Simon, LLC
David G. Holmes, Esquire
1105 North Market Street
Suite 901
Wilmington, DE 19801-1216

David J. Fischer
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606-4409

(p)DIRECTV LLC
ATTN BANKRUPTCIES
PO BOX 6550
GREENWOOD VILLAGE CO 80155-6550

Enhanced Recovery Company
8014 Bayberry Rd
Jacksonville, FL 32256-7412

First National Collection Bureau, Inc.
610 Waltham Way
Sparks, NV 89437-6695

Fisher Island Community Association
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319-2877

Florida Power & Light
ATTN: General Mailing Facility
Miami, FL 33188-0001

Focus Management
10284 NW 47th St
Fort Lauderdale, FL 33351-7967

Fuerst Ittleman David & Joseph, P.L.
c/o Robert P. Charbonneau, Esq.
501 Brickell Key Drive, Suite 300
Miami, FL 33131-2624

HSBC Bank USA, NA
PO Box 2013
Buffalo, NY 14240-2013

Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101-7317

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JMB/Urban 900 Development Partners, Ltd.
David J. Fischer
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606-4409

Marzec Law Firm
225 Broadway, Suite 3000
New York, NY 10007-3067

Miami Dade Water & Sewer Department
Attn: Collection Branch/Bankruptcy Unit
P.O. Box 149089 Coral Gables, FL 33114

Miami-Dade Water & Sewer Department
PO Box 026055
Miami, FL 33102-6055

(c)MICHAEL W. SIMON, ESQ.
SIMON & SIGALOS, LLP
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Mount Sinai Medical Center
PO Box 403429
Miami Beach, FL 33140-1429

NLG, LLC
c/o Juan Ramirez, Esq.
Diaz, Reus, & Targ LLP
100 SE 2nd Street, Suite 3400
Miami, FL 33131-2122

Newman Ferrara LLP
1250 Broadway, 27th Floor
New York, NY 10001-3717

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Ray Garcia P.A.
14850 SW 26th Street, Suite 204
Miami, FL 33185-5931

Real Estate Holdings Group, LDC
60 Market Square
PO Box 364
Belize City, Belize

Real Time Resolutions, Inc.
1349 Empire Central Drive, Suite #1
Dallas, Texas 75247-4029

Real Time Solutions
1349 Empire Central Drive
Suite 150
Dallas, TX 75247-4029

Robert A Gusrae
3343 West Commercial Blvd, 100
Fort Lauderdale, FL 33309-3425

(c)S & S COLLECTIONS, INC.
MICHAEL W. SIMON, ESQ.
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Scott Paul Mackoff, Esq.
Mitofsky, Shapiro, Neville & Hazen LLP
152 Madison Avenue, 3rd Floor
New York, NY 10016-5424

Select Advisors Group, LLC
6499 Powerline Road, Suite 304
Fort Lauderdale, FL 33309-2043

(c)SIMON & SIGALOS
C/O MICHAEL SIMON, ESQ.
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Southeast Financial, LLC
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431-4527

Spencer Condominium
d/b/a Halstead Management Co., LLC
c/o David A. Tane, Esq.
120 Broadway, Suite 948
New York, NY 10271-0996

Sterling Emergency Serv. of Miami Beach
PO Box 975213
Dallas, TX 75397-5213

Tracy Peterson, Esq.
Braverman Greenspun, PC
110 East 42nd Street, 17th Floor
New York, NY 10017-8515

US Bank
c/o Lawrence Lambert, Esq.
Frankel Lambert LLP
53 Gibson Street
Bay Shore, NY 11706-8369

Valencia Estates
c/o Jonathan Scott Goldstein, Esq.
Haber Slade
201 S. Biscayne Boulevard, Suite 1205
Miami, FL 33131-4317

Valencia Estates Homeowners Assn, Inc.
42205 Fisher Island Drive
Miami Beach, FL 33109-1291

Verizon
PO Box 1100
Albany, NY 12250-0001

Wells Fargo Bank
Box 5058 MAC P6053-021
Portland, OR 97208-5058

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Daniel A Bushell
6400 North Andrews Ave # 505
Fort Lauderdale, FL 33309-9112

David W. Langley
8551 W Sunrise Blvd # 303
Fort Lauderdale, FL 33322-4007

Joe M. Grant Esq.
Lorium Law PLLC
197 S. Federal Hwy #200
Boca Raton, FL 33432-4946

Joel M. Aresty Esq.
309 1st Ave S
Tierra Verde, FL 33715-2231

Juan Ramirez, Jr.
ADR Miami, LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146-2918

Liza Hazan
6913 Valencia Drive
Miami Beach, FL 33109-0601

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Miami-Dade County Tax Collector
c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430
Miami, FL 33128-1733

United States of America, IRS
c/o Raychelle Tasher
99 NE 4th Street Suite 300
Miami, FL 33132

Direct TV
PO Box 6550
Englewood, CO 80155-6550

(d)Miami-Dade County Tax Collector
Attn: Paralegal Bankruptcy Unit
200 NW 2 Ave, suite 430
Miami, Fla. 33128-1733

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

S&S Collections, Inc.
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd
Suite 100
Boca Raton, FL 33431

Michael W. Simon, Esq.
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, FL 33431

S & S Collections, Inc.
Michael W. Simon, Esq.
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, FL 33431

Simon & Sigalos
c/o Michael Simon, Esq.
3839 NW Boca Raton Boulevard, Suite 100
Boca Raton, FL 33431

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Fuerst, Ittleman David & Joseph, P.L. | (u)Real Time Resolutions, Inc. | (u)Miami |
| (u)Car Southeast Financial, LLC<br>Per DE#23 | (u)Cross Simon<br>Per DE #23 | (u)Halsted Management Company<br>Per DE #23 |
| (u)Jacobs Keeley, PLLC<br>Per DE #23 | (u)Mark D. Cohen, PA<br>Per DE #23 | (u)Mercedes Benz Financial Services<br>Per DE #23 |
| (u)Newman Ferrara, LLP<br>Per DE #23 | (d)Newman Ferrara, LLp<br>1250 Broadway, 27th Floor<br>New York, NY 10001-3717 | (u)Presidential Auto Leasing & Sales<br>Per DE #23 |
| (u)Robert P. Lithman P.A.<br>Per DE #23 | (u)Select Portfolio Servicing, Inc.<br>Per DE #23 | (u)Alfred T. Giuliano |
| (u)Michael Friedman | (u)Stuart Zoberg | End of Label Matrix<br>Mailable recipients    70<br>Bypassed recipients    17<br>Total                  87 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                          Chapter 11
_____/

### CHRIS KOSACHUK'S MOTION TO DISMISS CASE WITH PREJUDICE

Chris Kosachuk, *pro se*, ("Movant"), in accordance with 11 U.S.C. §1112(b) and Rule 1017 of the Federal Rules of Bankruptcy Procedure, respectfully moves to dismiss this individual Chapter 11 bankruptcy case with prejudice.  In support, Movant states:

### Request for Hearing before June 22, 2022

Movant requests a hearing before June 22, 2022 because there are ten different matters to be heard that day at 2:00 pm. Those matters will all be moot if this Motion to Dismiss is granted. Additionally, the United States of America on behalf of the IRS filed its own Motion to Dismiss [Doc. 1157], which should also be heard simultaneously with this Motion before the June 22 matters.

### The United States' Motion to Dismiss Debtor's Bankruptcy Case [Doc. 1157]

On June 7, 2022, the United States of America on behalf of the IRS filed a Motion to Dismiss Debtor's Bankruptcy Case for failure to maintain plan payments to the IRS.  [*See* Doc. 1157]. Movant joins, adopts and incorporates by reference the IRS Motion to Dismiss as if fully re-written herein and moves this Court to dismiss this bankruptcy with prejudice.  This confirmed plan has been in continuous default since its confirmation date of June 12, 2018.  This Court should dismiss this bankruptcy with prejudice to the filing of a petition under any chapter of the Bankruptcy Code for a period of at least six years. **According to the table on page 3, the total amount of the payment defaults is $1,599,957.00!**

## Movant Has Article III Standing

This Court has previously ruled in a different motion that: "Movant is not a creditor in this case nor is he an interested party who has a stake in the outcome of this case or in the administration of the bankruptcy estate. Accordingly, Chris Kosochuk [*sic*] is without standing to seek the relief requested in the motion." [*See* Doc. 1106].

However, this Court has also ruled that "Having determined that Chris Kosachuk is in contempt of Court for filing the seventh lis pendens in violation of the Confirmation Order and discharge injunction." This Court also threatened Mr. Kosachuk with "monetary sanctions [of $10,000/day] and incarceration." [*See* Doc. 1073]. Thereafter, this Court stated "The Court stated on the record that, as the record stood, it was not persuaded to reconsider it's [*sic*] prior Order, but nonetheless allowed Mr. Kosachuk every opportunity to defend against the requested sanctions." [*See* Doc. 1134].

The Eleventh Circuit recently opined on the issue of bankruptcy standing in the case of *Breland v. the United States*, 989 F.3d 919 (11th Cir. 2021), which stated: "Existing standing doctrine requires a plaintiff to demonstrate (1) an actual (or imminent), concrete, and particularized injury-in-fact (2) that is fairly traceable to the defendant's challenged action and (3) that is likely redressable by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)." *Id.* at 922. It is difficult to envision a more "particularized injury-in-fact" than the threatened incarceration of the movant Kosachuk.

Because this Court has already caused a concrete and particularized injury-in-fact to Mr. Kosachuk (as described above) that is fairly traceable to the challenged action and that is likely redressed by a favorable decision. The enforcement of the bankruptcy plan and confirmation

order against Mr. Kosachuk gives him standing to challenge the confirmed bankruptcy plan because the debtor has materially defaulted on the confirmed plan. The Contempt Order is redressable in that a dismissal of this bankruptcy would also expunge Mr. Kosachuk of contempt. Thus, Mr. Kosachuk satisfies all the requirements for Article III standing to move to dismiss this bankruptcy.

### Jurisdiction, Venue and Statutory Predicate

1. This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are 11 U.S.C. §1112(b) and Rule 1017 of the Federal Rules of Bankruptcy Procedure.

### CONFIRMED PLAN PAYMENT DEFAULTS

Below is a table summarizing all the confirmed plan payment defaults by this Debtor in chronological order with the very first payment default occurring on the day of confirmation June 12, 2018. This Motion to Dismiss will set out in greater detail how Hazan has blatantly defaulted on her plan obligations so as to make a mockery of her bankruptcy.

| Date of Payment Default | Creditor | Amount |
|---|---|---|
| June 12, 2018 | Fisher Island Comm. Assoc. | $46,555 |
| July 1, 2018 | Fisher Island Comm. Assoc | $6,730 |
| July 20, 2018 | JMB Urban Development | $275,000 |
| October 1, 2018 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2018 | Estimated Income Taxes -IRS | $60,000 |
| December 18, 2018 | Real Estate Taxes | $57,247 |

| December 12, 2018 | IRS | $22,948 |
|---|---|---|
| December 12, 2018 | IRS | $2,674 |
| January 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| March 13, 2019 | Spencer Condominium | $109,555 |
| April 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| June 1, 2019 | IRS | $22,948 |
| June 12, 2019 | IRS | $2,674 |
| July 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| August 1, 2019 | Valencia Estates Monthly | $1,726 |
| September 1, 2019 | Valencia Estates Monthly | $1,726 |
| October 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| October 1, 2019 | Valencia Estates Monthly | $1,726 |
| October 15, 2019 | Estimate Income Taxes-IRS | $150,000 |
| November 1, 2019 | Valencia Estates Monthly | $1,726 |
| November 25, 2019 | Real Estate Taxes | $59,844 |
| December 1, 2019 | Valencia Estates Monthly | $1,726 |
| December 12, 2019 | IRS | $22,948 |
| December 12, 2019 | IRS | $2,674 |
| January 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2020 | Valencia Estates Monthly | $1,726 |
| February 1, 2020 | Valencia Estates Monthly | $1,726 |
| March 1, 2020 | Valencia Estates Monthly | $1,726 |
| April 1, 2020 | Valencia Estates Monthly | $1,726 |

| | | |
|---|---|---|
| April 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| May 1, 2020 | Valencia Estates Monthly | $1,726 |
| June 1, 2020 | Valencia Estates Monthly | $1,726 |
| June 12, 2020 | IRS | $22,948 |
| June 12, 2020 | IRS | $2,674 |
| July 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| July 1, 2020 | Valencia Estates Monthly | $1,726 |
| August 1, 2020 | Valencia Estates Monthly | $1,726 |
| September 1, 2020 | Valencia Estates Monthly | $1,726 |
| October 1, 2020 | Valencia Estates Monthly | $1,726 |
| October 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2020 | Estimated Income Taxes-IRS | $150,000 |
| November 1, 2020 | Valencia Estates Monthly | $1,726 |
| November 27, 2020 | Real Estates Taxes | $58,627 |
| December 1, 2020 | Valencia Estates Monthly | $1,726 |
| December 12, 2020 | IRS | $22,948 |
| December 12, 2020 | IRS | $2,674 |
| January 1, 2021 | Valencia Estates | $10,156 |
| January 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2021 | Valencia Estates Monthly | $1,726 |
| February 1, 2021 | Valencia Estates Monthly | $1,726 |
| March 1, 2021 | Valencia Estates Monthly | $1,726 |
| April 1, 2021 | Valencia Estates Monthly | $1,726 |

| | | |
|---|---|---|
| April 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| May 1, 2021 | Valencia Estates Monthly | $1,726 |
| June 1, 2021 | Valencia Estates Monthly | $1,726 |
| June 1, 2021 | Valencia Estates | $10,156 |
| June 12, 2021 | IRS | $22,948 |
| June 12, 2021 | IRS | $2,674 |
| July 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| July 1, 2021 | Valencia Estates Monthly | $1,726 |
| August 1, 2021 | Valencia Estates Monthly | $1,726 |
| September 1, 2021 | Valencia Estates Monthly | $1,726 |
| October 1, 2021 | Valencia Estates Monthly | $1,726 |
| October 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2021 | Estimated Income Taxes-IRS | $150,000 |
| November 1, 2021 | Valencia Estates Monthly | $1,726 |
| November 1, 2021 | Valencia Estates | $10,156 |
| November 19, 2021 | Real Estates Taxes | $59,282 |
| December 1, 2021 | Valencia Estates Monthly | $1,726 |
| December 12, 2021 | IRS | $22,948 |
| December 12, 2021 | IRS | $2,674 |
| January 1, 2022 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2022 | Valencia Estates Monthly | $1,726 |
| February 1, 2022 | Valencia Estates Monthly | $1,726 |
| March 1, 2022 | Valencia Estates Monthly | $1,726 |

| April 1, 2022 | Valencia Estates Monthly | $1,726 |
|---|---|---|
| April 1, 2022 | Valencia Estates | $20,313 |
| April 1, 2022 | Fisher Island Comm. Assoc. | $6,730 |
| May 1, 2022 | Valencia Estates Monthly | $1,726 |
| June 1, 2022 | Valencia Estates Monthly | $1,726 |
| June 12, 2022 | IRS | $22,948 |
| June 12, 2022 | IRS | $2,674 |
| | **Total Defaulted Payments** | **$1,599,957.00** |
| | | |
| | | |
| | | |

### Background

4.       Liza Hazan a/k/a Elizabeth Hazan (the "Debtor") filed her Chapter 11 Petition over six years ago, on January 11, 2016 (the "Petition Date"), the day before a Miami-Dade County Clerk foreclosure auction was to take place on her Fisher Island Property.

5.       At the time of the petition filing, the Debtor had several million dollars of delinquent and unpaid creditors.   By way of example the IRS was owed $444,733.17, [Claim 3-1], JMB Urban Development LTD ("JMB") was a judgment creditor of Debtor Hazan and owed $664,380.47, [Claim 4-2], the Valencia Estates Homeowners' Association was owed $195,072.14 [Claim 10-1] and the Fisher Island Community Association ("FICA") was owed over $500,000 but as a secured creditor FICA did not file a proof of claim.

6.      JMB timely filed a proof of claim for $664,380.47.   [*See* Proof of Claim 4-2]. The Debtor failed to schedule JMB's judgment as a liability.   As such, the Debtor's voluntary petition and schedules were fraudulent.

7.      Thereafter JMB filed an adversary proceeding to determine the non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2) and (6) and Federal Rule of Bankruptcy Procedure 4007 against Debtor/Defendant Liza Hazan *aka* Elizabeth Hazan. [*See JMB v. Hazan.* Case No. 16-ap-1188-AJC Doc. 1].

8.      JMB brought the action to object to the dischargeability of debt owed by the Debtor to JMB under a final judgment entered by the Circuit Court of Cook County, Illinois, which forms the basis of JMB's proof of claim in this case. JMB alleged that the debt should not be discharged because it is subject to the "fraud" exceptions contained in 11 U.S.C. §§ 523(a)(2) and (6), for money obtained by the Debtor by false pretenses, false representation, or actual fraud and while the Debtor was acting in a fiduciary capacity.

9.      The adversary proceeding concluded with the entry of an Agreed Final Judgment entered on July 20, 2016 in the non-dischargeable amount of $275,000 along with provisions for a timely payment of said Judgment pursuant to the Confirmed Plan.  [*See JMB v. Hazan.* Case No. 16-ap-1188-AJC Doc. 21 and attached hereto as Exhibit 1 of the Appendix on page A.3].

10.     Each party negotiated for key provisions provided for in the Agreed Final Judgment.  JMB agreed to reduce the amount it was owed to $275,000, but was now a non-dischargeable judgment and would be timely paid in full by the Debtor on or before July 20, 2018 without further litigation or collection activity and expense.

11.     JMB agreed to support and vote for Debtor's Plan of Reorganization so long as said Plan required payment to JMB in the amounts set forth in this Non-Dischargeability

Judgment prior to the Second Anniversary Date (July 20, 2018), and does not treat JMB in a manner less favorable to other unsecured creditors under the plan with respect to its now agreed upon $275,000 unsecured nondischargeable claim. For an avoidance of doubt, while the Debtor may establish a convenience class of small claims to which it may pay 100 cents at confirmation-provided this class does not exceed $30,000 in the aggregate, the Debtor shall not make any other cash payments to its other creditors unless JMB receives a like percentage of cash on its $275,000 claim at the time of the distribution.  JMB's claim is claim #4 in the Plan.

12.   In reliance of the Agreed Final Judgment, JMB gave the debtor breathing room and time to confirm the Plan.

13.   JMB has patiently waited for years, dutifully voted for the Plan and with JMB's support the Plan was confirmed.

14.   At or just before the Confirmation Hearing on May 30, 2018, the Debtor paid Creditor Valencia Estates Homeowner's Association $74,101.63 of the $195,072.14 owed according to the Plan as Claim #10. [*See* Doc. 563. P11].

15.   This payment equals 38% of what was owed to this Creditor and triggered an immediate of 38% payment to JMB or approximately $104,000 pursuant to the Agreed Final Judgment.  However, the Debtor defaulted in making this 38% payment to JMB.

16.   Pursuant to the terms of the Agreed Final Judgment, the Debtor was to satisfy the judgment in full by July 20, 2018.  Again, the Debtor defaulted on the confirmed plan payment to JMB due by July 20, 2018. Indeed, the Debtor's financial projections attached to her Fifth Amended Disclosure Statement, [Doc. 562-4], showed a $275,000 payment to JBM in July 2018.

17.   On August 15, 2018, S&S Collections, Inc., the collection arm of the Debtor's personal lawyer Michael Simon of Simon & Sigalos, filed a notice of Compliance Regarding

Claim #13.  [*See* Doc. 737].  The Notice read: "Undersigned counsel received the settlement funds and the settlement is paid in full." This payment in full to S&S triggered a full payment to JMB.  The Debtor again failed to honor her agreement and failed to pay JMB.

18.  The Debtor clearly defrauded JMB into supporting the Plan and into accepting 41% of what it was owed when the Debtor was and is capable of paying JMB 100% of what is owed.

19. The Debtor owed a substantial tax liability to the IRS (about $444,733.17). [*See* Doc. 21 p. 13, Doc. 563 p. 15, IRS Proof of Claim #3, which recorded a lien on the Debtor's Spencer Condo attached to its proof of claim form and IRS Motion to Dismiss Doc. 1157].

20. Although the Debtor claimed in the Fifth Amended Disclosure Statement that she had completed her investigation into potentially avoidable transfers the Spencer Condo Transfer was not mentioned at all in her Fifth Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [*See* Doc. 562 p. 12 and Doc. 21 and 90].

21. Debtor Hazan concealed her ownership interest in the Spencer Condo but did schedule a mortgage to U.S. Bank recorded on the Spencer Condo [*See* Schedule Doc. 21 p 19], another mortgage to Real Time Solutions recorded on the Spencer Condo [*See* Schedule Doc. 21 p 19], the unpaid Spencer Condo fees [*See* Schedule Doc. 21 p 20] and IRS tax liens. [*See* Schedule Doc. 21 p 19].

22. Later in her Schedules on page 32 the Debtor listed the following under Legal Actions, Repossession and Foreclosures:

> (a) The Board of Managers of the Spencer Condominium v. Hazan et. al. Case No 154149-2012 in the Supreme Court of New York. The nature of the suit is unpaid condo fees.

(b) US Bank, NA v. Hazan et. al. Case No. 850240-2014 in the Supreme Court of New York. The nature of the suit is residential foreclosure

(c) Spencer Condominium v. Hazan et. al. Case No 111644-2009 in the Supreme Court of New York. The nature of the suit is unpaid condo fees.

23. On page 38 of her Schedules, in the Section titled: Give Details About Your Business or Connections to Any Business, Debtor Hazan lists businesses with the address of 1 East 62nd Street, Apt. 1a, New York, NY 10065.

24. Debtor Hazan clearly is still the beneficial owner of the Spencer Condo even though she fraudulently conveyed the title for zero consideration. Attached hereto as Exhibit 2 of the Appendix [A.8] is a mortgage recorded on the Spencer Condo to the Hazan's post-petition bankruptcy attorney Geoffrey Aaronson's law firm, for $145,000. Attorney Aaronson was counsel of record for the Debtor in the Bankruptcy Case and filed the petition on January 11, 2016.

25. This mortgage is still outstanding because US Bank filed an amended foreclosure complaint on February 1, 2022 with Debtor Hazan and her bankruptcy attorney Geoffrey Aaronson's law firm both as named defendants.  Attached hereto as Exhibit 3 of the Appendix [A.16] is the New York foreclosure complaint naming Aaronson, Schantz & Beiley PA as a defendant.

26. This mortgage also discloses mortgages to three other unsecured but preferred creditors, Bruce Jacobs, Esq. for $55,000, Robert P. Lithman, Esq. for $95,000 and Mark Cohen, Esq. for $25,000. These three attorneys represented Hazan and her husband's corporation, Selective Advisors Group, LLC, at various stages of the state court foreclosure proceedings in front of Judge Gordo.

27. All three attorneys were listed as unsecured creditors in the Debtor's original bankruptcy petition and became secured creditors to the detriment of the other creditors.

28. Attorney Aaronson was present at the confirmation hearing, supported confirmation but never disclosed his secured creditor status, nor the other attorneys' secured creditor status to the Court, to the detriment of all other creditors.

29. In fact, he told the Court: "Good afternoon, Your Honor. Geoffrey Aaronson, Aaronson Schantz Beiley, P.A., also former counsel for the debtor. I'm appearing here on behalf of my firm, basically just an interested party. We're appropriately dealt with in the plan."  May 30, 2018 Confirmation Hearing Transcript p. 4. [Doc. 707 p. 4 lines 11-15].

30. Attorney Aaronson knew that representation he just made was misleading and without belief in its truth, or was made with reckless disregard for the truth because Mr. Aaronson was the holder of a Mortgage executed on November 14, 2016, secured by the Spencer Condo and thus his claim was not actually part of the Plan and was converted from unsecured to secured.

31. In fact, Attorney Aaronson even notarized the mortgage, signed by Sean Neil Meehan the debtor's husband, and agreed that upon satisfaction, he would return the original Promissory Note and Mortgage directly to Debtor Elizabeth Hazan. [*See* A.10].

32. Attorney Aaronson made the false representation to induce the court to rely upon it; the court did rely upon it; and, as a consequence of such reliance, the court entered the confirmation order.

33.     Attorney Aaronson had a claim in the Plan of $145,000 and received a mortgage on the Spencer Condo for $145,000. As such, Attorney Aaronson has a security interest for his claim for his previously unsecured claim.

34.     Had JMB (and other creditors presumably) known that the Debtor was still the beneficial owner of the Spencer Condo and able to execute mortgages in favor of creditors at 100 cents on the dollar, JMB would have never accepted just 41 cents on the dollar for its claim and would have never voted for and supported the Plan. Only the debtor's personal attorneys were offered these undisclosed preferential deals to convert their unsecured claims to secured claims. The Debtor's double dealing is truly offensive and tantamount to bankruptcy fraud.

35.     In a filing before Judge Gayles, in the case of *NLG, LLC v. Liza Hazan, a/k/a Elizabeth Hazan*, case no. 18-22564-CIV-GAYLES Doc. 50 page 15, the Debtor claims: "Based on an appraisal, the [Spencer] condominium unit was believed to have "in excess of $2,500,000.00 in equity."

36.     This Bankruptcy Petition and all related filings, as well as the Plan, the Confirmation Order and Discharge Order are all products of bad faith, fraud and collusion amongst this Debtor and her attorneys to the detriment of all other creditors.  This type of bad faith, fraud and collusion is precisely why the Court in Illinois awarded JMB a judgment in the first place.

37.     It is now readily apparent that the Debtor had and has no intention of honoring the Agreed Final Judgment, nor payments to other creditors pursuant to the confirmed plan and that the Debtor has $2.5 million in New York that she is concealed from the bankruptcy and later liquidated.  As such, dismissal is not only appropriate but mandatory because the confirmed plan is in complete default.

38.     Debtor Hazan and her attorneys can't be trusted to manage this debtor's affairs in Chapter 11 bankruptcy for the benefit of all creditors. They gave preferential treatment to themselves with a callous and blatant disregard for other creditors, the bankruptcy code and all

their responsibilities under the Bankruptcy Code as a Chapter 11 debtor. This perversion of the bankruptcy process must end immediately before any more harm ensues.

39. This Court confirmed the Debtor's Plan on June 12, 2018, over written and oral objections. [*See* Doc. 691].

40. Ever since the Confirmation Order was entered, the Debtor has defaulted on almost all her confirmed plan payments.

41. For example, on June 12, 2018, the day of confirmation, the Debtor defaulted on her payment to the Fisher Island Community Association. In the plan the Debtor committed herself to "pay the net amount if any of all Fisher Island Community Association's post-petition fees in the amount of $46,555.48… at confirmation…" [*See* Doc. 563, p.13]. She has paid nothing, not even the current monthly HOA fees and accumulated arrearages in the amount of over **$734,340.35** [*See* Exhibit 4 [A.116]].  Indeed, the last time the debtor made a payment to the Fisher Island Community Association was in 2008 even though she agreed to pay them in her confirmed plan.  Payments to the Fisher Island Community Association are due quarterly in advance so the first ongoing payments to Fisher Island was due on July 1, 2018 which the debtor failed to make.  The debtor has failed to pay each quarterly payment due thereafter (October 1, 2018, January 1, 2019, April 1, 2019, July 1, 2019 etc.).

42. The IRS is another creditor who was to be paid through the confirmed plan. The Debtor has defaulted on her confirmed plan payments to the IRS (owed $444,733.17).

43. The IRS recently recorded two new tax liens on April 19, 2022 and April 27, 2022 [*See* Exhibit 5 [A.117]], bringing the outstanding balance owed to the IRS to over $500,000.  These new tax liens and the IRS's Motion to Dismiss prove that the debtor failed to make the confirmed plan payments to the IRS.

44.     Indeed, in the IRS' Motion to Dismiss, the IRS confirms that the debtor only made one plan payment to the IRS on June 21, 2018 and thus has been in continuous default of her confirmed plan payments to the IRS for four years.

45.      Upon information and belief, the debtor has not paid her income taxes due post confirmation either even though she estimated that she would pay $150,000/year in income taxes in her confirmed plan.  [*See* Doc. 562-4].  If the Debtor had filed the required post confirmation quarterly operating reports, we would know for sure.

46.     The Debtor also defaulted on her payments to creditor, Valencia Estates Homeowners' Association. As the record shows, Valencia Estates recently filed a foreclosure in state court, attached as Exhibit 6 [A.120], after having already filed a lis pendens attached as Exhibit 7 [A.159] and a Claim of Lien attached as Exhibit 8 [A.161] showing that the Debtor defaulted on the January 2, 2021 plan payment in the amount of $20,312.50 and all subsequent payments due every five months thereafter in the same amounts].  [*See* Doc. 563. P. 11].  The Debtor has also defaulted on the $1,041.66 ongoing monthly payments due to Valencia Estates every month post confirmation as of the August 2019 payment.  [*See* Doc. 563. P. 12 and Doc. 1098 p. 5].

47.     On April 29, 2022, Valencia Estates filed a motion for stay relief to conduct a foreclosure auction on the Fisher Island Property which prompted the filing of this bankruptcy in the first place. [*See* Docs. 1098 to 1098-5].

48.     On May 19, 2022, the Court ruled that it would grant stay relief to Valencia Estates if it is not paid in full by June 22, 2022.  [*See* Doc. 1134].

49.     On July 20, 2018, just a month after confirmation, the Debtor failed to pay JMB the $275,000 called for in the Plan. [*See* Doc. 563. P.21]. This default put the Confirmed Plan in continuous default for almost four years.

50.     The Debtor has failed to maintain insurance on the Fisher Island Property, which is cause for dismissal under 11 U.S.C. § 1112(b)(4)(C) and failed to pay the real estate taxes, which is cause for dismissal under 11 U.S.C. § 1112(b)(4)(I).   Attached hereto as Exhibit 9 [A.163-166] are the 2018, 2019, 2020 and 2021 Miami Dade County Real Estate tax bills **all paid by JP Morgan Chase Bank** respectively on November 28, 2018 in the amount of $57,247.08, [A.163], on November 25, 2019 in the amount of $59,844.46 [A.164] and on November 27, 2020 in the amount of $58,627.29 [A.165] and on November 19, 2021 in the amount of $59,281.76 [A.166]. The Plan did not call for JP Morgan Chase Bank to pay the Debtor's real estate taxes.

51.     Additionally, the Debtor has been in continuous litigation with JPMorgan Chase Bank since 2013 in the Miami-Dade Circuit Court. On April 14, 2021, the Debtor, *pro se*, filed a 12-page Report with the State Court arguing that the Chase's "mortgage lien was wiped out in the Chapter 11 bankruptcy." A copy of the Report is attached as Exhibit 10 [A.168].

52.     The Debtor defaulted on her plan payment to the Spencer Condominium in the amount of $109,554.86.  [Doc. 563. P. 16].  In the confirmed Plan, the Debtor represented that Real Estate Holdings Group L.D.C. ("REHG"), the then current owner of the Spencer Condo (an entity owned and managed by the debtor's husband Sean Neil Meehan), would pay the $109,554.86.  However, REHG transferred the title to the unit without paying any of the money owed despite claiming to have received $4.1 million according to the transfer tax paid to the City of New York.  [*See* Exhibit 11 [A.179]].

53.     The Confirmed Plan called for payments to creditors and the Debtor has defaulted on most every Confirmed Plan payment.

54.     Because the Debtor has materially defaulted on the Confirmed Plan, she should be denied any further relief and this Court should dismiss this bankruptcy case with prejudice pursuant to § 1112(b)(4)(N) because there is nothing to liquidate and a dismissal with prejudice is in the best interest of all the creditors.

55.     The Debtor has also failed to file any post-confirmation quarterly reports because she did not want to highlight for this Court, the UST or any other party, all her material defaults of the Confirmed Plan which is cause for dismissal under 11 U.S.C. § 1112(b)(4)(F).

56.     The Debtor's only asset is the Fisher Island Property which she has declared as her homestead and thus exempt.  Accordingly, there are no assets to liquidate, thus a conversion is not in the best interest of the creditors and would serve no purpose.

57.     The Confirmed Plan was not made in good faith and in fact was made in bad faith as proven by the record and all the defaults of the confirmed plan with the first default occurring on the same day as confirmation.

## MEMORANDUM OF LAW

The Courts have repeatedly stated that in analyzing whether a plan has been proposed in good faith under § 1129(a)(3), "the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with  the objectives and purposes of the Bankruptcy Code." *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012). Specifically, under Chapter 11, the two "recognized" policies, or objectives, are "preserving going concerns and maximizing property available to satisfy creditors[.]" *Bank of Am. Nat.'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) (citing *Toibb v.*

17

*Radloff*, 501 U.S. 157, 163, (1991)). More generally, the Bankruptcy Code's objectives include: "giving debtors a fresh start in life," *Walters v. U.S. National Bank of Johnstown*, 879 F.2d 95, 98 (3d Cir. 1989), "discourag[ing] debtor misconduct," *id.*, "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," *Integrated Solutions, Inc. v. Service Support Specialties*, 124 F.3d 487, 489 (3d Cir. 1997), and achieving fundamental fairness and justice. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 339-43 (3d Cir. 2006). In this Bankruptcy, the only objective that has been achieved is to give the Debtor a fresh start, which she is obviously squandered by allowing her debts to secured and unsecured creditors pile up by not making the Confirmed Plan payments and attempting to hide these defaults from the US Trustee, the Court and other creditors.

In accordance with 11 U.S.C. § 1112(b), the Court should dismiss with prejudice this individual Chapter 11 bankruptcy case because there is nothing to liquidate. Section 1112(b) states:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Section 1112(b)(4)(N) sets forth cause as a "material default by the debtor with respect to a confirmed plan," which is precisely the case with this Debtor. She has defaulted over 80 times starting on July 1, 2018.

Here, cause plainly exists to dismiss this case, which has been languishing in continuous default for almost four years while not making the confirmed plan payments. Clearly, the Debtor has acted in a manner inconsistent with her own confirmed plan. This Court has inadvertently encouraged debtor misconduct and its orders have not achieved fundamental fairness and justice.

18

As additional causes for dismissal are (1) Debtor's withdrawal of tens of thousands of dollars from the DIP bank account in cash without explanation [11 U.S.C. § 1112(b)(4)(D)]; Debtor's failure to file Post Confirmation Operating Reports [11 U.S.C. § 1112(b)(4)(F)]; and Debtor's failure to pay the taxes owed to the Miami Dade County Real Estate Tax Collector after the date of the order for relief (January 11, 2016) [11 U.S.C. § 1112(b)(4)(I)].

Clearly this Debtor has displayed a total disregard for the Confirmed Plan and her bankruptcy should be dismissed with prejudice.

The term "cause" is not defined by the Bankruptcy Code, but Section 1112(b)(4) lists sixteen (16) examples of cause which justify dismissal. The examples set forth in this subsection are meant to be nonexclusive. *See In re Global Shipments, LLC*, 391 B.R. 193, 204–05 (Bankr. S.D. Ga. 2007). In this case, the record supports a finding of cause, at a minimum, under Sections 1112(b)(4)(C) (D) (F) (I) and (N).

There is no question that under 11 U.S.C. § 1112(b), a bankruptcy court "has broad discretion to dismiss or convert a Chapter 11 case for cause". *Han v. Linstrom*, No. 02 CV 213, 2002 WL 31049846, at *4 (N.D. Ill. Sept. 12, 2002) (Guzman, J.). The court's analysis proceeds in two steps: first, it must determine whether "cause" exists for either dismissal or conversion. *Id.* Next, it decides "which option is in the best interest of creditors and the estate." *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir.1994) (citation and internal quotation marks omitted). In the second step, the court must compare "the creditors' interests in bankruptcy with those they would have under state law," and must "consider the interest of *all* creditors." *Id.* at 243 (original emphasis).

Every creditor and interested party to this bankruptcy will be better served with a dismissal with prejudice of this bankruptcy. Allowing this debtor to use the confirmed plan as a

sword against certain parties and a shield against other parties is an abuse of the bankruptcy code. Most importantly because the debtor has no assets other than the homesteaded Fisher Island Property, there is absolutely no benefit to the estate, any creditor or interested party from conversion as there are no assets to liquidate in a chapter 7 conversion. Thus, dismissal with prejudice is the only proper remedy.

## **CONCLUSION**

Based on the chart on page 3 this Debtor has defaulted on more plan payments than she has actually made. This Court must end this abuse of the bankruptcy system and make certain that this debtor can never abuse the bankruptcy code or other courts again in such an egregious and bad faith manner.

**WHEREFORE**, for the foregoing reasons, the Court should dismiss this bankruptcy with prejudice to the filing of a petition under any chapter of the Bankruptcy Code for a period of at least six years and grant such other and further relief as the Court deems appropriate.

Dated June 9, 2022

Respectfully submitted,

**Chris Kosachuk**
*/s/ Chris Kosachuk*
***Pro Se Movant***
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

20

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was emailed to the Clerk of Court for electronic filing on this 9th day of June, 2022 pursuant to Administrative Order 2021-10 .

Respectfully submitted,

**Chris Kosachuk**
*/s/ Chris Kosachuk*
***Pro Se Movant***
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

## <u>SERVICE LIST</u>

<u>***Served via CM/ECF***</u>

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, marian.scott@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@dhaberlaw.com

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@ecccounsel.com,
nsocorro@ecclegal.com;bankruptcy@ecclegal.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium
bnasralla@furrcohen.com, atty_furrcohen@bluestylus.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@msglaw.com, efile@msglaw.com;mg197ecfbox@gmail.com;sleary@msglaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@dhaberlaw.com,
ngomez@dhaberlaw.com;rcasamayor@dhaberlaw.com;dbhpaservice@dhaberlaw.com

Kevin L Hing on behalf of Creditor JPMorgan Chase Bank, National Association
khing@logs.com, electronicbankruptcynotices@logs.com

David W. Langley on behalf of Counter-Defendant Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mrpllc.com, flbkecf@mrpllc.com

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, jgomez@leoncosgrove.com

Guy A. Van Baalen
Office of the US Trustee for Region 21
Guy.A.VanBaalen@usdoj.gov

Mary Ida Townson
Office of the US Trustee for Region 21
maryida.townson@usdoj.gov

Ramona D. Elliot
Executive Office of the US Trustee
ramona.d.elliott@usdoj.gov

Heather Ries on behalf of Trustee Alfred T. Giuliano
hries@foxrothschild.com

Raychelle Tasher on behalf of the United States of America, Internal Revenue Service
*Assistant United States Attorney*
United States Attorney's Office
Southern District of Florida
Civil Division (Bankruptcy)
Raychelle.Tasher@usdoj.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                              Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                           Chapter 11
_____/

---

# APPENDIX TO
# CHRIS KOSACHUK'S MOTION TO DISMISS CASE WITH PREJUDICE

---

Chris Kosachuk
*Pro Se Movant*
854 Pheasant Run Rd.
West Chester, PA 19382-8144
305-490-5700
chriskosachuk@gmail.com

June 9, 2022

A.1

## TABLE OF CONTENTS

Table of Contents ........................................................................... 2

Ex.1-JMB v. Hazan Agreed Final Judgment ........................................ 3

Ex.2-Attorney Aaronson Mortgage on Spencer Condo ........................ 8

Ex.3-US Bank v Hazan Amended Foreclosure Complaint .................... 16

Ex.4-Fisher Island Community Association Hazan Account Ledger.................. 101

Ex.5-New IRS Tax Liens ................................................................. 117

Ex.6-Valencia Estates v Hazan Foreclosure Complaint ....................... 120

Ex.7-Valencia Estates Notice of Lis Pendens ..................................... 159

Ex.8-Valencia Estates Claim of Lien .................................................. 161

Ex.9-Miami Dade County Tax Bills Paid by Chase ............................. 163

Ex.10-JP Morgan Chase v Hazan Foreclosure Report ......................... 167

Ex.11-Spencer Condo Transfer Documents ........................................ 179

A.2



**ORDERED in the Southern District of Florida on July 19, 2016.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| IN RE:<br><br>**LIZA HAZAN**<br>*aka* **ELIZABETH HAZAN**<br><br>      **DEBTOR.** | **CASE NO.: 16-10389-AJC**<br><br>**CHAPTER: 11** |
| **JMB/URBAN 900 DEVELOPMENT**<br>**PARTNERS, LTD.**<br><br>      **PLAINTIFF,**<br><br>v.<br><br>**LIZA HAZAN A/K/A ELIZABETH**<br>**HAZAN,**<br><br>      **DEFENDANT.** | **ADV. PROC.: 16-01188-AJC** |

**AGREED FINAL JUDGMENT**

A.3

THIS MATTER came before the Court upon *Ex Parte* Motion to Approve Agreed Final Judgment by Debtor/Defendant, Liza Hazan a/k/a Elizabeth Hazan ("Hazan"), and Plaintiff JMB/Urban 900 Development Partners, Ltd., Plaintiff ("JMB"), and the Court, noting the agreement of the parties, finding that good and sufficient cause exists; and finding that

JMB and Hazan were engaged in pre-petition litigation which resulted in a Settlement Stipulation and thereafter the entry of Judgment against Hazan, in the Circuit Court of Cook County, Illinois County Department, Law Division, No. 05L 13785 (the "Pre-petition Judgment");

On January 11, 2016, Hazan filed a Petition for Relief under Chapter 11 United States Bankruptcy Code;

On April 18, 2016, JMB filed a Complaint Objecting to Dischargeability to Certain Debts of the Debtor Pursuant to 11 U.S.C. § 523(a)(2) and (6) (the "Dischargeability Matters"); alleging that the Pre-petition Judgment is not dischargeable under 11 U.S.C § 523(a)(2) and (6).

The parties have engaged in substantial negotiations and have agreed to resolve the Dischargeability Matters; and

The parties have agreed to the entry of a Final Judgment resolving the Dischargeability Matters and all issues related thereto on the terms set forth below,

ACCORDINGLY, it is Ordered and Adjudged as follows:

1.      Judgment is hereby entered against Hazan in the amount of $275,000.00 ("The Non Dischargeability Judgment"). The Non Dischargeability Judgment shall be deemed non-dischargeable under 11 U.S.C. § 523(a)(2), for which execution shall issue  subject to the following provisions:

a.      The Debtor shall have eighteen months from the date of the filing of the Petition for relief (the "First Anniversary Date") to pay $275,000.00 without interest. Thereafter

commencing with the First Anniversary Date, any then unpaid balance of The Non Dischargeability Judgment amount shall accrue interest at the rate of 2.5% above the then current federal judgment interest rate per annum.

b.  JMB agrees to receive and credit The Non Dischargeability Judgment with all payments made to JMB, including all payments made under and pursuant to the Debtor's Plan of Reorganization, with payments credited first to payment of accrued interest, if any, and then to principal.

2.  This Non Dischargeability Judgment shall be the surviving judgment against Hazan and shall be deemed to replace the Pre-petition Judgment, which shall no longer be valid or enforceable.

3.  In the event that the Debtor has failed to pay and satisfy this Non Dischargeability Judgment within two years of the date of entry (the "Second Anniversary Date"), JMB may then and in that event proceed to execution of this Non Dischargeability Judgment.

4.  In the event that a Plan is confirmed and the Debtor defaults in making payments to JMB and/or other creditors in connection with the payments required under the confirmed Plan, (a) the Debtor will still be entitled to pay and satisfy this Non Dischargeability Judgment before the Second Anniversary Date; and (b) JMB will refrain from exercising any rights that may be granted under the confirmed Plan to enforce the Plan, until after the Second Anniversary Date and does not treat JMB in a manner less favorable than other unsecured creditors.

5.  JMB agrees to support and vote for Debtor's Plan of Reorganization so long as said Plan requires payment to JMB in the amounts set forth in this Non Dischargeability Judgment prior to the Second Anniversary Date, and does not treat JMB in a manner less favorable to other unsecured creditors under the plan with respect to its now agreed upon $275,000 unsecured nondischargeable claim. For an avoidance of doubt, while the Debtor may establish a convenience class of small claims to which it may pay 100 cents at confirmation-- provided this class does not exceed $30000 in the aggregate, the Debtor shall not make any other

A.5

cash payments to its other creditors unless JMB receives a like percentage of cash on its $275,000 claim at the time of the distribution .

6.      JMB and Hazan, for themselves, and as may be applicable, their directors, employees, agents and attorneys, and all of their respective successors, assigns, heirs and personal representatives ("Releasing Parties"), hereby release, waive, acquit, satisfy and discharge one another, of, from and against all claims, demands, actions, causes of action, entitlements, suits, debts, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, damages, judgments and executions, in law or in equity (collectively, "Claims"), which each ever had, now have, or which any Releasing Party, respectively, can, shall or may have, against any other Releasing Party, arising from any event, matter, cause or thing occurring, arising or accruing from the beginning of the world until the Effective Date, except, however, this release is not intended to have any affect upon the terms, conditions and obligations of Hazan as set forth in this Agreed Judgment. If and when Hazan makes the full and complete payments as required by this Agreed Judgment, this release shall be deemed unconditional.

7.      This Court shall retain jurisdiction as may be appropriate and necessary to interpret and enforce this stipulation.

s/s/: David J. Fischer, Esq.
Locke Lord LLP
Counsel for Plaintiff
Dated: 7/15/16

s/s/: Geoffrey S. Aaronson, Esq.
Aaronson Schantz Beiley P.A.
Counsel for Debtor
Dated: 7/15/16
s/s/:Joel M. Aresty, Esq.
Joel M. Aresty P.A
Counsel for Debtor
Dated: 7/15/16

Case 16-01198-AJC Doc 21 Filed 07/20/16 Page 5 of 5

Elizabeth Hazan
Debtor
Dated: 07.14.16

A.7

## NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2017080301184001002ED19B

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 8 |
|---|---|---|
| Document ID: **2017080301184001** | Document Date: 11-14-2016 | Preparation Date: 08-30-2017 |
| Document Type: MORTGAGE | | |
| Document Page Count: 7 | | |

**PRESENTER:**
TITLEVEST AGENCY
44 WALL STREET, R-NY-608614
10TH FLOOR
NEW YORK, NY 10005
212-757-5800
RECORDINGS@TITLEVEST.COM

**RETURN TO:**
TITLEVEST AGENCY
44 WALL STREET, R-NY-608614
10TH FLOOR
NEW YORK, NY 10005
212-757-5800
RECORDINGS@TITLEVEST.COM

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot | 1A | 1 EAST 62 STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ or   DocumentID_____ or   _____ Year____ Reel____ Page_____ or   File Number_____

### PARTIES

**MORTGAGOR/BORROWER:**
REAL ESTATE HOLDINGS GROUP, L.D.C.
60 MARKET SQUARE, P.O. BOX 364
BELIZE CITY
BELIZE

**MORTGAGEE/LENDER:**
AARONSON SCHANTZ BEILEY P.A.
100 S.E. 2ND STREET, 27TH FLOOR
MIAMI, FL 33131

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 145,000.00 | | $                    0.00 |
| Taxable Mortgage Amount: | $ | 145,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $                    0.00 |
| TAXES:   County (Basic): | $ | 725.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 1,450.00 | | $                    0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 362.50 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 405.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed         08-31-2017 12:35 | |
| TOTAL: | $ | 2,942.50 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 72.00 | **2017000325773** | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M Hill*

*City Register Official Signature*

A.8

**This Mortgage Agreement secures
a Promissory Note of even date
in the amount of $145,000.00.**

This instrument prepared by,
and after recording, return to:

Geoffrey S. Aaronson, Esq.
Aaronson Schantz Beiley P.A.
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131

(Reserved for Clerk of Court, New York
County)

_____

## <u>MORTGAGE AGREEMENT</u>

THIS MORTGAGE AGREEMENT, executed the 14th day of November, 2016, by Real Estate Holdings Group, L.D.C. ("REHG"), of 60 Market Square, P.O. Box 364, Belize City, Belize (hereinafter the "<u>Mortgagor</u>"), to AARONSON SCHANTZ BEILEY P.A., ("ASBPA") whose mailing address is 100 S.E. 2nd Street, 27th Floor, Miami, Florida 33131 (hereinafter the "Mortgagee").

## W I T N E S S E T H:

WHEREAS, Mortgagor executed and delivered to Mortgagee that certain Assumption and Springing Guarantee Agreement and Secured Promissory Note (hereinafter the "<u>Promissory Note</u>"), of even date herewith, wherein Mortgagor has agreed to pay Mortgagee Principal and Interest (hereinafter the "<u>Obligation</u>"). The Mortgagor has agreed to secure the Obligations under the Promissory Note by granting this Mortgage (hereinafter the "Mortgage") to Mortgagee in respect to real property owned by Mortgagor located at: 1 East 62 Street Apt 1A, New York, NY 10065 (the "Property"). As more fully set forth in the parties' Promissory Note, this Mortgage shall become due eight months from the date of execution of the Promissory Note, or upon the sale of the Property, or refinancing of the Property for an amount in excess of the amount outstanding  and accruing under the existing Mortgages plus tax liens (if any), and existing and future maintenance liens (for example if the amount outstanding under the existing first mortgage is $2.4 million, and the second mortgage is $340,000.00, and maintenance is $500,000.00, then refinancing in excess of $3,240,000) or upon any other Final Default as set forth in the Promissory Note or this Mortgage. Upon full payment of the Obligations, the Mortgagee shall promptly file and record a satisfaction of this Mortgage, and shall return the original Promissory Note and Mortgage to Mortgagee % Elizabeth Hazan.

NOW, THEREFORE, the Mortgagor, in consideration of the indebtedness and to secure the payment to Mortgagee of the Obligation provided for in the Promissory Note and in this Mortgage, has granted, bargained, sold and conveyed and by these presents do

A.9

grant, bargain, sell and convey unto Mortgagee the Property, as particularly described in the attached Schedule "A"

To have and hold the same together with the tenements, hereditaments, and appurtenances, unto the Mortgagee and their heirs and assigns, fee simple.

And the Mortgagor, for itself and its members, officers, directors, employees, agents, legal representatives and assigns, do covenant with the Mortgagee and its members, officers, directors, employees, agents, legal representatives and assigns that the Mortgagor has full power and lawful right to convey the Property as aforesaid; that the Property is free from all voluntary encumbrances, with the exception of those listed herein on Schedule B, and that the Mortgagor, their heirs, legal representatives, successors or assigns will make such further assurances to perfect the fee simple to the Property in the Mortgagee, and its members, officers, directors, employees, agents, legal representatives and assigns as may reasonably be required, and that the Mortgagor hereby fully warrants the title to the Property and will defend the Property against the lawful claims of all persons whomsoever including for any tax deeds, claim of lien(s) or mortgage by any governmental or non-governmental authority or taxing authority.

And the Mortgagor, for itself and its members, officers, directors, employees, agents, legal representatives and assigns, hereby covenants and agrees to pay all and singular sums of money payable by virtue of the Obligations and this Mortgage.

This Mortgage shall be recorded upon the earlier of: (i) Six (6) months from the date of the Promissory Note; (ii) the entry into a contract for sale (or prior to actual sale) of all or part of the Property; or (iii) the refinancing of, or the impending refinancing of, the Property for an amount in excess of the amount outstanding and accruing under the existing Mortgages plus tax liens (if any), and existing and future maintenance liens (for example if the amount outstanding under the existing first mortgage is $2.4 million, and the second mortgage is $340,000.00, and maintenance is $500,000.00, then refinancing in excess of $3,240,000); or (iii) upon any other Final Default as set forth in the Promissory Note or this Mortgage.

Anything herein to the contrary notwithstanding, the Mortgagor and the Mortgagee agree that the Mortgagee does not at any time intend to charge nor does the Mortgagor have any obligation to pay interest at a rate which shall exceed the limits specified under the laws under the State of New York applicable to this Mortgage evidencing the Obligation. Any interest previously paid which would be construed under New York law as usurious interest shall be deemed to have been a payment against principal as of the time of payment.

No waiver of any agreement, covenant, condition, representation, or warranty under this Mortgage or the Promissory Note shall at any time hereafter be held to be a waiver of any of the other terms thereof or a continuing waiver thereof. Time is of the essence under all terms and conditions of the Mortgage and Indemnification Agreement.

A.10

Each provision of this Mortgage is intended to be severable and the invalidity or illegality of any portion of this Mortgage shall not affect the validity or legality of the remainder thereof. Any ambiguities contained in this Mortgage shall not be construed against the preparers of this document.

Upon the failure of Mortgagor to abide by any of the provisions of this Mortgage and/or the Promissory Note, including the failure to satisfy the Obligation and Promissory Note, Mortgagee shall be entitled to foreclose upon this Mortgage.

**MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, OR THE INDEMNIFICATION AGREEMENT OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY RELATING HERETO OR THERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE ACCEPTING THIS MORTGAGE.**

IN WITNESS WHEREOF, the Mortgagor has hereunto set its hand and seal to this Mortgage and Spreader Agreement on the day and year first above written.

Print Name: Sean W Meehan

as Manager and duly authorized representative of REHG

The foregoing Mortgage was sworn to, subscribed and acknowledged before me this 14 day of ~~June, 2015~~, by Sean W. Meehan, who is personally known to me and did (did not) take an oath.

LEILA BENAVIDES
Notary Public State of Florida
My Comm. Expires Nov 19, 2017
Commission # FF 021477

Print Name:
Notary Public, State of Florida at Large
My commission expires:

| Signed, sealed, read and delivered in the presence of: | Signed, sealed, read and delivered in the presence of: |
|---|---|
| Print Witness Name: L. M. Schantz | Roxana Sucar  Print Witness Name: Roxana Sucar |

3

A.11

State of Florida

County of Miami-Dade

On the 14th day of November in the year 2016, before me, the undersigned, personally appeared **Sean N. Meehan**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Miami, Miami-Dade County, Florida.

_____
Notary Public

Printed Name: Geoffrey S. Aaronson

My Commission Expires:
June 16, 2018

GEOFFREY S. AARONSON
Notary Public - State of Florida
My Comm. Expires Jun 16, 2018
Commission # FF 121262

4

A.12



**First American**

MORTGAGE SERVICES

## SCHEDULE A

## DESCRIPTION OF MORTGAGED PREMISES

Title No.: **DS140013366**

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration").

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

Page 2 of 12    SWM

SWM

A.13

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

Page 3 of 13

A.14

## SCHEDULE B

1. First Mortgage: U.S. Bank, approximately $2.5 Million

2. Second Mortgage: Real Time Resolutions, as Servicer, approximately $350,000

3. Spencer Condo: Settlement amount: approximately $426,000 in 3/15;  Proof of Claim amount as of 1/11/16 approx'y $668,000 plus accruing Maintenance and attorney fees

4. IRS Lien approx'y $394,000

5. Attorney Liens of Bruce Jacobs ($55,000 no interest); Robert P. Lithman ($95,000); and Mark Cohen ($25,000)

A.15

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 269 of
866

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE HARBORVIEW MORTGAGE LOAN TRUST 2006-1 MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-1,

Plaintiff,

-against-

ELIZABETH HAZAN, REAL ESTATE HOLDINGS GROUP, L.D.C., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS A NOMINEE FOR AMERICA'S WHOLESALE LENDER, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-M, THE BOARD OF MANAGERS OF THE SPENCER CONDOMINIUM, NLG, LLC, NEW YORK CITY DEPARTMENT OF FINANCE, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, 1 EAST 62ND STREET APT 1A LLC, AARONSON SCHANTZ BEILEY P.A., NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, UNITED STATES OF AMERICA O/B/O INTERNAL REVENUE SERVICE, and "JOHN DOE #1" through "JOHN DOE #10", the last ten names being fictitious and unknown to the plaintiff, the person or parties intended being the persons or parties, if any, having or claiming an interest in or lien upon the mortgaged premises described in the Complaint,

Defendants.

Index No. 850240/2014

**AMENDED COMPLAINT**

Mortgaged Premises:
1 East 62nd Street, Unit 1A
New York, NY 10065

Plaintiff U.S. Bank National Association, as trustee, on behalf of the holders of the

Harborview Mortgage Loan Trust 2006-1 Mortgage Loan Pass-Through Certificates, Series

86138408.1

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 270 of 866

2006-1 ("Plaintiff"), by its attorneys, Eckert Seamans Cherin & Mellott, LLC, as and for its

Amended Complaint against the defendants, alleges the following upon information and belief:

## INTRODUCTION

1.      This is a mortgage foreclosure action involving real property, a condominium

unit, located at 1 East 62nd Street, Unit 1A, New York, New York 10065 (Tax Parcel ID No.:

Block: 1377, Lot: 1100).  The legal description of the subject property is annexed hereto as

**Exhibit 1**, which is made part hereof.

2.      As set forth herein, defendant Elizabeth Hazan breached her obligations to

Plaintiff by, among other things, failing to pay principal and interest, taxes, water and/or other

utilities, insurance premiums, and/or other charges that are due and owing under the terms of the

subject note and mortgage being foreclosed upon and described herein.  True and correct copies

of the endorsed note, mortgage and assignment of mortgage are annexed hereto as **Exhibit 2** and

made part hereof.

3.      A prior action had been brought for foreclosure/to recover the mortgage debt

under the caption *U.S. Bank National Association, as trustee for Harborview 2006-1 Trust Fund

v. Elizabeth Hazan, et al.*, in the Supreme Court of the State of New York, County of New York,

Index No. 104990/2008.  That action had been dismissed and no part of the mortgage debt has

been collected.  Otherwise, there are no other pending proceedings at law or otherwise, other

than this action, to collect or enforce the subject note and mortgage.

## PARTIES

4.      Plaintiff is a national banking entity with a principal place of business located at

c/o Select Portfolio Servicing, Inc., 3217 S. Decker Lake Dr., Salt Lake City, Utah 84119.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 271 of 866

Plaintiff is the lawful holder of the note and mortgage being foreclosed upon and described herein.

5.      Upon information and belief, defendant Elizabeth Hazan is an individual who resides at 6913 Valencia Drive, Miami, Florida 33109 and/or 3201 NE 183rd Street, Aventura, Florida 33160.

6.      Upon information and belief, defendant Real Estate Holdings Group, L.D.C., is a New York entity with an address of 1 East 62nd Street, Unit 1A, New York, New York 10065, and is made a party to this action because it has or may have an interest in the subject property.

7.      Upon information and belief, defendant Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for America's Wholesale Lender, is a Delaware corporation with addresses at 4318 Miller Road, Flint, Michigan 48507 and/or 4500 Park Granada, Calabasas, California 913507 and/or 5660 New Northside Drive, 3rd Floor, Atlanta, Georgia 30328 and/or 1818 Library Street, Suite 300 Reston, Virginia 20190, and is made a party to this action because it has or may have liens and/or judgments against defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

8.      Upon information and belief, defendant The Bank of New York Mellon fka The Bank of New York, as successor to JPMorgan Chase Bank, N.A., as trustee for the certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2005-M, is a Delaware corporation with addresses at 1349 Empire Central Drive, Suite 150, Dallas, Texas 75247 and/or 240 Greenwich Street, New York, New York 10286, and is made a party to this action because it has or may have liens and/or judgments against defendant Elizabeth Hazan, and/or may have or

may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

9.      Upon information and belief, defendant The Board of Managers of the Spencer Condominium, is an New York entity with an address at 1 East 62nd Street, New York, New York 10065, and is made a party to this action because it has or may have liens and/or judgments against defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

10.     Upon information and belief, defendant NLG, LLC, is a Pennsylvania limited liability company with addresses at 854 Pheasant Run Road, West Chester, Pennsylvania 19382 and/or 1420 Locust Street, Unit A, Philadelphia, Pennsylvania 19103, and is made a party to this action because it has or may have liens and/or judgments against defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

11.     Upon information and belief, defendant New York City Department of Finance is an agency of the City of New York with an address of 59 Maiden Lane, New York, New York 10038, and is made a party to this action because it has or may have liens and/or judgments against defendants Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

12.     Upon information and belief, defendant New York State Department of Taxation and Finance is an agency of the State of New York with an address of WA Harriman State

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 273 of 866

Campus, Albany, New York 12227, and is made a party to this action because it has or may have

liens and/or judgments against the defendant Elizabeth Hazan, and/or may have or may claim to

have an interest in or lien upon the subject property or some part thereof, which, if any, accrued

subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

13.     Upon information and belief, defendant 1 East 62nd Street Apt 1A LLC, is a

limited liability company with addresses at 1 East 62nd Street, Unit 1A, New York, New York

10065, and is made a party to this action because it has or may have liens and/or judgments

against defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien

upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be

subject to and subordinate to, Plaintiff's mortgage.

14.     Upon information and belief, defendant Aaronson Schantz Beiley P.A., is a

Florida professional association with addresses at 100 S.E. 2nd Street, 27th Floor, Miami,

Florida 33131 and/or One Biscayne Tower, Floor 34, 2 South Biscayne Boulevard, Miami,

Florida 33131, and is made a party to this action because it has or may have liens and/or

judgments against defendant Elizabeth Hazan and/or Real Estate Holdings Group, L.D.C., and/or

may have or may claim to have an interest in or lien upon the subject property or some part

thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to,

Plaintiff's mortgage.

15.     Upon information and belief, defendant New York City Environmental Control

Board is an agency of the City of New York with an address of 66 John Street #10, New York,

New York 10038, and is made a party to this action because it has or may have liens and/or

judgments against defendants Elizabeth Hazan, and/or may have or may claim to have an interest

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 274 of 866

in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

16.     Upon information and belief, defendant United States of America o/b/o Internal Revenue Service is an agency of the United States government with an address of 135 High Street, Stop 155, Hartford, Connecticut 06103, and is made a party to this action because it has or may have liens and/or judgments against the defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

17.     Defendants "John Doe #1" through "John Doe #10" are fictitious parties named to permit Plaintiff to designate any and all occupants of the subject being foreclosed herein, and any parties, persons, corporations or entities, if any, that have or claim to have an interest or lien upon the subject property.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction over this action pursuant to Article 3 of New York's Civil Practice Law and Rules ("CPLR").

19.     Venue in New York County is proper based upon the location of the subject property, which is the real property subject to this action.

## THE NOTE AND MORTGAGE

20.     On December 22, 2005, defendant Elizabeth Hazan made, executed and delivered a note pursuant to which she promised to pay Countrywide Bank, N.A., the principal sum of $1,500,000.00 (with negative amortization not to exceed $1,650,000.00), together with interest and other charges, with an initial monthly payment in the amount of $5,176.80 on February 1,

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 275 of
866

2006, and monthly payments on the first day of each month thereafter until the date of maturity,

January 1, 2036 . *See* **Exhibit 2** hereto (note).

21.    In order to secure the obligations under the note, defendant Elizabeth Hazan duly

executed and delivered a mortgage on the subject property, dated December 22, 2005, in favor of

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide Bank,

N.A., and its successors and assigns.  The mortgage was filed and recorded with the New York

City Department of Finance Office of the City Register on November 14, 2006 at City Register

File No. (CRFN) 2006000629751, and all recording fees and taxes were paid.  *See* **Exhibit 2**

hereto (mortgage).

22.    Plaintiff is the owner and holder of the subject note and mortgage which are the

subject of and being foreclosed upon in this action, or has been delegated the authority to

institute this action by the owner and holder of the note and mortgage; and at the time of

commencement of this action, Plaintiff is the owner and holder of the note and mortgage which

are the subject of and being foreclosed upon in this action.

23.    Prior to the commencement of this action, Plaintiff took physical possession of

the original note, which first was endorsed by Countrywide Bank, N.A., to Countrywide Home

Loans, Inc., and then endorsed in blank and without recourse by Countrywide Home Loans, Inc.

Upon negotiation and delivery of the note to Plaintiff prior to the commencement of this action,

the mortgage was assigned to Plaintiff.  An assignment of mortgage was executed on April 1,

2008, and filed and recorded with the New York City Department of Finance Office of the City

Register on April 21, 2008 at City Register File No. (CRFN) 2008000158375.  *See* **Exhibit 2**

hereto (assignment).

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 276 of 866

24. At the time this action is commenced, Plaintiff has complied with the provisions of New York Banking Law § 595-a, and any rules and regulations promulgated thereunder, to the extent applicable, and any and all other state and federal laws that may apply.

25. Plaintiff has complied with the provisions of New York Banking Law §§ 6-l and 6-m, to the extent applicable.

26. Plaintiff has complied with the provisions of New York Real Property Actions and Proceedings Law §§ 1304 and 1306.

27. The subject premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

28. The terms of the subject note and mortgage provide that: (1) the entire amount of the unpaid principal balance due under the note and mortgage and interest shall become due at the option of the mortgagee after default in the payment of any installment of principal or of interest; (2) upon any default, the mortgagor will pay to the mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises, and attorneys' fees; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

### ELIZABETH HAZAN DEFAULTED

29. Defendant Elizabeth Hazan, as mortgagor, failed to comply with the terms of the note and mortgage and breached her obligations under the note and mortgage by, among other things, failing to tender the payment that was due as of July 1, 2007, and each of the payments that were due thereafter

A.23

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 277 of
866

30.    Pursuant to the terms of the subject note and mortgage, a notice of default was sent by the servicer of the subject mortgage loan, Select Portfolio Servicing, Inc., to Elizabeth, by first class mail, on April 4, 2012, a true and correct copy of which is annexed hereto as **Exhibit 3** and made a part hereof.  In said notice, demand was made to cure the default by tendering payment of $508,228.93 within 30 days of the notice.  Despite said notice, Elizabeth Hazan did not cure the default.

31.    The notices pursuant to New York Real Property Actions and Proceedings Law § 1304 were sent by the servicer of the subject mortgage loan, Select Portfolio Servicing, Inc., to Elizabeth Hazan on September 17, 2013, true and correct copies of the notices are annexed hereto as **Exhibit 4** and made a part hereof.  The notices pursuant to New York Real Property Actions and Proceedings Law § 1304 were sent to Elizabeth Hazan by certified mail and first-class mail.  In the notices pursuant to New York Real Property Actions and Proceedings Law § 1304, demand was made upon defendant Elizabeth Hazan to cure the default by mailing payment of $610,155.44 by March 17, 2014.  Despite said notice, Elizabeth Hazan did not cure the default.  The required proof of filing statements were filed with the Superintendent of Financial Services in compliance with Real Property Actions and Proceedings Law § 1306.  *See id.*

32.    Plaintiff hereby elects to declare immediately due and payable the entire unpaid principal balance due under the note and mortgage.

33.    The unpaid principal balance due upon the subject note and mortgage as of the date of default is $1,572,671.61, plus interest from June 1, 2007.

34.    Elizabeth Hazan further defaulted by, among other things, failing to pay taxes and other charges on the subject property when they were due.  In order to protect its security interest, Plaintiff may be compelled during the pendency of this action, to pay local taxes,

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 278 of 866

assessments, water rates, insurance premiums and other charges affecting the subject property, and Plaintiff requests that any sums thus paid by it for said purposes, together with interest thereon, should be added to the sum otherwise due and be deemed secured by the subject mortgage and be adjudged a valid lien on the subject property.

35.     By virtue of Elizabeth Hazan's default, Plaintiff has sustained damages in a total amount to be determined.  In any event, Plaintiff is entitled to recover the outstanding unpaid principal balance due and owing under the subject note and mortgage in the amount of $1,572,671.61, along with interest, advances for escrow, and other recoverable fees, charges and recoverable balances, together with prejudgment interest, attorney's fees and other charges, all of which continue to accrue.

36.     As set forth above, Plaintiff has complied with all necessary preconditions to commence this suit which are required by the New York States Banking Law and the rules and regulations adopted thereunder, together with all applicable notices required by the CPLR and New York Real Property Actions and Proceedings Law.

37.     There are no other pending proceedings at law or otherwise, other than this action, to collect or enforce the subject note and mortgage.

### AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION
**(Judgement of Foreclosure and Sale)**

38.     Plaintiff re-alleges, incorporates, repeats and adopts the allegations contained in paragraphs 1 through 37 of this Complaint as if set forth fully herein.

39.     Plaintiff is the sole, true and lawful owner and holder of the subject note and mortgage.

40.     Pursuant to the terms of the subject note and mortgage, defendant Elizabeth Hazan was obligated, among other things, to make monthly mortgage payments with an initial

A.25

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 279 of 866

monthly payment in the amount of $5,176.80 on February 1, 2006, and monthly payments on the first day of each month thereafter until the date of maturity, January 1, 2036. *See* **Exhibit 2**.

41.     Defendant Elizabeth Hazan breached her obligations under the note and mortgage due to her default under the terms thereof by, among other things, failing to tender the payments due thereunder.

42.     Despite being given adequate and due notice of the default of the note and mortgage, Elizabeth Hazan failed to cure the default.

43.     As a result of Elizabeth Hazan's default, Plaintiff has sustained damages in an amount to be determined.  However, as of the date hereof, such damages include the outstanding unpaid principal balance due and owing under the subject note and mortgage in the amount of $1,572,671.61, along with interest, advances for escrow, and other recoverable fees, charges and recoverable balances, together with prejudgment interest, attorney's fees and other charges, all of which continue to accrue.

44.     Plaintiff requests that in the event this action proceeds to judgment of foreclosure and sale, the subject property be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

45.     That each and all of the defendants herein have or claim to have some interest in, or lien upon the subject mortgaged property or some part thereof, which interest or lien, if any,

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 280 of 866

has accrued subsequently to the lien of the subject mortgage being enforced herein, and is subject and subordinate thereto.

46.     Any municipal agency named as a defendant herein is named solely for the purpose of providing notice to said agency and extinguishing any interest held by said agency by virtue of a lien of the said agency.

47.     Therefore, Plaintiff is entitled to judgment of foreclosure and sale, and further prays for an order that the subject property be sold as one parcel.

### AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
### (Attorneys' Fees)

48.     Plaintiff re-alleges, incorporates, repeats and adopts the allegations contained in paragraphs 1 through 47 of this Complaint as if set forth fully herein.

49.     The terms of the subject mortgage provide that in the event of default, Plaintiff may recover all costs, including reasonable attorneys' fees, disbursements, and allowances provided by law in bringing any action to protect its interest in the premises, including foreclosure of the mortgage.  As such, Plaintiff is entitled to an award and judgment of attorneys' fees incurred in connection with this action.

### AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
### (Reformation of Condominium Rider)

50.     Plaintiff re-alleges, incorporates, repeats and adopts the allegations contained in paragraphs 1 through 49 of this Complaint as if set forth fully herein.

51.     As a result of a scrivener's error, the condominium rider to the subject mortgage incorrectly refers to the condominium project where the subject property is located as "The Sterling," whereas the correct name should be "The Spencer Condominium."  In fact, the subject property is located within The Spencer Condominium.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 281 of 866

52.    As such, Plaintiff is entitled to a reformation of the recorded condominium rider *nunc pro tunc* to November 14, 2006 to include the correct name of the condominium project as "The Spencer Condominium."

**WHEREFORE**, upon the allegations contained herein, Plaintiff demands judgment and relief upon the causes of action alleged herein; judgment of foreclosure and sale against defendants as follows: (1) on the First Cause of Action: (a) adjudging and decreeing the amounts due to it for principal, interest, costs and reasonable attorneys' fees; (b) adjudging and decreeing that the defendants and all persons claiming by, through or under them, subsequent to the commencement of this action and every other person or corporation whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, may be barred and forever foreclosed of all right, claim, lien, interest or equity of redemption in and to the subject mortgaged property; (c) adjudging and decreeing that the subject mortgaged property, or such part thereof as may be necessary to raise the amounts due for principal, interest, costs, allowances and disbursements, together with any monies advanced and paid, may be decreed to be sold according to law; (d) adjudging and decreeing that out of the monies arising from the sale of the subject property, the Plaintiff may be paid the amounts due on the subject note and mortgage and any sum which may be paid by the Plaintiff to protect the lien of the mortgage, with interest upon said amounts from the dates of the respective payments and advances thereof, the costs and expenses of this action, and reasonable attorneys' fees, so far as the amount of such money properly applicable thereto will pay the same; (e) adjudging and decreeing that Plaintiff may become a purchaser upon such sale; (f) adjudging and decreeing that this Court, if requested, shall appoint a receiver of the rents and profits of the subject property with the usual

powers and duties; and (g) adjudging and decreeing that defendant Elizabeth Hazan be adjudged

liable to pay any deficiency that may remain after applying all of said monies so applicable

thereto and that Plaintiff may have such other or further relief, in the subject property as may be

just and equitable; Plaintiff specifically reserves its right to share in any surplus monies arising

from the sale of Property by virtue of its position as a judgment or other lien creditor excluding

the subject mortgage being foreclosed herein; (2) on the Second Cause of Action: granting an

award and judgment of attorneys' fees incurred in connection with this action; (3) on the Third

Cause of Action: adjudging and decreeing that the condominium rider recorded with the subject

mortgage be reformed *nunc pro tunc* to November 14, 2006 to include the correct name of the

condominium project as "The Spencer Condominium;" and (4) granting such other and further

relief as the Court deems just and proper.

Dated: White Plains, New York
        November 10, 2021

                                    Respectfully submitted,

                                    Eckert Seamans Cherin & Mellott, LLC


                                    By:    *s/Riyaz G. Bhimani*
                                            Riyaz G. Bhimani
                                    10 Bank Street, Suite 700
                                    White Plains, New York 10606
                                    (914) 949-2909

                                    *Attorneys for Plaintiff*
                                    *U.S. Bank National Association, as trustee, on*
                                    *behalf of the holders of the Harborview Mortgage*
                                    *Loan Trust 2006-1 Mortgage Loan Pass-Through*
                                    *Certificates, Series 2006-1*

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 283 of
866

## VERIFICATION

Riyaz G. Bhimani, an attorney duly admitted to practice before the Courts of the State of New York and fully aware of the penalties of perjury, hereby affirms, pursuant to CPLR § 2106, as follows:

1.      I am a member of the law firm Eckert Seamans Cherin & Mellott, LLC, attorneys for Plaintiff U.S. Bank National Association, as trustee, on behalf of the holders of the Harborview Mortgage Loan Trust 2006-1 Mortgage Loan Pass-Through Certificates, Series 2006-1 ("Plaintiff"), and am fully familiar with the facts and circumstances stated in the foregoing Amended Complaint.

2.      I have read the foregoing Amended Complaint and know the contents thereof, and the same are true to my own knowledge, except those matters therein stated to be upon information and belief, and as to those statements, I believe them to be true.

3.      I further state that the reason this verification is made by me, and not by Plaintiff, is that Plaintiff is not located in the county where I maintain my office.

Dated: White Plains, New York
        November 10, 2021

                                         *s/Riyaz G. Bhimani*
                                         Riyaz G. Bhimani

A.30

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 284 of 866

# Exhibit 1

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM
INDEX NO. 850240/2014
NYSCEF DOC. NO. 40
Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 285 of
866
RECEIVED NYSCEF: 02/01/2022

Client Reference No.: 200083479      Loan No.:

# SCHEDULE A
## DESCRIPTION OF MORTGAGED PREMISES

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit IA in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration).

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York and City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

Premises:        1 East 62nd Street, Unit 1A, New York, NY 10065
Tax Parcel ID No.:     Block: 1377 Lot: 1100

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 286 of
866

**Exhibit 2**

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 287 of 866

Prepared by: MICHELLE HALUPA

LOAN #: ███████

# ADJUSTABLE RATE NOTE
### (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

| DECEMBER 22, 2005 | NEW YORK | NEW YORK |
|---|---|---|
| [Date] | [City] | [State] |

1 EAST 62ND STREET 1A, NEW YORK, NY 10021-7204
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 1,500,000.00    (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed    110   percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is Countrywide Bank, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

**(A)  Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of    1.500  %.  Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of    1.500  %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)  Interest Rate Change Dates**

The interest rate I will pay may change on the first    day of FEBRUARY, 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C)  Index**

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 40/100    percentage point(s)    3.400 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than    9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.   PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first    day of each month beginning on FEBRUARY 01, 2006    . I will make these payments every month until I have paid all the Principal and interest and any

● **PayOption ARM Note - MTA Index**
**2E306-XX (09/05)(d)**                                   **Page 1 of 4**





A.34

LOAN #: ▮▮▮▮▮

other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  JANUARY 01, 2036  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

**(B)   Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 5,176.80           , unless adjusted under Section 3(F).

**(C)   Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first           day of FEBRUARY, 2007   , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.
I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than   7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number  1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)   Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED TEN            percent ( 110 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)   Required Full Payment**
On the tenth            Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)   Payment Options**
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:
**(i)   Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
**(ii)   Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
**(iii)   15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

● PayOption ARM Note - MTA Index
2E306-XX (09/06)                              Page 2 of 4

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 289 of
866

LOAN # : ████████

These Payment Options are only applicable if they are greater than the Minimum Payment.

**4.  NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A)  Late Charges for Overdue Payments**
If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     2 . 0 0 0 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**
If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

**(C)  Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.  WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 290 of
866

LOAN #: ████

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Elizabeth Hazan by Amir _____ as (Att, in fact)_
ELIZABETH HAZAN                                    - Borrower

_____   - Borrower

_____   - Borrower

_____   - Borrower

_ORIGINAL_

Pay to the order of:                    Pay to the order of:

Countrywide Home Loans, Inc.

Without Recourse                        Without Recourse
Countrywide Bank, N.A.                  Countrywide Home Loans, Inc.

By: _Laurie Meder_                      By: _Michele Sjolander_
    Laurie Meder, SVP                       Michele Sjolander, SVP

• **PayOption ARM Note - MTA Index**
2E306-XX (09/05)                    Page 4 of 4

A.37

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 291 of 866

Prepared by: MICHELLE HALUPA

**Countrywide Bank, N.A.**

DATE:        12/22/2005
BORROWER: ELIZABETH HAZAN
NON-BORROWER:
CASE #:
LOAN #:
PROPERTY ADDRESS: 1 EAST 62ND STREET 1A
                 NEW YORK, NY 10021-7204

Branch #: 0000797
333 EARL OVINGTON BLVD STE 101
UNIONDALE, NY 11553
Phone: (516)542-2900
Br Fax No.: (877)266-0965

## SIGNATURE AND NAME CERTIFICATION

BORROWER:
ELIZABETH HAZAN

NON-BORROWER:

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Security Instrument.)

ELIZABETH HAZAN
(Print or Type Name)


Signature
as atty in fact

(If applicable, complete the following.)

THIS IS TO CERTIFY THAT I AM ALSO KNOWN AS:

LISA HAZAN
(Print or Type Name)

LIZA HAZAN
(Print or Type Name)

(Print or Type Name)

(Print or Type Name)

● Signature and Name Certification
1E340-US (06/05)(d)

A.38

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 292 of 866

The Judic  itle Insurance Agency, LLC

DURABLE GENERAL POWER OF ATTORNEY
(NEW YORK STATUTORY SHORT FORM)

**THE POWERS YOU GRANT BELOW CONTINUE TO BE EFFECTIVE SHOULD YOU BECOME
DISABLED OR INCOMPETENT**

Caution: This is an important document. It gives the person whom you designate (your "Agent") broad powers
to handle your property during your lifetime, which may include powers to mortgage, sell, or otherwise
dispose of any real or personal property without advance notice to you or approval by you. These powers will
continue to exist even after you become disabled or incompetent. These powers are explained more fully in
New York General Obligations Law, Article 5, Title 15, Sections 5-1502A through 5-1503, which expressly permit
the use of any other or different form of power of attorney.
This document does not authorize anyone to make medical or other health care decisions. You may execute a
health care proxy to do this.
If there is anything about this form that you do not understand, you should ask a lawyer to explain it to you.

THIS is intended to constitute a DURABLE GENERAL POWER OF ATTORNEY pursuant to Article 5, Title 15 of the New
York General Obligations Law:

I, Elizabeth Hazen, 3201 Northeast 183rd Street, #2302, Aventura, Florida 33160                   do hereby
appoint:

(insert your name and address)

Andrew Dinnerstein, 280 Madison Avenue, Suite 705, New York, New York 10016

(if 1 person is to be appointed agent, insert the name and address of your agent above)

(if 2 or more persons are to be appointed agents by you insert their names and addresses above)

my attorney(s)-in-fact TO ACT
(if more than one agent is designated, CHOOSE ONE of the following two choices by putting your initials in ONE of the blank spaces to the left of your choice)
[   ] Each agent may SEPARATELY act.          [   ] All agents must act TOGETHER.
(if neither blank space is initialed, the agents will be required to act TOGETHER)
IN MY NAME, PLACE AND STEAD in any way which I myself could do, if I were personally present, with respect to the
following matters as each of them is defined in Title 15 of Article 5 of the New York General Obligations Law to the extent
that I am permitted by law to act through an agent:

[DIRECTIONS: Initial in the blank space to the left of your choice any one or more of the following lettered
subdivisions as to which you WANT to give your agent authority. If the blank space to the left of any particular
lettered subdivision is NOT initialed, NO AUTHORITY WILL BE GRANTED for matters that are included in that
subdivision. Alternatively, the letter corresponding to each power you wish to grant may be written or typed on
the blank line in subdivision "(Q)", and you may then put your initials in the blank space to the left of
subdivision "(Q)" in order to grant each of the powers so indicated.]

| | | | |
|---|---|---|---|
| [EH] (A) | real estate transactions; | [   ] (M) | making gifts to my spouse, children and |
| [EH] (B) | chattel and goods transactions; | | more remote descendants, and, parents |
| [EH] (C) | bond, share and commodity transactions; | | not to exceed in the aggregate $10,000 |
| [EH] (D) | banking transactions; | | to each of such persons in any year; |
| [   ] (E) | business operating transactions; | [   ] (N) | tax matters; |
| [   ] (F) | insurance transactions; | [   ] (O) | all other matters; |
| [   ] (G) | estate transactions; | [   ] (P) | full and unqualified authority to my |
| [   ] (H) | claims and litigation; | | attorney(s)-in-fact to delegate any or all |
| [   ] (I) | personal relationships and affairs; | | of the foregoing powers to any person or |
| [   ] (J) | benefits from military service; | | persons whom my attorney(s)-in-fact |
| [   ] (K) | records, reports and statements; | | shall select; |
| [   ] (L) | retirement benefit transactions; | [EH] (Q) | each of the above matters identified by |
| | | | the following letters: A, B, C and D |

(Special provisions and limitations may be included in the statutory short form durable power of attorney only if they conform to the requirements of Section 5-
1503 of the New York General Obligations Law.)

This Durable Power of Attorney shall not be affected by my subsequent disability or incompetence.
If every agent named above is unable or unwilling to serve, I appoint [   This Power of Attorney is specifically limited to the
                                                                              purchase & closing of title for the premises 1 E.
(insert name and address of successor)                                       82nd Street,#1A, NY, NY 10021 with Countrywide
to be my agent for all purposes hereunder.                                   Bank, America's Wholesale Lender

To induce any third party to act hereunder, I hereby agree that any third party receiving a duly executed copy or
facsimile of this instrument may act hereunder, and that revocation or termination hereof shall be ineffective as to such
third party unless and until actual notice or knowledge of such revocation or termination shall have been received by
such third party, and I for myself and for my heirs, executors, legal representatives and assigns, hereby agree to
indemnify and hold harmless any such third party from and against any and all claims that may arise against such
third party by reason of such third party having relied on the provisions of this instrument.

This Durable General Power of Attorney may be revoked by me at any time.

IN WITNESS WHEREOF, I have hereunto signed my name this 21 day of December, 2005.

(You sign here:)                                                              Elizabeth Hazen

Form 2229-2 - with Uniform Acknowledgment          (See over for acknowledgment)

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE**

State of New York, County of _____ ss.:

On the ____ day of ____ in the year ____ before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of _____ ss.:

On the ____ day of ____ in the year ____ before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

State (or District of Columbia, Territory, or Foreign Country) of Florida ss.:

On the 21 day of December in the year 2005 before me, the undersigned, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____ in _____
(Insert the City or other political subdivision)   (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

**DURABLE POWER OF ATTORNEY**
New York Statutory Short Form

Title No. _____

TO

SECTION _____
BLOCK _____
LOT _____
COUNTY OR TOWN _____
STREET ADDRESS _____

Nelson Perez
Commission #DD323935
Expires: May 26, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

Recorded at Request of
THE JUDICIAL TITLE INSURANCE AGENCY LLC
RETURN BY MAIL TO:

Distributed by
THE JUDICIAL TITLE INSURANCE AGENCY LLC
560 MAMARONECK AVENUE
HARRISON, NY 10528
914-381-6700 • 800-281-TITLE

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 294 of 866

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2006021501625004001EFBDA

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 24 |
|---|---|

| Document ID: 2006021501625004 | Document Date: 12-22-2005 | Preparation Date: 02-15-2006 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 23

| PRESENTER: | RETURN TO: |
|---|---|
| KENSINGTON ABSTRACT LLC | COUNTRYWIDE HOME LOANS, INC. |
| AS AGENT FOR FIRST AMERICAN TITLE | MS SV-79 DOCUMENT PROCESSING |
| INSURANCE | P.O. BOX 10423 |
| 276 FIFTH AVE SUITE 602 KEN-F-34513-NY-NY | VAN NUYS, CA 91410-0423 |
| NEW YORK, NY 10001 | |
| 212-561-6425 | |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 Entire Lot | 1A | 1 EAST |

Property Type: SINGLE RESIDENTIAL CONDO U

610 122816175 D2 001 002

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or Year____ Reel___ Page____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| ELIZABETH HAZAN | MERS |
| 3201 NE 183RD STREET | P.O. BOX 2026 |
| AVENTURA, FL 33160 | FLINT, MI 48501-2026 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,500,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 1,650,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 8,250.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 18,562.50 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 4,125.00 | | |
| MTA: | $ | 4,920.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 35,857.50 | | |
| Recording Fee: | $ | 152.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed          11-14-2006 10:45
City Register File No.(CRFN):
2006000629751

*City Register Official Signature*

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 295 of 866

| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>2006021501625004001EFBDA |
|---|---|

| **RECORDING AND ENDORSEMENT COVER PAGE** | | **PAGE 1 OF 24** |
|---|---|---|
| Document ID: **2006021501625004** | Document Date: 12-22-2005 | Preparation Date: 02-15-2006 |

Document Type: MORTGAGE
Document Page Count: 23

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| KENSINGTON ABSTRACT LLC<br>AS AGENT FOR FIRST AMERICAN TITLE<br>INSURANCE<br>276 FIFTH AVE SUITE 602 KEN-F-34513-NY-NY<br>NEW YORK, NY 10001<br>212-561-6425 | COUNTRYWIDE HOME LOANS, INC.<br>MS SV-79 DOCUMENT PROCESSING<br>P.O. BOX 10423<br>VAN NUYS, CA 91410-0423 |

### PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot | 1A | 1 EAST 62 STREET |

Property Type: SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year _____ Reel ____ Page _____ or File Number_____

### PARTIES

| **MORTGAGER/BORROWER:** | **MORTGAGEE/LENDER:** |
|---|---|
| ELIZABETH HAZAN<br>3201 NE 183RD STREET<br>AVENTURA, FL 33160 | MERS<br>P.O. BOX 2026<br>FLINT, MI 48501-2026 |

### FEES AND TAXES

| Mortgage | | | Recording Fee: $ | 152.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,500,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 1,650,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 8,250.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 18,562.50 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 4,125.00 | | |
| MTA: | $ | 4,920.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 35,857.50 | | |

*Kent 34513. NyNy*

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

*Sec*
*Block 1377*
*Lot 1100*
*County: New york.*

Prepared By:
MICHELLE HALUPA

——————————— [Space Above This Line For Recording Data] ———————————

[Doc ID #]

*35,857.05*

# MORTGAGE

MIN

**WORDS USED OFTEN IN THIS DOCUMENT**
**(A) "Security Instrument."** This document, which is dated  DECEMBER 22, 2005  , together with all
Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."**
ELIZABETH HAZAN

*M.M.* whose address is          *Aventura*
3201 NE 183RD STREET, ~~#PHB, NORTH MIAMI BEACH~~, FL 33160
sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under
the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE
MORTGAGEE OF RECORD.**
**(D) "Lender."**
Countrywide Bank, N.A.
will be called "Lender." Lender is a
NATL. ASSN.                                                                                which exists
under the laws of THE UNITED STATES                          . Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
**(E) "Note."** The note signed by Borrower and dated  DECEMBER 22, 2005  , will be called the "Note."
The Note shows that I owe Lender
ONE MILLION FIVE HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 1,500,000.00          ) plus interest and other amounts that may be payable. I have
promised to pay this debt in Periodic Payments and to pay the debt in full by  JANUARY 01, 2036   .
Section: _____ Block: _____ Lot: _____ Unit: _____

**NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
Page 1 of 13
-6A(NY) (0508)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291         Form 3033 1/01
CONV/VA

*✱ NEGAM LOAN NOT TO EXCEED $1,650,000.00 ✱✱*
*Block: 1377   Lot: 1100*
*Improves single Residential Condo unit*

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM    INDEX NO. 850240/2014

NYSCEF DOC. NO. 251    Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 297 of 866    RECEIVED NYSCEF: 02/01/2022

DOC ID #: ██████████

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

EXHIBIT A

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

VMP®  -6A(NY) (0508)    CHL (08/05)    Page 2 of 13    Form 3033 1/01

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 298 of
866

DOC ID #: ▮▮▮▮▮▮▮▮▮

**DESCRIPTION OF THE PROPERTY**

I give MERS rights in the Property described in (A) through (G) below:

(A) The Property which is located at

1 EAST 62ND STREET 1A                                           [Street]

NEW YORK                          [City, Town or Village], New York

10021-7204 [Zip Code]. This Property is in   NEW YORK                    County.

It has the following legal description:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 299 of 866

DOC ID #: ▮▮▮▮▮▮▮

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 300 of 866

DOC ID #:

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 301 of 866

DOC ID #:

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 302 of 866

DOC ID #: █████████

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

VMP® -6A(NY) (0508)     CHL (08/05)          Page 7 of 13                    Form 3033 1/01

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/10/2023 Page 303 of 866

DOC ID #:

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 304 of 866

DOC ID #: ███████████

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

DOC ID #: ▮▮▮▮▮▮▮

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

VMP® -6A(NY) (0508)     CHL (08/05)     Page 10 of 13     Form 3033 1/01

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 306 of
866

DOC ID #: ▓▓▓▓▓

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**
I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;
(2) The action that I must take to correct that default;

DOC ID #:

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require **Immediate Payment in Full**, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the **right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and**

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

_Elizabeth Hazan by_ _____ (Seal)
ELIZABETH HAZAN _Andrew Dinnerstein_ as atty in fact -Borrower
BY ANDREW DINNERSTEIN AS A-ttorney-in-fact.

_Power Attorney_ _____ (Seal)
-Borrower
_being recorded_
_simultaneously_
_____ (Seal)
_herewith_ -Borrower

_____ (Seal)
-Borrower

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 308 of 866

DOC ID #: �via blackout▮

STATE OF NEW YORK, *New York*

County ss:

On the _22nd_ day of _December 2005_ before me, the undersigned, a notary public in and for said state, personally appeared _____

_Bradley Donaldson for Elizabeth Stearn as attorney in fact_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information: _1377/1100_

Hong S. Kwon, ESQ.
Notary Public, State of New York
No. 02KW6085920
Qualified in New York County
Commission Exp. 01/13/2007

[SEAL]

-6A(NY) (0508)    CHL (08/05)    Page 13 of 13    Form 3033 1/01

A.55

40 of 85

Prepared by: MICHELLE HALUPA

**Countrywide Bank, N.A.**

Branch #: 0000797
333 EARL OVINGTON BLVD STE 101
UNIONDALE, NY 11553
Phone: (516)542-2900
Br Fax No.: (877)266-0965

DATE:                12/22/2005
CASE #:
DOC ID #:
BORROWER: ELIZABETH HAZAN
PROPERTY ADDRESS: 1 EAST 62ND STREET 1A
                  NEW YORK, NY 10021-7204

## LEGAL DESCRIPTION EXHIBIT A

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration").

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)          BLOCK: 1377     LOT: 1100     UNIT: 1A

FOR INFORMATION ONLY: Said premises are also known as 1 East 62nd Street No. 1A New York, New York.

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2022 Page 310 of 866

# CONDOMINIUM RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:


Prepared By:
MICHELLE HALUPA


[Doc ID #]

THIS CONDOMINIUM RIDER is made this TWENTY-SECOND day of DECEMBER, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
Countrywide Bank, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
1 EAST 62ND STREET 1A
NEW YORK, NY 10021-7204
[Property Address]

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-8R (0401)　　CHL (04/04)(d)　　　Page 1 of 3
VMP Mortgage Solutions (800)521-7291

Initials:
Form 3140 1/01




A.57
42 of 85

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 311 of 866

DOC ID #: ▆▆▆▆▆▆▆▆

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

## THE STERLING

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

Initials: _ _ _ _ _

-8R (0401)          CHL (04/04)          Page 2 of 3          Form 3140 1/01

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 312 of 866

DOC ID #: █████████

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Elizabeth Hazan by Andrew Din_____ as ____(Seal)
ELIZABETH HAZAN        atty in fact        - Borrower
BY ANDREW DINNERSTEIN AS ATTORNEY-IN-FACT

Power of Attorney being recorded simultaneously herewith.

_____(Seal)
                                                      - Borrower

_____(Seal)
                                                      - Borrower

-8R (0401)        CHL (04/04)        Page 3 of 3        Form 3140  1/01

A.59

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 313 of 866

# ADJUSTABLE RATE RIDER
(PayOption MTA Twelve Month Average Index - Payment Caps)

[Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this  TWENTY-SECOND      day of
DECEMBER, 2005     , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Countrywide Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

1 EAST 62ND STREET 1A
NEW YORK, NY 10021-7204
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

* PayOption MTA ARM Rider
1E310-XX (09/05)(d)                    Page 1 of 6



DOC ID #: ████████

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of     1.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of     1.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first            day of FEBRUARY, 2006     , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding          THREE & 40/100  percentage point(s) (    3.400 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than     9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

* PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 2 of 6

DOC ID #: ▓▓▓▓▓▓▓▓▓▓

I will make my monthly payments on the **FIRST** day of each month beginning on **February, 2006**. I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **JANUARY 01, 2036**, I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ **5,176.80**, unless adjusted under Section 3 (F).

**(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the **first** day of **FEBRUARY, 2007**, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than **7.500%** of my prior monthly payment. This **7.500%** limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number **1.075**. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

\* **PayOption MTA ARM Rider**
1E310-XX (09/05) Page 3 of 6

DOC ID #: ████████████

**(E) Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED TEN percent ( 110 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**
On the tenth    Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

● PayOption MTA ARM Rider
1E310-XX (09/05)          Page 4 of 6          ✱ $1,650,000.00

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/10/2023 Page 317 of 866

DOC ID #: ████████

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

**• PayOption MTA ARM Rider**
**1E310-XX (09/05)**                    Page 5 of 6

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 318 of
866

DOC ID #:

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Elizabeth Hazan by Andrew Dinnerstein_ _____ -Borrower

ELIZABETH HAZAN    atty in fact
BY ANDREW DINNERSTEIN AS ATTORNEY-IN-FACT

Power of Attorney being recorded
Simultaneously herewith

_____ -Borrower

_____ -Borrower

_____ -Borrower

• PayOption MTA ARM Rider
1E310-XX (09/05)          Page 6 of 6

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 319 of 866

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008040800596001001EC020

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID: 2008040800596001**   Document Date: 04-01-2008   Preparation Date: 04-08-2008
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| HOLD FOR PICK-UP DENISE | PILLAR PROCESSING, LLC |
| PRIME TITLE PT 38833 | 220 NORTHPOINTE PARKWAY |
| 410 NEW YORK AVENUE | SUITE G |
| HUNTINGTON, NY 11743 | AMHERST, NY 14228 |
| 631-549-7721 | 716-204-3400 |
| mdistelkamp@advantagetitle.com | |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100  Entire Lot | 1A | 1 EAST 62ND STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2006000629751

**PARTIES**

| **ASSIGNOR/OLD LENDER:** | **ASSIGNEE/NEW LENDER:** |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR |
| 64318 MILLER ROAD | 180 EAST 5TH STREET |
| FLINT, MI 48501 | ST. PAUL, MN 55101 |
| x  Additional Parties Listed on Continuation Page | |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** |
| Additional MRT: | $ | 0.00 | Recorded/Filed       04-21-2008 12:20 |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): |
| Recording Fee: | $ | 42.00 | **2008000158375** |
| Affidavit Fee: | $ | 0.00 | |

*Annette M. Hill*

*City Register Official Signature*

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM
INDEX NO. 850240/2014
NYSCEF DOC. NO. 251
RECEIVED NYSCEF: 02/01/2022



| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| | 2008040800596001001CC2A0 |

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 3 |
|---|---|
| Document ID: 2008040800596001    Document Date: 04-01-2008 | Preparation Date: 04-08-2008 |
| Document Type: ASSIGNMENT, MORTGAGE | |

**PARTIES**

**ASSIGNOR/OLD LENDER:**
AS NOMINEE FOR COUNTRYWIDE BANK, N.A. ITS
64318 MILLER ROAD
FLINT, MI 48501

**ASSIGNOR/OLD LENDER:**
SUCCESSORS AND ASSIGNS
64318 MILLER ROAD
FLINT, MI 48501

**PARTIES**
**ASSIGNEE/NEW LENDER:**
HARBORVIEW 2006-1 TRUST FUND
180 EAST 5TH STREET
ST. PAUL, MN 55101

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 321 of 866

# *ASSIGNMENT OF MORTGAGE*

**KNOW**, that **Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Bank, N.A. its successors and assigns**, 64318 Miller Road , Flint, MI 48501, Assignor in consideration of One or More Dollars ($1.00) paid by **U.S. Bank National Association, as Trustee, for Harborview 2006-1 Trust Fund, 180 East 5th Street , St. Paul, MN 55101**, Assignee, hereby assigns unto the Assignee, a certain mortgage made by **ELIZABETH HAZAN**, given to **Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Bank, N.A. its successors and assigns**, to secure the sum of **One million five hundred thousand dollars ($1,500,000.00)** and interest, dated **the 22nd day of December, 2005**, recorded on **the 14th day of November, 2006**, in the Office of the Clerk of the County of **NEW YORK at Certificate/Docket Number 2006000629751** covering premises commonly known as **1 EAST 62ND STREET 1A, NEW YORK, NY 10021** (said premises are more particularly described in said mortgage) together with the bond or obligation described in said mortgage, and the moneys due and to grow thereon with interest.

**TO HAVE AND TO HOLD** the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever.

**THIS** Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

**IN WITNESS WHEREOF**, the Assignor has caused these presents to be signed by its duly authorized officer this _1st_ day of April, 2008.

**IN PRESENCE OF**

> Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Bank, N.A. its successors and assigns
>
> BY: _Elpiniki Bechakas_
>
> Elpiniki Bechakas
> Assistant Secretary and Vice President

State of New York
County of Erie            ss:

On the _1st_ day of April in the year 2008 before me, the undersigned, a notary public in and for said state, personally appeared Elpiniki Bechakas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the _____.
*(Insert city or political subdivision and state or other place acknowledgment taken--- if acknowledgment is taken outside of New York State)*

Notary Public
Loan # 122816175
SBL # Block 1377 Lot 1100

38853

JAMIE CANELLA
NOTARY PUBLIC, STATE OF NEW YORK
REGISTRATION No. 01CA6121112
QUALIFIED IN ERIE COUNTY
My Commission Expires January 10, 20__

Pillar Processing, LLC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM

NYSCEF DOC. NO. 251

INDEX NO. 850240/2014

RECEIVED NYSCEF: 02/01/2022

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 322 of
866

# Exhibit 3

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 323 of 866



April 4, 2012
0012797569

ELIZABETH HAZAN
6913 VALENCIA DR
MIAMI BCH, FL 33109

DEMAND LETTER –NOTICE OF DEFAULT

NOTICIA DE OMISION

Re: Loan Number: ██████ secured by real property located at
1 EAST 62ND STREET 1A
NEW YORK NY 10021

Dear Customer:

This letter constitutes formal notice of default under the terms of the Note and Deed of Trust or Mortgage, as applicable, resulting from your failure to make payments as required by the Note and Deed of Trust or Mortgage. Your loan is currently due and owing for the 07/01/2007 payment and subsequent payments. As of the date of this letter, the total amount required to cure these defaults on your loan is $508,228.93 which consists of the following:

|  |  |
|---|---|
| 58 Months Delinquent Payments | |
| (07/01/2007 through 4/1/2012) | $447,524.16 |
| Accrued late charges | $ 111.30 |
| Accrued interest | $ .00 |
| Funds advanced on customer's behalf | $3,108.31 |
| Escrow advance balance | $56,255.51 |
| Other fees | $1,229.65 |
| | |
| Total Amount Outstanding | $508,228.93 |
| | |
| Unapplied balance | $ .00 |
| | |
| Amount required, as of 4/4/2012 to cure the default | $508,228.93 |

It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that SPS paid on your behalf or advanced to your account.

LR062

Page 1 of 4

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 324 of 866



This letter is a formal demand to pay the amount due. If this amount is not paid to Select Portfolio Servicing, Inc. ("SPS") within thirty (30) days of the date of this letter, the entire unpaid balance, together with accrued interest, fees and expenses, may be ACCELERATED and your loan may be referred to outside counsel to commence foreclosure action. Our acceptance of one or more payments for less than the amount required to cure the default shall not be deemed to reinstate your loan or waive any acceleration of the loan. You have the right to cure the default on this loan if, on or before 30 days of the date of this letter, you to the following:

1. Pay the amounts due on your loan as set forth above.

2. Cure all breaches of any other covenants or agreements made by you in the Note and Deed of Trust or Mortgage.

3. Take such actions, which SPS may reasonably require, to assure the lien and interest in the property are protected.

You may incur additional fees after the date of this letter pursuant to the terms of your mortgage documents. Payment of these additional fees may not be required to cure the default, but may be required to bring your loan current.

If foreclosure is initiated, additional amounts for attorney fees and costs may be incurred. These sums can be significant and will be added to amounts due. This may reduce your equity, if any, in the property.

SPS provides consumer assistance programs designed to help resolve delinquencies and avoid foreclosures. These services are provided without cost to our customers. You may also be eligible for a loan workout plan or other similar solution. If you would like to learn more about these programs, you may contact a SPS representative at (888) 818-6032 during the following hours:

> Monday through Thursday, 9 a.m. to 10 p.m.
> Friday, 9 a.m. to 7 p.m.
> Saturday, 9 a.m. to 1 p.m.
> Eastern Time

If you wish to dispute your delinquency, you may do so by providing a written dispute to SPS at the following address:

> Select Portfolio Servicing, Inc.
> Attention: Consumer Advocacy Department
> Select Portfolio Servicing, Inc.
> PO Box 65277
> Salt Lake City, Utah 84165-0277

You also have the right to bring a court action if you claim that the loan is not in default or if you believe that you have any other defense to the acceleration and sale, including the failure to send proper notices of the acceleration and foreclosure sale. We are also required by law to inform you that if you notify us that you do not wish us to contact you by telephone at your place of employment, then no such contact by telephone will be made.

If you are represented by an attorney, SPS will work with your attorney. We will also work with housing counselors, consumer debt counselors and other representatives with your written authorization. If you are

LR062

Page 2 of 4

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 325 of 866

represented by an attorney, this letter is being mailed to you to forward to your attorney. We will release information to your attorney without further authorization. If you wish to have information regarding you account provided to individuals or groups other than your attorney, your signed written authorization (including your social security number) is required.

SPS intends to invoke specific remedies within your Deed of Trust or Mortgage as applicable. This letter is being sent as notification of those remedies.

Please contact a SPS representative at (800) 635-9698 to determine the exact amount due and to arrange for payment. SPS requires all delinquent installments to be paid by CASHIER'S CHECK OR MONEY ORDER. PLEASE PROVIDE PAYMENTS TO THE FOLLOWING ADDRESS:

> Select Portfolio Servicing, Inc.
> PO BOX 65450
> Salt Lake City, UT 84165-0450

<u>IF YOU ARE A DEBTOR IN BANKRUPTY OR HAVE BEEN DISCHARGED IN BANKRUPTCY:</u>

<u>Please be advised that if you are a debtor in bankruptcy or have been discharged in bankruptcy, this statement does not represent and is not intended to be a demand for payment. In such cases, this letter is provided for you for information purposes only and is not an attempt to collect a debt. You should consult legal counsel regarding your obligations, if any, to pay the mortgage loan.</u>

Home ownership counseling may be available to you by contacting a HUD-approved counseling agency. Call (800) 569-4287 or TDD (800) 877-8339 for the housing counseling agency nearest you.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción 2.

Sincerely,

Select Portfolio Servicing, Inc.

**This is an attempt to collect a debt. Any information obtained will be used for that purpose.**
Minnesota – This collection agency is licensed by the Minnesota Department of Commerce
New York City – Collection Agency License #0987252

LR062

Page 3 of 4

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 327 of 866



SELECT
PORTFOLIO
SERVICING, inc.

April 4, 2012
0012797569

ELIZABETH HAZAN
1 EAST 62ND STREET 1A
NEW YORK, NY 10021

DEMAND LETTER –NOTICE OF DEFAULT

NOTICIA DE OMISION

Re:    Loan Number: ████████ secured by real property located at
1 EAST 62ND STREET 1A
NEW YORK NY 10021

Dear Customer:

This letter constitutes formal notice of default under the terms of the Note and Deed of Trust or Mortgage, as applicable, resulting from your failure to make payments as required by the Note and Deed of Trust or Mortgage. Your loan is currently due and owing for the 07/01/2007 payment and subsequent payments. As of the date of this letter, the total amount required to cure these defaults on your loan is $508,228.93 which consists of the following:

| | |
|---|---|
| 58 Months Delinquent Payments | |
| (07/01/2007 through 4/1/2012) | $447,524.16 |
| Accrued late charges | $ 111.30 |
| Accrued interest | $ .00 |
| Funds advanced on customer's behalf | $3,108.31 |
| Escrow advance balance | $56,255.51 |
| Other fees | $1,229.65 |
| | |
| Total Amount Outstanding | $508,228.93 |
| | |
| Unapplied balance | $ .00 |
| | |
| Amount required, as of 4/4/2012 to cure the default | $508,228.93 |

It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that SPS paid on your behalf or advanced to your account.

LR062

Page 1 of 4

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 328 of
866



SELECT
Portfolio
SERVICING, inc.

This letter is a formal demand to pay the amount due. If this amount is not paid to Select Portfolio Servicing, Inc. ("SPS") within thirty (30) days of the date of this letter, the entire unpaid balance, together with accrued interest, fees and expenses, may be ACCELERATED and your loan may be referred to outside counsel to commence foreclosure action. Our acceptance of one or more payments for less than the amount required to cure the default shall not be deemed to reinstate your loan or waive any acceleration of the loan. You have the right to cure the default on this loan if, on or before 30 days of the date of this letter, you to the following:

1. Pay the amounts due on your loan as set forth above.

2. Cure all breaches of any other covenants or agreements made by you in the Note and Deed of Trust or Mortgage.

3. Take such actions, which SPS may reasonably require, to assure the lien and interest in the property are protected.

You may incur additional fees after the date of this letter pursuant to the terms of your mortgage documents. Payment of these additional fees may not be required to cure the default, but may be required to bring your loan current.

If foreclosure is initiated, additional amounts for attorney fees and costs may be incurred. These sums can be significant and will be added to amounts due. This may reduce your equity, if any, in the property.

SPS provides consumer assistance programs designed to help resolve delinquencies and avoid foreclosures. These services are provided without cost to our customers. You may also be eligible for a loan workout plan or other similar solution. If you would like to learn more about these programs, you may contact a SPS representative at (888) 818-6032 during the following hours:

> Monday through Thursday, 9 a.m. to 10 p.m.
> Friday, 9 a.m. to 7 p.m.
> Saturday, 9 a.m. to 1 p.m.
> Eastern Time

If you wish to dispute your delinquency, you may do so by providing a written dispute to SPS at the following address:

> Select Portfolio Servicing, Inc.
> Attention: Consumer Advocacy Department
> Select Portfolio Servicing, Inc.
> PO Box 65277
> Salt Lake City, Utah 84165-0277

You also have the right to bring a court action if you claim that the loan is not in default or if you believe that you have any other defense to the acceleration and sale, including the failure to send proper notices of the acceleration and foreclosure sale. We are also required by law to inform you that if you notify us that you do not wish us to contact you by telephone at your place of employment, then no such contact by telephone will be made.

If you are represented by an attorney, SPS will work with your attorney. We will also work with housing counselors, consumer debt counselors and other representatives with your written authorization. If you are

LR062                                                                    Page 2 of 4

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 329 of 866

represented by an attorney, this letter is being mailed to you to forward to your attorney. We will release information to your attorney without further authorization. If you wish to have information regarding you account provided to individuals or groups other than your attorney, your signed written authorization (including your social security number) is required.

SPS intends to invoke specific remedies within your Deed of Trust or Mortgage as applicable. This letter is being sent as notification of those remedies.

Please contact a SPS representative at (800) 635-9698 to determine the exact amount due and to arrange for payment. SPS requires all delinquent installments to be paid by CASHIER'S CHECK OR MONEY ORDER. PLEASE PROVIDE PAYMENTS TO THE FOLLOWING ADDRESS:

> Select Portfolio Servicing, Inc.
> PO BOX 65450
> Salt Lake City, UT 84165-0450

<u>IF YOU ARE A DEBTOR IN BANKRUPTY OR HAVE BEEN DISCHARGED IN BANKRUPTCY:</u>

<u>Please be advised that if you are a debtor in bankruptcy or have been discharged in bankruptcy, this statement does not represent and is not intended to be a demand for payment. In such cases, this letter is provided for you for information purposes only and is not an attempt to collect a debt. You should consult legal counsel regarding your obligations, if any, to pay the mortgage loan.</u>

Home ownership counseling may be available to you by contacting a HUD-approved counseling agency. Call (800) 569-4287 or TDD (800) 877-8339 for the housing counseling agency nearest you.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción 2.


Sincerely,


Select Portfolio Servicing, Inc.


**This is an attempt to collect a debt. Any information obtained will be used for that purpose.**
Minnesota – This collection agency is licensed by the Minnesota Department of Commerce
New York City – Collection Agency License #0987252

LR062                                                                        Page 3 of 4

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 330 of 866

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 331 of
866

# Exhibit 4

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 332 of 866

Select Portfolio Servicing
PO BOX 65250
Salt Lake City, UT
84165-0250

9171 9010 7643 2003 7701 86

ELIZABETH HAZAN
6913 VALENCIA DR
MIAMI BCH, FL 33109

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM
INDEX NO. 850240/2014
NYSCEF DOC. NO. 251
RECEIVED NYSCEF: 02/01/2022

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 333 of
866

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 334 of 866



December 17, 2013

  ELIZABETH HAZAN
6913 VALENCIA DR
MIAMI BCH, FL 33109

**Account Number:** ▮▮▮▮▮▮▮
**Property Address:** 1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Dear Customer(s):

## YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY

As of December 17, 2013, your home is 2361 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $610,155.44 dollars by 03/17/2014. This amount will cure the default but may not be enough to reinstate the loan if additional payments and/or advances accrue after the date of this letter. Please contact us at (800) 635-9698 prior to making any payment to obtain the exact amount to reinstate the loan.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at (800) 635-9698 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait the fewer options you may have.



Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 335 of 866

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 269-0990 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción  2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City – Collection Agency License # 1170514

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 336 of 866

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov to find the HUD-approved housing counseling agency nearest you

| | |
|---|---|
| Albany County Rural Housing Alliance, Inc.<br>(518) 765-2425 - Voorheesville<br>(518) 235-3920 - Cohoes<br>(518) 756-3656 - Ravena<br>Albany County | American Debt Resources<br>(800) 498-0766<br>Suffolk County |
| Belmont Shelter Corp.<br>(716) 884-7791 - Buffalo<br>(716) 213-2784 - North Tonawanda<br>(716) 312-8075 - Hamburg<br>Erie County | Better Neighborhoods, Inc.<br>(518) 372-6469<br>Schenectady, Montgomery, and Fulton Counties |
| Bishop Sheen Ecumenical Housing Foundation, Inc.<br>(585) 461-4263 - Rochester<br>(585) 657-4114 - Bloomfield<br>Monroe, Allegany, Chemung, Schuyler, Steuben, Tioga, Tompkins, Cayuga, Livingston, Seneca, Wayne, Ontario and Yates Counties | Brooklyn Housing & Family Services, Inc.<br>(718) 435-7585<br>Brooklyn |
| Brooklyn Neighborhood Improvement Association<br>(718) 773-4116<br>Brooklyn | Chautauqua Opportunities, Inc.<br>(716) 366-3333<br>Chautauqua County |
| Friends of the North Country, Inc.<br>(518) 834-9606<br>Essex, Clinton, and Franklin Counties | The Housing Council<br>(585) 546-3700<br>Monroe and surrounding Counties |

| Housing Help<br>(631) 754-0373<br>Suffolk County | Human Development Services of Westchester, Inc.<br>(914) 939-2005<br>Westchester County |
|---|---|
| Keuka Housing Council, Inc.<br>(315) 536-8707<br>Yates County | Long Island Housing Services<br>(631) 567-5111 - Suffolk<br>(516) 292-0400 - Nassau<br>Long Island |
| Nassau County Office of Housing & Homeless<br>Service/Homeownership Center<br>(516) 572-1903<br>Nassau County | Parodneck Foundation<br>(212) 431-9700<br>New York City |
| PathStone Corporation<br>(585) 546-7180 - Rochester<br>(845) 569-0770 - Newburgh<br>Orange, Dutchess, Sullivan, Monroe, Orleans,<br>Genesee, Livingston, Ontario and Wayne Counties | Putnam County Housing<br>(845) 225-8493<br>Putnam County |
| Rockaway Development and Revitalization<br>Corporation<br>(718) 327-5300<br>Queens County | Rockland Housing Action Coalition, Inc.<br>(845) 708-5799<br>Rockland County |
| Westchester Residential Opportunities, Inc.<br>(914) 428-4507<br>Westchester County | |

In addition, NeighborWorks® America distributed Federal grants directly to several counseling agencies in New York State to provide foreclosure prevention counseling. If you believe you are at risk of foreclosure, you may contact one of these organizations:

| Chautauqua Housing and Rehabilitation<br>Improvement Corporation<br>(716) 753-4650<br>Chautauqua County | Community Development Corporation of Long<br>Island, Inc.<br>(631) 471-1215 - Suffolk<br>(516) 867-7727 - Nassau<br>Long Island |
|---|---|
| Home HeadQuarters, Inc.<br>(315) 474-1939<br>Onondaga County | Housing Assistance Program of Essex County, Inc.<br>(518) 873-3691<br>Essex County |
| Hudson River Housing, Inc.<br>(845) 454-5176<br>Dutchess County | Neighborhood Housing Services of New York City,<br>Inc.<br>(212) 519-2500<br>New York City |
| Opportunities for Chenango, Inc.<br>(607) 334-7114<br>Chenango County | St. Lawrence County Housing Council, Inc.<br>(315) 386-8576<br>St. Lawrence County |
| Troy Rehabilitation & Improvement Program, Inc.<br>(518) 690-0020<br>Rensselaer County | UNHS NeighborWorks HomeOwnership Center<br>(315) 724-4197<br>Oneida, Herkimer and Madison Counties |
| West Side Neighborhood Housing Services, Inc.<br>(716) 885-2344<br>Buffalo | |

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 338 of 866

Select Portfolio Servicing
PO BOX 65250
Salt Lake City, UT
84165-0250

9171 9010 7643 2003 7701 93

ELIZABETH HAZAN
1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 340 of 866



December 17, 2013

 ELIZABETH HAZAN
1 EAST 62ND STREET 1A
NEW YORK, NY 10021

**Account Number:** ███████
**Property Address:** 1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Dear Customer(s):

YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE
CAREFULLY

As of December 17, 2013, your home is 2361 days in default.  Under New York State
Law, we are required to send you this notice to inform you that you are at risk of losing
your home.  You can cure this default by making the payment of $610,155.44 dollars
by 03/17/2014. This amount will cure the default but may not be enough to reinstate
the loan if additional payments and/or advances accrue after the date of this letter.
Please contact us at (800) 635-9698 prior to making any payment to obtain the exact
amount to reinstate the loan.

If you are experiencing financial difficulty, you should know that there are several
options available to you that may help you keep your home.  Attached to this notice is
a list of government approved housing counseling agencies in your area which provide
free or very low-cost counseling. You should consider contacting one of these
agencies immediately. These agencies specialize in helping homeowners who are
facing financial difficulty.  Housing counselors can help you assess your financial
condition and work with us to explore the possibility of modifying your loan,
establishing an easier payment plan for you, or even working out a period of loan
forbearance.  If you wish, you may also contact us directly at (800) 635-9698 and ask
to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage
you to take immediate steps to try to achieve a resolution.  The longer you wait the
fewer options you may have.

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 269-0990 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción  2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City – Collection Agency License # 1170514

LR072

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 342 of 866

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov to find the HUD-approved housing counseling agency nearest you

| | |
|---|---|
| Albany County Rural Housing Alliance, Inc.<br>(518) 765-2425 - Voorheesville<br>(518) 235-3920 - Cohoes<br>(518) 756-3656 - Ravena<br>Albany County | American Debt Resources<br>(800) 498-0766<br>Suffolk County |
| Belmont Shelter Corp.<br>(716) 884-7791 - Buffalo<br>(716) 213-2784 - North Tonawanda<br>(716) 312-8075 - Hamburg<br>Erie County | Better Neighborhoods, Inc.<br>(518) 372-6469<br>Schenectady, Montgomery, and Fulton Counties |
| Bishop Sheen Ecumenical Housing Foundation, Inc.<br>(585) 461-4263 - Rochester<br>(585) 657-4114 - Bloomfield<br>Monroe, Allegany, Chemung, Schuyler, Steuben, Tioga, Tompkins, Cayuga, Livingston, Seneca, Wayne, Ontario and Yates Counties | Brooklyn Housing & Family Services, Inc.<br>(718) 435-7585<br>Brooklyn |
| Brooklyn Neighborhood Improvement Association<br>(718) 773-4116<br>Brooklyn | Chautauqua Opportunities, Inc.<br>(716) 366-3333<br>Chautauqua County |
| Friends of the North Country, Inc.<br>(518) 834-9606<br>Essex, Clinton, and Franklin Counties | The Housing Council<br>(585) 546-3700<br>Monroe and surrounding Counties |

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 343 of 866

| | |
|---|---|
| Housing Help<br>(631) 754-0373<br>Suffolk County | Human Development Services of Westchester, Inc.<br>(914) 939-2005<br>Westchester County |
| Keuka Housing Council, Inc.<br>(315) 536-8707<br>Yates County | Long Island Housing Services<br>(631) 567-5111 - Suffolk<br>(516) 292-0400 - Nassau<br>Long Island |
| Nassau County Office of Housing & Homeless Service/Homeownership Center<br>(516) 572-1903<br>Nassau County | Parodneck Foundation<br>(212) 431-9700<br>New York City |
| PathStone Corporation<br>(585) 546-7180 - Rochester<br>(845) 569-0770 - Newburgh<br>Orange, Dutchess, Sullivan, Monroe, Orleans, Genesee, Livingston, Ontario and Wayne Counties | Putnam County Housing<br>(845) 225-8493<br>Putnam County |
| Rockaway Development and Revitalization Corporation<br>(718) 327-5300<br>Queens County | Rockland Housing Action Coalition, Inc.<br>(845) 708-5799<br>Rockland County |
| Westchester Residential Opportunities, Inc.<br>(914) 428-4507<br>Westchester County | |

In addition, NeighborWorks® America distributed Federal grants directly to several counseling agencies in New York State to provide foreclosure prevention counseling. If you believe you are at risk of foreclosure, you may contact one of these organizations:

| | |
|---|---|
| Chautauqua Housing and Rehabilitation Improvement Corporation<br>(716) 753-4650<br>Chautauqua County | Community Development Corporation of Long Island, Inc.<br>(631) 471-1215 - Suffolk<br>(516) 867-7727 - Nassau<br>Long Island |
| Home HeadQuarters, Inc.<br>(315) 474-1939<br>Onondaga County | Housing Assistance Program of Essex County, Inc.<br>(518) 873-3691<br>Essex County |
| Hudson River Housing, Inc.<br>(845) 454-5176<br>Dutchess County | Neighborhood Housing Services of New York City, Inc.<br>(212) 519-2500<br>New York City |
| Opportunities for Chenango, Inc.<br>(607) 334-7114<br>Chenango County | St. Lawrence County Housing Council, Inc.<br>(315) 386-8576<br>St. Lawrence County |
| Troy Rehabilitation & Improvement Program, Inc.<br>(518) 690-0020<br>Rensselaer County | UNHS NeighborWorks HomeOwnership Center<br>(315) 724-4197<br>Oneida, Herkimer and Madison Counties |
| West Side Neighborhood Housing Services, Inc.<br>(716) 885-2344<br>Buffalo | |

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 344 of 866



December 17, 2013

 ELIZABETH HAZAN
6913 VALENCIA DR
MIAMI BCH, FL 33109

**Account Number:** ▮▮▮▮▮▮▮
**Property Address:** 1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Dear Customer(s):

YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE
CAREFULLY

As of December 17, 2013, your home is 2361 days in default.  Under New York State
Law, we are required to send you this notice to inform you that you are at risk of losing
your home.  You can cure this default by making the payment of $610,155.44 dollars
by 03/17/2014. This amount will cure the default but may not be enough to reinstate
the loan if additional payments and/or advances accrue after the date of this letter.
Please contact us at (800) 635-9698 prior to making any payment to obtain the exact
amount to reinstate the loan.

If you are experiencing financial difficulty, you should know that there are several
options available to you that may help you keep your home.  Attached to this notice is
a list of government approved housing counseling agencies in your area which provide
free or very low-cost counseling. You should consider contacting one of these
agencies immediately. These agencies specialize in helping homeowners who are
facing financial difficulty.  Housing counselors can help you assess your financial
condition and work with us to explore the possibility of modifying your loan,
establishing an easier payment plan for you, or even working out a period of loan
forbearance.  If you wish, you may also contact us directly at (800) 635-9698 and ask
to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage
you to take immediate steps to try to achieve a resolution.  The longer you wait the
fewer options you may have.

LR972                                    0000895800024810200

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 345 of
866

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 269-0990 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción  2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City – Collection Agency License # 1170514

LR972

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 346 of 866

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov to find the HUD-approved housing counseling agency nearest you

| | |
|---|---|
| Albany County Rural Housing Alliance, Inc.<br>(518) 765-2425 - Voorheesville<br>(518) 235-3920 - Cohoes<br>(518) 756-3656 - Ravena<br>Albany County | American Debt Resources<br>(800) 498-0766<br>Suffolk County |
| Belmont Shelter Corp.<br>(716) 884-7791 - Buffalo<br>(716) 213-2784 - North Tonawanda<br>(716) 312-8075 - Hamburg<br>Erie County | Better Neighborhoods, Inc.<br>(518) 372-6469<br>Schenectady, Montgomery, and Fulton Counties |
| Bishop Sheen Ecumenical Housing Foundation, Inc.<br>(585) 461-4263 - Rochester<br>(585) 657-4114 - Bloomfield<br>Monroe, Allegany, Chemung, Schuyler, Steuben, Tioga, Tompkins, Cayuga, Livingston, Seneca, Wayne, Ontario and Yates Counties | Brooklyn Housing & Family Services, Inc.<br>(718) 435-7585<br>Brooklyn |
| Brooklyn Neighborhood Improvement Association<br>(718) 773-4116<br>Brooklyn | Chautauqua Opportunities, Inc.<br>(716) 366-3333<br>Chautauqua County |
| Friends of the North Country, Inc.<br>(518) 834-9606<br>Essex, Clinton, and Franklin Counties | The Housing Council<br>(585) 546-3700<br>Monroe and surrounding Counties |

LR972    00008958002440200

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 347 of 866

| Housing Help<br>(631) 754-0373<br>Suffolk County | Human Development Services of Westchester, Inc.<br>(914) 939-2005<br>Westchester County |
|---|---|
| Keuka Housing Council, Inc.<br>(315) 536-8707<br>Yates County | Long Island Housing Services<br>(631) 567-5111 - Suffolk<br>(516) 292-0400 - Nassau<br>Long Island |
| Nassau County Office of Housing & Homeless Service/Homeownership Center<br>(516) 572-1903<br>Nassau County | Parodneck Foundation<br>(212) 431-9700<br>New York City |
| PathStone Corporation<br>(585) 546-7180 - Rochester<br>(845) 569-0770 - Newburgh<br>Orange, Dutchess, Sullivan, Monroe, Orleans, Genesee, Livingston, Ontario and Wayne Counties | Putnam County Housing<br>(845) 225-8493<br>Putnam County |
| Rockaway Development and Revitalization Corporation<br>(718) 327-5300<br>Queens County | Rockland Housing Action Coalition, Inc.<br>(845) 708-5799<br>Rockland County |
| Westchester Residential Opportunities, Inc.<br>(914) 428-4507<br>Westchester County | |

In addition, NeighborWorks® America distributed Federal grants directly to several counseling agencies in New York State to provide foreclosure prevention counseling. If you believe you are at risk of foreclosure, you may contact one of these organizations:

| Chautauqua Housing and Rehabilitation Improvement Corporation<br>(716) 753-4650<br>Chautauqua County | Community Development Corporation of Long Island, Inc.<br>(631) 471-1215 - Suffolk<br>(516) 867-7727 - Nassau<br>Long Island |
|---|---|
| Home HeadQuarters, Inc.<br>(315) 474-1939<br>Onondaga County | Housing Assistance Program of Essex County, Inc.<br>(518) 873-3691<br>Essex County |
| Hudson River Housing, Inc.<br>(845) 454-5176<br>Dutchess County | Neighborhood Housing Services of New York City, Inc.<br>(212) 519-2500<br>New York City |
| Opportunities for Chenango, Inc.<br>(607) 334-7114<br>Chenango County | St. Lawrence County Housing Council, Inc.<br>(315) 386-8576<br>St. Lawrence County |
| Troy Rehabilitation & Improvement Program, Inc.<br>(518) 690-0020<br>Rensselaer County | UNHS NeighborWorks HomeOwnership Center<br>(315) 724-4197<br>Oneida, Herkimer and Madison Counties |
| West Side Neighborhood Housing Services, Inc.<br>(716) 885-2344<br>Buffalo | |

LR972



December 17, 2013

 ELIZABETH HAZAN
1 EAST 62ND STREET 1A
NEW YORK, NY 10021

**Account Number:** ████████
**Property Address:** 1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Dear Customer(s):

YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE
CAREFULLY

As of December 17, 2013, your home is 2361 days in default.  Under New York State
Law, we are required to send you this notice to inform you that you are at risk of losing
your home.  You can cure this default by making the payment of $610,155.44 dollars
by 03/17/2014. This amount will cure the default but may not be enough to reinstate
the loan if additional payments and/or advances accrue after the date of this letter.
Please contact us at (800) 635-9698 prior to making any payment to obtain the exact
amount to reinstate the loan.

If you are experiencing financial difficulty, you should know that there are several
options available to you that may help you keep your home.  Attached to this notice is
a list of government approved housing counseling agencies in your area which provide
free or very low-cost counseling. You should consider contacting one of these
agencies immediately. These agencies specialize in helping homeowners who are
facing financial difficulty.  Housing counselors can help you assess your financial
condition and work with us to explore the possibility of modifying your loan,
establishing an easier payment plan for you, or even working out a period of loan
forbearance.  If you wish, you may also contact us directly at (800) 635-9698 and ask
to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage
you to take immediate steps to try to achieve a resolution.  The longer you wait the
fewer options you may have.

LR972                          0000896900243810200

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 349 of
866

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 269-0990 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción  2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City – Collection Agency License # 1170514

LR972

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 350 of 866

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov to find the HUD-approved housing counseling agency nearest you

| | |
|---|---|
| Albany County Rural Housing Alliance, Inc.<br>(518) 765-2425 - Voorheesville<br>(518) 235-3920 - Cohoes<br>(518) 756-3656 - Ravena<br>Albany County | American Debt Resources<br>(800) 498-0766<br>Suffolk County |
| Belmont Shelter Corp.<br>(716) 884-7791 - Buffalo<br>(716) 213-2784 - North Tonawanda<br>(716) 312-8075 - Hamburg<br>Erie County | Better Neighborhoods, Inc.<br>(518) 372-6469<br>Schenectady, Montgomery, and Fulton Counties |
| Bishop Sheen Ecumenical Housing Foundation, Inc.<br>(585) 461-4263 - Rochester<br>(585) 657-4114 - Bloomfield<br>Monroe, Allegany, Chemung, Schuyler, Steuben, Tioga, Tompkins, Cayuga, Livingston, Seneca, Wayne, Ontario and Yates Counties | Brooklyn Housing & Family Services, Inc.<br>(718) 435-7585<br>Brooklyn |
| Brooklyn Neighborhood Improvement Association<br>(718) 773-4116<br>Brooklyn | Chautauqua Opportunities, Inc.<br>(716) 366-3333<br>Chautauqua County |
| Friends of the North Country, Inc.<br>(518) 834-9606<br>Essex, Clinton, and Franklin Counties | The Housing Council<br>(585) 546-3700<br>Monroe and surrounding Counties |

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 351 of 866

| Housing Help<br>(631) 754-0373<br>Suffolk County | Human Development Services of Westchester, Inc.<br>(914) 939-2005<br>Westchester County |
|---|---|
| Keuka Housing Council, Inc.<br>(315) 536-8707<br>Yates County | Long Island Housing Services<br>(631) 567-5111 - Suffolk<br>(516) 292-0400 - Nassau<br>Long Island |
| Nassau County Office of Housing & Homeless Service/Homeownership Center<br>(516) 572-1903<br>Nassau County | Parodneck Foundation<br>(212) 431-9700<br>New York City |
| PathStone Corporation<br>(585) 546-7180 - Rochester<br>(845) 569-0770 - Newburgh<br>Orange, Dutchess, Sullivan, Monroe, Orleans, Genesee, Livingston, Ontario and Wayne Counties | Putnam County Housing<br>(845) 225-8493<br>Putnam County |
| Rockaway Development and Revitalization Corporation<br>(718) 327-5300<br>Queens County | Rockland Housing Action Coalition, Inc.<br>(845) 708-5799<br>Rockland County |
| Westchester Residential Opportunities, Inc.<br>(914) 428-4507<br>Westchester County | |

In addition, NeighborWorks® America distributed Federal grants directly to several counseling agencies in New York State to provide foreclosure prevention counseling. If you believe you are at risk of foreclosure, you may contact one of these organizations:

| Chautauqua Housing and Rehabilitation Improvement Corporation<br>(716) 753-4650<br>Chautauqua County | Community Development Corporation of Long Island, Inc.<br>(631) 471-1215 - Suffolk<br>(516) 867-7727 - Nassau<br>Long Island |
|---|---|
| Home HeadQuarters, Inc.<br>(315) 474-1939<br>Onondaga County | Housing Assistance Program of Essex County, Inc.<br>(518) 873-3691<br>Essex County |
| Hudson River Housing, Inc.<br>(845) 454-5176<br>Dutchess County | Neighborhood Housing Services of New York City, Inc.<br>(212) 519-2500<br>New York City |
| Opportunities for Chenango, Inc.<br>(607) 334-7114<br>Chenango County | St. Lawrence County Housing Council, Inc.<br>(315) 386-8576<br>St. Lawrence County |
| Troy Rehabilitation & Improvement Program, Inc.<br>(518) 690-0020<br>Rensselaer County | UNHS NeighborWorks HomeOwnership Center<br>(315) 724-4197<br>Oneida, Herkimer and Madison Counties |
| West Side Neighborhood Housing Services, Inc.<br>(716) 885-2344<br>Buffalo | |

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 352 of 866



**New York State Department of Financial Services**
One State Street Plaza, New York, NY 10004

Proof of Filing Statement

To Whom It May Concern:

Section 1306 of the Real Property Actions and Proceedings Law (RPAPL) requires lenders, assignees or mortgage loan servicers servicing loans on 1-to-4 family residential properties in New York State to file certain information with the Superintendent of the Department Financial Services within three days after the mailing of a 90-Day Pre-Foreclosure Notice.

The information below pertains to a filing submitted to the Department of Financial Services as required in Section 1306 of RPAPL. The information is presented as filed by the lender, assignee or mortgage loan servicer.

**Filer Information:**

| | |
|---|---|
| Name | : Select Portfolio Servicing, Inc. |
| Address | : 3815 So. West Temple |
| | Salt Lake City UT 84115 |

**Filing Information:**

| | |
|---|---|
| Tracking Number | : NYS3472007 |
| Mailing Date Step 1 | : 17-DEC-13 12.00.00.000 AM |
| Mailing Date Step 2 | : 01-JUL-14 12.00.00.000 AM |
| Judgment Date Step 3 | : |
| Filing Date Step 1 | : 18-DEC-13 12.00.00.000 AM |
| Filing Date Step 1 Orig | : 18-DEC-13 12.00.00.000 AM |
| Filing Date Step 2 | : 08-JUL-14 06.39.07.000 PM |
| Filing Date Step 3 | : |
| Owner Occupd at Jdgmnt | : |
| Property Type | : Condo |
| Property Address | : 1 EAST 62ND STREET 1A  NEW YORK |
| | NY 10021 |
| County | : New York |
| Date of Original Loan | : 22-DEC-05 12.00.00.000 AM |
| Amt of Original Loan | : 1500000 |
| Loan Number Step 1 | : ████████ |
| Loan Number Step 2 | : |
| Loan Reset Frequency | : Monthly |
| Loan Type | : 1st Lien |
| Loan Details | : Adjustable Rate |
| Loan Term | : 30 Year |
| Loan Modification | : No Modification |
| Days Delinquent | : Other |
| Borrower's Name | : ELIZABETH  HAZAN |
| Address | : 6913 VALENCIA DR |
| | MIAMI BCH 33109  0000 |
| Borrower's Phone No | : 0110000000 |
| Filing Status | : Step 2 Completed-Online |

Sincerely,

New York State Department of Financial Services

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 353 of 866

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE HARBORVIEW MORTGAGE LOAN TRUST 2006-1 MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-1,

**INDEX NO.: 850240/2014**

Plaintiff,

-against-

ELIZABETH HAZAN, REAL ESTATE HOLDINGS GROUP, L.D.C., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS A NOMINEE FOR AMERICA'S WHOLESALE LENDER, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-M, THE BOARD OF MANAGERS OF THE SPENCER CONDOMINIUM, NLG, LLC, NEW YORK CITY DEPARTMENT OF FINANCE, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, 1 EAST 62ND STREET APT 1A LLC, AARONSON SCHANTZ BEILEY P.A., NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, UNITED STATES OF AMERICA O/B/O INTERNAL REVENUE SERVICE, and "JOHN DOE #1" through "JOHN DOE #10", the last ten names being fictitious and unknown to the plaintiff, the person or parties intended being the persons or parties, if any, having or claiming an interest in or lien upon the mortgaged premises described in the Complaint,

Defendants.

---

## SUPPLEMENTAL SUMMONS AND AMENDED COMPLAINT

---

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
*Attorneys for Plaintiff*
*U.S. Bank National Association, as Trustee*
**10 Bank Street, Suite 700**
**White Plains, New York 10606**
**(914) 949-2909**
**Fax (914) 949-5424**

```
System:      5/17/2022  12:26:36 PM          Fisher Island Community Associ                  Page:   1
User Date:   5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT           User ID: carola
                                                 Receivables Management
```

Customer ID:  11213              Elizabeth Hazan

```
Ranges:                  From:                    To:
  Document Number        First                    Last
  Document Date          First                    Last
```

Sorted By:  Document Date                      Include:  Open

\* Voided

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID |
|--------|------|-----------------|--------------|----------|------------------|----------|--|-------------|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | Document Amount | | Amount Remaining |
| Open | SLS | 1ST Q 09 - 617 | | 1/1/2009 | SLSTE00000019 | 1ST Q 09 | | Z-US$ |
| 12/2/2008 | | 1ST Q 09 - 617 | | $0.00 | $0.00 | $5,409.00 | | $3,109.72 |
| Open | SLS | 2ND Q 09 - 978 | | 4/1/2009 | SLSTE00000024 | 2ND Q ASSESS | | Z-US$ |
| 3/2/2009 | | 2ND Q 09 - 978 | | $0.00 | $0.00 | $5,409.00 | | $5,409.00 |
| Open | SLS | Q03090605 | | 7/1/2009 | SLSTE00000027 | 3RD Q 2009 | | Z-US$ |
| 6/1/2009 | | Q03090605 | | $0.00 | $0.00 | $5,409.00 | | $5,409.00 |
| Open | SLS | Q04090603 | | 10/1/2009 | SLSTE00000029 | 0409Q-C | | Z-US$ |
| 9/1/2009 | | Q04090603 | | $0.00 | $0.00 | $5,409.00 | | $5,409.00 |
| Open | SLS | Q01101270 | | 1/1/2010 | SLSTE00000049 | 1STQ10 | | Z-US$ |
| 12/2/2009 | | Q01101270 | | $0.00 | $0.00 | $5,450.00 | | $5,450.00 |
| Open | SLS | QA0000578 | | 4/1/2010 | SLSTE00000069 | 2Q10 | | Z-US$ |
| 3/2/2010 | | QA0000578 | | $0.00 | $0.00 | $5,450.00 | | $5,450.00 |
| Open | SLS | QA0001934 | | 7/1/2010 | SLSTE00000096 | 3Q 10A | | Z-US$ |
| 6/1/2010 | | QA0001934 | | $0.00 | $0.00 | $5,450.00 | | $5,450.00 |
| Open | SLS | QA0002612 | | 10/1/2010 | SLSTE00000122 | 4Q 10 | | Z-US$ |
| 9/1/2010 | | QA0002612 | | $0.00 | $0.00 | $5,450.00 | | $5,450.00 |
| Open | SLS | QA0008020 | | 7/1/2012 | SLSTE00000330 | 3RD Q 12 | | Z-US$ |
| 6/1/2012 | | QA0008020 | | $0.00 | $0.00 | $5,722.50 | | $3,815.00 |
| Open | SLS | INV1007091 | | 8/5/2012 | RMSLS00001083 | 07062012ODRR | | Z-US$ |
| 7/6/2012 | | E.Hazan speeding 3/25 & 4/2 | | $0.00 | $0.00 | $200.00 | | $200.00 |
| Open | DR | DEBIT1000436 | | 8/31/2012 | RMSLS00001098 | 8/12PPI | | Z-US$ |
| 8/1/2012 | | 8/12 P. PLAN INTEREST | | $0.00 | $0.00 | $295.51 | | $295.51 |
| Open | DR | DEBIT1000444 | | 10/1/2012 | RMSLS00001121 | 0912PPINT | | Z-US$ |
| 9/1/2012 | | 09/12 P.Plan Interest | | $0.00 | $0.00 | $273.62 | | $273.62 |
| Open | SLS | QA0008695 | | 10/1/2012 | SLSTE00000359 | 4Q12ASS | | Z-US$ |
| 9/1/2012 | | QA0008695 | | $0.00 | $0.00 | $5,722.50 | | $5,722.50 |
| Open | DR | DEBIT1000469 | | 10/31/2012 | RMSLS00001139 | 1012PPINT | | Z-US$ |
| 10/1/2012 | | 10/12 P.Plan Interest | | $0.00 | $0.00 | $269.81 | | $269.81 |
| Open | DR | DEBIT1000481 | | 12/1/2012 | RMSLS00001157 | 1112PPI | | Z-US$ |
| 11/1/2012 | | 11/12 P. Plan Interest | | $0.00 | $0.00 | $248.55 | | $248.55 |
| Open | SLS | LEG11213112012 | | 12/20/2012 | SLSTE00000378 | 11202012LEG | | Z-US$ |
| 11/20/2012 | | LEG11213112012 | | $0.00 | $0.00 | $1,210.85 | | $1,210.85 |
| Open | DR | DEBIT1000488 | | 12/31/2012 | RMSLS00001178 | 1212PPINT | | Z-US$ |
| 12/1/2012 | | 12/12 P.Plan Interest | | $0.00 | $0.00 | $243.71 | | $243.71 |

A.101

```
System:     5/17/2022  12:26:36 PM          Fisher Island Community Associ              Page:    2
User Date:  5/17/2022              TRANSACTION BY CUSTOMER INQUIRY REPORT               User ID: carola
                                        Receivables Management


Customer ID:  11213                 Elizabeth Hazan


* Voided


Origin   Type  Document Number   Check Number      Due Date    Audit Trail Code  Batch ID           Currency ID
-----------------------------------------------------------------------------------------------------------------
  Doc Date       Description             Discount Amount     Writeoff Amount      Document Amount     Amount Remaining
-----------------------------------------------------------------------------------------------------------------
Open     SLS   QA0009375                            1/1/2013    SLSTE00000385     1ST 2013           Z-US$
 12/2/2012      QA0009375                 $0.00               $0.00                    $5,722.50          $5,722.50

Open     SLS   LC000879                            2/17/2013    SLSTE00000399     01182013ODLATE     Z-US$
 1/18/2013      LC000879                  $0.00               $0.00                      $286.12            $286.12

Open     SLS   FCHRG1003039                         3/9/2013    SLSTE00000405     0212FC             Z-US$
 2/7/2013       FCHRG1003039              $0.00               $0.00                      $845.95            $845.95

Open     SLS   LC1121302212013                     3/23/2013    SLSTE00000408     02212013ODLEG      Z-US$
 2/21/2013      LC1121302212013           $0.00               $0.00                    $1,575.00          $1,575.00

Open     SLS   QA0010051                            4/1/2013    SLSTE00000409     2ND Q 13           Z-US$
 3/2/2013       QA0010051                 $0.00               $0.00                    $5,722.50          $5,722.50

Open     SLS   FCHRG1003060                         4/3/2013    SLSTE00000411     0313FIN            Z-US$
 3/4/2013       FCHRG1003060              $0.00               $0.00                      $845.95            $845.95

Open     SLS   LEG1121303072013                     4/6/2013    SLSTE00000417     03072013LEGHAZ     Z-US$
 3/7/2013       LEG1121303072013          $0.00               $0.00                    $2,396.90          $2,396.90

Open     SLS   LEG11213032513                      4/24/2013    SLSTE00000424     03252013LEG        Z-US$
 3/25/2013      LEG11213032513            $0.00               $0.00                       $58.50             $58.50

Open     SLS   FCHRG1003076                         5/2/2013    SLSTE00000427     0413FC             Z-US$
 4/2/2013       FCHRG1003076              $0.00               $0.00                      $845.95            $845.95

Open     SLS   LC000946                            5/17/2013    SLSTE00000429     04172013LATE       Z-US$
 4/17/2013      LC000946                  $0.00               $0.00                      $286.12            $286.12

Open     SLS   FCHRG1003089                         6/5/2013    SLSTE00000439     0513FC             Z-US$
 5/6/2013       FCHRG1003089              $0.00               $0.00                      $931.79            $931.79

Open     SLS   QA0010720                            7/1/2013    SLSTE00000433     3Q 13              Z-US$
 6/1/2013       QA0010720                 $0.00               $0.00                    $5,544.12          $5,544.12

Open     SLS   FCHRG1003102                         7/5/2013    SLSTE00000440     0613FC             Z-US$
 6/5/2013       FCHRG1003102              $0.00               $0.00                      $931.79            $931.79

Open     SLS   FCHRG1003115                         8/1/2013    SLSTE00000444     0713FC             Z-US$
 7/2/2013       FCHRG1003115              $0.00               $0.00                      $931.79            $931.79

Open     SLS   LC001000                            8/18/2013    SLSTE00000447     0713LF             Z-US$
 7/19/2013      LC001000                  $0.00               $0.00                      $277.21            $277.21

Open     SLS   LG000263                            8/18/2013    SLSTE00000446     LEGAL              Z-US$
 7/19/2013      LG000263                  $0.00               $0.00                    $3,244.34          $3,244.34

Open     SLS   FCHRG1003124                         9/5/2013    SLSTE00000452     0813FC             Z-US$
 8/6/2013       FCHRG1003124              $0.00               $0.00                      $931.79            $931.79

Open     SLS   LG000269                            9/21/2013    SLSTE00000454     0713LG             Z-US$
 8/22/2013      LG000269                  $0.00               $0.00                       $75.00             $75.00

Open     SLS   QA0011391                           10/1/2013    SLSTE00000455     4Q 13              Z-US$
 9/1/2013       QA0011391                 $0.00               $0.00                    $5,544.12          $5,544.12
```

A.102

```
System:     5/17/2022  12:26:36 PM          Fisher Island Community Associ                    Page:    3
User Date:  5/17/2022                     TRANSACTION BY CUSTOMER INQUIRY REPORT            User ID: carola
                                                 Receivables Management


Customer ID:  11213                 Elizabeth Hazan


* Voided


Origin    Type  Document Number     Check Number        Due Date    Audit Trail Code  Batch ID          Currency ID
----------------------------------------------------------------------------------------------------------------------
  Doc Date       Description               Discount Amount      Writeoff Amount       Document Amount      Amount Remaining
----------------------------------------------------------------------------------------------------------------------
Open     SLS   FCHRG1003135                             10/4/2013    SLSTE00000457   913FC              Z-US$
  9/4/2013      FCHRG1003135                 $0.00                $0.00               $1,014.95            $1,014.95

Open     SLS   LG000275                                10/12/2013   SLSTE00000462   09.13 LEGAL        Z-US$
  9/12/2013     LG000275                     $0.00                $0.00                 $500.96              $500.96

Open     SLS   FCHRG1003151                             11/3/2013    SLSTE00000468   1013FC             Z-US$
  10/4/2013     FCHRG1003151                 $0.00                $0.00               $1,014.95            $1,014.95

Open     SLS   LC001049                                11/17/2013   SLSTE00000470   4QLC               Z-US$
  10/18/2013    LC001049                     $0.00                $0.00                 $277.21              $277.21

Open     SLS   LG000281                                11/29/2013   SLSTE00000472   1013LG             Z-US$
  10/30/2013    LG000281                     $0.00                $0.00                 $835.40              $835.40

Open     SLS   FCHRG1003170                             12/8/2013    SLSTE00000477   113FC              Z-US$
  11/8/2013     FCHRG1003170                 $0.00                $0.00               $1,098.11            $1,098.11

Open     SLS   LG000289                                12/30/2013   SLSTE00000487   1113LG             Z-US$
  11/30/2013    LG000289                     $0.00                $0.00                 $552.00              $552.00

Open     SLS   LG000296                                 1/1/2014    SLSTE00000489   1213LG             Z-US$
  12/2/2013     LG000296                     $0.00                $0.00               $3,039.33            $3,039.33

Open     SLS   QA0012069                                1/1/2014    SLSTE00000478   1 Q 14             Z-US$
  12/2/2013     QA0012069                    $0.00                $0.00               $5,956.05            $5,956.05

Open     SLS   FCHRG1003191                             1/3/2014    SLSTE00000486   1213FC             Z-US$
  12/4/2013     FCHRG1003191                 $0.00                $0.00               $1,098.11            $1,098.11

Open     SLS   FCHRG1003203                             2/9/2014    SLSTE00000497   0114FC             Z-US$
  1/10/2014     FCHRG1003203                 $0.00                $0.00               $1,179.25            $1,179.25

Open     SLS   LC001098                                 2/15/2014   SLSTE00000498   1Q14LC             Z-US$
  1/16/2014     LC001098                     $0.00                $0.00                 $297.80              $297.80

Open     SLS   LG000301                                 2/28/2014   SLSTE00000499   0114LG             Z-US$
  1/29/2014     LG000301                     $0.00                $0.00                 $510.00              $510.00

Open     SLS   FCHRG1003220                             3/8/2014    SLSTE00000500   0214FC             Z-US$
  2/6/2014      FCHRG1003220                 $0.00                $0.00               $1,268.59            $1,268.59

Open     SLS   LG000307                                 3/30/2014   SLSTE00000513   02/14 LEG          Z-US$
  2/28/2014     LG000307                     $0.00                $0.00                  $58.50               $58.50

Open     SLS   QA0012748                                4/1/2014    SLSTE00000508   2ND Q 14           Z-US$
  3/2/2014      QA0012748                    $0.00                $0.00               $5,956.05            $5,956.05

Open     SLS   FCHRG1003244                             4/5/2014    SLSTE00000514   03.14FC            Z-US$
  3/6/2014      FCHRG1003244                 $0.00                $0.00               $1,268.59            $1,268.59

Open     SLS   LG000311                                 4/30/2014   SLSTE00000518   0314LEG            Z-US$
  3/31/2014     LG000311                     $0.00                $0.00                 $141.00              $141.00

Open     SLS   FCHRG1003257                             5/3/2014    SLSTE00000517   0414FC             Z-US$
  4/3/2014      FCHRG1003257                 $0.00                $0.00               $1,268.59            $1,268.59
```

A.103

```
System:     5/17/2022  12:26:36 PM          Fisher Island Community Associ                Page:    4
User Date:  5/17/2022               TRANSACTION BY CUSTOMER INQUIRY REPORT          User ID: carola
                                          Receivables Management

Customer ID:  11213              Elizabeth Hazan

* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|---|---|---|---|---|---|---|---|---|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | LC001153 | | 5/16/2014 | SLSTE00000525 | 2Q14LC | | Z-US$ | |
| 4/16/2014 | | LC001153 | | $0.00 | $0.00 | | $297.80 | | $297.80 |
| Open | SLS | INV1009303 | | 5/30/2014 | RMSLS00001526 | 414 | | Z-US$ | |
| 4/30/2014 | | 04/14 LEGAL | | $0.00 | $0.00 | | $161.50 | | $161.50 |
| Open | SLS | FCHRG1003265 | | 6/4/2014 | SLSTE00000529 | 0514FC | | Z-US$ | |
| 5/5/2014 | | FCHRG1003265 | | $0.00 | $0.00 | | $1,268.59 | | $1,268.59 |
| Open | SLS | INV1009361 | | 6/30/2014 | RMSLS00001543 | 05.14 | | Z-US$ | |
| 5/31/2014 | | 05/14 Legal | | $0.00 | $0.00 | | $112.00 | | $112.00 |
| Open | SLS | QA0013422 | | 7/1/2014 | SLSTE00000530 | 3Q14 | | Z-US$ | |
| 6/1/2014 | | QA0013422 | | $0.00 | $0.00 | | $5,956.05 | | $5,956.05 |
| Open | SLS | FCHRG1003270 | | 7/6/2014 | SLSTE00000532 | 0614FC | | Z-US$ | |
| 6/6/2014 | | FCHRG1003270 | | $0.00 | $0.00 | | $1,357.93 | | $1,357.93 |
| Open | SLS | LG000313 | | 7/30/2014 | SLSTE00000542 | 0614LG | | Z-US$ | |
| 6/30/2014 | | LG000313 | | $0.00 | $0.00 | | $185.00 | | $185.00 |
| Open | SLS | FCHRG1003276 | | 8/2/2014 | SLSTE00000538 | 0714FC | | Z-US$ | |
| 7/3/2014 | | FCHRG1003276 | | $0.00 | $0.00 | | $1,357.93 | | $1,357.93 |
| Open | SLS | LC001210 | | 8/16/2014 | SLSTE00000543 | 0714LC | | Z-US$ | |
| 7/17/2014 | | LC001210 | | $0.00 | $0.00 | | $297.80 | | $297.80 |
| Open | SLS | FCHRG1003295 | | 9/5/2014 | SLSTE00000549 | 814FC | | Z-US$ | |
| 8/6/2014 | | FCHRG1003295 | | $0.00 | $0.00 | | $1,447.27 | | $1,447.27 |
| Open | SLS | QA0014089 | | 10/1/2014 | SLSTE00000551 | 4Q 14 | | Z-US$ | |
| 9/1/2014 | | QA0014089 | | $0.00 | $0.00 | | $5,956.05 | | $5,956.05 |
| Open | SLS | FCHRG1003317 | | 10/5/2014 | SLSTE00000557 | 0914FC | | Z-US$ | |
| 9/5/2014 | | FCHRG1003317 | | $0.00 | $0.00 | | $1,447.27 | | $1,447.27 |
| Open | SLS | LG000326 | | 10/30/2014 | SLSTE00000561 | 0914LG | | Z-US$ | |
| 9/30/2014 | | LG000326 | | $0.00 | $0.00 | | $243.00 | | $243.00 |
| Open | SLS | FCHRG1003332 | | 11/1/2014 | SLSTE00000560 | 1014FC | | Z-US$ | |
| 10/2/2014 | | FCHRG1003332 | | $0.00 | $0.00 | | $1,447.27 | | $1,447.27 |
| Open | SLS | LC001256 | | 11/16/2014 | SLSTE00000566 | 4Q14LC | | Z-US$ | |
| 10/17/2014 | | LC001256 | | $0.00 | $0.00 | | $297.80 | | $297.80 |
| Open | SLS | LG000332 | | 11/30/2014 | SLSTE00000567 | 1014LG | | Z-US$ | |
| 10/31/2014 | | LG000332 | | $0.00 | $0.00 | | $157.50 | | $157.50 |
| Open | SLS | FCHRG1003338 | | 12/5/2014 | SLSTE00000568 | 1114FC | | Z-US$ | |
| 11/5/2014 | | FCHRG1003338 | | $0.00 | $0.00 | | $1,447.27 | | $1,447.27 |
| Open | SLS | LG000338 | | 12/30/2014 | SLSTE00000576 | 11.14LG | | Z-US$ | |
| 11/30/2014 | | LG000338 | | $0.00 | $0.00 | | $58.50 | | $58.50 |
| Open | SLS | QA0014762 | | 1/1/2015 | SLSTE00000573 | 1Q15 | | Z-US$ | |
| 12/2/2014 | | QA0014762 | | $0.00 | $0.00 | | $6,293.04 | | $6,293.04 |

A.104

```
System:      5/17/2022   12:26:36 PM          Fisher Island Community Associ                    Page:    5
User Date:  5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                                Receivables Management


Customer ID:  11213                Elizabeth Hazan

* Voided

Origin   Type  Document Number    Check Number      Due Date   Audit Trail Code  Batch ID           Currency ID
-----------------------------------------------------------------------------------------------------------------------
  Doc Date       Description             Discount Amount      Writeoff Amount       Document Amount      Amount Remaining
-----------------------------------------------------------------------------------------------------------------------
Open     SLS   FCHRG1003347                          1/2/2015   SLSTE00000575    12.14FC              Z-US$
 12/3/2014     FCHRG1003347                          $0.00                $0.00          $1,536.66             $1,536.66

Open     SLS   FCHRG1003363                          2/6/2015   SLSTE00000582    0115FC               Z-US$
 1/7/2015      FCHRG1003363                          $0.00                $0.00          $1,536.66             $1,536.66

Open     SLS   LC001327                             2/15/2015   SLSTE00000589    0115LC               Z-US$
 1/16/2015     LC001327                              $0.00                $0.00            $314.65               $314.65

Open     SLS   INV1010077                            3/2/2015   RMSLS00001667    0115LG               Z-US$
 1/31/2015     01/15 LEGAL FEES                      $0.00                $0.00            $112.00               $112.00

Open     SLS   FCHRG1003383                          3/8/2015   SLSTE00000590    0215FC               Z-US$
 2/6/2015      FCHRG1003383                          $0.00                $0.00          $1,631.06             $1,631.06

Open     SLS   QA0015431                             4/1/2015   SLSTE00000598    2Q15                 Z-US$
 3/2/2015      QA0015431                             $0.00                $0.00          $6,293.04             $6,293.04

Open     SLS   FCHRG1003408                          4/4/2015   SLSTE00000601    0315FC               Z-US$
 3/5/2015      FCHRG1003408                          $0.00                $0.00          $1,631.06             $1,631.06

Open     SLS   LG000348                             4/30/2015   SLSTE00000613    0315LG               Z-US$
 3/31/2015     LG000348                              $0.00                $0.00            $379.50               $379.50

Open     SLS   FCHRG1003422                          5/2/2015   SLSTE00000608    0415FC               Z-US$
 4/2/2015      FCHRG1003422                          $0.00                $0.00          $1,631.06             $1,631.06

Open     SLS   LC001393                             5/16/2015   SLSTE00000615    2QLC                 Z-US$
 4/16/2015     LC001393                              $0.00                $0.00            $314.65               $314.65

Open     SLS   FCHRG1003434                          6/4/2015   SLSTE00000616    0515FC               Z-US$
 5/5/2015      FCHRG1003434                          $0.00                $0.00          $1,631.06             $1,631.06

Open     SLS   LG000353                             6/30/2015   SLSTE00000624    0515LEG              Z-US$
 5/31/2015     LG000353                              $0.00                $0.00            $901.00               $901.00

Open     SLS   QA0016096                             7/1/2015   SLSTE00000621    3Q 15                Z-US$
 6/1/2015      QA0016096                             $0.00                $0.00          $6,293.04             $6,293.04

Open     SLS   FCHRG1003444                          7/4/2015   SLSTE00000623    0615FC               Z-US$
 6/4/2015      FCHRG1003444                          $0.00                $0.00          $1,725.46             $1,725.46

Open     SLS   FCHRG1003456                          8/5/2015   SLSTE00000630    0715FC               Z-US$
 7/6/2015      FCHRG1003456                          $0.00                $0.00          $1,725.46             $1,725.46

Open     SLS   LC001457                             8/15/2015   SLSTE00000634    3Q15                 Z-US$
 7/16/2015     LC001457                              $0.00                $0.00            $314.65               $314.65

Open     SLS   LG000356                             8/30/2015   SLSTE00000635    715LG                Z-US$
 7/31/2015     LG000356                              $0.00                $0.00          $2,607.25             $2,607.25

Open     SLS   FCHRG1003474                          9/5/2015   SLSTE00000636    0815FC               Z-US$
 8/6/2015      FCHRG1003474                          $0.00                $0.00          $1,819.86             $1,819.86

Open     SLS   LG000360                             9/30/2015   SLSTE00000648    815LG                Z-US$
 8/31/2015     LG000360                              $0.00                $0.00            $243.50               $243.50
```

A.105

```
System:     5/17/2022   12:26:36 PM          Fisher Island Community Associ                    Page:   6
User Date:  5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT             User ID: carola
                                              Receivables Management


Customer ID:  11213                 Elizabeth Hazan


* Voided


Origin   Type  Document Number     Check Number        Due Date    Audit Trail Code  Batch ID              Currency ID
-------------------------------------------------------------------------------------------------------------------------
  Doc Date       Description               Discount Amount      Writeoff Amount      Document Amount     Amount Remaining
-------------------------------------------------------------------------------------------------------------------------
Open     SLS   QA0016762                               10/1/2015   SLSTE00000646    4Q15                  Z-US$
  9/1/2015       QA0016762                      $0.00               $0.00              $6,293.04            $6,293.04

Open     SLS   FCHRG1003495                            10/4/2015   SLSTE00000649    915FC                 Z-US$
  9/4/2015       FCHRG1003495                   $0.00               $0.00              $1,819.86            $1,819.86

Open     SLS   LG000367                               10/30/2015   SLSTE00000653    915LG                 Z-US$
  9/30/2015      LG000367                       $0.00               $0.00                $272.50              $272.50

Open     SLS   FCHRG1003510                            11/8/2015   SLSTE00000654    1015FC                Z-US$
  10/9/2015      FCHRG1003510                   $0.00               $0.00              $1,819.86            $1,819.86

Open     SLS   LC001521                               11/19/2015   SLSTE00000658    4Q15LC                Z-US$
  10/20/2015     LC001521                       $0.00               $0.00                $314.65              $314.65

Open     SLS   LG000373                               11/30/2015   SLSTE00000663    1015LG                Z-US$
  10/31/2015     LG000373                       $0.00               $0.00                $272.19              $272.19

Open     SLS   FCHRG1003534                            12/6/2015   SLSTE00000662    1115FC                Z-US$
  11/6/2015      FCHRG1003534                   $0.00               $0.00              $1,914.26            $1,914.26

Open     SLS   LG000379                               12/30/2015   SLSTE00000667    1115LG                Z-US$
  11/30/2015     LG000379                       $0.00               $0.00              $3,613.48            $3,613.48

Open     SLS   QA0017428                                1/1/2016   SLSTE00000665    1Q 16                 Z-US$
  12/2/2015      QA0017428                      $0.00               $0.00              $6,607.73            $6,607.73

Open     SLS   FCHRG1003570                             1/8/2016   SLSTE00000670    1215FC                Z-US$
  12/9/2015      FCHRG1003570                   $0.00               $0.00              $1,914.26            $1,914.26

Open     SLS   LG000384                                1/30/2016   SLSTE00000683    1215LG                Z-US$
  12/31/2015     LG000384                       $0.00               $0.00                $685.50              $685.50

Open     SLS   FCHRG1003589                             2/7/2016   SLSTE00000682    0116FC                Z-US$
  1/8/2016       FCHRG1003589                   $0.00               $0.00              $1,914.26            $1,914.26

Open     SLS   LC001590                                2/17/2016   SLSTE00000684    1Q16 LC               Z-US$
  1/18/2016      LC001590                       $0.00               $0.00                $330.39              $330.39

Open     SLS   LG000390                                 3/1/2016   SLSTE00000690    01.16LG               Z-US$
  1/31/2016      LG000390                       $0.00               $0.00              $2,382.50            $2,382.50

Open     SLS   FCHRG1003609                             3/6/2016   SLSTE00000686    0216FC                Z-US$
  2/5/2016       FCHRG1003609                   $0.00               $0.00              $2,013.38            $2,013.38

Open     SLS   LG000396                                3/30/2016   SLSTE00000701    02.16LG               Z-US$
  2/29/2016      LG000396                       $0.00               $0.00              $2,348.95            $2,348.95

Open     SLS   QA0018760                                4/1/2016   SLSTE00000692    2Q16-1                Z-US$
  3/2/2016       QA0018760                      $0.00               $0.00              $6,545.48            $6,545.48

Open     SLS   FCHRG1003643                             4/3/2016   SLSTE00000696    03.16FC               Z-US$
  3/4/2016       FCHRG1003643                   $0.00               $0.00              $2,013.38            $2,013.38

Open     SLS   LG000401                                4/30/2016   SLSTE00000708    3.16LG                Z-US$
  3/31/2016      LG000401                       $0.00               $0.00                $497.50              $497.50
```

A.106

```
System:    5/17/2022  12:26:36 PM              Fisher Island Community Associ                    Page:    7
User Date: 5/17/2022                        TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                                   Receivables Management


Customer ID:  11213                 Elizabeth Hazan


* Voided


Origin   Type  Document Number   Check Number      Due Date   Audit Trail Code  Batch ID         Currency ID
-----------------------------------------------------------------------------------------------------------------
  Doc Date       Description            Discount Amount     Writeoff Amount     Document Amount      Amount Remaining
-----------------------------------------------------------------------------------------------------------------
Open    SLS   FCHRG1003665                          5/5/2016   SLSTE00000702  04.16FC           Z-US$
  4/5/2016     FCHRG1003665                 $0.00               $0.00             $2,013.38            $2,013.38

Open    SLS   LC001638                            5/18/2016   SLSTE00000709  2Q16LC            Z-US$
  4/18/2016    LC001638                     $0.00               $0.00               $327.27              $327.27

Open    SLS   FCHRG1003686                          6/3/2016   SLSTE00000715  5.16FC            Z-US$
  5/4/2016     FCHRG1003686                 $0.00               $0.00             $2,111.56            $2,111.56

Open    SLS   LG000406                            6/30/2016   SLSTE00000726  05.16LG           Z-US$
  5/31/2016    LG000406                     $0.00               $0.00                $78.50               $78.50

Open    SLS   QA0019424                            7/1/2016   SLSTE00000717  3Q 16             Z-US$
  6/1/2016     QA0019424                    $0.00               $0.00             $6,545.48            $6,545.48

Open    SLS   FCHRG1003718                          7/3/2016   SLSTE00000725  06.16FC           Z-US$
  6/3/2016     FCHRG1003718                 $0.00               $0.00             $2,111.56            $2,111.56

Open    SLS   LG000408                            7/30/2016   SLSTE00000732  06.16LG           Z-US$
  6/30/2016    LG000408                     $0.00               $0.00                $19.50               $19.50

Open    SLS   FCHRG1003731                         8/11/2016   SLSTE00000733  07.16FC           Z-US$
  7/12/2016    FCHRG1003731                 $0.00               $0.00             $2,111.56            $2,111.56

Open    SLS   LC001695                            8/14/2016   SLSTE00000734  3QLC              Z-US$
  7/15/2016    LC001695                     $0.00               $0.00               $327.27              $327.27

Open    SLS   LG000412                            8/30/2016   SLSTE00000744  07.16LG           Z-US$
  7/31/2016    LG000412                     $0.00               $0.00               $419.00              $419.00

Open    SLS   FCHRG1003747                          9/3/2016   SLSTE00000741  08.16FC           Z-US$
  8/4/2016     FCHRG1003747                 $0.00               $0.00             $2,209.74            $2,209.74

Open    SLS   LG000417                            9/30/2016   SLSTE00000752  816LEG            Z-US$
  8/31/2016    LG000417                     $0.00               $0.00               $614.50              $614.50

Open    SLS   QA0020109                           10/1/2016   SLSTE00000746  4Q16              Z-US$
  9/1/2016     QA0020109                    $0.00               $0.00             $6,545.48            $6,545.48

Open    SLS   FCHRG1003772                         10/6/2016   SLSTE00000748  09.16FC           Z-US$
  9/6/2016     FCHRG1003772                 $0.00               $0.00             $2,209.74            $2,209.74

Open    SLS   LG000422                           10/30/2016   SLSTE00000759  9.16LG            Z-US$
  9/30/2016    LG000422                     $0.00               $0.00               $429.00              $429.00

Open    SLS   FCHRG1003787                         11/4/2016   SLSTE00000757  10.16FC           Z-US$
  10/5/2016    FCHRG1003787                 $0.00               $0.00             $2,209.74            $2,209.74

Open    SLS   LC001749                           11/17/2016   SLSTE00000760  10.16LC           Z-US$
  10/18/2016   LC001749                     $0.00               $0.00               $327.27              $327.27

Open    SLS   LG000428                           11/30/2016   SLSTE00000762  10.16LG           Z-US$
  10/31/2016   LG000428                     $0.00               $0.00               $175.00              $175.00

Open    SLS   FCHRG1003805                         12/2/2016   SLSTE00000763  11.16FC           Z-US$
  11/2/2016    FCHRG1003805                 $0.00               $0.00             $2,307.92            $2,307.92
```

A.107

```
System:      5/17/2022  12:26:36 PM          Fisher Island Community Associ                    Page:    8
User Date:  5/17/2022                     TRANSACTION BY CUSTOMER INQUIRY REPORT          User ID: carola
                                               Receivables Management


Customer ID:  11213                  Elizabeth Hazan


* Voided


Origin    Type  Document Number   Check Number      Due Date    Audit Trail Code  Batch ID            Currency ID
-----------------------------------------------------------------------------------------------------------------------
  Doc Date       Description                 Discount Amount       Writeoff Amount        Document Amount      Amount Remaining
-----------------------------------------------------------------------------------------------------------------------
Open     SLS   LG000431                        12/30/2016    SLSTE00000771   11.16LG             Z-US$
 11/30/2016    LG000431                            $0.00               $0.00              $68.00               $68.00

Open     SLS   QA0020794                        1/1/2017     SLSTE00000768   1ST Q 17            Z-US$
 12/2/2016     QA0020794                           $0.00               $0.00           $6,729.76            $6,729.76

Open     SLS   FCHRG1003833                     1/4/2017     SLSTE00000770   12.16FC             Z-US$
 12/5/2016     FCHRG1003833                        $0.00               $0.00           $2,307.92            $2,307.92

Open     SLS   LG000436                         1/29/2017    SLSTE00000785   12.16LG             Z-US$
 12/30/2016    LG000436                            $0.00               $0.00             $302.50              $302.50

Open     SLS   FCHRG1003849                     2/3/2017     SLSTE00000784   01.17FC             Z-US$
 1/4/2017      FCHRG1003849                        $0.00               $0.00           $2,307.92            $2,307.92

Open     SLS   LC001811                         2/16/2017    SLSTE00000787   01.17LC             Z-US$
 1/17/2017     LC001811                            $0.00               $0.00             $336.49              $336.49

Open     SLS   LG000439                         3/2/2017     SLSTE00000793   01.17LG             Z-US$
 1/31/2017     LG000439                            $0.00               $0.00             $174.50              $174.50

Open     SLS   FCHRG1003869                     3/11/2017    SLSTE00000794   02.17FC             Z-US$
 2/9/2017      FCHRG1003869                        $0.00               $0.00           $2,408.87            $2,408.87

Open     SLS   LG000443                         3/30/2017    SLSTE00000801   2.17LG              Z-US$
 2/28/2017     LG000443                            $0.00               $0.00             $536.00              $536.00

Open     SLS   QA0021480                        4/1/2017     SLSTE00000795   2 Q 17              Z-US$
 3/2/2017      QA0021480                           $0.00               $0.00           $6,729.76            $6,729.76

Open     SLS   FCHRG1003906                     4/2/2017     SLSTE00000798   03.17FC             Z-US$
 3/3/2017      FCHRG1003906                        $0.00               $0.00           $2,408.87            $2,408.87

Open     SLS   LG000445                         4/30/2017    SLSTE00000807   03.17LG             Z-US$
 3/31/2017     LG000445                            $0.00               $0.00             $195.00              $195.00

Open     SLS   FCHRG1003927                     5/6/2017     SLSTE00000806   04.17FC             Z-US$
 4/6/2017      FCHRG1003927                        $0.00               $0.00           $2,408.87            $2,408.87

Open     SLS   LC001880                         5/18/2017    SLSTE00000810   2QLC                Z-US$
 4/18/2017     LC001880                            $0.00               $0.00             $336.49              $336.49

Open     SLS   LG000449                         5/30/2017    SLSTE00000816   4.17LG              Z-US$
 4/30/2017     LG000449                            $0.00               $0.00              $39.00               $39.00

Open     SLS   FCHRG1003938                     6/2/2017     SLSTE00000815   5.17FC              Z-US$
 5/3/2017      FCHRG1003938                        $0.00               $0.00           $2,408.87            $2,408.87

Open     SLS   LG000453                         6/30/2017    SLSTE00000823   5.17LG              Z-US$
 5/31/2017     LG000453                            $0.00               $0.00              $29.00               $29.00

Open     SLS   QA0022167                        7/1/2017     SLSTE00000817   3Q17                Z-US$
 6/1/2017      QA0022167                           $0.00               $0.00           $6,729.76            $6,729.76

Open     SLS   FCHRG1003955                     7/2/2017     SLSTE00000821   6.17FC              Z-US$
 6/2/2017      FCHRG1003955                        $0.00               $0.00           $2,509.87            $2,509.87
```

A.108

```
System:      5/17/2022  12:26:36 PM              Fisher Island Community Associ                    Page:    9
User Date: 5/17/2022                        TRANSACTION BY CUSTOMER INQUIRY REPORT                  User ID: carola
                                                   Receivables Management


Customer ID:  11213              Elizabeth Hazan


* Voided


Origin  Type  Document Number    Check Number       Due Date    Audit Trail Code  Batch ID            Currency ID
----------------------------------------------------------------------------------------------------------------------
  Doc Date      Description             Discount Amount       Writeoff Amount       Document Amount    Amount Remaining
----------------------------------------------------------------------------------------------------------------------
Open    SLS   LG000457                                7/30/2017   SLSTE00000827    6/17 LG             Z-US$
  6/30/2017     LG000457                 $0.00                 $0.00                   $295.50            $295.50

Open    SLS   FCHRG1003979                            8/6/2017    SLSTE00000831    7.17FC              Z-US$
  7/7/2017      FCHRG1003979             $0.00                 $0.00                 $2,509.82          $2,509.82

Open    SLS   LC001940                                8/17/2017   SLSTE00000834    3Q17 LC             Z-US$
  7/18/2017     LC001940                 $0.00                 $0.00                   $336.49            $336.49

Open    SLS   LG000461                                8/30/2017   SLSTE00000839    7.17LG              Z-US$
  7/31/2017     LG000461                 $0.00                 $0.00                 $1,348.50          $1,348.50

Open    SLS   FCHRG1004002                            9/3/2017    SLSTE00000838    8.17FC              Z-US$
  8/4/2017      FCHRG1004002             $0.00                 $0.00                 $2,610.77          $2,610.77

Open    SLS   QA0022855                               10/1/2017   SLSTE00000840    4Q17                Z-US$
  9/1/2017      QA0022855                $0.00                 $0.00                 $6,729.76          $6,729.76

Open    SLS   FCHRG1004034                            10/5/2017   SLSTE00000843    9..17FC             Z-US$
  9/5/2017      FCHRG1004034             $0.00                 $0.00                 $2,610.77          $2,610.77

Open    SLS   LG000467                                10/30/2017  SLSTE00000853    9.17LG              Z-US$
  9/30/2017     LG000467                 $0.00                 $0.00                   $427.00            $427.00

Open    SLS   FCHRG1004048                            11/4/2017   SLSTE00000852    10.17FC             Z-US$
  10/5/2017     FCHRG1004048             $0.00                 $0.00                 $2,610.77          $2,610.77

Open    SLS   LC002007                                11/15/2017  SLSTE00000854    4QLC                Z-US$
  10/16/2017    LC002007                 $0.00                 $0.00                   $336.49            $336.49

Open    SLS   FCHRG1004063                            12/3/2017   SLSTE00000860    11.17FC             Z-US$
  11/3/2017     FCHRG1004063             $0.00                 $0.00                 $2,711.72          $2,711.72

Open    SLS   LG000475                                12/30/2017  SLSTE00000865    11.17LG             Z-US$
  11/30/2017    LG000475                 $0.00                 $0.00                   $887.00            $887.00

Open    SLS   QA0023545                               1/1/2018    SLSTE00000861    1ST Q 18            Z-US$
  12/2/2017     QA0023545                $0.00                 $0.00                 $6,729.76          $6,729.76

Open    SLS   FCHRG1004094                            1/6/2018    SLSTE00000864    12.17FC             Z-US$
  12/7/2017     FCHRG1004094             $0.00                 $0.00                 $2,711.72          $2,711.72

Open    SLS   LG000481                                1/30/2018   SLSTE00000875    12.17LG             Z-US$
  12/31/2017    LG000481                 $0.00                 $0.00                   $498.50            $498.50

Open    SLS   FCHRG1004118                            2/4/2018    SLSTE00000871    01.18FC             Z-US$
  1/5/2018      FCHRG1004118             $0.00                 $0.00                 $2,711.72          $2,711.72

Open    SLS   LC002083                                2/17/2018   SLSTE00000874    0118LC              Z-US$
  1/18/2018     LC002083                 $0.00                 $0.00                   $336.49            $336.49

Open    SLS   FCHRG1004151                            3/7/2018    SLSTE00000877    2.18 FC             Z-US$
  2/5/2018      FCHRG1004151             $0.00                 $0.00                 $2,812.67          $2,812.67

Open    SLS   LG000492                                3/30/2018   SLSTE00000886    1.18LG              Z-US$
  2/28/2018     LG000492                 $0.00                 $0.00                 $4,533.00          $4,533.00
```

```
System:     5/17/2022  12:26:36 PM          Fisher Island Community Associ                    Page:   10
User Date: 5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                               Receivables Management


Customer ID:  11213                Elizabeth Hazan


* Voided


Origin   Type  Document Number    Check Number      Due Date   Audit Trail Code  Batch ID           Currency ID
------------------------------------------------------------------------------------------------------------------
  Doc Date      Description            Discount Amount      Writeoff Amount       Document Amount    Amount Remaining
------------------------------------------------------------------------------------------------------------------
Open     SLS   QA0024229                                4/1/2018   SLSTE00000880     2Q18               Z-US$
  3/2/2018      QA0024229               $0.00                $0.00                 $6,729.76             $6,729.76

Open     SLS   FCHRG1004194                             4/4/2018   SLSTE00000882     3.18FC             Z-US$
  3/5/2018      FCHRG1004194            $0.00                $0.00                 $2,812.67             $2,812.67

Open     SLS   LG000498                                 4/30/2018  SLSTE00000890     3.18LG             Z-US$
  3/31/2018     LG000498                $0.00                $0.00                 $1,364.50             $1,364.50

Open     SLS   FCHRG1004222                             5/5/2018   SLSTE00000889     4.18FC             Z-US$
  4/5/2018      FCHRG1004222            $0.00                $0.00                 $2,812.67             $2,812.67

Open     SLS   LC002151                                 5/17/2018  SLSTE00000892     2Q18LC             Z-US$
  4/17/2018     LC002151                $0.00                $0.00                   $336.49               $336.49

Open     SLS   LG000504                                 5/30/2018  SLSTE00000898     4.18LG             Z-US$
  4/30/2018     LG000504                $0.00                $0.00                   $625.00               $625.00

Open     SLS   FCHRG1004234                             6/3/2018   SLSTE00000900     5.18FC             Z-US$
  5/4/2018      FCHRG1004234            $0.00                $0.00                 $2,812.67             $2,812.67

Open     SLS   LG000508                                 6/30/2018  SLSTE00000906     5.18LG             Z-US$
  5/31/2018     LG000508                $0.00                $0.00                    $50.00                $50.00

Open     SLS   QA0024916                                7/1/2018   SLSTE00000901     3Q18               Z-US$
  6/1/2018      QA0024916               $0.00                $0.00                 $6,729.76             $6,729.76

Open     SLS   FCHRG1004255                             7/6/2018   SLSTE00000904     6.18FC             Z-US$
  6/6/2018      FCHRG1004255            $0.00                $0.00                 $2,913.62             $2,913.62

Open     SLS   FCHRG1004293                             8/4/2018   SLSTE00000910     7.18FC             Z-US$
  7/5/2018      FCHRG1004293            $0.00                $0.00                 $2,913.62             $2,913.62

Open     SLS   FCHRG1004322                             9/6/2018   SLSTE00000917     8.18FC             Z-US$
  8/7/2018      FCHRG1004322            $0.00                $0.00                 $3,014.57             $3,014.57

Open     SLS   LG000514                                 9/30/2018  SLSTE00000923     8.18LF             Z-US$
  8/31/2018     LG000514                $0.00                $0.00                 $4,421.28             $4,421.28

Open     SLS   FCHRG1004347                             10/6/2018  SLSTE00000921     9.18FC             Z-US$
  9/6/2018      FCHRG1004347            $0.00                $0.00                 $3,014.57             $3,014.57

Open     SLS   LG000517                                 10/30/2018 SLSTE00000929     9.18LG             Z-US$
  9/30/2018     LG000517                $0.00                $0.00                 $2,363.50             $2,363.50

Open     SLS   QA0025541                                11/1/2018  SLSTE00000924     4Q18               Z-US$
  10/2/2018     QA0025541               $0.00                $0.00                 $8,407.95             $8,407.95

Open     SLS   FCHRG1004369                             11/3/2018  SLSTE00000927     10.18FC            Z-US$
  10/4/2018     FCHRG1004369            $0.00                $0.00                 $3,014.57             $3,014.57

Open     SLS   FCHRG1004386                             12/2/2018  SLSTE00000931     11.18FC            Z-US$
  11/2/2018     FCHRG1004386            $0.00                $0.00                 $3,014.57             $3,014.57

Open     SLS   LC002275                                 12/16/2018 SLSTE00000937     4QLC               Z-US$
  11/16/2018    LC002275                $0.00                $0.00                   $420.40               $420.40
```

A.110

```
System:     5/17/2022  12:26:36 PM            Fisher Island Community Associ                    Page:   11
User Date:  5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT                User ID: carola
                                                Receivables Management


Customer ID:  11213              Elizabeth Hazan


* Voided


Origin   Type  Document Number   Check Number        Due Date    Audit Trail Code  Batch ID            Currency ID
------------------------------------------------------------------------------------------------------------------------
  Doc Date      Description              Discount Amount      Writeoff Amount      Document Amount     Amount Remaining
------------------------------------------------------------------------------------------------------------------------
Open     SLS   LG000525                                12/30/2018  SLSTE00000945   11.18LG             Z-US$
11/30/2018     LG000525                      $0.00               $0.00             $2,554.00              $2,554.00

Open     SLS   QA0026343                               1/1/2019    SLSTE00000939   1Q19QA              Z-US$
12/2/2018      QA0026343                     $0.00               $0.00             $8,407.95              $8,407.95

Open     SLS   FCHRG1004411                            1/5/2019    SLSTE00000944   12.18FC             Z-US$
12/6/2018      FCHRG1004411                  $0.00               $0.00             $3,140.69              $3,140.69

Open     SLS   LG000531                                1/30/2019   SLSTE00000954   12.18 LG            Z-US$
12/31/2018     LG000531                      $0.00               $0.00               $679.00                $679.00

Open     SLS   FCHRG1004456                            2/3/2019    SLSTE00000948   1.19FC              Z-US$
1/4/2019       FCHRG1004456                  $0.00               $0.00             $3,140.69              $3,140.69

Open     SLS   LC002342                                2/15/2019   SLSTE00000955   1Q19 LC             Z-US$
1/16/2019      LC002342                      $0.00               $0.00               $420.40                $420.40

Open     SLS   FCHRG1004487                            3/8/2019    SLSTE00000956   2.19FC              Z-US$
2/6/2019       FCHRG1004487                  $0.00               $0.00             $3,266.81              $3,266.81

Open     SLS   LG000533                                3/30/2019   SLSTE00000969   2.19LG              Z-US$
2/28/2019      LG000533                      $0.00               $0.00             $1,936.50              $1,936.50

Open     SLS   QA0026909                               4/1/2019    SLSTE00000964   2NDQ19 QA           Z-US$
3/2/2019       QA0026909                     $0.00               $0.00             $8,541.79              $8,541.79

Open     SLS   FCHRG1004539                            4/3/2019    SLSTE00000967   3.19FC              Z-US$
3/4/2019       FCHRG1004539                  $0.00               $0.00             $3,266.81              $3,266.81

Open     SLS   LG000537                                4/30/2019   SLSTE00000979   3.19LG              Z-US$
3/31/2019      LG000537                      $0.00               $0.00             $4,966.50              $4,966.50

Open     SLS   FCHRG1004578                            5/5/2019    SLSTE00000976   4.19FC              Z-US$
4/5/2019       FCHRG1004578                  $0.00               $0.00             $3,266.81              $3,266.81

Open     SLS   LC002428                                5/17/2019   SLSTE00000980   2QLC                Z-US$
4/17/2019      LC002428                      $0.00               $0.00               $427.09                $427.09

Open     SLS   LG000543                                5/30/2019   SLSTE00000981   4.19LG              Z-US$
4/30/2019      LG000543                      $0.00               $0.00               $440.00                $440.00

Open     SLS   FCHRG1004603                            6/7/2019    SLSTE00000984   5.19FC              Z-US$
5/8/2019       FCHRG1004603                  $0.00               $0.00             $3,266.81              $3,266.81

Open     SLS   LG000548                                6/30/2019   SLSTE00000993   5.19LG              Z-US$
5/31/2019      LG000548                      $0.00               $0.00               $733.50                $733.50

Open     SLS   QA0027594                               7/1/2019    SLSTE00000986   3Q19OA              Z-US$
6/1/2019       QA0027594                     $0.00               $0.00             $8,541.79              $8,541.79

Open     SLS   FCHRG1004618                            7/5/2019    SLSTE00000989   6.19FC              Z-US$
6/5/2019       FCHRG1004618                  $0.00               $0.00             $3,394.94              $3,394.94

Open     SLS   LG000552                                7/30/2019   SLSTE00000998   6.19LG              Z-US$
6/30/2019      LG000552                      $0.00               $0.00               $753.00                $753.00
```

```
System:     5/17/2022  12:26:36 PM              Fisher Island Community Associ                      Page:   12
User Date:  5/17/2022                      TRANSACTION BY CUSTOMER INQUIRY REPORT                 User ID: carola
                                                  Receivables Management


Customer ID:  11213                    Elizabeth Hazan


* Voided


Origin   Type   Document Number     Check Number        Due Date    Audit Trail Code   Batch ID              Currency ID
------------------------------------------------------------------------------------------------------------------------
  Doc Date       Description                  Discount Amount        Writeoff Amount         Document Amount     Amount Remaining
------------------------------------------------------------------------------------------------------------------------
Open     SLS    FCHRG1004686                             8/4/2019    SLSTE00001002      7.19FC                Z-US$
  7/5/2019       FCHRG1004686                       $0.00                  $0.00              $3,394.94           $3,394.94

Open     SLS    LG000559                                8/30/2019   SLSTE00001005      7.19LG                Z-US$
  7/31/2019      LG000559                           $0.00                  $0.00              $9,043.85           $9,043.85

Open     SLS    FCHRG1004724                             9/1/2019    SLSTE00001009      8.19FC                Z-US$
  8/2/2019       FCHRG1004724                       $0.00                  $0.00              $3,523.07           $3,523.07

Open     SLS    LG000565                                9/30/2019   SLSTE00001015      8.19 M                Z-US$
  8/31/2019      LG000565                           $0.00                  $0.00                $144.07             $144.07

Open     SLS    QA0028416                               10/1/2019   SLSTE00001011      4Q19OA                Z-US$
  9/1/2019       QA0028416                          $0.00                  $0.00              $8,541.79           $8,541.79

Open     SLS    FCHRG1004766                            10/6/2019   SLSTE00001016      9.19FC                Z-US$
  9/6/2019       FCHRG1004766                       $0.00                  $0.00              $3,523.07           $3,523.07

Open     SLS    LG000574                               10/30/2019   SLSTE00001017      9.19MGC               Z-US$
  9/30/2019      LG000574                           $0.00                  $0.00              $2,227.50           $2,227.50

Open     SLS    FCHRG1004795                            11/1/2019   SLSTE00001018      10.19FC               Z-US$
  10/2/2019      FCHRG1004795                       $0.00                  $0.00              $3,523.07           $3,523.07

Open     SLS    LC002579                               11/16/2019   SLSTE00001022      4QLC                  Z-US$
  10/17/2019     LC002579                           $0.00                  $0.00                $427.09             $427.09

Open     SLS    LG000581                               11/30/2019   SLSTE00001023      10.19LG               Z-US$
  10/31/2019     LG000581                           $0.00                  $0.00                 $20.00              $20.00

Open     SLS    FCHRG1004821                            12/13/2019  SLSTE00001027      11.19FC               Z-US$
  11/13/2019     FCHRG1004821                       $0.00                  $0.00              $3,651.80           $3,651.80

Open     SLS    LG000593                               12/30/2019   SLSTE00001032      11.19LG               Z-US$
  11/30/2019     LG000593                           $0.00                  $0.00                $119.00             $119.00

Open     SLS    QA0029114                                1/1/2020   SLSTE00001030      1 Q 2020              Z-US$
  12/2/2019      QA0029114                          $0.00                  $0.00              $8,985.65           $8,985.65

Open     SLS    FCHRG1004855                             1/3/2020   SLSTE00001033      12.19FC               Z-US$
  12/4/2019      FCHRG1004855                       $0.00                  $0.00              $3,651.80           $3,651.80

Open     SLS    LG000600                                1/30/2020   SLSTE00001050      12.19LG               Z-US$
  12/31/2019     LG000600                           $0.00                  $0.00                 $73.50              $73.50

Open     SLS    FCHRG1004871                             2/6/2020   SLSTE00001049      1.20LG                Z-US$
  1/7/2020       FCHRG1004871                       $0.00                  $0.00              $3,651.80           $3,651.80

Open     SLS    INV1016194                               2/6/2020   RMSLS00002618      CLEAR                 Z-US$
  1/7/2020       Clearance 12/31/19                 $0.00                  $0.00                 $50.00               $0.00

Open     PMT    PMT1042376                                          RMCSH00004739      CLEAR.1               Z-US$
  1/7/2020       PMT1042376                         $0.00                  $0.00                ($50.00)              $0.00

Open     SLS    LC002677                                2/14/2020   SLSTE00001051      1Q20LC                Z-US$
  1/15/2020      LC002677                           $0.00                  $0.00                $449.28             $449.28
```

A.112

```
System:     5/17/2022   12:26:36 PM              Fisher Island Community Associ                    Page:    13
User Date:  5/17/2022                         TRANSACTION BY CUSTOMER INQUIRY REPORT               User ID: carola
                                                   Receivables Management


Customer ID:  11213                   Elizabeth Hazan


* Voided
```

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | Currency ID |
|--------|------|-----------------|--------------|----------|------------------|----------|-------------|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | Document Amount | Amount Remaining |
| Open | SLS | INV1016248 | | 2/29/2020 | RMSLS00002642 | 0130 | Z-US$ |
| 1/30/2020 | | Clearance Fee | | $0.00 | $0.00 | $50.00 | $0.00 |
| Open | PMT | PMT1042560 | | | RMCSH00004770 | CASH | Z-US$ |
| 1/30/2020 | | | | $0.00 | $0.00 | ($50.00) | $0.00 |
| Open | SLS | LG000606 | | 3/1/2020 | SLSTE00001056 | 1.20LG | Z-US$ |
| 1/31/2020 | | LG000606 | | $0.00 | $0.00 | $100.00 | $100.00 |
| Open | SLS | FCHRG1004894 | | 3/5/2020 | SLSTE00001055 | 2.20FC | Z-US$ |
| 2/4/2020 | | FCHRG1004894 | | $0.00 | $0.00 | $3,786.58 | $3,786.58 |
| Open | SLS | LG000614 | | 3/30/2020 | SLSTE00001067 | 220LG | Z-US$ |
| 2/29/2020 | | LG000614 | | $0.00 | $0.00 | $830.55 | $830.55 |
| Open | SLS | QA0029810 | | 4/1/2020 | SLSTE00001062 | 2NQ 20 OA | Z-US$ |
| 3/2/2020 | | QA0029810 | | $0.00 | $0.00 | $8,985.65 | $8,985.65 |
| Open | SLS | FCHRG1004935 | | 4/5/2020 | SLSTE00001068 | 3.20FC | Z-US$ |
| 3/6/2020 | | FCHRG1004935 | | $0.00 | $0.00 | $3,786.58 | $3,786.58 |
| Open | SLS | LG000628 | | 4/30/2020 | SLSTE00001075 | 320LG | Z-US$ |
| 3/31/2020 | | LG000628 | | $0.00 | $0.00 | $570.00 | $570.00 |
| Open | SLS | LG000621 | | 5/1/2020 | SLSTE00001073 | 4.20LG | Z-US$ |
| 4/1/2020 | | LG000621 | | $0.00 | $0.00 | $150.50 | $150.50 |
| Open | SLS | FCHRG1004967 | | 5/8/2020 | SLSTE00001072 | 4.20FC | Z-US$ |
| 4/8/2020 | | FCHRG1004967 | | $0.00 | $0.00 | $3,786.58 | $3,786.58 |
| Open | SLS | LC002761 | | 5/21/2020 | SLSTE00001074 | 2QLC | Z-US$ |
| 4/21/2020 | | LC002761 | | $0.00 | $0.00 | $449.28 | $449.28 |
| Open | SLS | LG000634 | | 5/31/2020 | SLSTE00001080 | 5.20LG | Z-US$ |
| 5/1/2020 | | LG000634 | | $0.00 | $0.00 | $34.00 | $34.00 |
| Open | SLS | FCHRG1004996 | | 6/5/2020 | SLSTE00001076 | 5.20FC | Z-US$ |
| 5/6/2020 | | FCHRG1004996 | | $0.00 | $0.00 | $3,786.58 | $3,786.58 |
| Open | SLS | QA0030372 | | 7/1/2020 | SLSTE00001081 | 3Q 20 | Z-US$ |
| 6/1/2020 | | QA0030372 | | $0.00 | $0.00 | $8,985.65 | $8,985.65 |
| Open | SLS | FCHRG1005028 | | 7/4/2020 | SLSTE00001086 | 6.20 FC | Z-US$ |
| 6/4/2020 | | FCHRG1005028 | | $0.00 | $0.00 | $3,921.36 | $3,921.36 |
| Open | SLS | LG000640 | | 7/30/2020 | SLSTE00001087 | 6.20LG | Z-US$ |
| 6/30/2020 | | LG000640 | | $0.00 | $0.00 | $68.00 | $68.00 |
| Open | SLS | FCHRG1005064 | | 8/1/2020 | SLSTE00001088 | 7.20FC | Z-US$ |
| 7/2/2020 | | FCHRG1005064 | | $0.00 | $0.00 | $3,921.36 | $3,921.36 |
| Open | SLS | LC002852 | | 8/16/2020 | SLSTE00001092 | 3QLC | Z-US$ |
| 7/17/2020 | | LC002852 | | $0.00 | $0.00 | $449.28 | $449.28 |
| Open | SLS | LG000647 | | 8/30/2020 | SLSTE00001093 | 7.20LG | Z-US$ |
| 7/31/2020 | | LG000647 | | $0.00 | $0.00 | $719.50 | $719.50 |

A.113

```
System:      5/17/2022  12:26:36 PM          Fisher Island Community Associ                    Page:   14
User Date:   5/17/2022                   TRANSACTION BY CUSTOMER INQUIRY REPORT            User ID: carola
                                              Receivables Management


Customer ID:  11213              Elizabeth Hazan


* Voided


Origin   Type  Document Number     Check Number      Due Date    Audit Trail Code  Batch ID           Currency ID
---------------------------------------------------------------------------------------------------------------------
  Doc Date       Description            Discount Amount      Writeoff Amount       Document Amount    Amount Remaining
---------------------------------------------------------------------------------------------------------------------
Open    SLS   FCHRG1005099                              9/4/2020    SLSTE00001096   8.20FC             Z-US$
 8/5/2020     FCHRG1005099                  $0.00            $0.00                  $4,056.14            $4,056.14

Open    SLS   LG000653                                 9/30/2020   SLSTE00001105   8.20LG             Z-US$
 8/31/2020    LG000653                       $0.00            $0.00                     $68.00               $68.00

Open    SLS   QA0031068                               10/1/2020   SLSTE00001098   4Q20 OA            Z-US$
 9/1/2020     QA0031068                      $0.00            $0.00                  $8,985.65            $8,985.65

Open    SLS   FCHRG1005154                             10/4/2020   SLSTE00001104   9.20FC             Z-US$
 9/4/2020     FCHRG1005154                  $0.00            $0.00                  $4,056.14            $4,056.14

Open    SLS   LG000662                                10/30/2020   SLSTE00001108   9.20LG             Z-US$
 9/30/2020    LG000662                       $0.00            $0.00                     $72.50               $72.50

Open    SLS   FCHRG1005194                             11/1/2020   SLSTE00001112   10.20FC            Z-US$
 10/2/2020    FCHRG1005194                  $0.00            $0.00                  $4,056.14            $4,056.14

Open    SLS   LC002936                                11/15/2020   SLSTE00001118   4 Q 20 LC          Z-US$
 10/16/2020   LC002936                       $0.00            $0.00                     $449.28              $449.28

Open    SLS   FCHRG1005231                             12/5/2020   SLSTE00001122   11.20FC            Z-US$
 11/5/2020    FCHRG1005231                  $0.00            $0.00                  $4,190.92            $4,190.92

Open    SLS   INV1017408                              12/30/2020   RMSLS00002863   1130               Z-US$
 11/30/2020   Clearance Fee                 $0.00            $0.00                      $50.00                $0.00

Open    PMT   PMT1045452                                          RMCSH00005116   120220 CASH        Z-US$
 12/2/2020    PMT1045452                     $0.00            $0.00                     ($50.00)               $0.00

Open    SLS   QA0031766                                1/1/2021   SLSTE00001125   1Q21               Z-US$
 12/2/2020    QA0031766                      $0.00            $0.00                  $9,409.18            $9,409.18

Open    SLS   FCHRG1005287                              1/7/2021   SLSTE00001129   12.20FC            Z-US$
 12/8/2020    FCHRG1005287                  $0.00            $0.00                  $4,190.92            $4,190.92

Open    SLS   INV1017440                               1/14/2021   RMSLS00002890   121520             Z-US$
 12/15/2020   Clearance Fee                 $0.00            $0.00                      $50.00                $0.00

Open    PMT   PMT1045518                                          RMCSH00005134   121520 CASH        Z-US$
 12/15/2020   PMT1045518                     $0.00            $0.00                     ($50.00)               $0.00

Open    SLS   FCHRG1005322                              2/5/2021   SLSTE00001134   1.21FC             Z-US$
 1/6/2021     FCHRG1005322                  $0.00            $0.00                  $4,190.92            $4,190.92

Open    SLS   LC003016                                 2/17/2021   SLSTE00001137   1Q21LC             Z-US$
 1/18/2021    LC003016                       $0.00            $0.00                     $470.46              $470.46

Open    SLS   FCHRG1005352                              3/20/2021   SLSTE00001142   2.21FC             Z-US$
 2/18/2021    FCHRG1005352                  $0.00            $0.00                  $4,332.06            $4,332.06

Open    SLS   QA0032460                                 4/1/2021   SLSTE00001143   2Q21 OA            Z-US$
 3/2/2021     QA0032460                      $0.00            $0.00                  $9,409.18            $9,409.18

Open    SLS   FCHRG1005392                              4/3/2021   SLSTE00001147   3.21FC             Z-US$
 3/4/2021     FCHRG1005392                  $0.00            $0.00                  $4,332.06            $4,332.06
```

A.114

```
System:     5/17/2022  12:26:36 PM          Fisher Island Community Associ                      Page:    15
User Date:  5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT               User ID: carola
                                               Receivables Management


Customer ID:  11213              Elizabeth Hazan

* Voided

Origin   Type  Document Number    Check Number       Due Date    Audit Trail Code  Batch ID          Currency ID
----------------------------------------------------------------------------------------------------------------
  Doc Date      Description            Discount Amount       Writeoff Amount       Document Amount    Amount Remaining
----------------------------------------------------------------------------------------------------------------
Open    SLS   LG000683                                 4/30/2021   SLSTE00001151   3.21LG            Z-US$
  3/31/2021   LG000683                      $0.00                 $0.00                    $73.00              $73.00

Open    SLS   FCHRG1005422                              5/2/2021   SLSTE00001150   4.21FC            Z-US$
  4/2/2021    FCHRG1005422                  $0.00                 $0.00                 $4,332.06           $4,332.06

Open    SLS   LC003101                                5/15/2021   SLSTE00001155   2Q21LC            Z-US$
  4/15/2021   LC003101                      $0.00                 $0.00                   $470.46             $470.46

Open    SLS   LG000687                                5/30/2021   SLSTE00001158   4.21LG            Z-US$
  4/30/2021   LG000687                      $0.00                 $0.00                   $431.50             $431.50

Open    SLS   FCHRG1005448                             6/9/2021   SLSTE00001159   5.21FC            Z-US$
  5/10/2021   FCHRG1005448                  $0.00                 $0.00                 $4,473.20           $4,473.20

Open    SLS   QA0033315                                7/1/2021   SLSTE00001163   3Q 21 OA          Z-US$
  6/1/2021    QA0033315                     $0.00                 $0.00                 $9,409.18           $9,409.18

Open    SLS   FCHRG1005484                             7/2/2021   SLSTE00001167   6.21FC            Z-US$
  6/2/2021    FCHRG1005484                  $0.00                 $0.00                 $4,473.20           $4,473.20

Open    SLS   FCHRG1005513                             8/1/2021   SLSTE00001173   7.21FC            Z-US$
  7/2/2021    FCHRG1005513                  $0.00                 $0.00                 $4,473.20           $4,473.20

Open    SLS   LC003178                                8/14/2021   SLSTE00001175   3QLC              Z-US$
  7/15/2021   LC003178                      $0.00                 $0.00                   $470.46             $470.46

Open    SLS   FCHRG1005537                             9/8/2021   SLSTE00001179   8.21FC            Z-US$
  8/9/2021    FCHRG1005537                  $0.00                 $0.00                 $4,614.34           $4,614.34

Open    SLS   QA0033890                               10/1/2021   SLSTE00001181   4Q21 OA           Z-US$
  9/1/2021    QA0033890                     $0.00                 $0.00                 $9,409.18           $9,409.18

Open    SLS   FCHRG1005579                            10/2/2021   SLSTE00001186   9.21FIN           Z-US$
  9/2/2021    FCHRG1005579                  $0.00                 $0.00                 $4,614.34           $4,614.34

Open    SLS   LG000702                               10/30/2021   SLSTE00001191   9.21LG            Z-US$
  9/30/2021   LG000702                      $0.00                 $0.00                   $492.00             $492.00

Open    SLS   FCHRG1005608                            11/4/2021   SLSTE00001190   10.21FC           Z-US$
  10/5/2021   FCHRG1005608                  $0.00                 $0.00                 $4,614.34           $4,614.34

Open    SLS   LC003238                               11/14/2021   SLSTE00001194   4QLC              Z-US$
  10/15/2021  LC003238                      $0.00                 $0.00                   $470.46             $470.46

Open    SLS   LG000707                               11/30/2021   SLSTE00001203   10.21             Z-US$
  10/31/2021  LG000707                      $0.00                 $0.00                   $199.50             $199.50

Open    SLS   FCHRG1005633                           12/18/2021   SLSTE00001204   11.21FC           Z-US$
  11/18/2021  FCHRG1005633                  $0.00                 $0.00                 $4,755.48           $4,755.48

Open    SLS   LG000710                               12/30/2021   SLSTE00001217   11.21LG           Z-US$
  11/30/2021  LG000710                      $0.00                 $0.00                    $73.00              $73.00

Open    SLS   QA0034777                                1/1/2022   SLSTE00001210   1Q 22 OA          Z-US$
  12/2/2021   QA0034777                     $0.00                 $0.00                 $9,809.37           $9,809.37
```

A.115

```
System:     5/17/2022  12:26:36 PM              Fisher Island Community Associ                    Page:   16
User Date:  5/17/2022                     TRANSACTION BY CUSTOMER INQUIRY REPORT                   User ID: carola
                                                Receivables Management


Customer ID:  11213                     Elizabeth Hazan


* Voided


Origin   Type  Document Number    Check Number       Due Date    Audit Trail Code  Batch ID           Currency ID
---------------------------------------------------------------------------------------------------------------------
   Doc Date      Description              Discount Amount     Writeoff Amount       Document Amount      Amount Remaining
---------------------------------------------------------------------------------------------------------------------
Open     SLS   FCHRG1005674                              1/6/2022    SLSTE00001222   12.21FC            Z-US$
  12/7/2021     FCHRG1005674                $0.00            $0.00          $4,755.48          $4,755.48

Open     SLS   INV1018284                               2/3/2022    RMSLS00003365   BANK DEP 010422    Z-US$
   1/4/2022     Clearance 01/04/22          $0.00            $0.00            $150.00              $0.00

Open     PMT   PMT1049860                                          RMCSH00005644   010422 CASH        Z-US$
   1/4/2022                                 $0.00            $0.00           ($150.00)             $0.00

Open     SLS   FCHRG1005699                              2/6/2022    SLSTE00001223   1.22FC             Z-US$
   1/7/2022     FCHRG1005699                $0.00            $0.00          $4,755.48          $4,755.48

Open     SLS   LC003316                                 2/18/2022    SLSTE00001225   1Q22 LC            Z-US$
  1/19/2022     LC003316                    $0.00            $0.00            $490.47            $490.47

Open     SLS   INV1018335                               2/27/2022    RMSLS00003410   CLRCE FEE          Z-US$
  1/28/2022     Clearance Fee               $0.00            $0.00            $150.00              $0.00

Open     PMT   PMT1050359                                          RMCSH00005683   012822 CASH        Z-US$
  1/28/2022                                 $0.00            $0.00           ($150.00)             $0.00

Open     SLS   LG000716                                  3/2/2022    SLSTE00001229   1/22 LG            Z-US$
  1/31/2022     LG000716                    $0.00            $0.00            $779.00            $779.00

Open     SLS   FCHRG1005730                              3/5/2022    SLSTE00001228   2.22FC             Z-US$
   2/3/2022     FCHRG1005730                $0.00            $0.00          $4,902.62          $4,902.62

Open     SLS   LG000721                                 3/30/2022    SLSTE00001238   2.22LG             Z-US$
  2/28/2022     LG000721                    $0.00            $0.00          $1,470.00          $1,470.00

Open     SLS   QA0035520                                 4/1/2022    SLSTE00001232   2Q 22 OA           Z-US$
   3/2/2022     QA0035520                   $0.00            $0.00          $9,809.37          $9,809.37

Open     SLS   FCHRG1005777                              4/3/2022    SLSTE00001237   3.22 FIN           Z-US$
   3/4/2022     FCHRG1005777                $0.00            $0.00          $4,902.62          $4,902.62

Open     SLS   LG000729                                 4/30/2022    SLSTE00001247   3.22 LG            Z-US$
  3/31/2022     LG000729                    $0.00            $0.00            $135.00            $135.00

Open     SLS   FCHRG1005812                              5/4/2022    SLSTE00001245   4.22FC             Z-US$
   4/4/2022     FCHRG1005812                $0.00            $0.00          $4,902.62          $4,902.62

Open     SLS   LC003391                                 5/18/2022    SLSTE00001248   2QLC               Z-US$
  4/18/2022     LC003391                    $0.00            $0.00            $490.47            $490.47

Open     SLS   FCHRG1005840                              6/8/2022    SLSTE00001251   5.22 FC            Z-US$
   5/9/2022     FCHRG1005840                $0.00            $0.00          $5,049.76          $5,049.76

                                                                             --------------------  --------------------
Total Documents:  299                                         Totals:            $734,340.35          $730,133.57
                                                                             ====================  ====================
```

A.116

**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2022041900087017001E07F0

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 2 |
|---|---|---|
| **Document ID: 2022041900087017** | Document Date: 04-01-2022 | Preparation Date: 04-19-2022 |
| Document Type: FEDERAL LIEN-IRS | | Federal Lien Serial Number:451854922 |
| Document Page Count: 1 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| INTERNAL REVENUE SERVICE<br>135 HIGH STREET, STOP 155<br>HARTFORD, CT 06103<br>800-913-6050<br>ACRIS_LIENS@FINANCE.NYC.GOV | INTERNAL REVENUE SERVICE<br>CINCINNATI IRS CAMPUS<br>P.O. BOX 145595<br>CINCINNATI, OH 45250 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|

**Property Type:**

### CROSS REFERENCE DATA

**CRFN:**   2015000353514

### PARTIES

| DEBTOR: | SECURED PARTY: |
|---|---|
| LIZA HAZAN<br>6913 VALENCIA DRIVE<br>FISHER ISLAND, FL 33109 | INTERNAL REVENUE SERVICE<br>135 HIGH STREET, STOP 155<br>HARTFORD, CT 06103 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed        04-19-2022 15:01 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | EXEMPT | **2022000163361** | |
| Affidavit Fee: | $ | 0.00 | *City Register Official Signature* | |

A.117

25986819 *** REFILED NOTICE

17505

Form **668-F**
(March 2016)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien Refile

Recorded: 10/02/2015  14:47 201500035314

| Area: SMALL BUSINESS/SELF EMPLOYED AREA #3 Lien Unit Phone: (800) 913-6050 | Original Serial Number | For Use by Recording Office |
|---|---|---|
| | 177026715 | |

**In accordance with section 6323(g) of the Internal Revenue Code, the Notice of Federal Tax Lien originally filed on** September 29, 2015 **is hereby refiled with regard to the taxpayer and assessments identified below.**

Name of Taxpayer  LIZA HAZAN

Address  6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

| Kind of Tax (a) | Tax Period Ended (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2007 | XXX-XX-7473 | 05/21/2012 | 06/20/2032 | 26000.63 |

### Notice of Federal Tax Lien Refile

Refile Serial Number  451854922        Identifying Number*              Date 04/01/2022

Current Taxpayer Name*

Current Address*

Place of Refiling      New York

Signature for  D STEWART

Title      INSOLVENCY SPEC        (470) 639-2945

*If different from original notice of lien

Original Place of Filing

Register Office
New York County
New York, NY 10038

Total of Refile  $        26000.63

The original notice was prepared and executed at  MANHATTAN, NY                              , on this,

the      17th    day of    September   , 2015 .

| Signature for E. ROSAS | Title REVENUE OFFICER 23-02-1910 |
|---|---|

Catalog Number 16742R            www.irs.gov            Form **668-F** (Rev. 3-2016)

Part 1 - Recording Office

A.118

35-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 REFILED NOTICE
1654

| Form **668-F**<br>(March 2016) | Department of the Treasury - Internal Revenue Service<br>## Notice of Federal Tax Lien Refile |
|---|---|

Recorded: 10/11/2012 28308  10:23 3207 2012R0723885

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Original Serial Number<br><br>896125312 | For Use by Recording Office |
|---|---|---|

In accordance with section 6323(g) of the Internal Revenue Code, the Notice of Federal Tax Lien originally filed on October 10, 2012 is hereby refiled with regard to the taxpayer and assessments identified below.



CFN 2022R0348650
OR Bk 33157 Pg 4716; (1 pg)
04/27/2022 09:56:29
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Name of Taxpayer  LIZA E HAZAN

Address        11737 NW 11TH ST
               PEMBROKE PNES, FL 33026-4340

| Kind of Tax<br>(a) | Tax Period Ended<br>(b) | Identifying Number<br>(c) | Date of Assessment<br>(d) | Last Day for Refiling<br>(e) | Unpaid Balance of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2007 | ▓▓▓▓▓▓▓ | 05/21/2012 | 06/20/2032 | 17382.28 |

### Notice of Federal Tax Lien Refile

Refile Serial Number 452371222          Identifying Number* _____  Date 04/13/2022
Current Taxpayer Name* _____
Current Address* _____
Place of Refiling     Dade _____
                      Signature for D STEWART
                      Title   INSOLVENCY SPEC       (470) 639-2945
*If different from original notice of lien

| Original Place of Filing<br><br>County Courthouse<br>Dade County<br>Miami, FL 33130 | Total of Refile | $ | 17382.28 |
|---|---|---|---|

The original notice was prepared and executed at  BALTIMORE, MD _____ , on this,

the ____26th____ day of __September__, __2012__.

| Signature<br><br>for E. ROSAS | Title<br>REVENUE OFFICER<br>23-02-1910 |
|---|---|

Catalog Number 16742R        www.irs.gov        Form **668-F** (Rev. 3-2016)

**Part 1 - Recording Office**

A.119

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 373 of 866

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

      Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

      Defendants.

_____/

## **COMPLAINT**

Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., a Florida not-for-profit corporation ("ASSOCIATION" or "Plaintiff"), by and through its undersigned counsel, hereby sues the Defendants, ELIZABETH HAZAN ("HAZAN"), an individual; SEAN NEIL MEEHAN, as spouse of HAZAN ("MEEHAN") an individual; 6913 VALENCIA, LLC ("6913 VALENCIA"), a Florida limited liability company; and JOHN DOE and JANE DOE, as unknown tenants or occupants ("TENANTS"), and alleges as follows:

## **GENERAL ALLEGATIONS**

1.     This Honorable Court has jurisdiction pursuant to § 26.012(2), Fla. Stat., as this is an action to foreclose a claim of lien for unpaid assessments.

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

2.      The ASSOCIATION is a Florida corporation not-for-profit, operating pursuant to the provisions of Chapter 720, Florida Statutes. The ASSOCIATION is responsible for managing the affairs of Valencia Estates, a residential community in Miami-Dade County, Florida, pursuant to its Declaration of Covenants and Restrictions ("Declaration"), recorded in the Public Records of Miami-Dade County, Florida, on February 6, 2003, at ORB 21004, Page 390, as amended from time to time.

3.      Defendant HAZAN, is over the age of eighteen (18) years, is a resident of Miami-Dade County, Florida, and is otherwise *sui juris.*  HAZAN is the record owner of the real property forming the subject of this action.

4.      Defendant MEEHAN is HAZAN's spouse, is over the age of eighteen (18) years, is believed to be a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

5.      Defendant 6913 VALENCIA is a Florida limited liability company that is believed to still own and hold a second mortgage on the Subject Property, recorded in the public records of Miami-Dade County, Florida. According to online Florida public records, Defendant 6913 VALENCIA's Manager and Authorized Representative is Defendant HAZAN.

6.      Defendants, TENANTS, if such persons exist, are residents of Miami-Dade County, Florida, who are over the age of eighteen (18) years, and are otherwise *sui juris*.

7.      Venue is appropriate in Miami-Dade County, Florida because:

(a)      The real property forming the subject of this action is located in Miami-Dade County, Florida;

(b)      The causes of action asserted herein arose in Miami-Dade County, Florida;

(c)      HAZAN is the owner of the Subject Property (hereinafter defined), and as such is a member of the ASSOCIATION;

**HABER LAW, P.A.**
A.121

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

(d)    Defendants, MEEHAN and 6913 VALENCIA, hold or may claim to hold interests encumbering the Subject Property which is located in Miami-Dade County, Florida;

(e)    Defendants, TENANTS, if they exist, reside in the Subject Property; and

(f)    This is an action to foreclose a Claim of Lien upon on the following described real property located in Miami-Dade County, Florida (the "Subject Property"):

> Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.

> a/k/a 6913 Valencia Drive, Fisher Island, FL 33109.

8.    Pursuant to § 720.3085, Fla. Stat. and Article 6 of the Association's Declaration, HAZAN is required to pay all assessments that are levied by the ASSOCIATION against the Subject Property as they become due and payable. A true and correct copy of Article 6 of the Declaration is attached hereto as **Exhibit "1"** and incorporated herein by reference.

9.    Additionally, § 720.3085, Fla. Stat. and Article 6 of the Declaration require that HAZAN pay interest at the rate of eighteen percent (18%) per annum on the balance of all unpaid maintenance assessments, along with administrative late fees in the amount of $25.00 for each monthly assessment installment that is not paid within fifteen (15) days of its due date, plus costs and attorney's fees incurred by the ASSOCIATION incident to the collections process. *See* **Exhibit "1"**.

10.    On or about August 2, 2013, JPMorgan Chase Bank, N.A. ("JPMorgan") filed an action against HAZAN to foreclose the first mortgage on the Subject Property, Case No.: 2013-

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

025902-CA-01 ("Bank Foreclosure"). The Bank Foreclosure is still pending in Miami-Dade County Circuit Court.

11.      On or about January 11, 2016, HAZAN filed for Chapter 11 bankruptcy in the Southern District of Florida, Case No. 16-10389-AJC ("Bankruptcy Action"). In the Bankruptcy Action, the ASSOCIATION and HAZAN entered into an agreement regarding the ASSOCIATION's claim for past-due assessments and related charges due at that time. True and correct copies of the Stipulation of Settlement for Claim 10 executed by the ASSOCIATION and HAZAN on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (hereinafter collectively the "Stipulation") are attached hereto as **Composite Exhibit "2"** and incorporated herein by reference.

12.      In addition to her obligations under Article 6 of the Association's Declaration and § 720.3085, Fla. Stat., the Stipulation further requires HAZAN to continue to pay all post-petition, ongoing monthly and/or special assessments to the ASSOCIATION. *See* **Composite Exhibit "2"** at Para. 6. Failure to pay such amounts entitles the ASSOCIATION to "all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same." *Id.* at Para. 7.

13.      Thus, even though the Bankruptcy Action is still pending in that HAZAN is still making payments pursuant to her Bankruptcy Plan, the parties have already agreed and the Bankruptcy Court has already approved the filing of a new lien and foreclosure action with respect to post-petition assessments, which is what the ASSOCIATION's seeks herein.

14.      HAZAN has failed or otherwise refused to fully and timely pay the assessments levied by the ASSOCIATION against the Subject Property and the charges related thereto as same have become due and payable, since approximately August 2019 through the present, in an amount

**HABER LAW, P.A.**
A.123

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

currently exceeding $61,000.00, after application of payments received to date in accordance with

§ 720.3085(3)(b), Fla. Stat., which amount continues to accrue.

15.     All conditions precedent to the filing of this action have been performed, occurred,

or were otherwise waived.

16.     As a result of HAZAN's failure to pay assessments and related charges resulting

from such nonpayment, the ASSOCIATION has been required to retain the undersigned counsel

and is obligated to pay a reasonable fee thereto.

17.     Pursuant to §§ 720.305 and 720.3085, Fla. Stat., and the Association's Declaration

at Article 6, the ASSOCIATION is entitled to be reimbursed its attorney's fees and costs incurred

in this action.

## COUNT I
## FORECLOSURE OF LIEN

18.     Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained

in Paragraphs 1 through 17 above as if fully set forth herein.

19.     This is an action to foreclose the Claim of Lien (hereinafter defined) against the

Subject Property.

20.     HAZAN has failed or otherwise refused to pay the assessments levied by the

ASSOCIATION against the Subject Property and the charges related thereto as same have become

due and payable, since approximately August 2019 through the present, in an amount currently

exceeding $61,000.00, after application of payments received to date in accordance with §

720.3085(3)(b), Fla. Stat., which amount continues to accrue.

21.     On or about January 4, 2021, and in accordance with § 720.3085, Fla. Stat., the

ASSOCIATION, by and through its undersigned counsel, sent HAZAN, by regular U.S. and

certified mail, return receipt requested, and via e-mail, a Notice of Intent to File/Record a Claim

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

of Lien ("Notice of Intent to Lien") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION.  A true and correct copy of the Notice of Intent to Lien is attached hereto as **Exhibit "3"** and incorporated herein by reference.

22.     HAZAN failed or otherwise refused to pay the amounts set forth in the Notice of Intent to Lien within forty-five (45) days thereof. As a result, and in accordance with § 720.3085, Fla. Stat. and the Declaration, on March 24, 2021, the ASSOCIATION recorded a Claim of Lien against the Subject Property in ORB 32413 at Pages 4637-38, of the public records of Miami-Dade County, Florida (the "Claim of Lien"). A true and correct copy of the Claim of Lien is attached hereto as **Exhibit "4"** and incorporated herein by reference.

23.     Pursuant to F.S. §720.3085(5)(b), the ASSOCIATION was not required to send HAZAN a forty-five (45) day Notice of Intent to Foreclose its Claim of Lien due to the pending Bank Foreclosure as well as the pending Bankruptcy. Nonetheless, on or about April 5, 2021, in accordance with § 720.3085, Fla. Stat., the ASSOCIATION, by and through its undersigned counsel, sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Notice of Intent to Foreclose Claim of Lien ("Notice of Intent to Foreclose") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION.  A true and correct copy of the Notice of Intent to Foreclose is attached hereto as **Exhibit "5"** and incorporated herein by reference.

24.     In addition, on February 7, 2022, the ASSOCIATION sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail, a Supplemental Notice of Intent to Foreclose Claim of Lien ("Supplemental Notice of Intent to Foreclose") to the Subject Property, which is also HAZAN's last address on file with the ASSOCIATION.  A true and correct copy of

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

the Supplemental Notice of Intent to Foreclose is attached hereto as **Exhibit "6"** and incorporated herein by reference.

25.     As set forth in § 720.3085, Fla. Stat. and the Declaration, the Claim of Lien secures all unpaid assessments, interest, late fees, collection costs, and attorneys' fees and costs incident to the collections process set forth therein and that have and will come due subsequent to its recording through the entry of a final judgment in this action.

26.     Further, pursuant to § 720.3085(1), the ASSOCIATION's lien rights and Claim of Lien are effective from and shall relate back to the date of recording of the ASSOCIATION's original Declaration, i.e. - - February 6, 2003.

27.     To date, HAZAN has failed or otherwise refused to satisfy the Claim of Lien, and thus pursuant to § 720.3085, Fla. Stat. and Article 6 of the Declaration, the ASSOCIATION is now entitled to foreclose the Claim of Lien in the same manner that a mortgage is foreclosed.

28.     The ASSOCIATION's interest in the Subject Property pursuant to the Declaration and the Claim of Lien is superior to any right, title or interest of Defendant or any party claiming by, through or under HAZAN to the Subject Property.

29.     Defendant MEEHAN may claim some interest in or lien upon the Subject Property as an occupant or having a homestead interest in same. However, MEEHAN's specific interest in the Subject Property and any other right, title or interest to and in the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

30.     Defendant, 6913 VALENCIA may claim an interest in the Subject Property by virtue of a Second Mortgage recorded on March 14, 2012 in ORB 28034, at Page 4869 of the Public Records of Miami Dade County, Florida. However, 6913 VALENCIA's specific interest in

**HABER LAW, P.A.**
A.126

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

the Subject Property and any other right, title or interest to and in the Subject Property is junior,

inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

31.     Defendants TENANTS may claim an interest in the Subject Property by virtue of

possession of the Subject Property as tenants under a lease or otherwise as occupants. However,

TENANTS' specific interest in the Subject Property and any other right, title or interest to and in

the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant

to the Claim of Lien.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION,

INC., respectfully requests that this Honorable Court enter judgment in its favor and against

Defendants, and in so doing award the following relief:

A.     Take jurisdiction of this cause and of the parties to this action;

B.     Ascertain the amount of money including assessments, interest, late fees,

expenses, costs and attorney's fees and costs which ASSOCIATION is entitled to recover

in this action and award such amounts pursuant to the Declaration and § 720.385, Fla. Stat.;

C.     Find that ASSOCIATION be decreed to have a lien upon the Subject

Property of Defendant HAZAN as described herein for the sum of money found to be due,

and that said lien be decreed superior to the rights, title and interest of all of the Defendants

named herein;

D.     Find that such lien be foreclosed in accordance with the Declaration and the

established rules and practices of the Court, that upon default of the payment to

ASSOCIATION of the amounts so found to be due, and that said real estate be sold by the

Clerk of Court to satisfy ASSOCIATION's lien in accordance with provisions of Chapter

720 of the Florida Statutes;

**HABER LAW, P.A.**
A.127

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

E.      Find that the Final Judgment of Foreclosure incorporate an order dispossessing the Defendants, and requiring that the purchaser at the foreclosure sale, his representatives or all of the assigns, be let into possession of the Subject Property;

F.      Reserve jurisdiction to enter a Writ of Possession in favor of the person or entity acquiring title to the Subject Property as a result of the public sale ordered by the Court;

G.      Reserve jurisdiction to award the ASSOCIATION a deficiency judgment in the event the sale of the Subject Property produces insufficient funds to satisfy the ASSOCIATION's judgment; and

H.      Award such other and further relief as ASSOCIATION may be entitled to receive.

## COUNT II
## BREACH OF DECLARATION

32.     Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained in Paragraphs 1 through 17 as if fully set forth herein.

33.     The ASSOCIATION's Declaration allows the ASSOCIATION to levy assessments and charges related thereto against the Subject Property, which HAZAN is required to pay. *See* **Exhibit "1"**.

34.     The Declaration is a contract by and between the ASSOCIATION and HAZAN, which strictly governs the relationship between them.

35.     Pursuant to §§ 720.305 and 720.3085, Fla. Stat., HAZAN is required to comply with the terms and conditions of the Declaration.

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

36.     Despite multiple demands from the ASSOCIATION, HAZAN still has not made payment for the assessments and related charges due and owing to the ASSOCIATION. *See* **Exhibits "3"**, **"5"**, and **"6"**.

37.     HAZAN materially breached the Declaration by failing or otherwise refusing to pay assessments levied by the ASSOCIATION against the Subject Property as same became due and payable.

38.     HAZAN further materially breached the Declaration by failing or otherwise refusing to pay the interest, late fees, collection costs, and attorneys' fees and costs incurred by the ASSOCIATION incident to the collections process, resulting from HAZAN's failure to pay the assessments levied by the ASSOCIATION against the Subject Property.

39.     As a direct and proximate result of such breaches, the ASSOCIATION has been damaged.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant ELIZABETH HAZAN, and in so doing award the ASSOCIATION the actual damages it has sustained in this regard, along with pre-judgment and post-judgment interest and the reasonable attorneys' fees and costs incurred in this regard, together with such other and further relief deemed just and proper.

[SIGNATURE PAGE TO FOLLOW]

**HABER LAW, P.A.**

A.129

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

Dated this 23rd day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
251 NW 23rd Street
Miami, Florida 33127
(305) 379-2400
(305) 379-1106 (fax)
service@haber.law

By:     */s/ Rebecca N. Casamayor*
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@haber.law
jfelipe@haber.law
**DEESHA SMART, ESQ.**
Florida Bar No. 1026394
dsmart@haber.law

## ARTICLE 6.

### COVENANT FOR MAINTENANCE ASSESSMENTS

6.1.   Creation of the Lien and Personal Obligation of the Assessments.  Except as provided elsewhere herein, the Developer (and each party joining in any supplemental declaration), for all Lots within the Neighborhood, hereby covenants and agrees, and each Owner of any Lot by acceptance of a deed therefor or other conveyance thereof, whether or not it shall be so expressed in such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association annual assessments and charges for the operation of the Association and the maintenance, management, operation and insurance of the Common Properties as provided elsewhere herein, including such reasonable reserves as the Association may deem necessary, capital improvement assessments as provided elsewhere herein, assessments for maintenance, bulk cable and/or satellite television or communications charges and all other charges and assessments hereinafter referred to or lawfully imposed by the Association, all such assessments to be fixed, established and collected from time to time as herein provided. In addition, special assessments may be levied against particular Owners and Lots for fines, expenses incurred against particular Lots and/or Owners to the exclusion of others and other charges against specific Lots or Owners as contemplated in this Declaration. The annual, special and other assessments, together with interest thereon and costs of collection thereof as are hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Lot against which each such assessment is made.  Each such assessment, together with such interest thereon and costs of collection thereof as are hereinafter provided, shall also be the personal obligation of the person who is the Owner of such property at the time when the assessment fell due and all subsequent Owners until paid, except as provided in Section 6.9 below.

6.2.   Rate of Assessment.  Except as provided herein with respect to special assessments which may be imposed on one or more Lots or Homes and Owners to the exclusion of others and in Section 6.9 below, all assessments imposed by the Association shall be imposed against all Lots subject to its jurisdiction in accordance with the percentages set forth on **Exhibit "E"** attached hereto and made a part hereof.  Reference herein to assessments shall be understood to include reference to any and all of said charges whether or not specifically mentioned.

6.3.   Purpose of Assessments.  The regular assessments levied by the Association shall be used exclusively for the purposes expressed in Section 6.1 above.

6.4.   Special Assessments.  In addition to the regular and capital improvement assessments which are or may be levied hereunder, the Association (through the Board of Directors) shall have the right to levy special assessments against an Owner(s) to the exclusion of other Owners for: (a) the repair or replacement of damage to any portion of the Common Properties (including, without limitation, improvements and landscaping thereon) caused by the misuse, negligence or other action or inaction of an Owner or such Owner's Members' Permittee(s); or (b) the costs of work performed by the Association in accordance with Article **4** and/or Article **5** of this Declaration.  Any such special assessment shall be subject to all of the applicable provisions of this Article including, without limitation, lien filing and foreclosure procedures and late charges and interest.  Any special assessment levied hereunder shall be due within the time specified by the Board of Directors in the action imposing such assessment.

6.5.   Capital Improvements.  Funds which, in the aggregate, exceed twenty percent (20%) of the total amount of the current operating budget of the Association in any one fiscal year, and are necessary for the addition of capital improvements (as distinguished from

OFF. REC BK.
21004PG0401

repairs and maintenance) relating to the Common Properties and which have not previously been collected as reserves or are not otherwise available to the Association (other than by borrowing), shall be levied by the Association as special assessments only upon approval of a majority of the Board of Directors of the Association and upon approval by two-thirds (2/3) favorable vote of the Members of the Association voting at a meeting or by ballot as may be provided in the By-Laws of the Association. Additionally, the Association may adopt a capital improvement assessment upon approval of a majority of the Board of Directors of the Association for reconstruction as provided in Section 11.1 below.

6.6.     Date of Commencement of Annual Assessments; Due Dates.   The annual regular assessments provided for in this Article shall commence on the first day of the month next following the recordation of these covenants and shall be applicable through September 30 of such year. Each subsequent annual assessment shall be imposed for the year beginning October 1 and ending September 30. The annual assessments shall be payable in advance, in monthly installments, or in annual, semi-annual or quarterly installments if so determined by the Board of Directors of the Association (absent which determination they shall be payable monthly). The assessment amount (and applicable installments) may be changed at any time by said Board from that originally stipulated or from any other assessment that is in the future adopted. The original assessment for any year shall be levied for the calendar year (to be reconsidered and amended, if necessary, every six (6) months), but the amount of any revised assessment to be levied during any period shorter than a full calendar year shall be in proportion to the number of months (or other appropriate installments) remaining in such calendar year. The due date of any special assessment or capital improvement assessment shall be fixed in the Board resolution authorizing such assessment.     Notwithstanding anything herein contained to the contrary, no Lot shall be subject to assessment until such time as a Home has been constructed thereon and received a certificate of occupancy from the applicable governmental authority.

6.7.     Duties of the Board of Directors.  The Board of Directors of the Association shall fix the date of commencement and the amount of the assessment against each Lot subject to the Association's jurisdiction for each assessment period, to the extent practicable, at least thirty (30) days in advance of such date or period, and shall, at that time, prepare a roster of the Lots and assessments applicable thereto which shall be kept in the office of the Association and shall be open to inspection by any Owner. Written notice of the assessment shall thereupon be sent to every Owner subject thereto thirty (30) days prior to payment of the first installment thereof, except as to special assessments. In the event no such notice of a change in the assessments for a new assessment period is given, the amount payable shall continue to be the same as the amount payable for the previous period, until changed in the manner provided for herein. Subject to other provisions hereof, the Association shall upon demand at any time furnish to any Owner liable for an assessment a certificate in writing signed by an officer of the Association, setting forth whether such assessment has been paid as to any particular Lot. Such certificate shall be conclusive evidence of payment of any assessment to the Association therein stated to have been paid. The Association, through the action of its Board of Directors, shall have the power, but not the obligation, to enter into an agreement or agreements from time to time with one or more persons, firms or corporations (including affiliates of the Developer) for management services.  The Association shall have all other powers provided in its Articles of Incorporation and By-Laws.

6.8.     Effect of Non-Payment of Assessment; the Personal Obligation; the Lien; Remedies of the Association.  If the assessments (or installments) provided for herein are not paid on the date(s) when due (being the date(s) specified herein), then such assessments (or installments) shall become delinquent and shall, together with late charges, interest and

OFF. REC BK.
21004PG0402

the cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the Lot which shall bind such property in the hands of the then Owner, his heirs, personal representatives, successors and assigns. Except as provided in Section 6.9 below to the contrary, the personal obligation of the then Owner to pay such assessment shall pass to his successors in title and recourse may be had against either or both. If any installment of an assessment is not paid within fifteen (15) days after the due date, at the option of the Association, a late charge not greater than the amount of such unpaid installment may be imposed (provided that only one late charge may be imposed on any one unpaid installment and if such installment is not paid thereafter, it and the late charge shall accrue interest as provided herein but shall not be subject to additional late charges, provided further, however, that each other installment thereafter coming due shall be subject to one late charge each as aforesaid), or the next twelve (12) months' worth of installments may be accelerated and become immediately due and payable in full and all such sums shall bear interest from the dates when due until paid at the highest lawful rate and the Association may bring an action at law against the Owner(s) personally obligated to pay the same, may record a claim of lien (as evidence of its lien rights as hereinabove provided for) against the Lot on which the assessments and late charges are unpaid, may foreclose the lien against the Lot on which the assessments and late charges are unpaid, or may pursue one or more of such remedies at the same time or successively, and attorneys' and paralegals' fees and costs actually incurred preparing and filing the claim of lien and the complaint, if any, and prosecuting same, in such action (and any appeals therefrom) shall be added to the amount of such assessments, late charges and interest, and in the event a judgment is obtained, such judgment shall include all such sums as above provided and attorneys' and paralegals' fees actually incurred together with the costs of the action, through all applicable appellate levels. In the case of an acceleration of the next twelve (12) months' worth of installments, each installment so accelerated shall be deemed, initially, equal to the amount of the then most current delinquent installment, provided that if any such installment so accelerated would have been greater in amount by reason of a subsequent increase in the applicable budget, the Owner of the Lot whose installments were so accelerated shall continue to be liable for the balance due by reason of such increase and special assessments against such Lot shall be levied by the Association for such purpose. In addition to the rights of collection of assessments stated in this Section, any and all persons acquiring title to or an interest in a Lot as to which the assessment is delinquent, including without limitation persons acquiring title by operation of law and by judicial sales, shall not be entitled to the occupancy of such Lot or the enjoyment of the Common Properties until such time as all unpaid and delinquent assessments due and owing from the selling Owner have been fully paid; provided, however, that the provisions of this sentence shall not be applicable to the mortgagees and purchasers contemplated by Section 6.9 below. It shall be the legal duty and responsibility of the Association to enforce payment of the assessments hereunder. Failure of the Association to send or deliver bills shall not, however, relieve Owners from their obligations hereunder. All assessments, late charges, interest, penalties, fines, attorney's fees and other sums provided for herein shall accrue to the benefit of the Association. Owners shall be obligated to deliver the documents originally received from the Developer, containing this and other declarations and documents, to any grantee of such Owner.

6.9.    Subordination of the Lien.  The lien of the assessments provided for in this Article shall be subordinate to real property tax liens and to the lien of any first mortgage recorded prior to recordation by the Association of a claim of lien held by a Mortgage Lender and which is now or hereafter placed upon any property subject to assessment; provided, however, that any such Mortgage Lender when in possession or any receiver, and in the event of a foreclosure, any purchaser at a foreclosure sale, and any such Mortgage Lender acquiring a deed in lieu of foreclosure, and all persons claiming by, through or under such purchaser or Mortgage Lender, shall hold title subject to the liability and lien

A.133

of any assessment coming due after such foreclosure (or conveyance in lieu of foreclosure). Any unpaid assessment which cannot be collected as a lien against any Lot by reason of the provisions of this Section shall be deemed to be an assessment divided equally among, payable by and a lien against all Lots subject to assessment by the Association, including the Lots as to which the foreclosure (or conveyance in lieu of foreclosure) took place.

6.10.    Effect on Developer.  Notwithstanding any provision to the contrary contained in this Declaration, for as long as Developer (or any of its affiliates) is the Owner of any Lot, Developer shall have the option, in its sole discretion, to (a) pay assessments on the Lots owned by it in like manner as paid by other Owners; or (b) not paying assessments on Lots owned by Developer, and in lieu thereof, funding any resulting deficit in the Association's operating expenses (exclusive of any capital costs and reserves) not produced by assessments receivable from Owners other than Developer and any other income receivable by the Association.  The deficit to be paid under option (b) above shall be the difference between (i) actual operating expenses of the Association (exclusive of capital improvement costs and reserves) and (ii) the sum of all monies receivable by the Association (including, without limitation, assessments, interest, late charges, fines and incidental income) and any surplus carried forward from the preceding year(s).  Developer may from time to time change the option stated above under which Developer is making payments to the Association by written notice to such effect to the Association.  When all Lots within the Neighborhood are sold and conveyed to purchasers, neither the Developer, nor its affiliates, shall have further liability of any kind to the Association for the payment of assessments, deficits or contributions.

6.11.    Association Funds.  The portion of all regular assessments collected by the Association for reserves for future expenses, if any, and the entire amount of all special assessments, shall be held by the Association for the Owners of all Lots, as their interests may appear, and may be invested in interest bearing accounts or in certificates of deposit or other like instruments or accounts available at banks or savings and loan institutions the deposits of which are insured by an agency of the United States.

**ARTICLE 7.**

**CERTAIN RULES AND REGULATIONS**

7.1.    Applicability.  The provisions of this Article **7** shall be applicable to all of the Lots, Homes and Common Properties of the Neighborhood.

7.2.    Land Use and Building Type.  No Lot shall be used except for single family residential purposes, unless otherwise approved by the Developer.  No building constructed on a Lot shall be used except for residential purposes.  No building shall be erected, altered, placed or permitted to remain on any Lot other than one Home and one cabana house.  Temporary uses by Developer and its affiliates for model homes, guest accommodations, sales displays, parking lots, sales offices and other offices, or any one or combination of such uses, shall be permitted at all times.  No improvements may be made to a Lot, or changes thereafter made (unless such changes are made by the Developer) without the consent of the Architectural Control Board (as hereinafter defined).

7.3.    Construction Activity.  Unless otherwise approved in advance by the Architectural Control Board, no construction or construction related activities may be undertaken: (a) on legal holidays recognized by the Federal Government (or other holidays designated as such by Declarant), (b) Sundays, or (c) outside the hours of 8:00 a.m through 6:00 p.m., Monday through Friday, or 9:00 a.m through 6:00 p.m. on Saturdays.

**Composite Exhibit "2"**

UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF
FLORIDA MIAMI DIVISION

www.flsb.uscourts.gov

IN RE:

                                        CaseNo:16-10389AJC
                                        Chapter 11

**Liza Hazan**
**a/k/a ELIZABETH HAZAN**

DEBTOR. _____/

**STIPULATION OF SETTLEMENT CLAIM 10**
**Valencia Estates Homeowners Assn, Inc.**

     Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

     1.    On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

     2.    On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

     3.    On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

     4.    On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

     5.    Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

         A.    Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

         B.    Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

         C.    Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

     6.    Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

A.135

annually on the twelfth (12th) month. All monies are to be paid on or before the 48th month after the Effective Date. Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments"). *[handwritten: The Claim Amount of $195,000.00 includes pre-petition and post-petition attorney's fees & costs absent a breach by Debtor as referenced below in Paragraph 10 below] E.H*

7.     Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments"). Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8.     Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000. The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien"). Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below. However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9.     Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement. Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10.    If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period"). Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees"). The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief. Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11.    Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the

*[handwritten: Valencia state court action, claims, counterclaims * All defenses, proposed counterclaims + proposed third party E.H claims against Valencia it's agents, managers, attorneys, members + officers, raised or unraised, are released + waived.]*

A. 136

stipulated treatment.

   12.   This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

A.137



**ORDERED in the Southern District of Florida on November 17, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF
FLORIDA MIAMI DIVISION

www.flsb.uscourts.gov

IN RE:

        CaseNo:16-10389AJC
        Chapter 11

Liza Hazan
a/k/a ELIZABETH HAZAN

DEBTOR.          /

**AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10**
**Valencia Estates Homeowners Assn, Inc.**

   THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10

(Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter

the "Stipulation"). The Court has been advised of the agreement of the Parties and has

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

\* \* \*

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

**Exhibit "3"**



HABER LAW

**REBECCA N. CASAMAYOR, ESQ.**
305-379-2400 Ext. 117
RCASAMAYOR@HABER.LAW

<u>**NOTICE OF INTENT TO RECORD A CLAIM OF LIEN**</u>
**This letter is sent pursuant to Chapter 720 of the Florida Statutes**

January 4, 2021

<u>**Via Regular U.S. and Certified Mail, Return Receipt Requested:**</u>
*Barcode:* **9214 8901 9403 8300 0028 8859 23**
Elizabeth Hazan a/k/a Liza Hazan
6913 Valencia Drive
Fisher Island, Florida 33109

<u>**COPY TO COUNSEL [VIA E-MAIL ONLY]:**</u>
David Langley, Esq.
E-mail: dave@flalawyer.com
Joel Aresty, Esq.
E-mail: Aresty@Mac.com
Stuart J. Zoberg, Esq.
E-mail: szoberg@shirlawgroup.com

> **RE:** *Valencia Estates Homeowners' Association, Inc.*
> *Property: Parcel/Lot/Unit 6913*
> *Owner: Elizabeth Hazan*
> *Matter #: 3706.102*

Dear Ms. Hazan:

     As you are aware, our law firm represents **Valencia Estates Homeowners' Association, Inc.** ("Association"). We have been retained by the Association with respect to your failure to pay assessments when due to the Association. Pursuant to §720.3085 of the Florida Statutes and the Association's Declaration of Covenants and Restrictions ("Declaration"), you are obligated to pay the regular periodic assessments, special assessments, interest, administrative late fees, collection costs, and attorneys' fees and costs detailed below. These amounts (the "Debt") must be paid within forty-five (45), unless the validity of the Debt is disputed in writing within that time, in which case these amounts will continue to be due upon verification of the Debt.

     Pursuant to §720.3085 of the Florida Statutes, the following amounts are currently due on your account to the Association, and must be paid within forty-five (45) days after your receipt of this letter. This letter shall serve as the Association's notice of intent to record a Claim of Lien against your property no sooner than forty-five (45) days after your receipt of this letter, unless you pay in full the amounts set forth below:

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Lien*
*January 4, 2021*
*Page 2 of 4*

| Item | Amount |
|------|--------|
| Unpaid Regular Assessments (due first of month, Jan. 2020-Jan. 2021) | $19,006.87 |
| Unpaid Interest through 12/31/20 at 18% per annum | 1,468.97 |
| Unpaid Late Fees | 225.00 |
| Unpaid Attorney's Fees[1] | 4,403.75 |
| Unpaid Attorney's Costs | 6.65 |
| Disbursement Processing Fee | 120.00 |
| **Total Due for Ongoing Assessments as of 1/4/2021:** | **$25,231.24** |

The Total Due, as specified above, takes into account charges and application of payments received for Ongoing Assessments, in accordance with Fla. Stat. 720.3085, from August 2019 to present. The Total Due does not affect any amounts owed by you for any other reason or pursuant to any judgment, order, and/or agreement. This correspondence does not address or concern any amounts that may be due or come due with respect to your bankruptcy proceedings in the Bankruptcy Court for the Southern District of Florida (Case No.: 16-10389-AJC – Chapter 11). This correspondence pertains only to Ongoing Assessments and related charges due to the Association, pursuant to the Stipulation of Settlement Claim 10 executed by you and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (the "Stipulation"), as well as pursuant to Article 6 of the Association's Declaration and Florida Statutes, Chapter 720.

Please be advised that if payment for the Total Due, as specified above, is not paid in full on or before January 15, 2021, additional late fees in the amount of $25.00 will come due, and additional interest at the rate of eighteen percent (18%) per annum will accrue on the balance of all unpaid assessments. Further, on February 1, 2021 (and the first of every month thereafter), additional regular periodic assessments in the amount of $1,726.16 will come due. **Please keep these dates and amounts in mind when you make your payment.**

**Do not send a check directly to the Association as this will delay crediting the account and may cause attorneys' fees and costs to continue to accrue.** We have enclosed the wiring instructions for this law firm's IOTA Trust Account for your review and for the purpose of forwarding payment. If payment is to be made by check, please make same payable to Haber Law, P.A. Trust Account.

If you have any further questions concerning this account, please write a letter or send an e-mail to the undersigned.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THE NOTICE REQUIRED BY 15 U.S.C. § 1692(g) IS ATTACHED HERETO.**

---

[1] Incurred incident to the collections process for Ongoing Assessments, from September 2020 to the date of this correspondence, pursuant to the Declaration and Fla. Stat. 720.3085.

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Lien*
*January 4, 2021*
*Page 3 of 4*

This correspondence reserves all rights of the Association, without limitation.

Very truly yours,

**HABER LAW, P.A.**

*/s/ Rebecca N. Casamayor, Esq.*

REBECCA N. CASAMAYOR, ESQ.

Enclosures:    Notice Required by 15 U.S.C. § 1692(g)
                Haber Law, P.A., Trust Account wiring instructions

A.142

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Lien*
*January 4, 2021*
*Page 4 of 4*

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. SECTION 1692(g), AS AMENDED

1.      The amount of the debt is set forth in this Notice.

2.      **VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC.** is the creditor to whom the debt is owed.

3.      Unless the consumer, within thirty (30) days after receipt of this notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office (the Debt Collector).

4.      If the consumer notifies this office (the Debt Collector), in writing within the thirty-day period that the debt, or any portion thereof, is disputed, this office (the Debt Collector) will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by this office (the Debt Collector).

5.      Upon the consumer's written request within the thirty-day period, this office (the Debt Collector) will provide the consumer with the name and address of the original creditor, if different from the current creditor.

6.      Written requests pursuant to this notice should be addressed to Rebecca N. Casamayor, Haber Law, P.A.

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Lien*
*January 4, 2021*
*Page 5 of 4*

## **WIRE TRANSFER INSTRUCTIONS:**

Haber Law, P.A. IOTA Trust Account

IberiaBank
200 W. Congress Street
Lafayette, LA 70501

ABA #: ██████████
ACCOUNT: ██████████

SWIFT#: ████████

RE:  Association Dues – Valencia Unit 6913
      Matter # 3706.102

**Exhibit "4"**

CFN: 20210205943 BOOK 32413 PAGE 4637
DATE:03/24/2021  11:42:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

<u>**Prepared By and Return to:**</u>
Rebecca N. Casamayor, Esq.
Haber Law, P.A.
251 NW 23rd Street
Miami, FL 33127
Matter #3706.102

# <u>COVER PAGE TO</u>
# Homeowners' Association Claim of Lien
## (Valencia Estates – 6913 Valencia Drive)

A.145

## HOMEOWNERS' ASSOCIATION CLAIM OF LIEN

**Valencia Estates Homeowners' Association, Inc.** (the "Association"), a Florida not for profit corporation, hereby files this Claim of Lien against the following described property:

Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida. Property Address: 6913 Valencia Drive, Fisher Island, Florida 33109.

The record owner of the Property is: **Elizabeth Hazan.** The address of the Association is: 40306 Fisher Island Drive, Fisher Island, Florida, 33109. This Claim of Lien is for the amount of **$31,089.66** which includes the following:

| Item | Amount |
|---|---|
| Unpaid Regular Periodic Assessments (due first of each month, from 1/1/20 - 3/1/21) | $22,459.19 |
| Unpaid Interest at 18% per annum | 2,401.96 |
| Unpaid Late Fees | 300.00 |
| Unpaid Attorney's Fees | 5,622.50 |
| Unpaid Attorney's Costs | 35.51 |
| Attorneys' Fees and Costs for Disbursement Processing | 120.00 |
| | **$30,939.16** |
| Attorneys' Fees to prepare Release of Claim of Lien | 127.50 |
| Attorneys' Costs to record Release of Claim of Lien | 23.00 |
| **Total Due** | **$31,089.66** |

The Claim of Lien secures all unpaid assessments which are due and which may accrue subsequent to the recording of this Claim of Lien and before entry of a certificate of title, as well as all related charges permitted by § 720.3085, Fla. Stat., including but not necessarily limited to, interest at the rate reflected above, late charges, and reasonable costs and attorney fees incurred by the Association incident to the collection process. This Claim of Lien is filed pursuant to the Association's recorded Declaration of Covenants and Restrictions, as amended, and § 720.3085, Fla. Stat.

Dated this 17th day of ___March___, 2021.

Valencia Estates Homeowners' Association, Inc.

By: _____

Print Name: _____Jason Giller_____

Title: ___VP/Director___

STATE OF FLORIDA )
                   )ss
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 17 day of March, 2021, by __Jason Giller__, who is the _____ of **Valencia Estates Homeowners' Association, Inc.,** and who is personally known to me or who produced _____ as identification.

Iren Kovalii
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG337549
Expires 5/28/2023

NOTARY PUBLIC, STATE OF FLORIDA

A.146

**Exhibit "5"**



**HABER LAW**

REBECCA NEWMAN CASAMAYOR, ESQ.
305-379-2400 Ext. 117
RCASAMAYOR@HABER.LAW

## NOTICE OF INTENT TO FORECLOSE CLAIM OF LIEN
### (This letter is being sent pursuant to Florida Statues, Chapter 720)

April 5, 2021

**Via Regular U.S. and Certified Mail, Return Receipt**
**Requested & Via E-mail:**
***Barcode:* 92148901940383000036032388**
Elizabeth Hazan a/k/a Liza Hazan
6913 Valencia Drive
Fisher Island, Florida 33109
E-mail: elizabethhazan07@gmail.com;
elizabeth9246qc@gmail.com

> **RE:    Valencia Estates Homeowners' Association, Inc.**
> **Property: Parcel/Lot/Unit 6913**
> **Owner: Elizabeth Hazan**
> **Matter #: 3706.102**

Dear Ms. Hazan:

As you are aware, our law firm represents **Valencia Estates Homeowners' Association, Inc.** ("Association"). Enclosed is a copy of the Claim of Lien that has been recorded in the Public Records of Miami-Dade County, Florida against your property, Parcel/Lot/Unit 6913 within Valencia Estates (the "Subject Property"). The Claim of Lien was recorded against the Subject Property due to your failure to pay the below assessments and related charges to the Association. The Association will be authorized and intends to file a foreclosure action if the following amounts, together with any subsequent sums that come due, are not paid in full within forty-five (45) days after your receipt of this letter:

| Item | Amount |
|---|---|
| Unpaid Regular Assessments (due first of month, Jan. 2020-April 2021)[1] | $24,185.35 |
| Unpaid Interest at 18% per annum[2] | 2,401.96 |
| Unpaid Late Fees[3] | 300.00 |

---

[1] Due dates take into account application of all payments received, in accordance with Fla. Stat. 720.3085, to a debt beginning in August 2019.
[2] Accruing from August 2019 through March 31, 2021.
[3] Accruing from August 2019 through March 31, 2021.

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Foreclose*
*April 5, 2021*
*Page 2 of 4*

| | |
|---|---:|
| Unpaid Attorneys' Fees[4] | 5,922.50 |
| Unpaid Attorneys' Costs | 41.87 |
| Disbursement Processing Fee | 120.00 |
| | **$32,971.68** |
| Attorney' Fees for preparing Release of Lien | 127.50 |
| Attorneys' Costs for recording Release of Lien | 23.00 |
| **TOTAL DUE ON OR BEFORE 4/15/21:** | **$33,122.18** |

The Total Due, as specified above, takes into account charges and application of payments received for Ongoing Assessments, in accordance with Fla. Stat. 720.3085, from August 2019 to present. The Total Due does not affect any amounts owed by you for any other reason or pursuant to any judgment, order, and/or agreement. This correspondence does not address or concern any amounts that may be due or come due with respect to your bankruptcy proceedings in the Bankruptcy Court for the Southern District of Florida (Case No.: 16-10389-AJC – Chapter 11). This correspondence pertains only to Ongoing Assessments and related charges due to the Association, pursuant to the Stipulation of Settlement Claim 10 executed by you and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (the "Stipulation"), as well as pursuant to Article 6 of the Association's Declaration and Florida Statutes, Chapter 720.

Please be advised that if payment for the Total Due, as specified above, is not paid in full on or before April 15, 2021, additional late fees in the amount of $25.00 will come due, and additional interest at the rate of eighteen percent (18%) per annum will accrue on the balance of all unpaid assessments. Further, on May 1, 2021 (and the first of every month thereafter), additional regular periodic assessments in the amount of $1,726.16 will come due. **Please keep these dates and amounts in mind when you make your payment**.

**Do not send a check directly to the Association as this will delay crediting the account and may cause attorneys' fees and costs to continue to accrue.** We have enclosed the wiring instructions for this law firm's IOTA Trust Account for your review and for the purpose of forwarding payment. If payment is to be made by check, please make same payable to Haber Law, P.A. Trust Account and forward same to this office, to be received on or before April 15, 2021.

If you have any further questions concerning this account, please write a letter or send an email to the undersigned, pursuant to the contact information listed on the first page of this letter.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

---

[4] Incurred incident to the collections process for Ongoing Assessments, from September 2020 to the date of this correspondence, pursuant to the Declaration and Fla. Stat. 720.3085.

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Foreclose*
*April 5, 2021*
*Page 3 of 4*

This correspondence reserves all rights of the Association, without limitation.

Very truly yours,

**HABER LAW, P.A.**

*/s/ Rebecca N. Casamayor, Esq.*

REBECCA NEWMAN CASAMAYOR, ESQ.

Enclosures:    Recorded Claim of Lien

A.149

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Foreclose*
*April 5, 2021*
*Page 4 of 4*

## **WIRE TRANSFER INSTRUCTIONS:**

Haber Law, P.A. IOTA Trust Account

IberiaBank
200 W. Congress Street
Lafayette, LA 70501

ABA #: ███████
ACCOUNT: ███████

SWIFT#: ███████

RE:  Association Dues – Valencia Unit 6913
      Matter # 3706.102

CFN: 20210205943 BOOK 32413 PAGE 4637
DATE:03/24/2021  11:42:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Prepared By and Return to:**
Rebecca N. Casamayor, Esq.
Haber Law, P.A.
251 NW 23rd Street
Miami, FL 33127
Matter #3706.102

# <u>COVER PAGE TO</u>
## Homeowners' Association Claim of Lien
### (Valencia Estates – 6913 Valencia Drive)

## HOMEOWNERS' ASSOCIATION CLAIM OF LIEN

**Valencia Estates Homeowners' Association, Inc.** (the "Association"), a Florida not for profit corporation, hereby files this Claim of Lien against the following described property:

Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida. Property Address: 6913 Valencia Drive, Fisher Island, Florida 33109.

The record owner of the Property is: **Elizabeth Hazan.** The address of the Association is: 40306 Fisher Island Drive, Fisher Island, Florida, 33109. This Claim of Lien is for the amount of **$31,089.66** which includes the following:

| Item | Amount |
|------|-------:|
| Unpaid Regular Periodic Assessments (due first of each month, from 1/1/20 - 3/1/21) | $22,459.19 |
| Unpaid Interest at 18% per annum | 2,401.96 |
| Unpaid Late Fees | 300.00 |
| Unpaid Attorney's Fees | 5,622.50 |
| Unpaid Attorney's Costs | 35.51 |
| Attorneys' Fees and Costs for Disbursement Processing | 120.00 |
| | **$30,939.16** |
| Attorneys' Fees to prepare Release of Claim of Lien | 127.50 |
| Attorneys' Costs to record Release of Claim of Lien | 23.00 |
| **Total Due** | **$31,089.66** |

The Claim of Lien secures all unpaid assessments which are due and which may accrue subsequent to the recording of this Claim of Lien and before entry of a certificate of title, as well as all related charges permitted by § 720.3085, Fla. Stat., including but not necessarily limited to, interest at the rate reflected above, late charges, and reasonable costs and attorney fees incurred by the Association incident to the collection process. This Claim of Lien is filed pursuant to the Association's recorded Declaration of Covenants and Restrictions, as amended, and § 720.3085, Fla. Stat.

Dated this 17th day of March, 2021.

Valencia Estates Homeowners' Association, Inc.

By: _____

Print Name: Jason Griller

Title: VP/Director

STATE OF FLORIDA )
)ss
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this 17 day of March, 2021, by Jason Griller, who is the _____ of **Valencia Estates Homeowners' Association, Inc.,** and who is personally known to me or who produced _____ as identification.

Iren Kovalli
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG337549
Expires 5/28/2023

NOTARY PUBLIC, STATE OF FLORIDA

A.152

**Exhibit "6"**



**HABER LAW**

**REBECCA NEWMAN CASAMAYOR, ESQ.**
305-379-2400 Ext. 117
RCASAMAYOR@HABER.LAW

## [SUPPLEMENTAL] NOTICE OF INTENT TO FORECLOSE CLAIM OF LIEN
### (This letter is being sent pursuant to Florida Statues, Chapter 720)

February 7, 2022

**Via Federal Express, Regular U.S. and Certified Mail,**
**Return Receipt Requested & Via E-mail:**
***Barcode: 9214 8901 9403 8300 0065 6729 75***
Elizabeth Hazan a/k/a Liza Hazan
6913 Valencia Drive
Fisher Island, Florida 33109
E-mail: elizabethhazan07@gmail.com;
elizabeth9246qc@gmail.com

> **RE:** *Valencia Estates Homeowners' Association, Inc.*
> *Property: Parcel/Lot/Unit 6913*
> *Owner: Elizabeth Hazan*
> *Matter #: 3706.102*

Dear Ms. Hazan:

As you are aware, our law firm represents **Valencia Estates Homeowners' Association, Inc.** ("Association"). Enclosed is a copy of the Claim of Lien that has been recorded in the Public Records of Miami-Dade County, Florida against your property, Parcel/Lot/Unit 6913 within Valencia Estates (the "Subject Property"). The Claim of Lien was recorded against the Subject Property due to your failure to pay the below assessments and related charges to the Association. The Association will be authorized and intends to file a foreclosure action if the following amounts, together with any subsequent sums that come due, are not paid in full within forty-five (45) days after your receipt of this letter:

| Item | Amount |
|---|---|
| Unpaid Regular Assessments (due first of month, Jan. 2020-Feb. 2022)[1] | $41,486.15 |
| Unpaid Interest at 18% per annum[2] | 7,196.09 |
| Unpaid Late Fees[3] | 550.00 |

---

[1] Due dates take into account application of all payments received, in accordance with Fla. Stat. 720.3085, to a debt beginning in August 2019.
[2] Accruing from August 2019 through January 31, 2022.
[3] Accruing from August 2019 through January 31, 2022.

*Valencia Estates - - Unit 6913 (Hazan)*
*[Supplemental] Notice of Intent to Foreclose*
*February 7, 2022*
*Page 2 of 4*

| | |
|---|---:|
| Unpaid Attorneys' Fees[4] | 9,660.00 |
| Unpaid Attorneys' Costs | 72.07 |
| Disbursement Processing Fee | 120.00 |
| | **$59,084.31** |
| Attorney' Fees for preparing Release of Lien | 127.50 |
| Attorneys' Costs for recording Release of Lien | 23.25 |
| **TOTAL DUE ON OR BEFORE 2/15/22:** | **$59,235.06** |

The Total Due, as specified above, takes into account charges and application of payments received for Ongoing Assessments, in accordance with Fla. Stat. 720.3085, from August 2019 to present. The Total Due does not affect any amounts owed by you for any other reason or pursuant to any judgment, order, and/or agreement. This correspondence does not address or concern any amounts that may be due or come due with respect to your bankruptcy proceedings in the Bankruptcy Court for the Southern District of Florida (Case No.: 16-10389-AJC – Chapter 11). This correspondence pertains only to Ongoing Assessments and related charges due to the Association, pursuant to the Stipulation of Settlement Claim 10 executed by you and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (the "Stipulation"), as well as pursuant to Article 6 of the Association's Declaration and Florida Statutes, Chapter 720.

Please be advised that if payment for the Total Due, as specified above, is not paid in full on or before February 15, 2022, additional late fees in the amount of $25.00 will come due, and additional interest at the rate of eighteen percent (18%) per annum will accrue on the balance of all unpaid assessments. Further, on March 1, 2022 (and the first of every month thereafter), additional regular periodic assessments in the amount of $1,734.00 will come due. **Please keep these dates and amounts in mind when you make your payment**.

**Do not send a check directly to the Association as this will delay crediting the account and may cause attorneys' fees and costs to continue to accrue.** We have enclosed the wiring instructions for this law firm's IOTA Trust Account for your review and for the purpose of forwarding payment. If payment is to be made by check, please make same payable to Haber Law, P.A. Trust Account and forward same to this office, to be received on or before February 15, 2022.

If you have any further questions concerning this account, please write a letter or send an email to the undersigned, pursuant to the contact information listed on the first page of this letter.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

---

[4] Incurred incident to the collections process for Ongoing Assessments, from September 2020 to the date of this correspondence, pursuant to the Declaration and Fla. Stat. 720.3085.

*Valencia Estates - - Unit 6913 (Hazan)*
*[Supplemental] Notice of Intent to Foreclose*
*February 7, 2022*
*Page 3 of 4*

This correspondence reserves all rights of the Association, without limitation.

Very truly yours,

**HABER LAW, P.A.**

*/s/ Rebecca N. Casamayor, Esq.*

REBECCA NEWMAN CASAMAYOR, ESQ.

Enclosures: HLPA Wire Instructions
Recorded Claim of Lien

A.155

*Valencia Estates - - Unit 6913 (Hazan)*
*[Supplemental] Notice of Intent to Foreclose*
*February 7, 2022*
*Page 4 of 4*

## **WIRE TRANSFER INSTRUCTIONS:**

Haber Law, P.A. IOTA Trust Account

IberiaBank/First Horizon*
200 W. Congress Street
Lafayette, LA 70501

ABA #: ███████████
ACCOUNT: ███████████

SWIFT#: ██████████

RE:  Association Dues – Valencia Unit 6913
     Matter # 3706.102

### **Wire cutoff time is 4 PM Eastern Standard Time**

*Please note that Iberia Bank is currently merging with First Horizon.  The First Horizon name may show under this ABA number.  The information is still correct, and the wire will come through to the IberiaBank account.

**Consumer Fraud Alert:**

Please contact our office at 305-379-2400 to confirm wire instructions.  All wires must be verified by phone with our office prior to sending the wire.  Please notify us immediately if different wire instructions are received.

CFN: 20210205943 BOOK 32413 PAGE 4637
DATE:03/24/2021  11:42:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Prepared By and Return to:**
Rebecca N. Casamayor, Esq.
Haber Law, P.A.
251 NW 23rd Street
Miami, FL 33127
Matter #3706.102

# COVER PAGE TO
## Homeowners' Association Claim of Lien
### (Valencia Estates – 6913 Valencia Drive)

## HOMEOWNERS' ASSOCIATION CLAIM OF LIEN

**Valencia Estates Homeowners' Association, Inc.** (the "Association"), a Florida not for profit corporation, hereby files this Claim of Lien against the following described property:

Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida. Property Address: 6913 Valencia Drive, Fisher Island, Florida 33109.

The record owner of the Property is: **Elizabeth Hazan.** The address of the Association is: 40306 Fisher Island Drive, Fisher Island, Florida, 33109. This Claim of Lien is for the amount of **$31,089.66** which includes the following:

| Item | Amount |
|------|-------:|
| Unpaid Regular Periodic Assessments (due first of each month, from 1/1/20 - 3/1/21) | $22,459.19 |
| Unpaid Interest at 18% per annum | 2,401.96 |
| Unpaid Late Fees | 300.00 |
| Unpaid Attorney's Fees | 5,622.50 |
| Unpaid Attorney's Costs | 35.51 |
| Attorneys' Fees and Costs for Disbursement Processing | 120.00 |
| | **$30,939.16** |
| Attorneys' Fees to prepare Release of Claim of Lien | 127.50 |
| Attorneys' Costs to record Release of Claim of Lien | 23.00 |
| **Total Due** | **$31,089.66** |

The Claim of Lien secures all unpaid assessments which are due and which may accrue subsequent to the recording of this Claim of Lien and before entry of a certificate of title, as well as all related charges permitted by § 720.3085, Fla. Stat., including but not necessarily limited to, interest at the rate reflected above, late charges, and reasonable costs and attorney fees incurred by the Association incident to the collection process. This Claim of Lien is filed pursuant to the Association's recorded Declaration of Covenants and Restrictions, as amended, and § 720.3085, Fla. Stat.

Dated this 17th day of March, 2021.

Valencia Estates Homeowners' Association, Inc.

By:

Print Name: Jason Griller

Title: VP/Director

STATE OF FLORIDA )
)ss
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this 17 day of March, 2021, by Jason Griller, who is the _____ of **Valencia Estates Homeowners' Association, Inc.,** and who is personally known to me or who produced _____ as identification.

Iren Kovalli
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG337549
Expires 5/28/2023

NOTARY PUBLIC, STATE OF FLORIDA

## A.158

CFN: 20220260391 BOOK 33098 PAGE 2524
DATE:03/31/2022 08:54:58 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 2022-005424-CA-01

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

      Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

      Defendants.

_____/

## <u>NOTICE OF LIS PENDENS</u>

**TO:   DEFENDANTS, ELIZABETH HAZAN; SEAN NEIL MEEHAN; 6913 VALENCIA, LLC; JOHN DOE AND JANE DOE; AND ALL OTHERS WHOM IT MAY CONCERN:**

## YOU ARE NOTIFIED OF THE FOLLOWING:

(a) The Plaintiff has instituted this action against you seeking to foreclose a Claim of Lien recorded on March 24, 2021, in Official Records Book 32413 at Pages 4637-38 of the public records of Miami-Dade County, Florida, with respect to the property described below;

(b) The Plaintiff in this action is: **VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC.;**

CFN: 20220260391 BOOK 33098 PAGE 2525

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Notice of Lis Pendens*

(c) The case number of the action is as shown in the caption;

(d) The property that is the subject matter of this action is in Miami-Dade County, Florida as is described as follows:

Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.

The property address is 6913 Valencia Drive, Fisher Island, FL 33109.

Dated this <u>24th</u> day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
*Counsel for Plaintiff*
251 NW 23rd Street
Miami, FL 33127
Telephone No.: (305) 379-2400
Facsimile No.: (305) 379-1106
service@haber.law

By: ___*/s/ Rebecca N. Casamayor*___
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@haber.law
jfehpe@haber.law
**DEESHA SMART, ESQ.**
Florida Bar No. 1026394
dsmart@haber.law

A.160

CFN: 20210205943 BOOK 32413 PAGE 4637
DATE:03/24/2021  11:42:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Prepared By and Return to:**
Rebecca N. Casamayor, Esq.
Haber Law, P.A.
251 NW 23rd Street
Miami, FL 33127
Matter #3706.102

# COVER PAGE TO
## Homeowners' Association Claim of Lien
### (Valencia Estates – 6913 Valencia Drive)

## HOMEOWNERS' ASSOCIATION CLAIM OF LIEN

**Valencia Estates Homeowners' Association, Inc.** (the "Association"), a Florida not for profit corporation, hereby files this Claim of Lien against the following described property:

Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida. Property Address: 6913 Valencia Drive, Fisher Island, Florida 33109.

The record owner of the Property is: **Elizabeth Hazan.** The address of the Association is: 40306 Fisher Island Drive, Fisher Island, Florida, 33109. This Claim of Lien is for the amount of **$31,089.66** which includes the following:

| Item | Amount |
|---|---|
| Unpaid Regular Periodic Assessments (due first of each month, from 1/1/20 - 3/1/21) | $22,459.19 |
| Unpaid Interest at 18% per annum | 2,401.96 |
| Unpaid Late Fees | 300.00 |
| Unpaid Attorney's Fees | 5,622.50 |
| Unpaid Attorney's Costs | 35.51 |
| Attorneys' Fees and Costs for Disbursement Processing | 120.00 |
| | **$30,939.16** |
| Attorneys' Fees to prepare Release of Claim of Lien | 127.50 |
| Attorneys' Costs to record Release of Claim of Lien | 23.00 |
| **Total Due** | **$31,089.66** |

The Claim of Lien secures all unpaid assessments which are due and which may accrue subsequent to the recording of this Claim of Lien and before entry of a certificate of title, as well as all related charges permitted by § 720.3085, Fla. Stat., including but not necessarily limited to, interest at the rate reflected above, late charges, and reasonable costs and attorney fees incurred by the Association incident to the collection process. This Claim of Lien is filed pursuant to the Association's recorded Declaration of Covenants and Restrictions, as amended, and § 720.3085, Fla. Stat.

Dated this 17th day of _____March_____, 2021.

Valencia Estates Homeowners' Association, Inc.

By: _____

Print Name: _____Jason Giller_____

Title: _____VP/Director_____

STATE OF FLORIDA     )
                         )ss
COUNTY OF MIAMI-DADE  )

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 17 day of March, 2021, by _____Jason Giller_____, who is the _____ of **Valencia Estates Homeowners' Association, Inc.**, and who is personally known to me or who produced _____ as identification.

Iren Kovalli
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG337549
Expires 5/28/2023

_____
NOTARY PUBLIC, STATE OF FLORIDA

## A.162

Paid 11/28/2018   Receipt # EEX-19-000360

Duplicate public  user 09/30/2021
$54,957.20

Miami-Dade County, Florida

# 2018   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### SEE REVERSE SIDE FOR IMPORTANT INFORMATION

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 30-4209-016-0070 | UNINCORPORATED DADE COUNTY | 3000 |

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

Property Address
6913 VALENCIA DR

Exemptions:
ADDL HOMESTEAD, HOMESTEAD

### AD VALOREM TAXES

| TAXING AUTHORITY | ASSESSED VALUE | MILLAGE RATE PER | $1,000 OF TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|
| Miami-Dade School Board | | | | |
| School Board Operating | 3,356,153 | 6.50400 | 3,331,153 | 21,665.82 |
| School Board Debt Service | 3,356,153 | 0.22900 | 3,331,153 | 762.83 |
| State and Other | | | | |
| Florida Inland Navigation Dist | 3,356,153 | 0.03200 | 3,306,153 | 105.80 |
| South Florida Water Mgmt Dist | 3,356,153 | 0.12090 | 3,306,153 | 399.71 |
| Okeechobee Basin | 3,356,153 | 0.13100 | 3,306,153 | 433.11 |
| Everglades Construction Proj | 3,356,153 | 0.04170 | 3,306,153 | 137.87 |
| Childrens Trust Authority | 3,356,153 | 0.44150 | 3,306,153 | 1,459.67 |
| Miami-Dade County | | | | |
| County Wide Operating | 3,356,153 | 4.66690 | 3,306,153 | 15,429.14 |
| County Wide Debt Service | 3,356,153 | 0.46440 | 3,306,153 | 1,535.38 |
| Unincorporated Operating | 3,356,153 | 1.92830 | 3,306,153 | 6,375.25 |
| Library District | 3,356,153 | 0.28400 | 3,306,153 | 938.95 |
| Fire Rescue Operating | 3,356,153 | 2.42070 | 3,306,153 | 8,003.20 |
| Fire Rescue Debt Service | 3,356,153 | 0.00000 | 3,306,153 | 0.00 |

Paid

### NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | FOOTAGE/UNITS | AMOUNT |
|---|---|---|---|
| | | | |

| AMOUNT IF PAID BY (pay only one amount) | | | Combined Taxes and Assessments |
|---|---|---|---|
| Nov 30, 2018 $0.00 | | | $57,247.08 |

↑ RETAIN FOR YOUR RECORDS ↑

---

## 2018  Real Estate Property Taxes

↓ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ↓        Duplicate public  user 09/30/2021

30-4209-016-0070
FOLIO NUMBER

6913 VALENCIA DR
PROPERTY ADDRESS

LEGAL DESCRIPTION
LINDISFARNE ON FISHER ISL SEC 10
PB 157-64 T-20665
LOT 7 BLK 2
LOT SIZE 12393 SQ FT
FAU 30

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601



* 1 + 3 0 4 2 0 9 0 1 6 0 0 7 0 + 2 0 1 8 *

Make checks payable to:
Miami-Dade Tax Collector
(in U.S. funds drawn on U.S. banks)
Amount due May be Subject to Change Without Notice
Mail payments to:
200 NW 2nd Avenue, Miami, FL 33128

**PAY ONLY ONE AMOUNT**

If Paid By  Please Pay

Nov 30, 2018  **$0.00**

Paid

A.163

Paid 11/25/USASBPG     Document 6-3     Entered on FLSD Docket 04/18/2021
Miami-Dade County, Florida
Paid  11/25/2019     Receipt # EEX-20-000210     $57,450.68

# 2019   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### S E E   R E V E R S E   S I D E   F O R   I M P O R T A N T   I N F O R M A T I O N

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 30-4209-016-0070 | UNINCORPORATED DADE COUNTY | 3000 |

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL  33109-0601

Property Address
6913 VALENCIA DR

Exemptions:
ADDL HOMESTEAD, HOMESTEAD

## AD VALOREM TAXES

| TAXING AUTHORITY | ASSESSED VALUE | MILLAGE RATE PER | $1,000 OF TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|
| Miami-Dade School Board | | | | |
| School Board Operating | 3,419,919 | 7.02500 | 3,394,919 | 23,849.31 |
| School Board Debt Service | 3,419,919 | 0.12300 | 3,394,919 | 417.58 |
| State and Other | | | | |
| Florida Inland Navigation Dist | 3,419,919 | 0.03200 | 3,369,919 | 107.84 |
| South Florida Water Mgmt Dist | 3,419,919 | 0.11520 | 3,369,919 | 388.21 |
| Okeechobee Basin | 3,419,919 | 0.12460 | 3,369,919 | 419.89 |
| Everglades Construction Proj | 3,419,919 | 0.03970 | 3,369,919 | 133.79 |
| Childrens Trust Authority | 3,419,919 | 0.46800 | 3,369,919 | 1,577.12 |
| Miami-Dade County | | | | |
| County Wide Operating | 3,419,919 | 4.66690 | 3,369,919 | 15,727.07 |
| County Wide Debt Service | 3,419,919 | 0.47800 | 3,369,919 | 1,610.82 |
| Unincorporated Operating | 3,419,919 | 1.92830 | 3,369,919 | 6,498.21 |
| Library District | 3,419,919 | 0.28400 | 3,369,919 | 957.06 |
| Fire Rescue Operating | 3,419,919 | 2.42070 | 3,369,919 | 8,157.56 |
| Fire Rescue Debt Service | 3,419,919 | 0.00000 | 3,369,919 | 0.00 |

Paid

## NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | FOOTAGE/UNITS | AMOUNT |
|---|---|---|---|
| | | | |

| AMOUNT IF PAID BY (pay only one amount) | | | Combined Taxes and Assessments |
|---|---|---|---|
| Nov 30, 2019 $0.00 | | | $59,844.46 |

✦ RETAIN FOR YOUR RECORDS ✦

---

## 2019  Real Estate Property Taxes

✦ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ✦     Duplicate public  user 09/30/2021

30-4209-016-0070
FOLIO NUMBER
6913 VALENCIA DR
PROPERTY ADDRESS
LEGAL DESCRIPTION
LINDISFARNE ON FISHER ISL SEC 10
PB 157-64 T-20665
LOT 7 BLK 2
LOT SIZE 12393 SQ FT
FAU 30

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601



* 1 + 3 0 4 2 0 9 0 1 6 0 0 7 0 + 2 0 1 9 *

Make checks payable to:
Miami-Dade Tax Collector
(in U.S. funds drawn on U.S. banks)
Amount due May be Subject to Change Without Notice
Mail payments to:
200 NW 2nd Avenue, Miami, FL 33128

| PAY ONLY ONE AMOUNT | |
|---|---|
| If Paid By | Please Pay |
| Nov 30, 2019 | $0.00 |

Paid

1000000000000000003042090160070020190000000000000000005

Paid 11/055 BPG ... Duplicate Public user 09/23/2021
Paid 11/27/2020     Receipt # EEX-21-000513          $58,627.29

Miami-Dade County, Florida

# 2020   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### S E E   R E V E R S E   S I D E   F O R   I M P O R T A N T   I N F O R M A T I O N

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 30-4209-016-0070 | UNINCORPORATED DADE COUNTY | 3000 |

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

Property Address
6913 VALENCIA DR

Exemptions:
ADDL HOMESTEAD, HOMESTEAD

| AD VALOREM TAXES | | | | |
|---|---|---|---|---|
| TAXING AUTHORITY | ASSESSED VALUE | MILLAGE RATE PER | $1,000 OF TAXABLE VALUE | TAXES LEVIED |
| Miami-Dade School Board | | | | |
| School Board Operating | 3,498,577 | 6.18600 | 3,473,577 | 21,487.55 |
| School Board Debt Service | 3,498,577 | 0.19300 | 3,473,577 | 670.40 |
| Voted School Operating | 3,498,577 | 0.75000 | 3,473,577 | 2,605.18 |
| State and Other | | | | |
| Florida Inland Navigation Dist | 3,498,577 | 0.03200 | 3,448,577 | 110.35 |
| South Florida Water Mgmt Dist | 3,498,577 | 0.11030 | 3,448,577 | 380.38 |
| Okeechobee Basin | 3,498,577 | 0.11920 | 3,448,577 | 411.07 |
| Everglades Construction Proj | 3,498,577 | 0.03800 | 3,448,577 | 131.05 |
| Childrens Trust Authority | 3,498,577 | 0.45070 | 3,448,577 | 1,554.27 |
| Miami-Dade County | | | | |
| County Wide Operating | 3,498,577 | 4.66690 | 3,448,577 | 16,094.16 |
| County Wide Debt Service | 3,498,577 | 0.47800 | 3,448,577 | 1,648.42 |
| Unincorporated Operating | 3,498,577 | 1.92830 | 3,448,577 | 6,649.89 |
| Library District | 3,498,577 | 0.28400 | 3,448,577 | 979.40 |
| Fire Rescue Operating | 3,498,577 | 2.42070 | 3,448,577 | 8,347.97 |

Paid

| NON-AD VALOREM ASSESSMENTS | | | |
|---|---|---|---|
| LEVYING AUTHORITY | RATE | FOOTAGE/UNITS | AMOUNT |
| | | | |

| AMOUNT IF PAID BY (pay only one amount) | | | | Combined Taxes and Assessments |
|---|---|---|---|---|
| Nov 30, 2020 $0.00 | | | | $61,070.09 |

↑ RETAIN FOR YOUR RECORDS ↑

---

## 2020  Real Estate Property Taxes

↓ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ↓       Duplicate public  user 09/23/2021

30-4209-016-0070
FOLIO NUMBER
6913 VALENCIA DR
PROPERTY ADDRESS
LEGAL DESCRIPTION
LINDISFARNE ON FISHER ISL SEC 10
PB 157-64 T-20665
LOT 7 BLK 2
LOT SIZE 12393 SQ FT
FAU 30

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601



* 1 + 3 0 4 2 0 9 0 1 6 0 0 7 0 + 2 0 2 0 *

Make checks payable to:
Miami-Dade Tax Collector
(in U.S. funds drawn on U.S. banks)
Amount due May be Subject to Change Without Notice
Mail payments to:
200 NW 2nd Avenue, Miami, FL 33128

| PAY ONLY ONE AMOUNT |
|---|
| If Paid By  Please Pay |
| Nov 30, 2020  $0.00 |
| |
| |

Paid

1000000000000000304209016007020320000000000000007

Miami-Dade County, Florida

# 2021   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### S E E   R E V E R S E   S I D E   F O R   I M P O R T A N T   I N F O R M A T I O N

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 30-4209-016-0070 | UNINCORPORATED DADE COUNTY | 3000 |

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

Property Address
6913 VALENCIA DR

Exemptions:
ADDL HOMESTEAD, HOMESTEAD

## AD VALOREM TAXES

| TAXING AUTHORITY | ASSESSED VALUE | MILLAGE RATE PER | $1,000 OF TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|
| Miami-Dade School Board | | | | |
| School Board Operating | 3,547,557 | 6.07900 | 3,522,557 | 21,413.63 |
| School Board Debt Service | 3,547,557 | 0.18000 | 3,522,557 | 634.06 |
| Voted School Operating | 3,547,557 | 0.75000 | 3,522,557 | 2,641.92 |
| State and Other | | | | |
| Florida Inland Navigation District | 3,547,557 | 0.03200 | 3,497,557 | 111.92 |
| South Florida Water Management District | 3,547,557 | 0.10610 | 3,497,557 | 371.09 |
| Okeechobee Basin | 3,547,557 | 0.11460 | 3,497,557 | 400.82 |
| Everglades Construction Project | 3,547,557 | 0.03650 | 3,497,557 | 127.66 |
| Childrens Trust Authority | 3,547,557 | 0.50000 | 3,497,557 | 1,748.78 |
| Miami-Dade County | | | | |
| County Wide Operating | 3,547,557 | 4.66690 | 3,497,557 | 16,322.75 |
| County Wide Debt Service | 3,547,557 | 0.50750 | 3,497,557 | 1,775.01 |
| Unincorporated Operating | 3,547,557 | 1.92830 | 3,497,557 | 6,744.34 |
| Library District | 3,547,557 | 0.28400 | 3,497,557 | 993.31 |
| Fire Rescue Operating | 3,547,557 | 2.42070 | 3,497,557 | 8,466.54 |

Paid

## NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | FOOTAGE/UNITS | AMOUNT |
|---|---|---|---|

| AMOUNT IF PAID BY (pay only one amount) | | | | Combined Taxes and Assessments |
|---|---|---|---|---|
| Nov 30, 2021 $0.00 | | | | $61,751.83 |

↑ RETAIN FOR YOUR RECORDS ↑

- - -

## 2021   Real Estate Property Taxes

↓ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ↓    Duplicate public user 04/22/2022

30-4209-016-0070
FOLIO NUMBER
6913 VALENCIA DR
PROPERTY ADDRESS
LEGAL DESCRIPTION
LINDISFARNE ON FISHER ISL SEC 10
PB 157-64 T-20665
LOT 7 BLK 2
LOT SIZE 12393 SQ FT
FAU 30

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601



* 1 + 3 0 4 2 0 9 0 1 6 0 0 7 0 + 2 0 2 1 *

Make checks payable to:
Miami-Dade Tax Collector
(in U.S. funds drawn on U.S. banks)
Amount due May be Subject to Change Without Notice
Mail payments to:
200 NW 2nd Avenue, Miami, FL 33128

| PAY ONLY ONE AMOUNT | |
|---|---|
| If Paid By | Please Pay |
| Nov 30, 2021 | $0.00 |

Paid

1000000000000003042090160070202100000000000000008

A.166

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 420 of 866

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2013-025902-CA-01

JPMORGAN CHASE BANK, N.A.

     Plaintiff,

v.

ELIZABETH HAZAN,

     Defendant.

_____/

### ELIZABETH HAZAN'S CASE MANAGEMENT REPORT AND MOTION TO POSTPONE HEARING SET FOR APRIL 21, 2021

Defendant Elizabeth Hazan ("Hazan") submits the following Case Management Report and respectfully moves this honorable Court to postpone the hearing currently set for April 21, 2021 at 10:00 AM for a later date:

**1.**   **Summary of Facts and Theory of Liability and/or Defenses**

Chase originally filed the instant action to foreclose a mortgage on a multi-million dollar house on Fisher Island, FL, owned by Defendant Elizabeth Hazan ("Hazan"). Hazan executed the note at issue, secured by the mortgage on the Fisher Island property, in March 2007 for the benefit of Washington Mutual Bank, N.A.

In 2016, Hazan filed chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Florida. In June 2018, the bankruptcy court confirmed Hazan's plan. On December 2018, hazan received her discharge.

Based on the language in the confirmed bankruptcy plan, Chase amended the complaint in the instant action to limit it to one count – a declaratory action to "determine the validity,

1

A.167

enforceability and amount of the mortgage and assignment thereof." In addition, Chase voluntarily dismissed all defendants other than Hazan.

The Washington Mutual ("WAMU") mortgage lien was wiped out in the Chapter 11 Bankruptcy because the mortgagee participated in the bankruptcy, the plan was confirmed, the property was dealt with in the plan, and the mortgagee's rights are not preserved in the plan. To the contrary, the plan expressly delegates to the state court the determination of validity, and certainly does not preserve the mortgage lien. "Accordingly, whether a plan extinguishes a lien depends on the requirements embedded in § 1141(c). The express wording of § 1141(c) provides that a lien is extinguished if (1) the plan is confirmed, (2) the property subject to the lien is "dealt with" by the plan, and (3) neither the plan nor the order of confirmation preserves it." *In re N. New England Tel. Operations LLC*, 795 F.3d 343, 346–47 (2d Cir. 2015). Similarly, "We therefore hold that a reorganization plan has extinguished a lien pursuant to § 1141(c) only if four conditions are satisfied: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" under the terms of the plan; and (4) the lienholder has participated in the bankruptcy proceedings." *In re N. New England Tel. Operations LLC*, 795 F.3d 343, 348 (2d Cir. 2015); *see also In re Dynamic Int'l Airways, LLC*, 17-10814, 2018 WL 7017736, at *8 (Bankr. M.D.N.C. Aug. 6, 2018).

Plaintiff's action is barred by its failure to comply with Section 702.015, Florida Statutes. Without limitation, the Complaint must contain affirmative allegations expressly made by the Plaintiff at the time the proceeding is commenced that the Plaintiff is the holder of the <u>original</u> note secured by the mortgage or allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note under Section 673.3011, Florida Statutes. *See* Section 702.015(2), Florida Statutes. Here, Plaintiff alleges that "Plaintiff acquired ownership of the subject loan from

2

A.168

the Federal Insurance Corporation ("FDIC") as Receiver for Washington Mutual Bank pursuant to a September 25, 2008 Purchase and Assumption Agreement between the FDIC and Chase. Chase or its counsel is in physical possession of the Note and is, therefore, entitled to enforce the Note as a nonholder in possession of the instrument who has the rights of a holder pursuant to Section 673.3011(2) Florida Statutes." First Amended Complaint ¶6.   Plaintiff does not specifically allege that it is the holder of the <u>original</u> note as required by Section 702.015(2), Florida Statutes, and has not filed a certification of possession of the original note as required by Section 702.015(4), Florida Statutes.  Indeed, Washington Mutual lost the original note more than a decade ago.  In a prior case in this Court, *Washington Mutual Bank v. Elizabeth Hazan, et al.*, Case No. 08-15394 CA 01, on September 24, 2008, Washington Mutual Bank provided sworn testimony that the original note had been lost in an affidavit of lost note.  In fact, in *JPMorgan Chase Bank v. Elizabeth Hazan, et al.*, Case No. 09-25721 CA 20, JPMorgan Chase Bank submitted its own sworn testimony to the same effect in an affidavit of lost note filed on May 7, 2009.  But Plaintiff has failed to file a lost note affidavit in the instant case as required by Section 702.015(5), Florida Statutes, or to plead a reestablishment of lost note count in the Complaint that would allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note.

Plaintiff lacks standing.  It is well settled that standing must be possessed at the outset and cannot be cured post-filing. "A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" at the time the complaint is filed. *Russell v. BAC Home Loans Servicing, LP*, 239 So. 3d 98, 100 (Fla. 4th DCA 2018) (quoting *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012)). Plaintiff is not the holder of either the note or mortgage.  Other than Plaintiff's allegation that it "…is entitled to enforce the Note as a holder in possession and to foreclose the Mortgage

A.169

securing the Note," Plaintiff has not specifically alleged that it is the holder of the <u>original</u> note and has not filed a certification of possession of the original note. According to affidavits submitted by Washington Mutual Bank and JPMorgan Chase Bank in prior litigation, the note was lost long before this action was filed and Plaintiff has not filed a lost note affidavit or pleaded a count for reestablishment of lost note in the Complaint. Further, no allegations were made that the loan was assigned to JPMorgan Chase Bank nor was an assignment of mortgage attached to the complaint. Section 559.715 requires an assignee to give written notice to the debtor within 30 days of assignment and no such notice was provided to the Defendant, evidencing that the note was not endorsed properly or assigned.

Plaintiff cannot obtain a judgment without surrendering the original note. "[I]n the case of original mortgages and promissory notes, they are not merely exhibits but instruments which *must be surrendered* prior to the issuance of a judgment. The judgment takes the place of the promissory note. Surrendering the note is essential so that it cannot thereafter be negotiated.... Stated differently, surrender removes a note from the stream of commerce, preventing someone else from trying to enforce it against the defendant a second time." *Deutsche Bank Nat. Trust Co. v. Clarke*, 87 So. 3d 58, 62 (Fla. 4th DCA 2012) (emphasis in the original). "In a foreclosure action the promissory note must be removed from the stream of commerce because the note is a negotiable instrument**.** A plaintiff must surrender the original promissory note to the *court or court clerk* or provide a satisfactory reason for the failure to do so before the trial court can issue a final judgment. *ALS Maxim I LLC v. Katsenko*, 218 So. 3d 472, 474 (Fla. 2d DCA 2017) (citation omitted). Given that Washington Mutual lost the original note over a decade ago, the Plaintiff will not be able to surrender the note prior to the issuance of a judgment.  While "lost note" is an exception to the above, Plaintiff failed to file a lost note affidavit as required by Section 702.015(5), Florida

Statutes, as well as plead a reestablishment of lost note count in the Complaint that would allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note under Section 673.3011, Florida Statutes. Thus, unless Plaintiff amends, Plaintiff is precluded from obtaining a judgment for the reasons stated in this defense.

Defendant challenges the authenticity of the note and/or the authority of the person who executed the blank and original endorsement. According to sworn affidavits submitted by Washington Mutual and JPMorgan Chase Bank in prior litigation, the note was lost more than a decade ago. Additionally, the person signing the note never actually affixed their signature, which appears to be a "robosignature."

Plaintiff has failed to comply with conditions precedent to instituting suit, including failing to provide a proper notice of default and proper pre-acceleration notice to Defendant, and Defendant has been prejudiced thereby. Further, the Complaint is devoid of any allegation that a notice of pre-acceleration was given as required by the Mortgage, nor is a copy of any pre-acceleration notice purportedly given attached as an exhibit to the Complaint.

Plaintiff is barred from enforcing the alleged debt to the extent it exceeds the amount of the principal amount on which taxes were paid under section 201.08(1), Florida Statutes. The promissory note and mortgage, at origination, reference a debt with a principal amount of $3,825,000.00 secured by the mortgage. It appears that Washington Mutual paid certain taxes on the original principal amount of $3,825,000.00 when the mortgage was recorded. Chase is now seeking to enforce and collect a debt under the same promissory note and secured by the same mortgage with an increased principal amount. The principal amount is purportedly $4,282,432.36 according to paragraph 12 of the Complaint, an increased principal amount of $457,432.36. "In this district, a note or mortgage may not be enforced until the tax has been paid...." *Nikooie v.*

5

A.171

*JPMorgan Chase Bank, N.A.*, 183 So. 3d 424, 430 (Fla. 3rd DCA 2014).  "The failure to pay tax on the increased principal amount also precludes enforcement. § 199.282(4), Fla. Stat. (2006). That provision plainly pertains to mortgage liens for original loans and future advances alike." *Id.* at 431.  Thus, in the absence of payment of certain taxes on the increased amount of principal that Plaintiff is seeking, Plaintiff may not sue to recover the increased amount.

Plaintiff has failed to comply with Section 660.27, Florida Statutes. Section 660.27, titled: *Deposit of securities with Chief Financial Officer*, provides, in pertinent part:

> (1)   Before transacting any trust business in this state, every trust company and every state or national bank or state or federal association having trust powers shall give satisfactory security by the deposit or pledge of security of the kind or type provided in this section having at all times a market value in an amount equal to 25 percent of the issued and outstanding capital stock of such trust company, bank, or state or federal stock association or, in the case of a federal mutual association, an equivalent amount determined by the office, or the sum of $25,000, whichever is greater. However, the value of the security deposited or pledged pursuant to the provisions of this section shall not be required to exceed $500,000. Any notes, mortgages, bonds, or other securities, other than shares of stock, eligible for investment by a state bank, state association, or state trust company, or eligible for investment by fiduciaries, shall be accepted as satisfactory security for the purposes of this section.

Plaintiff is subject to this requirement.  Section 658.12(20), Florida Statutes defines "trust business" as "the business of acting as a fiduciary when such business is conducted by a bank, a state or federal association, or a trust company, or when conducted by any other business organization for compensation that the office does not consider to be de minimis."  In turn, Section 658.12(8), Florida Statutes, defines "fiduciary" as "…a trustee; committee, guardian, custodian, conservator, or other personal representative of a person, property, or an estate; registrar or transfer agent of, or in connection with, evidences of indebtedness of every kind and of stocks and bonds

6

A.172

and other securities; fiscal or financial agent; investment adviser; receiver; trustee in bankruptcy; assignee for creditors; or holder of any similar representative position or any other position of trust, including a person acting in any or all the capacities and performing any or all the functions enumerated in s. 660.34."

Without limitation, Plaintiff is transacting trust business in the State of Florida by, among other things, acquiring, holding, and transferring mortgages on property in Florida; receiving assignments of promissory notes; receiving payments from Florida consumers on mortgage notes; enforcing notes by filing and prosecuting this and other foreclosure actions; foreclosing on mortgages; purchasing foreclosed properties at judicial sales; and owning and selling properties acquired at judicial sales.  As such, Plaintiff is required to post a bond pursuant to Section 660.27, Florida Statutes, to transact business and bring lawsuits in the State of Florida.

Plaintiff's claim is barred because it has come to court with unclean hands.  Under the doctrine of unclean hands, "one who comes into equity must come with clean hands else all relief will be denied him regardless of the merits of his claim. It is not essential that the act be a crime; it is enough that it be condemned by honest and reasonable men…Recently, this court found that unclean hands is  tantamount  to  "[u]nscrupulous  practices,  overreaching,  concealment, trickery or other unconscientious conduct." *Shahar v. Green Tree Servicing LLC*, 125 So. 3d 251, 253 (Fla. 4th DCA 2013) (reversing the trial court's grant of summary judgment on the defense of unclean hands).  As set forth above, this action was instituted despite that the promissory note was lost more than a decade ago and the entire lien wiped out by the bankruptcy.

All or a portion of Plaintiff's claim is barred by the statute of limitations to the extent that Plaintiff seeks payment of amounts that became due more than five years before this action was filed.

7

A.173

HAZAN is the record owner of real property ("SUBJECT PROPERTY") located at 6913 Valencia Drive, Fisher Island, Florida 33109 and legally described as follows:

> Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida.

JPMORGAN filed its Complaint to Foreclose Mortgage on August 2, 2013 in which the sole count of the complaint sought foreclosure of a mortgage against the SUBJECT PROPERTY.

Thereafter, HAZAN filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Southern District of Florida under Case Number 16-10389-AJC.

On November 29, 2016, Bankruptcy Court entered an order granting JPMORGAN's motion for relief from stay in which the automatic stay was lifted so that Plaintiff could litigate its foreclosure action "…to the point of judgment, but not to conduct a foreclosure sale of the [SUBJECT PROPERTY]." (emphasis added).

Thereafter, on June 11, 2018, the Bankruptcy Court entered an order confirming HAZAN's Fourth Amended Plan of Reorganization ("BANKRUPTCY PLAN").

By virtue of the confirmation of the Bankruptcy Plan and by operation of the Bankruptcy Code, the Washington Mutual Bank mortgage, the rights to which JPMORGAN claims to hold, has been eliminated.

1.      "We therefore hold that a reorganization plan has extinguished a lien pursuant to § 1141(c) only if four conditions are satisfied: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" under the terms of the plan; and (4) the lienholder has participated in the bankruptcy proceedings." *In re N. New England*

A.174

*Tel. Operations LLC*, 795 F.3d 343, 348 (2d Cir. 2015); *See also In re Dynamic Int'l Airways, LLC*, 17-10814, 2018 WL 7017736, at *8 (Bankr. M.D.N.C. Aug. 6, 2018).

All of these conditions are satisfied: the BANKRUPTCY PLAN does not preserve the mortgage; the BANKRUPTCY PLAN was confirmed; the property is dealt with under the BANKRUPTCY PLAN; and the alleged mortgagee participated in the bankruptcy proceedings.

Therefore, the Washington Mutual Bank mortgage, the rights to which JPMORGAN claims to hold, has been extinguished.

Alternatively, the express text of HAZAN's BANKRUPTCY PLAN restricts JPMORGAN.

The BANKRUPTCY PLAN further states that "**If** the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final."

Further, on December 6, 2018, the Bankruptcy Court entered an order of discharge to HAZAN discharging her from, *inter alia,* the alleged amount due under the note.

Notwithstanding the entry of an order of discharge, JPMORGAN continues to send HAZAN monthly invoice statements for the discharged debt allegedly due under the note.

Hazan filed 13 affirmative defenses and a four count counterclaim in response to the amended complaint. The Court held a special set hearing on April 1, 2021 on Chase's (i) motion to strike the affirmative defenses and (ii) motion to dismiss the counterclaim. At the hearing, the Court struck all but three affirmative defenses and three of the four counts of the

counterclaim.[1] Hazan does not agree with the Court's position and is planning on moving for rehearing and or appeal.

The Court held that, the only remaining affirmative defenses are that (i) Chase allegedly did not pay documentary stamps on the extra principal set forth in the loan modification; (ii) Chase allegedly did not provide security with the State of Florida as required to conduct a trust business in the State; and (iii) Chase allegedly did not send Hazan an acceleration notice. The only remaining counterclaim is that Hazan is entitled to quiet title to the property if it is determined that Chase does not have a valid mortgage. The Court stated that Hazan can seek to amend the FCCPA count of her counterclaim. Hazan does not agree with the Court's ruling and is planning on moving for rehearing and or appeal.

## 2.  Pleading Status and Proposed Deadline for Amendment

Chase is currently traveling under an amended complaint that has one count for declaratory relief, as noted above. Hazan filed an answer, affirmative defenses and counterclaim. Hazan filed a motion to amend her affirmative defenses and counterclaim in advance of the April 1, 2021 special set hearing. **Hazan proposes June 1, 2021 as the deadline for Hazan to amend her affirmative defenses and counterclaim. Chase will then have the standard amount of time to respond to Hazan's amended pleading**.

## 3.  Status of Outstanding Discovery and Proposed Schedule and Deadlines

a.       To date, Chase and Hazan have each served a request for production of documents and each has responded to the other's request.

---

[1] Two business days after the hearing, Chase circulated draft orders granting the motions in part, as ruled on by the Court at the hearing. Hazan, however, does not agree to the terms of the orders, and said she wants to get a transcript of the hearing.

A.176

b. Chase intends to depose Chase, its agents, attorneys and other parties, Washington Mutual, its agents, attorneys and other parties, and, if appropriate, other fact witnesses Chase discloses.

c. Hazan does anticipates the need for expert witnesses.

d. **Hazan proposes December 1, 2021 as the deadline to take fact discovery, subject to extensions**.

4. **Dispositive Motions anticipated and deadline for briefing such motions**.

Hazan anticipates filing a summary judgment motion. Hazan **proposes a deadline of January 1, 2022 (or 30 days after the discovery cutoff) to file the motion; a deadline for Hazan to respond to the motion of 20 days after the filing of the motion; and a deadline for Chase to reply to Hazan's response of 20 days thereafter.**

5. **Mediation Efforts**

Chase and Hazan have had limited settlement discussions, but have not yet engaged in mediation. **Chase proposes a deadline for mediation of January 1, 2022**. Hazan is respectfully requesting the Court ordering Plaintiff Chase and Defendant Hazan to mediation within the next sixty days.

6. **A Statement of Anticipated Date as to Trial Readiness**.

Depending on the course of discovery, Hazan's amended response to the amended complaint and the outcome of Chase and Hazan's anticipated summary judgment motions, Hazan **anticipates being ready for trial by April 1, 2022, although that date may change depending on the course of the litigation**. Chase requested a bench trial. Hazan requested a jury trial, but the Court struck the jury demand at the April 1, 2021. Hzan is planning to move

11

A.177

for rehearing and appeal the latest ruling of Court. The trial will therefore be a bench trial assuming the Court or the Appeal Court doesn't reverse the Court latest ruling.

Hazan is respectfully asking the Court to postpone[2] the hearing currently set for April 21, 2021 at 10:00 AM.

Dated:  April 14, 2021                           Respectfully submitted,

                                                 _s/ Elizabeth Hazan_____
                                                 Elizabeth Hazan,
                                                 6913 Valencia Drive
                                                 Miami, Florida 33109
                                                 Telephone:  305.781.4176
                                                 Email:  elizabethhazan07@gmail.com
                                                 Pro se Defendant

---

[2]  Hazan contacted Plaintiff's counsel who has no objection to the rescheduling of the Case Management Conference for a later date.

A.178

**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019031300052001003E6738

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| **Document ID: 2019031300052001** | Document Date: 01-02-2018 | Preparation Date: 03-13-2019 |

Document Type:  DEED
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| FAE LAW<br>71 ELM STREET<br>WORCESTER, MA 01609<br>smurphy@faelaw.com | BLI CO. INC.<br>10 TURNPIKE ROAD<br>SOUTHBOROUGH, MA 01772 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot 1A | 1 EAST 62ND STREET |

Property Type:  SINGLE RESIDENTIAL CONDO UNIT

**CROSS REFERENCE DATA**

CRFN_____  *or*  DocumentID_____  *or*  _____ Year_____ Reel____ Page_____  *or*  File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| REAL ESTATE HOLDINGS GROUP, L.D.C.<br>60 MARKET SQUARE<br>BELIZE CITY<br>BELIZE | 1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC<br>521 DINAH'S CORNER ROAD<br>DOVER, DE 19904 |

**FEES AND TAXES**

| Mortgage : | | Filing Fee: | |
|---|---|---|---|
| Mortgage Amount: | $              0.00 | | $              125.00 |
| Taxable Mortgage Amount: | $              0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $              0.00 |
| TAXES:   County (Basic): | $              0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $              0.00 | | $              0.00 |
| Spec (Additional): | $              0.00 | | |
| TASF: | $              0.00 | | |
| MTA: | $              0.00 | | |
| NYCTA: | $              0.00 | | |
| Additional MRT: | $              0.00 | | |
| TOTAL: | $              0.00 | | |
| Recording Fee: | $              52.00 | | |
| Affidavit Fee: | $              0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed          03-13-2019 14:37
City Register File No.(CRFN):
**2019000082515**

*Annette M Hill*

*City Register Official Signature*

A.179

Form 8002* 5/85 – 25M—Bargain and sale Deed with Covenant against Grantor's Acts-Individual or Corporation (single sheet)
CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the 2ᴺᴰ day of JANUARY , 2018

BETWEEN

**REAL ESTATE HOLDINGS GROUP, L.D.C.**
**located at 60 Market Square, Belize City, Belize,**

party of the first part, and

**1 EAST 62ᴺᴰ STREET APT 1A NYC New York 10065 LLC**
**Located at 521 Dinah's Corner Road, Dover, DE 19904,**

Party of the second part,

**WITNESSETH**, that the party of the first part, in consideration of ten dollars [$10.00] and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

**SEE SCHEDULE A ANNEXED HERETO AND MADE A PART HEREOF.**

Except as otherwise specifically permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated 07/22/2013 and recorded on 08/12/2013 in CRFN 2013000317610.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

**IN THE PRESENCE OF:**

Grantor:  REAL ESTATE HOLDINGS GROUP, L.D.C.

By:  _Raymond Houle_
_Raymond Houle, Authorized Signatory_

A.180

SCHEDULE A
PROPERTY DESCRIPTION

The land referred to in this Deed is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration).

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

BLOCK  1377          LOT 1100          UNIT 1A

FOR INFORMATION ONLY: Said premises are also known as 1 East 62nd Street No. 1A New York, New York

State of New York, County of _____ ss.:

On the ___ day of ___ in the year 2018, before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of _____ ss.:

On the ___ day of ___ in the year 2018, before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

State (or District of Columbia, Territory, or Foreign Country) of FLORIDA ss.:

On the 2ND day of JANUARY in the year 2018 before me, the undersigned, personally appeared RAYMOND HOULE personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____miami_____ in _____Florida_____
(insert the City or other political subdivision)   (and insert the State or County or other place the acknowledgment was taken)

RAUL CHAVARRIA
MY COMMISSION # FF 962231
EXPIRES: March 6, 2020
Bonded Thru Budget Notary Services

_____
(signature and office of individual taking acknowledgment)

*Bargain and Sale Deed*
WITH COVENANT AGAINST GRANTOR'S ACTS

_____

**REAL ESTATE HOLDINGS GROUP, L.D.C.**

**TO**

**1 EAST 62ND STREET APT 1A NYC New York 10065 LLC**

SECTION:

BLOCK:     1377

LOT:       1100

COUNTY OR TOWN:   NEW YORK

TAX BILLING ADDRESS:
1 EAST 62ND STREET, APT 1A
NEW YORK, NEW YORK

RETURN BY MAIL TO:

BLI Inc.
10 Turnpike Road
Southborough, MA
01772

| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER** |  |
|---|---|

2019031300052001003SA9B9

| **SUPPORTING DOCUMENT COVER PAGE** | **PAGE 1 OF 1** |
|---|---|

**Document ID: 2019031300052001**  Document Date: 01-02-2018  Preparation Date: 03-13-2019
Document Type: DEED

**ASSOCIATED TAX FORM ID:**   2019022800011

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

RP - 5217 REAL PROPERTY TRANSFER REPORT                                          2

A.183

**REAL PROPERTY TRANSFER REPORT**

STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

# RP - 5217NYC

**FOR CITY USE ONLY**

C1. County Code

C2. Date Deed Recorded — Month / Day / Year

C3. Book OR

C4. Page

C5. CRFN

---

## PROPERTY INFORMATION

**1. Property Location**
1 EAST 62ND STREET 1A
STREET NUMBER — STREET NAME
MANHATTAN
BOROUGH
10065
ZIP CODE

**2. Buyer Name**
1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC
LAST NAME / COMPANY — FIRST NAME

LAST NAME / COMPANY — FIRST NAME

**3. Tax Billing Address**
Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY — FIRST NAME
STREET NUMBER AND STREET NAME — CITY OR TOWN — STATE — ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed** 1 # of Parcels OR ☐ Part of a Parcel

**4A. Planning Board Approval - N/A for NYC**
**4B. Agricultural District Notice - N/A for NYC**

**5. Deed Property Size**
FRONT FEET X DEPTH OR ACRES

Check the boxes below as they apply:
**6. Ownership Type is Condominium** ☑
**7. New Construction on Vacant Land** ☐

**8. Seller Name**
REAL ESTATE HOLDINGS GROUP, L.D.C.
LAST NAME / COMPANY — FIRST NAME

LAST NAME / COMPANY — FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

A ☑ One Family Residential
B ☐ 2 or 3 Family Residential
C ☐ Residential Vacant Land
D ☐ Non-Residential Vacant Land
E ☐ Commercial
F ☐ Apartment
G ☐ Entertainment / Amusement
H ☐ Community Service
I ☐ Industrial
J ☐ Public Service

---

## SALE INFORMATION

**10. Sale Contract Date** 1 / 2 / 2018
Month / Day / Year

**11. Date of Sale / Transfer** 1 / 2 / 2018
Month / Day / Year

**12. Full Sale Price** $ 0
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

A ☐ Sale Between Relatives or Former Relatives
B ☑ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type **not** Warranty or Bargain and Sale (Specify Below)
F ☐ Sale of Fractional or Less than Fee Interest ( Specify Below )
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below )
J ☐ None

---

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class** R 4

**16. Total Assessed Value (of all parcels in transfer)** 1 3 6 1 3 0

**17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )**

MANHATTAN 1377 1100

201902280001120102

A.184

**CERTIFICATION**    I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYER**       03/01/2019       **BUYER'S ATTORNEY**

BUYER SIGNATURE      DATE       LAST NAME       FIRST NAME

767 WALKER RD

STREET NUMBER     STREET NAME (AFTER SALE)      AREA CODE     TELEPHONE NUMBER

DOVER       DE      19904-2753      **SELLER**      03/01/2019

CITY OR TOWN       STATE     ZIP CODE     SELLER SIGNATURE      DATE

2019022800011201

A.185

## NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019031300062001004EA72E

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| **Document ID:** 2019031300062001 | Document Date: 03-07-2019 | Preparation Date: 03-14-2019 |
| Document Type: DEED | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| FAE LAW<br>71 ELM STREET<br>WORCESTER, MA 01609<br>212-481-5858<br>smurphy@faelaw.com | BLI CO. INC.<br>10 TURPIKE ROAD<br>SOUTHBOROUGH, MA 01772 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot 1A | 1 EAST 62ND STREET |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year_____ Reel____ Page_____ or File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC<br>521 DINAH'S CORNER ROAD<br>DOVER, DE 19904 | 1 EAST 62ND STREET APT 1A LLC<br>767 WALKER RD<br>DOVER, DE 19904-2753 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 26,647.50 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $7,480.00 + $41,120.00 = $ | 48,600.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE | |
| MTA: | $ | 0.00 | OF THE CITY REGISTER OF THE | |
| NYCTA: | $ | 0.00 | CITY OF NEW YORK | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 03-15-2019 10:17 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 52.00 | 2019000085399 | |
| Affidavit Fee: | $ | 0.00 | | |

*Annette M Hill*

*City Register Official Signature*

A.186

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

**THIS INDENTURE,** made the 7th day of March, 2019

**BETWEEN**

**1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC**
**Located at 521 Dinah's Corner Road, Dover, DE 19904**

party of the first part, and

**1 EAST 62ND STREET APT 1A LLC**
**Located at 767 Walker Road, Dover, DE 19901**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars [$10.00] and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

**SEE SCHEDULE A ANNEXED HERETO AND MADE A PART HEREOF.**

Except as otherwise specifically permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated 01/02/2018 and recorded on 3-13-19 in CRFN 2019000082515

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN THE PRESENCE OF:

Grantor: **1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC**

By: _____

Kris Jones, Mgh.

A.187

## SCHEDULE A
## PROPERTY DESCRIPTION

The land referred to in this Deed is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration).

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

BLOCK 1377      LOT 1100      UNIT 1A

FOR INFORMATION ONLY: Said premises are also known as 1 East 62nd Street No. 1A New York, New York

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE**

State of New York, County of        ss:

On the      day of      in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of        ss:

On the      day of      in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

Commonwealth of Massachusetts, ss:

On the 7th  day of March in the year 2019 before me, the undersigned, personally appeared Kris Jones personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)   is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

Boston             in             Massachusetts
(insert the City or other political subdivision)     (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

VICTORIA FERMINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
June 13, 2025

**BARGAIN AND SALE DEED**
WITH COVENANT AGAINST GRANTOR'S ACTS

SECTION
BLOCK : 1377
LOT: 1100
COUNTY OR TOWN: NEW YORK
STREET ADDRESS: 1 EAST 62ND STREET, APT 1A
NEW YORK, NEW YORK

1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC

TO

1 EAST 62ND STREET APT 1A LLC

RETURN BY MAIL TO:

BLI Co. Inc.
10 Turnpike Road
Souhborough, MA 01772

A.189

| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER** |  |
|---|---|


2019031300062001004S69AF

| **SUPPORTING DOCUMENT COVER PAGE** | **PAGE 1 OF 1** |
|---|---|

**Document ID: 2019031300062001**  Document Date: 03-07-2019  Preparation Date: 03-14-2019
Document Type: DEED

**ASSOCIATED TAX FORM ID:**   2019022800015

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

RP - 5217 REAL PROPERTY TRANSFER REPORT                    2

A.190

| FOR CITY USE ONLY | | |
|---|---|---|
| **C1.** County Code | | **C2.** Date Deed Recorded — Month / Day / Year |
| **C3.** Book OR **C5.** CRFN | | **C4.** Page |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

## PROPERTY INFORMATION

**1. Property Location** — 1 EAST 62ND STREET 1A — MANHATTAN — 10065
STREET NUMBER | STREET NAME | BOROUGH | ZIP CODE

**2. Buyer Name** — 1 EAST 62ND STREET APT 1A LLC
LAST NAME / COMPANY | FIRST NAME
LAST NAME / COMPANY | FIRST NAME

**3. Tax Billing Address** — Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY | FIRST NAME
STREET NUMBER AND STREET NAME | CITY OR TOWN | STATE | ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed** — | 1 | # of Parcels OR | Part of a Parcel

**4A.** Planning Board Approval - N/A for NYC
**4B.** Agricultural District Notice - N/A for NYC

**5. Deed Property Size** — FRONT FEET X DEPTH OR ACRES

Check the boxes below as they apply:
**6.** Ownership Type is Condominium ☑
**7.** New Construction on Vacant Land ☐

**8. Seller Name** — 1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC
LAST NAME / COMPANY | FIRST NAME
LAST NAME / COMPANY | FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A ☑ One Family Residential | C | Residential Vacant Land | E | Commercial | G | Entertainment / Amusement | I | Industrial |
|---|---|---|---|---|---|---|---|---|
| B | 2 or 3 Family Residential | D | Non-Residential Vacant Land | F | Apartment | H | Community Service | J | Public Service |

## SALE INFORMATION

**10. Sale Contract Date** — 3 / 7 / 2019 (Month / Day / Year)

**11. Date of Sale / Transfer** — 3 / 7 / 2019 (Month / Day / Year)

**12. Full Sale Price $** — 4,112,000
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A | Sale Between Relatives or Former Relatives |
|---|---|
| B | Sale Between Related Companies or Partners in Business |
| C | One of the Buyers is also a Seller |
| D | Buyer or Seller is Government Agency or Lending Institution |
| E | Deed Type **not** Warranty or Bargain and Sale (Specify Below) |
| F | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | Significant Change in Property Between Taxable Status and Sale Dates |
| H | Sale of Business is Included in Sale Price |
| I | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J ☑ | None |

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class** — R 4

**16. Total Assessed Value (of all parcels in transfer)** — 1,361,30

**17. Borough, Block and Lot / Roll Identifier(s) ( If more than three, attach sheet with additional identifier(s) )**

MANHATTAN 1377 1100

201902280001520101

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

| | **BUYER** | | **DATE** | | | **BUYER'S ATTORNEY** | |
| BUYER SIGNATURE | | 3/7/19 | | LAST NAME | | FIRST NAME |

767 WALKER RD

| STREET NUMBER | STREET NAME (AFTER SALE) | | AREA CODE | TELEPHONE NUMBER |

DOVER

**SELLER**

| CITY OR TOWN | STATE | ZIP CODE | SELLER SIGNATURE | DATE |
| DOVER | DE | 19904-2753 | | 03/07/2019 |

2019022800015201

A.192

Form CGFCRD3T  (2/16/2021)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

In re:
Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109
SSN: xxx–xx–7473

## NOTICE OF HEARING

**PLEASE TAKE NOTICE**  that a hearing will be held before the Honorable A. Jay Cristol to consider the following:

**Motion to Dismiss Case with Prejudice Filed by Interested Party Chris Kosachuk. ECF#1161**

1. This matter has been set on the Court's motion calendar for a non–evidentiary hearing. The allotted time for this matter is ten minutes. The hearing will be held:

   **Date:**       **June 30, 2022**
   **Time:**       **03:00 PM**
   **Location:**   **Telephone by CourtSolutions LLC**

2. The hearing scheduled by this notice will take place only by telephone. DO NOT GO TO THE COURTHOUSE. Attorneys must advise their clients not to appear at the courthouse. Individuals not represented by counsel will be able to use the telephonic services free of charge. Although conducted by telephone, the hearing is a court proceeding. The formalities of the courtroom must be observed. All participants must exercise civility, and otherwise conduct themselves in a manner consistent with the dignity of the Court.

3. To participate through CourtSolutions, you must make a reservation in advance no later than 3:00 p.m., one business day before the date of the hearing. Reservations should be arranged online at https://www.court–solutions.com. If a party is unable to register online, a reservation may also be made by telephone at (917) 746–7476.

4. The movant, or movant's counsel if represented by an attorney, must:

   (a)   serve a copy of this notice of hearing and, unless previously served, the above–described document(s) on all required parties within the time frame required by the Federal Rules of Bankruptcy Procedure, the local rules of this Court, and orders of the Court, and

   (b)   file a certificate of service as required under Local Rules 2002–1(F) and 9073–1(B).

   Any party who fails to properly serve any pleading or other paper may be denied the opportunity to be heard thereon.

5. PLEASE NOTE: No person may record the proceedings from any location by any means. The audio recording maintained by the Court will be the sole basis for creation of a transcript that constitutes the official record of the hearing.

**Dated: 6/9/22**

**CLERK OF COURT**
By: Susan Gutierrez
Courtroom Deputy

Page 1

1                   UNITED STATES BANKRUPTCY COURT

                      SOUTHERN DISTRICT OF FLORIDA

2

3                                   Case No.:  16-10389-AJC

                                    Chapter 11

4

5    In Re:

6    LIZA HAZAN,

7         Debtor.

_____/

8

9

10                         EXCERPT

11                      ECF # 1076

12                      May 3, 2022

13

14

15         The above-entitled cause came on for a

16   telephonic hearing before the HONORABLE

17   A. JAY CRISTOL, one of the Judges of the UNITED

18   STATES BANKRUPTCY COURT, in and for the SOUTHERN

19   DISTRICT OF FLORIDA, on Tuesday, May 3, 2022,

20   commencing at or about 3:00 p.m., and the following

21   proceedings were had:

22

23

24         Transcribed from a digital recording by:

                 Helayne Wills, Court Reporter

25

Page 2

1    APPEARANCES VIA COURTSOLUTIONS:

2

          JOEL M. ARESTY, P.A., by
3        JOEL M. ARESTY, ESQ.,
          and
4        DAVID W. LANGLEY, ESQ.,
          on behalf of the Debtor

5

6        HABER LAW, P.A., by
          JESSICA L. KOPAS, ESQ.,
7        on behalf of Valencia Estates

8

          OFFICE OF THE UNITED STATES TRUSTEE, by
9        ADISLEY CORTEZ-RODRIGUEZ, ESQ.,
          on behalf of the U.S. Trustee

10

11       ALSO PRESENT VIA COURTSOLUTIONS
          ECRO - Electronic Court Reporting Operator
12       LIZA HAZAN
          CHRIS KOSACHUK

13

14

15

16

17

18

19

20

21

22

23

24

25

1          ECRO:  The time is now 3 o'clock.  Good

2     afternoon, everyone.  Today is Tuesday, May 3, 2022.

3     We are here in front of Judge Cristol's calendar.

4               This is a recorded proceeding, because

5     it's the only way we can have a court transcript.

6     Only the court is authorized to record these

7     proceedings.  Any other recordings are a violation

8     of the Florida law, and may be subject to sanctions.

9               Please remember to say your name clearly

10    when you make your appearance, and spell your last

11    name.  Also, please identify your client if you have

12    one.  Remember to wait to speak until you are called

13    upon.  This is to avoid interrupting each other.

14               Your Honor, the matter for this afternoon

15    is Case Number 16-10389, Liza Hazan.  I have

16    Mr. Joel Aresty on the line.

17               If you can state your appearance, sir.

18               MR. ARESTY:  Yes.  Thank you.  Good

19    afternoon, Your Honor.  Joel Aresty, A-R-E-S-T-Y,

20    representing the debtor.

21               ECRO:  Thank you.

22               I also have David Langley on the line.  If

23    you can make an appearance, sir.

24               MR. LANGLEY:  Yes.  Thank you.  David

25    Langley, L-A-N-G-L-E-Y, also representing Ms. Hazan.

Page 4

1          ECRO:  Thank you.

2          I also have Mr. Chris Kosachuk.  If you

3    can state an appearance, sir.

4          MR. KOSACHUK:  Chris Kosachuk,

5    K-O-S-A-C-H-U-K, on behalf of myself.

6          ECRO:  Thank you.

7          I have Jessica Kopas.

8          MS. KOPAS:  Yes.  Good afternoon.  Jessica

9    Kopas, K-O-P-A-S, of Haber Law, on behalf of

10   Valencia Estates Homeowners' Association.  I am here

11   appearing in Rebecca Casamayor's stead, as she's ill

12   today.

13         ECRO:  Thank you.

14         I also have Adisley Cortez-Rodriguez on

15   the line.

16         MS. CORTEZ-RODRIGUEZ:  Yes.  Good

17   afternoon.  Adisley Cortez-Rodriguez, on behalf of

18   the U.S. Trustee.

19         ECRO:  That's it for appearances, Your

20   Honor.

21         THE COURT:  Very well.  The matter on the

22   calendar is Court Paper 1076, filed by Mr. Joel

23   Aresty.

24         Mr. Aresty, do you wish to proceed?

25         MR. ARESTY:  Yes, Your Honor.  I'm sorry,

Page 5

1    Judge.  I was muted.

2              I believe that Mr. Langley is going to tie

3    these matters in and present the initial argument.

4    I am here because I had all of the communications

5    with Rebecca Casamayor here and Mr. Haber since the

6    beginning of this, and have personal knowledge of

7    it.

8              THE COURT:  All right.  Mr. Langley, are

9    you ready to proceed?

10             MR. LANGLEY:  Yes, Judge.  Thank you.

11   David Langley again for Ms. Hazan.

12             Judge, I'll also be arguing the two other

13   matters that are on the docket that concern

14   Mr. Kosachuk, as far as tying the two together.

15             The concern we have, if you've read the

16   motion for order to show cause, where we've listed

17   the number of different times where Mr. Kosachuk has

18   taken information that he's obtained from hearings

19   and used it against Ms. Hazan, impersonating her,

20   impersonating Raymond Houle, things of that nature,

21   contacting her creditors.  We filed a notice of

22   filing just this morning showing that he contacted

23   Andrew Zaron, the attorney for Chase Bank, who's the

24   first mortgage holder, trying to influence Chase

25   Bank in this matter.

1          We don't want to discuss any details or

2     get into any kind of an evidentiary hearing

3     concerning Ms. Hazan's financial matters with

4     Mr. Kosachuk on the phone.  We've done that before

5     and he's used that to his advantage, and we don't

6     want that to happen again.

7          I would also point out that Valencia has a

8     motion for stay relief.  I don't believe they

9     properly complied with the local rules, and that's

10    not set for today.  So I'm not sure how much the

11    Court wants to hear, but we have what Mr. Aresty

12    filed, a relatively simple motion to extend plan

13    payments, basically just a minor modification of a

14    confirmed plan, just to extend out the time for

15    Ms. Hazan to pay Valencia on the proof of claim --

16    remaining obligation under the proof of claim.

17         The simple version of it, Judge, is, they

18    want to take her house away for $58,000 in unpaid

19    payments.  This is a multi-million-dollar home.

20         They have it down as $60,715.  I guess

21    they've added some interest.  Essentially, the proof

22    of claim was for 195,000.  Ms. Hazan has paid

23    128,000 of that, plus late fees; total payments of

24    134,000.

25         The proof of claim included $56,000 in

Page 7

1    unawarded attorney's fees that no judge has

2    assessed.  So basically, what they're trying to

3    collect is 56,000 in attorney's fees, plus whatever

4    they've added to that, plus whatever interest,

5    brings it up to $60,000, and they'd like to sell

6    this $20 million-dollar home to get their $60,000.

7           We're simply asking the Court to allow

8    Ms. Hazan to extend the plan payments under the

9    plan, modify the plan to allow that to go forward.

10   We're requesting this one-timer extension.

11          We point out that Valencia has a very

12   substantial equity cushion.  In our plan, in

13   reference to some of the secured creditors, we've

14   referenced Judge Raymond Ray's opinion in 1996,

15   In re: DiMaria, 202 Bankruptcy 634, which states

16   that a large equity cushion can stand as adequate

17   protection.  In that case he referenced that the

18   equity cushion in the property was more than the

19   claim with the IRS, so they were protected in that

20   manner.

21          I did the math on this case, and the

22   equity cushion in Ms. Hazan's home, based on some of

23   the sales that we've seen, a sale last year of

24   $12 million for a home similar to hers that is not

25   on the water, new homes going for 26 million to

1   30 million.

2           Even just assuming some basic numbers from

3   Ms. Hazan's property, it's at least 200,000 times --

4   the equity cushion is 200,000 times the amount of

5   the Valencia claim.  That's their equity cushion.

6   And they're not satisfied with that, and they want

7   immediate relief to go sell the house.

8           As Mr. Aresty has pointed out in his very

9   well-written motion, their response, Mr. Haber's

10  response was, "She doesn't deserve to live here.

11  She shouldn't be in this association."

12          I don't know if that's because she's a

13  debtor in bankruptcy, or for other reasons that they

14  don't happen to like Ms. Hazan, but they want to

15  take her house away for $60,000.

16          You're well aware, Judge, of the issues

17  that Ms. Hazan has encountered trying to sell or

18  refinance the home.  We've been in front of you a

19  number of times on this.  Since the 11th Circuit

20  ruled, and that ruling has become final, she should

21  have been able to sell or refinance the home, but

22  Mr. Kosachuk, and before him, NLG, have been taking

23  step after step to try to prevent that, including

24  the latest filing that we're going to be addressing

25  today, the recording of an eighth lis pendens.

1          Ms. Casamayor in her response pretends to

2    trivialize that, and say, "Why doesn't this Chapter

3    11 debtor just go out and borrow $100,000," and if

4    Ms. Casamayor or her firm is willing to lend that,

5    I'm sure Elizabeth would be happy to do that, but

6    nobody is going to give an unsecured loan to a

7    Chapter 11 debtor.  I think, nobody is more aware of

8    that than you, Judge, with your time on the Bench.

9          And we have shown through affidavit and

10   declarations that Ms. Hazan is actively trying to

11   refinance the home, and has a lender in place, which

12   we represent is the case, and is ready to close if

13   she can provide this hard money lender with title

14   insurance.

15         We've in prior motions filed a declaration

16   of the title attorney saying, "We can't do that

17   until we clear up these issues caused by

18   non-creditor, non-party in interest, Christopher

19   Kosachuk."

20         So we're asking Valencia to patiently wait

21   while we resolve those issues and then everything

22   will get paid.  And they should know that.  They

23   should know that no lender is going to loan money

24   against this house without clearing up all recorded

25   liens against the house.

1           Everybody gets paid when the house gets

2     refinanced or sold.  That should be understood by

3     anybody who has lived in South Florida or has ever

4     owned a home.  And that's what we propose to do.

5     But Ms. Hazan cannot sell or refinance until she

6     resolves these other matters, and that in part, you

7     know, rests on what Your Honor decides on the two

8     motions that we have today against Mr. Kosachuk.

9           Also, Ms. Casamayor's unsworn argument

10    that Ms. Hazan is not being honest about this loan,

11    because they haven't received an estoppel letter.

12    That's equally disingenuous.  Nobody is going to

13    request an estoppel letter until they have a date.

14    You ask for the payment amount through a closing

15    date.  We won't have a closing date until we have a

16    title commitment, and we won't have a title

17    commitment until we get rid of these lis pendens and

18    any further motions or appeals Mr. Kosachuk is

19    trying to take in order to simply cause damage to

20    the debtor.  We do have a lender ready to go.

21          Also, I'm sure Your Honor is well aware of

22    how COVID has impacted Ms. Hazan.  As we pointed out

23    at many hearings before, her business is to place

24    large chain retailers and restaurants in shopping

25    centers.  We've had shopping centers close down for

1   a good part of several years, and even now they're

2   not opening back up or running as normal.  That's

3   impacted her.

4            We think Valencia, the homeowners'

5   association, is well aware of that, because

6   Ms. Hazan's neighbor next to her, who happens to be

7   the president of the HOA, obtained a $10 million PPP

8   loan for his business.  And so I think they know

9   that even residents at Fisher Island have been

10  impacted by COVID.  And Ms. Hazan certainly has.

11           We're happy to discuss that further, but

12  not with Mr. Kosachuk on the line, or provide any

13  information that Valencia requires to back that up.

14  But I think it's pretty clear to Your Honor, knowing

15  this case, that COVID even impacted Ms. Hazan's

16  ability to generate income and make these payments.

17  So we're asking for an extension of the payment plan

18  as set forth in Mr. Aresty's motion.

19           We want to stay any state court action

20  pending a final resolution.  We're asking the Court

21  to toll any deadlines or payment terms until this

22  entire matter can be resolved.  And we're asking, if

23  the Court is willing, to grant it today, this

24  modification of the plan to extend the plan

25  payments.

Page 12

```
1           THE COURT:  By what authority can I modify
2    a confirmed plan?
3           MR. LANGLEY:  Judge, that's set out in the
4    motion.  It's an individual debtor.  The Court has
5    the ability -- first of all, you reserved
6    jurisdiction in the confirmation order to modify.
7    As Mr. Aresty set out in the motion, there's
8    authority for that.  In the motion there's citations
9    to several cases where plans were -- Chapter 11
10   plans were confirmed -- after confirmation.
11          Also, Judge, in the motion we cite to the
12   Kirsack (phonetic), which shows the congressional
13   intent to provide debtors additional time.  They
14   specifically reference Chapter 13, and allow that to
15   be extended two years.
16          Here in this case, following that same
17   congressional intent, that would provide for an
18   extension of the payments under Ms. Hazan's case up
19   until 2025.  We don't need that much time.  We just
20   want to extend out just the payments on the balance
21   due under the plan, and as set forth in the motion.
22          THE COURT:  And can you read me the
23   sentences that reserve the right to modify the plan?
24          MR. ARESTY:  Your Honor, maybe I could --
25   I could do that if Mr. Langley doesn't have his
```

Page 13

```
1    fingers on it.

2              THE COURT:  Go ahead.

3              MR. ARESTY:  Judge, I'm talking at 1097,

4    Paragraph 22.  The motion cites to 11 United States

5    Code 1127(e) -- small "e" in parentheses.  "If the

6    debtor is an individual the plan may be modified any

7    time after confirmation of the plan, but before the

8    completion of payments under plan, whether or not

9    the plan has been substantially consummated on

10   request of the debtor to increase or reduce the

11   amount of payments of a particular class, or extend

12   or reduce the time period for such payments, or

13   alter the amount of distribution to a creditor whose

14   claim is provided by the plan."

15             And then, as Mr. Langley also points out,

16   the confirmation order at 17(n) calls for also,

17   "expressly retain jurisdiction to modify the plan,

18   either before or after confirmation."

19             Thank you, Judge.

20             THE COURT:  Thank you, Mr. Aresty.

21             Counsel for Valencia, do you wish to be

22   heard?

23             MS. KOPAS:  I do, Judge.  I'm going to

24   take a few -- unpack some of the arguments the best

25   I can.  I'm going to start with one of the cases
```

1   that were cited, the Olson case.

2          Ms. Hazan lived in one of the most wealthy

3   ZIP codes in the United States.  The case that they

4   cite in support of their position has to do with a

5   debtor/signer, whose plan had to be modified,

6   because he could no longer comply with the payment

7   schedule set forth in the plan, because the

8   government chose (unintelligible), which the debtor

9   relied.  That's hardly the situation that exists

10  with Ms. Hazan.

11         Also, Judge, with respect to modification

12  of a plan under 1127(b), post-confirmation plan

13  modifications are open-ended, but they must be done

14  where the circumstances warrant, Judge.  Equitable

15  considerations typically guide the Court in the

16  determination whether circumstances warrant the

17  proposed modification.

18         Judge, we will assert that circumstances

19  are not warranted here for this modification.  These

20  expenses that are being paid have been pending, and

21  go back as far as 2012, well before the pandemic.

22  The stipulation of settlement of claim was approved

23  in November of 2016, and the settlement now is owed

24  by the debtor for past due maintenance and

25  assessments and other charges.  That's separate and

1    apart, Judge, from the ongoing assessments that she

2    owes to the association.

3           The debtor was supposed to finish making

4    payments in June of '22 -- June of 2022 -- and now

5    she wants the payments to go into May of 2024.  We

6    just don't see, Judge, how her plan should in equity

7    be modified.  This is a woman that has a Bentley

8    parked in front of her house.

9           The CARES Act, when it contemplated

10   Chapter 13 debtors, I don't know, but I'm certain

11   they probably didn't contemplate Ms. Hazan and her

12   home on Fisher Island.  And the fact that she cannot

13   keep up with these payments is indeed concerning.

14          The cases that they cite are not on point.

15   They have to do specifically with those that the

16   Care Act thought of with respect to modification of

17   a plan, a farmer who could no longer pay his debt.

18          This debtor is someone that is a very

19   wealthy woman.  She drives a Bentley, or her husband

20   drives a Bentley.  She makes income.  Her neighbors

21   should certainly not have to come up with funds to

22   cover the fees that she owes.  I haven't heard

23   anything from opposing counsel that would justify

24   modification of the plan, into as late a date as

25   2024.

Page 16

1          Judge, with that being said, we would

2     request that the objection be sustained, and order

3     that the debtor make the required plan payment to

4     the association in the amount of $20,312.50 that was

5     due on April 2nd, within two days of the Court's

6     order.

7          Other than that, we would further wish or

8     further request that all the remaining plan payments

9     are considered accelerated and immediately due.  We

10    just don't see any justification for a modification

11    of the plan.  Certainly, Ms. Hazan, in her papers,

12    sites to COVID concerns, or issues with COVID, but

13    she doesn't go into what those specifically are.  We

14    heard a little bit about it for the first time

15    today, but, Judge, it doesn't appear on the face of

16    their papers.

17         Again, I just don't see how this sort of

18    circumstance justifying modification exists in this

19    case.

20         THE COURT:  Thank you.  Anything further?

21         MR. LANGLEY:  Judge, David Langley.

22         THE COURT:  Let counsel finish if she has

23    anything else to add.

24         MS. KOPAS:  I don't, Judge, but I would

25    reserve if I could.  In truth I haven't even --

1    (unintelligible).

2              THE COURT:  Mr. Langley, you wanted to be

3    heard again?  I want to hear about the United States

4    Trustee, but go ahead out of turn, Mr. Langley.

5              MR. LANGLEY:  Yes.  Sorry, Judge.

6              Just the argument counsel has just made,

7    it just shows they don't want Ms. Hazan in their

8    neighborhood.  That seems to be what this is about.

9              What counsel doesn't point out is that

10   they charged Ms. Hazan a special assessment, and she

11   paid the special assessment of $84,000 that her

12   neighbors assessed, because they wanted more

13   landscaping.  She's paid, as pointed out in the

14   motion, $134,000 on this.

15             But as you well know, Judge, her business

16   is placing large chain retail stores and restaurants

17   in shopping centers.  That is not happening, and

18   hasn't been happening since COVID hit.

19             And we're happy to set this -- go through

20   some discovery, and if they want to take discovery

21   and we have to prove this up, I think it's going to

22   be very easy to establish to the Court's

23   satisfaction that Ms. Hazan has not been able to

24   earn her normal income during this shutdown, because

25   shopping centers have been closed.  Stores are not

Page 18

1   expanding.  Restaurants are not expanding.  The high

2   end restaurants are failing.

3           She has done her best.  She has paid all

4   of these assessments, with just the exception of

5   60,000 that is due, and she should not lose her home

6   over $60,000.  We're simply asking that she be given

7   more time to pay it.

8           THE COURT:  Thank you, Mr. Langley.

9           Does the United States Trustee have a

10  position?

11          MS. CORTEZ-RODRIGUEZ:  Thank you, Your

12  Honor.  The United States Trustee is simply

13  monitoring the outcome of the motion today.  We're

14  not taking a position on that motion, Your Honor,

15  because in 2018, as Your Honor is aware, the Court

16  entered an order at ECF 766 which granted the debtor

17  a discharge and ordered that this case remain open

18  until the outstanding appeals are resolved.

19          At this time, Your Honor, the appeals that

20  were outstanding have been resolved.  The Court

21  reserved the right to issue a further order

22  directing the clerk to enter a final decree and

23  closing this case.

24          As a matter of status, I wanted to bring

25  that to the Court's attention, but these outstanding

1   appeals have been completed.  But of course we do

2   need resolution of the motion before the Court

3   today, before the Court can determine whether or not

4   a final decree should be issued at this time or any

5   time in the near future, Your Honor.

6                THE COURT:  Thank you.

7                Is there anyone else who is entitled to be

8   heard that has not yet been heard?

9                MS. KOPAS:  Judge, I just want to comment

10  for a bit on --

11               THE COURT:  Who is speaking, please?

12               MS. KOPAS:  Jessica Kopas of Haber Law.

13               THE COURT:  Go ahead.

14               MS. KOPAS:  Thank you, Judge.

15               There were some mischaracterizations, I

16  believe, in Mr. Langley's argument.  I did not

17  represent at any point that we wanted Ms. Hazan out

18  of the development or out of her home.  We are

19  seeking for Ms. Hazan to comply with the plan that

20  was approved in June of 2018, and to make the

21  payments timely.  And Ms. Hazan, while her fellow

22  homeowners are having to pay their assessments and

23  their maintenance, should not get essentially

24  another free pass into 2024 or 2025.

25               I might add that this is not the first

Page 20

1    time Ms. Hazan has sought (unintelligible).  She has

2    been paying half payments since 2021 as a courtesy

3    that we've extended her.  So we have worked with

4    this debtor before, Judge, and Ms. Hazan was to

5    begin making the full payments of $20,000 and change

6    in 2022.

7            I must say, she has not been making them.

8    She has been making by agreement -- but why should

9    we now extend an additional courtesy to this debtor

10   when she has not adequately framed an argument to

11   warrant modification of the plan.  This is not the

12   first time that the lease is in default.  This is

13   not -- the association has worked with her in the

14   past.  We're just seeking what we're owed.  We're

15   not seeking to displace her from her home.

16           Judge, this argument of restaurants are

17   closing, if you've been out to eat, restaurants are

18   packed.  Restaurants open all the time.

19   Restaurants -- large scale restaurants are opening

20   throughout Florida.  You can't get a reservation on

21   Open Table.  I think that's a mischaracterization of

22   what the reality is in South Florida.

23           Judge, again, we've worked with this woman

24   in the past.  This is not her first bite at the

25   apple.  She should not be allowed to continue into

Page 21

1    2025, while her fellow homeowners are paying what

2    they owe.

3              THE COURT:  And how much has she paid in

4    so far?  Did I hear something like a hundred and

5    some thousand dollars?

6              MS. KOPAS:  I believe so, Judge, but she

7    also has outstanding -- she's got $60,000, plus

8    ongoing assessments, about $70,000, approximately.

9              THE COURT:  And what's the house worth, do

10   you know?

11             MS. KOPAS:  I'm sorry.  I didn't hear the

12   question.

13             THE COURT:  I was wondering if you knew

14   how much the house was worth?

15             MS. KOPAS:  My understanding from the

16   debtor's papers is, she feels that the real estate

17   market is hot right now, and that home is worth

18   millions of dollars.

19             THE COURT:  Thank you.

20             Anyone else wish to be heard?

21             MR. LANGLEY:  Judge, just to further

22   answer your question -- David Langley for Ms. Hazan.

23             She's paid 134,000, and as I mentioned

24   before, what's left is the attorney's fees.  As

25   everybody knows, this is a very wealthy island, very

Page 22

1    wealthy people.  They're not going to go under.

2    They're not going to fail to keep the HOA going over

3    this $60,000 in attorney's fees that they're trying

4    to collect.

5            The house, Ms. Hazan could answer better,

6    but we're estimating in the range of $20 million,

7    with only a $6 million first.  So there's plenty of

8    equity here, Judge.  There's a huge equity cushion.

9    I was using just 10,000 in equity cushion when I

10   came up with that 238,000 times the claim amount

11   there's an equity cushion.

12           THE COURT:  Thank you.

13           MS. KOPAS:  My apologies.  If I may be

14   heard.  This is Jessica Kopas.

15           There's a dichotomy in the argument that

16   we're hearing here.  The debtor lives in a

17   $20 million house, but she has no income.  She can't

18   possibly get funds to make these payments, the

19   amount due of $60,000, plus ongoing assessments, in

20   the amount of $70,000.

21           THE COURT:  Thank you.

22           Anything else from any of the parties that

23   have been heard?

24           MR. ARESTY:  Judge, Joel Aresty.  I would

25   just add one thing if I could.  I'm sorry.

Page 23

```
1              There's no question about the fact that
2      the plan has been disrupted by COVID 19, and that
3      Ms. Hazan's business involving retail leases was
4      disrupted.  It's recovering, but as the Court is
5      aware, there's continued damages which are being
6      worked out.
7              Number two, Judge, and most importantly,
8      Ms. Hazan's plan to refinance has been disrupted by
9      Mr. Kosachuk's activities.  That's why, despite the
10     equity in the house, she's been unable to realize
11     anything because, as will come up in the other
12     motions, Mr. Kosachuk has interrupted her ability to
13     get title insurance.
14              Thank you.
15              THE COURT:  Thank you, Mr. Aresty.
16              All right.  Let's hold off on this for a
17     little while, and move on to Court Paper 1082 filed
18     by Mr. Chris Kosachuk, a motion for relief.
19              *      *      *      *      *      *      *
20              MS. KOPAS:  Judge, if I may, pardon me.
21     This is Jessica Kopas.
22              THE COURT:  Yes.
23              MS. KOPAS:  My apologies.  I may need a
24     clarification.
25              THE COURT:  You're breaking up.  I can't
```

1    understand you.

2              MS. KOPAS:  Sorry.  Can you hear me now?

3              THE COURT:  Yes.

4              MS. KOPAS:  Forgive me, Your Honor.  I

5    just want a clarification with respect to Court

6    Paper 1098, the association's objection.

7              Are you withholding a ruling on that,

8    considering that that plan payment is past due, and

9    it's in the amount of $20,000?

10             MR. LANGLEY:  We'd ask that everything be

11   tolled until the Court rules, and gives us an

12   opportunity to respond.

13             THE COURT:  When did we talk about 1098?

14   I'm not sure I see it on the calendar.

15             MS. KOPAS:  Judge, that was the objection

16   to Ms. Hazan emergency motion to reduce and extend

17   plan payments.

18             THE COURT:  I thought that was Court Paper

19   1076.

20             MS. KOPAS:  That's 1097, and our

21   objection, the association's objection, is 1098.

22             THE COURT:  I see.  And your question is?

23             MS. KOPAS:  I did not hear a ruling on

24   that as of yet.  This seems to be sort of an ongoing

25   theme of this particular debtor to extend her plan

Page 25

```
1    payments, and not pay her maintenance fees or
2    assessments, or comply with her bankruptcy plan that
3    was approved and has been in place since 2018.  I'm
4    just looking for a clarification on that.
5              Our position is that the $20,312.50 is due
6    immediately, and we would object to any emergency
7    motion to reduce or extend the plan payments.  As I
8    stated before, I don't want to reiterate, this has
9    been going on for some time, Judge.  We've worked
10   with this debtor before, and we believe that it's
11   time for her to pay in accordance with the plan as
12   the payments come due.
13             THE COURT:  I'd also leave it under
14   advisement, the same thing, ten days to submit
15   briefs.  I believe counsel read from the plan that
16   gave the Court the authorization to modify the plan.
17   I certainly want to look at that carefully.  And
18   then shortly thereafter, 15 days, proposed final
19   judgments, and findings of fact and conclusions of
20   law.
21             Thank you all.
22             MR. LANGLEY:  Judge, David Langley.  Do we
23   have the Court's ruling that all the actions by
24   Valencia are stayed pending the Court's ruling?
25             THE COURT:  What actions by Valencia have
```

1   we not dealt with?

2           MR. LANGLEY:  They're trying to

3   accelerate.  I'm not sure what else they're

4   proposing to do.  We just want some assurance that

5   nothing is going to happen until the Court rules on

6   our motion to modify the plan.

7           THE COURT:  Well, I think counsel for

8   Valencia said that they were trying to wrap up with

9   1076.  What were the other two court papers?

10          MS. KOPAS:  Judge, if I might --

11          MR. LANGLEY:  If I could be heard.

12          ECF 1097 was the emergency motion to

13  extend the plan payments, 1098 was Valencia's

14  response, 1102 was Ms. Hazan's reply.

15          MS. KOPAS:  If I could, Judge.  This is

16  Jessica Kopas.

17          Mr. Langley seems to be (unintelligible).

18  There's a state court action pending with respect to

19  ongoing assessments that Ms. Hazan owes the

20  association.  This is a little bit more, like I

21  said.  We keep working with her and she keeps

22  delaying the payments.

23          Giving her additional time, this is just

24  going to further delay us payments that this debtor,

25  living in the most expensive ZIP code in the United

1    States, should be able to pay, quite frankly.  She's

2    a business owner, she drives a Bentley.  She can't

3    comply with a plan that's been in place since 2018,

4    after we worked with her for the entirety of 2021?

5    I don't understand it, Judge.

6                THE COURT:  I'm sorry you don't understand

7    it, but I think when somebody's tossed in more than

8    $100,000, the legal description of that is better

9    than being poked in the eye with a sharp stick.

10               The matter involving 1976, 1097, 1098, and

11   1102 will also be under the same conditions, under

12   advisement, and they can be considered in that

13   meeting that the parties -- actually, that's a

14   meeting between Mr. Kosachuk and Mr. Langley.  If

15   you wish to submit a brief and a proposed order on

16   any of those, please do so and we'll consider them

17   all at the same time.

18               The Court notes that it seems the parties

19   to this matter just seem to enjoy litigating with

20   each other, and hopefully we can keep them happy in

21   that endeavor for the next ten or 15 years, but

22   we'll see how it goes.

23               Thank you all, and court's adjourned.

24               (Thereupon, the hearing was concluded.)

25

Page 28

1                         CERTIFICATION

2

3   STATE OF FLORIDA:

4   COUNTY  OF  DADE:

5

6               I, HELAYNE F. WILLS, Shorthand

7   Reporter and Notary Public in and for the State of

8   Florida at Large, do hereby certify that the

9   foregoing proceedings were taken by electronic

10  recording at the date and place as stated in the

11  caption hereto on Page 1; that the foregoing

12  computer-aided transcription is a true record of my

13  stenographic notes taken from said electronic

14  recording.

15               WITNESS my hand this 1st day of June,

16  2022.

17

18

19  _____

                    HELAYNE F. WILLS

20           Court Reporter and Notary Public

             In and For the State of Florida at Large

21           Commission No:  HH157788 Expires 8/2/2025

22

23

24

25

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE:                                        CASE NO.:      16-10389-AJC

Liza Hazan,                                   CHAPTER 11

     Debtor.
_____/

**UNITED STATES' NOTICE OF WITHDRAWAL**
**OF MOTION TO DISMISS DEBTOR'S BANKRUPTCY CASE [D.E. 1157]**
**WITHOUT PREJUDICE TO REFILE**
*(cancels hearing scheduled for June 30, 2022 at 3:00 p.m.)*

    The United States of America, on behalf of the Internal Revenue Service ("IRS"), by and

through undersigned counsel, hereby withdraws its Motion to Dismiss Debtor's Bankruptcy Case

[D.E. 1157] Without Prejudice to Refile in the event that circumstances call for such action.

                    Respectfully submitted,

                    **JUAN ANTONIO GONZALEZ**
                    **UNITED STATES ATTORNEY**

    By: s/  RaychelleTasher_____
                Raychelle Tasher
                Assistant United States Attorney
                FL Bar No. 109291
                E-mail: Raychelle.Tasher@usdoj.gov
                United States Attorney's Office
                99 N.E. 4th Street, Suite 300
                Miami, Florida 33132
                Tel: 786-439-3185
                Fax: 305-530-7139
                *Counsel for United States of America*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on June 28, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this case or via U.S. mail as listed in the below Service List.

**VIA CM/ECF:**

**16-10389-AJC Notice will be electronically mailed to:**

Geoffrey S. Aaronson on behalf of Creditor Aaronson Schantz Beiley P.A.
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Horizon Hospitality Group, LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Portefolio Onesource Advisor, LLC, A Florida LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Portfolio Onesource Advisors, LLC, A Delaware LLC
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Liza Hazan
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Geoffrey S. Aaronson on behalf of Defendant Sean Neil Meehan
gaaronson@aspalaw.com, 5408891420@filings.docketbird.com

Joel M. Aresty, Esq. on behalf of Counter-Defendant Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Creditor Joel M. Aresty P.A.
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Debtor Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Defendant Liza Hazan
aresty@mac.com

Joel M. Aresty, Esq. on behalf of Plaintiff Liza Hazan
aresty@mac.com

Daniel A Bushell on behalf of Debtor Liza Hazan
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Defendant Liza Hazan
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Plaintiff Selective Advisors Group, LLC
dan@bushellappellatelaw.com

Daniel A Bushell on behalf of Plaintiff Liza Hazan
dan@bushellappellatelaw.com

Elizabeth J Campbell on behalf of Creditor JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, LDaugherty@lockelord.com;David.Rankin@lockelord.com

Elizabeth J Campbell on behalf of Plaintiff JMB/Urban 900 Development Partners, Ltd
ecampbell@lockelord.com, LDaugherty@lockelord.com;David.Rankin@lockelord.com

Rebecca N Casamayor on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
rcasamayor@haber.law, jfelipe@haber.law

Robert P. Charbonneau, Esq. on behalf of Creditor Fuerst, Ittleman David & Joseph, P.L.
rpc@agentislaw.com,
nsocorro@agentislaw.com;bankruptcy@agentislaw.com;bankruptcy.ecc@ecf.courtdrive.com

Adam A Diaz on behalf of Creditor U.S. Bank National Association
adiaz@shdlegalgroup.com, southerndistrict@shdlegalgroup.com

Michael S Feldman on behalf of Respondent Stuart Zoberg
mfeldman@shirlawgroup.com

Jeffrey S Fraser on behalf of Creditor SouthEast Financial, LLC
bkfl@albertellilaw.com, anhsalaw@infoex.com

Michael A Friedman on behalf of Attorney Michael Friedman
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-
law.com;gjbecf@ecf.courtdrive.com;jzamora@gjb-law.com;chopkins@gjb-
law.com;vlambdin@gjb-law.com;btraina@gjb-law.com;preynolds@gjb-law.com

Michael A Friedman on behalf of Creditor NLG, LLC
mfriedman@gjb-law.com, gjbecf@gjb-law.com;jsardina@gjb-
law.com;gjbecf@ecf.courtdrive.com;jzamora@gjb-law.com;chopkins@gjb-
law.com;vlambdin@gjb-law.com;btraina@gjb-law.com;preynolds@gjb-law.com

Robert C Furr, Esq on behalf of Creditor Board of Managers of Spencer Condominium

ltitus@furrcohen.com,
atty_furrcohen@bluestylus.com;cworkinger@furrcohen.com;staff1@furrcohen.com;furrrr84158
@notify.bestcase.com

Astrid Gabbe on behalf of Counter-Claimant NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Creditor NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Defendant NLG, LLC
astridgabbe@gmail.com

Astrid Gabbe on behalf of Plaintiff NLG, LLC
astridgabbe@gmail.com

Joe M. Grant, Esq. on behalf of Creditor Selective Advisors Group, LLC
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Debtor Liza Hazan
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Selective Advisors Group, LLC
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Joe M. Grant, Esq. on behalf of Plaintiff Liza Hazan
jgrant@loriumlaw.com, jenna-munsey-6083@ecf.pacerpro.com;jyoung@loriumlaw.com

Robert A Gusrae on behalf of Creditor Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM,
gusraelaw@gmail.com;gusrae.robertr101832@notify.bestcase.com

Robert A Gusrae on behalf of Defendant Fisher Island Community Association, Inc.
ROBERT.GUSRAE@GMAIL.COM,
gusraelaw@gmail.com;gusrae.robertr101832@notify.bestcase.com

David B. Haber, Esq. on behalf of Creditor Valencia Estates Homeowners' Association, Inc.
dhaber@haber.law, mpomares@haber.law;wmarquez@haber.law;service@haber.law

David W. Langley on behalf of Debtor Liza Hazan
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Selective Advisors Group, LLC
dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

David W. Langley on behalf of Plaintiff Liza Hazan

dave@flalawyer.com, emily@flalawyer.com;monica@flalawyer.com

Tamara D McKeown on behalf of Defendant Liza Hazan
tdmckeown@mckeownpa.com

James B Miller on behalf of Counter-Claimant NLG, LLC
bkcmiami@gmail.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Ashley Prager Popowitz on behalf of Creditor Real Time Resolutions, Inc.
Ashley.popowitz@mccalla.com

Steven G. Powrozek, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
spowrozek@logs.com, LOGSECF@logs.com

Heather L. Ries, Esq. on behalf of Trustee Alfred T. Giuliano
hries@foxrothschild.com, ralbert@foxrothschild.com

Eric J Silver on behalf of Other Professional Drew Dillworth
esilver@stearnsweaver.com,
jless@stearnsweaver.com;fsanchez@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com

Michael W Simon on behalf of Creditor S&S Collections, Inc.
ppaoletti@simonsigalos.com, dgasser@simonsigalos.com

Raychelle A Tasher on behalf of Creditor United States of America, IRS
Raychelle.Tasher@usdoj.gov, Milton.Pacheco@usdoj.gov;Shannon.Patterson@usdoj.gov

Andrew D. Zaron, Esq. on behalf of Creditor JPMorgan Chase Bank, National Association
azaron@leoncosgrove.com, eperez@leoncosgrove.com

**and VIA U.S. MAIL to all parties listed on the attached mailing matrix on June 28, 2022**

_s/_      _RaychelleTasher_
Raychelle Tasher

```
Label Matrix for local noticing        Aaronson Schantz Beiley P.A.       Board of Managers of Spencer Condominium
113C-1                                  c/o Geoffrey S. Aaronson           c/o Robert C. Furr Esq
Case 16-10389-AJC                       100 SE 2nd Street 27th Floor       Furr and Cohen PA
Southern District of Florida            Miami, FL 33131-2122               2255 Glades Rd #337W
Miami                                                                      Boca Raton, FL 33431-7379
Tue Jun 28 13:40:56 EDT 2022

Fisher Island Community Association, Inc.   JMB/Urban 900 Development Partners, Ltd   JPMorgan Chase Bank, National Association
c/o PeytonBolin                             JMB/Urban 900 Development Partners, Ltd   Shapiro, Fishman & Gache, LLP
3343 West Commercial Blvd, Suite 100        900 North Michigan Ave                   c/o Steve Powrozek
Fort Lauderdale, FL 33309-3425              Chicago, IL 60611-1542                   4630 Woodland Corporate Blvd.#100
                                                                                     Tampa, FL 33614-2429

Joel M. Aresty P.A.                     (p)MIAMI DADE COUNTY TAX COLLECTOR     NLG, LLC
Joel M. Aresty, Esq.                    ATTN WENDY MONTOYA                     Nicholas B. Bangos, P.A.
309 1st Ave S                           200 NW 2ND AVENUE                      c/o Nicholas B. Bangos
Tierra Verde, FL 33715-2231             MIAMI FL 33128-1733                    100 S.E. 2nd Street, Suite 3400
                                                                              Miami, FL 33131-2122

(c)S&S COLLECTIONS, INC.                Selective Advisors Group, LLC         SouthEast Financial, LLC
SIMON & SIGALOS, LLP                    c/o Marshall Socarras Grant, P.L.     Albertelli Law
3839 NW 2ND AVE STE 100                 197 S. Federal Highway                c/o Jeffrey S. Fraser
BOCA RATON FL  33431-5862               Suite 300                             PO Box 23028
                                        Boca Raton, FL 33432-4946             Tampa, FL 33623-2028

U.S. Bank National Association          (p)INTERNAL REVENUE SERVICE           Valencia Estates Homeowners' Associatio
SHD Legal Group, P.A.                   CENTRALIZED INSOLVENCY OPERATIONS      c/o Haber Slade, P.A.
PO BOX 19519                            PO BOX 7346                           201 S. Biscayne Blvd.
Fort Lauderdale, FL 33318-0519          PHILADELPHIA PA 19101-7346            Suite 201
                                                                              Miami, FL 33131-4324

3343 West Commercial Blvd, 100          6913 Valencia, LLC                    900 North Michigan, LLC
3343 West Commercial Blvd, 10           3839 NW Boca Raton Boulevard          c/o W. Allen Woolley, Esq.
Fort Lauderdale, FL 33309-3425          West Palm Beach, FL 33413             Wildman Harrold Allens Dixon, LLP
                                                                              225 West Wacker Drive, Suite 3000
                                                                              Chicago, IL 60606-3007

ATT Mobility                            Allied Collection Service             American InfoSource LP as agent for
PO Box 536216                           1607 Central Ave                      DIRECTV, LLC
Atlanta, GA 30353-6216                  Columbus, IN 47201-5370               PO Box 5008
                                                                              Carol Stream, IL  60197-5008

American InfoSource LP as agent for     Board of Managers of Spencer Condominium   Chase Bank, NA
T Mobile/T-Mobile USA Inc               c/o Robert C. Furr Esq                      c/o Jennifer Kopf, Esq.
PO Box 248848                           2255 Glades Rd #337W                        Shapiro, Fishman & Gashe, LLP
Oklahoma City, OK  73124-8848           Boca Raton, FL 33431-7379                   2424 N. Federal Highway, Suite 360
                                                                                    Boca Raton, FL 33431-7701

Cross & Simon, LLC                      Cross & Simon, LLC                    David J. Fischer
c/o David Holmes, Esq.                  David G. Holmes, Esquire              Locke Lord LLP
1105 North Market ST, Suite 901         1105 North Market Street              111 South Wacker Drive
Wilmington, DE 19801-1216               Suite 901                             Chicago, IL 60606-4409
                                        Wilmington, DE 19801-1216

(p)DIRECTV LLC                          Enhanced Recovery Company             First National Collection Bureau, Inc.
ATTN BANKRUPTCIES                       8014 Bayberry Rd                      610 Waltham Way
PO BOX 6550                             Jacksonville, FL 32256-7412           Sparks, NV 89437-6695
GREENWOOD VILLAGE CO 80155-6550
```

Fisher Island Community Association
c/o Danielle Schneider, Esq.
Peyton Bolin, PL
4758 W. Commerical Boulevard
Fort Lauderdale, FL 33319-2877

Florida Power & Light
ATTN: General Mailing Facility
Miami, FL 33188-0001

Focus Management
10284 NW 47th St
Fort Lauderdale, FL 33351-7967

Fuerst Ittleman David & Joseph, P.L.
c/o Robert P. Charbonneau, Esq.
501 Brickell Key Drive, Suite 300
Miami, FL 33131-2624

HSBC Bank USA, NA
PO Box 2013
Buffalo, NY 14240-2013

Internal Revenue Service
P.O. Box 7317
Philadelphia, PA 19101-7317

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

JMB/Urban 900 Development Partners, Ltd.
David J. Fischer
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606-4409

Marzec Law Firm
225 Broadway, Suite 3000
New York, NY 10007-3067

Miami Dade Water & Sewer Department
Attn: Collection Branch/Bankruptcy Unit
P.O. Box 149089 Coral Gables, FL 33114

Miami-Dade Water & Sewer Department
PO Box 026055
Miami, FL 33102-6055

(c)MICHAEL W. SIMON, ESQ.
SIMON & SIGALOS, LLP
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Mount Sinai Medical Center
PO Box 403429
Miami Beach, FL 33140-1429

NLG, LLC
c/o Juan Ramirez, Esq.
Diaz, Reus, & Targ LLP
100 SE 2nd Street, Suite 3400
Miami, FL 33131-2122

Newman Ferrara LLP
1250 Broadway, 27th Floor
New York, NY 10001-3717

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Ray Garcia P.A.
14850 SW 26th Street, Suite 204
Miami, FL 33185-5931

Real Estate Holdings Group, LDC
60 Market Square
PO Box 364
Belize City, Belize

Real Time Resolutions, Inc.
1349 Empire Central Drive, Suite #1
Dallas, Texas 75247-4029

Real Time Solutions
1349 Empire Central Drive
Suite 150
Dallas, TX 75247-4029

Robert A Gusrae
3343 West Commercial Blvd, 100
Fort Lauderdale, FL 33309-3425

(c)S & S COLLECTIONS, INC.
MICHAEL W. SIMON, ESQ.
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Scott Paul Mackoff, Esq.
Mitofsky, Shapiro, Neville & Hazen LLP
152 Madison Avenue, 3rd Floor
New York, NY 10016-5424

Select Advisors Group, LLC
6499 Powerline Road, Suite 304
Fort Lauderdale, FL 33309-2043

(c)SIMON & SIGALOS
C/O MICHAEL SIMON, ESQ.
3839 NW 2ND AVE STE 100
BOCA RATON FL  33431-5862

Southeast Financial, LLC
4000 N. Federal Highway, Suite 200
Boca Raton, FL 33431-4527

Spencer Condominium
d/b/a Halstead Management Co., LLC
c/o David A. Tane, Esq.
120 Broadway, Suite 948
New York, NY 10271-0996

Sterling Emergency Serv. of Miami Beach
PO Box 975213
Dallas, TX 75397-5213

Tracy Peterson, Esq.
Braverman Greenspun, PC
110 East 42nd Street, 17th Floor
New York, NY 10017-8515

US Bank
c/o Lawrence Lambert, Esq.
Frankel Lambert LLP
53 Gibson Street
Bay Shore, NY 11706-8369

Valencia Estates
c/o Jonathan Scott Goldstein, Esq.
Haber Slade
201 S. Biscayne Boulevard, Suite 1205
Miami, FL 33131-4317

Valencia Estates Homeowners Assn, Inc.
42205 Fisher Island Drive
Miami Beach, FL 33109-1291

Verizon
PO Box 1100
Albany, NY 12250-0001

Wells Fargo Bank
Box 5058 MAC P6053-021
Portland, OR 97208-5058

Chris Kosachuk
854 Pheasant Run Rd
West Chester, PA 19382-8144

Daniel A Bushell
6400 North Andrews Ave # 505
Fort Lauderdale, FL 33309-9112

David W. Langley
8551 W Sunrise Blvd # 303
Fort Lauderdale, FL 33322-4007

Joe M. Grant Esq.
Lorium Law PLLC
197 S. Federal Hwy #200
Boca Raton, FL 33432-4946

Joel M. Aresty Esq.
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715-2231

Juan Ramirez, Jr.
ADR Miami, LLC
1172 S. Dixie Hwy. #341
Coral Gables, FL 33146-2918

Liza Hazan
6913 Valencia Drive
Miami Beach, FL 33109-0601

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Miami-Dade County Tax Collector
c/o Alexis Gonzalez
200 NW 2nd Avenue, Suite 430
Miami, FL 33128-1733

United States of America, IRS
c/o Raychelle Tasher
99 NE 4th Street Suite 300
Miami, FL 33132

Direct TV
PO Box 6550
Englewood, CO 80155-6550

(d)Miami-Dade County Tax Collector
Attn: Paralegal Bankruptcy Unit
200 NW 2 Ave, suite 430
Miami, Fla. 33128-1733

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

S&S Collections, Inc.
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd
Suite 100
Boca Raton, FL 33431

Michael W. Simon, Esq.
Simon & Sigalos, LLP
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, FL 33431

S & S Collections, Inc.
Michael W. Simon, Esq.
3839 NW Boca Raton Blvd., Suite 100
Boca Raton, FL 33431

Simon & Sigalos
c/o Michael Simon, Esq.
3839 NW Boca Raton Boulevard, Suite 100
Boca Raton, FL 33431

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Fuerst, Ittleman David & Joseph, P.L. | (u)Real Time Resolutions, Inc. | (u)Miami |
| (u)Car Southeast Financial, LLC<br>Per DE#23 | (u)Cross Simon<br>Per DE #23 | (u)Halsted Management Company<br>Per DE #23 |
| (u)Jacobs Keeley, PLLC<br>Per DE #23 | (u)Mark D. Cohen, PA<br>Per DE #23 | (u)Mercedes Benz Financial Services<br>Per DE #23 |
| (u)Newman Ferrara, LLP<br>Per DE #23 | (d)Newman Ferrara, LLp<br>1250 Broadway, 27th Floor<br>New York, NY 10001-3717 | (u)Presidential Auto Leasing & Sales<br>Per DE #23 |
| (u)Robert P. Lithman P.A.<br>Per DE #23 | (u)Select Portfolio Servicing, Inc.<br>Per DE #23 | (u)Alfred T. Giuliano |
| (u)Michael Friedman | (u)Stuart Zoberg | End of Label Matrix<br>Mailable recipients    70<br>Bypassed recipients    17<br>Total                  87 |

United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Chris Kosachuk, Appellant, | ) | |
| | ) | |
| v. | ) | Bankruptcy Appeal |
| | ) | Case No. 22-22351-Civ-Scola |
| Liza Hazan, aka Elizabeth Hazan, | ) | |
| Appellee. | ) | |

## Order Affirming the Bankruptcy Court

This matter is before the Court upon Chris Kosachuk's appeal of the Bankruptcy Court's order denying his motion to dismiss. (ECF No. 16; BC ECF No. 1221.)[1]

Hazan filed a motion to dismiss Kosachuk's appeal on August 15, 2022. (ECF No. 7.) Kosachuk responded on August 29, 2022. (ECF No. 8.) Hazan filed no reply. Per the Court's order establishing a briefing schedule (ECF No. 10), Kosachuk filed his initial appellate brief on September 14, 2022. (ECF No. 16.) Subsequently, in the interest of judicial economy, Hazan requested that the Court rule on her pending motion to dismiss prior to submitting a response to Kosachuk's brief. (ECF No. 17.)

Having reviewed the parties' submissions, the Bankruptcy Court's order, and being apprised of the record below, the Court **dismisses** Kosachuk's appeal and **grants** Hazan's motion. (**ECF No. 7**). The Bankruptcy Court is **affirmed** for the reasons stated below.

### 1. Background

In 2007, Hazan took out a mortgage to purchase a home on Fisher Island from NLG, LLC ("NLG"), a company then affiliated with Kosachuk. Hazan soon failed to make payment on her mortgage note leading NLG to obtain a default judgment against her in 2008 but matters seem to have only gotten worse. In 2011, NLG again sued Hazan—this time, seeking to foreclose on the mortgage.

While that suit was pending, in 2012, a corporation obtained a $5 million judgment against NLG in unrelated litigation before a New York court. That corporation assigned the judgment to Selective Advisors Group, LLC, an entity controlled by Hazan's husband. Selective recorded the judgment in the Circuit Court for Miami-Dade County, leading a Florida judge to assign NLG's rights and claims against Hazan to Selective for purposes of satisfying the judgment.

---

[1] References to the record in Bankruptcy Case No. 16-10389-AJC, from which this appeal lies, will be styled as "BC ECF No."

Meanwhile, NLG's bid at foreclosing on Hazan's mortgage somehow still pressed on for years. Its efforts seemed to come to fruition when another Florida court—despite the earlier ruling assigning NLG's rights against Hazan to Selective—found that NLG was entitled to a foreclosure judgment in the amount of $4.8 million. Hazan's home was thus scheduled to be sold on January 12, 2016.

However, that, again, was not the end of the story. On January 11, 2016, Hazan filed for relief under Chapter 11 of the Bankruptcy Code thereby staying the sale. That petition has extended through the present day.

On the basis of its $5 million judgment against NLG and the court order entitling it to NLG's claims against Hazan, Selective commenced an adversary proceeding against NLG as spinoff to Hazan's bankruptcy case on August 21, 2016. In it, Selective sought a determination of the nature and extent of NLG's claim to the home. Hazan joined the proceeding two months later. The Plaintiffs voluntarily dismissed Kosachuk from the adversary proceeding, leaving NLG as the sole Defendant in February 2017. (AP ECF No. 74.)[2] The proceeding went to trial and resulted in a final judgment favorable to Selective and Hazan.

In the judgment, the Bankruptcy Court evaluated the seemingly inconsistent Florida court orders concerning the debt owed on Hazan's home. It found that Selective—not NLG—was the proper owner of note and mortgage. It specifically said:

> "NLG has not demonstrated that it owns and holds the Note and Mortgage in question. *Verizzo v. Bank of N.Y.*, 28 So.3d 976, 978 (Fla. 2d DCA 2010). Here, NLG's interest in the Note, as evidenced by the Scola Judgment, was assigned by Judge Lopez to Selective. NLG no longer holds the right to enforce the Note or the Scola Judgment entered on the Note . . . When Judge Lopez assigned the Scola Judgment to Selective, Selective stepped into the shoes of NLG, acquiring standing to foreclose on the Note and Mortgage . . . This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage . . . NLG's Proof of Claim #17, having been filed after the bar date, [ ] is disallowed and the Court finds that NLG has no standing in this case based upon the Note, Mortgage, claim or lien emanating therefrom[.]"

(AP ECF No. 238 at 8-9, 13.) This Court affirmed the judgment on appeal. *See NLG, LLC v. Hazan et al.*, No. 18-24272, 2019 WL 4541700 (S.D. Fla. Sept. 19,

---

[2] References to the record in the adversary proceeding assigned Bankruptcy Case No. 16-1439-AJC will be styled as "AP ECF No."

2019) (Smith, J.). And that ruling was upheld by the Eleventh Circuit. *See In re Hazan*, 10 F.4th 1244 (11th Cir. 2021).

Nevertheless, Kosachuk recently placed a lien on the Fisher Island home for the eighth time, which interfered with its sale/refinancing as part of Hazan's bankruptcy case. The Bankruptcy Court found Kosachuk in contempt and dissolved the lis pendens. In connection with its contempt finding, the Bankruptcy Court reiterated that it had previously "stated on the record that Chris Kosachuk has no standing and this case, and the Court believes his prior filings were improper efforts to prevent Ms. Hazan from selling or refinancing her property and completing her Plan." (BC ECF No. 1194 at 3.) Kosachuk appealed that order in Case No. 22-22071 before this Court.

This appeal, in turn, deals with the Bankruptcy Court's separate denial of Kosachuk's motion to dismiss Hazan's bankruptcy case, which he filed on June 9, 2022. (BC ECF No. 1161.) Familiarly, the Bankruptcy Court denied that motion because Kosachuk "has no standing in this case, and therefore, no position—is in no position to dismiss the case[.]" (ECF No. 14 at 5:17-23.) Kosachuk says he *does* have standing.

### 2. Legal Standard

This Court functions as an appellate court when reviewing the Bankruptcy Court's orders. *See In re Rudolph*, 233 Fed. App'x 885, 886-87 (11th Cir. 2007) (citing *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993)). Interpretations of the Bankruptcy Code are questions of law that this Court reviews de novo. *Pollitzer v. Gebhardt*, 860 F.3d 1334, 1338 (11th Cir. 2017). Although the Bankruptcy Court's legal conclusions are reviewed de novo, this Court must accept the Bankruptcy Court's factual findings unless they are clearly erroneous. *In re Rudolph*, 233 Fed. App'x at 886-87. A judgment is clearly erroneous where, "although there is evidence to support it, the reviewing court on review of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Paramount Citrus, Inc.*, 268 B.R. 620, 621 (M.D. Fla. 2001).

### 3. Discussion

Kosachuk argues that because he is directly affected by the separate contempt order that the Bankruptcy Court entered, he has "standing to challenge the confirmed bankruptcy plan[.]" (ECF No. 30 at 26.) This argument makes little sense. While Kosachuk may have standing to challenge the contempt order entered against him, that does not grant him standing as to the

*underlying case.* Nor does he have standing to challenge the confirmed plan on the basis of Hazan's purported failures under it. (ECF No. 30 at 12.)

The Bankruptcy Court previously found Kosachuk to lack standing because he is "not a creditor in this case nor is he an interested party who has a stake in the outcome of this case or in the administration of the bankruptcy estate." (BC ECF No. 1106.) Indeed, "neither NLG nor Chris Kosachuk have a lien on Debtor's property . . . [and] any alleged lien of NLG on Debtor's property was extinguished or satisfied." (BC ECF No. 932 at 5.) These findings are consistent with the Bankruptcy Court's final judgment in the adversary proceeding, which was handed down in 2017 and has been upheld on review by this Court and the Eleventh Circuit. The Court thus finds that that the Bankruptcy Court's order was proper.

By way of his motion now on appeal, Kosachuk purported to dismiss the entirety of the bankruptcy case, which has been in the making for six years. The Court agrees with Hazan that Kosachuk's instant appeal is subject to preclusion under the doctrine of equitable mootness. Indeed, Kosachuk's appeal is nothing more than a collateral attack on the final judgment of the adversary proceeding, which was handed down five years ago. That is evidenced by the arguments he makes on appeal, which focus entirely on re-hashing the points discussed in his motion to dismiss. In fact, Kosachuk devotes a mere two pages, at the end of his brief, to discussing his "standing." (ECF No. 16 at 25-26.)

The doctrine of equitable mootness applies "in appeals that effectively seek to modify or amend a plan's provisions." *See In re Hazan*, 10 F.4th 1244, 1252 (11th Cir. 2021) (cleaned up). "Among the factors a court should consider in deciding whether to dismiss an appeal for equitable mootness are whether the appellant has obtained a stay pending appeal, whether the plan has been substantially consummated, and whether third parties' rights or the debtor's ability to successfully reorganize would be adversely affected by granting the relief sought by the appellant." *Id.*

All factors here weigh in favor of finding Kosachuk's appeal being found equitably moot. It is not apparent from the record that a stay has been entered pending this appeal; the Eleventh Circuit already found that the "Plan has been substantially consummated," *id.* at 1253; and it is doubtless that parties' rights would be adversely implicated by dismissing the case at this juncture.

### 4. Conclusion

Accordingly, the Court **grants** Hazan's motion (**ECF No. 10**) and **dismisses** this appeal with prejudice. The Bankruptcy Court is **affirmed**.

Any other pending motions are **denied as moot**. The Court suspends any pending deadlines and/or hearings and **directs** the Clerk to **close** this case.

**Done and ordered** in Miami, Florida, on September 27, 2022.

Robert N. Scola, Jr.
United States District Judge



**ORDERED in the Southern District of Florida on November 15, 2022.**

_____

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                          Chapter 11

                          Debtor,

_____/


**ORDER GRANTING REORGANIZED DISCHARGED LIZA HAZAN'S**
**MOTION FOR ENTRY OF FINAL DECREE CLOSING CASE**

      **THIS MATTER** came before the Court for hearing on November 8, 2022 at 3:00 PM

upon *Reorganized and Discharged Liza Hazan, a/k/a Elizabeth Hazan* ("Ms. Hazan") *Motion for*

*Entry of Final Decree Closing this Chapter 11 Bankruptcy Case (ECF No. 13    ), pursuant to*

*Section 3 0(a) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 3022, and Local Rule 3022-1 that was previously granted* filed by Liza Hazan on October 24, 2022.

On December 13, 2017, the Court approved Ms. Hazan's Disclosure Statement and Setting Hearing on Confirmation of Plan (ECF No. 580).

On June 12, 2018, the Court entered The Order Confirming Plan of Reorganization ("the Order of Confirmation") (ECF No. 691).

On June 12, 2018, the Court entered an Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After Confirmation (ECF No. 692).

On June 13, 2018 the Court entered an Order Closing Case (ECF No. 693).

The Effective Date of the Confirmed Plan (ECF No. 563) was July 2, 2018. The Plan has been substantially consummated within the meaning of 11 U.S.C. § 1101(2).

On July 5, 2018, the Reorganized Debtor Ms. Hazan filed her verified Final Report of Estate and Accounting of Payment of Claims and Substantial Consummation and Motion to Reopen and Motion for Entry of Final Decree and to Reclose case (ECF No. 703).

On July 10, 2018, the Reorganized Debtor Ms. Hazan filed her Corrected Motion to Reopen case and Final Report of Estate and Motion for Discharge and Motion of Final Decree and to Reclose case (ECF No. 713).

On December 7, 2018 the Court entered The Order Granting Ms. Hazan's Motion To Reopen Case to Approve Final Report, and Enter Discharge to Reorganized Debtor (ECF No. 713) (the "Order of Discharge") (ECF No. 766).

On December 7, 2018 The Court approved the Final Report and concluded that "[M]s. Hazan is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order;" and ordered "[t]he Reorganized Debtor

is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d)". (ECF No. 766) page 12 paragraph 4. However, the Court ordered that "[T]he case shall remain open pending the final disposition of all motions herein and the outstanding appeals, after which the Court will direct the Clerk of Court to enter a Final Decree closing case". (ECF No. 766) page 12 paragraph 7.

Rule 3022 allows entry of the Final Decree in Ms. Hazan's Chapter 11 Reorganization Case. Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or the successor of the debtor under the plan has assumed the business or the management the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved. The court previously approved the Final Report on December 7, 2018 (ECF No. 766).

On September 9, 2019, the Honorable United States Court Southern District of Florida Judge Rodney Smith granted Ms. Hazan's Motion to Dismiss NLG, LLC's Appeal of this Court's Final Judgment that concluded that NLG, LLC is not a creditor in this case, NLG, LLC's Proof of Claim is disallowed and NLG, LLC has no claim against Hazan under the Note, Mortgage or any Court Order. See Final Judgment Adversary case 16-01439-AJC entered on November 1, 2017 ( ECF No. 238).  See Adversary case 16-01439-AJC (ECF No. 386).

The United States Court Southern District of Florida Judge Smith found that "[t]he

Plan called for all pre-petition property of the estate to re-vest in the Reorganized Debtor and that

has happened.  Second, Hazan has assumed all obligations and management of all property dealt

with by the Plan.  Third, Hazan has commenced distributions under the Plan, has made payments

under the Plan, and has substantially completed distributions to unsecured creditors under the

Plan.  Hazan has made more that $500,000 in distributions.  After the filing of the instant motion

to dismiss, Hazan was granted a discharge in her bankruptcy." Judge Smith concluded that NLG,

LLC's Appeal of this Court's Final Judgment was equitably moot and that the *Rooker-Feldman*

doctrine was not applicable. See Adversary case 16-01439-AJC (ECF No. 386).

On September 1, 2021 the United States Court of Appeals for the Eleventh Circuit

unanimously affirmed the District's Court Order of the Honorable Judge Smith dismissing NLG,

LLC's Appeal of this Court's Final Judgment that concluded that NLG, LLC is not a creditor in

this case, NLG, LLC's Proof of Claim is disallowed and NLG, LLC has no claim against Hazan

under the Note, Mortgage or any court order. See Final Judgment Adversary case 16-01439-AJC

entered on November 1, 2017 (ECF No. 238). (ECF No. 1047).

The United States Court of Appeals for the Eleventh Circuit also concluded that Ms.

Hazan has substantially consummated the plan (ECF No. 1047).

All adversary cases have been concluded and are closed. All appeals have been ruled in

favor of Ms. Hazan.

On April 20, 2022, the Honorable Judge Darrin P. Gayles dismissed NLG, LLC's

Appeal of the Confirmation Order holding that "[t]he Plan has been substantially consummated

… as that term is defined in the Bankruptcy Code[1], . . . " and stated that "[I]n the related case,

---

[1] Under the Bankruptcy Code, "substantial consummation" is defined as:

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

the Eleventh Circuit found that "[t]he Plan has been substantially consummated" because all pre-petition property of the estate re-vested in Hazan, Hazan assumed management of all the property, and Hazan commenced distribution under the Plan. *In re Hazan*, 10 F.4th at 1253. Because the Plan has been substantially consummated, a finding that the instant appeal is equitably moot is warranted." (ECF No. 1089).

ORDERED and ADJUDGED that Reorganized and Discharged Liza Hazan a/k/a Elizabeth Hazan's Motion for Entry of a Final Decree Closing this Chapter 11 Bankruptcy Case (ECF No. 1345) is **GRANTED.** The Clerk is directed to enter a Final Decree, Closing this case.

###

Submitted by:
Joel M. Aresty, Esq.

Attorney Joel M. Aresty shall serve a copy of the signed order on all interested parties and file with the court a certificate of service conforming with Local Rule 2002-1(F).

**Copies to**  Clerk, U.S. Bankruptcy Court, Office of the U.S. Trustee, all parties of interest.

---

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

CGFD30 (10/01/16)



**ORDERED in the Southern District of Florida on December 5, 2022**

**A. Jay Cristol**
United States Bankruptcy Judge

---

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

**In re:** *Debtor(s) name(s) and address(es) (for names include married, maiden and trade used by the debtor(s) in the last 8 years)*

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## FINAL DECREE

A Final Report and Motion for Entry of Final Decree having been filed on behalf of the debtor, this chapter 11 case is closed. If applicable, all future payments under the plan of reorganization shall be disbursed in accordance with the plan.

# # #

The clerk shall serve a copy of this Final Decree on the Debtor, Attorney for Debtor, and the U.S. Trustee

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

In re:                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,         Chapter 11

Debtor,

_____/

## NOTICE OF APPEAL

Chris Kosachuk, *pro se,* appeals under 28 U.S.C. § 158(a) to the United States District Court for the Southern District of Florida from the Order [ECF 1375] and Final Decree [ECF 1376], filed on December 5, 2022, by U.S. Bankruptcy Judge A. Jay Cristol and entered on the docket on December 5, 2022 in this case (the "Orders"), copies of which are attached to this Notice of Appeal.

This Notice of Appeal is related to a pending appeal before the Honorable Jose Martinez, captioned as, *Kosachuk, v. Liza Hazan* under case number 22-cv-22781-JEM which is an appeal of the Order Denying Motion to Recuse in this same bankruptcy.

This Notice of Appeal is related to a pending appeal before the Honorable Beth Bloom, captioned as, *Kosachuk, v. Liza Hazan* under case number 22-cv-23840-BB which is an appeal of a Final Judgment entered in this same bankruptcy.

In appealing from these Orders, Mr. Kosachuk appeals from all orders and decisions antecedent and ancillary thereto, including all interlocutory judgments, decrees, rulings, reports, recommendations and opinions that merged into and became part of the Orders, that shaped the Orders, that are related to the Orders and upon which the Orders are based.

The names of all parties to the judgment, order or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

**Part 1. Identify the appellant:**

1. Name of Appellant:  Chris Kosachuk

2. Position of Appellant: Interested Party

**Appellant: Chris Kosachuk**

Chris Kosachuk                                    Chris Kosachuk
854 Pheasant Run Road                       Pro Se Appellant
West Chester, PA 19382                      854 Pheasant Run Road
chriskosachuk@gmail.com                  West Chester, PA 19382
                                                         chriskosachuk@gmail.com

**PART 2. Identify the subject of this appeal:**

1. Describe the judgment, order or decree appealed from:

   Order [ECF 1375] and Final Decree [ECF 1376], filed on December 5, 2022, and entered

   on the docket on December 5, 2022  (the "Orders").

2. State the date on which the Orders were entered on the docket: December 5, 2022

**PART 3: Identify the other parties to the appeal**

**Party: Debtor/Appellee**                    **Attorney**

Liza Hazan a/k/a Elizabeth Hazan
6913 Valencia Drive
Fisher Island, FL 33109

**Party: Debtor/Appellee**

**Attorney**

JOEL M. ARESTY, P.A.
309 1st Ave S
Tierra Verde FL 33715
Tel 305--904--1903
Fax 800--559--1870
E--mail Aresty@Mac.com

December 19, 2022.

Respectfully submitted,

Chris Kosachuk
*Pro Se Appellant*
854 Pheasant Run Rd.
West Chester, PA 19382-8144
(305) 490-5700
chriskosachuk@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of December 2022 a true and correct copy of foregoing was hand delivered to the Clerk of Court for electronic filing, which will electronically serve a copy of the foregoing document on all parties of record and was emailed directly to counsel of record for Debtor Liza Hazan by Appellant.

Respectfully submitted,

**Chris Kosachuk**

*Pro Se Appellant*
854 Pheasant Run Rd.
West Chester, PA 19382
(305) 490-5700
chriskosachuk@gmail.com

## SERVICE LIST

***Served via CM/ECF or Email***

All parties of record



**ORDERED in the Southern District of Florida on December 6, 2018.**

**A. Jay Cristol, Judge**
**United States Bankruptcy Court**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

In re:                                                      Case No. 16-10389-BKC-AJC

LIZA HAZAN a/k/a ELIZABETH HAZAN,                           Chapter 11

      Debtor.

_____/

## ORDER GRANTING MOTION TO REOPEN CASE TO APPROVE FINAL REPORT, AND ENTER DISCHARGE TO REORGANIZED DEBTOR

**THIS MATTER** came before the Court for hearing on August 9, 2018 at 10:30 a.m. upon

the Reorganized Debtor, Liza Hazan a/k/a Elizabeth Hazan ("Reorganized Debtor")'s Corrected

Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a

Final Decree and to re-close the case [ECF No. 713] (the "Motion"), and again on October 24,

2018 at 2:00 p.m. upon the Court's Order Setting Further Hearing to Consider Issuance of

Discharge and Dismissal of Pending Non-Core Personal Injury Tort Claims for October 24, 2018

[ECF 745]. The Court has further considered the following:

*CASE NO. 16-10389-BKC-AJC*

- The Final Report [ECF No. 703] ("Final Report");

- The Notice of Deadline to Object to Debtor's[1] Statement Re: 11 U.S.C. § 522(q)(1) Applicability, *et al.* [ECF No. 704];

- NLG, LLC's Opposition to Debtor Motion to Reopen Case and Motion for Discharge (ECF No. 733);

- NLG, LLC's Objection to Debtor Statement and Discharge [ECF No. 729], which the Court notes was withdrawn on the record by counsel for NLG during the August 9, 2018 hearing;

- NLG, LLC's *ore tenus* Objection to Debtor's Discharge during the October 24, 2018 hearing;

- Creditor Valencia Estates Homeowners' Association, Inc.'s Limited Objection to Debtor's Corrected Motion for Discharge [D.E. 713] [ECF No. 728], which was resolved by Agreed Order [ECF No. 734];

- Real Time Resolutions, Inc.'s Objection to Debtor's Motion to Reopen, Final Report and Motion for Discharge, and Motion for Entry of Final Decree and to Reclose [ECF No. 731], which was withdrawn prior to the hearing [ECF No. 732]; and

- NLG, LLC's motion to reopen Chapter 11 case [ECF No. 757], and amended and expedited motion to reopen case [ECF No. 763].

---

[1] For purposes of this Order, the term "Debtor" shall also mean the "Reorganized Debtor" pursuant to this Court's Order Confirming Plan of Reorganization [ECF No. 691] (the "Confirmation Order").

*CASE NO. 16-10389-BKC-AJC*

Having considered the record, including NLG's Objection and Opposition,[2] and finding

that due and adequate notice has been given and no additional notice is required, the Court grants

the Motion in part and herein enters the discharge of the Reorganized Debtor, and approves the

Final Report. The Motion and Final Report demonstrate the Reorganized Debtor is entitled to to

a discharge pursuant to 11 U.S.C. § 1141(d)(5). However, a Final Decree will not yet be issued

and the case shall not be re-closed at this time.

## I.    11 U.S.C. § 1141(d)(5)(B) – authorizes issuance of discharge to individual debtor who has not completed all plan payments

The Bankruptcy Code provides that an individual debtor's discharge shall not be entered

by the Court until completion of all payments under the confirmed plan. *11 U.S.C. §1141(d)(5)(A)*.

An exception exists, however, pursuant to 11 U.S.C. § 1141(d)(5)(B), if, *inter alia*, an individual

debtor has made all plan payments to unsecured creditors. Section 1141(d)(5)(B) provides:

> (B) at any time after the confirmation of the plan, and after notice
> and a hearing, the court may grant a discharge to the debtor who has
> not completed payments under the plan if –
>
>      (i) the value, as of the effective date of the plan, of property
> actually distributed under the plan on account of each allowed
> unsecured claim is not less than the amount that would have been
> paid on such claim if the estate of the debtor had been liquidated
> under chapter 7 on such date;
>      (ii) modification of the plan under section 1127 is not
> practicable; and
>      (iii) subparagraph (C) permits the court to grant a discharge.

---

[2]  Although this Court previously determined that NLG is not a creditor and has no claim against the Reorganized Debtor [*see, Final Judgment on Counts I, II and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV Through IX*, Adv. No. 16-1439-BKC-AJC-A, ECF No. 238], the Court has reviewed the Objection and Opposition and overrules same.

*CASE NO. 16-10389-BKC-AJC*

Subsection (C) of that same statue further states:

> (C) the court may grant a discharge if, after notice and a hearing held
> not more than 10 days before the date of the entry of the order
> granting the discharge, the court finds that there is no reasonable
> cause to believe that –
>
>     (i) section 522(q)(1) may be applicable to the debtor; and
>
>     (ii) there is pending any proceeding in which the debtor may
> be found guilty of a felony of the kind described in section
> 522(q)(1)(A) or liable for a debt of the kind described in section
> 522(q)(1)(B);
>
>     and if the requirements of subparagraph (A) or (B) are met.

11 U.S.C. § 1141(d)(5)(C).

Section 1141(d)(5) allows an individual debtor to seek a discharge after confirmation but

before plan payments are completed as long as the debtor satisfies the requirements of 11 U.S.C.

§ 1141(d)(5)(B). *See, 11 U.S.C. § 1141(d)(5)*; *see also*, *In re Necaise*, 443 B.R. 483 (Bankr. S.D.

Miss. 2010) ("after the effective date of the Bankruptcy Abuse Prevention and Consumer

Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), completion of plan payments

(rather than plan confirmation) discharges an individual debtor. In the alternative, an individual

debtor may seek a discharge before completion of his plan payments, an early discharge, under

either 11 U.S.C. § 1141(d)(5)(A) or (B).").

The Court finds that the Reorganized Debtor has complied with the provisions of 11 U.S.C.

§ 1141(b)(5)(B) so as to be entitled to an early discharge.[3] Exhibit "A" attached to both the Motion

---

[3] The Court notes that during the hearing, counsel for the United States Trustee concurred with the Debtor's
position regarding her entitlement to entry of discharge upon payment to unsecured creditors:

MS. ARMENGOL:

… I can speak as to the procedural propriety of the Court awarding a
discharge now. I concur with Mr. Pugatch -- and for the record, the code
section is 1141(d)(5)(A) and (B) -- that if unsecured claims are paid, the

and Final Report demonstrates that the general unsecured creditors, whose claims were to be paid

in the Plan, have been paid in full. As a result, the value of property [payments] distributed under

the Fourth Amended [Chapter 11] Plan of Reorganization [ECF No. 563] (the "Fourth Amended

Plan") on account of each unsecured claim is not less than the amount that would have been paid

on such claim if the bankruptcy estate would have been liquidated under chapter 7. Therefore, the

Reorganized Debtor has complied with 11 U.S.C. § 1141(b)(5)(B)(i).   The Court takes judicial

notice of Debtor's Monthly Operating Report (Individual) Corrected for the Period May 1, 2018

to May 31, 2018 [ECF No. 727] and Debtor's Monthly Operating Report (Individual) for the

Period June 1, 2018 to June 30, 2018 [ECF No. 725] evidencing the total disbursements made

pursuant to the Fourth Amended Plan and Confirmation Order.   Moreover, the Court finds 11

U.S.C. § 1141(b)(5)(B)(ii) is not applicable as modification of the Fourth Amended Plan is not

practicable under 11 U.S.C. § 1127.

## II.  The Fourth Amended Plan, the Confirmation Order and this Court's prior Orders provide additional bases to grant relief

The Fourth Amended Plan, together with the Confirmation Order and this Court's prior

rulings provide additional authority for issuance of a discharge to the Reorganized Debtor prior to

completion of payments under the Plan. The foregoing documents indicate that the Reorganized

---

individual debtor can receive a discharge.

Looking at the plan, Your Honor, the only other claims were secured. So even if she gets a discharge – Ms. Hazan gets a discharge and doesn't pay pursuant to the plan, they still have that security and that lien.  And a priority claim with the IRS – and I'm not sure where that stands, but Your Honor, I believe that under 1141(d)(5)(B), Your Honor has the authority to grant the discharge at this time.

Transcript, August 9, 2018 Hearings [17:15-25, 18:1-4].

*CASE NO. 16-10389-BKC-AJC*

Debtor intended to seek the issuance of a discharge upon payments in full to unsecured creditors.

For instance, Article VIII of the Fourth Amended Plan, as confirmed by the Court, provides, in

pertinent part:

> (e) Upon the satisfaction of all payments required under the Plan to
> *unsecured creditors*, the Debtor may file a motion to reopen this
> bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk
> of Court fees associated with filing of the motion to reopen shall be
> waived. The motion to reopen shall be verified and served upon all
> creditors and parties in interest and shall demonstrate that the Debtor
> has made all of the payments contemplated under the Plan to
> *unsecured creditors*.

*See, Fourth Amended Plan, Article VIII* [ECF No. 563], page 30 of 31. [Emphasis added]. The

Court finds that the Reorganized Debtor complied with Article VIII(e) of the Fourth Amended

Plan by filing the Motion which attached as Exhibit "A" a list of payments demonstrating that the

Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

In addition, Article VIII of the Fourth Amended Plan, as confirmed by the Court, states, in

relevant part:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor
> shall promptly file a Final Report of Estate and Motion for Final
> Decree Closing Case on the Court-approved local form, which shall
> certify that all payments required under the Plan to *unsecured
> creditors* have been made. The Court may then grant the Debtor a
> discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See, Fourth Amended Plan, Article VIII* [ECF No. 563], page 31 of 31. [Emphasis added]. The

Court finds that the Reorganized Debtor complied with Article VIII(f) of the Fourth Amended

Plan by filing the Final Report which attached as Exhibit "A" a list of payments demonstrating

that the Reorganized Debtor made all plan payments to Class 12 unsecured creditors.

*CASE NO. 16-10389-BKC-AJC*

On or about June 12, 2018, this Court entered its Confirmation Order which confirmed the

Fourth Amended Plan and contemplated the issuance of a discharge to the Reorganized Debtor

upon the completion of plan payments to unsecured creditors under the Plan. Specifically,

paragraph 18(e) of the Confirmation Order states:

> (e) Upon the satisfaction of all payments required under the Plan to
> *Unsecured Creditors*, the Debtor may file a motion to reopen this
> bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk
> of Court fees associated with filing of the motion to reopen shall be
> waived. The motion to reopen shall be verified and served upon all
> creditors and parties in interest and shall demonstrate that the Debtor
> has made all payments contemplated under the Plan to *Unsecured*
> *Creditors*.

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added]. The Court finds that the

Reorganized Debtor complied with paragraph 18(e) of the Confirmation Order, by filing the

Motion which attached as Exhibit "A" a list of payments demonstrating that the Reorganized

Debtor made all plan payments to Class 12 unsecured creditors.

In addition, paragraph 18(f) of the Confirmation Order states:

> (f) Upon the re-opening of this bankruptcy proceeding, the Debtor
> shall promptly file a Final Report of Estate and Motion for Final
> Decree Closing Case on the Court-approved local form, which shall
> certify that all payments required under the Plan to *Unsecured*
> *Creditors* have been made. The Court may then grant the Debtor a
> discharge, pursuant to 11 U.S.C. § 1141(d)(5).

*See*, *Confirmation Order* [ECF No. 691], page 7 of 8. [Emphasis added]. The Court finds that the

Reorganized Debtor complied with paragraph 18(f) of the Confirmation Order by filing the Final

Report which attached as Exhibit "A" a list of payments demonstrating that the Reorganized

Debtor made all plan payments to Class 12 unsecured creditors.

*CASE NO. 16-10389-BKC-AJC*

On or about June 13, 2018, this Court entered its Agreed Order Granting Reorganized

Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 Case After

Confirmation [ECF No. 692] (the "Agreed Order"). The Agreed Order provides, *inter alia*:

> Upon the re-opening of this bankruptcy case, the Reorganized
> Debtor shall promptly file a Final Report and Motion for Final
> Decree Closing Case on the Court-approved local form in effect at
> that time, which shall certify, that all payments required under the
> Plan to the *unsecured creditors* have been made. The Court may
> then grant the Reorganized Debtor a discharge, pursuant to 11
> U.S.C. § 1141(d)(5) if all other conditions are satisfied.

*See*, *Agreed Order* [ECF No. 692], page 2 of 3. [Emphasis added]. The Court finds that the

Reorganized Debtor complied with the Agreed Order by filing the Motion and Final Report, with

Exhibit "A" attached to both pleadings, indicating all payments were made by the Debtor to Class

12 unsecured creditors.

**III.     NLG's Objection and Opposition**

NLG, LLC is the only entity objecting to the granting of a discharge in this case. NLG,

whose claim the Court disallowed, asserted that a discharge should not be granted at this time

because the Debtor has not yet paid Creditor JMB Urban Development Partners, LTD in full. The

Court took the matter under advisement to consider the objection; and upon further consideration

and review of the record, the Court overrules the objection.

NLG argues that the Court may not enter a discharge order until the Reorganized Debtor

pays JMB in full. The Court disagrees. JMB is not affected by the relief sought and has not objected

to the Debtor receiving a general discharge. Pursuant to the settlement of the adversary proceeding,

in Adv No. 16-1188-BKC-AJC-A [ECF No. 21], the Reorganized Debtor and JMB agreed that

JMB has a non-dischargeable judgment of $275,000.00. Thus, after receiving its *pro rata* share of distributions under the Plan, JMB may continue to pursue payment of its claim outside the Plan. Likewise, the Reorganized Debtor and the Board of Managers of Spencer Condominium have agreed that Debtor's liability in the amount of $109,554.06 to the Board of Managers of Spencer Condominium would be non-dischargeable. Therefore, this Creditor has also agreed to the granting of Debtor's discharge.

Section 1141(5)(B) of the Bankruptcy Code provides for the granting of a discharge to a debtor who has not completed payments, if modification of a plan is not practicable and creditors have received value "not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7." *In re Belcher*, 410 B.R. 206, 215 (Bankr. W.D. Va. 2009) (explaining that "§ 1141(d)(5)(B) provides for early discharge in a manner similar to the 'hardship discharge' in chapter 13 cases under § 1328(b)."). In this case, all unsecured creditors were to be paid in accordance with the Plan, and those payments have been made in full. JMB and the Board of Managers of Spencer Condominium may pursue the remaining amounts of their respective non-dischargeable debts outside the Plan. Because the entry of a discharge [of the claims of the unsecured creditors who were paid in full under the Plan] will not affect JMB or the Board of Managers of Spencer Condominium, the Court sees no reason to withhold the discharge when the Debtor has otherwise established entitlement to same.

The entry of a non-dischargeable judgment, and the outstanding debt thereunder, does not prevent the early entry of an order of discharge, because a discharge in no way impacts the non-dischargeable debts. Unsecured creditors holding nondischargeable claims are entitled to collect the balance of their debts outside the plan. In *Newman v. United States (In re Newman)*, 399 B.R.

*CASE NO. 16-10389-BKC-AJC*

541, 548 (Bankr. M.D. Fla. 2008), the court held that a creditor holding a nondischargeable claim is not prevented from pursuing post-confirmation collection efforts outside of bankruptcy, regardless of whether such claim was provided for in the confirmed plan. A nondischargeable debt may remain after a debtor has emerged from bankruptcy.

Although the Court believed that, following the August 9, 2018 hearing, the Debtor had demonstrated compliance with the requirements of 11 U.S.C. § 1141(d)(5), the Court set another hearing for October 24, 2018 to address whether a discharge should be issued while the Reorganized Debtor's non-core tort claims remained pending in an adversary proceeding. [ECF No. 745]. At the October 24, 2018 hearing, the Reorganized Debtor announced she was withdrawing her non-core tort claims, thereby alleviating the Court's concerns. Adv. No. 16-1439-BKC-AJC-A [ECF No. 358].

For the foregoing reasons, the Court finds that the Reorganized Debtor has complied with 11 U.S.C. § 1141(d)(5)(B) by demonstrating her completion of all plan payments to general unsecured creditors under the Fourth Amended Plan and Confirmation Order and has otherwise complied with the requirements to receive a discharge. However, the Court will refrain from closing this case at this time as there remains pending the parties' motions for sanctions and for contempt, as well as several appeals. It is the policy of the Court to not close a case until all appeals are finally resolved and over. Therefore, it is

**ORDERED AND ADJUDGED:**

1. The Motion [ECF No. 713] is **GRANTED IN PART,** and this bankruptcy case is **RE-OPENED** for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 509 of
Case 16-10389-AJC   Doc 1375   Filed 12/05/22   Page 11 of 12

866

2.   The Final Report is **APPROVED.**

3.   NLG, LLC's motion and amended motion to re-open Chapter 11 case [ECF Nos. 757 and 763] are **GRANTED IN PART** with respect to reopening this case, and not closing the case until the final disposition of all pending motions and appeals herein, but NLG, LLC's Opposition and Objection to the granting of the discharge are **DENIED** and **OVERRULED.**

4.   The Reorganized Debtor is entitled to a discharge in accordance with the provisions of 11 U.S.C. § 1141(d)(5), and the Fourth Amended Plan and the Confirmation Order; thus, the Reorganized Debtor is **DISCHARGED** pursuant to the provisions of 11 U.S.C. § 1141(d) from any debt that arose before the date of such confirmation and any debt of any kind specified in Section 502(g), 502(h) or 502(i) of Title 11 in accordance with the provisions of 11 U.S.C. § 1141(d).

5.   The discharge issued to the Reorganized Debtor does not discharge or otherwise affect the JMB non-dischargeable judgment.

6.   The discharge issued to the Reorganized Debtor does not discharge the Reorganized Debtor from her personal monetary liability in the amount of One Hundred Nine Thousand Five Hundred Fifty-Four and 06/100 Dollars ($109,554.06) to the Board of Managers of Spencer Condominium. The Reorganized Debtor has other non-monetary obligations under the Settlement Agreement with the Board of Managers of Spencer Condominium, as provided for in the treatment of Class 11 under the Fourth Amended Plan and the Confirmation Order, and such non-monetary obligations are not impacted by the discharge. The New York courts have exclusive

*CASE NO. 16-10389-BKC-AJC*

jurisdiction over the settlement between those parties.

7. This case shall remain open pending the final disposition of all motions herein and

the outstanding appeals, after which the Court will direct the Clerk of Court to enter

a Final Decree closing this case.

### ###

Submitted by:

Geoffrey S Aaronson, Esq
Aaronson Schantz Beiley P.A.
Florida Bar No. 349623
One Biscayne Tower, 34th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Tel. 786.594.3000
Fax 305.424.9336
Email gaaronson@aspalaw.com
*Attorney for Reorganized Debtor*

*Attorney Geoffrey Aaronson is directed to serve a copy of this Order on all interested parties and to file a certificate of service with the Court.*

**CGFD30** (10/01/16)



**ORDERED in the Southern District of Florida on December 5, 2022**

*A. Jay Cristol*

**A. Jay Cristol**
United States Bankruptcy Judge

---

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

**Case Number: 16–10389–AJC**

**Chapter: 11**

**In re:** *Debtor(s) name(s) and address(es) (for names include married, maiden and trade used by the debtor(s) in the last 8 years)*

Liza Hazan
aka Elizabeth Hazan
6913 Valencia Drive
Miami Beach, FL 33109

SSN: xxx–xx–7473

## FINAL DECREE

A Final Report and Motion for Entry of Final Decree having been filed on behalf of the debtor, this chapter 11 case is closed. If applicable, all future payments under the plan of reorganization shall be disbursed in accordance with the plan.

# # #

The clerk shall serve a copy of this Final Decree on the Debtor, Attorney for Debtor, and the U.S. Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re                                                    Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                          Chapter 11
_____/

### JOINT MOTION TO REOPEN CASE, FOR RELIEF FROM DISCHARGE ORDER AND FINAL DECREE, TO DECLARE CONFIRMED PLAN IN DEFAULT, TO STRIKE CONFIRMATION ORDER, TO DISMISS CASE WITH PREJUDICE AND RESTORE ALL PARTIES TO THEIR PREPETITION STATUS

NLG, LLC ("NLG"), Fisher Island Community Association ("FICA") Members, Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC, through undersigned counsel, and Chris Kosachuk ("Kosachuk"), *pro se,* (collectively "Movants") in accordance with 11 U.S.C. §§349(b) and 1112(b) and Rules 9024 and 1017 of the Federal Rules of Bankruptcy Procedure, respectfully move to reopen this case, for relief from the Discharge Order [Doc. 1375] and Final Decree [Doc. 1376], to declare the confirmed plan in default, to strike the Confirmation Order [Doc. 691], to dismiss this individual Chapter 11 bankruptcy case with prejudice and restore all parties to their respective prepetition status (the "Motion"). In support of the Motion, Movants state:

This confirmed plan has been in continuous default since its confirmation date of June 12, 2018, a fact hidden from everyone because this Debtor failed to file any post confirmation operating reports, even though they were required by the Bankruptcy Code and the Confirmation Order. [Doc. 691 ¶10]. This Court should declare that the confirmed plan is in default, strike the confirmed plan and dismiss this bankruptcy with prejudice to the filing of another petition under any chapter of the Bankruptcy Code for a period of at least seven years.

At a hearing on June 22, 2022, Judge Cristol stated "If we can get this matter solved and people paid within the next 90-day or 80-day period, that will be nice, and if not, it may be that the case will be dismissed, but that's where we're at." [Transcript p. 38 lines 7 to 10].

At a hearing on June 30, 2022, Judge Cristol stated "I thought that I made it quite clear at the last hearing that the Court wants this case to be wound up within the next 90 days". [Transcript p. 9 lines 21-23]. Judge Cristol continued "as I stated at the last hearing, we're not going beyond another 90 days, and so either sell it, refinance it, or the case will probably be dismissed." [Transcript p. 10 lines 8-10].

Unfortunately, Judge Cristol allowed this Debtor to languish in bankruptcy without making her plan payments beyond the 90 days. It is now almost one year later and the Debtor has still not paid anyone.

**According to the table starting on page 3, the total amount of the payment defaults is $1,659,194.25 and the amount increases each day by the failure of this Debtor to pay the ongoing costs of the Fisher Island property.**

## Jurisdiction, Venue and Statutory Predicate

1.      This Court has jurisdiction to hear this matter and enter a final order granting the relief requested herein pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are 11 U.S.C. §§349(b) and 1112(b) and Rules 9024 and 1017 of the Federal Rules of Bankruptcy Procedure.

## CONFIRMED PLAN PAYMENT DEFAULTS

Below is a table summarizing all the confirmed plan payment defaults by this Debtor in chronological order beginning with the very first default with her payment to the Fisher Island

Community Association occurring on June 12, 2018, the day of confirmation. This Motion will set out in greater detail how Hazan has repeatedly defaulted on her plan obligations.

| Date of Payment Default | Creditor | Amount |
|---|---|---|
| June 12, 2018 | Fisher Island Comm. Assoc. | $46,555 |
| July 1, 2018 | Fisher Island Comm. Assoc | $6,730 |
| July 20, 2018 | JMB Urban Development | $275,000 |
| October 1, 2018 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2018 | Estimated Income Taxes -IRS | $60,000 |
| December 18, 2018 | Real Estate Taxes | $57,247 |
| December 12, 2018 | IRS | $22,948 |
| December 12, 2018 | IRS | $2,674 |
| January 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| March 13, 2019 | Spencer Condominium | $109,555 |
| April 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| June 1, 2019 | IRS | $22,948 |
| June 12, 2019 | IRS | $2,674 |
| July 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| August 1, 2019 | Valencia Estates Monthly | $1,726 |
| September 1, 2019 | Valencia Estates Monthly | $1,726 |
| October 1, 2019 | Fisher Island Comm. Assoc. | $6,730 |
| October 1, 2019 | Valencia Estates Monthly | $1,726 |
| October 15, 2019 | Estimate Income Taxes-IRS | $150,000 |
| November 1, 2019 | Valencia Estates Monthly | $1,726 |

3

| | | |
|---|---|---|
| November 25, 2019 | Real Estate Taxes | $59,844 |
| December 1, 2019 | Valencia Estates Monthly | $1,726 |
| December 12, 2019 | IRS | $22,948 |
| December 12, 2019 | IRS | $2,674 |
| January 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2020 | Valencia Estates Monthly | $1,726 |
| February 1, 2020 | Valencia Estates Monthly | $1,726 |
| March 1, 2020 | Valencia Estates Monthly | $1,726 |
| April 1, 2020 | Valencia Estates Monthly | $1,726 |
| April 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| May 1, 2020 | Valencia Estates Monthly | $1,726 |
| June 1, 2020 | Valencia Estates Monthly | $1,726 |
| June 12, 2020 | IRS | $22,948 |
| June 12, 2020 | IRS | $2,674 |
| July 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| July 1, 2020 | Valencia Estates Monthly | $1,726 |
| August 1, 2020 | Valencia Estates Monthly | $1,726 |
| September 1, 2020 | Valencia Estates Monthly | $1,726 |
| October 1, 2020 | Valencia Estates Monthly | $1,726 |
| October 1, 2020 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2020 | Estimated Income Taxes-IRS | $150,000 |
| November 1, 2020 | Valencia Estates Monthly | $1,726 |
| November 27, 2020 | Real Estates Taxes | $58,627 |

4

| December 1, 2020 | Valencia Estates Monthly | $1,726 |
| December 12, 2020 | IRS | $22,948 |
| December 12, 2020 | IRS | $2,674 |
| January 1, 2021 | Valencia Estates | $10,156 |
| January 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2021 | Valencia Estates Monthly | $1,726 |
| February 1, 2021 | Valencia Estates Monthly | $1,726 |
| March 1, 2021 | Valencia Estates Monthly | $1,726 |
| April 1, 2021 | Valencia Estates Monthly | $1,726 |
| April 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| May 1, 2021 | Valencia Estates Monthly | $1,726 |
| June 1, 2021 | Valencia Estates Monthly | $1,726 |
| June 1, 2021 | Valencia Estates | $10,156 |
| June 12, 2021 | IRS | $22,948 |
| June 12, 2021 | IRS | $2,674 |
| July 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| July 1, 2021 | Valencia Estates Monthly | $1,726 |
| August 1, 2021 | Valencia Estates Monthly | $1,726 |
| September 1, 2021 | Valencia Estates Monthly | $1,726 |
| October 1, 2021 | Valencia Estates Monthly | $1,726 |
| October 1, 2021 | Fisher Island Comm. Assoc. | $6,730 |
| October 15, 2021 | Estimated Income Taxes-IRS | $150,000 |
| November 1, 2021 | Valencia Estates Monthly | $1,726 |

| November 1, 2021 | Valencia Estates | $10,156 |
| November 19, 2021 | Real Estates Taxes | $59,282 |
| December 1, 2021 | Valencia Estates Monthly | $1,726 |
| December 12, 2021 | IRS | $22,948 |
| December 12, 2021 | IRS | $2,674 |
| January 1, 2022 | Fisher Island Comm. Assoc. | $6,730 |
| January 1, 2022 | Valencia Estates Monthly | $1,726 |
| February 1, 2022 | Valencia Estates Monthly | $1,726 |
| March 1, 2022 | Valencia Estates Monthly | $1,726 |
| April 1, 2022 | Valencia Estates Monthly | $1,726 |
| April 1, 2022 | Valencia Estates | $20,313 |
| April 1, 2022 | Fisher Island Comm. Assoc. | $6,730 |
| May 1, 2022 | Valencia Estates Monthly | $1,726 |
| June 1, 2022 | Valencia Estates Monthly | $1,726 |
| June 12, 2022 | IRS | $22,948 |
| June 12, 2022 | IRS | $2,674 |
| June 29, 2022 | Valencia Estates Plan | $50,781.25 |
| July 1, 2022 | Fisher Island Comm. Assoc. | $6,730 |
| July 1, 2022 | Valencia Estates Monthly | $1,726 |
| | **Total Defaulted Payments** | **$1,659,194.25** |

In addition, the Debtor has failed to pay the insurance on the Fisher Island property, which is her only real asset.

6

## **Background**

4.      Liza Hazan a/k/a Elizabeth Hazan (the "Debtor") filed her Chapter 11 Petition over seven years ago, on January 11, 2016 (the "Petition Date"), the day before a Miami-Dade County Clerk foreclosure auction was to take place on her Fisher Island Property pursuant to NLG's $4,876,654.29 Final Judgment of Foreclosure.

5.      At the time of the petition filing, the Debtor had several million dollars of delinquent and unpaid creditors in addition to NLG.   By way of example the IRS was owed $444,733.17, [Claim 3-1], JMB Urban Development LTD ("JMB") was a judgment creditor owed $664,380.47, [Claim 4-2], the Valencia Estates Homeowners' Association was owed $195,072.14 [Claim 10-1] and the Fisher Island Community Association ("FICA") was owed over $500,000 but as a secured creditor FICA did not file a proof of claim.

### **JMB Urban Development LTD**

6.      JMB timely filed a proof of claim for $664,380.47.  [*See* Proof of Claim 4-2].  The Debtor failed to schedule JMB's judgment as a liability.   As such, the Debtor's voluntary petition and schedules were fraudulent.

7.      Thereafter JMB filed an adversary proceeding to determine the non-dischargeability of debt pursuant to 11 U.S.C. §§ 523(a)(2) and (6) and Federal Rule of Bankruptcy Procedure 4007 against Debtor/Defendant Liza Hazan *aka* Elizabeth Hazan. [*See JMB v. Hazan.* Case No. 16-ap-1188-AJC Doc. 1].

8.      JMB brought the action to object to the dischargeability of debt owed by the Debtor to JMB under a final judgment entered by the Circuit Court of Cook County, Illinois, which forms the basis of JMB's proof of claim in this case. JMB alleged that the debt should not be discharged because it is subject to the "fraud" exceptions contained in 11 U.S.C. §§ 523(a)(2) and (6), for

money obtained by the Debtor by false pretenses, false representation, or actual fraud and while the Debtor was acting in a fiduciary capacity.

9.    The adversary proceeding concluded with the entry of an Agreed Final Judgment entered on July 20, 2016 in the non-dischargeable amount of $275,000 along with provisions for a timely payment of said Judgment pursuant to the Confirmed Plan.  [*See JMB v. Hazan.* Case No. 16-ap-1188-AJC Doc. 21 and attached hereto as Exhibit 1 of the Appendix on page A.3].

10.    Each party negotiated the key provisions provided for in the Agreed Final Judgment.  JMB agreed to reduce the amount it was owed to $275,000, but now held a non-dischargeable judgment and would be timely paid in full by the Debtor on or before July 20, 2018, without further litigation or collection activity and expense.

11.    JMB agreed to support and vote for Debtor's Plan of Reorganization so long as said Plan required payment to JMB in the amounts set forth in this Non-Dischargeability Judgment prior to the Second Anniversary Date (July 20, 2018), and would not treat JMB in a manner less favorable to other unsecured creditors under the plan with respect to its now agreed upon $275,000 unsecured nondischargeable claim. It provided that, while the Debtor may establish a convenience class of small claims to which it may pay 100 cents at confirmation--provided this class does not exceed $30,000 in the aggregate, the Debtor would not make any other cash payments to its other creditors unless JMB received a like percentage of cash on its $275,000 claim at the time of the distribution.

12.    In reliance of the Agreed Final Judgment, JMB gave the debtor breathing room and time to confirm the Plan.

13.    JMB dutifully voted for the Plan and with JMB's support the Plan was confirmed. Since then, it has patiently waited to be paid, but has received nothing.

14.     At or just before the Confirmation Hearing on May 30, 2018, the Debtor paid Creditor Valencia Estates Homeowner's Association $74,101.63 of the $195,072.14 owed according to the Plan as Claim #10. [*See* Doc. 563. P11].

15.     This payment equals 38% of what was owed to this Creditor and triggered an immediate of 38% payment to JMB or approximately $104,000 pursuant to the Agreed Final Judgment.  However, the Debtor defaulted in making this 38% payment to JMB.

16.     Pursuant to the terms of the Agreed Final Judgment, the Debtor was to satisfy the JMB judgment in full by July 20, 2018.  Again, the Debtor defaulted on the confirmed plan payment to JMB due by July 20, 2018. Indeed, the Debtor's financial projections attached to her Fifth Amended Disclosure Statement, [Doc. 562-4], falsely showed a $275,000 payment to JBM in July 2018.

17.     On July 20, 2018, just a month after confirmation, the Debtor failed to pay JMB the $275,000 called for in the Plan. [*See* Doc. 563. P.21]. This default put the Confirmed Plan in continuous default for almost four years.

18.     On August 15, 2018, S&S Collections, Inc., the collection arm of the Debtor's personal lawyer Michael Simon of Simon & Sigalos, filed a notice of Compliance Regarding Claim #13.  [*See* Doc. 737].  The Notice read: "Undersigned counsel received the settlement funds and the settlement is paid in full." This payment in full to S&S triggered a full payment to JMB. The Debtor again failed to honor her agreement and failed to pay JMB.

19.  The Debtor clearly deceived JMB into supporting the Plan and into accepting 41% of what it was owed when the Debtor was and is capable of paying JMB 100% of what is owed. As such JMB should be restored to its status as a judgment creditor in the amount of $664,380.47 as of the petition date.

9

**Spencer Condo**

20. The Debtor owed a substantial tax liability to the IRS (about $444,733.17). [*See* Doc. 21 p. 13, Doc. 563 p. 15, IRS Proof of Claim #3, which recorded a lien on the Debtor's Spencer Condo attached to its proof of claim form and IRS Motion to Dismiss Doc. 1157].

21.  Although the Debtor claimed in the Fifth Amended Disclosure Statement that she had completed her investigation into potentially avoidable transfers, the Spencer Condo Transfer was not mentioned at all in her Fifth Amended Disclosure Statement or in her bankruptcy schedules or amended schedules. [*See* Doc. 562 p. 12 and Doc. 21 and 90].

22. Debtor Hazan concealed her ownership interest in the Spencer Condo but did schedule a mortgage to U.S. Bank recorded on the Spencer Condo [*See* Schedule Doc. 21 p 19], another mortgage to Real Time Solutions recorded on the Spencer Condo [*See* Schedule Doc. 21 p 19], the unpaid Spencer Condo fees [*See* Schedule Doc. 21 p 20] and IRS tax liens. [*See* Schedule Doc. 21 p 19].

23. Later in her Schedules, on page 32, the Debtor listed the following under Legal Actions, Repossession and Foreclosures:

(a) The Board of Managers of the Spencer Condominium v. Hazan et. al. Case No 154149-2012 in the Supreme Court of New York. The nature of the suit is unpaid condo fees.

(b) US Bank, NA v. Hazan et. al. Case No. 850240-2014 in the Supreme Court of New York. The nature of the suit is residential foreclosure.

(c) Spencer Condominium v. Hazan et. al. Case No 111644-2009 in the Supreme Court of New York. The nature of the suit is unpaid condo fees.

24. On page 38 of her Schedules, in the Section titled: Give Details About Your Business or Connections to Any Business, Debtor Hazan lists businesses with the address of 1 East 62nd Street, Apt. 1a, New York, NY 10065, which is the address of the Spencer Condo.

25. Debtor Hazan clearly is still the beneficial owner of the Spencer Condo even though she fraudulently conveyed the title for zero consideration. Attached hereto as Exhibit 2 of the Appendix [A.8] is a mortgage recorded on the Spencer Condo to the Hazan's post-petition bankruptcy attorney Geoffrey Aaronson's law firm, for $145,000.

26.    The Debtor defaulted on her plan payment to the Spencer Condo in the amount of $109,554.86.  [Doc. 563. P. 16].  In the confirmed Plan, the Debtor represented that Real Estate Holdings Group L.D.C. ("REHG"), the then current owner of the Spencer Condo (an entity owned and managed by the debtor's then husband Sean Neil Meehan), would pay the $109,554.86. However, REHG transferred the title to the unit without paying any of the money owed despite claiming to have received $4.1 million according to the transfer tax paid to the City of New York. [*See* Exhibit 11 [A.179]]. Moreover, the Spencer Condominium filed a proof of claim in the amount of $667,544.89 [Claim #14] which should now be restored and paid to the Spencer Condo as opposed to the reduced amount in the Confirmed Plan.

**Attorney Geoffrey Stuart Aaronson**

27. Attorney Aaronson was counsel of record for the Debtor in the Bankruptcy Case and filed the petition on January 11, 2016. [Doc. 1].

28. The Debtor gave Attorney Aaronson a $145,000 mortgage on the Spencer Condo as security for his legal fees and he failed to disclose this arrangement to the Bankruptcy Court.

29. This mortgage is still outstanding because US Bank filed an amended foreclosure complaint on February 1, 2022 with Debtor Hazan and her bankruptcy attorney Geoffrey

11

Aaronson's law firm both as named defendants.  Attached hereto as Exhibit 3 of the Appendix [A.16] is the New York foreclosure complaint naming Aaronson, Schantz & Beiley PA as a defendant.

30. This mortgage also discloses mortgages to three other unsecured but preferred creditors, Bruce Jacobs, Esq. for $55,000, Robert P. Lithman, Esq. for $95,000 and Mark Cohen, Esq. for $25,000. These three attorneys represented Hazan and her then husband's corporation, Selective Advisors Group, LLC, at various stages of the state court foreclosure proceedings in front of then Circuit Judge Monica Gordo.

31. All three attorneys were listed as unsecured creditors in the Debtor's original bankruptcy petition and became secured creditors to the detriment of the other creditors.

32. Attorney Aaronson was present at the confirmation hearing, supported confirmation but never disclosed his secured creditor status, nor the secured status of the other attorneys, to the detriment of all other creditors.

33. In fact, he told the Court: "Good afternoon, Your Honor. Geoffrey Aaronson, Aaronson Schantz Beiley, P.A., also former counsel for the debtor. I'm appearing here on behalf of my firm, basically just an interested party. We're appropriately dealt with in the plan."  May 30, 2018 Confirmation Hearing Transcript p. 4. [Doc. 707 p. 4 lines 11-15].

34. Attorney Aaronson knew that representation he just made was misleading, or was made with reckless disregard for the truth, because Mr. Aaronson was the holder of a mortgage executed on November 14, 2016, secured by the Spencer Condo and thus his claim was not actually part of the Plan and was converted from unsecured to secured.

35. In fact, Attorney Aaronson even notarized the mortgage, signed by Sean Neil Meehan, the debtor's then husband, and agreed that upon satisfaction, he would return the original Promissory Note and Mortgage directly to Debtor Elizabeth Hazan. [*See* A.10].

36. Attorney Aaronson made the false representation to induce the court to rely upon it; the court did rely upon it; and, as a consequence of such reliance, the court entered the Confirmation Order. [Doc. 691].

37. Attorney Aaronson had a claim in the Plan of $145,000 and received a mortgage on the Spencer Condo for $145,000. As such, Attorney Aaronson has a security interest for his previously unsecured claim.

38. Had JMB (and other creditors presumably) known that the Debtor was still the beneficial owner of the Spencer Condo and able to execute mortgages in favor of creditors at 100 cents on the dollar, JMB would have never accepted just 41 cents on the dollar for its claim and would have never voted for and supported the Plan. Only the debtor's personal attorneys were offered these undisclosed preferential deals to convert their unsecured claims to secured claims.

39. In a filing before Judge Gayles, in the case of *NLG, LLC v. Liza Hazan, a/k/a Elizabeth Hazan*, case no. 18-22564-CIV-GAYLES Doc. 50 page 15, the Debtor claims: "Based on an appraisal, the [Spencer] condominium unit was believed to have "in excess of $2,500,000.00 in equity."

40.   This Bankruptcy Petition and all related filings, as well as the Plan, the Confirmation Order and Discharge Order are all products of bad faith, fraud and collusion amongst this Debtor and her attorneys to the detriment of all other creditors.  This type of bad faith, fraud and collusion is precisely why the Court in Illinois awarded JMB a judgment in the first place.

41.     It is now readily apparent that the Debtor had and has no intention of honoring the Agreed Final Judgment, nor payments to other creditors pursuant to the confirmed plan and that the Debtor has $2.5 million in New York that she had concealed from the bankruptcy and later liquidated.  As such, dismissal is not only appropriate but mandatory because the confirmed plan is in complete default.

42.     Debtor Hazan and her attorneys failed to manage this debtor's affairs in Chapter 11 bankruptcy for the benefit of all creditors. They gave preferential treatment to themselves with a callous and blatant disregard for other creditors, the bankruptcy code and all their responsibilities under the Bankruptcy Code as a Chapter 11 debtor.

43.     This Court confirmed the Debtor's Plan on June 12, 2018, over written and oral objections. [*See* Doc. 691].

44.     Ever since the Confirmation Order was entered, the Debtor has defaulted on almost all her confirmed plan payments and stopped making plan payments all together in 2019, a fact concealed from everyone by the failure to file the post confirmation operating reports.  The Debtor did not make any plan payments in 2020, 2021 and 2022.

### Fisher Island Community Association Members Viñas, Lee , Via Mia North America, LLC and 2215 Fisher Island Dr. LLC

45.     On June 12, 2018, the day of confirmation, the Debtor defaulted on her payment to FICA. In the plan the Debtor committed herself to "pay the net amount if any of all Fisher Island Community Association's post-petition fees in the amount of $46,555.48… at confirmation…" [*See* Doc. 563, p.13]. She has paid nothing, not even the current monthly HOA fees and has accumulated arrearages in the amount of over **$734,340.35** [*See* Exhibit 4 [A.116]].  Indeed, the last time the debtor made a payment to FICA was in 2008 even though she agreed to pay them in her confirmed plan.  Payments to FICA are due quarterly in advance so the first ongoing payments

14

to Fisher Island was due on July 1, 2018 which the debtor failed to make.  The debtor has failed to

pay each quarterly payment due thereafter (October 1, 2018, January 1, 2019, April 1, 2019, July

1, 2019 etc.).

46.    The FICA fees per unit are now $49,047.80 annually which is a three-fold increase

from 2007 when the Debtor purchased the Fisher Island Property from NLG.  The failure of Debtor

Hazan to pay her FICA fees has caused burden on the paying members of FICA to increase

dramatically.  As such, FICA Members Viñas, Lee, Via Mia North America, LLC and 2215 Fisher

Island Dr. LLC (and all other paying members of FICA) have been harmed by this Debtor's failure

to pay FICA.

47.    It is patently unfair to all paying FICA members that this Debtor is allowed to stay

in bankruptcy while not paying her FICA fees.  Every day that this Debtor remains on Fisher Island

costs the paying Members of FICA.

**The Internal Revenue Service (the "IRS")**

48.    The IRS is another creditor who was to be paid through the confirmed plan. The

Debtor has defaulted on her confirmed plan payments to the IRS (owed $444,733.17).

49.    The IRS recently recorded two new tax liens on April 19, 2022 and April 27, 2022

[*See* Exhibit 5 [A.117]], bringing the outstanding balance owed to the IRS to over $500,000.  These

new tax liens and the IRS's Motion to Dismiss prove that the debtor failed to make the confirmed

plan payments to the IRS.

50.    On June 7, 2022, the United States of America on behalf of the IRS filed a Motion

to Dismiss Debtor's Bankruptcy Case for failure to maintain plan payments to the IRS.  [*See* Doc.

1157]. Movant joins, adopts and incorporates by reference the IRS Motion to Dismiss as if fully

re-written herein. This confirmed plan has been in continuous default since its confirmation date

of June 12, 2018.  This Court should declare the confirmed plan in default and dismiss this bankruptcy with prejudice to the filing of a petition under any chapter of the Bankruptcy Code for a period of at least seven years.

51.    Indeed, in the IRS' Motion to Dismiss, the IRS confirms that the debtor only made one plan payment to the IRS on June 21, 2018 and thus has been in continuous default of her confirmed plan payments to the IRS for almost five years.

52.    Upon information and belief, the debtor has not paid her income taxes due post confirmation either, even though she estimated that she would pay $150,000/year in income taxes in her confirmed plan.  [*See* Doc. 562-4].  If the Debtor had filed the required post confirmation quarterly operating reports, we would know for sure.

### Valencia Estates Homeowners' Association

53.    The Debtor also defaulted on her payments to creditor, Valencia Estates Homeowners' Association. As the record shows, Valencia Estates recently filed a foreclosure in state court, attached as Exhibit 6 [A.120], after having already filed a lis pendens attached as Exhibit 7 [A.159] and a Claim of Lien attached as Exhibit 8 [A.161] showing that the Debtor defaulted on the January 2, 2021 plan payment in the amount of $20,312.50 and all subsequent payments due every five months thereafter in the same amounts.  [*See* Doc. 563. P. 11].  The Debtor has also defaulted on the $1,041.66 ongoing monthly payments due to Valencia Estates every month post confirmation as of the August 2019 payment.  [*See* Doc. 563. P. 12 and Doc. 1098 p. 5].

54.    On April 29, 2022, Valencia Estates filed a motion for stay relief to conduct a foreclosure auction on the Fisher Island Property. [*See* Docs. 1098 to 1098-5].

55.     On May 19, 2022, the Court ruled that it would grant stay relief to Valencia Estates if it is not paid in full by June 22, 2022.  [*See* Doc. 1134].

### JP Morgan Chase Bank

56.     The Debtor has failed to maintain insurance on the Fisher Island Property, which is cause for dismissal under 11 U.S.C. § 1112(b)(4)(C) and failed to pay the real estate taxes, which is also cause for dismissal under 11 U.S.C. § 1112(b)(4)(I).  Attached hereto as Exhibit 9 [A.163-166] are the 2018, 2019, 2020 and 2021 Miami Dade County Real Estate tax bills **all paid by JP Morgan Chase Bank** respectively on November 28, 2018 in the amount of $57,247.08, [A.163], on November 25, 2019 in the amount of $59,844.46 [A.164] and on November 27, 2020 in the amount of $58,627.29 [A.165] and on November 19, 2021 in the amount of $59,281.76 [A.166]. The Plan did not call for JP Morgan Chase Bank to pay the Debtor's real estate taxes.

57.     Additionally, the Debtor has been in continuous foreclosure litigation with JP Morgan Chase Bank since 2013 in the Miami-Dade Circuit Court. On April 14, 2021, the Debtor, *pro se*, filed a 12-page Report with the State Court arguing that the Chase's "mortgage lien was wiped out in the Chapter 11 bankruptcy." A copy of the Report is attached as Exhibit 10 [A.168].

58.     The Confirmed Plan called for payments to creditors and the Debtor has defaulted on most every Confirmed Plan payment.  Every creditor is worse off now than when the petition was filed seven years ago.  This is a grave injustice to all the creditors who have persevered through this debtor's bad faith and vexatious litigation.

59.     Because the Debtor has materially defaulted on the Confirmed Plan, she should be denied any further relief and this Court should dismiss this bankruptcy case with prejudice pursuant to § 1112(b)(4)(N) because there is nothing to liquidate and a dismissal with prejudice is in the best interest of all the creditors.

60.     The Debtor has also failed to file any post-confirmation quarterly reports because she did not want to highlight for this Court, the US Trustee or any other party, all her material defaults of the Confirmed Plan which is cause for dismissal under 11 U.S.C. § 1112(b)(4)(F).

61.     The Debtor's only asset is the Fisher Island Property which she has declared as her homestead and thus exempt.  Accordingly, there are no assets to liquidate and a conversion is not in the best interest of the creditors and would serve no purpose.

62.     The Confirmed Plan was not made in good faith and in fact was made in bad faith as proven by the record and all the defaults of the confirmed plan with the first default occurring on the same day as confirmation.

## MEMORANDUM OF LAW

The Courts have repeatedly stated that in analyzing whether a plan has been proposed in good faith under § 1129(a)(3), "the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012). Specifically, under Chapter 11, the two "recognized" policies, or objectives, are "preserving going concerns and maximizing property available to satisfy creditors." *Bank of Am. Nat.'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999) (citing *Toibb v. Radloff*, 501 U.S. 157, 163, (1991)). More generally, the Bankruptcy Code's objectives include: "giving debtors a fresh start in life," *Walters v. U.S. National Bank of Johnstown*, 879 F.2d 95, 98 (3d Cir. 1989), "discourag[ing] debtor misconduct," *id*., "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," *Integrated Solutions, Inc. v. Service Support Specialties*, 124 F.3d 487, 489 (3d Cir. 1997), and achieving fundamental fairness and justice. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 339-43 (3d Cir. 2006).

In this Bankruptcy, the only objective that has been achieved was to give the Debtor a fresh start, which she obviously squandered by allowing her debts to secured and unsecured creditors to accumulate by not making the Confirmed Plan payments and then attempting to hide these defaults from the US Trustee, the Court and other creditors by failing to file the post confirmation operating reports required by the Bankruptcy Code and the Confirmation Order.  It is undisputed that the Confirmed Plan is in default and this Court should declare it in default, strike the confirmed plan, strike the order and final decree and dismiss the case with prejudice.

In accordance with 11 U.S.C. § 1112(b), the Court should dismiss with prejudice this individual Chapter 11 bankruptcy case because there is nothing to liquidate. Section 1112(b) states:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Section 1112(b)(4)(N) sets forth cause as a "material default by the debtor with respect to a confirmed plan," which is precisely the case with this Debtor. She has defaulted over 80 times starting on July 1, 2018.

Here, cause plainly exists to dismiss this case, which has been languishing in continuous default for almost four years while not making the confirmed plan payments. Clearly, the Debtor has acted in a manner inconsistent with her own confirmed plan. This Court has inadvertently encouraged debtor misconduct and its orders have not achieved fundamental fairness and justice.

As additional causes for dismissal are (1) Debtor's withdrawal of tens of thousands of dollars from the DIP bank account in cash without explanation [11 U.S.C. § 1112(b)(4)(D)]; (2) Debtor's failure to file Post Confirmation Operating Reports [11 U.S.C. § 1112(b)(4)(F)]; and (3)

Debtor's failure to pay the taxes owed to the Miami Dade County Real Estate Tax Collector after the date of the order for relief (January 11, 2016) [11 U.S.C. § 1112(b)(4)(I)].

Clearly this Debtor has displayed a total disregard for the Confirmed Plan, defaulted on it continuously since 2018 and her bankruptcy should be dismissed with prejudice.

The term "cause" is not defined by the Bankruptcy Code, but Section 1112(b)(4) lists sixteen (16) examples of cause which justify dismissal. The examples set forth in this subsection are meant to be nonexclusive. *See In re Global Shipments, LLC*, 391 B.R. 193, 204–05 (Bankr. S.D. Ga. 2007). In this case, the record supports a finding of cause, at a minimum, under Sections 1112(b)(4)(C) (D) (F) (I) and (N).

There is no question that under 11 U.S.C. § 1112(b), a bankruptcy court "has broad discretion to dismiss or convert a Chapter 11 case for cause." *Han v. Linstrom,* No. 02 CV 213, 2002 WL 31049846, at *4 (N.D. Ill. Sept. 12, 2002) (Guzman, J.). The court's analysis proceeds in two steps: first, it must determine whether "cause" exists for either dismissal or conversion. *Id.* Next, it decides "which option is in the best interest of creditors and the estate." *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242 (4th Cir.1994) (citation and internal quotation marks omitted). In the second step, the court must compare "the creditors' interests in bankruptcy with those they would have under state law," and must "consider the interest of *all* creditors." *Id.* at 243 (original emphasis).

Every creditor and interested party to this bankruptcy will be better served with a dismissal with prejudice of this bankruptcy. Allowing this debtor to use the confirmed plan as a sword against certain parties and a shield against other parties is an abuse of the bankruptcy code. Most importantly because the debtor has no assets other than the homesteaded Fisher Island Property, there is absolutely no benefit to the estate, any creditor or interested party from conversion as there

20

are no assets to liquidate in a chapter 7 conversion.  Thus, dismissal with prejudice is the only proper remedy.

Upon dismissal and pursuant to 11 U.S.C. §349(b), this Court should restore all parties to their prepetition status.

11 U.S.C. § 349(b) provides that, "[u]nless the bankruptcy court, for cause, orders otherwise, the dismissal of a bankruptcy case:

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of [the Bankruptcy Code];

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of [the Bankruptcy Code], or preserved under section 510(c)(2), 522(i)(2), or 551 of [the Bankruptcy Code]; and

(C) any lien voided under section 506(d) of [the Bankruptcy Code];

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of [the Bankruptcy Code]; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . ."

The Bankruptcy Court granted an avoidance of NLG's security interest pursuant to 11 USC §544 in Count II of the Third Amended Complaint in adversary proceeding captioned as *Elizabeth Hazan a/k/a Liza Hazan and Selective Advisors Group, LLC* Case No. 16-ap-1439-AJC Doc. 48]. On the date of the petition, NLG's security instrument was its Final Judgment of Foreclosure entered on December 4, 2015 by the Honorable Monica Gordo in the amount of $4,876,654.29, making NLG the largest creditor in this bankruptcy.  [*See* Proof of Claim 17].  The Final Judgment

21

of Foreclosure set an auction of Debtor Hazan's Fisher Island Property for January 12, 2016 and Debtor Hazan filed for bankruptcy protection on January 11, 2016 in order to stop the impending foreclosure auction.  NLG's Final Judgment of Foreclosure is automatically reinstated by § 349(b) and the caselaw supports this outcome.  NLG has been trying to collect on its mortgage against this Debtor for the last sixteen years and its state court foreclosure is long overdue.  This Court cannot allow a Chapter 11 debtor to game the courts for these perverse outcomes.  NLG's immediate foreclosure in state court will allow for Valencia Estates, FICA and JP Morgan Chase Bank to end their pending foreclosures (none of whom have a Final Judgment of Foreclosure like NLG) and be paid immediately.  The IRS, Spencer Condominium and JMB Urban Development could also be paid off from the NLG state court foreclosure.

Thus, insofar as the dismissal of a bankruptcy case is concerned, the aim of § 349(b) is to return the parties, as far as practicable, to the financial positions they occupied before the case was filed. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979, 197 L. Ed. 2d 398 (2017) (noting that dismissal of a [**15] Chapter 11 case "aims to return to the prepetition financial status quo"); S. Rep. No. 95-989, at 49 (1978) ("The basic purpose of [§ 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." (capitalization omitted)), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5835; *see also HSBC Bank USA v. Blendheim (In re Blendheim)*, 803 F.3d 477, 487 (9th Cir. 2015) (noting that, upon dismissal of a Chapter 13 case, the "debtor loses any benefits promised in exchange for the successful completion of the plan—whether *in personam*, such as discharge, or *in rem*, such as lien voidance," and further asserting that, in effect, "dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies available to him"); 3

22

Collier on Bankruptcy ¶ 349.01[2], at 349-3 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017).  *First Nat'l Bank of Oneida, N.A. v. Brandt* 887 F.3d 1255 *; 2018 U.S. App. LEXIS 10372 **; 65 Bankr. Ct. Dec. 154; 27 Fla. L. Weekly Fed. C 840; 2018 WL 1918247.

## **CONCLUSION**

Based on the chart starting on page 3 of this motion, Debtor has clearly defaulted on almost all her plan payments.  This Court must end this abuse of the bankruptcy system and make certain that this debtor can never abuse the bankruptcy code or other courts again in such an egregious and bad faith manner.

**WHEREFORE**, for the foregoing reasons, the Court should grant relief from the Discharge Order [Doc. 1375] and Final Decree [Doc. 1376], declare the confirmed plan in default, strike the Confirmation Order [Doc. 691], dismiss this individual Chapter 11 bankruptcy case with prejudice to the filing of a petition under any chapter of the Bankruptcy Code for a period of at least seven  years, restore all parties to their respective prepetition status and grant such other and further relief as the Court deems appropriate.

Respectfully Submitted,

| | |
|---|---|
| _____<br>Juan Ramirez, Jr.<br>ADR Miami, LLC<br>1331 Brickell Bay Dr. #708<br>Miami, FL 33131<br>(305) 667-6609<br>jr@adrmiami.com | _____<br>Chris Kosachuk<br>*Pro Se Movant*<br>854 Pheasant Run Rd.<br>West Chester, PA 19382-8144<br>(305) 490-5700<br>chriskosachuk@gmail.com |
| Attorney for Creditors NLG, LLC, FICA Members Roberto Viñas, Marta Yee and Robert Vole | |

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the

Southern District of Florida and I am in compliance with the additional qualifications to practice

in this court set forth in Local Rules 2090-1(A).

Dated: February 2, 2023

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of February 2023, a true and correct copy of

the foregoing Motion was electronically filed with the Court's CM/ECF system, which will

electronically serve a copy of the foregoing document on all parties of record.

Respectfully submitted,

_____
Juan Ramirez, Jr.
ADR Miami, LLC
1331 Brickell Bay Dr. #708
Miami, FL 33131
(305) 479-0150
jr@adrmiami.com

24

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                          Case No. 16-10389-AJC

LIZA HAZAN a/k/a
ELIZABETH HAZAN                                 Chapter 11
_____/

---

## APPENDIX TO

## JOINT MOTION FOR RELEIF FROM DISCHARGE ORDER AND FINAL DECREE, TO DECLARE CONFIRMED PLAN IN DEFAULT, TO STRIKE CONFIRMATION ORDER, TO DISMISS CASE WITH PREJUDICE AND RESTORE ALL PARTIES TO THEIR PREPETITION STATUS

---

**Attorneys for NLG, LLC
Fisher Island Community Association
Members, Roberto Viñas, Marta Yee,
Via Mia North America, LLC and 2215
Fisher Island Dr. LLC**

Juan Ramirez, Jr.
ADR Miami, LLC
1331 Brickell Bay Dr. #708
Miami, FL 33131
(305) 667-6609
jr@adrmiami.com

February 2, 2023

# <u>**TABLE OF CONTENTS**</u>

Table of Contents ................................................................ 2

Ex.1-JMB v. Hazan Agreed Final Judgment ......................................... 3

Ex.2-Attorney Aaronson Mortgage on Spencer Condo ....................... 8

Ex.3-US Bank v Hazan Amended Foreclosure Complaint ................................. 16

Ex.4-Fisher Island Community Association Hazan Account Ledger.................. 101

Ex.5-New IRS Tax Liens ...................................................... 117

Ex.6-Valencia Estates v Hazan Foreclosure Complaint ....................................... 120

Ex.7-Valencia Estates Notice of Lis Pendens ........................................ 159

Ex.8-Valencia Estates Claim of Lien............................................. 161

Ex.9-Miami Dade County Tax Bills Paid by Chase ............................................ 163

Ex.10-JP Morgan Chase v Hazan Foreclosure Report ......................................... 167

Ex.11-Spencer Condo Transfer Documents ......................................... 179



**ORDERED in the Southern District of Florida on July 19, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| IN RE:<br><br>**LIZA HAZAN**<br>*aka* **ELIZABETH HAZAN**<br><br>        DEBTOR. | **CASE NO.: 16-10389-AJC**<br><br>**CHAPTER: 11** |
| **JMB/URBAN 900 DEVELOPMENT PARTNERS, LTD.**<br><br>        **PLAINTIFF,**<br><br>v.<br><br>**LIZA HAZAN A/K/A ELIZABETH HAZAN,**<br><br>        **DEFENDANT.** | **ADV. PROC.: 16-01188-AJC** |

## AGREED FINAL JUDGMENT

A.3

THIS MATTER came before the Court upon *Ex Parte* Motion to Approve Agreed Final Judgment by Debtor/Defendant, Liza Hazan a/k/a Elizabeth Hazan ("Hazan"), and Plaintiff JMB/Urban 900 Development Partners, Ltd., Plaintiff ("JMB"), and the Court, noting the agreement of the parties, finding that good and sufficient cause exists; and finding that

JMB and Hazan were engaged in pre-petition litigation which resulted in a Settlement Stipulation and thereafter the entry of Judgment against Hazan, in the Circuit Court of Cook County, Illinois County Department, Law Division, No. 05L 13785 (the "Pre-petition Judgment");

On January 11, 2016, Hazan filed a Petition for Relief under Chapter 11 United States Bankruptcy Code;

On April 18, 2016, JMB filed a Complaint Objecting to Dischargeability to Certain Debts of the Debtor Pursuant to 11 U.S.C. § 523(a)(2) and (6) (the "Dischargeability Matters"); alleging that the Pre-petition Judgment is not dischargeable under 11 U.S.C § 523(a)(2) and (6).

The parties have engaged in substantial negotiations and have agreed to resolve the Dischargeability Matters; and

The parties have agreed to the entry of a Final Judgment resolving the Dischargeability Matters and all issues related thereto on the terms set forth below,

ACCORDINGLY, it is Ordered and Adjudged as follows:

1. Judgment is hereby entered against Hazan in the amount of $275,000.00 ("The Non Dischargeability Judgment"). The Non Dischargeability Judgment shall be deemed non-dischargeable under 11 U.S.C. § 523(a)(2), for which execution shall issue  subject to the following provisions:

    a. The Debtor shall have eighteen months from the date of the filing of the Petition for relief (the "First Anniversary Date") to pay $275,000.00 without interest. Thereafter

A.4

commencing with the First Anniversary Date, any then unpaid balance of The Non Dischargeability Judgment amount shall accrue interest at the rate of 2.5% above the then current federal judgment interest rate per annum.

b. JMB agrees to receive and credit The Non Dischargeability Judgment with all payments made to JMB, including all payments made under and pursuant to the Debtor's Plan of Reorganization, with payments credited first to payment of accrued interest, if any, and then to principal.

2. This Non Dischargeability Judgment shall be the surviving judgment against Hazan and shall be deemed to replace the Pre-petition Judgment, which shall no longer be valid or enforceable.

3. In the event that the Debtor has failed to pay and satisfy this Non Dischargeability Judgment within two years of the date of entry (the "Second Anniversary Date"), JMB may then and in that event proceed to execution of this Non Dischargeability Judgment.

4. In the event that a Plan is confirmed and the Debtor defaults in making payments to JMB and/or other creditors in connection with the payments required under the confirmed Plan, (a) the Debtor will still be entitled to pay and satisfy this Non Dischargeability Judgment before the Second Anniversary Date; and (b) JMB will refrain from exercising any rights that may be granted under the confirmed Plan to enforce the Plan, until after the Second Anniversary Date and does not treat JMB in a manner less favorable than other unsecured creditors.

5. JMB agrees to support and vote for Debtor's Plan of Reorganization so long as said Plan requires payment to JMB in the amounts set forth in this Non Dischargeability Judgment prior to the Second Anniversary Date, and does not treat JMB in a manner less favorable to other unsecured creditors under the plan with respect to its now agreed upon $275,000 unsecured nondischargeable claim. For an avoidance of doubt, while the Debtor may establish a convenience class of small claims to which it may pay 100 cents at confirmation-- provided this class does not exceed $30000 in the aggregate, the Debtor shall not make any other

A.5

cash payments to its other creditors unless JMB receives a like percentage of cash on its $275,000 claim at the time of the distribution .

6.     JMB and Hazan, for themselves, and as may be applicable, their directors, employees, agents and attorneys, and all of their respective successors, assigns, heirs and personal representatives ("Releasing Parties"), hereby release, waive, acquit, satisfy and discharge one another, of, from and against all claims, demands, actions, causes of action, entitlements, suits, debts, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, damages, judgments and executions, in law or in equity (collectively, "Claims"), which each ever had, now have, or which any Releasing Party, respectively, can, shall or may have, against any other Releasing Party, arising from any event, matter, cause or thing occurring, arising or accruing from the beginning of the world until the Effective Date, except, however, this release is not intended to have any affect upon the terms, conditions and obligations of Hazan as set forth in this Agreed Judgment. If and when Hazan makes the full and complete payments as required by this Agreed Judgment, this release shall be deemed unconditional.

7.     This Court shall retain jurisdiction as may be appropriate and necessary to interpret and enforce this stipulation.

s/s/: David J. Fischer, Esq.
Locke Lord LLP
Counsel for Plaintiff
Dated: 7/15/16

s/s/: Geoffrey S. Aaronson, Esq.
Aaronson Schantz Beiley P.A.
Counsel for Debtor
Dated: 7/15/16
s/s/:Joel M. Aresty, Esq.
Joel M. Aresty P.A
Counsel for Debtor
Dated: 7/15/16

Elizabeth Hazan
Debtor
Dated: 07.14.16

## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2017080301184001002ED19B

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 8 |
|---|---|---|
| Document ID: **2017080301184001** | Document Date: 11-14-2016 | Preparation Date: 08-30-2017 |

Document Type: MORTGAGE
Document Page Count: 7

| PRESENTER: | RETURN TO: |
|---|---|
| TITLEVEST AGENCY<br>44 WALL STREET, R-NY-608614<br>10TH FLOOR<br>NEW YORK, NY 10005<br>212-757-5800<br>RECORDINGS@TITLEVEST.COM | TITLEVEST AGENCY<br>44 WALL STREET, R-NY-608614<br>10TH FLOOR<br>NEW YORK, NY 10005<br>212-757-5800<br>RECORDINGS@TITLEVEST.COM |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot   1A | 1 EAST 62 STREET |

Property Type:  SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____  *or*  DocumentID_____  *or*  _____ Year_____ Reel____ Page_____  *or*  File Number_____

### PARTIES

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| REAL ESTATE HOLDINGS GROUP, L.D.C.<br>60 MARKET SQUARE, P.O. BOX 364<br>BELIZE CITY<br>BELIZE | AARONSON SCHANTZ BEILEY P.A.<br>100 S.E. 2ND STREET, 27TH FLOOR<br>MIAMI, FL 33131 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 145,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 145,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 725.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 1,450.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 362.50 | | | |
| MTA: | $ | 405.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 2,942.50 | | | |
| Recording Fee: | $ | 72.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed     08-31-2017 12:35
City Register File No.(CRFN):
**2017000325773**

*Annette M Hill*

*City Register Official Signature*

A.8

**This Mortgage Agreement secures
a Promissory Note of even date
in the amount of $145,000.00.**

This instrument prepared by,
and after recording, return to:

Geoffrey S. Aaronson, Esq.
Aaronson Schantz Beiley P.A.
100 S.E. 2nd Street, 27th Floor
Miami, Florida 33131

(Reserved for Clerk of Court, New York
County)

---

## MORTGAGE AGREEMENT

THIS MORTGAGE AGREEMENT, executed the 14th day of November, 2016, by Real Estate Holdings Group, L.D.C. ("REHG"), of 60 Market Square, P.O. Box 364, Belize City, Belize (hereinafter the "Mortgagor"), to AARONSON SCHANTZ BEILEY P.A., ("ASBPA") whose mailing address is 100 S.E. 2nd Street, 27th Floor, Miami, Florida 33131 (hereinafter the "Mortgagee").

### W I T N E S S E T H:

WHEREAS, Mortgagor executed and delivered to Mortgagee that certain Assumption and Springing Guarantee Agreement and Secured Promissory Note (hereinafter the "Promissory Note"), of even date herewith, wherein Mortgagor has agreed to pay Mortgagee Principal and Interest (hereinafter the "Obligation"). The Mortgagor has agreed to secure the Obligations under the Promissory Note by granting this Mortgage (hereinafter the "Mortgage") to Mortgagee in respect to real property owned by Mortgagor located at: 1 East 62 Street Apt 1A, New York, NY 10065 (the "Property"). As more fully set forth in the parties' Promissory Note, this Mortgage shall become due eight months from the date of execution of the Promissory Note, or upon the sale of the Property, or refinancing of the Property for an amount in excess of the amount outstanding and accruing under the existing Mortgages plus tax liens (if any), and existing and future maintenance liens (for example if the amount outstanding under the existing first mortgage is $2.4 million, and the second mortgage is $340,000.00, and maintenance is $500,000.00, then refinancing in excess of $3,240,000) or upon any other Final Default as set forth in the Promissory Note or this Mortgage. Upon full payment of the Obligations, the Mortgagee shall promptly file and record a satisfaction of this Mortgage, and shall return the original Promissory Note and Mortgage to Mortgagee % Elizabeth Hazan.

NOW, THEREFORE, the Mortgagor, in consideration of the indebtedness and to secure the payment to Mortgagee of the Obligation provided for in the Promissory Note and in this Mortgage, has granted, bargained, sold and conveyed and by these presents do

A.9

grant, bargain, sell and convey unto Mortgagee the Property, as particularly described in the attached Schedule "A"

To have and hold the same together with the tenements, hereditaments, and appurtenances, unto the Mortgagee and their heirs and assigns, fee simple.

And the Mortgagor, for itself and its members, officers, directors, employees, agents, legal representatives and assigns, do covenant with the Mortgagee and its members, officers, directors, employees, agents, legal representatives and assigns that the Mortgagor has full power and lawful right to convey the Property as aforesaid; that the Property is free from all voluntary encumbrances, with the exception of those listed herein on Schedule B, and that the Mortgagor, their heirs, legal representatives, successors or assigns will make such further assurances to perfect the fee simple to the Property in the Mortgagee, and its members, officers, directors, employees, agents, legal representatives and assigns as may reasonably be required, and that the Mortgagor hereby fully warrants the title to the Property and will defend the Property against the lawful claims of all persons whomsoever including for any tax deeds, claim of lien(s) or mortgage by any governmental or non-governmental authority or taxing authority.

And the Mortgagor, for itself and its members, officers, directors, employees, agents, legal representatives and assigns, hereby covenants and agrees to pay all and singular sums of money payable by virtue of the Obligations and this Mortgage.

This Mortgage shall be recorded upon the earlier of: (i) Six (6) months from the date of the Promissory Note; (ii) the entry into a contract for sale (or prior to actual sale) of all or part of the Property; or (iii) the refinancing of, or the impending refinancing of, the Property for an amount in excess of the amount outstanding and accruing under the existing Mortgages plus tax liens (if any), and existing and future maintenance liens (for example if the amount outstanding under the existing first mortgage is $2.4 million, and the second mortgage is $340,000.00, and maintenance is $500,000.00, then refinancing in excess of $3,240,000); or (iii) upon any other Final Default as set forth in the Promissory Note or this Mortgage.

Anything herein to the contrary notwithstanding, the Mortgagor and the Mortgagee agree that the Mortgagee does not at any time intend to charge nor does the Mortgagor have any obligation to pay interest at a rate which shall exceed the limits specified under the laws under the State of New York applicable to this Mortgage evidencing the Obligation. Any interest previously paid which would be construed under New York law as usurious interest shall be deemed to have been a payment against principal as of the time of payment.

No waiver of any agreement, covenant, condition, representation, or warranty under this Mortgage or the Promissory Note shall at any time hereafter be held to be a waiver of any of the other terms thereof or a continuing waiver thereof. Time is of the essence under all terms and conditions of the Mortgage and Indemnification Agreement.

A.10

Each provision of this Mortgage is intended to be severable and the invalidity or illegality of any portion of this Mortgage shall not affect the validity or legality of the remainder thereof. Any ambiguities contained in this Mortgage shall not be construed against the preparers of this document.

Upon the failure of Mortgagor to abide by any of the provisions of this Mortgage and/or the Promissory Note, including the failure to satisfy the Obligation and Promissory Note, Mortgagee shall be entitled to foreclose upon this Mortgage.

**MORTGAGOR HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, OR THE INDEMNIFICATION AGREEMENT OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY RELATING HERETO OR THERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR MORTGAGEE ACCEPTING THIS MORTGAGE.**

IN WITNESS WHEREOF, the Mortgagor has hereunto set its hand and seal to this Mortgage and Spreader Agreement on the day and year first above written.

Print Name: Sean W Meehan

as Manager and duly authorized representative of REHG

The foregoing Mortgage was sworn to, subscribed and acknowledged before me this 14 day of ~~June, 2015~~ Nov. 2015, by Sean W. Meehan, who is personally known to me and did (did not) take an oath.

LEILA BENAVIDES
Notary Public State of Florida
My Comm. Expires Nov 19, 2017
Commission # FF 021479

Print Name:
Notary Public, State of Florida at Large
My commission expires:

| Signed, sealed, read and delivered in the presence of: | Signed, sealed, read and delivered in the presence of: |
|---|---|
| Print Witness Name: L.M. Schantz | Roxana Sucar Print Witness Name: Roxana Sucar |

*SSA*
*SEE NEXT PAGE*

*SWM*

A.11

State of Florida

County of Miami-Dade

On the 14th day of November in the year 2016, before me, the undersigned, personally appeared **Sean N. Meehan**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Miami, Miami-Dade County, Florida.

_____
Notary Public

Printed Name: Geoffrey S. Aaronson

My Commission Expires:
June 16, 2018

GEOFFREY S. AARONSON
Notary Public - State of Florida
My Comm. Expires Jun 16, 2018
Commission # FF 121262

4

A.12



**First American**
MORTGAGE SERVICES

## SCHEDULE A

## DESCRIPTION OF MORTGAGED PREMISES

Title No.: **DS140013366**

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration").

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

Page 2 of 12

SWm

SWm

A.13

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

A.14

## SCHEDULE B

1. First Mortgage: U.S. Bank, approximately $2.5 Million

2. Second Mortgage: Real Time Resolutions, as Servicer, approximately $350,000

3. Spencer Condo: Settlement amount: approximately $426,000 in 3/15;  Proof of Claim amount as of 1/11/16 approx'y $668,000 plus accruing Maintenance and attorney fees

4. IRS Lien approx'y $394,000

5. Attorney Liens of Bruce Jacobs ($55,000 no interest); Robert P. Lithman ($95,000); and Mark Cohen ($25,000)

A.15

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 551 of 866

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE,
ON BEHALF OF THE HOLDERS OF THE
HARBORVIEW MORTGAGE LOAN TRUST 2006-1
MORTGAGE LOAN PASS-THROUGH
CERTIFICATES, SERIES 2006-1,

Index No. 850240/2014

                              Plaintiff,

**AMENDED COMPLAINT**

                    -against-

ELIZABETH HAZAN, REAL ESTATE HOLDINGS
GROUP, L.D.C., MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., ACTING SOLELY
AS A NOMINEE FOR AMERICA'S WHOLESALE
LENDER, THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK, AS SUCCESSOR TO
JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR
THE CERTIFICATEHOLDERS OF CWHEQ
REVOLVING HOME EQUITY LOAN TRUST, SERIES
2005-M, THE BOARD OF MANAGERS OF THE
SPENCER CONDOMINIUM, NLG, LLC, NEW YORK
CITY DEPARTMENT OF FINANCE, NEW YORK
STATE DEPARTMENT OF TAXATION AND
FINANCE, 1 EAST 62ND STREET APT 1A LLC,
AARONSON SCHANTZ BEILEY P.A., NEW YORK
CITY ENVIRONMENTAL CONTROL BOARD,
UNITED STATES OF AMERICA O/B/O INTERNAL
REVENUE SERVICE, and "JOHN DOE #1" through
"JOHN DOE #10", the last ten names being fictitious and
unknown to the plaintiff, the person or parties intended
being the persons or parties, if any, having or claiming an
interest in or lien upon the mortgaged premises described
in the Complaint,

Mortgaged Premises:
1 East 62nd Street, Unit 1A
New York, NY 10065

                              Defendants.

Plaintiff U.S. Bank National Association, as trustee, on behalf of the holders of the

Harborview Mortgage Loan Trust 2006-1 Mortgage Loan Pass-Through Certificates, Series

86138408.1

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 552 of
866

2006-1 ("Plaintiff"), by its attorneys, Eckert Seamans Cherin & Mellott, LLC, as and for its

Amended Complaint against the defendants, alleges the following upon information and belief:

## INTRODUCTION

1.      This is a mortgage foreclosure action involving real property, a condominium

unit, located at 1 East 62nd Street, Unit 1A, New York, New York 10065 (Tax Parcel ID No.:

Block: 1377, Lot: 1100).  The legal description of the subject property is annexed hereto as

**Exhibit 1**, which is made part hereof.

2.      As set forth herein, defendant Elizabeth Hazan breached her obligations to

Plaintiff by, among other things, failing to pay principal and interest, taxes, water and/or other

utilities, insurance premiums, and/or other charges that are due and owing under the terms of the

subject note and mortgage being foreclosed upon and described herein.  True and correct copies

of the endorsed note, mortgage and assignment of mortgage are annexed hereto as **Exhibit 2** and

made part hereof.

3.      A prior action had been brought for foreclosure/to recover the mortgage debt

under the caption *U.S. Bank National Association, as trustee for Harborview 2006-1 Trust Fund

v. Elizabeth Hazan, et al.*, in the Supreme Court of the State of New York, County of New York,

Index No. 104990/2008.  That action had been dismissed and no part of the mortgage debt has

been collected.  Otherwise, there are no other pending proceedings at law or otherwise, other

than this action, to collect or enforce the subject note and mortgage.

## PARTIES

4.      Plaintiff is a national banking entity with a principal place of business located at

c/o Select Portfolio Servicing, Inc., 3217 S. Decker Lake Dr., Salt Lake City, Utah 84119.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 553 of 866

Plaintiff is the lawful holder of the note and mortgage being foreclosed upon and described herein.

5.      Upon information and belief, defendant Elizabeth Hazan is an individual who resides at 6913 Valencia Drive, Miami, Florida 33109 and/or 3201 NE 183rd Street, Aventura, Florida 33160.

6.      Upon information and belief, defendant Real Estate Holdings Group, L.D.C., is a New York entity with an address of 1 East 62nd Street, Unit 1A, New York, New York 10065, and is made a party to this action because it has or may have an interest in the subject property.

7.      Upon information and belief, defendant Mortgage Electronic Registration Systems, Inc., acting solely as a nominee for America's Wholesale Lender, is a Delaware corporation with addresses at 4318 Miller Road, Flint, Michigan 48507 and/or 4500 Park Granada, Calabasas, California 913507 and/or 5660 New Northside Drive, 3rd Floor, Atlanta, Georgia 30328 and/or 1818 Library Street, Suite 300 Reston, Virginia 20190, and is made a party to this action because it has or may have liens and/or judgments against defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

8.      Upon information and belief, defendant The Bank of New York Mellon fka The Bank of New York, as successor to JPMorgan Chase Bank, N.A., as trustee for the certificateholders of CWHEQ Revolving Home Equity Loan Trust, Series 2005-M, is a Delaware corporation with addresses at 1349 Empire Central Drive, Suite 150, Dallas, Texas 75247 and/or 240 Greenwich Street, New York, New York 10286, and is made a party to this action because it has or may have liens and/or judgments against defendant Elizabeth Hazan, and/or may have or

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 554 of 866

may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

9. Upon information and belief, defendant The Board of Managers of the Spencer Condominium, is an New York entity with an address at 1 East 62nd Street, New York, New York 10065, and is made a party to this action because it has or may have liens and/or judgments against defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

10. Upon information and belief, defendant NLG, LLC, is a Pennsylvania limited liability company with addresses at 854 Pheasant Run Road, West Chester, Pennsylvania 19382 and/or 1420 Locust Street, Unit A, Philadelphia, Pennsylvania 19103, and is made a party to this action because it has or may have liens and/or judgments against defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

11. Upon information and belief, defendant New York City Department of Finance is an agency of the City of New York with an address of 59 Maiden Lane, New York, New York 10038, and is made a party to this action because it has or may have liens and/or judgments against defendants Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

12. Upon information and belief, defendant New York State Department of Taxation and Finance is an agency of the State of New York with an address of WA Harriman State

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 555 of 866

Campus, Albany, New York 12227, and is made a party to this action because it has or may have

liens and/or judgments against the defendant Elizabeth Hazan, and/or may have or may claim to

have an interest in or lien upon the subject property or some part thereof, which, if any, accrued

subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

13.     Upon information and belief, defendant 1 East 62nd Street Apt 1A LLC, is a

limited liability company with addresses at 1 East 62nd Street, Unit 1A, New York, New York

10065, and is made a party to this action because it has or may have liens and/or judgments

against defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien

upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be

subject to and subordinate to, Plaintiff's mortgage.

14.     Upon information and belief, defendant Aaronson Schantz Beiley P.A., is a

Florida professional association with addresses at 100 S.E. 2nd Street, 27th Floor, Miami,

Florida 33131 and/or One Biscayne Tower, Floor 34, 2 South Biscayne Boulevard, Miami,

Florida 33131, and is made a party to this action because it has or may have liens and/or

judgments against defendant Elizabeth Hazan and/or Real Estate Holdings Group, L.D.C., and/or

may have or may claim to have an interest in or lien upon the subject property or some part

thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to,

Plaintiff's mortgage.

15.     Upon information and belief, defendant New York City Environmental Control

Board is an agency of the City of New York with an address of 66 John Street #10, New York,

New York 10038, and is made a party to this action because it has or may have liens and/or

judgments against defendants Elizabeth Hazan, and/or may have or may claim to have an interest

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 556 of 866

in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

16.     Upon information and belief, defendant United States of America o/b/o Internal Revenue Service is an agency of the United States government with an address of 135 High Street, Stop 155, Hartford, Connecticut 06103, and is made a party to this action because it has or may have liens and/or judgments against the defendant Elizabeth Hazan, and/or may have or may claim to have an interest in or lien upon the subject property or some part thereof, which, if any, accrued subsequent to, and may be subject to and subordinate to, Plaintiff's mortgage.

17.     Defendants "John Doe #1" through "John Doe #10" are fictitious parties named to permit Plaintiff to designate any and all occupants of the subject being foreclosed herein, and any parties, persons, corporations or entities, if any, that have or claim to have an interest or lien upon the subject property.

## JURISDICTION AND VENUE

18.     The Court has jurisdiction over this action pursuant to Article 3 of New York's Civil Practice Law and Rules ("CPLR").

19.     Venue in New York County is proper based upon the location of the subject property, which is the real property subject to this action.

## THE NOTE AND MORTGAGE

20.     On December 22, 2005, defendant Elizabeth Hazan made, executed and delivered a note pursuant to which she promised to pay Countrywide Bank, N.A., the principal sum of $1,500,000.00 (with negative amortization not to exceed $1,650,000.00), together with interest and other charges, with an initial monthly payment in the amount of $5,176.80 on February 1,

A.21

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 557 of
866

2006, and monthly payments on the first day of each month thereafter until the date of maturity,

January 1, 2036 . *See* **Exhibit 2** hereto (note).

21.      In order to secure the obligations under the note, defendant Elizabeth Hazan duly

executed and delivered a mortgage on the subject property, dated December 22, 2005, in favor of

Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide Bank,

N.A., and its successors and assigns.  The mortgage was filed and recorded with the New York

City Department of Finance Office of the City Register on November 14, 2006 at City Register

File No. (CRFN) 2006000629751, and all recording fees and taxes were paid.  *See* **Exhibit 2**

hereto (mortgage).

22.      Plaintiff is the owner and holder of the subject note and mortgage which are the

subject of and being foreclosed upon in this action, or has been delegated the authority to

institute this action by the owner and holder of the note and mortgage; and at the time of

commencement of this action, Plaintiff is the owner and holder of the note and mortgage which

are the subject of and being foreclosed upon in this action.

23.      Prior to the commencement of this action, Plaintiff took physical possession of

the original note, which first was endorsed by Countrywide Bank, N.A., to Countrywide Home

Loans, Inc., and then endorsed in blank and without recourse by Countrywide Home Loans, Inc.

Upon negotiation and delivery of the note to Plaintiff prior to the commencement of this action,

the mortgage was assigned to Plaintiff.  An assignment of mortgage was executed on April 1,

2008, and filed and recorded with the New York City Department of Finance Office of the City

Register on April 21, 2008 at City Register File No. (CRFN) 2008000158375.  *See* **Exhibit 2**

hereto (assignment).

A.22

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 558 of
866

24.     At the time this action is commenced, Plaintiff has complied with the provisions of New York Banking Law § 595-a, and any rules and regulations promulgated thereunder, to the extent applicable, and any and all other state and federal laws that may apply.

25.     Plaintiff has complied with the provisions of New York Banking Law §§ 6-l and 6-m, to the extent applicable.

26.     Plaintiff has complied with the provisions of New York Real Property Actions and Proceedings Law §§ 1304 and 1306.

27.     The subject premises are subject to covenants, restrictions, easements of record, prior mortgages and liens, and amendments thereto, if any; to any state of facts an accurate survey may show; railroad consents and sewer agreements, and to utility agreements, municipal and governmental zoning, rules, regulations and ordinances, if any.

28.     The terms of the subject note and mortgage provide that: (1) the entire amount of the unpaid principal balance due under the note and mortgage and interest shall become due at the option of the mortgagee after default in the payment of any installment of principal or of interest; (2) upon any default, the mortgagor will pay to the mortgagee any sums paid for taxes, charges, assessments, and insurance premiums upon said mortgaged premises, and attorneys' fees; (3) that in case of sale under foreclosure, the premises may be sold in one parcel.

## ELIZABETH HAZAN DEFAULTED

29.     Defendant Elizabeth Hazan, as mortgagor, failed to comply with the terms of the note and mortgage and breached her obligations under the note and mortgage by, among other things, failing to tender the payment that was due as of July 1, 2007, and each of the payments that were due thereafter

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 559 of 866

30.     Pursuant to the terms of the subject note and mortgage, a notice of default was sent by the servicer of the subject mortgage loan, Select Portfolio Servicing, Inc., to Elizabeth, by first class mail, on April 4, 2012, a true and correct copy of which is annexed hereto as **Exhibit 3** and made a part hereof.  In said notice, demand was made to cure the default by tendering payment of $508,228.93 within 30 days of the notice.  Despite said notice, Elizabeth Hazan did not cure the default.

31.     The notices pursuant to New York Real Property Actions and Proceedings Law § 1304 were sent by the servicer of the subject mortgage loan, Select Portfolio Servicing, Inc., to Elizabeth Hazan on September 17, 2013, true and correct copies of the notices are annexed hereto as **Exhibit 4** and made a part hereof.  The notices pursuant to New York Real Property Actions and Proceedings Law § 1304 were sent to Elizabeth Hazan by certified mail and first-class mail.  In the notices pursuant to New York Real Property Actions and Proceedings Law § 1304, demand was made upon defendant Elizabeth Hazan to cure the default by mailing payment of $610,155.44 by March 17, 2014.  Despite said notice, Elizabeth Hazan did not cure the default.  The required proof of filing statements were filed with the Superintendent of Financial Services in compliance with Real Property Actions and Proceedings Law § 1306.  *See id.*

32.     Plaintiff hereby elects to declare immediately due and payable the entire unpaid principal balance due under the note and mortgage.

33.     The unpaid principal balance due upon the subject note and mortgage as of the date of default is $1,572,671.61, plus interest from June 1, 2007.

34.     Elizabeth Hazan further defaulted by, among other things, failing to pay taxes and other charges on the subject property when they were due.  In order to protect its security interest, Plaintiff may be compelled during the pendency of this action, to pay local taxes,

9

A.24

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 560 of 866

assessments, water rates, insurance premiums and other charges affecting the subject property, and Plaintiff requests that any sums thus paid by it for said purposes, together with interest thereon, should be added to the sum otherwise due and be deemed secured by the subject mortgage and be adjudged a valid lien on the subject property.

35.    By virtue of Elizabeth Hazan's default, Plaintiff has sustained damages in a total amount to be determined.  In any event, Plaintiff is entitled to recover the outstanding unpaid principal balance due and owing under the subject note and mortgage in the amount of $1,572,671.61, along with interest, advances for escrow, and other recoverable fees, charges and recoverable balances, together with prejudgment interest, attorney's fees and other charges, all of which continue to accrue.

36.    As set forth above, Plaintiff has complied with all necessary preconditions to commence this suit which are required by the New York States Banking Law and the rules and regulations adopted thereunder, together with all applicable notices required by the CPLR and New York Real Property Actions and Proceedings Law.

37.    There are no other pending proceedings at law or otherwise, other than this action, to collect or enforce the subject note and mortgage.

**AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION**
**(Judgement of Foreclosure and Sale)**

38.    Plaintiff re-alleges, incorporates, repeats and adopts the allegations contained in paragraphs 1 through 37 of this Complaint as if set forth fully herein.

39.    Plaintiff is the sole, true and lawful owner and holder of the subject note and mortgage.

40.    Pursuant to the terms of the subject note and mortgage, defendant Elizabeth Hazan was obligated, among other things, to make monthly mortgage payments with an initial

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 561 of 866

monthly payment in the amount of $5,176.80 on February 1, 2006, and monthly payments on the first day of each month thereafter until the date of maturity, January 1, 2036. *See* **Exhibit 2**.

41.     Defendant Elizabeth Hazan breached her obligations under the note and mortgage due to her default under the terms thereof by, among other things, failing to tender the payments due thereunder.

42.     Despite being given adequate and due notice of the default of the note and mortgage, Elizabeth Hazan failed to cure the default.

43.     As a result of Elizabeth Hazan's default, Plaintiff has sustained damages in an amount to be determined.  However, as of the date hereof, such damages include the outstanding unpaid principal balance due and owing under the subject note and mortgage in the amount of $1,572,671.61, along with interest, advances for escrow, and other recoverable fees, charges and recoverable balances, together with prejudgment interest, attorney's fees and other charges, all of which continue to accrue.

44.     Plaintiff requests that in the event this action proceeds to judgment of foreclosure and sale, the subject property be sold subject to covenants, restrictions and easements, prior mortgages and liens, and amendments, if any, of record; any state of facts an accurate survey may show; restrictions, regulations, ordinances and zoning ordinances of any municipal or governmental authority having jurisdiction thereof; and municipal, departmental and other governmental violations, if any, affecting the premises; and real estate taxes, sewer rents, water charges, if any, open of record.

45.     That each and all of the defendants herein have or claim to have some interest in, or lien upon the subject mortgaged property or some part thereof, which interest or lien, if any,

has accrued subsequently to the lien of the subject mortgage being enforced herein, and is subject and subordinate thereto.

46.     Any municipal agency named as a defendant herein is named solely for the purpose of providing notice to said agency and extinguishing any interest held by said agency by virtue of a lien of the said agency.

47.     Therefore, Plaintiff is entitled to judgment of foreclosure and sale, and further prays for an order that the subject property be sold as one parcel.

### AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
**(Attorneys' Fees)**

48.     Plaintiff re-alleges, incorporates, repeats and adopts the allegations contained in paragraphs 1 through 47 of this Complaint as if set forth fully herein.

49.     The terms of the subject mortgage provide that in the event of default, Plaintiff may recover all costs, including reasonable attorneys' fees, disbursements, and allowances provided by law in bringing any action to protect its interest in the premises, including foreclosure of the mortgage.  As such, Plaintiff is entitled to an award and judgment of attorneys' fees incurred in connection with this action.

### AS AND FOR PLAINTIFF'S THIRD CAUSE OF ACTION
**(Reformation of Condominium Rider)**

50.     Plaintiff re-alleges, incorporates, repeats and adopts the allegations contained in paragraphs 1 through 49 of this Complaint as if set forth fully herein.

51.     As a result of a scrivener's error, the condominium rider to the subject mortgage incorrectly refers to the condominium project where the subject property is located as "The Sterling," whereas the correct name should be "The Spencer Condominium."  In fact, the subject property is located within The Spencer Condominium.

52.     As such, Plaintiff is entitled to a reformation of the recorded condominium rider *nunc pro tunc* to November 14, 2006 to include the correct name of the condominium project as "The Spencer Condominium."

**WHEREFORE**, upon the allegations contained herein, Plaintiff demands judgment and relief upon the causes of action alleged herein; judgment of foreclosure and sale against defendants as follows: (1) on the First Cause of Action: (a) adjudging and decreeing the amounts due to it for principal, interest, costs and reasonable attorneys' fees; (b) adjudging and decreeing that the defendants and all persons claiming by, through or under them, subsequent to the commencement of this action and every other person or corporation whose right, title, conveyance or encumbrance is subsequent to or subsequently recorded, may be barred and forever foreclosed of all right, claim, lien, interest or equity of redemption in and to the subject mortgaged property; (c) adjudging and decreeing that the subject mortgaged property, or such part thereof as may be necessary to raise the amounts due for principal, interest, costs, allowances and disbursements, together with any monies advanced and paid, may be decreed to be sold according to law; (d) adjudging and decreeing that out of the monies arising from the sale of the subject property, the Plaintiff may be paid the amounts due on the subject note and mortgage and any sum which may be paid by the Plaintiff to protect the lien of the mortgage, with interest upon said amounts from the dates of the respective payments and advances thereof, the costs and expenses of this action, and reasonable attorneys' fees, so far as the amount of such money properly applicable thereto will pay the same; (e) adjudging and decreeing that Plaintiff may become a purchaser upon such sale; (f) adjudging and decreeing that this Court, if requested, shall appoint a receiver of the rents and profits of the subject property with the usual

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 564 of 866

powers and duties; and (g) adjudging and decreeing that defendant Elizabeth Hazan be adjudged

liable to pay any deficiency that may remain after applying all of said monies so applicable

thereto and that Plaintiff may have such other or further relief, in the subject property as may be

just and equitable; Plaintiff specifically reserves its right to share in any surplus monies arising

from the sale of Property by virtue of its position as a judgment or other lien creditor excluding

the subject mortgage being foreclosed herein; (2) on the Second Cause of Action: granting an

award and judgment of attorneys' fees incurred in connection with this action; (3) on the Third

Cause of Action: adjudging and decreeing that the condominium rider recorded with the subject

mortgage be reformed *nunc pro tunc* to November 14, 2006 to include the correct name of the

condominium project as "The Spencer Condominium;" and (4) granting such other and further

relief as the Court deems just and proper.

Dated: White Plains, New York
      November 10, 2021

                  Respectfully submitted,

                  Eckert Seamans Cherin & Mellott, LLC

                  By:    *s/Riyaz G. Bhimani*        
                        Riyaz G. Bhimani
                  10 Bank Street, Suite 700
                  White Plains, New York 10606
                  (914) 949-2909

                  *Attorneys for Plaintiff*
                  *U.S. Bank National Association, as trustee, on*
                  *behalf of the holders of the Harborview Mortgage*
                  *Loan Trust 2006-1 Mortgage Loan Pass-Through*
                  *Certificates, Series 2006-1*

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 565 of 866

### VERIFICATION

Riyaz G. Bhimani, an attorney duly admitted to practice before the Courts of the State of New York and fully aware of the penalties of perjury, hereby affirms, pursuant to CPLR § 2106, as follows:

1.       I am a member of the law firm Eckert Seamans Cherin & Mellott, LLC, attorneys for Plaintiff U.S. Bank National Association, as trustee, on behalf of the holders of the Harborview Mortgage Loan Trust 2006-1 Mortgage Loan Pass-Through Certificates, Series 2006-1 ("Plaintiff"), and am fully familiar with the facts and circumstances stated in the foregoing Amended Complaint.

2.       I have read the foregoing Amended Complaint and know the contents thereof, and the same are true to my own knowledge, except those matters therein stated to be upon information and belief, and as to those statements, I believe them to be true.

3.       I further state that the reason this verification is made by me, and not by Plaintiff, is that Plaintiff is not located in the county where I maintain my office.


Dated: White Plains, New York
           November 10, 2021


                                                    _s/Riyaz G. Bhimani_____
                                                    Riyaz G. Bhimani

A.30

# Exhibit 1

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM    INDEX NO. 850240/2014

NYSCEF DOC. NO.    Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 567 of    RECEIVED NYSCEF: 02/01/2022
                                                     866

**Client Reference No.: 200083479**                                            **Loan No.:** ▓▓▓▓▓▓▓

# SCHEDULE A
## DESCRIPTION OF MORTGAGED PREMISES

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit IA in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration).

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County of New York and City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.


Premises:              1 East 62nd Street, Unit 1A, New York, NY 10065
Tax Parcel ID No.:     Block: 1377 Lot: 1100

# Exhibit 2

Prepared by: MICHELLE HALUPA

LOAN #: ▮▮▮▮▮▮▮

# ADJUSTABLE RATE NOTE
### (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

DECEMBER 22, 2005            NEW YORK              NEW YORK
[Date]                        [City]                [State]

1 EAST 62ND STREET 1A, NEW YORK, NY 10021-7204
[Property Address]

**1.  BORROWER'S PROMISE TO PAY**
     In return for a loan that I have received, I promise to pay U.S. $ 1,500,000.00      (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed      110 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is Countrywide Bank, N.A.
I will make all payments under this Note in the form of cash, check or money order.
     I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.  INTEREST**
     **(A)  Interest Rate**
     Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of     1.500 %.  Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of     1.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

     **(B)  Interest Rate Change Dates**
     The interest rate I will pay may change on the first        day of FEBRUARY, 2006       , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

     **(C)  Index**
     Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."
     If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

     **(D)  Calculation of Interest Rate Changes**
     Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 40/100              percentage point(s)     3.400 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest rate will never be greater than        9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.  PAYMENTS**
     **(A)  Time and Place of Payments**
     I will make a payment every month.
     I will make my monthly payments on the first        day of each month beginning on FEBRUARY 01, 2006     . I will make these payments every month until I have paid all the Principal and interest and any

● PayOption ARM Note - MTA Index
2E306-XX (09/05)(d)                              Page 1 of 4




A.34
19 of 85

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 570 of 866

LOAN #: ███████

other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $5,176.80, unless adjusted under Section 3(F).

**(C)  Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first day of FEBRUARY, 2007, and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)  Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED TEN percent (110%) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**
On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:
  **(i)  Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
  **(ii)  Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
  **(iii)  15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

• PayOption ARM Note - MTA Index
2E306-XX (09/05)                    Page 2 of 4

LOAN #: ███████

These Payment Options are only applicable if they are greater than the Minimum Payment.

**4.  NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.  LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.  BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    2.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

**(B)  Default**

If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

LOAN #: ██████████

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Elizabeth Hazan by Amy _____ as_
ELIZABETH HAZAN                                    - Borrower

_____ - Borrower

_____ - Borrower

_____ - Borrower

ORIGINAL

Pay to the order of:                    Pay to the order of:

Countrywide Home Loans, Inc.

Without Recourse                        Without Recourse
Countrywide Bank, N.A.                  Countrywide Home Loans, Inc.

By: _Laurie Meder_                      By: _Michele Sjolander_
    Laurie Meder, SVP                        Michele Sjolander, SVP

• **PayOption ARM Note - MTA Index**
2E306-XX (09/05)                        Page 4 of 4

A.37

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 573 of 866

Prepared by: MICHELLE HALUPA

**Countrywide Bank, N.A.**

DATE: 12/22/2005
BORROWER: ELIZABETH HAZAN
NON-BORROWER:
CASE #:
LOAN #: ▮▮▮▮▮▮
PROPERTY ADDRESS: 1 EAST 62ND STREET 1A
NEW YORK, NY 10021-7204

Branch #: 0000797
333 EARL OVINGTON BLVD STE 101
UNIONDALE, NY 11553
Phone: (516)542-2900
Br Fax No.: (877)266-0965

## SIGNATURE AND NAME CERTIFICATION

BORROWER:
ELIZABETH HAZAN

NON-BORROWER:

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW.
(This signature must exactly match signatures on the Note and Security Instrument.)

ELIZABETH HAZAN
(Print or Type Name)


Signature

(If applicable, complete the following.)

THIS IS TO CERTIFY THAT I AM ALSO KNOWN AS:

LISA HAZAN
(Print or Type Name)

LIZA HAZAN
(Print or Type Name)

(Print or Type Name)

(Print or Type Name)

● Signature and Name Certification
1E340-US (06/05)(d)

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 574 of 866

The Judic... Title Insurance Agency, LLC

DURABLE GENERAL POWER OF ATTORNEY
(NEW YORK STATUTORY SHORT FORM)

**THE POWERS YOU GRANT BELOW CONTINUE TO BE EFFECTIVE SHOULD YOU BECOME
DISABLED OR INCOMPETENT**

Caution: This is an important document. It gives the person whom you designate (your "Agent") broad powers to handle your property during your lifetime, which may include powers to mortgage, sell, or otherwise dispose of any real or personal property without advance notice to you or approval by you. These powers will continue to exist even after you become disabled or incompetent. These powers are explained more fully in New York General Obligations Law, Article 5, Title 15, Sections 5-1502A through 5-1503, which expressly permit the use of any other or different form of power of attorney.
This document does not authorize anyone to make medical or other health care decisions. You may execute a health care proxy to do this.
If there is anything about this form that you do not understand, you should ask a lawyer to explain it to you.

THIS is intended to constitute a DURABLE GENERAL POWER OF ATTORNEY pursuant to Article 5, Title 15 of the New York General Obligations Law:

I, Elizabeth Hazan, 3201 Northeast 183rd Street, #2302, Aventura, Florida 33160 do hereby appoint:

(insert your name and address)

Andrew Dinnerstein, 280 Madison Avenue, Suite 705, New York, New York 10016

(If 1 person is to be appointed agent, insert the name and address of your agent above)

(If 2 or more persons are to be appointed agents by you insert their names and addresses above)

my attorney(s)-in-fact TO ACT
(If more than one agent is designated, CHOOSE ONE of the following two blanks by putting your initials in ONE of the blank spaces to the left of your choice)
[   ] Each agent may SEPARATELY act. [   ] All agents must act TOGETHER.
(If neither blank space is initialed, the agents will be required to act TOGETHER)
IN MY NAME, PLACE AND STEAD in any way which I myself could do, if I were personally present, with respect to the following matters as each of them is defined in Title 15 of Article 5 of the New York General Obligations Law to the extent that I am permitted by law to act through an agent:

[DIRECTIONS: Initial in the blank space to the left of your choice any one or more of the following lettered subdivisions as to which you WANT to give your agent authority. If the blank space to the left of any particular lettered subdivision is NOT initialed, NO AUTHORITY WILL BE GRANTED for matters that are included in that subdivision. Alternatively, the letter corresponding to each power you wish to grant may be written or typed on the blank line in subdivision "(Q)", and you may then put your initials in the blank space to the left of subdivision "(Q)" in order to grant each of the powers so indicated.]

| | | | | |
|---|---|---|---|---|
| [EH] | (A) | real estate transactions; | [  ] (M) | making gifts to my spouse, children and |
| [EH] | (B) | chattel and goods transactions; | | more remote descendants, and, parents |
| [EH] | (C) | bond, share and commodity transactions; | | not to exceed in the aggregate $10,000 |
| [EH] | (D) | banking transactions; | | to each of such persons in any year; |
| [  ] | (E) | business operating transactions; | [  ] (N) | tax matters; |
| [  ] | (F) | insurance transactions; | [  ] (O) | all other matters; |
| [  ] | (G) | estate transactions; | [  ] (P) | full and unqualified authority to my |
| [  ] | (H) | claims and litigation; | | attorney(s)-in-fact to delegate any or all |
| [  ] | (I) | personal relationships and affairs; | | of the foregoing powers to any person or |
| [  ] | (J) | benefits from military service; | | persons whom my attorney(s)-in-fact |
| [  ] | (K) | records, reports and statements; | | shall select; |
| [  ] | (L) | retirement benefit transactions; | [EH] (Q) | each of the above matters identified by |
| | | | | the following letters: A, B, C and D |

(Special provisions and limitations may be included in the statutory short form durable power of attorney only if they conform to the requirements of Section 5-1503 of the New York General Obligations Law)

This Durable Power of Attorney shall not be affected by my subsequent disability or incompetence.
If every agent named above is unable or unwilling to serve, I appoint

(insert name and address of successor)

This Power of Attorney is specifically limited to the purchase & closing of title for the premises 1 E. 92nd Street,#1A, NY, NY 10021 with Countrywide Bank, America's Wholesale Lender

to be my agent for all purposes hereunder.

To induce any third party to act hereunder, I hereby agree that any third party receiving a duly executed copy or facsimile of this instrument may act hereunder, and that revocation or termination hereof shall be ineffective as to such third party unless and until actual notice or knowledge of such revocation or termination shall have been received by such third party, and I for myself and for my heirs, executors, legal representatives and assigns, hereby agree to indemnify and hold harmless any such third party from and against any and all claims that may arise against such third party by reason of such third party having relied on the provisions of this instrument.

This Durable General Power of Attorney may be revoked by me at any time.

IN WITNESS WHEREOF, I have hereunto signed my name this 21 day of December, 2005.

(You sign here:)

Elizabeth Hazan

Form 2229-2 — with Uniform Acknowledgment (See over for acknowledgment)

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/10/2023 Page 575 of 866

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE**

State of New York, County of _____ ss.:

On the ____ day of ____ in the year ____
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of _____ ss.:

On the ____ day of ____ in the year ____
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of
satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to
me that he/she/they executed the same in his/her/their
capacity(ies), and that by his/her/their signature(s) on the
instrument, the individual(s), or the person upon behalf of
which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

State (or District of Columbia, Territory, or Foreign Country) of Florida ss.:

On the 21 day of December in the year 2005 before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies),
and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s)
acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____ _____ in
(insert the City or other political subdivision) (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

**DURABLE POWER OF ATTORNEY**
New York Statutory Short Form

Title No. _____

TO

SECTION
BLOCK
LOT
COUNTY OR TOWN
STREET ADDRESS

Nelson Perez
Commission #DD323935
Expires: May 26, 2008
Bonded Thru
Atlantic Bonding Co., Inc.

Recorded at Request of
THE JUDICIAL TITLE INSURANCE AGENCY LLC
RETURN BY MAIL TO:

Distributed by
THE JUDICIAL TITLE INSURANCE AGENCY LLC
560 MAMARONECK AVENUE
HARRISON, NY 10528
914-381-6700 • 800-281-TITLE

RESERVE THIS SPACE FOR USE OF RECORDING OFFICE

Case 1:23-cv-21055-DPG  Document 6-3  Entered on FLSD Docket 04/18/2023  Page 576 of 866



## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2006021501625004001EFBDA

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 24 |
|---|---|

Document ID: 2006021501625004    Document Date: 12-22-2005    Preparation Date: 02-15-2006
Document Type: MORTGAGE
Document Page Count: 23

**PRESENTER:**
KENSINGTON ABSTRACT LLC
AS AGENT FOR FIRST AMERICAN TITLE
INSURANCE
276 FIFTH AVE SUITE 602 KEN-F-34513-NY-NY
NEW YORK, NY 10001
212-561-6425

**RETURN TO:**
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O. BOX 10423
VAN NUYS, CA 91410-0423

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100  Entire Lot | 1A | 1 EAST |

Property Type: SINGLE RESIDENTIAL CONDO 1



610  122816175  D2  001  002

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or ___ Year ___ Reel ___ Page ____ or File Number_____

### PARTIES

**MORTGAGER/BORROWER:**
ELIZABETH HAZAN
3201 NE 183RD STREET
AVENTURA, FL 33160

**MORTGAGEE/LENDER:**
MERS
P.O. BOX 2026
FLINT, MI 48501-2026

### FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,500,000.00 | | 0.00 |
| Taxable Mortgage Amount: | $ | 1,650,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 8,250.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 18,562.50 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 4,125.00 | | |
| MTA: | $ | 4,920.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 35,857.50 | | |
| Recording Fee: | $ | 152.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

RECORDED OR FILED IN THE OFFICE
OF THE CITY REGISTER OF THE
CITY OF NEW YORK
Recorded/Filed    11-14-2006 10:45
City Register File No.(CRFN):
2006000629751

*Annette M. Hill*

*City Register Official Signature*

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM INDEX NO. 850240/2014
NYSCEF DOC. NO. 251 RECEIVED NYSCEF: 02/01/2022

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City
Register will rely on the information provided
by you on this page for purposes of indexing
this instrument. The information on this page
will control for indexing purposes in the event
of any conflict with the rest of the document.



2006021501625004001EFBDA

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 24 |
|---|---|

| Document ID: **2006021501625004** | Document Date: 12-22-2005 | Preparation Date: 02-15-2006 |
|---|---|---|

Document Type: MORTGAGE
Document Page Count: 23

| PRESENTER: | RETURN TO: |
|---|---|
| KENSINGTON ABSTRACT LLC<br>AS AGENT FOR FIRST AMERICAN TITLE<br>INSURANCE<br>276 FIFTH AVE SUITE 602 KEN-F-34513-NY-NY<br>NEW YORK, NY 10001<br>212-561-6425 | COUNTRYWIDE HOME LOANS, INC.<br>MS SV-79 DOCUMENT PROCESSING<br>P.O. BOX 10423<br>VAN NUYS, CA 91410-0423 |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot | 1A | 1 EAST 62 STREET |
| | Property Type: | SINGLE RESIDENTIAL CONDO UNIT | | | |

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year_____ Reel_____ Page_____ or File Number_____

**PARTIES**

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| ELIZABETH HAZAN<br>3201 NE 183RD STREET<br>AVENTURA, FL 33160 | MERS<br>P.O. BOX 2026<br>FLINT, MI 48501-2026 |

**FEES AND TAXES**

| Mortgage | | | Recording Fee: $ | 152.00 |
|---|---|---|---|---|
| Mortgage Amount: | $ | 1,500,000.00 | Affidavit Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 1,650,000.00 | NYC Real Property Transfer Tax Filing Fee: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 8,250.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 18,562.50 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 4,125.00 | | |
| MTA: | $ | 4,920.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 35,857.50 | | |

*kont 34513 nynu*

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MICHELLE HALUPA

*Sor*
*Block 1377*
*Lot 1100*
*County: New york.*

———————————— [Space Above This Line For Recording Data] ————————————

[Doc ID #]

*35,857.05*

# MORTGAGE

MIN

**WORDS USED OFTEN IN THIS DOCUMENT**
**(A) "Security Instrument."** This document, which is dated   DECEMBER 22, 2005   , together with all Riders to this document, will be called the "Security Instrument."
**(B) "Borrower."**
ELIZABETH HAZAN

*M.M.*   whose address is   ~~Aventura~~
3201 NE 183RD STREET, ~~#PHB, NORTH MIAMI BEACH~~, FL 33160
sometimes will be called "Borrower" and sometimes simply "I" or "me."
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.**
**(D) "Lender."**
Countrywide Bank, N.A.
will be called "Lender." Lender is a
NATL. ASSN.                                                                                              which exists
under the laws of THE UNITED STATES                      . Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
**(E) "Note."** The note signed by Borrower and dated   DECEMBER 22, 2005   , will be called the "Note."
The Note shows that I owe Lender
ONE MILLION FIVE HUNDRED THOUSAND and 00/100

Dollars (U.S. $ 1,500,000.00                   ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by  JANUARY 01, 2036   .
Section: _____ Block: _____ Lot: _____ Unit: _____

**NEW YORK- Single Family -Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**
Page 1 of 13
**-6A(NY)** (0508)    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291          Form 3033 1/01
CONV/VA

*★ NEGAM LOAN NOT TO EXCEED $1,650,000.00 ★★*
*Block: 1377   Lot: 1100*
*fmprovcs single Residential Condo unit*

A-43

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM
INDEX NO. 850240/2014
NYSCEF DOC. NO. 251
Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 579 of
866
RECEIVED NYSCEF: 02/01/2022

DOC ID #:

**(F) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

THE PREMISES ARE IMPROVED OR ARE TO BE IMPROVED BY A ONE OR TWO FAMILY RESIDENCE OR DWELLING ONLY.

**(G) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(I) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | EXHIBIT A |

**(J) "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(K) "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(L) "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(N) "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(O) "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(Q) "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 580 of 866

DOC ID #: ████████████

**DESCRIPTION OF THE PROPERTY**

I give MERS rights in the Property described in (A) through (G) below:
(A) The Property which is located at
1 EAST 62ND STREET 1A                                          [Street]
NEW YORK                          [City, Town or Village], New York
10021-7204 [Zip Code]. This Property is in  NEW YORK                      County.
It has the following legal description:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;
(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:
**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either

Case 1:23-cv-21055-DPG    Document 6-3    Entered on FLSD Docket 04/18/2023    Page 581 of 866

DOC ID #: ▓▓▓▓▓▓

apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

DOC ID #:

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b) Lender's Obligations.**

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

**(c) Adjustments to the Escrow Funds.**

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or

DOC ID #:

amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

-6A(NY) (0508)          CHL (08/05)          Page 6 of 13          Form 3033 1/01

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 584 of 866

DOC ID #:

**(b) Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 585 of 866

DOC ID #:

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 586 of
866

DOC ID #: ▇▇▇▇▇▇▇▇

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.**

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.**

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

A.51

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/10/2023 Page 587 of 866

DOC ID #: ▮▮▮▮▮▮▮▮▮

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

A.52

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM   INDEX NO. 850240/2014

NYSCEF DOC. NO. 251   Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 588 of 866   RECEIVED NYSCEF: 02/01/2022

DOC ID #:

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM INDEX NO. 850240/2014

NYSCEF DOC. NO. 251 Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/10/2023 Page 589 of 866 RECEIVED NYSCEF: 02/01/2022

DOC ID #:

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require **Immediate Payment in Full**, and Lender or another **Person** may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the **right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and**

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my **promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and**

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**

[X] This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

[ ] This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

[ ] This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

_Elizabeth Hazan by_ _____ (Seal)
ELIZABETH HAZAN _and ...._ _as atty in fact_ -Borrower
BY ANDREW
DINNERSTEIN AS ATTORNEY-IN-FACT.

_Power Attorney_ _____ (Seal)
-Borrower

_being recorded_
_simultaneously_ _____ (Seal)
_herewith_ -Borrower

_____ (Seal)
-Borrower

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 590 of
866

STATE OF NEW YORK, *New York*

DOC ID #: ▬▬▬▬▬▬▬

County ss:

On the *22nd* day of *December 2005* before me, the undersigned, a notary public in and for said state, personally appeared _____

_*Brinkha Damsleden for Elizabeth Hassan as attorney in Fact*_

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

Tax Map Information: *1377/1100*

Hong S. Kwon, ESQ.
Notary Public, State of New York
No. 02KW6085920
Qualified in New York County
Commission Exp. 01/13/2007

SEAL

Prepared by: MICHELLE HALUPA

**Countrywide Bank, N.A.**

Branch #: 0000797
333 EARL OVINGTON BLVD STE 101
UNIONDALE, NY 11553
Phone: (516)542-2900
Br Fax No.: (877)266-0965

DATE:            12/22/2005
CASE #:
DOC ID #:
BORROWER: ELIZABETH HAZAN
PROPERTY ADDRESS: 1 EAST 62ND STREET 1A
                 NEW YORK, NY 10021-7204

**LEGAL DESCRIPTION EXHIBIT A**

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate (which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A. Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration").

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03(d)

BLOCK: 1377      LOT: 1100      UNIT: 1A

FOR INFORMATION ONLY: Said premises are also known as 1 East 62nd Street No. 1A New York, New York.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 592 of
866

# CONDOMINIUM RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

PARCEL ID #:

Prepared By:
MICHELLE HALUPA

[Doc ID #]

THIS CONDOMINIUM RIDER is made this TWENTY-SECOND day of
DECEMBER, 2005 , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
Countrywide Bank, N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
1 EAST 62ND STREET 1A
NEW YORK, NY 10021-7204
[Property Address]

**MULTISTATE CONDOMINIUM RIDER**-Single Family-**Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT**

VMP®-8R (0401)     CHL (04/04)(d)     Page 1 of 3          Initials: _____
                   VMP Mortgage Solutions (800)521-7291              **Form 3140 1/01**



Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 593 of 866

DOC ID #: ██████████████

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

### THE STERLING

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. Condominium Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

Initials: _[handwritten]_

██ -8R (0401)      CHL (04/04)      Page 2 of 3      Form 3140 1/01

DOC ID #: ████████

**F. Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Elizabeth Hazan by Andrew Din_____ as _____(Seal)
                                                                    - Borrower
ELIZABETH HAZAN        atty in fact
BY ANDREW DINNERSTEIN AS ATTORNEY-IN-FACT

          Power of Attorney being recorded
          simultaneously
          herewith.

_____(Seal)
                                                                    - Borrower

_____(Seal)
                                                                    - Borrower

-8R (0401)          CHL (04/04)          Page 3 of 3          Form 3140  1/01

Case 1:23-cv-21055-DPG  Document 6-3  Entered on FLSD Docket 04/18/2023  Page 595 of 866

## ADJUSTABLE RATE RIDER
(PayOption MTA Twelve Month Average Index - Payment Caps)

**[Doc ID #]**

THIS ADJUSTABLE RATE RIDER is made this TWENTY-SECOND day of DECEMBER, 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Countrywide Bank, N.A.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

1 EAST 62ND STREET 1A
NEW YORK, NY 10021-7204
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

* PayOption MTA ARM Rider
1E310-XX (09/05)(d)

Page 1 of 6



Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 596 of
866

DOC ID #: ▮▮▮▮▮▮▮

**2. INTEREST**

**(A) Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of    1.500 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of    1.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first                day of FEBRUARY, 2006    , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

**(C) Index**

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding            THREE & 40/100 percentage point(s) (    3.400 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than    9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

---

* PayOption MTA ARM Rider
1E310-XX (09/05)            Page 2 of 6

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/10/2023 Page 597 of 866

DOC ID #: ████████████

I will make my monthly payments on the FIRST day of each month beginning on February, 2006 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2036 , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 5,176.80 , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first day of FEBRUARY, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

\* **PayOption MTA ARM Rider**
1E310-XX (09/05) Page 3 of 6

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 598 of 866

DOC ID #: ▮▮▮▮▮▮▮▮▮▮▮

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED TEN percent ( 110 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Amortized Payment: the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

• PayOption MTA ARM Rider
1E310-XX (09/05)            Page 4 of 6            ★ $1,650,000.00

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/10/2023   Page 599 of 866

DOC ID #: ███████

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

* PayOption MTA ARM Rider
1E310-XX (09/05)                    Page 5 of 6

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 600 of 866

DOC ID #:

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Elizabeth Hazan by Andrew Dinnerstein_ or
ELIZABETH HAZAN         atty in fact        -Borrower
BY ANDREW DINNERSTEIN AS ATTORNEY-IN-FACT

Power of Attorney being recorded
Simultaneously herewith

_____
-Borrower

_____
-Borrower

* PayOption MTA ARM Rider
1E310-XX (09/05)            Page 6 of 6

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 601 of 866

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008040800596001001EC020

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

**Document ID:** 2008040800596001  Document Date: 04-01-2008  Preparation Date: 04-08-2008
Document Type: ASSIGNMENT, MORTGAGE
Document Page Count: 1

| PRESENTER: | RETURN TO: |
|---|---|
| HOLD FOR PICK-UP DENISE | PILLAR PROCESSING, LLC |
| PRIME TITLE PT 38833 | 220 NORTHPOINTE PARKWAY |
| 410 NEW YORK AVENUE | SUITE G |
| HUNTINGTON, NY 11743 | AMHERST, NY 14228 |
| 631-549-7721 | 716-204-3400 |
| mdistelkamp@advantagetitle.com | |

**PROPERTY DATA**

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot | 1A | 1 EAST 62ND STREET |

**Property Type:** DWELLING ONLY - 1 FAMILY

**CROSS REFERENCE DATA**

CRFN: 2006000629751

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNEE/NEW LENDER: |
|---|---|
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. | US BANK NATIONAL ASSOCIATION AS TRUSTEE FOR |
| 64318 MILLER ROAD | 180 EAST 5TH STREET |
| FLINT, MI 48501 | ST. PAUL, MN 55101 |
| x  Additional Parties Listed on Continuation Page | |

**FEES AND TAXES**

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 42.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed    04-21-2008 12:20
City Register File No.(CRFN):
**2008000158375**

*City Register Official Signature*

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM
NYSCEF DOC. NO. 251

INDEX NO. 850240/2014
RECEIVED NYSCEF: 02/01/2022



Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 602 of 866

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2008040800596001001CC2A0

| Document ID: 2008040800596001 | Document Date: 04-01-2008 | Preparation Date: 04-08-2008 |

Document Type: ASSIGNMENT, MORTGAGE

**PARTIES**

| ASSIGNOR/OLD LENDER: | ASSIGNOR/OLD LENDER: |
|---|---|
| AS NOMINEE FOR COUNTRYWIDE BANK, N.A. ITS | SUCCESSORS AND ASSIGNS |
| 64318 MILLER ROAD | 64318 MILLER ROAD |
| FLINT, MI  48501 | FLINT, MI  48501 |

**PARTIES**
**ASSIGNEE/NEW LENDER:**
HARBORVIEW 2006-1 TRUST FUND
180 EAST 5TH STREET
ST. PAUL, MN  55101

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 603 of
866

# *ASSIGNMENT OF MORTGAGE*

**KNOW**, that **Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Bank, N.A. its successors and assigns**, **64318 Miller Road , Flint, MI 48501**, Assignor in consideration of One or More Dollars ($1.00) paid by **U.S. Bank National Association, as Trustee, for Harborview 2006-1 Trust Fund, 180 East 5th Street , St. Paul, MN 55101**, Assignee, hereby assigns unto the Assignee, a certain mortgage made by **ELIZABETH HAZAN**, given to **Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Bank, N.A. its successors and assigns**, to secure the sum of **One million five hundred thousand dollars ($1,500,000.00)** and interest, dated **the 22nd day of December, 2005**, recorded on **the 14th day of November, 2006**, in the Office of the Clerk of the County of **NEW YORK at Certificate/Docket Number 2006000629751** covering premises commonly known as **1 EAST 62ND STREET 1A, NEW YORK, NY 10021** (said premises are more particularly described in said mortgage) together with the bond or obligation described in said mortgage, and the moneys due and to grow thereon with interest.

**TO HAVE AND TO HOLD** the same unto the assignee, and to the successors, legal representatives and assigns of the assignee forever.

**THIS** Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.

**IN WITNESS WHEREOF**, the Assignor has caused these presents to be signed by its duly authorized officer this _1st_ day of April, 2008.

**IN PRESENCE OF**

Mortgage Electronic Registration Systems, Inc. as nominee for Countrywide Bank, N.A. its successors and assigns

BY: _Elpin Bechakas_

Elpiniki Bechakas
Assistant Secretary and Vice President

State of New York
County of Erie          ss:
On the _1st_ day of April in the year 2008 before me, the undersigned, a notary public in and for said state, personally appeared Elpiniki Bechakas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the _____.
*(Insert city or political subdivision and state or other place acknowledgment taken--- if acknowledgment is taken outside of New York State)*

Notary Public
Loan # 122816175
SBL # Block 1377 Lot 1100

38833

**JAMIE CANELLA**
NOTARY PUBLIC, STATE OF NEW YORK
REGISTRATION No. 01CA6121112
QUALIFIED IN ERIE COUNTY
My Commission Expires January 10, 20__

Pillar Processing, LLC
220 Northpointe Pkwy., Suite B
Amherst, NY 14228

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 604 of 866

# Exhibit 3

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 605 of
866



April 4, 2012
0012797569

ELIZABETH HAZAN
6913 VALENCIA DR
MIAMI BCH, FL 33109

## DEMAND LETTER –NOTICE OF DEFAULT

## NOTICIA DE OMISION

Re:     Loan Number: ███████ secured by real property located at
        1 EAST 62ND STREET 1A
        NEW YORK NY 10021

Dear Customer:

This letter constitutes formal notice of default under the terms of the Note and Deed of Trust or Mortgage, as applicable, resulting from your failure to make payments as required by the Note and Deed of Trust or Mortgage.  Your loan is currently due and owing for the 07/01/2007 payment and subsequent payments.  As of the date of this letter, the total amount required to cure these defaults on your loan is $508,228.93 which consists of the following:

| 58 Months Delinquent Payments | |
|---|---|
| (07/01/2007 through 4/1/2012) | $447,524.16 |
| Accrued late charges | $ 111.30 |
| Accrued interest | $   .00 |
| Funds advanced on customer's behalf | $3,108.31 |
| Escrow advance balance | $56,255.51 |
| Other fees | $1,229.65 |
| | |
| Total Amount Outstanding | $508,228.93 |
| | |
| Unapplied balance | $   .00 |
| | |
| Amount required, as of 4/4/2012 to cure the default | $508,228.93 |

It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that SPS paid on your behalf or advanced to your account.

LR062                                                                Page 1 of 4

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM



This letter is a formal demand to pay the amount due. If this amount is not paid to Select Portfolio Servicing, Inc. ("SPS") within thirty (30) days of the date of this letter, the entire unpaid balance, together with accrued interest, fees and expenses, may be ACCELERATED and your loan may be referred to outside counsel to commence foreclosure action. Our acceptance of one or more payments for less than the amount required to cure the default shall not be deemed to reinstate your loan or waive any acceleration of the loan. You have the right to cure the default on this loan if, on or before 30 days of the date of this letter, you to the following:

1. Pay the amounts due on your loan as set forth above.

2. Cure all breaches of any other covenants or agreements made by you in the Note and Deed of Trust or Mortgage.

3. Take such actions, which SPS may reasonably require, to assure the lien and interest in the property are protected.

You may incur additional fees after the date of this letter pursuant to the terms of your mortgage documents. Payment of these additional fees may not be required to cure the default, but may be required to bring your loan current.

If foreclosure is initiated, additional amounts for attorney fees and costs may be incurred. These sums can be significant and will be added to amounts due. This may reduce your equity, if any, in the property.

SPS provides consumer assistance programs designed to help resolve delinquencies and avoid foreclosures. These services are provided without cost to our customers. You may also be eligible for a loan workout plan or other similar solution. If you would like to learn more about these programs, you may contact a SPS representative at (888) 818-6032 during the following hours:

> Monday through Thursday, 9 a.m. to 10 p.m.
> Friday, 9 a.m. to 7 p.m.
> Saturday, 9 a.m. to 1 p.m.
> Eastern Time

If you wish to dispute your delinquency, you may do so by providing a written dispute to SPS at the following address:

> Select Portfolio Servicing, Inc.
> Attention: Consumer Advocacy Department
> Select Portfolio Servicing, Inc.
> PO Box 65277
> Salt Lake City, Utah 84165-0277

You also have the right to bring a court action if you claim that the loan is not in default or if you believe that you have any other defense to the acceleration and sale, including the failure to send proper notices of the acceleration and foreclosure sale. We are also required by law to inform you that if you notify us that you do not wish us to contact you by telephone at your place of employment, then no such contact by telephone will be made.

If you are represented by an attorney, SPS will work with your attorney. We will also work with housing counselors, consumer debt counselors and other representatives with your written authorization. If you are

LR062

Page 2 of 4

represented by an attorney, this letter is being mailed to you to forward to your attorney. We will release information to your attorney without further authorization. If you wish to have information regarding you account provided to individuals or groups other than your attorney, your signed written authorization (including your social security number) is required.

SPS intends to invoke specific remedies within your Deed of Trust or Mortgage as applicable. This letter is being sent as notification of those remedies.

Please contact a SPS representative at (800) 635-9698 to determine the exact amount due and to arrange for payment. SPS requires all delinquent installments to be paid by CASHIER'S CHECK OR MONEY ORDER. PLEASE PROVIDE PAYMENTS TO THE FOLLOWING ADDRESS:

> Select Portfolio Servicing, Inc.
> PO BOX 65450
> Salt Lake City, UT 84165-0450

<u>IF YOU ARE A DEBTOR IN BANKRUPTY OR HAVE BEEN DISCHARGED IN BANKRUPTCY:</u>

<u>Please be advised that if you are a debtor in bankruptcy or have been discharged in bankruptcy, this statement does not represent and is not intended to be a demand for payment. In such cases, this letter is provided for you for information purposes only and is not an attempt to collect a debt. You should consult legal counsel regarding your obligations, if any, to pay the mortgage loan.</u>

Home ownership counseling may be available to you by contacting a HUD-approved counseling agency. Call (800) 569-4287 or TDD (800) 877-8339 for the housing counseling agency nearest you.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción 2.

Sincerely,

Select Portfolio Servicing, Inc.

**This is an attempt to collect a debt. Any information obtained will be used for that purpose.**
Minnesota – This collection agency is licensed by the Minnesota Department of Commerce
New York City – Collection Agency License #0987252

LR062

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 608 of
866



April 4, 2012
0012797569


ELIZABETH HAZAN
1 EAST 62ND STREET 1A
NEW YORK, NY 10021


DEMAND LETTER –NOTICE OF DEFAULT

NOTICIA DE OMISION


Re:    Loan Number: ████████ secured by real property located at
         1 EAST 62ND STREET 1A
         NEW YORK NY 10021


Dear Customer:

This letter constitutes formal notice of default under the terms of the Note and Deed of Trust or Mortgage, as applicable, resulting from your failure to make payments as required by the Note and Deed of Trust or Mortgage. Your loan is currently due and owing for the 07/01/2007 payment and subsequent payments. As of the date of this letter, the total amount required to cure these defaults on your loan is $508,228.93 which consists of the following:

| | |
|---|---|
| 58 Months Delinquent Payments | |
| (07/01/2007 through 4/1/2012) | $447,524.16 |
| Accrued late charges | $ 111.30 |
| Accrued interest | $  .00 |
| Funds advanced on customer's behalf | $3,108.31 |
| Escrow advance balance | $56,255.51 |
| Other fees | $1,229.65 |
| | |
| Total Amount Outstanding | $508,228.93 |
| | |
| Unapplied balance | $  .00 |
| | |
| Amount required, as of 4/4/2012 to cure the default | $508,228.93 |


It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that SPS paid on your behalf or advanced to your account.


LR062                                                                 Page 1 of 4

Case 1:23-cv-21055-DPG  Document 6-3  Entered on FLSD Docket 04/18/2023  Page 610 of 866



**SELECT** *Portfolio* **SERVICING,** inc.

This letter is a formal demand to pay the amount due. If this amount is not paid to Select Portfolio Servicing, Inc. ("SPS") within thirty (30) days of the date of this letter, the entire unpaid balance, together with accrued interest, fees and expenses, may be ACCELERATED and your loan may be referred to outside counsel to commence foreclosure action. Our acceptance of one or more payments for less than the amount required to cure the default shall not be deemed to reinstate your loan or waive any acceleration of the loan. You have the right to cure the default on this loan if, on or before 30 days of the date of this letter, you to the following:

1. Pay the amounts due on your loan as set forth above.

2. Cure all breaches of any other covenants or agreements made by you in the Note and Deed of Trust or Mortgage.

3. Take such actions, which SPS may reasonably require, to assure the lien and interest in the property are protected.

You may incur additional fees after the date of this letter pursuant to the terms of your mortgage documents. Payment of these additional fees may not be required to cure the default, but may be required to bring your loan current.

If foreclosure is initiated, additional amounts for attorney fees and costs may be incurred. These sums can be significant and will be added to amounts due. This may reduce your equity, if any, in the property.

SPS provides consumer assistance programs designed to help resolve delinquencies and avoid foreclosures. These services are provided without cost to our customers. You may also be eligible for a loan workout plan or other similar solution. If you would like to learn more about these programs, you may contact a SPS representative at (888) 818-6032 during the following hours:

> Monday through Thursday, 9 a.m. to 10 p.m.
> Friday, 9 a.m. to 7 p.m.
> Saturday, 9 a.m. to 1 p.m.
> Eastern Time

If you wish to dispute your delinquency, you may do so by providing a written dispute to SPS at the following address:

> Select Portfolio Servicing, Inc.
> Attention: Consumer Advocacy Department
> Select Portfolio Servicing, Inc.
> PO Box 65277
> Salt Lake City, Utah 84165-0277

You also have the right to bring a court action if you claim that the loan is not in default or if you believe that you have any other defense to the acceleration and sale, including the failure to send proper notices of the acceleration and foreclosure sale. We are also required by law to inform you that if you notify us that you do not wish us to contact you by telephone at your place of employment, then no such contact by telephone will be made.

If you are represented by an attorney, SPS will work with your attorney. We will also work with housing counselors, consumer debt counselors and other representatives with your written authorization. If you are

LR062                                                            Page 2 of 4

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 611 of 866

represented by an attorney, this letter is being mailed to you to forward to your attorney. We will release information to your attorney without further authorization. If you wish to have information regarding you account provided to individuals or groups other than your attorney, your signed written authorization (including your social security number) is required.

SPS intends to invoke specific remedies within your Deed of Trust or Mortgage as applicable. This letter is being sent as notification of those remedies.

Please contact a SPS representative at (800) 635-9698 to determine the exact amount due and to arrange for payment. SPS requires all delinquent installments to be paid by CASHIER'S CHECK OR MONEY ORDER. PLEASE PROVIDE PAYMENTS TO THE FOLLOWING ADDRESS:

> Select Portfolio Servicing, Inc.
> PO BOX 65450
> Salt Lake City, UT 84165-0450

<u>IF YOU ARE A DEBTOR IN BANKRUPTY OR HAVE BEEN DISCHARGED IN BANKRUPTCY:</u>

<u>Please be advised that if you are a debtor in bankruptcy or have been discharged in bankruptcy, this statement does not represent and is not intended to be a demand for payment. In such cases, this letter is provided for you for information purposes only and is not an attempt to collect a debt. You should consult legal counsel regarding your obligations, if any, to pay the mortgage loan.</u>

Home ownership counseling may be available to you by contacting a HUD-approved counseling agency. Call (800) 569-4287 or TDD (800) 877-8339 for the housing counseling agency nearest you.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción 2.

Sincerely,

Select Portfolio Servicing, Inc.

**This is an attempt to collect a debt. Any information obtained will be used for that purpose.**
Minnesota – This collection agency is licensed by the Minnesota Department of Commerce
New York City – Collection Agency License #0987252

LR062

Page 3 of 4

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 612 of 866

LR062

# Exhibit 4

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 614 of 866

Select Portfolio Servicing
PO BOX 65250
Salt Lake City, UT
84165-0250

9171 9010 7643 2003 7701 86

ELIZABETH HAZAN
6913 VALENCIA DR
MIAMI BCH, FL 33109

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM
INDEX NO. 850240/2014
NYSCEF DOC. NO. 251
RECEIVED NYSCEF: 02/01/2022

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 615 of
866

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 616 of 866



December 17, 2013



ELIZABETH HAZAN
6913 VALENCIA DR
MIAMI BCH, FL 33109

**Account Number:** ▮▮▮▮▮▮▮
**Property Address:** 1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Dear Customer(s):

YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE
CAREFULLY

As of December 17, 2013, your home is 2361 days in default.  Under New York State
Law, we are required to send you this notice to inform you that you are at risk of losing
your home.  You can cure this default by making the payment of $610,155.44 dollars
by 03/17/2014. This amount will cure the default but may not be enough to reinstate
the loan if additional payments and/or advances accrue after the date of this letter.
Please contact us at (800) 635-9698 prior to making any payment to obtain the exact
amount to reinstate the loan.

If you are experiencing financial difficulty, you should know that there are several
options available to you that may help you keep your home.  Attached to this notice is
a list of government approved housing counseling agencies in your area which provide
free or very low-cost counseling. You should consider contacting one of these
agencies immediately. These agencies specialize in helping homeowners who are
facing financial difficulty.  Housing counselors can help you assess your financial
condition and work with us to explore the possibility of modifying your loan,
establishing an easier payment plan for you, or even working out a period of loan
forbearance.  If you wish, you may also contact us directly at (800) 635-9698 and ask
to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage
you to take immediate steps to try to achieve a resolution.  The longer you wait the
fewer options you may have.



Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 617 of 866

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 269-0990 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción  2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City – Collection Agency License # 1170514

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 618 of
866

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov to find the HUD-approved housing counseling agency nearest you

| | |
|---|---|
| Albany County Rural Housing Alliance, Inc.<br>(518) 765-2425 - Voorheesville<br>(518) 235-3920 - Cohoes<br>(518) 756-3656 - Ravena<br>Albany County | American Debt Resources<br>(800) 498-0766<br>Suffolk County |
| Belmont Shelter Corp.<br>(716) 884-7791 - Buffalo<br>(716) 213-2784 - North Tonawanda<br>(716) 312-8075 - Hamburg<br>Erie County | Better Neighborhoods, Inc.<br>(518) 372-6469<br>Schenectady, Montgomery, and Fulton Counties |
| Bishop Sheen Ecumenical Housing Foundation, Inc.<br>(585) 461-4263 - Rochester<br>(585) 657-4114 - Bloomfield<br>Monroe, Allegany, Chemung, Schuyler, Steuben, Tioga, Tompkins, Cayuga, Livingston, Seneca, Wayne, Ontario and Yates Counties | Brooklyn Housing & Family Services, Inc.<br>(718) 435-7585<br>Brooklyn |
| Brooklyn Neighborhood Improvement Association<br>(718) 773-4116<br>Brooklyn | Chautauqua Opportunities, Inc.<br>(716) 366-3333<br>Chautauqua County |
| Friends of the North Country, Inc.<br>(518) 834-9606<br>Essex, Clinton, and Franklin Counties | The Housing Council<br>(585) 546-3700<br>Monroe and surrounding Counties |

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 619 of 866

| | |
|---|---|
| Housing Help<br>(631) 754-0373<br>Suffolk County | Human Development Services of Westchester, Inc.<br>(914) 939-2005<br>Westchester County |
| Keuka Housing Council, Inc.<br>(315) 536-8707<br>Yates County | Long Island Housing Services<br>(631) 567-5111 - Suffolk<br>(516) 292-0400 - Nassau<br>Long Island |
| Nassau County Office of Housing & Homeless Service/Homeownership Center<br>(516) 572-1903<br>Nassau County | Parodneck Foundation<br>(212) 431-9700<br>New York City |
| PathStone Corporation<br>(585) 546-7180 - Rochester<br>(845) 569-0770 - Newburgh<br>Orange, Dutchess, Sullivan, Monroe, Orleans, Genesee, Livingston, Ontario and Wayne Counties | Putnam County Housing<br>(845) 225-8493<br>Putnam County |
| Rockaway Development and Revitalization Corporation<br>(718) 327-5300<br>Queens County | Rockland Housing Action Coalition, Inc.<br>(845) 708-5799<br>Rockland County |
| Westchester Residential Opportunities, Inc.<br>(914) 428-4507<br>Westchester County | |

In addition, NeighborWorks® America distributed Federal grants directly to several counseling agencies in New York State to provide foreclosure prevention counseling. If you believe you are at risk of foreclosure, you may contact one of these organizations:

| | |
|---|---|
| Chautauqua Housing and Rehabilitation Improvement Corporation<br>(716) 753-4650<br>Chautauqua County | Community Development Corporation of Long Island, Inc.<br>(631) 471-1215 - Suffolk<br>(516) 867-7727 - Nassau<br>Long Island |
| Home HeadQuarters, Inc.<br>(315) 474-1939<br>Onondaga County | Housing Assistance Program of Essex County, Inc.<br>(518) 873-3691<br>Essex County |
| Hudson River Housing, Inc.<br>(845) 454-5176<br>Dutchess County | Neighborhood Housing Services of New York City, Inc.<br>(212) 519-2500<br>New York City |
| Opportunities for Chenango, Inc.<br>(607) 334-7114<br>Chenango County | St. Lawrence County Housing Council, Inc.<br>(315) 386-8576<br>St. Lawrence County |
| Troy Rehabilitation & Improvement Program, Inc.<br>(518) 690-0020<br>Rensselaer County | UNHS NeighborWorks HomeOwnership Center<br>(315) 724-4197<br>Oneida, Herkimer and Madison Counties |
| West Side Neighborhood Housing Services, Inc.<br>(716) 885-2344<br>Buffalo | |

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 620 of
866

Select Portfolio Servicing
PO BOX 65250
Salt Lake City, UT
84165-0250

9171 9010 7643 2003 7701 93

ELIZABETH HAZAN
1 EAST 62ND STREET 1A
NEW YORK, NY 10021

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM
INDEX NO. 850240/2014
NYSCEF DOC. NO. 251
RECEIVED NYSCEF: 02/01/2022

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 622 of 866



December 17, 2013


ELIZABETH HAZAN
1 EAST 62ND STREET 1A
NEW YORK, NY 10021

**Account Number:** ▮▮▮▮▮▮▮▮
**Property Address:** 1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Dear Customer(s):

YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY

As of December 17, 2013, your home is 2361 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $610,155.44 dollars by 03/17/2014. This amount will cure the default but may not be enough to reinstate the loan if additional payments and/or advances accrue after the date of this letter. Please contact us at (800) 635-9698 prior to making any payment to obtain the exact amount to reinstate the loan.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at (800) 635-9698 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait the fewer options you may have.

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 623 of 866

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 269-0990 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción 2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City – Collection Agency License # 1170514

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM INDEX NO. 850240/2014

NYSCEF DOC. NO. 251 RECEIVED NYSCEF: 02/01/2022

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov to find the HUD-approved housing counseling agency nearest you

| | |
|---|---|
| Albany County Rural Housing Alliance, Inc.<br>(518) 765-2425 - Voorheesville<br>(518) 235-3920 - Cohoes<br>(518) 756-3656 - Ravena<br>Albany County | American Debt Resources<br>(800) 498-0766<br>Suffolk County |
| Belmont Shelter Corp.<br>(716) 884-7791 - Buffalo<br>(716) 213-2784 - North Tonawanda<br>(716) 312-8075 - Hamburg<br>Erie County | Better Neighborhoods, Inc.<br>(518) 372-6469<br>Schenectady, Montgomery, and Fulton Counties |
| Bishop Sheen Ecumenical Housing Foundation, Inc.<br>(585) 461-4263 - Rochester<br>(585) 657-4114 - Bloomfield<br>Monroe, Allegany, Chemung, Schuyler, Steuben,<br>Tioga, Tompkins, Cayuga, Livingston, Seneca,<br>Wayne, Ontario and Yates Counties | Brooklyn Housing & Family Services, Inc.<br>(718) 435-7585<br>Brooklyn |
| Brooklyn Neighborhood Improvement Association<br>(718) 773-4116<br>Brooklyn | Chautauqua Opportunities, Inc.<br>(716) 366-3333<br>Chautauqua County |
| Friends of the North Country, Inc.<br>(518) 834-9606<br>Essex, Clinton, and Franklin Counties | The Housing Council<br>(585) 546-3700<br>Monroe and surrounding Counties |

Case 1:23-cv-21055-DPG  Document 6-3  Entered on FLSD Docket 04/18/2023  Page 625 of 866

| Housing Help<br>(631) 754-0373<br>Suffolk County | Human Development Services of Westchester, Inc.<br>(914) 939-2005<br>Westchester County |
|---|---|
| Keuka Housing Council, Inc.<br>(315) 536-8707<br>Yates County | Long Island Housing Services<br>(631) 567-5111 - Suffolk<br>(516) 292-0400 - Nassau<br>Long Island |
| Nassau County Office of Housing & Homeless Service/Homeownership Center<br>(516) 572-1903<br>Nassau County | Parodneck Foundation<br>(212) 431-9700<br>New York City |
| PathStone Corporation<br>(585) 546-7180 - Rochester<br>(845) 569-0770 - Newburgh<br>Orange, Dutchess, Sullivan, Monroe, Orleans, Genesee, Livingston, Ontario and Wayne Counties | Putnam County Housing<br>(845) 225-8493<br>Putnam County |
| Rockaway Development and Revitalization Corporation<br>(718) 327-5300<br>Queens County | Rockland Housing Action Coalition, Inc.<br>(845) 708-5799<br>Rockland County |
| Westchester Residential Opportunities, Inc.<br>(914) 428-4507<br>Westchester County | |

In addition, NeighborWorks® America distributed Federal grants directly to several counseling agencies in New York State to provide foreclosure prevention counseling. If you believe you are at risk of foreclosure, you may contact one of these organizations:

| Chautauqua Housing and Rehabilitation Improvement Corporation<br>(716) 753-4650<br>Chautauqua County | Community Development Corporation of Long Island, Inc.<br>(631) 471-1215 - Suffolk<br>(516) 867-7727 - Nassau<br>Long Island |
|---|---|
| Home HeadQuarters, Inc.<br>(315) 474-1939<br>Onondaga County | Housing Assistance Program of Essex County, Inc.<br>(518) 873-3691<br>Essex County |
| Hudson River Housing, Inc.<br>(845) 454-5176<br>Dutchess County | Neighborhood Housing Services of New York City, Inc.<br>(212) 519-2500<br>New York City |
| Opportunities for Chenango, Inc.<br>(607) 334-7114<br>Chenango County | St. Lawrence County Housing Council, Inc.<br>(315) 386-8576<br>St. Lawrence County |
| Troy Rehabilitation & Improvement Program, Inc.<br>(518) 690-0020<br>Rensselaer County | UNHS NeighborWorks HomeOwnership Center<br>(315) 724-4197<br>Oneida, Herkimer and Madison Counties |
| West Side Neighborhood Housing Services, Inc.<br>(716) 885-2344<br>Buffalo | |

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM          INDEX NO. 850240/2014

NYSCEF DOC. NO. 251          Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 626 of          RECEIVED NYSCEF: 02/01/2022
866



December 17, 2013

 ELIZABETH HAZAN
6913 VALENCIA DR
MIAMI BCH, FL 33109

**Account Number:** ███████
**Property Address:** 1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Dear Customer(s):

YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE
CAREFULLY

As of December 17, 2013, your home is 2361 days in default.  Under New York State
Law, we are required to send you this notice to inform you that you are at risk of losing
your home.  You can cure this default by making the payment of $610,155.44 dollars
by 03/17/2014. This amount will cure the default but may not be enough to reinstate
the loan if additional payments and/or advances accrue after the date of this letter.
Please contact us at (800) 635-9698 prior to making any payment to obtain the exact
amount to reinstate the loan.

If you are experiencing financial difficulty, you should know that there are several
options available to you that may help you keep your home.  Attached to this notice is
a list of government approved housing counseling agencies in your area which provide
free or very low-cost counseling. You should consider contacting one of these
agencies immediately. These agencies specialize in helping homeowners who are
facing financial difficulty.  Housing counselors can help you assess your financial
condition and work with us to explore the possibility of modifying your loan,
establishing an easier payment plan for you, or even working out a period of loan
forbearance.  If you wish, you may also contact us directly at (800) 635-9698 and ask
to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage
you to take immediate steps to try to achieve a resolution.  The longer you wait the
fewer options you may have.

LR972          0000895800024810200

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 627 of 866

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 269-0990 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción  2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City – Collection Agency License # 1170514

LR972

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 628 of 866

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov to find the HUD-approved housing counseling agency nearest you

| | |
|---|---|
| Albany County Rural Housing Alliance, Inc. (518) 765-2425 - Voorheesville (518) 235-3920 - Cohoes (518) 756-3656 - Ravena Albany County | American Debt Resources (800) 498-0766 Suffolk County |
| Belmont Shelter Corp. (716) 884-7791 - Buffalo (716) 213-2784 - North Tonawanda (716) 312-8075 - Hamburg Erie County | Better Neighborhoods, Inc. (518) 372-6469 Schenectady, Montgomery, and Fulton Counties |
| Bishop Sheen Ecumenical Housing Foundation, Inc. (585) 461-4263 - Rochester (585) 657-4114 - Bloomfield Monroe, Allegany, Chemung, Schuyler, Steuben, Tioga, Tompkins, Cayuga, Livingston, Seneca, Wayne, Ontario and Yates Counties | Brooklyn Housing & Family Services, Inc. (718) 435-7585 Brooklyn |
| Brooklyn Neighborhood Improvement Association (718) 773-4116 Brooklyn | Chautauqua Opportunities, Inc. (716) 366-3333 Chautauqua County |
| Friends of the North Country, Inc. (518) 834-9606 Essex, Clinton, and Franklin Counties | The Housing Council (585) 546-3700 Monroe and surrounding Counties |

LR972                                    0000895900024402020200

FILED: NEW YORK COUNTY CLERK 02/01/2022 02:44 PM INDEX NO. 850240/2014
NYSCEF DOC. NO. 251 RECEIVED NYSCEF: 02/01/2022

| | |
|---|---|
| Housing Help<br>(631) 754-0373<br>Suffolk County | Human Development Services of Westchester, Inc.<br>(914) 939-2005<br>Westchester County |
| Keuka Housing Council, Inc.<br>(315) 536-8707<br>Yates County | Long Island Housing Services<br>(631) 567-5111 - Suffolk<br>(516) 292-0400 - Nassau<br>Long Island |
| Nassau County Office of Housing & Homeless Service/Homeownership Center<br>(516) 572-1903<br>Nassau County | Parodneck Foundation<br>(212) 431-9700<br>New York City |
| PathStone Corporation<br>(585) 546-7180 - Rochester<br>(845) 569-0770 - Newburgh<br>Orange, Dutchess, Sullivan, Monroe, Orleans, Genesee, Livingston, Ontario and Wayne Counties | Putnam County Housing<br>(845) 225-8493<br>Putnam County |
| Rockaway Development and Revitalization Corporation<br>(718) 327-5300<br>Queens County | Rockland Housing Action Coalition, Inc.<br>(845) 708-5799<br>Rockland County |
| Westchester Residential Opportunities, Inc.<br>(914) 428-4507<br>Westchester County | |

In addition, NeighborWorks® America distributed Federal grants directly to several counseling agencies in New York State to provide foreclosure prevention counseling. If you believe you are at risk of foreclosure, you may contact one of these organizations:

| | |
|---|---|
| Chautauqua Housing and Rehabilitation Improvement Corporation<br>(716) 753-4650<br>Chautauqua County | Community Development Corporation of Long Island, Inc.<br>(631) 471-1215 - Suffolk<br>(516) 867-7727 - Nassau<br>Long Island |
| Home HeadQuarters, Inc.<br>(315) 474-1939<br>Onondaga County | Housing Assistance Program of Essex County, Inc.<br>(518) 873-3691<br>Essex County |
| Hudson River Housing, Inc.<br>(845) 454-5176<br>Dutchess County | Neighborhood Housing Services of New York City, Inc.<br>(212) 519-2500<br>New York City |
| Opportunities for Chenango, Inc.<br>(607) 334-7114<br>Chenango County | St. Lawrence County Housing Council, Inc.<br>(315) 386-8576<br>St. Lawrence County |
| Troy Rehabilitation & Improvement Program, Inc.<br>(518) 690-0020<br>Rensselaer County | UNHS NeighborWorks HomeOwnership Center<br>(315) 724-4197<br>Oneida, Herkimer and Madison Counties |
| West Side Neighborhood Housing Services, Inc.<br>(716) 885-2344<br>Buffalo | |

LR972

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 630 of 866



December 17, 2013

 ELIZABETH HAZAN
1 EAST 62ND STREET 1A
NEW YORK, NY 10021

**Account Number:** ▆▆▆▆▆▆
**Property Address:** 1 EAST 62ND STREET 1A
NEW YORK, NY 10021

Dear Customer(s):

### YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY

As of December 17, 2013, your home is 2361 days in default.  Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home.  You can cure this default by making the payment of $610,155.44 dollars by 03/17/2014. This amount will cure the default but may not be enough to reinstate the loan if additional payments and/or advances accrue after the date of this letter. Please contact us at (800) 635-9698 prior to making any payment to obtain the exact amount to reinstate the loan.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home.  Attached to this notice is a list of government approved housing counseling agencies in your area which provide free or very low-cost counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty.  Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance.  If you wish, you may also contact us directly at (800) 635-9698 and ask to discuss possible options.

While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution.  The longer you wait the fewer options you may have.

LR972          0000896900024460200

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 631 of
866

If this matter is not resolved within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)

If you need further information, please call the New York State Department of Financial Services' toll-free helpline at (800) 269-0990 or visit the Department's website at http://www.dfs.ny.gov.

Sincerely,

Select Portfolio Servicing, Inc.

Esta carta contiene información importante concerniente a sus derechos. Por favor, hágala traducir. Nuestros representantes bilingues están a su disposición  para contestar cualquier pregunta llamando al teléfono (800) 831-0118 y marque la opción  2.

This communication from a debt collector is an attempt to collect a debt and any information obtained will be used for that purpose.

New York City – Collection Agency License # 1170514

LR972

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 632 of 866

## Foreclosure Prevention Counseling

If you are having trouble paying your mortgage or are at risk of foreclosure, contact a not-for-profit housing counselor in your area. Not-for-profit housing counselors provide free, professional advice. They can help you assess your options, negotiate with your lender and find free legal services and other resources in your area. The following not-for-profit housing counseling organizations have received some type of public funding to provide foreclosure prevention services. It's always a good idea to call in advance to see if an appointment is necessary and what, if any, documents you should bring with you.

> *Be wary of companies and individuals who promise to help save your home from foreclosure in exchange for the payment of fees upfront. New York law prohibits the collection of such fees except in limited circumstances.*

If you live in New York City, you can contact the Center for New York City Neighborhoods (CNYCN) at 646-786-0888. CNYCN partners with more than 50 agencies and coordinates foreclosure prevention and intervention services in all five boroughs. It can help you find the right services for your needs.

Please note that the State cannot guarantee the advice of any individual housing counseling agency. However, many of these agencies have adopted National Industry Standards for Homeownership Counseling to ensure that homeowners receive quality and professional counseling.

Also note that the list may not include all publicly funded agencies in New York that are providing foreclosure counseling services. The New York Division of Homes & Community Renewal is continually working to add new agencies to the list.

For more information on avoiding foreclosure visit the New York Department of Financial Services website at www.dfs.ny.gov.

The U.S. Department of Housing and Urban Development (HUD) also sponsors housing counseling agencies that can provide advice on preventing foreclosure. HUD approved home ownership counseling may be available to you. You should call (800) 569-4287 or TDD (800) 877-8339, or go to HUD's website at www.hud.gov to find the HUD-approved housing counseling agency nearest you

| | |
|---|---|
| Albany County Rural Housing Alliance, Inc.<br>(518) 765-2425 - Voorheesville<br>(518) 235-3920 - Cohoes<br>(518) 756-3656 - Ravena<br>Albany County | American Debt Resources<br>(800) 498-0766<br>Suffolk County |
| Belmont Shelter Corp.<br>(716) 884-7791 - Buffalo<br>(716) 213-2784 - North Tonawanda<br>(716) 312-8075 - Hamburg<br>Erie County | Better Neighborhoods, Inc.<br>(518) 372-6469<br>Schenectady, Montgomery, and Fulton Counties |
| Bishop Sheen Ecumenical Housing Foundation, Inc.<br>(585) 461-4263 - Rochester<br>(585) 657-4114 - Bloomfield<br>Monroe, Allegany, Chemung, Schuyler, Steuben, Tioga, Tompkins, Cayuga, Livingston, Seneca, Wayne, Ontario and Yates Counties | Brooklyn Housing & Family Services, Inc.<br>(718) 435-7585<br>Brooklyn |
| Brooklyn Neighborhood Improvement Association<br>(718) 773-4116<br>Brooklyn | Chautauqua Opportunities, Inc.<br>(716) 366-3333<br>Chautauqua County |
| Friends of the North Country, Inc.<br>(518) 834-9606<br>Essex, Clinton, and Franklin Counties | The Housing Council<br>(585) 546-3700<br>Monroe and surrounding Counties |

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 633 of 866

| | |
|---|---|
| Housing Help<br>(631) 754-0373<br>Suffolk County | Human Development Services of Westchester, Inc.<br>(914) 939-2005<br>Westchester County |
| Keuka Housing Council, Inc.<br>(315) 536-8707<br>Yates County | Long Island Housing Services<br>(631) 567-5111 - Suffolk<br>(516) 292-0400 - Nassau<br>Long Island |
| Nassau County Office of Housing & Homeless Service/Homeownership Center<br>(516) 572-1903<br>Nassau County | Parodneck Foundation<br>(212) 431-9700<br>New York City |
| PathStone Corporation<br>(585) 546-7180 - Rochester<br>(845) 569-0770 - Newburgh<br>Orange, Dutchess, Sullivan, Monroe, Orleans, Genesee, Livingston, Ontario and Wayne Counties | Putnam County Housing<br>(845) 225-8493<br>Putnam County |
| Rockaway Development and Revitalization Corporation<br>(718) 327-5300<br>Queens County | Rockland Housing Action Coalition, Inc.<br>(845) 708-5799<br>Rockland County |
| Westchester Residential Opportunities, Inc.<br>(914) 428-4507<br>Westchester County | |

In addition, NeighborWorks® America distributed Federal grants directly to several counseling agencies in New York State to provide foreclosure prevention counseling. If you believe you are at risk of foreclosure, you may contact one of these organizations:

| | |
|---|---|
| Chautauqua Housing and Rehabilitation Improvement Corporation<br>(716) 753-4650<br>Chautauqua County | Community Development Corporation of Long Island, Inc.<br>(631) 471-1215 - Suffolk<br>(516) 867-7727 - Nassau<br>Long Island |
| Home HeadQuarters, Inc.<br>(315) 474-1939<br>Onondaga County | Housing Assistance Program of Essex County, Inc.<br>(518) 873-3691<br>Essex County |
| Hudson River Housing, Inc.<br>(845) 454-5176<br>Dutchess County | Neighborhood Housing Services of New York City, Inc.<br>(212) 519-2500<br>New York City |
| Opportunities for Chenango, Inc.<br>(607) 334-7114<br>Chenango County | St. Lawrence County Housing Council, Inc.<br>(315) 386-8576<br>St. Lawrence County |
| Troy Rehabilitation & Improvement Program, Inc.<br>(518) 690-0020<br>Rensselaer County | UNHS NeighborWorks HomeOwnership Center<br>(315) 724-4197<br>Oneida, Herkimer and Madison Counties |
| West Side Neighborhood Housing Services, Inc.<br>(716) 885-2344<br>Buffalo | |

LR972

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 634 of 866



**New York State Department of Financial Services**
One State Street Plaza, New York, NY 10004

Proof of Filing Statement

To Whom It May Concern:

Section 1306 of the Real Property Actions and Proceedings Law (RPAPL) requires lenders, assignees or mortgage loan servicers servicing loans on 1-to-4 family residential properties in New York State to file certain information with the Superintendent of the Department Financial Services within three days after the mailing of a 90-Day Pre-Foreclosure Notice.

The information below pertains to a filing submitted to the Department of Financial Services as required in Section 1306 of RPAPL.  The information is presented as filed by the lender, assignee or mortgage loan servicer.

**Filer Information:**

| | |
|---|---|
| Name | : Select Portfolio Servicing, Inc. |
| Address | : 3815 So. West Temple |
| | Salt Lake City UT  84115 |

**Filing Information:**

| | |
|---|---|
| Tracking Number | : NYS3472007 |
| Mailing Date Step 1 | : 17-DEC-13 12.00.00.000 AM |
| Mailing Date Step 2 | : 01-JUL-14 12.00.00.000 AM |
| Judgment Date Step 3 | : |
| Filing Date Step 1 | : 18-DEC-13 12.00.00.000 AM |
| Filing Date Step 1 Orig | : 18-DEC-13 12.00.00.000 AM |
| Filing Date Step 2 | : 08-JUL-14 06.39.07.000 PM |
| Filing Date Step 3 | : |
| Owner Occupd at Jdgmnt | : |
| Property Type | : Condo |
| Property Address | : 1 EAST 62ND STREET 1A  NEW YORK |
| | NY 10021 |
| County | : New York |
| Date of Original Loan | : 22-DEC-05 12.00.00.000 AM |
| Amt of Original Loan | : 1500000 |
| Loan Number Step 1 | : ███████ |
| Loan Number Step 2 | : |
| Loan Reset Frequency | : Monthly |
| Loan Type | : 1st Lien |
| Loan Details | : Adjustable Rate |
| Loan Term | : 30 Year |
| Loan Modification | : No Modification |
| Days Delinquent | : Other |
| Borrower's Name | : ELIZABETH  HAZAN |
| Address | : 6913 VALENCIA DR |
| | MIAMI BCH  33109  0000 |
| Borrower's Phone No | : 0110000000 |
| Filing Status | : Step 2 Completed-Online |

Sincerely,

New York State Department of Financial Services

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 635 of 866

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, ON BEHALF OF THE HOLDERS OF THE HARBORVIEW MORTGAGE LOAN TRUST 2006-1 MORTGAGE LOAN PASS-THROUGH CERTIFICATES, SERIES 2006-1,

**INDEX NO.: 850240/2014**

Plaintiff,

-against-

ELIZABETH HAZAN, REAL ESTATE HOLDINGS GROUP, L.D.C., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS A NOMINEE FOR AMERICA'S WHOLESALE LENDER, THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS SUCCESSOR TO JPMORGAN CHASE BANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWHEQ REVOLVING HOME EQUITY LOAN TRUST, SERIES 2005-M, THE BOARD OF MANAGERS OF THE SPENCER CONDOMINIUM, NLG, LLC, NEW YORK CITY DEPARTMENT OF FINANCE, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, 1 EAST 62ND STREET APT 1A LLC, AARONSON SCHANTZ BEILEY P.A., NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, UNITED STATES OF AMERICA O/B/O INTERNAL REVENUE SERVICE, and "JOHN DOE #1" through "JOHN DOE #10", the last ten names being fictitious and unknown to the plaintiff, the person or parties intended being the persons or parties, if any, having or claiming an interest in or lien upon the mortgaged premises described in the Complaint,

Defendants.

---

## SUPPLEMENTAL SUMMONS AND AMENDED COMPLAINT

---

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
*Attorneys for Plaintiff*
*U.S. Bank National Association, as Trustee*
**10 Bank Street, Suite 700**
**White Plains, New York 10606**
**(914) 949-2909**
**Fax (914) 949-5424**

A.100

```
System:      5/17/2022  12:26:36 PM              Fisher Island Community Associ                      Page:   1
User Date:   5/17/2022                       TRANSACTION BY CUSTOMER INQUIRY REPORT                  User ID: carola
                                                  Receivables Management

Customer ID:  11213                 Elizabeth Hazan

Ranges:                    From:                       To:
  Document Number          First                       Last
  Document Date            First                       Last

Sorted By:  Document Date                      Include:  Open

* Voided


Origin   Type  Document Number    Check Number      Due Date     Audit Trail Code   Batch ID             Currency ID
------------------------------------------------------------------------------------------------------------------------
  Doc Date       Description               Discount Amount      Writeoff Amount        Document Amount      Amount Remaining
------------------------------------------------------------------------------------------------------------------------
Open    SLS   1ST Q 09 - 617                       1/1/2009     SLSTE00000019     1ST Q 09             Z-US$
  12/2/2008    1ST Q 09 - 617                   $0.00              $0.00                  $5,409.00          $3,109.72

Open    SLS   2ND Q 09 - 978                      4/1/2009     SLSTE00000024     2ND Q ASSESS         Z-US$
  3/2/2009     2ND Q 09 - 978                   $0.00              $0.00                  $5,409.00          $5,409.00

Open    SLS   Q03090605                           7/1/2009     SLSTE00000027     3RD Q 2009           Z-US$
  6/1/2009     Q03090605                        $0.00              $0.00                  $5,409.00          $5,409.00

Open    SLS   Q04090603                          10/1/2009     SLSTE00000029     0409Q-C              Z-US$
  9/1/2009     Q04090603                        $0.00              $0.00                  $5,409.00          $5,409.00

Open    SLS   Q01101270                           1/1/2010     SLSTE00000049     1STQ10               Z-US$
  12/2/2009    Q01101270                        $0.00              $0.00                  $5,450.00          $5,450.00

Open    SLS   QA0000578                           4/1/2010     SLSTE00000069     2Q10                 Z-US$
  3/2/2010     QA0000578                        $0.00              $0.00                  $5,450.00          $5,450.00

Open    SLS   QA0001934                           7/1/2010     SLSTE00000096     3Q 10A               Z-US$
  6/1/2010     QA0001934                        $0.00              $0.00                  $5,450.00          $5,450.00

Open    SLS   QA0002612                          10/1/2010     SLSTE00000122     4Q 10                Z-US$
  9/1/2010     QA0002612                        $0.00              $0.00                  $5,450.00          $5,450.00

Open    SLS   QA0008020                           7/1/2012     SLSTE00000330     3RD Q 12             Z-US$
  6/1/2012     QA0008020                        $0.00              $0.00                  $5,722.50          $3,815.00

Open    SLS   INV1007091                          8/5/2012     RMSLS00001083     07062012ODRR         Z-US$
  7/6/2012     E.Hazan speeding 3/25 & 4/2      $0.00              $0.00                    $200.00            $200.00

Open    DR    DEBIT1000436                        8/31/2012    RMSLS00001098     8/12PPI              Z-US$
  8/1/2012     8/12 P. PLAN INTEREST            $0.00              $0.00                    $295.51            $295.51

Open    DR    DEBIT1000444                       10/1/2012     RMSLS00001121     0912PPINT            Z-US$
  9/1/2012     09/12 P.Plan Interest            $0.00              $0.00                    $273.62            $273.62

Open    SLS   QA0008695                          10/1/2012     SLSTE00000359     4Q12ASS              Z-US$
  9/1/2012     QA0008695                        $0.00              $0.00                  $5,722.50          $5,722.50

Open    DR    DEBIT1000469                       10/31/2012    RMSLS00001139     1012PPINT            Z-US$
  10/1/2012    10/12 P.Plan Interest            $0.00              $0.00                    $269.81            $269.81

Open    DR    DEBIT1000481                       12/1/2012     RMSLS00001157     1112PPI              Z-US$
  11/1/2012    11/12 P. Plan Interest           $0.00              $0.00                    $248.55            $248.55

Open    SLS   LEG11213112012                     12/20/2012    SLSTE00000378     11202012LEG          Z-US$
  11/20/2012   LEG11213112012                   $0.00              $0.00                  $1,210.85          $1,210.85

Open    DR    DEBIT1000488                       12/31/2012    RMSLS00001178     1212PPINT            Z-US$
  12/1/2012    12/12 P.Plan Interest            $0.00              $0.00                    $243.71            $243.71
```

A.101

```
System:     5/17/2022  12:26:36 PM              Fisher Island Community Associ                    Page:    2
User Date:  5/17/2022                      TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                                  Receivables Management
```

Customer ID:  11213                Elizabeth Hazan

* Voided

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|--------|------|-----------------|--------------|----------|------------------|----------|---|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | QA0009375 | | 1/1/2013 | SLSTE00000385 | 1ST 2013 | | Z-US$ | |
| 12/2/2012 | | QA0009375 | | $0.00 | $0.00 | | $5,722.50 | | $5,722.50 |
| Open | SLS | LC000879 | | 2/17/2013 | SLSTE00000399 | 01182013ODLATE | | Z-US$ | |
| 1/18/2013 | | LC000879 | | $0.00 | $0.00 | | $286.12 | | $286.12 |
| Open | SLS | FCHRG1003039 | | 3/9/2013 | SLSTE00000405 | 0212FC | | Z-US$ | |
| 2/7/2013 | | FCHRG1003039 | | $0.00 | $0.00 | | $845.95 | | $845.95 |
| Open | SLS | LC1121302212013 | | 3/23/2013 | SLSTE00000408 | 02212013ODLEG | | Z-US$ | |
| 2/21/2013 | | LC1121302212013 | | $0.00 | $0.00 | | $1,575.00 | | $1,575.00 |
| Open | SLS | QA0010051 | | 4/1/2013 | SLSTE00000409 | 2ND Q 13 | | Z-US$ | |
| 3/2/2013 | | QA0010051 | | $0.00 | $0.00 | | $5,722.50 | | $5,722.50 |
| Open | SLS | FCHRG1003060 | | 4/3/2013 | SLSTE00000411 | 0313FIN | | Z-US$ | |
| 3/4/2013 | | FCHRG1003060 | | $0.00 | $0.00 | | $845.95 | | $845.95 |
| Open | SLS | LEG1121303072013 | | 4/6/2013 | SLSTE00000417 | 03072013LEGHAZ | | Z-US$ | |
| 3/7/2013 | | LEG1121303072013 | | $0.00 | $0.00 | | $2,396.90 | | $2,396.90 |
| Open | SLS | LEG11213032513 | | 4/24/2013 | SLSTE00000424 | 03252013LEG | | Z-US$ | |
| 3/25/2013 | | LEG11213032513 | | $0.00 | $0.00 | | $58.50 | | $58.50 |
| Open | SLS | FCHRG1003076 | | 5/2/2013 | SLSTE00000427 | 0413FC | | Z-US$ | |
| 4/2/2013 | | FCHRG1003076 | | $0.00 | $0.00 | | $845.95 | | $845.95 |
| Open | SLS | LC000946 | | 5/17/2013 | SLSTE00000429 | 04172013LATE | | Z-US$ | |
| 4/17/2013 | | LC000946 | | $0.00 | $0.00 | | $286.12 | | $286.12 |
| Open | SLS | FCHRG1003089 | | 6/5/2013 | SLSTE00000439 | 0513FC | | Z-US$ | |
| 5/6/2013 | | FCHRG1003089 | | $0.00 | $0.00 | | $931.79 | | $931.79 |
| Open | SLS | QA0010720 | | 7/1/2013 | SLSTE00000433 | 3Q 13 | | Z-US$ | |
| 6/1/2013 | | QA0010720 | | $0.00 | $0.00 | | $5,544.12 | | $5,544.12 |
| Open | SLS | FCHRG1003102 | | 7/5/2013 | SLSTE00000440 | 0613FC | | Z-US$ | |
| 6/5/2013 | | FCHRG1003102 | | $0.00 | $0.00 | | $931.79 | | $931.79 |
| Open | SLS | FCHRG1003115 | | 8/1/2013 | SLSTE00000444 | 0713FC | | Z-US$ | |
| 7/2/2013 | | FCHRG1003115 | | $0.00 | $0.00 | | $931.79 | | $931.79 |
| Open | SLS | LC001000 | | 8/18/2013 | SLSTE00000447 | 0713LF | | Z-US$ | |
| 7/19/2013 | | LC001000 | | $0.00 | $0.00 | | $277.21 | | $277.21 |
| Open | SLS | LG000263 | | 8/18/2013 | SLSTE00000446 | LEGAL | | Z-US$ | |
| 7/19/2013 | | LG000263 | | $0.00 | $0.00 | | $3,244.34 | | $3,244.34 |
| Open | SLS | FCHRG1003124 | | 9/5/2013 | SLSTE00000452 | 0813FC | | Z-US$ | |
| 8/6/2013 | | FCHRG1003124 | | $0.00 | $0.00 | | $931.79 | | $931.79 |
| Open | SLS | LG000269 | | 9/21/2013 | SLSTE00000454 | 0713LG | | Z-US$ | |
| 8/22/2013 | | LG000269 | | $0.00 | $0.00 | | $75.00 | | $75.00 |
| Open | SLS | QA0011391 | | 10/1/2013 | SLSTE00000455 | 4Q 13 | | Z-US$ | |
| 9/1/2013 | | QA0011391 | | $0.00 | $0.00 | | $5,544.12 | | $5,544.12 |

A.102

```
System:     5/17/2022   12:26:36 PM          Fisher Island Community Associ                    Page:   3
User Date: 5/17/2022                      TRANSACTION BY CUSTOMER INQUIRY REPORT            User ID: carola
                                              Receivables Management


Customer ID:  11213                  Elizabeth Hazan

* Voided

Origin   Type  Document Number     Check Number       Due Date    Audit Trail Code  Batch ID            Currency ID
------------------------------------------------------------------------------------------------------------------------
  Doc Date       Description              Discount Amount       Writeoff Amount        Document Amount     Amount Remaining
------------------------------------------------------------------------------------------------------------------------
Open     SLS   FCHRG1003135                            10/4/2013    SLSTE00000457   913FC               Z-US$
  9/4/2013       FCHRG1003135                 $0.00             $0.00            $1,014.95           $1,014.95

Open     SLS   LG000275                               10/12/2013   SLSTE00000462   09.13 LEGAL         Z-US$
  9/12/2013      LG000275                     $0.00             $0.00              $500.96             $500.96

Open     SLS   FCHRG1003151                           11/3/2013    SLSTE00000468   1013FC              Z-US$
  10/4/2013      FCHRG1003151                 $0.00             $0.00            $1,014.95           $1,014.95

Open     SLS   LC001049                               11/17/2013   SLSTE00000470   4QLC                Z-US$
  10/18/2013     LC001049                     $0.00             $0.00              $277.21             $277.21

Open     SLS   LG000281                               11/29/2013   SLSTE00000472   1013LG              Z-US$
  10/30/2013     LG000281                     $0.00             $0.00              $835.40             $835.40

Open     SLS   FCHRG1003170                           12/8/2013    SLSTE00000477   113FC               Z-US$
  11/8/2013      FCHRG1003170                 $0.00             $0.00            $1,098.11           $1,098.11

Open     SLS   LG000289                               12/30/2013   SLSTE00000487   1113LG              Z-US$
  11/30/2013     LG000289                     $0.00             $0.00              $552.00             $552.00

Open     SLS   LG000296                                1/1/2014    SLSTE00000489   1213LG              Z-US$
  12/2/2013      LG000296                     $0.00             $0.00            $3,039.33           $3,039.33

Open     SLS   QA0012069                               1/1/2014    SLSTE00000478   1 Q 14              Z-US$
  12/2/2013      QA0012069                    $0.00             $0.00            $5,956.05           $5,956.05

Open     SLS   FCHRG1003191                            1/3/2014    SLSTE00000486   1213FC              Z-US$
  12/4/2013      FCHRG1003191                 $0.00             $0.00            $1,098.11           $1,098.11

Open     SLS   FCHRG1003203                            2/9/2014    SLSTE00000497   0114FC              Z-US$
  1/10/2014      FCHRG1003203                 $0.00             $0.00            $1,179.25           $1,179.25

Open     SLS   LC001098                                2/15/2014   SLSTE00000498   1Q14LC              Z-US$
  1/16/2014      LC001098                     $0.00             $0.00              $297.80             $297.80

Open     SLS   LG000301                                2/28/2014   SLSTE00000499   0114LG              Z-US$
  1/29/2014      LG000301                     $0.00             $0.00              $510.00             $510.00

Open     SLS   FCHRG1003220                            3/8/2014    SLSTE00000500   0214FC              Z-US$
  2/6/2014       FCHRG1003220                 $0.00             $0.00            $1,268.59           $1,268.59

Open     SLS   LG000307                                3/30/2014   SLSTE00000513   02/14 LEG           Z-US$
  2/28/2014      LG000307                     $0.00             $0.00               $58.50              $58.50

Open     SLS   QA0012748                                4/1/2014   SLSTE00000508   2ND Q 14            Z-US$
  3/2/2014       QA0012748                    $0.00             $0.00            $5,956.05           $5,956.05

Open     SLS   FCHRG1003244                            4/5/2014    SLSTE00000514   03.14FC             Z-US$
  3/6/2014       FCHRG1003244                 $0.00             $0.00            $1,268.59           $1,268.59

Open     SLS   LG000311                                4/30/2014   SLSTE00000518   0314LEG             Z-US$
  3/31/2014      LG000311                     $0.00             $0.00              $141.00             $141.00

Open     SLS   FCHRG1003257                            5/3/2014    SLSTE00000517   0414FC              Z-US$
  4/3/2014       FCHRG1003257                 $0.00             $0.00            $1,268.59           $1,268.59
```

A.103

```
System:     5/17/2022  12:26:36 PM          Fisher Island Community Associ              Page:    4
User Date:  5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT         User ID: carola
                                              Receivables Management


Customer ID:  11213                   Elizabeth Hazan


* Voided


Origin   Type  Document Number    Check Number      Due Date    Audit Trail Code  Batch ID          Currency ID
-------------------------------------------------------------------------------------------------------------------
  Doc Date      Description          Discount Amount      Writeoff Amount     Document Amount    Amount Remaining
-------------------------------------------------------------------------------------------------------------------
Open     SLS  LC001153                                5/16/2014   SLSTE00000525   2Q14LC            Z-US$
  4/16/2014    LC001153                   $0.00                $0.00              $297.80              $297.80

Open     SLS  INV1009303                              5/30/2014   RMSLS00001526   414               Z-US$
  4/30/2014    04/14 LEGAL                $0.00                $0.00              $161.50              $161.50

Open     SLS  FCHRG1003265                            6/4/2014    SLSTE00000529   0514FC            Z-US$
  5/5/2014     FCHRG1003265               $0.00                $0.00            $1,268.59            $1,268.59

Open     SLS  INV1009361                              6/30/2014   RMSLS00001543   05.14             Z-US$
  5/31/2014    05/14 Legal                $0.00                $0.00              $112.00              $112.00

Open     SLS  QA0013422                               7/1/2014    SLSTE00000530   3Q14              Z-US$
  6/1/2014     QA0013422                   $0.00                $0.00            $5,956.05            $5,956.05

Open     SLS  FCHRG1003270                            7/6/2014    SLSTE00000532   0614FC            Z-US$
  6/6/2014     FCHRG1003270               $0.00                $0.00            $1,357.93            $1,357.93

Open     SLS  LG000313                                7/30/2014   SLSTE00000542   0614LG            Z-US$
  6/30/2014    LG000313                    $0.00                $0.00              $185.00              $185.00

Open     SLS  FCHRG1003276                            8/2/2014    SLSTE00000538   0714FC            Z-US$
  7/3/2014     FCHRG1003276               $0.00                $0.00            $1,357.93            $1,357.93

Open     SLS  LC001210                                8/16/2014   SLSTE00000543   0714LC            Z-US$
  7/17/2014    LC001210                    $0.00                $0.00              $297.80              $297.80

Open     SLS  FCHRG1003295                            9/5/2014    SLSTE00000549   814FC             Z-US$
  8/6/2014     FCHRG1003295               $0.00                $0.00            $1,447.27            $1,447.27

Open     SLS  QA0014089                               10/1/2014   SLSTE00000551   4Q 14             Z-US$
  9/1/2014     QA0014089                   $0.00                $0.00            $5,956.05            $5,956.05

Open     SLS  FCHRG1003317                            10/5/2014   SLSTE00000557   0914FC            Z-US$
  9/5/2014     FCHRG1003317               $0.00                $0.00            $1,447.27            $1,447.27

Open     SLS  LG000326                                10/30/2014  SLSTE00000561   0914LG            Z-US$
  9/30/2014    LG000326                    $0.00                $0.00              $243.00              $243.00

Open     SLS  FCHRG1003332                            11/1/2014   SLSTE00000560   1014FC            Z-US$
  10/2/2014    FCHRG1003332               $0.00                $0.00            $1,447.27            $1,447.27

Open     SLS  LC001256                                11/16/2014  SLSTE00000566   4Q14LC            Z-US$
  10/17/2014   LC001256                    $0.00                $0.00              $297.80              $297.80

Open     SLS  LG000332                                11/30/2014  SLSTE00000567   1014LG            Z-US$
  10/31/2014   LG000332                    $0.00                $0.00              $157.50              $157.50

Open     SLS  FCHRG1003338                            12/5/2014   SLSTE00000568   1114FC            Z-US$
  11/5/2014    FCHRG1003338               $0.00                $0.00            $1,447.27            $1,447.27

Open     SLS  LG000338                                12/30/2014  SLSTE00000576   11.14LG           Z-US$
  11/30/2014   LG000338                    $0.00                $0.00               $58.50               $58.50

Open     SLS  QA0014762                               1/1/2015    SLSTE00000573   1Q15              Z-US$
  12/2/2014    QA0014762                   $0.00                $0.00            $6,293.04            $6,293.04
```

A.104

```
System:     5/17/2022  12:26:36 PM          Fisher Island Community Associ              Page:   5
User Date:  5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT        User ID: carola
                                              Receivables Management
```

Customer ID:  11213                 Elizabeth Hazan

\* Voided

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|--------|------|-----------------|--------------|----------|------------------|----------|--|-------------|--|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | FCHRG1003347 | | 1/2/2015 | SLSTE00000575 | 12.14FC | | Z-US$ | |
| 12/3/2014 | | FCHRG1003347 | | $0.00 | $0.00 | | $1,536.66 | | $1,536.66 |
| Open | SLS | FCHRG1003363 | | 2/6/2015 | SLSTE00000582 | 0115FC | | Z-US$ | |
| 1/7/2015 | | FCHRG1003363 | | $0.00 | $0.00 | | $1,536.66 | | $1,536.66 |
| Open | SLS | LC001327 | | 2/15/2015 | SLSTE00000589 | 0115LC | | Z-US$ | |
| 1/16/2015 | | LC001327 | | $0.00 | $0.00 | | $314.65 | | $314.65 |
| Open | SLS | INV1010077 | | 3/2/2015 | RMSLS00001667 | 0115LG | | Z-US$ | |
| 1/31/2015 | | 01/15 LEGAL FEES | | $0.00 | $0.00 | | $112.00 | | $112.00 |
| Open | SLS | FCHRG1003383 | | 3/8/2015 | SLSTE00000590 | 0215FC | | Z-US$ | |
| 2/6/2015 | | FCHRG1003383 | | $0.00 | $0.00 | | $1,631.06 | | $1,631.06 |
| Open | SLS | QA0015431 | | 4/1/2015 | SLSTE00000598 | 2Q15 | | Z-US$ | |
| 3/2/2015 | | QA0015431 | | $0.00 | $0.00 | | $6,293.04 | | $6,293.04 |
| Open | SLS | FCHRG1003408 | | 4/4/2015 | SLSTE00000601 | 0315FC | | Z-US$ | |
| 3/5/2015 | | FCHRG1003408 | | $0.00 | $0.00 | | $1,631.06 | | $1,631.06 |
| Open | SLS | LG000348 | | 4/30/2015 | SLSTE00000613 | 0315LG | | Z-US$ | |
| 3/31/2015 | | LG000348 | | $0.00 | $0.00 | | $379.50 | | $379.50 |
| Open | SLS | FCHRG1003422 | | 5/2/2015 | SLSTE00000608 | 0415FC | | Z-US$ | |
| 4/2/2015 | | FCHRG1003422 | | $0.00 | $0.00 | | $1,631.06 | | $1,631.06 |
| Open | SLS | LC001393 | | 5/16/2015 | SLSTE00000615 | 2QLC | | Z-US$ | |
| 4/16/2015 | | LC001393 | | $0.00 | $0.00 | | $314.65 | | $314.65 |
| Open | SLS | FCHRG1003434 | | 6/4/2015 | SLSTE00000616 | 0515FC | | Z-US$ | |
| 5/5/2015 | | FCHRG1003434 | | $0.00 | $0.00 | | $1,631.06 | | $1,631.06 |
| Open | SLS | LG000353 | | 6/30/2015 | SLSTE00000624 | 0515LEG | | Z-US$ | |
| 5/31/2015 | | LG000353 | | $0.00 | $0.00 | | $901.00 | | $901.00 |
| Open | SLS | QA0016096 | | 7/1/2015 | SLSTE00000621 | 3Q 15 | | Z-US$ | |
| 6/1/2015 | | QA0016096 | | $0.00 | $0.00 | | $6,293.04 | | $6,293.04 |
| Open | SLS | FCHRG1003444 | | 7/4/2015 | SLSTE00000623 | 0615FC | | Z-US$ | |
| 6/4/2015 | | FCHRG1003444 | | $0.00 | $0.00 | | $1,725.46 | | $1,725.46 |
| Open | SLS | FCHRG1003456 | | 8/5/2015 | SLSTE00000630 | 0715FC | | Z-US$ | |
| 7/6/2015 | | FCHRG1003456 | | $0.00 | $0.00 | | $1,725.46 | | $1,725.46 |
| Open | SLS | LC001457 | | 8/15/2015 | SLSTE00000634 | 3Q15 | | Z-US$ | |
| 7/16/2015 | | LC001457 | | $0.00 | $0.00 | | $314.65 | | $314.65 |
| Open | SLS | LG000356 | | 8/30/2015 | SLSTE00000635 | 715LG | | Z-US$ | |
| 7/31/2015 | | LG000356 | | $0.00 | $0.00 | | $2,607.25 | | $2,607.25 |
| Open | SLS | FCHRG1003474 | | 9/5/2015 | SLSTE00000636 | 0815FC | | Z-US$ | |
| 8/6/2015 | | FCHRG1003474 | | $0.00 | $0.00 | | $1,819.86 | | $1,819.86 |
| Open | SLS | LG000360 | | 9/30/2015 | SLSTE00000648 | 815LG | | Z-US$ | |
| 8/31/2015 | | LG000360 | | $0.00 | $0.00 | | $243.50 | | $243.50 |

```
System:    5/17/2022  12:26:36 PM          Fisher Island Community Associ              Page:    6
User Date: 5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT         User ID: carola
                                              Receivables Management


Customer ID:  11213              Elizabeth Hazan


* Voided


Origin   Type  Document Number     Check Number        Due Date    Audit Trail Code  Batch ID              Currency ID
-----------------------------------------------------------------------------------------------------------------------
  Doc Date      Description              Discount Amount       Writeoff Amount         Document Amount     Amount Remaining
-----------------------------------------------------------------------------------------------------------------------
Open    SLS   QA0016762                               10/1/2015   SLSTE00000646     4Q15                  Z-US$
  9/1/2015      QA0016762                  $0.00                 $0.00                   $6,293.04            $6,293.04

Open    SLS   FCHRG1003495                            10/4/2015   SLSTE00000649     915FC                 Z-US$
  9/4/2015      FCHRG1003495               $0.00                 $0.00                   $1,819.86            $1,819.86

Open    SLS   LG000367                                10/30/2015  SLSTE00000653     915LG                 Z-US$
  9/30/2015     LG000367                   $0.00                 $0.00                     $272.50              $272.50

Open    SLS   FCHRG1003510                            11/8/2015   SLSTE00000654     1015FC                Z-US$
  10/9/2015     FCHRG1003510               $0.00                 $0.00                   $1,819.86            $1,819.86

Open    SLS   LC001521                                11/19/2015  SLSTE00000658     4Q15LC                Z-US$
  10/20/2015    LC001521                   $0.00                 $0.00                     $314.65              $314.65

Open    SLS   LG000373                                11/30/2015  SLSTE00000663     1015LG                Z-US$
  10/31/2015    LG000373                   $0.00                 $0.00                     $272.19              $272.19

Open    SLS   FCHRG1003534                            12/6/2015   SLSTE00000662     1115FC                Z-US$
  11/6/2015     FCHRG1003534               $0.00                 $0.00                   $1,914.26            $1,914.26

Open    SLS   LG000379                                12/30/2015  SLSTE00000667     1115LG                Z-US$
  11/30/2015    LG000379                   $0.00                 $0.00                   $3,613.48            $3,613.48

Open    SLS   QA0017428                                1/1/2016   SLSTE00000665     1Q 16                 Z-US$
  12/2/2015     QA0017428                  $0.00                 $0.00                   $6,607.73            $6,607.73

Open    SLS   FCHRG1003570                             1/8/2016   SLSTE00000670     1215FC                Z-US$
  12/9/2015     FCHRG1003570               $0.00                 $0.00                   $1,914.26            $1,914.26

Open    SLS   LG000384                                 1/30/2016  SLSTE00000683     1215LG                Z-US$
  12/31/2015    LG000384                   $0.00                 $0.00                     $685.50              $685.50

Open    SLS   FCHRG1003589                             2/7/2016   SLSTE00000682     0116FC                Z-US$
  1/8/2016      FCHRG1003589               $0.00                 $0.00                   $1,914.26            $1,914.26

Open    SLS   LC001590                                 2/17/2016  SLSTE00000684     1Q16 LC               Z-US$
  1/18/2016     LC001590                   $0.00                 $0.00                     $330.39              $330.39

Open    SLS   LG000390                                 3/1/2016   SLSTE00000690     01.16LG               Z-US$
  1/31/2016     LG000390                   $0.00                 $0.00                   $2,382.50            $2,382.50

Open    SLS   FCHRG1003609                             3/6/2016   SLSTE00000686     0216FC                Z-US$
  2/5/2016      FCHRG1003609               $0.00                 $0.00                   $2,013.38            $2,013.38

Open    SLS   LG000396                                 3/30/2016  SLSTE00000701     02.16LG               Z-US$
  2/29/2016     LG000396                   $0.00                 $0.00                   $2,348.95            $2,348.95

Open    SLS   QA0018760                                 4/1/2016  SLSTE00000692     2Q16-1                Z-US$
  3/2/2016      QA0018760                  $0.00                 $0.00                   $6,545.48            $6,545.48

Open    SLS   FCHRG1003643                             4/3/2016   SLSTE00000696     03.16FC               Z-US$
  3/4/2016      FCHRG1003643               $0.00                 $0.00                   $2,013.38            $2,013.38

Open    SLS   LG000401                                 4/30/2016  SLSTE00000708     3.16LG                Z-US$
  3/31/2016     LG000401                   $0.00                 $0.00                     $497.50              $497.50
```

A.106

```
System:    5/17/2022  12:26:36 PM          Fisher Island Community Associ               Page:    7
User Date: 5/17/2022                   TRANSACTION BY CUSTOMER INQUIRY REPORT           User ID: carola
                                            Receivables Management


Customer ID:  11213                 Elizabeth Hazan

* Voided


Origin    Type  Document Number     Check Number      Due Date    Audit Trail Code  Batch ID            Currency ID
--------------------------------------------------------------------------------------------------------------------
 Doc Date        Description                 Discount Amount      Writeoff Amount        Document Amount     Amount Remaining
--------------------------------------------------------------------------------------------------------------------
Open    SLS  FCHRG1003665                          5/5/2016    SLSTE00000702   04.16FC             Z-US$
 4/5/2016       FCHRG1003665                   $0.00              $0.00             $2,013.38            $2,013.38

Open    SLS  LC001638                            5/18/2016    SLSTE00000709   2Q16LC              Z-US$
 4/18/2016      LC001638                       $0.00              $0.00               $327.27              $327.27

Open    SLS  FCHRG1003686                          6/3/2016    SLSTE00000715   5.16FC              Z-US$
 5/4/2016       FCHRG1003686                   $0.00              $0.00             $2,111.56            $2,111.56

Open    SLS  LG000406                            6/30/2016    SLSTE00000726   05.16LG             Z-US$
 5/31/2016      LG000406                       $0.00              $0.00                $78.50               $78.50

Open    SLS  QA0019424                            7/1/2016    SLSTE00000717   3Q 16               Z-US$
 6/1/2016       QA0019424                      $0.00              $0.00             $6,545.48            $6,545.48

Open    SLS  FCHRG1003718                          7/3/2016    SLSTE00000725   06.16FC             Z-US$
 6/3/2016       FCHRG1003718                   $0.00              $0.00             $2,111.56            $2,111.56

Open    SLS  LG000408                            7/30/2016    SLSTE00000732   06.16LG             Z-US$
 6/30/2016      LG000408                       $0.00              $0.00                $19.50               $19.50

Open    SLS  FCHRG1003731                         8/11/2016    SLSTE00000733   07.16FC             Z-US$
 7/12/2016      FCHRG1003731                   $0.00              $0.00             $2,111.56            $2,111.56

Open    SLS  LC001695                            8/14/2016    SLSTE00000734   3QLC                Z-US$
 7/15/2016      LC001695                       $0.00              $0.00               $327.27              $327.27

Open    SLS  LG000412                            8/30/2016    SLSTE00000744   07.16LG             Z-US$
 7/31/2016      LG000412                       $0.00              $0.00               $419.00              $419.00

Open    SLS  FCHRG1003747                          9/3/2016    SLSTE00000741   08.16FC             Z-US$
 8/4/2016       FCHRG1003747                   $0.00              $0.00             $2,209.74            $2,209.74

Open    SLS  LG000417                            9/30/2016    SLSTE00000752   816LEG              Z-US$
 8/31/2016      LG000417                       $0.00              $0.00               $614.50              $614.50

Open    SLS  QA0020109                           10/1/2016    SLSTE00000746   4Q16                Z-US$
 9/1/2016       QA0020109                      $0.00              $0.00             $6,545.48            $6,545.48

Open    SLS  FCHRG1003772                         10/6/2016    SLSTE00000748   09.16FC             Z-US$
 9/6/2016       FCHRG1003772                   $0.00              $0.00             $2,209.74            $2,209.74

Open    SLS  LG000422                           10/30/2016    SLSTE00000759   9.16LG              Z-US$
 9/30/2016      LG000422                       $0.00              $0.00               $429.00              $429.00

Open    SLS  FCHRG1003787                         11/4/2016    SLSTE00000757   10.16FC             Z-US$
 10/5/2016      FCHRG1003787                   $0.00              $0.00             $2,209.74            $2,209.74

Open    SLS  LC001749                           11/17/2016    SLSTE00000760   10.16LC             Z-US$
 10/18/2016     LC001749                       $0.00              $0.00               $327.27              $327.27

Open    SLS  LG000428                           11/30/2016    SLSTE00000762   10.16LG             Z-US$
 10/31/2016     LG000428                       $0.00              $0.00               $175.00              $175.00

Open    SLS  FCHRG1003805                         12/2/2016    SLSTE00000763   11.16FC             Z-US$
 11/2/2016      FCHRG1003805                   $0.00              $0.00             $2,307.92            $2,307.92
```

A.107

```
System:    5/17/2022  12:26:36 PM          Fisher Island Community Associ              Page:    8
User Date: 5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT        User ID: carola
                                               Receivables Management


Customer ID:  11213                  Elizabeth Hazan


* Voided


Origin   Type  Document Number   Check Number      Due Date    Audit Trail Code  Batch ID          Currency ID
------------------------------------------------------------------------------------------------------------------
  Doc Date        Description              Discount Amount     Writeoff Amount     Document Amount    Amount Remaining
------------------------------------------------------------------------------------------------------------------
Open     SLS   LG000431                         12/30/2016   SLSTE00000771   11.16LG           Z-US$
  11/30/2016     LG000431                         $0.00               $0.00            $68.00             $68.00

Open     SLS   QA0020794                         1/1/2017    SLSTE00000768   1ST Q 17          Z-US$
  12/2/2016      QA0020794                        $0.00               $0.00          $6,729.76          $6,729.76

Open     SLS   FCHRG1003833                      1/4/2017    SLSTE00000770   12.16FC           Z-US$
  12/5/2016      FCHRG1003833                     $0.00               $0.00          $2,307.92          $2,307.92

Open     SLS   LG000436                          1/29/2017   SLSTE00000785   12.16LG           Z-US$
  12/30/2016     LG000436                         $0.00               $0.00           $302.50            $302.50

Open     SLS   FCHRG1003849                      2/3/2017    SLSTE00000784   01.17FC           Z-US$
  1/4/2017       FCHRG1003849                     $0.00               $0.00          $2,307.92          $2,307.92

Open     SLS   LC001811                          2/16/2017   SLSTE00000787   01.17LC           Z-US$
  1/17/2017      LC001811                         $0.00               $0.00           $336.49            $336.49

Open     SLS   LG000439                          3/2/2017    SLSTE00000793   01.17LG           Z-US$
  1/31/2017      LG000439                         $0.00               $0.00           $174.50            $174.50

Open     SLS   FCHRG1003869                      3/11/2017   SLSTE00000794   02.17FC           Z-US$
  2/9/2017       FCHRG1003869                     $0.00               $0.00          $2,408.87          $2,408.87

Open     SLS   LG000443                          3/30/2017   SLSTE00000801   2.17LG            Z-US$
  2/28/2017      LG000443                         $0.00               $0.00           $536.00            $536.00

Open     SLS   QA0021480                         4/1/2017    SLSTE00000795   2 Q 17            Z-US$
  3/2/2017       QA0021480                        $0.00               $0.00          $6,729.76          $6,729.76

Open     SLS   FCHRG1003906                      4/2/2017    SLSTE00000798   03.17FC           Z-US$
  3/3/2017       FCHRG1003906                     $0.00               $0.00          $2,408.87          $2,408.87

Open     SLS   LG000445                          4/30/2017   SLSTE00000807   03.17LG           Z-US$
  3/31/2017      LG000445                         $0.00               $0.00           $195.00            $195.00

Open     SLS   FCHRG1003927                      5/6/2017    SLSTE00000806   04.17FC           Z-US$
  4/6/2017       FCHRG1003927                     $0.00               $0.00          $2,408.87          $2,408.87

Open     SLS   LC001880                          5/18/2017   SLSTE00000810   2QLC              Z-US$
  4/18/2017      LC001880                         $0.00               $0.00           $336.49            $336.49

Open     SLS   LG000449                          5/30/2017   SLSTE00000816   4.17LG            Z-US$
  4/30/2017      LG000449                         $0.00               $0.00            $39.00             $39.00

Open     SLS   FCHRG1003938                      6/2/2017    SLSTE00000815   5.17FC            Z-US$
  5/3/2017       FCHRG1003938                     $0.00               $0.00          $2,408.87          $2,408.87

Open     SLS   LG000453                          6/30/2017   SLSTE00000823   5.17LG            Z-US$
  5/31/2017      LG000453                         $0.00               $0.00            $29.00             $29.00

Open     SLS   QA0022167                         7/1/2017    SLSTE00000817   3Q17              Z-US$
  6/1/2017       QA0022167                        $0.00               $0.00          $6,729.76          $6,729.76

Open     SLS   FCHRG1003955                      7/2/2017    SLSTE00000821   6.17FC            Z-US$
  6/2/2017       FCHRG1003955                     $0.00               $0.00          $2,509.87          $2,509.87
```

A.108

```
System:      5/17/2022   12:26:36 PM              Fisher Island Community Associ                        Page:   9
User Date:  5/17/2022                         TRANSACTION BY CUSTOMER INQUIRY REPORT                  User ID: carola
                                                    Receivables Management


Customer ID:  11213                   Elizabeth Hazan


* Voided


Origin   Type  Document Number    Check Number        Due Date    Audit Trail Code  Batch ID              Currency ID
-------------------------------------------------------------------------------------------------------------------------
  Doc Date       Description                  Discount Amount      Writeoff Amount       Document Amount     Amount Remaining
-------------------------------------------------------------------------------------------------------------------------
Open     SLS   LG000457                               7/30/2017    SLSTE00000827     6/17 LG               Z-US$
  6/30/2017      LG000457                      $0.00                $0.00                 $295.50              $295.50

Open     SLS   FCHRG1003979                           8/6/2017     SLSTE00000831     7.17FC                Z-US$
  7/7/2017       FCHRG1003979                  $0.00                $0.00               $2,509.82            $2,509.82

Open     SLS   LC001940                               8/17/2017    SLSTE00000834     3Q17 LC               Z-US$
  7/18/2017      LC001940                      $0.00                $0.00                 $336.49              $336.49

Open     SLS   LG000461                               8/30/2017    SLSTE00000839     7.17LG                Z-US$
  7/31/2017      LG000461                      $0.00                $0.00               $1,348.50            $1,348.50

Open     SLS   FCHRG1004002                           9/3/2017     SLSTE00000838     8.17FC                Z-US$
  8/4/2017       FCHRG1004002                  $0.00                $0.00               $2,610.77            $2,610.77

Open     SLS   QA0022855                              10/1/2017    SLSTE00000840     4Q17                  Z-US$
  9/1/2017       QA0022855                     $0.00                $0.00               $6,729.76            $6,729.76

Open     SLS   FCHRG1004034                           10/5/2017    SLSTE00000843     9..17FC               Z-US$
  9/5/2017       FCHRG1004034                  $0.00                $0.00               $2,610.77            $2,610.77

Open     SLS   LG000467                               10/30/2017   SLSTE00000853     9.17LG                Z-US$
  9/30/2017      LG000467                      $0.00                $0.00                 $427.00              $427.00

Open     SLS   FCHRG1004048                           11/4/2017    SLSTE00000852     10.17FC               Z-US$
  10/5/2017      FCHRG1004048                  $0.00                $0.00               $2,610.77            $2,610.77

Open     SLS   LC002007                               11/15/2017   SLSTE00000854     4QLC                  Z-US$
  10/16/2017     LC002007                      $0.00                $0.00                 $336.49              $336.49

Open     SLS   FCHRG1004063                           12/3/2017    SLSTE00000860     11.17FC               Z-US$
  11/3/2017      FCHRG1004063                  $0.00                $0.00               $2,711.72            $2,711.72

Open     SLS   LG000475                               12/30/2017   SLSTE00000865     11.17LG               Z-US$
  11/30/2017     LG000475                      $0.00                $0.00                 $887.00              $887.00

Open     SLS   QA0023545                               1/1/2018    SLSTE00000861     1ST Q 18              Z-US$
  12/2/2017      QA0023545                     $0.00                $0.00               $6,729.76            $6,729.76

Open     SLS   FCHRG1004094                            1/6/2018    SLSTE00000864     12.17FC               Z-US$
  12/7/2017      FCHRG1004094                  $0.00                $0.00               $2,711.72            $2,711.72

Open     SLS   LG000481                                1/30/2018   SLSTE00000875     12.17LG               Z-US$
  12/31/2017     LG000481                      $0.00                $0.00                 $498.50              $498.50

Open     SLS   FCHRG1004118                            2/4/2018    SLSTE00000871     01.18FC               Z-US$
  1/5/2018       FCHRG1004118                  $0.00                $0.00               $2,711.72            $2,711.72

Open     SLS   LC002083                                2/17/2018   SLSTE00000874     0118LC                Z-US$
  1/18/2018      LC002083                      $0.00                $0.00                 $336.49              $336.49

Open     SLS   FCHRG1004151                            3/7/2018    SLSTE00000877     2.18 FC               Z-US$
  2/5/2018       FCHRG1004151                  $0.00                $0.00               $2,812.67            $2,812.67

Open     SLS   LG000492                                3/30/2018   SLSTE00000886     1.18LG                Z-US$
  2/28/2018      LG000492                      $0.00                $0.00               $4,533.00            $4,533.00
```

A.109

```
System:     5/17/2022  12:26:36 PM            Fisher Island Community Associ                    Page:   10
User Date:  5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                              Receivables Management
```

Customer ID:  11213                    Elizabeth Hazan

* Voided

| Origin | Type | Document Number | Check Number | Due Date | Audit Trail Code | Batch ID | | Currency ID | |
|--------|------|-----------------|--------------|----------|------------------|----------|---|-------------|---|
| Doc Date | | Description | | Discount Amount | Writeoff Amount | | Document Amount | | Amount Remaining |
| Open | SLS | QA0024229 | | 4/1/2018 | SLSTE00000880 | 2Q18 | | Z-US$ | |
| 3/2/2018 | | QA0024229 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | FCHRG1004194 | | 4/4/2018 | SLSTE00000882 | 3.18FC | | Z-US$ | |
| 3/5/2018 | | FCHRG1004194 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| Open | SLS | LG000498 | | 4/30/2018 | SLSTE00000890 | 3.18LG | | Z-US$ | |
| 3/31/2018 | | LG000498 | | $0.00 | $0.00 | | $1,364.50 | | $1,364.50 |
| Open | SLS | FCHRG1004222 | | 5/5/2018 | SLSTE00000889 | 4.18FC | | Z-US$ | |
| 4/5/2018 | | FCHRG1004222 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| Open | SLS | LC002151 | | 5/17/2018 | SLSTE00000892 | 2Q18LC | | Z-US$ | |
| 4/17/2018 | | LC002151 | | $0.00 | $0.00 | | $336.49 | | $336.49 |
| Open | SLS | LG000504 | | 5/30/2018 | SLSTE00000898 | 4.18LG | | Z-US$ | |
| 4/30/2018 | | LG000504 | | $0.00 | $0.00 | | $625.00 | | $625.00 |
| Open | SLS | FCHRG1004234 | | 6/3/2018 | SLSTE00000900 | 5.18FC | | Z-US$ | |
| 5/4/2018 | | FCHRG1004234 | | $0.00 | $0.00 | | $2,812.67 | | $2,812.67 |
| Open | SLS | LG000508 | | 6/30/2018 | SLSTE00000906 | 5.18LG | | Z-US$ | |
| 5/31/2018 | | LG000508 | | $0.00 | $0.00 | | $50.00 | | $50.00 |
| Open | SLS | QA0024916 | | 7/1/2018 | SLSTE00000901 | 3Q18 | | Z-US$ | |
| 6/1/2018 | | QA0024916 | | $0.00 | $0.00 | | $6,729.76 | | $6,729.76 |
| Open | SLS | FCHRG1004255 | | 7/6/2018 | SLSTE00000904 | 6.18FC | | Z-US$ | |
| 6/6/2018 | | FCHRG1004255 | | $0.00 | $0.00 | | $2,913.62 | | $2,913.62 |
| Open | SLS | FCHRG1004293 | | 8/4/2018 | SLSTE00000910 | 7.18FC | | Z-US$ | |
| 7/5/2018 | | FCHRG1004293 | | $0.00 | $0.00 | | $2,913.62 | | $2,913.62 |
| Open | SLS | FCHRG1004322 | | 9/6/2018 | SLSTE00000917 | 8.18FC | | Z-US$ | |
| 8/7/2018 | | FCHRG1004322 | | $0.00 | $0.00 | | $3,014.57 | | $3,014.57 |
| Open | SLS | LG000514 | | 9/30/2018 | SLSTE00000923 | 8.18LF | | Z-US$ | |
| 8/31/2018 | | LG000514 | | $0.00 | $0.00 | | $4,421.28 | | $4,421.28 |
| Open | SLS | FCHRG1004347 | | 10/6/2018 | SLSTE00000921 | 9.18FC | | Z-US$ | |
| 9/6/2018 | | FCHRG1004347 | | $0.00 | $0.00 | | $3,014.57 | | $3,014.57 |
| Open | SLS | LG000517 | | 10/30/2018 | SLSTE00000929 | 9.18LG | | Z-US$ | |
| 9/30/2018 | | LG000517 | | $0.00 | $0.00 | | $2,363.50 | | $2,363.50 |
| Open | SLS | QA0025541 | | 11/1/2018 | SLSTE00000924 | 4Q18 | | Z-US$ | |
| 10/2/2018 | | QA0025541 | | $0.00 | $0.00 | | $8,407.95 | | $8,407.95 |
| Open | SLS | FCHRG1004369 | | 11/3/2018 | SLSTE00000927 | 10.18FC | | Z-US$ | |
| 10/4/2018 | | FCHRG1004369 | | $0.00 | $0.00 | | $3,014.57 | | $3,014.57 |
| Open | SLS | FCHRG1004386 | | 12/2/2018 | SLSTE00000931 | 11.18FC | | Z-US$ | |
| 11/2/2018 | | FCHRG1004386 | | $0.00 | $0.00 | | $3,014.57 | | $3,014.57 |
| Open | SLS | LC002275 | | 12/16/2018 | SLSTE00000937 | 4QLC | | Z-US$ | |
| 11/16/2018 | | LC002275 | | $0.00 | $0.00 | | $420.40 | | $420.40 |

A.110

```
System:     5/17/2022  12:26:36 PM        Fisher Island Community Associ                    Page:    11
User Date: 5/17/2022                    TRANSACTION BY CUSTOMER INQUIRY REPORT            User ID: carola
                                              Receivables Management


Customer ID:  11213                 Elizabeth Hazan


* Voided


Origin   Type  Document Number    Check Number       Due Date   Audit Trail Code  Batch ID            Currency ID
------------------------------------------------------------------------------------------------------------------
  Doc Date      Description            Discount Amount      Writeoff Amount      Document Amount      Amount Remaining
------------------------------------------------------------------------------------------------------------------
Open    SLS   LG000525                             12/30/2018   SLSTE00000945   11.18LG           Z-US$
 11/30/2018   LG000525                     $0.00              $0.00                 $2,554.00              $2,554.00

Open    SLS   QA0026343                             1/1/2019    SLSTE00000939   1Q19QA            Z-US$
 12/2/2018    QA0026343                    $0.00              $0.00                 $8,407.95              $8,407.95

Open    SLS   FCHRG1004411                          1/5/2019    SLSTE00000944   12.18FC           Z-US$
 12/6/2018    FCHRG1004411                 $0.00              $0.00                 $3,140.69              $3,140.69

Open    SLS   LG000531                              1/30/2019   SLSTE00000954   12.18 LG          Z-US$
 12/31/2018   LG000531                     $0.00              $0.00                   $679.00                $679.00

Open    SLS   FCHRG1004456                          2/3/2019    SLSTE00000948   1.19FC            Z-US$
 1/4/2019     FCHRG1004456                 $0.00              $0.00                 $3,140.69              $3,140.69

Open    SLS   LC002342                              2/15/2019   SLSTE00000955   1Q19 LC           Z-US$
 1/16/2019    LC002342                     $0.00              $0.00                   $420.40                $420.40

Open    SLS   FCHRG1004487                          3/8/2019    SLSTE00000956   2.19FC            Z-US$
 2/6/2019     FCHRG1004487                 $0.00              $0.00                 $3,266.81              $3,266.81

Open    SLS   LG000533                              3/30/2019   SLSTE00000969   2.19LG            Z-US$
 2/28/2019    LG000533                     $0.00              $0.00                 $1,936.50              $1,936.50

Open    SLS   QA0026909                             4/1/2019    SLSTE00000964   2NDQ19 QA         Z-US$
 3/2/2019     QA0026909                    $0.00              $0.00                 $8,541.79              $8,541.79

Open    SLS   FCHRG1004539                          4/3/2019    SLSTE00000967   3.19FC            Z-US$
 3/4/2019     FCHRG1004539                 $0.00              $0.00                 $3,266.81              $3,266.81

Open    SLS   LG000537                              4/30/2019   SLSTE00000979   3.19LG            Z-US$
 3/31/2019    LG000537                     $0.00              $0.00                 $4,966.50              $4,966.50

Open    SLS   FCHRG1004578                          5/5/2019    SLSTE00000976   4.19FC            Z-US$
 4/5/2019     FCHRG1004578                 $0.00              $0.00                 $3,266.81              $3,266.81

Open    SLS   LC002428                              5/17/2019   SLSTE00000980   2QLC              Z-US$
 4/17/2019    LC002428                     $0.00              $0.00                   $427.09                $427.09

Open    SLS   LG000543                              5/30/2019   SLSTE00000981   4.19LG            Z-US$
 4/30/2019    LG000543                     $0.00              $0.00                   $440.00                $440.00

Open    SLS   FCHRG1004603                          6/7/2019    SLSTE00000984   5.19FC            Z-US$
 5/8/2019     FCHRG1004603                 $0.00              $0.00                 $3,266.81              $3,266.81

Open    SLS   LG000548                              6/30/2019   SLSTE00000993   5.19LG            Z-US$
 5/31/2019    LG000548                     $0.00              $0.00                   $733.50                $733.50

Open    SLS   QA0027594                             7/1/2019    SLSTE00000986   3Q19OA            Z-US$
 6/1/2019     QA0027594                    $0.00              $0.00                 $8,541.79              $8,541.79

Open    SLS   FCHRG1004618                          7/5/2019    SLSTE00000989   6.19FC            Z-US$
 6/5/2019     FCHRG1004618                 $0.00              $0.00                 $3,394.94              $3,394.94

Open    SLS   LG000552                              7/30/2019   SLSTE00000998   6.19LG            Z-US$
 6/30/2019    LG000552                     $0.00              $0.00                   $753.00                $753.00
```

A.111

```
System:     5/17/2022  12:26:36 PM              Fisher Island Community Associ                    Page:   12
User Date:  5/17/2022                        TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                                   Receivables Management


Customer ID:  11213                  Elizabeth Hazan


* Voided


Origin    Type  Document Number      Check Number        Due Date     Audit Trail Code  Batch ID              Currency ID
-----------------------------------------------------------------------------------------------------------------------
  Doc Date      Description                    Discount Amount       Writeoff Amount      Document Amount    Amount Remaining
-----------------------------------------------------------------------------------------------------------------------
Open    SLS    FCHRG1004686                             8/4/2019     SLSTE00001002    7.19FC                Z-US$
  7/5/2019     FCHRG1004686                    $0.00                $0.00               $3,394.94            $3,394.94

Open    SLS    LG000559                                8/30/2019     SLSTE00001005    7.19LG                Z-US$
  7/31/2019    LG000559                        $0.00                $0.00               $9,043.85            $9,043.85

Open    SLS    FCHRG1004724                             9/1/2019     SLSTE00001009    8.19FC                Z-US$
  8/2/2019     FCHRG1004724                    $0.00                $0.00               $3,523.07            $3,523.07

Open    SLS    LG000565                                9/30/2019     SLSTE00001015    8.19 M                Z-US$
  8/31/2019    LG000565                        $0.00                $0.00                 $144.07              $144.07

Open    SLS    QA0028416                               10/1/2019     SLSTE00001011    4Q19OA                Z-US$
  9/1/2019     QA0028416                       $0.00                $0.00               $8,541.79            $8,541.79

Open    SLS    FCHRG1004766                            10/6/2019     SLSTE00001016    9.19FC                Z-US$
  9/6/2019     FCHRG1004766                    $0.00                $0.00               $3,523.07            $3,523.07

Open    SLS    LG000574                               10/30/2019     SLSTE00001017    9.19MGC               Z-US$
  9/30/2019    LG000574                        $0.00                $0.00               $2,227.50            $2,227.50

Open    SLS    FCHRG1004795                           11/1/2019      SLSTE00001018    10.19FC               Z-US$
  10/2/2019    FCHRG1004795                    $0.00                $0.00               $3,523.07            $3,523.07

Open    SLS    LC002579                               11/16/2019     SLSTE00001022    4QLC                  Z-US$
  10/17/2019   LC002579                        $0.00                $0.00                 $427.09              $427.09

Open    SLS    LG000581                               11/30/2019     SLSTE00001023    10.19LG               Z-US$
  10/31/2019   LG000581                        $0.00                $0.00                  $20.00               $20.00

Open    SLS    FCHRG1004821                           12/13/2019     SLSTE00001027    11.19FC               Z-US$
  11/13/2019   FCHRG1004821                    $0.00                $0.00               $3,651.80            $3,651.80

Open    SLS    LG000593                               12/30/2019     SLSTE00001032    11.19LG               Z-US$
  11/30/2019   LG000593                        $0.00                $0.00                 $119.00              $119.00

Open    SLS    QA0029114                                1/1/2020     SLSTE00001030    1 Q 2020              Z-US$
  12/2/2019    QA0029114                       $0.00                $0.00               $8,985.65            $8,985.65

Open    SLS    FCHRG1004855                            1/3/2020      SLSTE00001033    12.19FC               Z-US$
  12/4/2019    FCHRG1004855                    $0.00                $0.00               $3,651.80            $3,651.80

Open    SLS    LG000600                                1/30/2020     SLSTE00001050    12.19LG               Z-US$
  12/31/2019   LG000600                        $0.00                $0.00                  $73.50               $73.50

Open    SLS    FCHRG1004871                            2/6/2020      SLSTE00001049    1.20LG                Z-US$
  1/7/2020     FCHRG1004871                    $0.00                $0.00               $3,651.80            $3,651.80

Open    SLS    INV1016194                              2/6/2020      RMSLS00002618    CLEAR                 Z-US$
  1/7/2020     Clearance 12/31/19              $0.00                $0.00                  $50.00                $0.00

Open    PMT    PMT1042376                                           RMCSH00004739    CLEAR.1               Z-US$
  1/7/2020                                     $0.00                $0.00                 ($50.00)               $0.00

Open    SLS    LC002677                               2/14/2020      SLSTE00001051    1Q20LC                Z-US$
  1/15/2020    LC002677                        $0.00                $0.00                 $449.28              $449.28
```

A.112

```
System:      5/17/2022   12:26:36 PM           Fisher Island Community Associ              Page:    13
User Date:  5/17/2022                      TRANSACTION BY CUSTOMER INQUIRY REPORT          User ID: carola
                                                 Receivables Management
```

Customer ID:  11213                  Elizabeth Hazan

\* Voided

```
Origin    Type  Document Number    Check Number        Due Date   Audit Trail Code  Batch ID          Currency ID
-----------------------------------------------------------------------------------------------------------------
   Doc Date       Description              Discount Amount    Writeoff Amount     Document Amount    Amount Remaining
-----------------------------------------------------------------------------------------------------------------
Open      SLS   INV1016248                                  2/29/2020  RMSLS00002642    0130              Z-US$
  1/30/2020     Clearance Fee                     $0.00              $0.00              $50.00               $0.00

Open      PMT   PMT1042560                                             RMCSH00004770    CASH              Z-US$
  1/30/2020                                       $0.00              $0.00             ($50.00)              $0.00

Open      SLS   LG000606                                    3/1/2020   SLSTE00001056    1.20LG            Z-US$
  1/31/2020     LG000606                          $0.00              $0.00             $100.00             $100.00

Open      SLS   FCHRG1004894                                3/5/2020   SLSTE00001055    2.20FC            Z-US$
  2/4/2020      FCHRG1004894                      $0.00              $0.00           $3,786.58           $3,786.58

Open      SLS   LG000614                                    3/30/2020  SLSTE00001067    220LG             Z-US$
  2/29/2020     LG000614                          $0.00              $0.00             $830.55             $830.55

Open      SLS   QA0029810                                   4/1/2020   SLSTE00001062    2NQ 20 OA         Z-US$
  3/2/2020      QA0029810                         $0.00              $0.00           $8,985.65           $8,985.65

Open      SLS   FCHRG1004935                                4/5/2020   SLSTE00001068    3.20FC            Z-US$
  3/6/2020      FCHRG1004935                      $0.00              $0.00           $3,786.58           $3,786.58

Open      SLS   LG000628                                    4/30/2020  SLSTE00001075    320LG             Z-US$
  3/31/2020     LG000628                          $0.00              $0.00             $570.00             $570.00

Open      SLS   LG000621                                    5/1/2020   SLSTE00001073    4.20LG            Z-US$
  4/1/2020      LG000621                          $0.00              $0.00             $150.50             $150.50

Open      SLS   FCHRG1004967                                5/8/2020   SLSTE00001072    4.20FC            Z-US$
  4/8/2020      FCHRG1004967                      $0.00              $0.00           $3,786.58           $3,786.58

Open      SLS   LC002761                                    5/21/2020  SLSTE00001074    2QLC              Z-US$
  4/21/2020     LC002761                          $0.00              $0.00             $449.28             $449.28

Open      SLS   LG000634                                    5/31/2020  SLSTE00001080    5.20LG            Z-US$
  5/1/2020      LG000634                          $0.00              $0.00              $34.00              $34.00

Open      SLS   FCHRG1004996                                6/5/2020   SLSTE00001076    5.20FC            Z-US$
  5/6/2020      FCHRG1004996                      $0.00              $0.00           $3,786.58           $3,786.58

Open      SLS   QA0030372                                   7/1/2020   SLSTE00001081    3Q 20             Z-US$
  6/1/2020      QA0030372                         $0.00              $0.00           $8,985.65           $8,985.65

Open      SLS   FCHRG1005028                                7/4/2020   SLSTE00001086    6.20 FC           Z-US$
  6/4/2020      FCHRG1005028                      $0.00              $0.00           $3,921.36           $3,921.36

Open      SLS   LG000640                                    7/30/2020  SLSTE00001087    6.20LG            Z-US$
  6/30/2020     LG000640                          $0.00              $0.00              $68.00              $68.00

Open      SLS   FCHRG1005064                                8/1/2020   SLSTE00001088    7.20FC            Z-US$
  7/2/2020      FCHRG1005064                      $0.00              $0.00           $3,921.36           $3,921.36

Open      SLS   LC002852                                    8/16/2020  SLSTE00001092    3QLC              Z-US$
  7/17/2020     LC002852                          $0.00              $0.00             $449.28             $449.28

Open      SLS   LG000647                                    8/30/2020  SLSTE00001093    7.20LG            Z-US$
  7/31/2020     LG000647                          $0.00              $0.00             $719.50             $719.50
```

A.113

```
System:    5/17/2022  12:26:36 PM          Fisher Island Community Associ                    Page:   14
User Date: 5/17/2022                   TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                              Receivables Management


Customer ID:  11213              Elizabeth Hazan


* Voided


Origin   Type  Document Number   Check Number       Due Date    Audit Trail Code  Batch ID          Currency ID
----------------------------------------------------------------------------------------------------------------
  Doc Date       Description             Discount Amount      Writeoff Amount        Document Amount   Amount Remaining
----------------------------------------------------------------------------------------------------------------
Open     SLS   FCHRG1005099                          9/4/2020    SLSTE00001096    8.20FC            Z-US$
  8/5/2020      FCHRG1005099                  $0.00              $0.00              $4,056.14         $4,056.14

Open     SLS   LG000653                             9/30/2020    SLSTE00001105    8.20LG            Z-US$
  8/31/2020     LG000653                      $0.00              $0.00                 $68.00            $68.00

Open     SLS   QA0031068                            10/1/2020    SLSTE00001098    4Q20 OA           Z-US$
  9/1/2020      QA0031068                     $0.00              $0.00              $8,985.65         $8,985.65

Open     SLS   FCHRG1005154                         10/4/2020    SLSTE00001104    9.20FC            Z-US$
  9/4/2020      FCHRG1005154                  $0.00              $0.00              $4,056.14         $4,056.14

Open     SLS   LG000662                             10/30/2020   SLSTE00001108    9.20LG            Z-US$
  9/30/2020     LG000662                      $0.00              $0.00                 $72.50            $72.50

Open     SLS   FCHRG1005194                         11/1/2020    SLSTE00001112    10.20FC           Z-US$
  10/2/2020     FCHRG1005194                  $0.00              $0.00              $4,056.14         $4,056.14

Open     SLS   LC002936                             11/15/2020   SLSTE00001118    4 Q 20 LC         Z-US$
  10/16/2020    LC002936                      $0.00              $0.00                $449.28           $449.28

Open     SLS   FCHRG1005231                         12/5/2020    SLSTE00001122    11.20FC           Z-US$
  11/5/2020     FCHRG1005231                  $0.00              $0.00              $4,190.92         $4,190.92

Open     SLS   INV1017408                           12/30/2020   RMSLS00002863    1130              Z-US$
  11/30/2020    Clearance Fee                 $0.00              $0.00                 $50.00             $0.00

Open     PMT   PMT1045452                                        RMCSH00005116    120220 CASH       Z-US$
  12/2/2020     PMT1045452                    $0.00              $0.00                ($50.00)            $0.00

Open     SLS   QA0031766                             1/1/2021    SLSTE00001125    1Q21              Z-US$
  12/2/2020     QA0031766                     $0.00              $0.00              $9,409.18         $9,409.18

Open     SLS   FCHRG1005287                          1/7/2021    SLSTE00001129    12.20FC           Z-US$
  12/8/2020     FCHRG1005287                  $0.00              $0.00              $4,190.92         $4,190.92

Open     SLS   INV1017440                            1/14/2021   RMSLS00002890    121520            Z-US$
  12/15/2020    Clearance Fee                 $0.00              $0.00                 $50.00             $0.00

Open     PMT   PMT1045518                                        RMCSH00005134    121520 CASH       Z-US$
  12/15/2020    PMT1045518                    $0.00              $0.00                ($50.00)            $0.00

Open     SLS   FCHRG1005322                          2/5/2021    SLSTE00001134    1.21FC            Z-US$
  1/6/2021      FCHRG1005322                  $0.00              $0.00              $4,190.92         $4,190.92

Open     SLS   LC003016                              2/17/2021   SLSTE00001137    1Q21LC            Z-US$
  1/18/2021     LC003016                      $0.00              $0.00                $470.46           $470.46

Open     SLS   FCHRG1005352                          3/20/2021   SLSTE00001142    2.21FC            Z-US$
  2/18/2021     FCHRG1005352                  $0.00              $0.00              $4,332.06         $4,332.06

Open     SLS   QA0032460                             4/1/2021    SLSTE00001143    2Q21 OA           Z-US$
  3/2/2021      QA0032460                     $0.00              $0.00              $9,409.18         $9,409.18

Open     SLS   FCHRG1005392                          4/3/2021    SLSTE00001147    3.21FC            Z-US$
  3/4/2021      FCHRG1005392                  $0.00              $0.00              $4,332.06         $4,332.06
```

A.114

```
System:    5/17/2022  12:26:36 PM          Fisher Island Community Associ                    Page:    15
User Date: 5/17/2022                   TRANSACTION BY CUSTOMER INQUIRY REPORT              User ID: carola
                                             Receivables Management


Customer ID:  11213              Elizabeth Hazan


* Voided

-----------------------------------------------------------------------------------------------------------
Origin   Type  Document Number   Check Number       Due Date   Audit Trail Code  Batch ID        Currency ID
-----------------------------------------------------------------------------------------------------------
  Doc Date      Description            Discount Amount     Writeoff Amount      Document Amount   Amount Remaining
-----------------------------------------------------------------------------------------------------------
Open     SLS   LG000683                              4/30/2021   SLSTE00001151   3.21LG          Z-US$
  3/31/2021    LG000683                     $0.00              $0.00                   $73.00              $73.00

Open     SLS   FCHRG1005422                          5/2/2021    SLSTE00001150   4.21FC          Z-US$
  4/2/2021     FCHRG1005422                 $0.00              $0.00                $4,332.06           $4,332.06

Open     SLS   LC003101                              5/15/2021   SLSTE00001155   2Q21LC          Z-US$
  4/15/2021    LC003101                     $0.00              $0.00                  $470.46             $470.46

Open     SLS   LG000687                              5/30/2021   SLSTE00001158   4.21LG          Z-US$
  4/30/2021    LG000687                     $0.00              $0.00                  $431.50             $431.50

Open     SLS   FCHRG1005448                          6/9/2021    SLSTE00001159   5.21FC          Z-US$
  5/10/2021    FCHRG1005448                 $0.00              $0.00                $4,473.20           $4,473.20

Open     SLS   QA0033315                             7/1/2021    SLSTE00001163   3Q 21 OA        Z-US$
  6/1/2021     QA0033315                    $0.00              $0.00                $9,409.18           $9,409.18

Open     SLS   FCHRG1005484                          7/2/2021    SLSTE00001167   6.21FC          Z-US$
  6/2/2021     FCHRG1005484                 $0.00              $0.00                $4,473.20           $4,473.20

Open     SLS   FCHRG1005513                          8/1/2021    SLSTE00001173   7.21FC          Z-US$
  7/2/2021     FCHRG1005513                 $0.00              $0.00                $4,473.20           $4,473.20

Open     SLS   LC003178                              8/14/2021   SLSTE00001175   3QLC            Z-US$
  7/15/2021    LC003178                     $0.00              $0.00                  $470.46             $470.46

Open     SLS   FCHRG1005537                          9/8/2021    SLSTE00001179   8.21FC          Z-US$
  8/9/2021     FCHRG1005537                 $0.00              $0.00                $4,614.34           $4,614.34

Open     SLS   QA0033890                             10/1/2021   SLSTE00001181   4Q21 OA         Z-US$
  9/1/2021     QA0033890                    $0.00              $0.00                $9,409.18           $9,409.18

Open     SLS   FCHRG1005579                          10/2/2021   SLSTE00001186   9.21FIN         Z-US$
  9/2/2021     FCHRG1005579                 $0.00              $0.00                $4,614.34           $4,614.34

Open     SLS   LG000702                              10/30/2021  SLSTE00001191   9.21LG          Z-US$
  9/30/2021    LG000702                     $0.00              $0.00                  $492.00             $492.00

Open     SLS   FCHRG1005608                          11/4/2021   SLSTE00001190   10.21FC         Z-US$
  10/5/2021    FCHRG1005608                 $0.00              $0.00                $4,614.34           $4,614.34

Open     SLS   LC003238                              11/14/2021  SLSTE00001194   4QLC            Z-US$
  10/15/2021   LC003238                     $0.00              $0.00                  $470.46             $470.46

Open     SLS   LG000707                              11/30/2021  SLSTE00001203   10.21           Z-US$
  10/31/2021   LG000707                     $0.00              $0.00                  $199.50             $199.50

Open     SLS   FCHRG1005633                          12/18/2021  SLSTE00001204   11.21FC         Z-US$
  11/18/2021   FCHRG1005633                 $0.00              $0.00                $4,755.48           $4,755.48

Open     SLS   LG000710                              12/30/2021  SLSTE00001217   11.21LG         Z-US$
  11/30/2021   LG000710                     $0.00              $0.00                   $73.00              $73.00

Open     SLS   QA0034777                             1/1/2022    SLSTE00001210   1Q 22 OA        Z-US$
  12/2/2021    QA0034777                    $0.00              $0.00                $9,809.37           $9,809.37
```

A.115

```
System:      5/17/2022  12:26:36 PM              Fisher Island Community Associ                    Page:   16
User Date: 5/17/2022                      TRANSACTION BY CUSTOMER INQUIRY REPORT                   User ID: carola
                                                Receivables Management


Customer ID:  11213                   Elizabeth Hazan


* Voided


Origin   Type  Document Number     Check Number      Due Date    Audit Trail Code   Batch ID           Currency ID
----------------------------------------------------------------------------------------------------------------------
  Doc Date       Description            Discount Amount      Writeoff Amount      Document Amount     Amount Remaining
----------------------------------------------------------------------------------------------------------------------
Open     SLS   FCHRG1005674                            1/6/2022    SLSTE00001222    12.21FC            Z-US$
  12/7/2021     FCHRG1005674                  $0.00               $0.00          $4,755.48            $4,755.48

Open     SLS   INV1018284                             2/3/2022    RMSLS00003365    BANK DEP 010422    Z-US$
  1/4/2022      Clearance 01/04/22            $0.00               $0.00            $150.00                $0.00

Open     PMT   PMT1049860                                          RMCSH00005644    010422 CASH        Z-US$
  1/4/2022                                    $0.00               $0.00           ($150.00)               $0.00

Open     SLS   FCHRG1005699                            2/6/2022    SLSTE00001223    1.22FC             Z-US$
  1/7/2022      FCHRG1005699                  $0.00               $0.00          $4,755.48            $4,755.48

Open     SLS   LC003316                               2/18/2022    SLSTE00001225    1Q22 LC            Z-US$
  1/19/2022     LC003316                      $0.00               $0.00            $490.47              $490.47

Open     SLS   INV1018335                             2/27/2022    RMSLS00003410    CLRCE FEE          Z-US$
  1/28/2022     Clearance Fee                 $0.00               $0.00            $150.00                $0.00

Open     PMT   PMT1050359                                          RMCSH00005683    012822 CASH        Z-US$
  1/28/2022                                   $0.00               $0.00           ($150.00)               $0.00

Open     SLS   LG000716                                3/2/2022    SLSTE00001229    1/22 LG            Z-US$
  1/31/2022     LG000716                      $0.00               $0.00            $779.00              $779.00

Open     SLS   FCHRG1005730                            3/5/2022    SLSTE00001228    2.22FC             Z-US$
  2/3/2022      FCHRG1005730                  $0.00               $0.00          $4,902.62            $4,902.62

Open     SLS   LG000721                               3/30/2022    SLSTE00001238    2.22LG             Z-US$
  2/28/2022     LG000721                      $0.00               $0.00          $1,470.00            $1,470.00

Open     SLS   QA0035520                               4/1/2022    SLSTE00001232    2Q 22 OA           Z-US$
  3/2/2022      QA0035520                     $0.00               $0.00          $9,809.37            $9,809.37

Open     SLS   FCHRG1005777                            4/3/2022    SLSTE00001237    3.22 FIN           Z-US$
  3/4/2022      FCHRG1005777                  $0.00               $0.00          $4,902.62            $4,902.62

Open     SLS   LG000729                               4/30/2022    SLSTE00001247    3.22 LG            Z-US$
  3/31/2022     LG000729                      $0.00               $0.00            $135.00              $135.00

Open     SLS   FCHRG1005812                            5/4/2022    SLSTE00001245    4.22FC             Z-US$
  4/4/2022      FCHRG1005812                  $0.00               $0.00          $4,902.62            $4,902.62

Open     SLS   LC003391                               5/18/2022    SLSTE00001248    2QLC               Z-US$
  4/18/2022     LC003391                      $0.00               $0.00            $490.47              $490.47

Open     SLS   FCHRG1005840                            6/8/2022    SLSTE00001251    5.22 FC            Z-US$
  5/9/2022      FCHRG1005840                  $0.00               $0.00          $5,049.76            $5,049.76


                                                                        --------------------  --------------------
Total Documents:  299                                         Totals:        $734,340.35           $730,133.57
                                                                        ====================  ====================
```

A.116

**NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2022041900087017001E07F0

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 2 |
|---|---|---|
| Document ID: **2022041900087017** | Document Date: 04-01-2022 | Preparation Date: 04-19-2022 |
| Document Type: FEDERAL LIEN-IRS | | Federal Lien Serial Number:451854922 |
| Document Page Count: 1 | | |

**PRESENTER:**

INTERNAL REVENUE SERVICE
135 HIGH STREET, STOP 155
HARTFORD, CT 06103
800-913-6050
ACRIS_LIENS@FINANCE.NYC.GOV

**RETURN TO:**

INTERNAL REVENUE SERVICE
CINCINNATI IRS CAMPUS
P.O. BOX 145595
CINCINNATI, OH 45250

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|

Property Type:

**CROSS REFERENCE DATA**

CRFN:  2015000353514

**PARTIES**

**DEBTOR:**
LIZA HAZAN
6913 VALENCIA DRIVE
FISHER ISLAND, FL 33109

**SECURED PARTY:**
INTERNAL REVENUE SERVICE
135 HIGH STREET, STOP 155
HARTFORD, CT 06103

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | | |
| Additional MRT: | $ | 0.00 | Recorded/Filed         04-19-2022 15:01 | | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | | |
| Recording Fee: | $ | EXEMPT | **2022000163361** | | |
| Affidavit Fee: | $ | 0.00 | | | |

*City Register Official Signature*

A.117

25986819 *** REFILED NOTICE

17505

Form **668-F**
(March 2016)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien Refile

Recorded: 10/02/2015   14:47 2015000353514

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Original Serial Number<br><br>177026715 | For Use by Recording Office |
|---|---|---|

**In accordance with section 6323(g) of the Internal Revenue Code, the Notice of Federal Tax Lien originally filed on** September 29, 2015 **is hereby refiled with regard to the taxpayer and assessments identified below.**

Name of Taxpayer  LIZA HAZAN

Address      6913 VALENCIA DRIVE
             FISHER ISLAND, FL 33109

| Kind of Tax<br>(a) | Tax Period Ended<br>(b) | Identifying Number<br>(c) | Date of Assessment<br>(d) | Last Day for Refiling<br>(e) | Unpaid Balance of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2007 | XXX-XX-7473 | 05/21/2012 | 06/20/2032 | 26000.63 |

### Notice of Federal Tax Lien Refile

Refile Serial Number  451854922          Identifying Number*          Date 04/01/2022
Current Taxpayer Name*
Current Address*

Place of Refiling          New York
                           Signature for D STEWART
                           Title      INSOLVENCY SPEC      (470) 639-2945
*If different from original notice of lien

| Original Place of Filing<br><br>Register Office<br>New York County<br>New York, NY 10038 | Total of Refile | $      26000.63 |
|---|---|---|

The original notice was prepared and executed at  MANHATTAN, NY                          , on this,

the    17th   day of   September  , 2015 .

| Signature<br><br>for E. ROSAS | Title<br>REVENUE OFFICER<br>23-02-1910 |
|---|---|

Catalog Number 16742R          www.irs.gov          Form **668-F** (Rev. 3-2016)

35 963 19-2105 REFILED NOTICE
1654

Form **668-F**
(March 2016)

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien Refile

Recorded: 10/11/2012 28308 10:23 3207 2012R0723885

| Area:<br>SMALL BUSINESS/SELF EMPLOYED AREA #3<br>Lien Unit Phone: (800) 913-6050 | Original Serial Number<br><br>896125312 | For Use by Recording Office |
|---|---|---|

In accordance with section 6323(g) of the Internal Revenue Code, the Notice of Federal Tax Lien originally filed on October 10, 2012 is hereby refiled with regard to the taxpayer and assessments identified below.



CFN 2022R0348650
OR Bk 33157 Pg 4716; (1 pg)
04/27/2022 09:56:29
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Name of Taxpayer LIZA E HAZAN

Address 11737 NW 11TH ST
PEMBROKE PNES, FL 33026-4340

| Kind of Tax<br>(a) | Tax Period Ended<br>(b) | Identifying Number<br>(c) | Date of Assessment<br>(d) | Last Day for Refiling<br>(e) | Unpaid Balance of Assessment<br>(f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2007 | ██████ | 05/21/2012 | 06/20/2032 | 17382.28 |

### Notice of Federal Tax Lien Refile

Refile Serial Number 452371222          Identifying Number * _____  Date 04/13/2022
Current Taxpayer Name* _____
Current Address* _____
Place of Refiling          Dade _____
Signature for D STEWART
Title    INSOLVENCY SPEC          (470) 639-2945
*If different from original notice of lien

| Original Place of Filing<br><br>County Courthouse<br>Dade County<br>Miami, FL 33130 | | Total of Refile $ 17382.28 |
|---|---|---|

The original notice was prepared and executed at BALTIMORE, MD _____ , on this,

the _____26th_____ day of ____September____ , __2012__ .

| Signature<br><br>for E. ROSAS | Title<br>REVENUE OFFICER<br>23-02-1910 |
|---|---|

Catalog Number 16742R          www.irs.gov          Form **668-F** (Rev. 3-2016)

**Part 1 - Recording Office**

A.119

Case 1:23-cv-21055-DPG   Document 6-3   Entered on FLSD Docket 04/18/2023   Page 655 of 866

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

      Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

      Defendants.

_____/

## **COMPLAINT**

Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., a Florida not-

for-profit corporation ("ASSOCIATION" or "Plaintiff"), by and through its undersigned counsel,

hereby sues the Defendants, ELIZABETH HAZAN ("HAZAN"), an individual; SEAN NEIL

MEEHAN, as spouse of HAZAN ("MEEHAN") an individual; 6913 VALENCIA, LLC ("6913

VALENCIA"), a Florida limited liability company; and JOHN DOE and JANE DOE, as unknown

tenants or occupants ("TENANTS"), and alleges as follows:

## **GENERAL ALLEGATIONS**

1.     This Honorable Court has jurisdiction pursuant to § 26.012(2), Fla. Stat., as this is

an action to foreclose a claim of lien for unpaid assessments.

A.120

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

2.      The ASSOCIATION is a Florida corporation not-for-profit, operating pursuant to the provisions of Chapter 720, Florida Statutes. The ASSOCIATION is responsible for managing the affairs of Valencia Estates, a residential community in Miami-Dade County, Florida, pursuant to its Declaration of Covenants and Restrictions ("Declaration"), recorded in the Public Records of Miami-Dade County, Florida, on February 6, 2003, at ORB 21004, Page 390, as amended from time to time.

3.      Defendant HAZAN, is over the age of eighteen (18) years, is a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.  HAZAN is the record owner of the real property forming the subject of this action.

4.      Defendant MEEHAN is HAZAN's spouse, is over the age of eighteen (18) years, is believed to be a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

5.      Defendant 6913 VALENCIA is a Florida limited liability company that is believed to still own and hold a second mortgage on the Subject Property, recorded in the public records of Miami-Dade County, Florida. According to online Florida public records, Defendant 6913 VALENCIA's Manager and Authorized Representative is Defendant HAZAN.

6.      Defendants, TENANTS, if such persons exist, are residents of Miami-Dade County, Florida, who are over the age of eighteen (18) years, and are otherwise *sui juris*.

7.      Venue is appropriate in Miami-Dade County, Florida because:

(a)      The real property forming the subject of this action is located in Miami-Dade County, Florida;

(b)      The causes of action asserted herein arose in Miami-Dade County, Florida;

(c)      HAZAN is the owner of the Subject Property (hereinafter defined), and as such is a member of the ASSOCIATION;

**HABER LAW, P.A.**
A.121

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

(d)       Defendants, MEEHAN and 6913 VALENCIA, hold or may claim to hold interests encumbering the Subject Property which is located in Miami-Dade County, Florida;

(e)       Defendants, TENANTS, if they exist, reside in the Subject Property; and

(f)       This is an action to foreclose a Claim of Lien upon on the following described real property located in Miami-Dade County, Florida (the "Subject Property"):

> Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.

> a/k/a 6913 Valencia Drive, Fisher Island, FL 33109.

8.      Pursuant to § 720.3085, Fla. Stat. and Article 6 of the Association's Declaration, HAZAN is required to pay all assessments that are levied by the ASSOCIATION against the Subject Property as they become due and payable. A true and correct copy of Article 6 of the Declaration is attached hereto as **Exhibit "1"** and incorporated herein by reference.

9.      Additionally, § 720.3085, Fla. Stat. and Article 6 of the Declaration require that HAZAN pay interest at the rate of eighteen percent (18%) per annum on the balance of all unpaid maintenance assessments, along with administrative late fees in the amount of $25.00 for each monthly assessment installment that is not paid within fifteen (15) days of its due date, plus costs and attorney's fees incurred by the ASSOCIATION incident to the collections process. *See* **Exhibit "1"**.

10.    On or about August 2, 2013, JPMorgan Chase Bank, N.A. ("JPMorgan") filed an action against HAZAN to foreclose the first mortgage on the Subject Property, Case No.: 2013-

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

025902-CA-01 ("Bank Foreclosure"). The Bank Foreclosure is still pending in Miami-Dade County Circuit Court.

11.     On or about January 11, 2016, HAZAN filed for Chapter 11 bankruptcy in the Southern District of Florida, Case No. 16-10389-AJC ("Bankruptcy Action"). In the Bankruptcy Action, the ASSOCIATION and HAZAN entered into an agreement regarding the ASSOCIATION's claim for past-due assessments and related charges due at that time. True and correct copies of the Stipulation of Settlement for Claim 10 executed by the ASSOCIATION and HAZAN on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (hereinafter collectively the "Stipulation") are attached hereto as **Composite Exhibit "2"** and incorporated herein by reference.

12.     In addition to her obligations under Article 6 of the Association's Declaration and § 720.3085, Fla. Stat., the Stipulation further requires HAZAN to continue to pay all post-petition, ongoing monthly and/or special assessments to the ASSOCIATION. *See* **Composite Exhibit "2"** at Para. 6. Failure to pay such amounts entitles the ASSOCIATION to "all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same." *Id.* at Para. 7.

13.     Thus, even though the Bankruptcy Action is still pending in that HAZAN is still making payments pursuant to her Bankruptcy Plan, the parties have already agreed and the Bankruptcy Court has already approved the filing of a new lien and foreclosure action with respect to post-petition assessments, which is what the ASSOCIATION's seeks herein.

14.     HAZAN has failed or otherwise refused to fully and timely pay the assessments levied by the ASSOCIATION against the Subject Property and the charges related thereto as same have become due and payable, since approximately August 2019 through the present, in an amount

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

currently exceeding $61,000.00, after application of payments received to date in accordance with

§ 720.3085(3)(b), Fla. Stat., which amount continues to accrue.

15.     All conditions precedent to the filing of this action have been performed, occurred,

or were otherwise waived.

16.     As a result of HAZAN's failure to pay assessments and related charges resulting

from such nonpayment, the ASSOCIATION has been required to retain the undersigned counsel

and is obligated to pay a reasonable fee thereto.

17.     Pursuant to §§ 720.305 and 720.3085, Fla. Stat., and the Association's Declaration

at Article 6, the ASSOCIATION is entitled to be reimbursed its attorney's fees and costs incurred

in this action.

**COUNT I**
**FORECLOSURE OF LIEN**

18.     Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained

in Paragraphs 1 through 17 above as if fully set forth herein.

19.     This is an action to foreclose the Claim of Lien (hereinafter defined) against the

Subject Property.

20.     HAZAN has failed or otherwise refused to pay the assessments levied by the

ASSOCIATION against the Subject Property and the charges related thereto as same have become

due and payable, since approximately August 2019 through the present, in an amount currently

exceeding $61,000.00, after application of payments received to date in accordance with §

720.3085(3)(b), Fla. Stat., which amount continues to accrue.

21.     On or about January 4, 2021, and in accordance with § 720.3085, Fla. Stat., the

ASSOCIATION, by and through its undersigned counsel, sent HAZAN, by regular U.S. and

certified mail, return receipt requested, and via e-mail, a Notice of Intent to File/Record a Claim

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

of Lien ("Notice of Intent to Lien") to the Subject Property, which is also HAZAN's last address

on file with the ASSOCIATION.  A true and correct copy of the Notice of Intent to Lien is attached

hereto as **Exhibit "3"** and incorporated herein by reference.

      22.    HAZAN failed or otherwise refused to pay the amounts set forth in the Notice of

Intent to Lien within forty-five (45) days thereof. As a result, and in accordance with § 720.3085,

Fla. Stat. and the Declaration, on March 24, 2021, the ASSOCIATION recorded a Claim of Lien

against the Subject Property in ORB 32413 at Pages 4637-38, of the public records of Miami-Dade

County, Florida (the "Claim of Lien"). A true and correct copy of the Claim of Lien is attached

hereto as **Exhibit "4"** and incorporated herein by reference.

      23.    Pursuant to F.S. §720.3085(5)(b), the ASSOCIATION was not required to send

HAZAN a forty-five (45) day Notice of Intent to Foreclose its Claim of Lien due to the pending

Bank Foreclosure as well as the pending Bankruptcy. Nonetheless, on or about April 5, 2021, in

accordance with § 720.3085, Fla. Stat., the ASSOCIATION, by and through its undersigned

counsel, sent HAZAN, by regular U.S. and certified mail, return receipt requested, and via e-mail,

a Notice of Intent to Foreclose Claim of Lien ("Notice of Intent to Foreclose") to the Subject

Property, which is also HAZAN's last address on file with the ASSOCIATION.  A true and correct

copy of the Notice of Intent to Foreclose is attached hereto as **Exhibit "5"** and incorporated herein

by reference.

      24.    In addition, on February 7, 2022, the ASSOCIATION sent HAZAN, by regular

U.S. and certified mail, return receipt requested, and via e-mail, a Supplemental Notice of Intent

to Foreclose Claim of Lien ("Supplemental Notice of Intent to Foreclose") to the Subject Property,

which is also HAZAN's last address on file with the ASSOCIATION.  A true and correct copy of

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

the Supplemental Notice of Intent to Foreclose is attached hereto as **Exhibit "6"** and incorporated herein by reference.

25.     As set forth in § 720.3085, Fla. Stat. and the Declaration, the Claim of Lien secures all unpaid assessments, interest, late fees, collection costs, and attorneys' fees and costs incident to the collections process set forth therein and that have and will come due subsequent to its recording through the entry of a final judgment in this action.

26.     Further, pursuant to § 720.3085(1), the ASSOCIATION's lien rights and Claim of Lien are effective from and shall relate back to the date of recording of the ASSOCIATION's original Declaration, i.e. - - February 6, 2003.

27.     To date, HAZAN has failed or otherwise refused to satisfy the Claim of Lien, and thus pursuant to § 720.3085, Fla. Stat. and Article 6 of the Declaration, the ASSOCIATION is now entitled to foreclose the Claim of Lien in the same manner that a mortgage is foreclosed.

28.     The ASSOCIATION's interest in the Subject Property pursuant to the Declaration and the Claim of Lien is superior to any right, title or interest of Defendant or any party claiming by, through or under HAZAN to the Subject Property.

29.     Defendant MEEHAN may claim some interest in or lien upon the Subject Property as an occupant or having a homestead interest in same. However, MEEHAN's specific interest in the Subject Property and any other right, title or interest to and in the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

30.     Defendant, 6913 VALENCIA may claim an interest in the Subject Property by virtue of a Second Mortgage recorded on March 14, 2012 in ORB 28034, at Page 4869 of the Public Records of Miami Dade County, Florida. However, 6913 VALENCIA's specific interest in

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

the Subject Property and any other right, title or interest to and in the Subject Property is junior,

inferior, and subordinate to the ASSOCIATION's rights pursuant to the Claim of Lien.

31.     Defendants TENANTS may claim an interest in the Subject Property by virtue of

possession of the Subject Property as tenants under a lease or otherwise as occupants. However,

TENANTS' specific interest in the Subject Property and any other right, title or interest to and in

the Subject Property is junior, inferior, and subordinate to the ASSOCIATION's rights pursuant

to the Claim of Lien.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION,

INC., respectfully requests that this Honorable Court enter judgment in its favor and against

Defendants, and in so doing award the following relief:

A.      Take jurisdiction of this cause and of the parties to this action;

B.      Ascertain the amount of money including assessments, interest, late fees,

expenses, costs and attorney's fees and costs which ASSOCIATION is entitled to recover

in this action and award such amounts pursuant to the Declaration and § 720.385, Fla. Stat.;

C.      Find that ASSOCIATION be decreed to have a lien upon the Subject

Property of Defendant HAZAN as described herein for the sum of money found to be due,

and that said lien be decreed superior to the rights, title and interest of all of the Defendants

named herein;

D.      Find that such lien be foreclosed in accordance with the Declaration and the

established rules and practices of the Court, that upon default of the payment to

ASSOCIATION of the amounts so found to be due, and that said real estate be sold by the

Clerk of Court to satisfy ASSOCIATION's lien in accordance with provisions of Chapter

720 of the Florida Statutes;

**HABER LAW, P.A.**
A.127

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

E.    Find that the Final Judgment of Foreclosure incorporate an order dispossessing the Defendants, and requiring that the purchaser at the foreclosure sale, his representatives or all of the assigns, be let into possession of the Subject Property;

F.    Reserve jurisdiction to enter a Writ of Possession in favor of the person or entity acquiring title to the Subject Property as a result of the public sale ordered by the Court;

G.    Reserve jurisdiction to award the ASSOCIATION a deficiency judgment in the event the sale of the Subject Property produces insufficient funds to satisfy the ASSOCIATION's judgment; and

H.    Award such other and further relief as ASSOCIATION may be entitled to receive.

## COUNT II
## BREACH OF DECLARATION

32.    Plaintiff ASSOCIATION hereby re-alleges and re-avers the allegations contained in Paragraphs 1 through 17 as if fully set forth herein.

33.    The ASSOCIATION's Declaration allows the ASSOCIATION to levy assessments and charges related thereto against the Subject Property, which HAZAN is required to pay. *See* **Exhibit "1"**.

34.    The Declaration is a contract by and between the ASSOCIATION and HAZAN, which strictly governs the relationship between them.

35.    Pursuant to §§ 720.305 and 720.3085, Fla. Stat., HAZAN is required to comply with the terms and conditions of the Declaration.

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

36. Despite multiple demands from the ASSOCIATION, HAZAN still has not made payment for the assessments and related charges due and owing to the ASSOCIATION. *See* **Exhibits "3"**, **"5"**, and **"6"**.

37. HAZAN materially breached the Declaration by failing or otherwise refusing to pay assessments levied by the ASSOCIATION against the Subject Property as same became due and payable.

38. HAZAN further materially breached the Declaration by failing or otherwise refusing to pay the interest, late fees, collection costs, and attorneys' fees and costs incurred by the ASSOCIATION incident to the collections process, resulting from HAZAN's failure to pay the assessments levied by the ASSOCIATION against the Subject Property.

39. As a direct and proximate result of such breaches, the ASSOCIATION has been damaged.

WHEREFORE, Plaintiff, VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC., respectfully requests that this Honorable Court enter judgment in its favor and against Defendant ELIZABETH HAZAN, and in so doing award the ASSOCIATION the actual damages it has sustained in this regard, along with pre-judgment and post-judgment interest and the reasonable attorneys' fees and costs incurred in this regard, together with such other and further relief deemed just and proper.

[SIGNATURE PAGE TO FOLLOW]

**HABER LAW, P.A.**

A.129

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Foreclosure Complaint*

Dated this 23rd day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
251 NW 23rd Street
Miami, Florida 33127
(305) 379-2400
(305) 379-1106 (fax)
service@haber.law


By:    /s/ Rebecca N. Casamayor
     **REBECCA N. CASAMAYOR, ESQ.**
     Florida Bar No.: 99070
     rcasamayor@haber.law
     jfelipe@haber.law
     **DEESHA SMART, ESQ.**
     Florida Bar No. 1026394
     dsmart@haber.law

A.130

## ARTICLE 6.

### COVENANT FOR MAINTENANCE ASSESSMENTS

6.1. <u>Creation of the Lien and Personal Obligation of the Assessments</u>. Except as provided elsewhere herein, the Developer (and each party joining in any supplemental declaration), for all Lots within the Neighborhood, hereby covenants and agrees, and each Owner of any Lot by acceptance of a deed therefor or other conveyance thereof, whether or not it shall be so expressed in such deed or other conveyance, shall be deemed to covenant and agree to pay to the Association annual assessments and charges for the operation of the Association and the maintenance, management, operation and insurance of the Common Properties as provided elsewhere herein, including such reasonable reserves as the Association may deem necessary, capital improvement assessments as provided elsewhere herein, assessments for maintenance, bulk cable and/or satellite television or communications charges and all other charges and assessments hereinafter referred to or lawfully imposed by the Association, all such assessments to be fixed, established and collected from time to time as herein provided. In addition, special assessments may be levied against particular Owners and Lots for fines, expenses incurred against particular Lots and/or Owners to the exclusion of others and other charges against specific Lots or Owners as contemplated in this Declaration. The annual, special and other assessments, together with interest thereon and costs of collection thereof as are hereinafter provided, shall be a charge on the land and shall be a continuing lien upon the Lot against which each such assessment is made. Each such assessment, together with such interest thereon and costs of collection thereof as are hereinafter provided, shall also be the personal obligation of the person who is the Owner of such property at the time when the assessment fell due and all subsequent Owners until paid, except as provided in Section 6.9 below.

6.2. <u>Rate of Assessment</u>. Except as provided herein with respect to special assessments which may be imposed on one or more Lots or Homes and Owners to the exclusion of others and in Section 6.9 below, all assessments imposed by the Association shall be imposed against all Lots subject to its jurisdiction in accordance with the percentages set forth on **Exhibit "E"** attached hereto and made a part hereof. Reference herein to assessments shall be understood to include reference to any and all of said charges whether or not specifically mentioned.

6.3. <u>Purpose of Assessments</u>. The regular assessments levied by the Association shall be used exclusively for the purposes expressed in Section 6.1 above.

6.4. <u>Special Assessments</u>. In addition to the regular and capital improvement assessments which are or may be levied hereunder, the Association (through the Board of Directors) shall have the right to levy special assessments against an Owner(s) to the exclusion of other Owners for: (a) the repair or replacement of damage to any portion of the Common Properties (including, without limitation, improvements and landscaping thereon) caused by the misuse, negligence or other action or inaction of an Owner or such Owner's Members' Permittee(s); or (b) the costs of work performed by the Association in accordance with Article **4** and/or Article **5** of this Declaration. Any such special assessment shall be subject to all of the applicable provisions of this Article including, without limitation, lien filing and foreclosure procedures and late charges and interest. Any special assessment levied hereunder shall be due within the time specified by the Board of Directors in the action imposing such assessment.

6.5. <u>Capital Improvements</u>. Funds which, in the aggregate, exceed twenty percent (20%) of the total amount of the current operating budget of the Association in any one fiscal year, and are necessary for the addition of capital improvements (as distinguished from

## A.131

OFF. REC BK.
21004PG0401

repairs and maintenance) relating to the Common Properties and which have not previously been collected as reserves or are not otherwise available to the Association (other than by borrowing), shall be levied by the Association as special assessments only upon approval of a majority of the Board of Directors of the Association and upon approval by two-thirds (2/3) favorable vote of the Members of the Association voting at a meeting or by ballot as may be provided in the By-Laws of the Association. Additionally, the Association may adopt a capital improvement assessment upon approval of a majority of the Board of Directors of the Association for reconstruction as provided in Section 11.1 below.

6.6.    Date of Commencement of Annual Assessments; Due Dates.    The annual regular assessments provided for in this Article shall commence on the first day of the month next following the recordation of these covenants and shall be applicable through September 30 of such year. Each subsequent annual assessment shall be imposed for the year beginning October 1 and ending September 30. The annual assessments shall be payable in advance, in monthly installments, or in annual, semi-annual or quarterly installments if so determined by the Board of Directors of the Association (absent which determination they shall be payable monthly). The assessment amount (and applicable installments) may be changed at any time by said Board from that originally stipulated or from any other assessment that is in the future adopted. The original assessment for any year shall be levied for the calendar year (to be reconsidered and amended, if necessary, every six (6) months), but the amount of any revised assessment to be levied during any period shorter than a full calendar year shall be in proportion to the number of months (or other appropriate installments) remaining in such calendar year. The due date of any special assessment or capital improvement assessment shall be fixed in the Board resolution authorizing such assessment.    Notwithstanding anything herein contained to the contrary, no Lot shall be subject to assessment until such time as a Home has been constructed thereon and received a certificate of occupancy from the applicable governmental authority.

6.7.    Duties of the Board of Directors.  The Board of Directors of the Association shall fix the date of commencement and the amount of the assessment against each Lot subject to the Association's jurisdiction for each assessment period, to the extent practicable, at least thirty (30) days in advance of such date or period, and shall, at that time, prepare a roster of the Lots and assessments applicable thereto which shall be kept in the office of the Association and shall be open to inspection by any Owner. Written notice of the assessment shall thereupon be sent to every Owner subject thereto thirty (30) days prior to payment of the first installment thereof, except as to special assessments. In the event no such notice of a change in the assessments for a new assessment period is given, the amount payable shall continue to be the same as the amount payable for the previous period, until changed in the manner provided for herein. Subject to other provisions hereof, the Association shall upon demand at any time furnish to any Owner liable for an assessment a certificate in writing signed by an officer of the Association, setting forth whether such assessment has been paid as to any particular Lot. Such certificate shall be conclusive evidence of payment of any assessment to the Association therein stated to have been paid. The Association, through the action of its Board of Directors, shall have the power, but not the obligation, to enter into an agreement or agreements from time to time with one or more persons, firms or corporations (including affiliates of the Developer) for management services. The Association shall have all other powers provided in its Articles of Incorporation and By-Laws.

6.8.    Effect of Non-Payment of Assessment; the Personal Obligation; the Lien; Remedies of the Association. If the assessments (or installments) provided for herein are not paid on the date(s) when due (being the date(s) specified herein), then such assessments (or installments) shall become delinquent and shall, together with late charges, interest and

OFF. REC. BK.
21004PG0402

the cost of collection thereof as hereinafter provided, thereupon become a continuing lien on the Lot which shall bind such property in the hands of the then Owner, his heirs, personal representatives, successors and assigns. Except as provided in Section 6.9 below to the contrary, the personal obligation of the then Owner to pay such assessment shall pass to his successors in title and recourse may be had against either or both. If any installment of an assessment is not paid within fifteen (15) days after the due date, at the option of the Association, a late charge not greater than the amount of such unpaid installment may be imposed (provided that only one late charge may be imposed on any one unpaid installment and if such installment is not paid thereafter, it and the late charge shall accrue interest as provided herein but shall not be subject to additional late charges, provided further, however, that each other installment thereafter coming due shall be subject to one late charge each as aforesaid), or the next twelve (12) months' worth of installments may be accelerated and become immediately due and payable in full and all such sums shall bear interest from the dates when due until paid at the highest lawful rate and the Association may bring an action at law against the Owner(s) personally obligated to pay the same, may record a claim of lien (as evidence of its lien rights as hereinabove provided for) against the Lot on which the assessments and late charges are unpaid, may foreclose the lien against the Lot on which the assessments and late charges are unpaid, or may pursue one or more of such remedies at the same time or successively, and attorneys' and paralegals' fees and costs actually incurred preparing and filing the claim of lien and the complaint, if any, and prosecuting same, in such action (and any appeals therefrom) shall be added to the amount of such assessments, late charges and interest, and in the event a judgment is obtained, such judgment shall include all such sums as above provided and attorneys' and paralegals' fees actually incurred together with the costs of the action, through all applicable appellate levels. In the case of an acceleration of the next twelve (12) months' worth of installments, each installment so accelerated shall be deemed, initially, equal to the amount of the then most current delinquent installment, provided that if any such installment so accelerated would have been greater in amount by reason of a subsequent increase in the applicable budget, the Owner of the Lot whose installments were so accelerated shall continue to be liable for the balance due by reason of such increase and special assessments against such Lot shall be levied by the Association for such purpose. In addition to the rights of collection of assessments stated in this Section, any and all persons acquiring title to or an interest in a Lot as to which the assessment is delinquent, including without limitation persons acquiring title by operation of law and by judicial sales, shall not be entitled to the occupancy of such Lot or the enjoyment of the Common Properties until such time as all unpaid and delinquent assessments due and owing from the selling Owner have been fully paid; provided, however, that the provisions of this sentence shall not be applicable to the mortgagees and purchasers contemplated by Section 6.9 below. It shall be the legal duty and responsibility of the Association to enforce payment of the assessments hereunder. Failure of the Association to send or deliver bills shall not, however, relieve Owners from their obligations hereunder. All assessments, late charges, interest, penalties, fines, attorney's fees and other sums provided for herein shall accrue to the benefit of the Association. Owners shall be obligated to deliver the documents originally received from the Developer, containing this and other declarations and documents, to any grantee of such Owner.

6.9.   Subordination of the Lien. The lien of the assessments provided for in this Article shall be subordinate to real property tax liens and to the lien of any first mortgage recorded prior to recordation by the Association of a claim of lien held by a Mortgage Lender and which is now or hereafter placed upon any property subject to assessment; provided, however, that any such Mortgage Lender when in possession or any receiver, and in the event of a foreclosure, any purchaser at a foreclosure sale, and any such Mortgage Lender acquiring a deed in lieu of foreclosure, and all persons claiming by, through or under such purchaser or Mortgage Lender, shall hold title subject to the liability and lien

A.133

of any assessment coming due after such foreclosure (or conveyance in lieu of foreclosure). Any unpaid assessment which cannot be collected as a lien against any Lot by reason of the provisions of this Section shall be deemed to be an assessment divided equally among, payable by and a lien against all Lots subject to assessment by the Association, including the Lots as to which the foreclosure (or conveyance in lieu of foreclosure) took place.

6.10.   Effect on Developer.   Notwithstanding any provision to the contrary contained in this Declaration, for as long as Developer (or any of its affiliates) is the Owner of any Lot, Developer shall have the option, in its sole discretion, to (a) pay assessments on the Lots owned by it in like manner as paid by other Owners; or (b) not paying assessments on Lots owned by Developer, and in lieu thereof, funding any resulting deficit in the Association's operating expenses (exclusive of any capital costs and reserves) not produced by assessments receivable from Owners other than Developer and any other income receivable by the Association. The deficit to be paid under option (b) above shall be the difference between (i) actual operating expenses of the Association (exclusive of capital improvement costs and reserves) and (ii) the sum of all monies receivable by the Association (including, without limitation, assessments, interest, late charges, fines and incidental income) and any surplus carried forward from the preceding year(s). Developer may from time to time change the option stated above under which Developer is making payments to the Association by written notice to such effect to the Association. When all Lots within the Neighborhood are sold and conveyed to purchasers, neither the Developer, nor its affiliates, shall have further liability of any kind to the Association for the payment of assessments, deficits or contributions.

6.11.   Association Funds.   The portion of all regular assessments collected by the Association for reserves for future expenses, if any, and the entire amount of all special assessments, shall be held by the Association for the Owners of all Lots, as their interests may appear, and may be invested in interest bearing accounts or in certificates of deposit or other like instruments or accounts available at banks or savings and loan institutions the deposits of which are insured by an agency of the United States.

## ARTICLE 7.

## CERTAIN RULES AND REGULATIONS

7.1.   Applicability.   The provisions of this Article **7** shall be applicable to all of the Lots, Homes and Common Properties of the Neighborhood.

7.2.   Land Use and Building Type.   No Lot shall be used except for single family residential purposes, unless otherwise approved by the Developer. No building constructed on a Lot shall be used except for residential purposes. No building shall be erected, altered, placed or permitted to remain on any Lot other than one Home and one cabana house. Temporary uses by Developer and its affiliates for model homes, guest accommodations, sales displays, parking lots, sales offices and other offices, or any one or combination of such uses, shall be permitted at all times. No improvements may be made to a Lot, or changes thereafter made (unless such changes are made by the Developer) without the consent of the Architectural Control Board (as hereinafter defined).

7.3.   Construction Activity.   Unless otherwise approved in advance by the Architectural Control Board, no construction or construction related activities may be undertaken: (a) on legal holidays recognized by the Federal Government (or other holidays designated as such by Declarant), (b) Sundays, or (c) outside the hours of 8:00 a.m through 6:00 p.m., Monday through Friday, or 9:00 a.m through 6:00 p.m. on Saturdays.

**Composite Exhibit "2"**

## UNITED STATES BANKRUPTCY COURT
## THE SOUTHERN DISTRICT OF
## FLORIDA MIAMI DIVISION

### www.flsb.uscourts.gov

IN RE:

                                          CaseNo:16-10389AJC
                                          Chapter 11

Liza Hazan
a/k/a ELIZABETH HAZAN

DEBTOR. _____/

### STIPULATION OF SETTLEMENT CLAIM 10
### Valencia Estates Homeowners Assn, Inc.

      Debtor-In-Possession, Liza Hazan ("Hazan" or "Debtor") and Creditor Valencia Estates Homeowners Assn, Inc. (the "Creditor") (collectively the "Parties"), by and through undersigned counsel, hereby agree to a stipulation as to the treatment of Creditor's claim, as set forth below and respectfully represent the following to the court: By submission of this Stipulation for entry, the submitting counsel represents that the opposing party consents to its entry. Pursuant to this stipulation, the Parties agree as follows:

      1.    On 1/11/16, the Debtor filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code.

      2.    On 5/11/16, Creditor filed Claim #10 in the amount of $195,072.14 as a Secured Claim.

      3.    On 6/29/16, Valencia filed ECF 94 Motion for adequate protection pending confirmation and motion to shorten or terminate exclusivity ("Motion").

      4.    On 7/11/16 Debtor filed her Plan of Reorganization ECF 102 ("Plan").

      5.    Parties agree that Valencia's Motion ECF 94 is granted in part as follows:

          A.    Debtor shall pay on or before August 17, 2016 the amount of $2,193.17 owed for past due maintenance to Valencia;

          B.    Debtor shall pay four (4) months of accelerated regular assessments of $1121.00 per month for a total of $4,484.00 for the months of September through December, 2016 on or before September 15, 2016;

          C.    Debtor shall pay special assessment of $6,250.00 by October 15, 2016. (collectively, A, B and C will be referred to as the Post-Petition Payments")

      6.    Parties agree that Claim Number 10 shall be paid in the amount of $195,000.00 with 3.5% interest in the Chapter 11 Plan, over forty-eight (48) months, with one payment on the Effective Date of $4,062.00, and payments every five (5) months thereafter in the amount of $20,312.50 following the Effective Date until paid in full, with the interest payments to be made

A.135

annually on the twelfth (12th) month. All monies are to be paid on or before the 48th month after the Effective Date. Interest statements shall be rendered annually to the Debtor and payment of said accrued interest will be due within fifteen (15) days of invoice date (hereinafter all payments under Paragraph 6 shall be referenced as "Claim Payments"). *The Claim Amount of $195,000.00 includes pre-petition and post-petition attorney's fees & costs absent a breach by Debtor as referenced below in paragraph 10 below* — E.H

7.  Debtor shall continue to pay monthly and/or special assessments on an ongoing basis as required by the Declaration ("Ongoing Assessments"). Should the Ongoing Assessments not be paid, Valencia shall have all rights under its Recorded Declaration, including but not limited to the right to file a new lien for Ongoing Maintenance and file a new Complaint to foreclose upon same.

8.  Debtor shall immediately dismiss her appeal in the Third District Court of Appeal Case styled *Elizabeth Hazan v. Valencia Estates Homeowners Association, Inc.*, Third DCA Case No. 16-1733, pursuant to the Notice of Appeal filed on July 17, 2016 of the Final Judgment rendered in the state court action in the Eleventh Judicial Circuit, State of Florida, styled *Valencia Estates Homeowners Association, Inc. v. Elizabeth Hazan*, et. al, Case No. 10-56030 CA 32 ("Valencia State Court Action"). Debtor shall then allow the Valencia Final Judgment to be amended to include attorney's fees and costs to be added to the original Final Judgment, so that the Amended Final Judgment shall be for the total sum of $195,000. The Amended Final Judgment shall not be appealed by Debtor, and Creditor shall be entitled to record a Certified Copy of the Amended Final Judgment against the Debtor's residence at Valencia as a recorded lien against the Subject Property ("Judgment Lien"). Valencia shall not execute or take action to enforce the Judgment Lien absent an uncured breach relating to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments (Paragraph 5 above) due to a failure to timely cure the default pursuant to Paragraph 9 below. However, Debtor agrees and acknowledges that Valencia shall be paid in full for all remaining monies due and owing under the Claim Payments pursuant to the Judgment Lien on an accelerated basis should there be a sale or refinance of the Subject Property.

9.  Should the Debtor breach the payment obligations hereunder or the Ongoing Payments (Paragraph 7 above), she will be in violation of this Agreement. Should the Debtor violate this Agreement pre-Confirmation, the Plan cannot be confirmed.

10.  If a payment is not made related to either the Claim Payments (Paragraph 6 above) or the Post-Petition Payments due (Paragraph 5 above) consistent with the above treatment, Valencia shall provide seven (7) days notice to Debtor ("Notice"), and same shall provide fourteen (14) days to cure the default ("Cure Period"). Upon an Uncured Default, the remaining balance due of the Claim Payments and Post-Petition Payments Valencia are automatically accelerated ("Accelerated Amounts") and Valencia shall be entitled to file a Motion to Enforce Stipulation and Granting of Stay Relief to Execute upon the Judgment Lien with a supporting Affidavit of Uncured Default ("Motion to Enforce and for Stay Relief"), along with a request for reasonable attorney's fees and costs for enforcement of the Stipulation ("Enforcement Attorney's Fees"). The Bankruptcy Court shall retain jurisdiction to enforce this Stipulation and to address/rule upon such a Motion to Enforce and for Stay Relief. Should the Bankruptcy Court grant the Motion to Enforce and for Stay Relief and grant stay relief to pursue enforcement of the Judgment Lien for the Accelerated Amounts plus Enforcement Attorney's Fees, then Valencia shall have all of the rights granted under law to pursue such enforcement of the Judgment Lien and Debtor shall have no defenses to same absent payment of the Accelerated Amounts due (inclusive of interest due upon same at the Amended Final Judgment rate) plus Enforcement Attorney's Fees.

11.  Creditor Valencia agrees that so long as Debtor is in compliance with this Stipulation to vote the full amount of its claim in favor of Debtor's Plan of Reorganization with the

*Valencia's state court action, claims, counterclaims [*] All defenses, proposed counterclaims + proposed third party E.H claims against Valencia, its agents, managers, attorneys, members & officers, raised/unraised, are released & waived.*

A.136

stipulated treatment.

12. This Stipulation shall be submitted to the Court for ratification and approval.

WHEREFORE, the Debtor respectfully requests an order ratifying and approving this Stipulation.

Agreed to by

s/s: Liza Hazan, Debtor

s/s: David Haber, Esq.
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
rcasamayor@dhaberlaw.com
counsel for Creditor Valencia

and

/s/: Joel M. Aresty, Esq
Joel M. Aresty, P.A.
309 1st Ave S
Tierra Verde, FL 33715
Fax: 305-899-9889
Phone: (305) 899-9876
Aresty@Mac.com
Fla. Bar No. 197483
counsel for Debtor Liza Hasan

**Certificate Of Service**

**I hereby certify** that a true and correct copy of the foregoing was served upon all parties as indicated below, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the notice of electronic filing indicates that notice was electronically mailed to said party.

A.137



**ORDERED in the Southern District of Florida on November 17, 2016.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT
THE SOUTHERN DISTRICT OF
FLORIDA MIAMI DIVISION**

**www.flsb.uscourts.gov**

IN RE:

CaseNo:16-10389AJC
Chapter 11

**Liza Hazan
a/k/a ELIZABETH HAZAN**

‾
__DEBTOR.                            /__

<u>**AGREED ORDER APPROVING STIPULATION OF SETTLEMENT OF CLAIM 10**
**Valencia Estates Homeowners Assn, Inc.**</u>

THIS CAUSE came before the Court upon the Stipulation of Settlement of Claim 10

(Valencia Estates Homeowners Assn, Inc.) [attached as "Exhibit "A" to ECF 209] (hereinafter

the "Stipulation"). The Court has been advised of the agreement of the Parties and has

A.138

reviewed the terms of the Stipulation and being fully advised in the premises, it is hereby

**ORDERED** as follows:

1) The Stipulation (attached as Exhibit "A" to ECF 209) is approved and ratified by the Court.

2) Valencia's Motion for Adequate Protection [ECF 94] is granted in part, as set forth in the Stipulation at Paragraph 5.

3) Valencia's Claim #10 and Valencia's Objection to Debtor's Disclosure Statement [ECF 138] are considered resolved pursuant to the terms of the Stipulation.

4) This Court shall retain jurisdiction to enforce the terms of this Order and the Stipulation.

5) The Debtor hereby withdraws her Limited Objection to Motion to Compromise Controversy [ECF 239].

6) Valencia hereby withdraws its Limited Objection to Debtor's Amended Disclosure Statement [ECF 279].

\* \* \*

Submitted by:
Rebecca Newman Casamayor, Esq.
HABER SLADE, P.A.
Miami Center
201 S. Biscayne Blvd. Suite 1205
Miami, FL 33131
T: 305-379-2400
F: 305-379-1106
dhaber@dhaberlaw.com
*counsel for Creditor Valencia*

Attorney Rebecca Newman Casasmayor, Esq. shall serve copies of this Order on all interested parties and file a Certificate of Service.

A.139

**Exhibit "3"**



HABER LAW

**REBECCA N. CASAMAYOR, ESQ.**
305-379-2400 Ext. 117
RCASAMAYOR@HABER.LAW

## NOTICE OF INTENT TO RECORD A CLAIM OF LIEN
### This letter is sent pursuant to Chapter 720 of the Florida Statutes

January 4, 2021

**Via Regular U.S. and Certified Mail, Return Receipt Requested:**
*Barcode:* **9214 8901 9403 8300 0028 8859 23**
Elizabeth Hazan a/k/a Liza Hazan
6913 Valencia Drive
Fisher Island, Florida 33109

**COPY TO COUNSEL [VIA E-MAIL ONLY]:**
David Langley, Esq.
E-mail: dave@flalawyer.com
Joel Aresty, Esq.
E-mail: Aresty@Mac.com
Stuart J. Zoberg, Esq.
E-mail: szoberg@shirlawgroup.com

> **RE:**  *Valencia Estates Homeowners' Association, Inc.*
> *Property: Parcel/Lot/Unit 6913*
> *Owner: Elizabeth Hazan*
> *Matter #: 3706.102*

Dear Ms. Hazan:

As you are aware, our law firm represents **Valencia Estates Homeowners' Association, Inc.** ("Association"). We have been retained by the Association with respect to your failure to pay assessments when due to the Association. Pursuant to §720.3085 of the Florida Statutes and the Association's Declaration of Covenants and Restrictions ("Declaration"), you are obligated to pay the regular periodic assessments, special assessments, interest, administrative late fees, collection costs, and attorneys' fees and costs detailed below. These amounts (the "Debt") must be paid within forty-five (45), unless the validity of the Debt is disputed in writing within that time, in which case these amounts will continue to be due upon verification of the Debt.

Pursuant to §720.3085 of the Florida Statutes, the following amounts are currently due on your account to the Association, and must be paid within forty-five (45) days after your receipt of this letter. This letter shall serve as the Association's notice of intent to record a Claim of Lien against your property no sooner than forty-five (45) days after your receipt of this letter, unless you pay in full the amounts set forth below:

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Lien*
*January 4, 2021*
*Page 2 of 4*

| Item | Amount |
|------|-------:|
| Unpaid Regular Assessments (due first of month, Jan. 2020-Jan. 2021) | $19,006.87 |
| Unpaid Interest through 12/31/20 at 18% per annum | 1,468.97 |
| Unpaid Late Fees | 225.00 |
| Unpaid Attorney's Fees[1] | 4,403.75 |
| Unpaid Attorney's Costs | 6.65 |
| Disbursement Processing Fee | 120.00 |
| **Total Due for Ongoing Assessments as of 1/4/2021:** | **$25,231.24** |

      The Total Due, as specified above, takes into account charges and application of payments received for Ongoing Assessments, in accordance with Fla. Stat. 720.3085, from August 2019 to present. The Total Due does not affect any amounts owed by you for any other reason or pursuant to any judgment, order, and/or agreement. This correspondence does not address or concern any amounts that may be due or come due with respect to your bankruptcy proceedings in the Bankruptcy Court for the Southern District of Florida (Case No.: 16-10389-AJC – Chapter 11). This correspondence pertains only to Ongoing Assessments and related charges due to the Association, pursuant to the Stipulation of Settlement Claim 10 executed by you and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (the "Stipulation"), as well as pursuant to Article 6 of the Association's Declaration and Florida Statutes, Chapter 720.

      Please be advised that if payment for the Total Due, as specified above, is not paid in full on or before January 15, 2021, additional late fees in the amount of $25.00 will come due, and additional interest at the rate of eighteen percent (18%) per annum will accrue on the balance of all unpaid assessments.  Further, on February 1, 2021 (and the first of every month thereafter), additional regular periodic assessments in the amount of $1,726.16 will come due. **Please keep these dates and amounts in mind when you make your payment.**

      **Do not send a check directly to the Association as this will delay crediting the account and may cause attorneys' fees and costs to continue to accrue.** We have enclosed the wiring instructions for this law firm's IOTA Trust Account for your review and for the purpose of forwarding payment. If payment is to be made by check, please make same payable to Haber Law, P.A. Trust Account.

      If you have any further questions concerning this account, please write a letter or send an e-mail to the undersigned.

      **THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THE NOTICE REQUIRED BY 15 U.S.C. § 1692(g) IS ATTACHED HERETO.**

---

[1] Incurred incident to the collections process for Ongoing Assessments, from September 2020 to the date of this correspondence, pursuant to the Declaration and Fla. Stat. 720.3085.

A.141

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Lien*
*January 4, 2021*
*Page 3 of 4*

This correspondence reserves all rights of the Association, without limitation.

Very truly yours,

**HABER LAW, P.A.**

*/s/ Rebecca N. Casamayor, Esq.*

REBECCA N. CASAMAYOR, ESQ.

Enclosures:    Notice Required by 15 U.S.C. § 1692(g)
                 Haber Law, P.A., Trust Account wiring instructions

A.142

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Lien*
*January 4, 2021*
*Page 4 of 4*

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. SECTION 1692(g), AS AMENDED

**1.**     **The amount of the debt is set forth in this Notice.**

**2.**     **VALENCIA ESTATES HOMEOWNERS' ASSOCIATION, INC. is the creditor to whom the debt is owed.**

**3.**     **Unless the consumer, within thirty (30) days after receipt of this notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by this office (the Debt Collector).**

**4.**     **If the consumer notifies this office (the Debt Collector), in writing within the thirty-day period that the debt, or any portion thereof, is disputed, this office (the Debt Collector) will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by this office (the Debt Collector).**

**5.**     **Upon the consumer's written request within the thirty-day period, this office (the Debt Collector) will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**6.**     **Written requests pursuant to this notice should be addressed to Rebecca N. Casamayor, Haber Law, P.A.**

A.143

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Lien*
*January 4, 2021*
*Page 5 of 4*

## **WIRE TRANSFER INSTRUCTIONS:**

Haber Law, P.A. IOTA Trust Account

IberiaBank
200 W. Congress Street
Lafayette, LA 70501

ABA #: ███████
ACCOUNT: ███████

SWIFT#: ███████

RE:  Association Dues – Valencia Unit 6913
     Matter # 3706.102

**Exhibit "4"**

CFN: 20210205943 BOOK 32413 PAGE 4637
DATE:03/24/2021  11:42:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

<u>**Prepared By and Return to:**</u>
Rebecca N. Casamayor, Esq.
Haber Law, P.A.
251 NW 23rd Street
Miami, FL 33127
Matter #3706.102

# <u>COVER PAGE TO</u>
# Homeowners' Association Claim of Lien
## (Valencia Estates – 6913 Valencia Drive)

A.145

## HOMEOWNERS' ASSOCIATION CLAIM OF LIEN

**Valencia Estates Homeowners' Association, Inc.** (the "Association"), a Florida not for profit corporation, hereby files this Claim of Lien against the following described property:

Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida. Property Address: 6913 Valencia Drive, Fisher Island, Florida 33109.

The record owner of the Property is: **Elizabeth Hazan.** The address of the Association is: 40306 Fisher Island Drive, Fisher Island, Florida, 33109. This Claim of Lien is for the amount of **$31,089.66** which includes the following:

| Item | Amount |
|------|-------:|
| Unpaid Regular Periodic Assessments (due first of each month, from 1/1/20 - 3/1/21) | $22,459.19 |
| Unpaid Interest at 18% per annum | 2,401.96 |
| Unpaid Late Fees | 300.00 |
| Unpaid Attorney's Fees | 5,622.50 |
| Unpaid Attorney's Costs | 35.51 |
| Attorneys' Fees and Costs for Disbursement Processing | 120.00 |
| | **$30,939.16** |
| Attorneys' Fees to prepare Release of Claim of Lien | 127.50 |
| Attorneys' Costs to record Release of Claim of Lien | 23.00 |
| **Total Due** | **$31,089.66** |

The Claim of Lien secures all unpaid assessments which are due and which may accrue subsequent to the recording of this Claim of Lien and before entry of a certificate of title, as well as all related charges permitted by § 720.3085, Fla. Stat., including but not necessarily limited to, interest at the rate reflected above, late charges, and reasonable costs and attorney fees incurred by the Association incident to the collection process. This Claim of Lien is filed pursuant to the Association's recorded Declaration of Covenants and Restrictions, as amended, and § 720.3085, Fla. Stat.

Dated this 17th day of March, 2021.

Valencia Estates Homeowners' Association, Inc.

By: _____

Print Name: Jason Giller

Title: VP/Director

STATE OF FLORIDA )
)ss
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this 17 day of March, 2021, by Jason Giller, who is the _____ of **Valencia Estates Homeowners' Association, Inc.,** and who is personally known to me or who produced _____ as identification.

Iren Kovalli
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG337549
Expires 5/28/2023

NOTARY PUBLIC, STATE OF FLORIDA

# A.146

**Exhibit "5"**



HABER LAW

**REBECCA NEWMAN CASAMAYOR, ESQ.**
305-379-2400 Ext. 117
RCASAMAYOR@HABER.LAW

<u>**NOTICE OF INTENT TO FORECLOSE CLAIM OF LIEN**</u>
<u>**(This letter is being sent pursuant to Florida Statues, Chapter 720)**</u>

April 5, 2021

<u>**Via Regular U.S. and Certified Mail, Return Receipt**</u>
<u>**Requested & Via E-mail:**</u>
***Barcode: 9214890194038300003603288***
Elizabeth Hazan a/k/a Liza Hazan
6913 Valencia Drive
Fisher Island, Florida 33109
E-mail: elizabethhazan07@gmail.com;
elizabeth9246qc@gmail.com

> *RE:    Valencia Estates Homeowners' Association, Inc.*
> *Property: Parcel/Lot/Unit 6913*
> *Owner: Elizabeth Hazan*
> *Matter #: 3706.102*

Dear Ms. Hazan:

As you are aware, our law firm represents **Valencia Estates Homeowners' Association, Inc.** ("Association"). Enclosed is a copy of the Claim of Lien that has been recorded in the Public Records of Miami-Dade County, Florida against your property, Parcel/Lot/Unit 6913 within Valencia Estates (the "Subject Property"). The Claim of Lien was recorded against the Subject Property due to your failure to pay the below assessments and related charges to the Association. The Association will be authorized and intends to file a foreclosure action if the following amounts, together with any subsequent sums that come due, are not paid in full within forty-five (45) days after your receipt of this letter:

| Item | Amount |
|------|--------|
| Unpaid Regular Assessments (due first of month, Jan. 2020-April 2021)[1] | $24,185.35 |
| Unpaid Interest at 18% per annum[2] | 2,401.96 |
| Unpaid Late Fees[3] | 300.00 |

---

[1] Due dates take into account application of all payments received, in accordance with Fla. Stat. 720.3085, to a debt beginning in August 2019.
[2] Accruing from August 2019 through March 31, 2021.
[3] Accruing from August 2019 through March 31, 2021.

A.147

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Foreclose*
*April 5, 2021*
*Page 2 of 4*

| | |
|---|---:|
| Unpaid Attorneys' Fees[4] | 5,922.50 |
| Unpaid Attorneys' Costs | 41.87 |
| Disbursement Processing Fee | 120.00 |
| | **$32,971.68** |
| Attorney' Fees for preparing Release of Lien | 127.50 |
| Attorneys' Costs for recording Release of Lien | 23.00 |
| **TOTAL DUE ON OR BEFORE 4/15/21:** | **$33,122.18** |

The Total Due, as specified above, takes into account charges and application of payments received for Ongoing Assessments, in accordance with Fla. Stat. 720.3085, from August 2019 to present. The Total Due does not affect any amounts owed by you for any other reason or pursuant to any judgment, order, and/or agreement. This correspondence does not address or concern any amounts that may be due or come due with respect to your bankruptcy proceedings in the Bankruptcy Court for the Southern District of Florida (Case No.: 16-10389-AJC – Chapter 11). This correspondence pertains only to Ongoing Assessments and related charges due to the Association, pursuant to the Stipulation of Settlement Claim 10 executed by you and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (the "Stipulation"), as well as pursuant to Article 6 of the Association's Declaration and Florida Statutes, Chapter 720.

Please be advised that if payment for the Total Due, as specified above, is not paid in full on or before April 15, 2021, additional late fees in the amount of $25.00 will come due, and additional interest at the rate of eighteen percent (18%) per annum will accrue on the balance of all unpaid assessments. Further, on May 1, 2021 (and the first of every month thereafter), additional regular periodic assessments in the amount of $1,726.16 will come due. **Please keep these dates and amounts in mind when you make your payment**.

**Do not send a check directly to the Association as this will delay crediting the account and may cause attorneys' fees and costs to continue to accrue.** We have enclosed the wiring instructions for this law firm's IOTA Trust Account for your review and for the purpose of forwarding payment. If payment is to be made by check, please make same payable to Haber Law, P.A. Trust Account and forward same to this office, to be received on or before April 15, 2021.

If you have any further questions concerning this account, please write a letter or send an email to the undersigned, pursuant to the contact information listed on the first page of this letter.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

---

[4] Incurred incident to the collections process for Ongoing Assessments, from September 2020 to the date of this correspondence, pursuant to the Declaration and Fla. Stat. 720.3085.

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Foreclose*
*April 5, 2021*
*Page 3 of 4*

This correspondence reserves all rights of the Association, without limitation.

Very truly yours,

**HABER LAW, P.A.**

*/s/ Rebecca N. Casamayor, Esq.*

REBECCA NEWMAN CASAMAYOR, ESQ.

Enclosures:     Recorded Claim of Lien

A.149

*Valencia Estates - - Unit 6913 (Hazan)*
*Notice of Intent to Foreclose*
*April 5, 2021*
*Page 4 of 4*

## **WIRE TRANSFER INSTRUCTIONS**:

Haber Law, P.A. IOTA Trust Account

IberiaBank
200 W. Congress Street
Lafayette, LA 70501

ABA #: ▮▮▮▮▮▮
ACCOUNT: ▮▮▮▮▮▮▮

SWIFT#: ▮▮▮▮▮

RE:  Association Dues – Valencia Unit 6913
        Matter # 3706.102

CFN: 20210205943 BOOK 32413 PAGE 4637
DATE:03/24/2021  11:42:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Prepared By and Return to:**
Rebecca N. Casamayor, Esq.
Haber Law, P.A.
251 NW 23rd Street
Miami, FL 33127
Matter #3706.102

# COVER PAGE TO
## Homeowners' Association Claim of Lien
### (Valencia Estates – 6913 Valencia Drive)

## HOMEOWNERS' ASSOCIATION CLAIM OF LIEN

**Valencia Estates Homeowners' Association, Inc.** (the "Association"), a Florida not for profit corporation, hereby files this Claim of Lien against the following described property:

Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida. Property Address: 6913 Valencia Drive, Fisher Island, Florida 33109.

The record owner of the Property is: **Elizabeth Hazan.** The address of the Association is: 40306 Fisher Island Drive, Fisher Island, Florida, 33109. This Claim of Lien is for the amount of **$31,089.66** which includes the following:

| Item | Amount |
|------|--------|
| Unpaid Regular Periodic Assessments (due first of each month, from 1/1/20 - 3/1/21) | $22,459.19 |
| Unpaid Interest at 18% per annum | 2,401.96 |
| Unpaid Late Fees | 300.00 |
| Unpaid Attorney's Fees | 5,622.50 |
| Unpaid Attorney's Costs | 35.51 |
| Attorneys' Fees and Costs for Disbursement Processing | 120.00 |
| | **$30,939.16** |
| Attorneys' Fees to prepare Release of Claim of Lien | 127.50 |
| Attorneys' Costs to record Release of Claim of Lien | 23.00 |
| **Total Due** | **$31,089.66** |

The Claim of Lien secures all unpaid assessments which are due and which may accrue subsequent to the recording of this Claim of Lien and before entry of a certificate of title, as well as all related charges permitted by § 720.3085, Fla. Stat., including but not necessarily limited to, interest at the rate reflected above, late charges, and reasonable costs and attorney fees incurred by the Association incident to the collection process. This Claim of Lien is filed pursuant to the Association's recorded Declaration of Covenants and Restrictions, as amended, and § 720.3085, Fla. Stat.

Dated this 17ᵗʰ day of March , 2021.

Valencia Estates Homeowners' Association, Inc.

By:

Print Name: Jason Giller

Title: VP/Director

STATE OF FLORIDA          )
                                         )ss
COUNTY OF MIAMI-DADE  )

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this 17 day of March , 2021, by Jason Giller , who is the _____ of **Valencia Estates Homeowners' Association, Inc.,** and who is personally known to me or who produced _____ as identification.

Iren Kovalli
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG337549
Expires 5/28/2023

NOTARY PUBLIC, STATE OF FLORIDA

## A.152

**Exhibit "6"**



HABER LAW

**REBECCA NEWMAN CASAMAYOR, ESQ.**
305-379-2400 Ext. 117
RCASAMAYOR@HABER.LAW

## [SUPPLEMENTAL] NOTICE OF INTENT TO FORECLOSE CLAIM OF LIEN
### (This letter is being sent pursuant to Florida Statues, Chapter 720)

February 7, 2022

**Via Federal Express, Regular U.S. and Certified Mail,**
**Return Receipt Requested & Via E-mail:**
*Barcode: 9214 8901 9403 8300 0065 6729 75*
Elizabeth Hazan a/k/a Liza Hazan
6913 Valencia Drive
Fisher Island, Florida 33109
E-mail: elizabethhazan07@gmail.com;
elizabeth9246qc@gmail.com

> **RE:    *Valencia Estates Homeowners' Association, Inc.***
> ***Property: Parcel/Lot/Unit 6913***
> ***Owner: Elizabeth Hazan***
> ***Matter #: 3706.102***

Dear Ms. Hazan:

As you are aware, our law firm represents **Valencia Estates Homeowners' Association, Inc.** ("Association"). Enclosed is a copy of the Claim of Lien that has been recorded in the Public Records of Miami-Dade County, Florida against your property, Parcel/Lot/Unit 6913 within Valencia Estates (the "Subject Property"). The Claim of Lien was recorded against the Subject Property due to your failure to pay the below assessments and related charges to the Association. The Association will be authorized and intends to file a foreclosure action if the following amounts, together with any subsequent sums that come due, are not paid in full within forty-five (45) days after your receipt of this letter:

| Item | Amount |
|---|---|
| Unpaid Regular Assessments (due first of month, Jan. 2020-Feb. 2022)[1] | $41,486.15 |
| Unpaid Interest at 18% per annum[2] | 7,196.09 |
| Unpaid Late Fees[3] | 550.00 |

---

[1] Due dates take into account application of all payments received, in accordance with Fla. Stat. 720.3085, to a debt beginning in August 2019.
[2] Accruing from August 2019 through January 31, 2022.
[3] Accruing from August 2019 through January 31, 2022.

A.153

*Valencia Estates - - Unit 6913 (Hazan)*
*[Supplemental] Notice of Intent to Foreclose*
*February 7, 2022*
*Page 2 of 4*

| | |
|---|---:|
| Unpaid Attorneys' Fees[4] | 9,660.00 |
| Unpaid Attorneys' Costs | 72.07 |
| Disbursement Processing Fee | 120.00 |
| | **$59,084.31** |
| Attorney' Fees for preparing Release of Lien | 127.50 |
| Attorneys' Costs for recording Release of Lien | 23.25 |
| **TOTAL DUE ON OR BEFORE 2/15/22:** | **$59,235.06** |

The Total Due, as specified above, takes into account charges and application of payments received for Ongoing Assessments, in accordance with Fla. Stat. 720.3085, from August 2019 to present. The Total Due does not affect any amounts owed by you for any other reason or pursuant to any judgment, order, and/or agreement. This correspondence does not address or concern any amounts that may be due or come due with respect to your bankruptcy proceedings in the Bankruptcy Court for the Southern District of Florida (Case No.: 16-10389-AJC – Chapter 11). This correspondence pertains only to Ongoing Assessments and related charges due to the Association, pursuant to the Stipulation of Settlement Claim 10 executed by you and the Association on or about August 17, 2016 [D.E. 209-A] and approved by the Bankruptcy Court on November 17, 2016 [D.E. 302] (the "Stipulation"), as well as pursuant to Article 6 of the Association's Declaration and Florida Statutes, Chapter 720.

Please be advised that if payment for the Total Due, as specified above, is not paid in full on or before February 15, 2022, additional late fees in the amount of $25.00 will come due, and additional interest at the rate of eighteen percent (18%) per annum will accrue on the balance of all unpaid assessments. Further, on March 1, 2022 (and the first of every month thereafter), additional regular periodic assessments in the amount of $1,734.00 will come due. **Please keep these dates and amounts in mind when you make your payment**.

**Do not send a check directly to the Association as this will delay crediting the account and may cause attorneys' fees and costs to continue to accrue.** We have enclosed the wiring instructions for this law firm's IOTA Trust Account for your review and for the purpose of forwarding payment. If payment is to be made by check, please make same payable to Haber Law, P.A. Trust Account and forward same to this office, to be received on or before February 15, 2022.

If you have any further questions concerning this account, please write a letter or send an email to the undersigned, pursuant to the contact information listed on the first page of this letter.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

---

[4] Incurred incident to the collections process for Ongoing Assessments, from September 2020 to the date of this correspondence, pursuant to the Declaration and Fla. Stat. 720.3085.

A.154

*Valencia Estates - - Unit 6913 (Hazan)*
*[Supplemental] Notice of Intent to Foreclose*
*February 7, 2022*
*Page 3 of 4*

This correspondence reserves all rights of the Association, without limitation.

Very truly yours,

**HABER LAW, P.A.**

*/s/ Rebecca N. Casamayor, Esq.*

REBECCA NEWMAN CASAMAYOR, ESQ.

Enclosures:      HLPA Wire Instructions
                 Recorded Claim of Lien

A.155

*Valencia Estates - - Unit 6913 (Hazan)*
*[Supplemental] Notice of Intent to Foreclose*
*February 7, 2022*
*Page 4 of 4*

## **WIRE TRANSFER INSTRUCTIONS:**

Haber Law, P.A. IOTA Trust Account

IberiaBank/First Horizon*
200 W. Congress Street
Lafayette, LA 70501

ABA #: ███████████
ACCOUNT: ███████████

SWIFT#: ███████

RE:  Association Dues – Valencia Unit 6913
     Matter # 3706.102

**Wire cutoff time is 4 PM Eastern Standard Time**

*Please note that Iberia Bank is currently merging with First Horizon.  The First Horizon name may show under this ABA number.  The information is still correct, and the wire will come through to the IberiaBank account.

**Consumer Fraud Alert:**

Please contact our office at 305-379-2400 to confirm wire instructions.  All wires must be verified by phone with our office prior to sending the wire.  Please notify us immediately if different wire instructions are received.

A.156

CFN: 20210205943 BOOK 32413 PAGE 4637
DATE:03/24/2021  11:42:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Prepared By and Return to:**
Rebecca N. Casamayor, Esq.
Haber Law, P.A.
251 NW 23rd Street
Miami, FL 33127
Matter #3706.102

# COVER PAGE TO

## Homeowners' Association Claim of Lien
### (Valencia Estates – 6913 Valencia Drive)

## HOMEOWNERS' ASSOCIATION CLAIM OF LIEN

**Valencia Estates Homeowners' Association, Inc.** (the "Association"), a Florida not for profit corporation, hereby files this Claim of Lien against the following described property:

Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida. Property Address: 6913 Valencia Drive, Fisher Island, Florida 33109.

The record owner of the Property is: **Elizabeth Hazan.** The address of the Association is: 40306 Fisher Island Drive, Fisher Island, Florida, 33109. This Claim of Lien is for the amount of **$31,089.66** which includes the following:

| Item | Amount |
|------|-------:|
| Unpaid Regular Periodic Assessments (due first of each month, from 1/1/20 - 3/1/21) | $22,459.19 |
| Unpaid Interest at 18% per annum | 2,401.96 |
| Unpaid Late Fees | 300.00 |
| Unpaid Attorney's Fees | 5,622.50 |
| Unpaid Attorney's Costs | 35.51 |
| Attorneys' Fees and Costs for Disbursement Processing | 120.00 |
| | **$30,939.16** |
| Attorneys' Fees to prepare Release of Claim of Lien | 127.50 |
| Attorneys' Costs to record Release of Claim of Lien | 23.00 |
| **Total Due** | **$31,089.66** |

The Claim of Lien secures all unpaid assessments which are due and which may accrue subsequent to the recording of this Claim of Lien and before entry of a certificate of title, as well as all related charges permitted by § 720.3085, Fla. Stat., including but not necessarily limited to, interest at the rate reflected above, late charges, and reasonable costs and attorney fees incurred by the Association incident to the collection process. This Claim of Lien is filed pursuant to the Association's recorded Declaration of Covenants and Restrictions, as amended, and § 720.3085, Fla. Stat.

Dated this 17th day of March , 2021.

Valencia Estates Homeowners' Association, Inc.

By:

Print Name: Jason Giller

Title: VP/Director

STATE OF FLORIDA )
)ss
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this 17 day of March , 2021, by Jason Giller , who is the _____ of **Valencia Estates Homeowners' Association, Inc.,** and who is personally known to me or who produced _____ as identification.

Iren Kovalli
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG337549
Expires 5/28/2023

NOTARY PUBLIC, STATE OF FLORIDA

## A.158

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 694 of 866

CFN: 20220260391 BOOK 33098 PAGE 2524
DATE:03/31/2022 08:54:58 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.: 2022-005424-CA-01

VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC., a Florida
not-for-profit corporation,

      Plaintiff,

vs.

ELIZABETH HAZAN, an individual; SEAN NEIL
MEEHAN, as spouse of ELIZABETH HAZAN, an
individual; 6913 VALENCIA, LLC, a Florida limited
liability company; JOHN DOE and JANE DOE as
unknown as unknown tenants or occupants,

      Defendants.

_____/

## **NOTICE OF LIS PENDENS**

**TO:  DEFENDANTS, ELIZABETH HAZAN; SEAN NEIL MEEHAN; 6913 VALENCIA,
LLC; JOHN DOE AND JANE DOE; AND ALL OTHERS WHOM IT MAY
CONCERN:**

**YOU ARE NOTIFIED OF THE FOLLOWING:**

(a) The Plaintiff has instituted this action against you seeking to foreclose a Claim of Lien
recorded on March 24, 2021, in Official Records Book 32413 at Pages 4637-38 of the
public records of Miami-Dade County, Florida, with respect to the property described
below;

(b) The Plaintiff in this action is: **VALENCIA ESTATES HOMEOWNERS'
ASSOCIATION, INC.;**

A.159

CFN: 20220260391 BOOK 33098 PAGE 2525

*Valencia Estates Homeowners' Association, Inc. v. Elizabeth Hazan, et al.*
*Notice of Lis Pendens*

(c) The case number of the action is as shown in the caption;

(d) The property that is the subject matter of this action is in Miami-Dade County, Florida as is described as follows:

Lot 7, Block 2, of LINDEISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, page 64, Public Records of Miami-Dade County, Florida.

The property address is 6913 Valencia Drive, Fisher Island, FL 33109.

Dated this 24th day of March, 2022.

Respectfully submitted,

**HABER LAW, P.A.**
*Counsel for Plaintiff*
251 NW 23rd Street
Miami, FL 33127
Telephone No.: (305) 379-2400
Facsimile No.: (305) 379-1106
service@haber.law

By:     */s/ Rebecca N. Casamayor*
**REBECCA N. CASAMAYOR, ESQ.**
Florida Bar No.: 99070
rcasamayor@haber.law
jfehpe@haber.law
**DEESHA SMART, ESQ.**
Florida Bar No. 1026394
dsmart@haber.law

A.160

CFN: 20210205943 BOOK 32413 PAGE 4637
DATE:03/24/2021  11:42:18 AM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE CTY

**Prepared By and Return to:**
Rebecca N. Casamayor, Esq.
Haber Law, P.A.
251 NW 23rd Street
Miami, FL 33127
Matter #3706.102

# COVER PAGE TO
# Homeowners' Association Claim of Lien
## (Valencia Estates – 6913 Valencia Drive)

## HOMEOWNERS' ASSOCIATION CLAIM OF LIEN

**Valencia Estates Homeowners' Association, Inc.** (the "Association"), a Florida not for profit corporation, hereby files this Claim of Lien against the following described property:

Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida. Property Address: 6913 Valencia Drive, Fisher Island, Florida 33109.

The record owner of the Property is: **Elizabeth Hazan.** The address of the Association is: 40306 Fisher Island Drive, Fisher Island, Florida, 33109. This Claim of Lien is for the amount of **$31,089.66** which includes the following:

| Item | Amount |
|------|-------|
| Unpaid Regular Periodic Assessments (due first of each month, from 1/1/20 - 3/1/21) | $22,459.19 |
| Unpaid Interest at 18% per annum | 2,401.96 |
| Unpaid Late Fees | 300.00 |
| Unpaid Attorney's Fees | 5,622.50 |
| Unpaid Attorney's Costs | 35.51 |
| Attorneys' Fees and Costs for Disbursement Processing | 120.00 |
|  | **$30,939.16** |
| Attorneys' Fees to prepare Release of Claim of Lien | 127.50 |
| Attorneys' Costs to record Release of Claim of Lien | 23.00 |
| **Total Due** | **$31,089.66** |

The Claim of Lien secures all unpaid assessments which are due and which may accrue subsequent to the recording of this Claim of Lien and before entry of a certificate of title, as well as all related charges permitted by § 720.3085, Fla. Stat., including but not necessarily limited to, interest at the rate reflected above, late charges, and reasonable costs and attorney fees incurred by the Association incident to the collection process. This Claim of Lien is filed pursuant to the Association's recorded Declaration of Covenants and Restrictions, as amended, and § 720.3085, Fla. Stat.

Dated this _17th_ day of ____March____, 2021.

Valencia Estates Homeowners' Association, Inc.

By: _____

Print Name: _Jason Giller_

Title: _VP/Director_

STATE OF FLORIDA      )
                                        )ss
COUNTY OF MIAMI-DADE   )

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this _17_ day of _March_, 2021, by _Jason Giller_, who is the _____ of **Valencia Estates Homeowners' Association, Inc.,** and who is personally known to me or who produced _____ as identification.

Iren Kovaili
NOTARY PUBLIC
STATE OF FLORIDA
Comm# GG337549
Expires 5/28/2023

_____
NOTARY PUBLIC, STATE OF FLORIDA

A.162

Paid 11/05/SSBPG
Paid 11/28/2018   Receipt # EEX-19-000360
Duplicate public  user 09/30/2021
$54,957.20

Miami-Dade County, Florida

# 2018   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### S E E   R E V E R S E   S I D E   F O R   I M P O R T A N T   I N F O R M A T I O N

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 30-4209-016-0070 | UNINCORPORATED DADE COUNTY | 3000 |

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL  33109-0601

Property Address
6913 VALENCIA DR

Exemptions:
ADDL HOMESTEAD, HOMESTEAD

### AD VALOREM TAXES

| TAXING AUTHORITY | ASSESSED VALUE | MILLAGE RATE PER | $1,000 OF TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|
| Miami-Dade School Board | | | | |
| School Board Operating | 3,356,153 | 6.50400 | 3,331,153 | 21,665.82 |
| School Board Debt Service | 3,356,153 | 0.22900 | 3,331,153 | 762.83 |
| State and Other | | | | |
| Florida Inland Navigation Dist | 3,356,153 | 0.03200 | 3,306,153 | 105.80 |
| South Florida Water Mgmt Dist | 3,356,153 | 0.12090 | 3,306,153 | 399.71 |
| Okeechobee Basin | 3,356,153 | 0.13100 | 3,306,153 | 433.11 |
| Everglades Construction Proj | 3,356,153 | 0.04170 | 3,306,153 | 137.87 |
| Childrens Trust Authority | 3,356,153 | 0.44150 | 3,306,153 | 1,459.67 |
| Miami-Dade County | | | | |
| County Wide Operating | 3,356,153 | 4.66690 | 3,306,153 | 15,429.49 |
| County Wide Debt Service | 3,356,153 | 0.46440 | 3,306,153 | 1,535.38 |
| Unincorporated Operating | 3,356,153 | 1.92830 | 3,306,153 | 6,375.25 |
| Library District | 3,356,153 | 0.28400 | 3,306,153 | 938.95 |
| Fire Rescue Operating | 3,356,153 | 2.42070 | 3,306,153 | 8,003.20 |
| Fire Rescue Debt Service | 3,356,153 | 0.00000 | 3,306,153 | 0.00 |

Paid

### NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | FOOTAGE/UNITS | AMOUNT |
|---|---|---|---|
| | | | |

| AMOUNT IF PAID BY (pay only one amount) | | | Combined Taxes and Assessments |
|---|---|---|---|
| Nov 30, 2018 $0.00 | | | $57,247.08 |

↑ RETAIN FOR YOUR RECORDS ↑

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## 2018  Real Estate Property Taxes

↓ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ↓     Duplicate public  user 09/30/2021

30-4209-016-0070
FOLIO NUMBER
6913 VALENCIA DR
PROPERTY ADDRESS
LEGAL DESCRIPTION
LINDISFARNE ON FISHER ISL SEC 10
PB 157-64 T-20665
LOT 7 BLK 2
LOT SIZE 12393 SQ FT
FAU 30

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

* 1 + 3 0 4 2 0 9 0 1 6 0 0 7 0 + 2 0 1 8 *

Make checks payable to:
Miami-Dade Tax Collector
(in U.S. funds drawn on U.S. banks)
Amount due May be Subject to Change Without Notice
Mail payments to:
200 NW 2nd Avenue, Miami, FL 33128

| PAY ONLY ONE AMOUNT | |
|---|---|
| If Paid By | Please Pay |
| Nov 30, 2018 | **$0.00** |

Paid

1000000000000304209016007020180000000000000004

Paid 11/055 BPG   Duplicate public  09/30/2021
Paid 11/25/2019   Receipt # EEX-20-000210   $57,450.68

Miami-Dade County, Florida

# 2019   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### SEE REVERSE SIDE FOR IMPORTANT INFORMATION

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 30-4209-016-0070 | UNINCORPORATED DADE COUNTY | 3000 |

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

Property Address
6913 VALENCIA DR

Exemptions:
ADDL HOMESTEAD, HOMESTEAD

### AD VALOREM TAXES

| TAXING AUTHORITY | ASSESSED VALUE | MILLAGE RATE PER | $1,000 OF TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|
| Miami-Dade School Board | | | | |
| School Board Operating | 3,419,919 | 7.02500 | 3,394,919 | 23,849.31 |
| School Board Debt Service | 3,419,919 | 0.12300 | 3,394,919 | 417.58 |
| State and Other | | | | |
| Florida Inland Navigation Dist | 3,419,919 | 0.03200 | 3,369,919 | 107.84 |
| South Florida Water Mgmt Dist | 3,419,919 | 0.11520 | 3,369,919 | 388.21 |
| Okeechobee Basin | 3,419,919 | 0.12460 | 3,369,919 | 419.89 |
| Everglades Construction Proj | 3,419,919 | 0.03970 | 3,369,919 | 133.79 |
| Childrens Trust Authority | 3,419,919 | 0.46800 | 3,369,919 | 1,577.12 |
| Miami-Dade County | | | | |
| County Wide Operating | 3,419,919 | 4.66690 | 3,369,919 | 15,727.07 |
| County Wide Debt Service | 3,419,919 | 0.47800 | 3,369,919 | 1,610.82 |
| Unincorporated Operating | 3,419,919 | 1.92830 | 3,369,919 | 6,498.21 |
| Library District | 3,419,919 | 0.28400 | 3,369,919 | 957.06 |
| Fire Rescue Operating | 3,419,919 | 2.42070 | 3,369,919 | 8,157.56 |
| Fire Rescue Debt Service | 3,419,919 | 0.00000 | 3,369,919 | 0.00 |

Paid

### NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | FOOTAGE/UNITS | AMOUNT |
|---|---|---|---|
| | | | |

| AMOUNT IF PAID BY (pay only one amount) | | | Combined Taxes and Assessments |
|---|---|---|---|
| Nov 30, 2019 $0.00 | | | $59,844.46 |

↑ RETAIN FOR YOUR RECORDS ↑

---

**2019  Real Estate Property Taxes**

↓ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ↓        Duplicate public  user 09/30/2021

30-4209-016-0070
FOLIO NUMBER
6913 VALENCIA DR
PROPERTY ADDRESS
LEGAL DESCRIPTION
LINDISFARNE ON FISHER ISL SEC 10
PB 157-64 T-20665
LOT 7 BLK 2
LOT SIZE 12393 SQ FT
FAU 30

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601



* 1 + 3 0 4 2 0 9 0 1 6 0 0 7 0 + 2 0 1 9 *

Make checks payable to:
Miami-Dade Tax Collector
(in U.S. funds drawn on U.S. banks)
Amount due May be Subject to Change Without Notice
Mail payments to:
200 NW 2nd Avenue, Miami, FL 33128

**PAY ONLY ONE AMOUNT**

If Paid By  Please Pay

Nov 30, 2019 **$0.00**

Paid

Paid By JP MORGAN CHASE                                    Duplicate public  user 09/23/2021
Paid  11/27/2020      Receipt # EEX-21-000513                                    $58,627.29

Miami-Dade County, Florida

# 2020   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### S E E   R E V E R S E   S I D E   F O R   I M P O R T A N T   I N F O R M A T I O N

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 30-4209-016-0070 | UNINCORPORATED DADE COUNTY | 3000 |

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

Property Address
6913 VALENCIA DR

Exemptions:
ADDL HOMESTEAD, HOMESTEAD

| AD VALOREM TAXES | | | | |
|---|---|---|---|---|
| **TAXING AUTHORITY** | **ASSESSED VALUE** | **MILLAGE RATE PER** | **$1,000 OF TAXABLE VALUE** | **TAXES LEVIED** |
| Miami-Dade School Board | | | | |
| School Board Operating | 3,498,577 | 6.18600 | 3,473,577 | 21,487.55 |
| School Board Debt Service | 3,498,577 | 0.19300 | 3,473,577 | 670.40 |
| Voted School Operating | 3,498,577 | 0.75000 | 3,473,577 | 2,605.18 |
| State and Other | | | | |
| Florida Inland Navigation Dist | 3,498,577 | 0.03200 | 3,448,577 | 110.35 |
| South Florida Water Mgmt Dist | 3,498,577 | 0.11030 | 3,448,577 | 380.38 |
| Okeechobee Basin | 3,498,577 | 0.11920 | 3,448,577 | 411.07 |
| Everglades Construction Proj | 3,498,577 | 0.03800 | 3,448,577 | 131.05 |
| Childrens Trust Authority | 3,498,577 | 0.45070 | 3,448,577 | 1,554.27 |
| Miami-Dade County | | | | |
| County Wide Operating | 3,498,577 | 4.66690 | 3,448,577 | 16,094.16 |
| County Wide Debt Service | 3,498,577 | 0.47800 | 3,448,577 | 1,648.42 |
| Unincorporated Operating | 3,498,577 | 1.92830 | 3,448,577 | 6,649.89 |
| Library District | 3,498,577 | 0.28400 | 3,448,577 | 979.40 |
| Fire Rescue Operating | 3,498,577 | 2.42070 | 3,448,577 | 8,347.97 |

Paid

| NON-AD VALOREM ASSESSMENTS | | | |
|---|---|---|---|
| **LEVYING AUTHORITY** | **RATE** | **FOOTAGE/UNITS** | **AMOUNT** |
| | | | |

| AMOUNT IF PAID BY (pay only one amount) | | | | Combined Taxes and Assessments |
|---|---|---|---|---|
| Nov 30, 2020 $0.00 | | | | $61,070.09 |

⬆ RETAIN FOR YOUR RECORDS ⬆

---

## 2020  Real Estate Property Taxes

⬥ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ⬥

Duplicate public  user 09/23/2021

30-4209-016-0070
FOLIO NUMBER
6913 VALENCIA DR
PROPERTY ADDRESS
LEGAL DESCRIPTION
LINDISFARNE ON FISHER ISL SEC 10
PB 157-64 T-20665
LOT 7 BLK 2
LOT SIZE 12393 SQ FT
FAU 30

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

* 1 + 3 0 4 2 0 9 0 1 6 0 0 7 0 + 2 0 2 0 *

Make checks payable to:
Miami-Dade Tax Collector
(in U.S. funds drawn on U.S. banks)
Amount due May be Subject to Change Without Notice
Mail payments to:
200 NW 2nd Avenue, Miami, FL 33128

| PAY ONLY ONE AMOUNT |
|---|
| If Paid By  Please Pay |
| Nov 30, 2020  **$0.00** |

Paid

A.165

Paid By JOSEPH                                                    Duplicate public user 04/22/2022
866   Paid 11/19/2021   Receipt # EEX-22-000169              $59,281.76

Miami-Dade County, Florida

# 2021   Real Estate Property Taxes
## Notice of Ad Valorem Tax and Non-Ad Valorem Assessments
### S E E   R E V E R S E   S I D E   F O R   I M P O R T A N T   I N F O R M A T I O N

| FOLIO NUMBER | MUNICIPALITY | MILL CODE |
|---|---|---|
| 30-4209-016-0070 | UNINCORPORATED DADE COUNTY | 3000 |

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

Property Address
6913 VALENCIA DR

Exemptions:
ADDL HOMESTEAD, HOMESTEAD

## AD VALOREM TAXES

| TAXING AUTHORITY | ASSESSED VALUE | MILLAGE RATE PER | $1,000 OF TAXABLE VALUE | TAXES LEVIED |
|---|---|---|---|---|
| Miami-Dade School Board | | | | |
| School Board Operating | 3,547,557 | 6.07900 | 3,522,557 | 21,413.63 |
| School Board Debt Service | 3,547,557 | 0.18000 | 3,522,557 | 634.06 |
| Voted School Operating | 3,547,557 | 0.75000 | 3,522,557 | 2,641.92 |
| State and Other | | | | |
| Florida Inland Navigation District | 3,547,557 | 0.03200 | 3,497,557 | 111.92 |
| South Florida Water Management District | 3,547,557 | 0.10610 | 3,497,557 | 371.09 |
| Okeechobee Basin | 3,547,557 | 0.11460 | 3,497,557 | 400.82 |
| Everglades Construction Project | 3,547,557 | 0.03650 | 3,497,557 | 127.66 |
| Childrens Trust Authority | 3,547,557 | 0.50000 | 3,497,557 | 1,748.78 |
| Miami-Dade County | | | | |
| County Wide Operating | 3,547,557 | 4.66690 | 3,497,557 | 16,322.75 |
| County Wide Debt Service | 3,547,557 | 0.50750 | 3,497,557 | 1,775.01 |
| Unincorporated Operating | 3,547,557 | 1.92830 | 3,497,557 | 6,744.34 |
| Library District | 3,547,557 | 0.28400 | 3,497,557 | 993.31 |
| Fire Rescue Operating | 3,547,557 | 2.42070 | 3,497,557 | 8,466.54 |

Paid

## NON-AD VALOREM ASSESSMENTS

| LEVYING AUTHORITY | RATE | FOOTAGE/UNITS | AMOUNT |
|---|---|---|---|
| | | | |

| AMOUNT IF PAID BY (pay only one amount) | | | Combined Taxes and Assessments |
|---|---|---|---|
| Nov 30, 2021 $0.00 | | | $61,751.83 |

↑ RETAIN FOR YOUR RECORDS ↑

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## 2021   Real Estate Property Taxes

↓ DETACH HERE AND RETURN THIS PORTION WITH YOUR PAYMENT ↓    Duplicate public user 04/22/2022

30-4209-016-0070
FOLIO NUMBER
6913 VALENCIA DR
PROPERTY ADDRESS
LEGAL DESCRIPTION
LINDISFARNE ON FISHER ISL SEC 10
PB 157-64 T-20665
LOT 7 BLK 2
LOT SIZE 12393 SQ FT
FAU 30

ELIZABETH HAZAN
6913 VALENCIA DR
FISHER ISLAND, FL   33109-0601

* 1 + 3 0 4 2 0 9 0 1 6 0 0 7 0 + 2 0 2 1 *

Make checks payable to:
Miami-Dade Tax Collector
(in U.S. funds drawn on U.S. banks)
Amount due May be Subject to Change Without Notice
Mail payments to:
200 NW 2nd Avenue, Miami, FL 33128

| PAY ONLY ONE AMOUNT | |
|---|---|
| If Paid By | Please Pay |
| Nov 30, 2021 | $0.00 |

Paid

1000000000000030420901600700021

A.166

Case 1:23-cv-21055-DPG Document 6-3 Entered on FLSD Docket 04/18/2023 Page 702 of 866

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT, IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2013-025902-CA-01

JPMORGAN CHASE BANK, N.A.

     Plaintiff,

v.

ELIZABETH HAZAN,

     Defendant.

_____/

## ELIZABETH HAZAN'S CASE MANAGEMENT REPORT AND MOTION TO POSTPONE HEARING SET FOR APRIL 21, 2021

     Defendant Elizabeth Hazan ("Hazan") submits the following Case Management Report and respectfully moves this honorable Court to postpone the hearing currently set for April 21, 2021 at 10:00 AM for a later date:

### 1. Summary of Facts and Theory of Liability and/or Defenses

     Chase originally filed the instant action to foreclose a mortgage on a multi-million dollar house on Fisher Island, FL, owned by Defendant Elizabeth Hazan ("Hazan"). Hazan executed the note at issue, secured by the mortgage on the Fisher Island property, in March 2007 for the benefit of Washington Mutual Bank, N.A.

     In 2016, Hazan filed chapter 11 bankruptcy in the U.S. Bankruptcy Court for the Southern District of Florida. In June 2018, the bankruptcy court confirmed Hazan's plan. On December 2018, hazan received her discharge.

     Based on the language in the confirmed bankruptcy plan, Chase amended the complaint in the instant action to limit it to one count – a declaratory action to "determine the validity,

A.167

enforceability and amount of the mortgage and assignment thereof." In addition, Chase voluntarily dismissed all defendants other than Hazan.

The Washington Mutual ("WAMU") mortgage lien was wiped out in the Chapter 11 Bankruptcy because the mortgagee participated in the bankruptcy, the plan was confirmed, the property was dealt with in the plan, and the mortgagee's rights are not preserved in the plan. To the contrary, the plan expressly delegates to the state court the determination of validity, and certainly does not preserve the mortgage lien. "Accordingly, whether a plan extinguishes a lien depends on the requirements embedded in § 1141(c). The express wording of § 1141(c) provides that a lien is extinguished if (1) the plan is confirmed, (2) the property subject to the lien is "dealt with" by the plan, and (3) neither the plan nor the order of confirmation preserves it." *In re N. New England Tel. Operations LLC*, 795 F.3d 343, 346–47 (2d Cir. 2015). Similarly, "We therefore hold that a reorganization plan has extinguished a lien pursuant to § 1141(c) only if four conditions are satisfied: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" under the terms of the plan; and (4) the lienholder has participated in the bankruptcy proceedings." *In re N. New England Tel. Operations LLC*, 795 F.3d 343, 348 (2d Cir. 2015); *see also In re Dynamic Int'l Airways, LLC*, 17-10814, 2018 WL 7017736, at *8 (Bankr. M.D.N.C. Aug. 6, 2018).

Plaintiff's action is barred by its failure to comply with Section 702.015, Florida Statutes. Without limitation, the Complaint must contain affirmative allegations expressly made by the Plaintiff at the time the proceeding is commenced that the Plaintiff is the holder of the original note secured by the mortgage or allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note under Section 673.3011, Florida Statutes. *See* Section 702.015(2), Florida Statutes. Here, Plaintiff alleges that "Plaintiff acquired ownership of the subject loan from

2

A.168

the Federal Insurance Corporation ("FDIC") as Receiver for Washington Mutual Bank pursuant to a September 25, 2008 Purchase and Assumption Agreement between the FDIC and Chase. Chase or its counsel is in physical possession of the Note and is, therefore, entitled to enforce the Note as a nonholder in possession of the instrument who has the rights of a holder pursuant to Section 673.3011(2) Florida Statutes." First Amended Complaint ¶6.   Plaintiff does not specifically allege that it is the holder of the underline(original) note as required by Section 702.015(2), Florida Statutes, and has not filed a certification of possession of the original note as required by Section 702.015(4), Florida Statutes.  Indeed, Washington Mutual lost the original note more than a decade ago.  In a prior case in this Court, *Washington Mutual Bank v. Elizabeth Hazan, et al.*, Case No. 08-15394 CA 01, on September 24, 2008, Washington Mutual Bank provided sworn testimony that the original note had been lost in an affidavit of lost note.  In fact, in *JPMorgan Chase Bank v. Elizabeth Hazan, et al.*, Case No. 09-25721 CA 20, JPMorgan Chase Bank submitted its own sworn testimony to the same effect in an affidavit of lost note filed on May 7, 2009.  But Plaintiff has failed to file a lost note affidavit in the instant case as required by Section 702.015(5), Florida Statutes, or to plead a reestablishment of lost note count in the Complaint that would allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note.

Plaintiff lacks standing.  It is well settled that standing must be possessed at the outset and cannot be cured post-filing. "A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" at the time the complaint is filed. *Russell v. BAC Home Loans Servicing, LP*, 239 So. 3d 98, 100 (Fla. 4th DCA 2018) (quoting *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012)). Plaintiff is not the holder of either the note or mortgage.  Other than Plaintiff's allegation that it "…is entitled to enforce the Note as a holder in possession and to foreclose the Mortgage

A.169

securing the Note," Plaintiff has not specifically alleged that it is the holder of the <u>original</u> note and has not filed a certification of possession of the original note. According to affidavits submitted by Washington Mutual Bank and JPMorgan Chase Bank in prior litigation, the note was lost long before this action was filed and Plaintiff has not filed a lost note affidavit or pleaded a count for reestablishment of lost note in the Complaint. Further, no allegations were made that the loan was assigned to JPMorgan Chase Bank nor was an assignment of mortgage attached to the complaint. Section 559.715 requires an assignee to give written notice to the debtor within 30 days of assignment and no such notice was provided to the Defendant, evidencing that the note was not endorsed properly or assigned.

Plaintiff cannot obtain a judgment without surrendering the original note. "[I]n the case of original mortgages and promissory notes, they are not merely exhibits but instruments which *must be surrendered* prior to the issuance of a judgment. The judgment takes the place of the promissory note. Surrendering the note is essential so that it cannot thereafter be negotiated…. Stated differently, surrender removes a note from the stream of commerce, preventing someone else from trying to enforce it against the defendant a second time." *Deutsche Bank Nat. Trust Co. v. Clarke*, 87 So. 3d 58, 62 (Fla. 4th DCA 2012) (emphasis in the original). "In a foreclosure action the promissory note must be removed from the stream of commerce because the note is a negotiable instrument**.** A plaintiff must surrender the original promissory note to the *court or court clerk* or provide a satisfactory reason for the failure to do so before the trial court can issue a final judgment. *ALS Maxim I LLC v. Katsenko*, 218 So. 3d 472, 474 (Fla. 2d DCA 2017) (citation omitted). Given that Washington Mutual lost the original note over a decade ago, the Plaintiff will not be able to surrender the note prior to the issuance of a judgment.  While "lost note" is an exception to the above, Plaintiff failed to file a lost note affidavit as required by Section 702.015(5), Florida

Statutes, as well as plead a reestablishment of lost note count in the Complaint that would allege with specificity the factual basis by which the Plaintiff is entitled to enforce the note under Section 673.3011, Florida Statutes. Thus, unless Plaintiff amends, Plaintiff is precluded from obtaining a judgment for the reasons stated in this defense.

Defendant challenges the authenticity of the note and/or the authority of the person who executed the blank and original endorsement. According to sworn affidavits submitted by Washington Mutual and JPMorgan Chase Bank in prior litigation, the note was lost more than a decade ago. Additionally, the person signing the note never actually affixed their signature, which appears to be a "robosignature."

Plaintiff has failed to comply with conditions precedent to instituting suit, including failing to provide a proper notice of default and proper pre-acceleration notice to Defendant, and Defendant has been prejudiced thereby. Further, the Complaint is devoid of any allegation that a notice of pre-acceleration was given as required by the Mortgage, nor is a copy of any pre-acceleration notice purportedly given attached as an exhibit to the Complaint.

Plaintiff is barred from enforcing the alleged debt to the extent it exceeds the amount of the principal amount on which taxes were paid under section 201.08(1), Florida Statutes. The promissory note and mortgage, at origination, reference a debt with a principal amount of $3,825,000.00 secured by the mortgage. It appears that Washington Mutual paid certain taxes on the original principal amount of $3,825,000.00 when the mortgage was recorded.  Chase is now seeking to enforce and collect a debt under the same promissory note and secured by the same mortgage with an increased principal amount. The principal amount is purportedly $4,282,432.36 according to paragraph 12 of the Complaint, an increased principal amount of $457,432.36.  "In this district, a note or mortgage may not be enforced until the tax has been paid…." *Nikooie v.*

5

A.171

*JPMorgan Chase Bank, N.A.*, 183 So. 3d 424, 430 (Fla. 3rd DCA 2014).  "The failure to pay tax on the increased principal amount also precludes enforcement. § 199.282(4), Fla. Stat. (2006). That provision plainly pertains to mortgage liens for original loans and future advances alike." *Id.* at 431.  Thus, in the absence of payment of certain taxes on the increased amount of principal that Plaintiff is seeking, Plaintiff may not sue to recover the increased amount.

Plaintiff has failed to comply with Section 660.27, Florida Statutes. Section 660.27, titled: *Deposit of securities with Chief Financial Officer*, provides, in pertinent part:

> (1)   Before transacting any trust business in this state, every trust company and every state or national bank or state or federal association having trust powers shall give satisfactory security by the deposit or pledge of security of the kind or type provided in this section having at all times a market value in an amount equal to 25 percent of the issued and outstanding capital stock of such trust company, bank, or state or federal stock association or, in the case of a federal mutual association, an equivalent amount determined by the office, or the sum of $25,000, whichever is greater. However, the value of the security deposited or pledged pursuant to the provisions of this section shall not be required to exceed $500,000. Any notes, mortgages, bonds, or other securities, other than shares of stock, eligible for investment by a state bank, state association, or state trust company, or eligible for investment by fiduciaries, shall be accepted as satisfactory security for the purposes of this section.

Plaintiff is subject to this requirement.  Section 658.12(20), Florida Statutes defines "trust business" as "the business of acting as a fiduciary when such business is conducted by a bank, a state or federal association, or a trust company, or when conducted by any other business organization for compensation that the office does not consider to be de minimis."  In turn, Section 658.12(8), Florida Statutes, defines "fiduciary" as "…a trustee; committee, guardian, custodian, conservator, or other personal representative of a person, property, or an estate; registrar or transfer agent of, or in connection with, evidences of indebtedness of every kind and of stocks and bonds

6

A.172

and other securities; fiscal or financial agent; investment adviser; receiver; trustee in bankruptcy; assignee for creditors; or holder of any similar representative position or any other position of trust, including a person acting in any or all the capacities and performing any or all the functions enumerated in s. 660.34."

Without limitation, Plaintiff is transacting trust business in the State of Florida by, among other things, acquiring, holding, and transferring mortgages on property in Florida; receiving assignments of promissory notes; receiving payments from Florida consumers on mortgage notes; enforcing notes by filing and prosecuting this and other foreclosure actions; foreclosing on mortgages; purchasing foreclosed properties at judicial sales; and owning and selling properties acquired at judicial sales.  As such, Plaintiff is required to post a bond pursuant to Section 660.27, Florida Statutes, to transact business and bring lawsuits in the State of Florida.

Plaintiff's claim is barred because it has come to court with unclean hands.  Under the doctrine of unclean hands, "one who comes into equity must come with clean hands else all relief will be denied him regardless of the merits of his claim. It is not essential that the act be a crime; it is enough that it be condemned by honest and reasonable men…Recently, this court found that unclean hands is  tantamount  to  "[u]nscrupulous  practices,  overreaching,  concealment, trickery or other unconscientious conduct." *Shahar v. Green Tree Servicing LLC*, 125 So. 3d 251, 253 (Fla. 4th DCA 2013) (reversing the trial court's grant of summary judgment on the defense of unclean hands).  As set forth above, this action was instituted despite that the promissory note was lost more than a decade ago and the entire lien wiped out by the bankruptcy.

All or a portion of Plaintiff's claim is barred by the statute of limitations to the extent that Plaintiff seeks payment of amounts that became due more than five years before this action was filed.

HAZAN is the record owner of real property ("SUBJECT PROPERTY") located at 6913 Valencia Drive, Fisher Island, Florida 33109 and legally described as follows:

> Lot 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, as recorded in Plat Book 157, at Page 64, of the Public Records of Miami-Dade County, Florida.

JPMORGAN filed its Complaint to Foreclose Mortgage on August 2, 2013 in which the sole count of the complaint sought foreclosure of a mortgage against the SUBJECT PROPERTY.

Thereafter, HAZAN filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Southern District of Florida under Case Number 16-10389-AJC.

On November 29, 2016, Bankruptcy Court entered an order granting JPMORGAN's motion for relief from stay in which the automatic stay was lifted so that Plaintiff could litigate its foreclosure action "…to the point of judgment, but not to conduct a foreclosure sale of the [SUBJECT PROPERTY]." (emphasis added).

Thereafter, on June 11, 2018, the Bankruptcy Court entered an order confirming HAZAN's Fourth Amended Plan of Reorganization ("BANKRUPTCY PLAN").

By virtue of the confirmation of the Bankruptcy Plan and by operation of the Bankruptcy Code, the Washington Mutual Bank mortgage, the rights to which JPMORGAN claims to hold, has been eliminated.

1.      "We therefore hold that a reorganization plan has extinguished a lien pursuant to § 1141(c) only if four conditions are satisfied: (1) the text of the plan does not preserve the lien; (2) the plan is confirmed; (3) the property subject to the lien is "dealt with" under the terms of the plan; and (4) the lienholder has participated in the bankruptcy proceedings." *In re N. New England*

A.174

*Tel. Operations LLC*, 795 F.3d 343, 348 (2d Cir. 2015); *See also In re Dynamic Int'l Airways, LLC*, 17-10814, 2018 WL 7017736, at *8 (Bankr. M.D.N.C. Aug. 6, 2018).

All of these conditions are satisfied: the BANKRUPTCY PLAN does not preserve the mortgage; the BANKRUPTCY PLAN was confirmed; the property is dealt with under the BANKRUPTCY PLAN; and the alleged mortgagee participated in the bankruptcy proceedings.

Therefore, the Washington Mutual Bank mortgage, the rights to which JPMORGAN claims to hold, has been extinguished.

Alternatively, the express text of HAZAN's BANKRUPTCY PLAN restricts JPMORGAN.

The BANKRUPTCY PLAN further states that "**If** the State Court enters a final order finding and determining the validity, amount and enforceability of the mortgage and the assignment thereof, Debtor shall commence making payments of principal and interest on the balance found by a court of competent jurisdiction to be due and owing, at the interest rate provided in the loan documents amortized over the remaining original term of the loan (maturity date 2051) commencing 30 days after the State Court Order becomes final."

Further, on December 6, 2018, the Bankruptcy Court entered an order of discharge to HAZAN discharging her from, *inter alia,* the alleged amount due under the note.

Notwithstanding the entry of an order of discharge, JPMORGAN continues to send HAZAN monthly invoice statements for the discharged debt allegedly due under the note.


Hazan filed 13 affirmative defenses and a four count counterclaim in response to the amended complaint. The Court held a special set hearing on April 1, 2021 on Chase's (i) motion to strike the affirmative defenses and (ii) motion to dismiss the counterclaim. At the hearing, the Court struck all but three affirmative defenses and three of the four counts of the

9

A.175

counterclaim.[1] Hazan does not agree with the Court's position and is planning on moving for rehearing and or appeal.

The Court held that, the only remaining affirmative defenses are that (i) Chase allegedly did not pay documentary stamps on the extra principal set forth in the loan modification; (ii) Chase allegedly did not provide security with the State of Florida as required to conduct a trust business in the State; and (iii) Chase allegedly did not send Hazan an acceleration notice. The only remaining counterclaim is that Hazan is entitled to quiet title to the property if it is determined that Chase does not have a valid mortgage. The Court stated that Hazan can seek to amend the FCCPA count of her counterclaim. Hazan does not agree with the Court's ruling and is planning on moving for rehearing and or appeal.

### 2.   Pleading Status and Proposed Deadline for Amendment

Chase is currently traveling under an amended complaint that has one count for declaratory relief, as noted above. Hazan filed an answer, affirmative defenses and counterclaim. Hazan filed a motion to amend her affirmative defenses and counterclaim in advance of the April 1, 2021 special set hearing. **Hazan proposes June 1, 2021 as the deadline for Hazan to amend her affirmative defenses and counterclaim. Chase will then have the standard amount of time to respond to Hazan's amended pleading**.

### 3.   Status of Outstanding Discovery and Proposed Schedule and Deadlines

a.      To date, Chase and Hazan have each served a request for production of documents and each has responded to the other's request.

---

[1] Two business days after the hearing, Chase circulated draft orders granting the motions in part, as ruled on by the Court at the hearing. Hazan, however, does not agree to the terms of the orders, and said she wants to get a transcript of the hearing.

b.      Chase intends to depose Chase, its agents, attorneys and other parties, Washington Mutual, its agents, attorneys and other parties, and, if appropriate, other fact witnesses Chase discloses.

c.      Hazan does anticipates the need for expert witnesses.

d.      **Hazan proposes December 1, 2021 as the deadline to take fact discovery, subject to extensions**.

4.   **Dispositive Motions anticipated and deadline for briefing such motions**.

Hazan anticipates filing a summary judgment motion. Hazan **proposes a deadline of January 1, 2022 (or 30 days after the discovery cutoff) to file the motion; a deadline for Hazan to respond to the motion of 20 days after the filing of the motion; and a deadline for Chase to reply to Hazan's response of 20 days thereafter.**

5.   **Mediation Efforts**

Chase and Hazan have had limited settlement discussions, but have not yet engaged in mediation. **Chase proposes a deadline for mediation of January 1, 2022**. Hazan is respectfully requesting the Court ordering Plaintiff Chase and Defendant Hazan to mediation within the next sixty days.

6.   **A Statement of Anticipated Date as to Trial Readiness**.

Depending on the course of discovery, Hazan's amended response to the amended complaint and the outcome of Chase and Hazan's anticipated summary judgment motions, Hazan **anticipates being ready for trial by April 1, 2022, although that date may change depending on the course of the litigation**. Chase requested a bench trial. Hazan requested a jury trial, but the Court struck the jury demand at the April 1, 2021. Hzan is planning to move

11

A.177

for rehearing and appeal the latest ruling of Court. The trial will therefore be a bench trial assuming the Court or the Appeal Court doesn't reverse the Court latest ruling.

Hazan is respectfully asking the Court to postpone[2] the hearing currently set for April 21, 2021 at 10:00 AM.

Dated: April 14, 2021    Respectfully submitted,

           *s/ Elizabeth Hazan*
           Elizabeth Hazan,
           6913 Valencia Drive
           Miami, Florida 33109
           Telephone: 305.781.4176
           Email: elizabethhazan07@gmail.com
           Pro se Defendant

---

[2] Hazan contacted Plaintiff's counsel who has no objection to the rescheduling of the Case Management Conference for a later date.

A.178

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2019031300005200I003E6738

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 4 |
|---|---|---|
| Document ID: **2019031300052001** | Document Date: 01-02-2018 | Preparation Date: 03-13-2019 |
| Document Type:  DEED | | |
| Document Page Count: 3 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| FAE LAW<br>71 ELM STREET<br>WORCESTER, MA 01609<br>smurphy@faelaw.com | BLI CO. INC.<br>10 TURNPIKE ROAD<br>SOUTHBOROUGH, MA 01772 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot  1A | 1 EAST 62ND STREET |
| **Property Type:** | SINGLE RESIDENTIAL CONDO UNIT | | | |

**CROSS REFERENCE DATA**

CRFN_____  *or*  DocumentID_____  *or*  _____ Year_____ Reel____ Page_____  *or*  File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| REAL ESTATE HOLDINGS GROUP, L.D.C.<br>60 MARKET SQUARE<br>BELIZE CITY<br>BELIZE | 1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC<br>521 DINAH'S CORNER ROAD<br>DOVER, DE 19904 |

**FEES AND TAXES**

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        03-13-2019 14:37
City Register File No.(CRFN):
**2019000082515**

*Annette M Hill*
*City Register Official Signature*

Form 8002* 5/85 – 25M—Bargain and sale Deed with Covenant against Grantor's Acts-Individual or Corporation (single sheet)
CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the 2ND _____ day of JANUARY _____, 2018

BETWEEN

**REAL ESTATE HOLDINGS GROUP, L.D.C.**
located at 60 Market Square, Belize City, Belize,

party of the first part, and

**1 EAST 62ND STREET APT 1A NYC New York 10065 LLC**
**Located at 521 Dinah's Corner Road, Dover, DE 19904,**

Party of the second part,

**WITNESSETH**, that the party of the first part, in consideration of ten dollars [$10.00] and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

**SEE SCHEDULE A ANNEXED HERETO AND MADE A PART HEREOF.**

Except as otherwise specifically permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated 07/22/2013 and recorded on 08/12/2013 in CRFN 2013000317610.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

**IN THE PRESENCE OF:**

Grantor:  REAL ESTATE HOLDINGS GROUP, L.D.C.

By:  _Raymond Houle_____
_Raymond Houle, Authorized Signatory_

A.180

**SCHEDULE A**
**PROPERTY DESCRIPTION**

The land referred to in this Deed is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration).

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

BLOCK   1377        LOT 1100        UNIT 1A

FOR INFORMATION ONLY: Said premises are also known as 1 East 62nd Street No. 1A New York, New York

| State of New York, County of                          ss.: | State of New York, County of                          ss.: |
|---|---|
| On the       day of               in the year 2018, before me, the undersigned, personally appeared | On the       day of               in the year 2018, before me, the undersigned, personally appeared |
| personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. | personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. |
| _____ (signature and office of individual taking acknowledgment) | _____ (signature and office of individual taking acknowledgment) |

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

State (or District of Columbia, Territory, or Foreign Country) of  FLori 09            ss.:

On the 2ND day of JANUARY in the year 2018 before me, the undersigned, personally appeared RAYMOND HOULE personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

_____miami_____  in  _____Florida_____
(insert the City or other political subdivision)      (and insert the State or Country or other place the acknowledgment was taken)

_____
(signature and office of individual taking acknowledgment)

RAUL CHAVARRIA
MY COMMISSION # FF 962231
EXPIRES: March 6, 2020
Bonded Thru Budget Notary Services

*Bargain and Sale Deed*
WITH COVENANT AGAINST GRANTOR'S ACTS

_____

**REAL ESTATE HOLDINGS GROUP, L.D.C.**

**TO**

**1 EAST 62ND STREET APT 1A NYC New York 10065 LLC**

SECTION:

BLOCK:        1307

LOT:            1100

COUNTY OR TOWN:    NEW YORK

TAX BILLING ADDRESS:
1 EAST 62ND STREET, APT 1A
NEW YORK, NEW YORK

RETURN BY MAIL TO:

BLI Inc.
10 Turnpike Road
Southborough, MA
01772

A.182

| NYC DEPARTMENT OF FINANCE<br>OFFICE OF THE CITY REGISTER |  |
|---|---|

2019031300052001003SA9B9

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2019031300052001**  Document Date: 01-02-2018  Preparation Date: 03-13-2019
Document Type: DEED

---

**ASSOCIATED TAX FORM ID:**  2019022800011

---

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

RP - 5217 REAL PROPERTY TRANSFER REPORT                                2

**REAL PROPERTY TRANSFER REPORT**

STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

**RP - 5217NYC**

FOR CITY USE ONLY

**C1. County Code**

**C2. Date Deed Recorded** | Month | Day | Year

**C3. Book**
OR
**C5. CRFN**

**C4. Page**

**PROPERTY INFORMATION**

**1. Property Location**     1   EAST 62ND STREET 1A     MANHATTAN     10065
STREET NUMBER    STREET NAME                BOROUGH          ZIP CODE

**2. Buyer Name**    1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC
LAST NAME / COMPANY                     FIRST NAME

LAST NAME / COMPANY                     FIRST NAME

**3. Tax Billing Address**    Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY            FIRST NAME

STREET NUMBER AND STREET NAME        CITY OR TOWN        STATE    ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**    1 # of Parcels OR ☐ Part of a Parcel

**4A. Planning Board Approval - N/A for NYC**
**4B. Agricultural District Notice - N/A for NYC**

**5. Deed Property Size**    ___ FRONT FEET  X  ___ DEPTH  OR  ___ ACRES

Check the boxes below as they apply:
**6. Ownership Type is Condominium**  ☑
**7. New Construction on Vacant Land**  ☐

**8. Seller Name**    REAL ESTATE HOLDINGS GROUP, L.D.C.
LAST NAME / COMPANY                     FIRST NAME

LAST NAME / COMPANY                     FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

A ☑ One Family Residential
B ☐ 2 or 3 Family Residential
C ☐ Residential Vacant Land
D ☐ Non-Residential Vacant Land
E ☐ Commercial
F ☐ Apartment
G ☐ Entertainment / Amusement
H ☐ Community Service
I ☐ Industrial
J ☐ Public Service

**SALE INFORMATION**

**10. Sale Contract Date**    1 / 2 / 2018
Month  Day  Year

**11. Date of Sale / Transfer**    1 / 2 / 2018
Month  Day  Year

**12. Full Sale Price** $                    0
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  Please round to the nearest whole dollar amount.

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

A ☐ Sale Between Relatives or Former Relatives
B ☑ Sale Between Related Companies or Partners in Business
C ☐ One of the Buyers is also a Seller
D ☐ Buyer or Seller is Government Agency or Lending Institution
E ☐ Deed Type not Warranty or Bargain and Sale (Specify Below)
F ☐ Sale of Fractional or Less than Fee Interest ( Specify Below)
G ☐ Significant Change in Property Between Taxable Status and Sale Dates
H ☐ Sale of Business is Included in Sale Price
I ☐ Other Unusual Factors Affecting Sale Price ( Specify Below)
J ☐ None

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

**15. Building Class**    R 4

**16. Total Assessed Value  (of all parcels in transfer)**    1 3 6 1 3 0

**17. Borough, Block and Lot / Roll Identifier(s)  ( If more than three, attach sheet with additional identifier(s) )**

MANHATTAN 1377 1100

20190228000112010 2

A.184

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

**BUYER**

03/01/2019
DATE

**BUYER'S ATTORNEY**

BUYER SIGNATURE

767 WALKER RD

| | |
|---|---|
| STREET NUMBER | STREET NAME (AFTER SALE) |

LAST NAME          FIRST NAME

AREA CODE      TELEPHONE NUMBER

**SELLER**

DOVER          DE          19904-2753

| | | |
|---|---|---|
| CITY OR TOWN | STATE | ZIP CODE |

SELLER SIGNATURE          03/01/2019
DATE

2019022800011201

A.185

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| **NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument.The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>2019031300062001004EA72E |

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2019031300062001  **Document Date:** 03-07-2019  **Preparation Date:** 03-14-2019
Document Type: DEED
Document Page Count: 3

| PRESENTER: | RETURN TO: |
|---|---|
| FAE LAW<br>71 ELM STREET<br>WORCESTER, MA 01609<br>212-481-5858<br>smurphy@faelaw.com | BLI CO. INC.<br>10 TURPIKE ROAD<br>SOUTHBOROUGH, MA 01772 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1377 | 1100 | Entire Lot  1A | 1 EAST 62ND STREET |

**Property Type:** SINGLE RESIDENTIAL CONDO UNIT

### CROSS REFERENCE DATA

CRFN_____ _or_ DocumentID_____ _or_ _____ Year_____ Reel____ Page_____ _or_ File Number_____

### PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC<br>521 DINAH'S CORNER ROAD<br>DOVER, DE 19904 | 1 EAST 62ND STREET APT 1A LLC<br>767 WALKER RD<br>DOVER, DE 19904-2753 |

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 125.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 26,647.50 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $7,480.00 + $41,120.00 = $ | 48,600.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 52.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed       03-15-2019 10:17
City Register File No.(CRFN):
**2019000085399**

*Annette M Hill*

*City Register Official Signature*

A.186

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

**THIS INDENTURE,** made the 7th day of    March,    2019

**BETWEEN**

**1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC**
**Located at 521 Dinah's Corner Road, Dover, DE 19904**

party of the first part, and

**1 EAST 62ND STREET APT 1A LLC**
**Located at 767 Walker Road, Dover, DE 19901**

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of ten dollars [$10.00] and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the

**SEE SCHEDULE A ANNEXED HERETO AND MADE A PART HEREOF.**

Except as otherwise specifically permitted by the Condominium Board (as such term is defined in the Declaration) or provided in the Declaration or in the By-Laws, the Unit is intended for residential use only.

By accepting this Deed, the Grantee accepts and ratifies the provisions of the Declaration and the By-Laws (and any rules and Regulations adopted under the By-Laws) and agrees to comply with all terms and provisions thereof.

Being the same premises conveyed to the Grantor herein by deed dated 01/02/2018 and recorded on 3-13-19    in CRFN 2019000082515

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN THE PRESENCE OF:

Grantor: **1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC**

By: _____

Kris Jones, Mgr.

### SCHEDULE A
### PROPERTY DESCRIPTION

The land referred to in this Deed is described as follows:

The Condominium Unit (hereinafter referred to as the "Unit") known as 1A in the Building (hereinafter referred to as the "Building") known as The Spencer Condominium and by the street number One East Sixty Second Street, Borough of Manhattan and State of New York, said Unit being designated and described as Residential Unit 1A in a certain declaration dated May 21, 1986, pursuant to Article 9-B of the Real Property Law of the State of New York (hereinafter referred to as the "Condominium Act"), establishing a plan for condominium ownership of the Building and the Land (hereinafter referred to as the "Land") upon which the Building is situate which Land is more particularly described in Schedule A annexed hereto and made a part hereof), which Declaration was recorded in the New York County Office of the Register of the City of New York on January 5, 1987 in Reel 1168 page 1229 (which declaration and amendments thereto are hereinafter collectively referred to as the "Declaration"). This Unit is also designated as Tax Lot 1100 Block 1377 of Section 5 of the Borough of Manhattan on the Tax Map of the Real Property Assessment Department of the City of New York on the Floor Plans of the Building, certified by William A Hall on October 15, 1986 and filed with the Real Property Assessment Department of the City of New York on January 5, 1987 as Condominium Plan No. 379 and also filed in the City Register's Office on January 5, 1987.

TOGETHER with an undivided 5.03% interest in the Common Elements (as such is defined in the Declaration).

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, City and State of New York, bounded and described as follows:

BEGINNING at a point on the northerly side of 62nd Street, distant 108 feet easterly from the corner formed by the intersection of the easterly side of 5th Avenue with the said northerly side of 62nd Street;

RUNNING THENCE northerly parallel with 5th Avenue, 100 feet 5 inches to the center line of the block;

THENCE easterly along said center line of the block and parallel with 62nd Street, 42 feet;

THENCE southerly, parallel with 5th Avenue and part of the distance through a party wall, 100 feet 5 inches to the northerly side of 62nd Street; and

THENCE westerly along the northerly side of 62nd Street, 42 feet to the point or place of BEGINNING.

BLOCK   1377       LOT 1100       UNIT 1A

FOR INFORMATION ONLY: Said premises are also known as 1 East 62nd Street No. 1A New York, New York

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE IN NEW YORK STATE**

State of New York, County of          ss:

On the          day of          in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

State of New York, County of          ss:

On the          day of          in the year
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
(signature and office of individual taking acknowledgment)

**TO BE USED ONLY WHEN THE ACKNOWLEDGMENT IS MADE OUTSIDE NEW YORK STATE**

Commonwealth of Massachusetts, ss:

On the 7th  day of March in the year 2019 before me, the undersigned, personally appeared Kris Jones personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)   is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the

            Boston               in          Massachusetts
(insert the City or other political subdivision)     (and insert the State or Country or other place the acknowledgment was taken)

_Victoria Femmino_
(signature and office of individual taking acknowledgment)

VICTORIA FERMINO
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires
June 13, 2025

**BARGAIN AND SALE DEED**
WITH COVENANT AGAINST GRANTOR'S ACTS

SECTION
BLOCK : 1377
LOT: 1100
COUNTY OR TOWN: NEW YORK
STREET ADDRESS: 1 EAST 62ND STREET, APT 1A
NEW YORK, NEW YORK

1 EAST 62ND STREET APT 1A NYC NEW YORK
10065 LLC

TO

1 EAST 62ND STREET APT 1A LLC

RETURN BY MAIL TO:

BLI Co. Inc.
10 Turnpike Road
Souhborough, MA 01772

A.189

| | |
|---|---|
| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER** | <br>2019031300062001004S69AF |

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID: 2019031300062001**    Document Date: 03-07-2019    Preparation Date: 03-14-2019
Document Type: DEED

**ASSOCIATED TAX FORM ID:**    2019022800015

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

RP - 5217 REAL PROPERTY TRANSFER REPORT    2

A.190

| FOR CITY USE ONLY | | | | |
|---|---|---|---|---|
| **C1. County Code** | | **C2. Date Deed Recorded** | Month  Day  Year | |
| **C3. Book OR** | | | **C4. Page** | |
| **C5. CRFN** | | | | |

**REAL PROPERTY TRANSFER REPORT**
STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

# RP - 5217NYC

## PROPERTY INFORMATION

**1. Property Location**  I | EAST 62ND STREET 1A | MANHATTAN | 10065
STREET NUMBER  STREET NAME  BOROUGH  ZIP CODE

**2. Buyer Name**  |1 EAST 62ND STREET APT 1A LLC
LAST NAME / COMPANY  FIRST NAME

LAST NAME / COMPANY  FIRST NAME

**3. Tax Billing Address**  Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY  FIRST NAME

STREET NUMBER AND STREET NAME  CITY OR TOWN  STATE  ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**  I  # of Parcels **OR**  [ ] Part of a Parcel

**4A.** Planning Board Approval - N/A for NYC
**4B.** Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
**6.** Ownership Type is Condominium  [✔]
**7.** New Construction on Vacant Land  [ ]

**5. Deed Property Size**  ____ FRONT FEET  X  ____ DEPTH  **OR**  ____ ACRES

**8. Seller Name**  |1 EAST 62ND STREET APT 1A NYC NEW YORK 10065 LLC
LAST NAME / COMPANY  FIRST NAME

LAST NAME / COMPANY  FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A | [✔] One Family Residential | C | [ ] Residential Vacant Land | E | [ ] Commercial | G | [ ] Entertainment / Amusement | I | [ ] Industrial |
|---|---|---|---|---|---|---|---|---|---|
| B | [ ] 2 or 3 Family Residential | D | [ ] Non-Residential Vacant Land | F | [ ] Apartment | H | [ ] Community Service | J | [ ] Public Service |

## SALE INFORMATION

**10. Sale Contract Date**  3 / 7 / 2019
Month  Day  Year

**11. Date of Sale / Transfer**  3 / 7 / 2019
Month  Day  Year

**12. Full Sale Price $**  4,112,000

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| | | |
|---|---|---|
| A | [ ] | Sale Between Relatives or Former Relatives |
| B | [ ] | Sale Between Related Companies or Partners in Business |
| C | [ ] | One of the Buyers is also a Seller |
| D | [ ] | Buyer or Seller is Government Agency or Lending Institution |
| E | [ ] | Deed Type **not** Warranty or Bargain and Sale (Specify Below ) |
| F | [ ] | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | [ ] | Significant Change in Property Between Taxable Status and Sale Dates |
| H | [ ] | Sale of Business is Included in Sale Price |
| I | [ ] | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | [✔] | None |

## ASSESSMENT INFORMATION  -  Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**  R 4  **16. Total Assessed Value (of all parcels in transfer)**  1,361,30

**17. Borough, Block and Lot / Roll Identifier(s)  ( If more than three, attach sheet with additional identifier(s) )**

MANHATTAN 1377 1100

201902280001520101

A.191

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

**BUYER**                 DATE 3/7/19                              **BUYER'S ATTORNEY**

BUYER SIGNATURE                              LAST NAME                    FIRST NAME

767 WALKER RD

STREET NUMBER        STREET NAME (AFTER SALE)            AREA CODE          TELEPHONE NUMBER

DOVER                                                                    **SELLER**

CITY OR TOWN          DE    STATE    19904-2753   ZIP CODE     SELLER SIGNATURE          DATE 03/07/2019

2019022800015201

A.192

UNITED STATES BANKRUPTCY
COURT SOUTHERN DISTRICT OF
FLORIDA
Miami Division
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| | |
| Liza Hazan | Case  Case No. 16-10389-PGH |
| Reorganized and discharged. | (Fully Administered Under Case |
| _____/ | No. 16-10389-BKC-AJC) |

**REORGANIZED DISCHARGED LIZA HAZAN CROSS MOTION TO STRIKE NON-CREDITORS NON INTERESTED PARTIES DISALLOWED UNAUTHORIZED JOINT MOTION TO REOPEN CASE  ECF 1364**

Liza Hazan a/k/a Elizabeth Hazan ("Ms. Hazan"), by and through her undersigned counsel, files her Cross Motion to Strike unauthorized non-creditor, disallowed dissolved Delaware chapter 7 bankrupt entity sanctioned NLG, LLC ("NLG"), which claim was disallowed in this bankruptcy, in Adv. Case No. 16- 01439-AJC, Doc 238, exclusively controlled by the Delaware chapter 7 trustee M. Alfred T. Giuliano, who has not authorized the filing of this motion by Juan Ramirez, Jr., sanctioned Chris Kosachuk ("Kosachuk"), non-creditors non interested parties Marta Yee, Roberto Viñas Via Mia North America, LLC and 2215 Fisher Island Dr. LLC[1] (collectively "Movants" or "the Kosachuk Group") motion to reopen this case, for relief from the Discharge Order [Doc. 1375] and Final Decree [Doc. 1376], to declare the confirmed plan in default, to strike the Confirmation Order [Doc. 691], to dismiss this individual Chapter 11 bankruptcy case with prejudice and restore all parties to their respective prepetition status (the "Motion to Reopen") [ECF 1364],  in support of her motion to Strike Ms. Hazan respectfully asserts as follows:

**INTRODUCTION**

---

[1] Sanctioned Attorney Juan Ramirez, Jr's clients Marta Yee, Roberto Viñas, and Kosachuk's friend real estate Broker Robert Vole's entities Via Mia North America, LLC and 2215 Fisher Island Dr. LLC never filed a proof of claim or appeared in this case therefore they lack standing to appear or be heard. The Trustee for NLG has not authorized the filing of this motion by Juan Ramirez, Jr. on behalf of NL. NLG, Kosachuk and Juan Ramirez, Jr. are currently in contempt of this Court.

1

Reopening a bankruptcy case is not a right; instead, it is a decision left to the broad discretion of a bankruptcy court based on the circumstances and equities of each particular case. It is clear, however, that the Movants here bear the burden of showing cause or a compelling reason to reopen a case. The principal factors are a *benefit* to the creditors or the debtor, both do not exist here. No other equitable reason supports reopening, because Movants could and should have filed and did file the motion they now file while the case was open, and this court denied their motions. Those orders are final and the law of the case. Kosachuk filed an opposition to the motion for Final Decree and after a hearing this Court entered the Final Decree Orders. The trustee for NLG, didn't oppose the Motion for Final Decree, or appeal the Final Decree Order and didn't authorize Juan Ramirez to file this motion. Kosachuk moved for rehearing which was denied by this Court. On January 5, 2023, this Court dismissed Kosachuk's appeal the Final Decree Orders [Doc. 1375] [Doc. 1376. Moreover, the motion is without merit, which is a separate basis for denying a motion to reopen as futile. Movants lack standing and simply fail to meet their burden of showing why this Court should reopen the closed bankruptcy case, and therefore the Motion to Reopen should be denied.

***Non creditors non interested parties NLG,  uan Ramirez,  r., Chris  osachuk lack standing to raise and appear and be heard on any issue in this closed case regarding confirmation and discharge or Final Decree orders or moving to dismiss a case that has been fully administered because they hold no allowed claim. Lack of standing, Res  udicata, and collateral estoppel bar this motion to reopen.***

The Kosachuk group cannot move to reopen this and dismiss the confirmed and substantially consummated plan in June 2018 as they lack standing and this court entered the discharge Order on December 7, 2018. As of the Effective Date all pre-petition property of the estate re-vested in the Ms. Hazan. [ECF No. 691].

***The Court has already ruled on the same issues denying NLG and Chris kosachuk's complaint to revoke Confirmation and Discharge Orders in Adv case 1  1   A C ECF  5 ].The Motion to Reopen is barred by res judicata and collateral estoppel***

On March 12, 2019, this Court dismissed with prejudice NLG and Kosachuk's complaint to

revoke Confirmation and Discharge Orders in Adv case 18-01492-AJC (ECF 35):

"Plaintiff Chris Kosachuk, who has not filed a proof claim or otherwise participated in an individual capacity in Hazan's bankruptcy case, **lacks standing to seek revocation**. Pursuant to **11 U.S.C. §1109(b), only "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."** A party in interest must have "a direct legal interest in the case" and may only "assert that interest with respect to any issue to which it pertains." *In re JMP-Newcor International, Inc.*, 225 B.R. 462, 464 (Bankr. N.D. Ill. 1998) (citations omitted). As Kosachuk has no claim against Hazan, he is unaffected by the confirmation of Hazan's plan. **NLG also lacks standing regarding confirmation of Hazan's plan because it holds no allowed claim.** *See, e.g.*, *In re Flintkote Co.*, 526 B.R. 515, 520 (D. Del. 2014) (purported creditor lacked standing to challenge plan confirmation "because all of its asserted claims were untimely or disallowed"); *In re Delta Air Lines, Inc*., 374 B.R. 516 (Bankr. S.D.N.Y. 2007)." **As the Court previously found, Kosachuk, Ramirez and NLG hold no claim against Hazan, they are unaffected by the confirmation or discharge of Hazan's plan pursuant to 11 U.S.C. 1109(b).** "Defendants (Hazan) further argue that Plaintiffs' action for revocation of confirmation is precluded by the doctrine of equitable mootness. "Although equitable mootness is often applied on appeal, it applies to proceedings under Section 1144." *In re Delta Air Lines, Inc.*, 386 B.R. 518, 537 (Bankr. S.D.N.Y. 2008). The Eleventh Circuit has explained that in considering equitable mootness, courts should evaluate "the balance of equities, including whether a stay pending appeal has been obtained and if not, why not; whether the plan has been 'substantially consummated;' what type of relief is sought; and what the effect of granting such relief would be." *In re Ferguson*, 683 Fed.Appx. 924, 926 (11th Cir. 2017) (citing *In re Club Assocs*., 956 F.2d 1065, 1069 n. 11 (11th Cir. 1992)). **The Court has previously found that Hazan's plan has been substantially consummated** and that NLG failed to timely seek a stay. After considering the balance of the equities, the Court believes Plaintiffs' claims for revocation are equitably moot." (ECF 35)." This Court's order was never appealed." **(ECF 35)**

NLG, Kosachuk and Ramirez have no standing in this case, as established by the Final Judgment,

and various orders of this court and this Court should not entertain further drains on Hazan'

resources with this most recent motion. The case has been fully administered and Ms. Hazan has

been discharged since December 2018. On November 17, 2022, this Court granted *Ms. Hazan's*

*Motion for entry of Final Decree Closing this Chapter 11 Bankruptcy Case (ECF No. 13   ),*

*pursuant to Section 3  0(a) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 3022,*

*and Local Rule 3022-1 that was previously granted* ECF No. 1361.

***NLG is a dissolved entity solely controlled by chapter 7 Delaware trustee Mr. Alfred T. Giuliano***

***this motion to reopen and dismiss case should be stricken as unauthorized by the trustee.  uan Ramirez,  r. is not authorized to file any pleadings in any court on behalf of NLG.***

On September 24, 2021, the Delaware United States Trustee appointed the Trustee Mr. Alfred T. Giuliano as the interim Chapter 7 trustee for NLG, which appointment remains in effect [D.I. 8]. Once Kosachuk began these proceedings, the Trustee Mr. Giuliano became the individual with exclusive control to dispose of assets as he-in his reasonable business judgment-sees  fit. On December 19, 2022, the Trustee stated that, after careful consideration, changed the case from asset to no asset case and filed a Final Report concluding the NLG Chapter 7 bankruptcy case as fully administered [D.I.120]:

Chapter 7 Trustee's Report of No Distribution: having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that **I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate**; and that **there is no property available for distribution from the estate** over and above that exempted by law. **Pursuant to Fed R Bank P 5009,** I **hereby certify that the estate of the above-named debtor(s) has been fully administered.** I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 15 months. Assets Abandoned (without deducting any secured claims):$ 0.00, Assets Exempt: Not Available, **Claims Scheduled $ 0.00**, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 0.00. *See* Chapter 7 NLG Delaware Bankruptcy Case No. 21-11269-JKS ECF No. 122:

***NLG's Previous motion to dismiss Ms. Hazan successful reorganized case and amended motion to dismiss filed by attorney Astrid Gabbe on August   ,     [ECF No. 1   ] and [ECF No. 1  6] were stricken as unauthorized by the Trustee and this Court on September 1 ,    [ECF No. 1  5]***

On August 25, 2022, the Chapter 7 trustee for NLG, moved to *Strike NLG, LLC's Motion to Dismiss* Ms. Hazan Chapter 11 case with prejudice **as unauthorized**. [ECF No. 1305]

"[S]ince the Trustee's appointment, Kosachuk has repeatedly demanded that the Trustee move to dismiss Ms. Hazan's bankruptcy case. More recently, these demands have also come from Kosachuk's purported counsel, Astrid E. Gabbe. Remarkably, both Kosachuk and Ms. Gabbe continue to make these demands despite Kosachuk facing the real likelihood of being incarcerated for repeated contempt violations, including the filing of frivolous pleadings. the Trustee has declined to do so at this time and has expressly stated to both Kosachuk and Ms. Gabbe that "[y]ou do not have the authority to file anything on behalf of [NLG], nor do you have the authority to make any such representations to any court." Despite this clear lack of authorization, on August 24, 2022, Kosachuk, through Ms. Gabbe, filed *NLG,*

*LLC's Motion to Dismiss Case with Prejudice* (the "Motion to Dismiss") [ECF No. 1299]. Even worse than the filing itself, the Motion to Dismiss includes language that provides "[t]he Trustee adopts and incorporates by reference as if fully re-written herein, its Response [Doc. 1155] filed on June 6, 2022." **The Trustee has never authorized the filing of the Motion to Dismiss and has expressly stated to both Kosachuk and Ms. Gabbe that they are not authorized to file the Motion to Dismiss.** Likewise, the Trustee has never consented to language that suggests the Trustee "adopts" any part of the Motion to Dismiss. As this Court knows, the Trustee has exclusive control of NLG's estate as of the Petition Date. Any filings made on behalf of NLG must therefore be authorized by the Trustee and filed by a professional who has been properly retained and approved by the Delaware Bankruptcy Court, neither of which exists here. The Motion to Dismiss is completely improper. WHEREFORE, the Trustee requests that the Court strike the Motion to Dismiss and grant any other relief the Court deems equitable and just." *See* Chapter 11 case 16-10389-AJC, [ECF No. 1305].

On September 12, 2022, this Court granted the Chapter 7 Trustee for NLG Mr. Giuliano's

Motion to Strike NLG's unauthorized Motion to Dismiss and Denied NLG's Motion to Dismiss

and Amended Motion to Dismiss Liza Hazan's Chapter 11 case, ECF No. 1299, ECF No. 1306:

"Because the Trustee has exclusive control of NLG's estate as of the Petition Date in NLG's Delaware bankruptcy case, any filings made on behalf of NLG must be authorized by the Trustee and filed by a professional who has been properly retained and approved by the Delaware Bankruptcy Court, neither of which exists here. Attorney Gabbe, who represents Chris Kosachuk, improperly filed the Motion to Dismiss and Amended Motion to Dismiss purportedly on behalf of NLG when she was specifically told she had no authorization to do so, and she was never authorized by the Delaware bankruptcy court to do so. On her own, or perhaps at the insistence of her client Chris Kosachuk, Attorney Gabbe took it upon herself to defy the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court and filed the motions to dismiss knowing full well she had no authority to file anything on behalf of NLG. The motions to dismiss are completely improper and the Court will grant the Trustee's motion to strike forthwith. Moreover, for such egregious conduct in filing the unauthorized pleadings without authority and after expressly being told no authority was being given, the Court will suspend the CM/ECF filing privileges of Attorney Gabbe until she can demonstrate to the Court that she is competent to practice in bankruptcy court and is familiar with the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court. The *Motion to Strike NLG, LLC's Motion to Dismiss Case with Prejudice as Unauthorized* is GRANTED forthwith and the Motion to Dismiss (ECF 1299) and Amended Motion to Dismiss this case (ECF 1306) filed by Attorney Astrid Gabbe on behalf of NLG LLC are STRICKEN as improper and unauthorized. Any hearing(s) scheduled on the foregoing motions is/are CANCELLED. The Clerk of Court is directed to immediately SUSPEND Attorney Astrid Gabbe's CM/ECF filing privileges in this Court. At such time as Attorney Gabbe can demonstrate she can competently practice before this Court and abide by the Federal Rules of Court by completing 40 hours of bankruptcy-related continuing legal education courses, she may petition the Court for reinstatement of her CM/ECF filing privileges and personally appear before the Court at a hearing." ECF No. 1325.

**NLG, uan Ramirez, r., Chris osachuk's previous identical motion to dismiss for**

*Material Defaults of the Confirmed Plan raising same identical arguments was denied by this Court on October 29, 2021 [ECF No. 1060] the Order denying Movants' Motion to dismiss was never appealed*

On October 29, 2021, This Court denied NLG, Juan Ramirez, Jr., Chris Kosachuk's previous

motion to dismiss Ms. Hazan's Case for Material Defaults of the Confirmed Plan:

"**As the Eleventh Circuit Court of Appeals has affirmed, movants are not creditors of this Debtor or the bankruptcy estate and therefore have no standing to pursue dismissal. The movants' non- creditor status was affirmed following consummation of the confirmed plan, which the movants did not stay upon appeal.  The Court finds no basis in law or fact alleged in the Motion that would support dismissal of this case, at this juncture, upon the request by non-interested parties who have no standing. *NLG, LLC, Chris  osachuk and  uan Ramirez, Jr.'s Joint Motion to Dismiss Case with Prejudice* is DENIED**."

On July 18, 2022, the Court denied Chris Kosachuk's motion to dismiss Ms. Hazan's case raising same allegations against Ms. Hazan [ECF No. 1221]. "**the Motion to Dismiss Case with Prejudice filed by Chris Kosachuk (ECF 1161) and Liza Hazan's Motion to Strike the Motion to Dismiss Case with Prejudice (ECF 1169) are DENIED. See ECF No. 1221.**"

*Holdings by the District court Judge Scola and Judge Martinez DISMISSING Kosachuk's appeals of this Court.*

 On January 31, 2023, District court Judge Martinez *sua sponte* dismissed Kosachuk's appeal of this court's Order denying Kosachuk's motion to recuse Judge A. Jay Cristol holding "**Mr. Kosachuk attempts to manufacture standing …**" "Allowing appeals from parties who have suffered only an indirect harm or who hold interests outside the scope of the Bankruptcy Code," like Kosachuk, "would defeat the very purpose underlying [the Eleventh Circuit's] person aggrieved standard." *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1326 (11th Cir. 2014).  Indeed, the Honorable Robert N. Scola has just recently dismissed an appeal from the bankruptcy proceedings due to Kosachuk's lack of standing. *See  osachuk v. Hazan*, Case No. 22-cv-21485-RNA (ECF No. 21) (S.D. Fla. Oct. 10, 2022)." "Appellant is a frequent filer who has repeatedly, and over the course of several years, attempted to insert himself in the bankruptcy proceedings involving Ms. Hazan.  Those attempts have been repeatedly denied.  Ultimately, sanctions were entered against Mr. Kosachuk for his violation of numerous orders entered by Judge Cristol. (ECF No. BK-1341 at 2; *see also* ECF No. BK-1349). "Clearly, Mr. Kosachuk is unhappy with the how the bankruptcy proceedings have progressed." Standing to appeal a bankruptcy court order is limited "to those individuals who have a financial stake in the order being appealed." *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002).  Under this principle— "the person-aggrieved doctrine"—a person is considered to have a financial stake in a bankruptcy- court order "when that order 'diminishes their property, increases their burdens or impairs their rights.'" *Id.* (citation omitted).  **"Mr. Kosachuk is not a creditor in the bankruptcy case, and he does not identify any tangible stake he has in the outcome or administration of the bankruptcy case.  His dissatisfaction with the process does not, by itself, confer standing." "Mr. Kosachuk attempts to manufacture standing …"** Mr. Kosachuk himself is not a creditor, had any direct or adverse impact on him pecuniarily.  "Allowing appeals from parties who have suffered only an indirect harm

or who hold interests outside the scope of the Bankruptcy Code," like Kosachuk, "would defeat the very purpose underlying [the Eleventh Circuit's] person aggrieved standard." *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1326 (11th Cir. 2014). Indeed, the Honorable Robert N. Scola has just recently dismissed an appeal from the bankruptcy proceedings due to Kosachuk's lack of standing. *See osachuk v. Hazan*, Case No. 22-cv-21485-RNA (ECF No. 21) (S.D. Fla. Oct. 10, 2022)." "For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that this appeal is **DISMISSED** *sua sponte* for lack of standing. *See In re Vick*, 233 F. App'x 897, 899 (11th Cir. 2007) (affirming *sua sponte* dismissal of bankruptcy appeal for lack of standing)." *See* Case 22-22781-CIV-MARTINEZ

**On September , , udge Scola <u>dismissed Kosachuk's three appeals for lack of standing</u>, and equitable mootness and affirmed Judge Cristol's order denying Kosachuk's motion to dismiss .**

**Judge Scola ruled that "Kosachuk doesn't have standing in this bankruptcy case** and doesn't have standing to challenge the confirmed plan on the basis of Hazan's purported failures under it. (ECF No. 30 at 12.) The Bankruptcy Court previously found Kosachuk to lack standing because. plan on the basis of Hazan's purported failures under it. (ECF No. 30 at 12.) The Bankruptcy Court previously found Kosachuk to lack standing because he is "not a creditor in this case nor is he an interested party who has a stake in the outcome of this case or in the administration of the bankruptcy estate." (BC ECF No. 1106.) Indeed, "neither NLG nor Chris Kosachuk have a lien on Debtor's property .. [and] any alleged lien of NLG on Debtor's property was extinguished or satisfied." (BC ECF No. 932 at 5.) These findings are consistent with the Bankruptcy Court's final judgment in the adversary proceeding, which was handed down in 2017 and has been upheld on review by this Court and the Eleventh Circuit. The Court thus finds that that the Bankruptcy Court's order was proper. By way of his motion now on appeal, Kosachuk purported to dismiss the entirety of the bankruptcy case, which has been in the making for six years.The Court agrees with Hazan that Kosachuk's instant appeal is subject to preclusion under the doctrine of equitable mootness. Indeed, Kosachuk's appeal is nothing more than a collateral attack on the final judgment of the adversary proceeding, which was handed down five years ago. That is evidenced by the arguments he makes on appeal, which focus entirely on re- hashing the points discussed in his motion to dismiss. In fact, Kosachuk devotes a mere two pages, at the end of his brief, to discussing his "standing." (ECF No. 16 at 25-26.) The doctrine of equitable mootness applies "in appeals that effectively seek to modify or amend a plan's provisions." *See In re Hazan*,

---

[2] *See osachuk v. Hazan*, Case No. 22-cv-21485-RNA, *See osachuk v. Hazan*, Case No. 22-cv-22351-RNA, and *osachuk v. Hazan*, Case No. 22-cv-22781-RNA. The Eleventh Circuit Court of Appeals also dismissed all Kosachuk's appeals of Judge Scola's orders of Dismissals and other orders dismissing Cristol's decisions. See *osachuk v. Hazan* Case 22-13600-HH, *osachuk v. Hazan*

10 F.4th 1244, 1252 (11th Cir. 2021) (cleaned up). "Among the factors a court should consider in deciding whether to dismiss an appeal for equitable mootness are whether the appellant has obtained a stay pending appeal, whether the plan has been substantially consummated, and whether third parties' rights or the debtor's ability to successfully reorganize would be adversely affected by granting the relief sought by the appellant." *Id.* All factors here weigh in favor of finding Kosachuk's appeal being found equitably moot. It is not apparent from the record that a stay has been entered pending this appeal; the Eleventh Circuit already found that the "Plan has been substantially consummated," *id.* at 1253; and it is doubtless that parties' rights would be adversely implicated by dismissing the case at this juncture. Accordingly, the Court **grants** Hazan's motion (**ECF No. 10**) and **dismisses** this appeal with prejudice. The Bankruptcy Court is **affirmed**. *See* case 22-cv-22351-RNS.

***This Court's Various Contempt Orders Sanctions, incarceration against Non creditors non interested parties NLG, uan Ramirez, r., Chris osachuk. See [ECF No. 1 6 ]***

On November 1, 2022, this court granted Ms. Hazan's Further Relief to Ms. Hazan pursuant

to the Emergency Motion for Order Directing US Marshalls to take Chris Kosachuk into

custody ruled as follows:

"Furthermore, as a result of Chris Kosachuk's continuing contempt, the Court invokes Federal Rule of Bankruptcy Procedure 7070 in this contested matter involving Chris Kosachuk. Fed. R. Bankr. P. 9014(c) (adversary rules may be applied to contested matters upon notice and order of the Court). In accordance with FRBP 9014(c), the Court orders FRBP 7070 applies in this contested matter so the Court may order certain acts to be done by a person appointed by the Court -- at Christopher Kosachuk 's expense, as he is the disobedient party. Once done, the act(s) will have the same effect as if done by the disobedient party, Christopher Kosachuk. Thus, for the reasons stated on the record at the hearing, The Court again DEFERS ordering the United States Marshals to take Chris Kosachuk into custody at this time and instead sanctions him for his civil contempt. Chris Kosachuk is SANCTIONED in the amount of one hundred dollars ($100) per day in favor of Liza Hazan also known as Elizabeth Hazan, effective starting September 12, 2022, and continuing at the rate of one hundred dollars ($100) per day in favor of Liza Hazan also known as Elizabeth Hazan, subject to further adjustment upward if warranted." See **ECF No. 1349**.

On June 28, 2022, the Court granted Ms. Hazan's expedited motion for contempt to Strike **Eight Lis Pendens** and to Impose Sanctions. (ECF 1090).

"The Court determined that Chris Kosachuk does not hold a claim against Ms. Hazan or a lien on Ms. Hazan's homestead property. The Seventh Lis Pendens was recorded by Kosachuk without any basis and this Court determines that the filing of the Eighth Lis Pendens was also without any basis, in violation of the Discharge Injunction and Confirmation Order and the Injunction Order.

The Court concluded that the filing of the Eighth Lis Pendens violates the injunctions provided by the Confirmation, Discharge Order and the Injunction Order, and is an improper collateral attack on the Court's Final Judgment, and orders it to be immediately dismissed, dissolved and released with prejudice." See **ECF No. 1194.**

On April 2, 2022, the Court granted Liza Hazan's motion for contempt to Strike Lis pendens and impose sanctions on Christopher Kosachuk and for entry of Final Judgment and for Injunctivve Relief (ECF 1068).

"The filing of the seventh lis pendens at this late stage in the proceedings violates the injunctions provided by the Confirmation and Discharge Orders. Mr. Kosachuk filed the lis pendens after the Final Judgment on Counts I, II and III [adjudicating Mr. Kosachuk's rights in and to Debtor's homestead property and finding no claim thereto] was entered on November 1, 2017 in Adv. No. 16-01439-BKC-AJC-A [ECF 238] and was not stayed, and after that final judgment was subsequently upheld by the District Court and the Eleventh Circuit Court of Appeals (which orders on appeal have become final). Even after it was determined he had no interest in Debtor's property, Mr. Kosachuk persisted in filing the seventh lis pendens. The court granted the Discharged Debtor Liza Hazan's Motion to Strike Lis Pendens and to Impose Sanctions on Christopher Kosachuk and for Entry of Final Judgment and for Injunctive Relief (ECF 1068).
The Court cautioned Mr. Kosachuk that any future violations of this Court's Orders, including the injunction contained herein, may incur extraordinary sanctions to coerce compliance in the face of contempt, including monetary sanctions and incarceration." See **ECF No. 1073.**

On November 19, 2019, the court granted Ms. Hazan's Expedited motion for contempt and sanctions for the filing of the Fifth Lis pendens against the Discharged Debtor's real property. [ECF 748]. See **ECF No. 780.** On April 12, 2019, this court granted Ms Hazan's motion for contempt against the Kosachuk Group the matters before the Court involve filings by Attorney Gabbe and Mr. Kosachuk that violate the discharge injunction and Orders of the Court entered in this case, and they were not defended by Attorney Ramirez. (ECF 836). See **ECF No. 856.** On August 29, 2019, the Court granted Ms. Hazan's Emergency Motion for Contempt [ECF No. 886] against NLG, LLC, Juan Ramirez, Jr., and Chris kosachuk, for an Order holding the Kosachuk group in contempt of court. See **ECF No. 932.**

## PRIOR PROCEEDINGS

On August 21, 2016, Hazan commenced the Adversary Proceeding, case No. 16- 01439-

9

AJC, (the "Adversary Proceeding" or "A.P.") against NLG.  (BK A.P. ECF 1). In her Third

Amended Complaint (January 3, 2017), Ms. Hazan brought three causes of action to resolve

NLG's assertion of rights regarding her property: (i) Count I – to determine the extent, validity,

and priority of Appellant's claim of alleged lien; (ii) Count II – to avoid Appellant's alleged

security interest pursuant to § 544; and (iii) to Quiet Title (the "Counts") (BK A.P. ECF 48). The

Court conducted a trial in the Adversary Proceeding on July 13, 2017.  (BK A.P. ECF 188).

Following the trial, on November 1, 2017, the Bankruptcy Court entered the Judgment on Counts

I, II and III in favor of Appellee.  ("the Unstayed Final judgment") (BK A.P. ECF 238). The

Unstayed Final Judgment provides, in relevant part:

"NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court
finds that **NLG has no standing in this case** based upon the Note, Mortgage, claim or lien
emanating therefrom." *Id.* at p. 13 (emphasis added).
"NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406,
Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949
CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272
CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against
Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902
Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913
Valencia Drive, Miami, Florida 33109 with the following legal description: LOT 7, Block 2,
LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded
in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida have been
satisfied and paid, and are deemed **SATISFIED OF RECORD**, and Debtor has good title to said
Property against the claims or purported claims by, through, under, or against it by NLG, LLC
and **the title to the Property is forever quieted as to all claims of NLG, LLC**." "**NLG's Proof
of Claim #17 is disallowed** and **NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a
Elizabeth Hazan, under the Note, Mortgage or any court order**." *Id.* at p. 14.

Based on the Judgment, the Reorganized Debtor proceeded to plan confirmation.  On November

15, 2017, she filed her Fifth Amended Disclosure Statement (the "Disclosure Statement") (B.K.

M.C. C.P. 562) and Fourth Amended Plan of Reorganization (the "Plan") (B.K. M.C. C.P. 563).

At the Confirmation Hearing on the Plan the Court noted that the Unstayed Final Judgment

remained unstayed.  (BK M.C. C.P. 707 at pp. 6 - 8):

THE COURT:  Mr. Ramirez, do you agree there is no stay? MR. RAMIREZ:
There is no stay, Judge.

THE COURT:  Okay.

MR. RAMIREZ:  But I just want to correct that it's not the law of the case until
the appellate case is decided.

THE COURT:  Well, but if something happens in the interim, it may moot out the
appeal, that's why it makes a big difference.  If there's a stay, then nothing can
happen until that matter is decided, but if there is no stay and things go along a
track to where they're not reversible, then it possibly or probably would moot the
issue.

On June 12, 2018, the Bankruptcy Court entered the Confirmation Order (BK M.C. ECF No.

691).  On June 13, 2018, the Bankruptcy Court entered an Agreed Order Granting Reorganized

Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 case. (B.K. M.C.

ECF No. 692).  On July 10, 2018 Thereafter, Hazan filed her Amended Motion to Reopen this

Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a Final Decree and to re-

close the case [ECF No. 713] (the "Reopen and Discharge Motion")All NLG's Motions to Stay

the Final Judgment were denied in this Court and in the Appeal Court [ECF No. 308] [ECF No.

354] [ECF No. 356] [ECF No. 357] in Adv. case 16- 01439-AJC.On December 7, 2018, this Court

entered the Order granting the Reopen and Discharge Motion [ECF No. 766] (the "Discharge

Order") which, among other things, granted Hazan a discharge and reopened the bankruptcy

case "for the sole purpose of approving the Final Report and entering the Reorganized Debtor's

discharge consistent with the terms of this order" and "pending the final disposition of all motions

herein and the outstanding appeals, after which the Court will direct the Clerk of Court to enter a

Final Decree closing this case. On September 1, 2021, the United States Court of Appeals

for the Eleventh Circuit Court upheld affirmed the District Court's decision

dismissing NLG's appeal of Judge Cristol's Final Judgment[3]. On April 20, 2022, the

---

[3] "The district court also found that Hazan had assumed the management of all of the property,
and the parties do not dispute that Hazan has commenced distribution under the Plan.  The Plan has been

District Court Judge Gayles granted Ms. Hazan's motion to dismiss NLG's appeal of the

Confirmation Order[4]. " [I]n light of the Eleventh Circuit's opinion affirming the dismissal of

substantially consummated. Third, we consider "whether relief granted by the court could implicate or have an adverse effect on [third party] creditors and will affect the re-emergence of the debtor as a revitalized entity." Miami Ctr., 838 F.2d at 1555 (noting that creditors voting in favor of a plan consent to the plan as a whole and we do not "allow a 'piecemeal dismantling' of a reorganization plan."); see also Specialty Equip., 3 F.3d at 1049 (holding that a plan was "a consensual arrangement arrived at through lengthy negotiation" and that excising a provision "would amount to imposing a different plan of reorganization on the parties" than the plan to which they agreed); Aurelius Cap. Master, Ltd. v. Tousa Inc., Nos. 08-61317-CIV, 08-61335-CIV, 2009 WL 6453077, at *9 (S.D. Fla. Feb. 6, 2009) (finding appeal equitably moot because "the piecemeal excision of specific provisions integral to the negotiated whole undermines the requisite consent"). NLG argues that the third parties would not be affected because Hazan's Plan did not call for the exempt Fisher Island Property to be used to pay any creditors. It also claims there is no evidence to indicate that any unsecured creditor would be affected by a reversal. As for the secured creditors, and specifically, Chase Bank, NLG says that Chase Bank never relied on the Bankruptcy Judgment. We disagree. For starters, the Disclosure Statement provided that the equity in the Property would support a refinancing, which could be used to support a funding plan, if necessary. There is no merit to the claim that granting NLG relief would not affect creditors, because Hazan's retention of equity in the Property was integral to executing the Plan. If she failed to retain equity, one of the Plan's critical funding options would be lost. In the second place, the Plan provided that while secured creditor Chase Bank's claim is adjudicated in state court, Chase "shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan." But if the Plan were modified as a result of a reinstatement of NLG's claimed first position mortgage, Chase Bank's equity cushion would be eliminated. Third, because the Plan, which the parties had agreed to, included a provision disallowing NLG's claim -- and creditors, including Chase Bank, "had [not] consented to the earlier disclosure statement which did not incorporate the disallowance of NLG's claim" -- a finding in favor of NLG would result in a modification of the Plan which would, in turn, deprive the parties of the benefit of the bargain to which they consented. See Miami Ctr., 838 F.2d at 1556 (finding equitable mootness supported because successful appeal would deprive secured creditor of the benefit of the bargain based on which it supported the plan). Accordingly, we affirm the judgment of the district court dismissing this appeal. **AFFIRMED."**

[4] " The Court finds that the doctrine of equitable mootness warrants granting the Motion and dismissing the instant appeal. First, NLG failed to obtain a stay pending its appeals in both the  Bankruptcy Proceeding and the Adversary Proceeding. *See Bankruptcy Proceeding*, [D.E. 954] (Bankr. S.D. Fla. Sept. 24, 2019); *Adversary Proceeding*, [D.E. 357] (Bankr. S.D. Fla. Oct. 30, 2018). Moreover, the dismissal of the instant appeal. Therefore, the Court shall grant the Motion.  The Court finds that the doctrine of equitable mootness warrants granting the Motion and dismissing the instant appeal. First, NLG failed to obtain a stay pending its appeals in both the  Bankruptcy Proceeding and the Adversary Proceeding. *See Bankruptcy Proceeding*, [D.E. 954] (Bankr. S.D. Fla. Sept. 24, 2019); *Adversary Proceeding*, [D.E. 357] (Bankr. S.D. Fla. Oct. 30, 2018). Moreover, the Eleventh Circuit found that, as to the Adversary Proceeding, "NLG's delay in seeking a stay was unreasonable." *In re Hazan*, 10 F.4th at 1253. "The failure to timely

NLG's appeal of the Final Judgment, the Court finds that the doctrine of equitable mootness

similarly warrants dismissal of the instant appeal."  On November 17, 2022, this Court granted Ms.

Hazan's Motion for entry of Final Decree Closing Case *Decree Closing this Chapter 11*

*Bankruptcy Case (ECF No. 13   ), pursuant to Section 3  0(a) of the Bankruptcy Code, Federal*

---

obtain a stay is critical because it is an important policy of bankruptcy law that court-approved reorganization plans be able to go forward based on court approval unless a stay is obtained." *Id.* at 1252 (internal quotation marks omitted) (quoting *Miami Ctr. Ltd. P'ship v. Bank of N.  .*, 838 F.2d 1547, 1555 (11th Cir. 1988)). Therefore, NLG's failure to timely obtain a stay in both the  Bankruptcy Proceeding and the Adversary Proceeding warrants finding this appeal equitably moot. Second, the Plan has been substantially consummated.[4] "When a reorganization has been substantially consummated, as that term is defined in the Bankruptcy Code, . . . there is a strong presumption that an appeal of an unstayed order is moot." *Id.* at 1253 (internal quotation marks omitted) (quoting *In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007)). This is because it "become[s] legally and practically impossible to unwind the consummation of the plan or otherwise to restore the status quo before confirmation." *Miami Ctr. Ltd. P'ship*, 838 F.2d at 1557. In the related case, the Eleventh Circuit found that "[t]he Plan has been substantially consummated" because all pre- petition property of the estate re-vested in Hazan, Hazan assumed management of all the property, and Hazan commenced distribution under the Plan. *In re Hazan*, 10 F.4th at 1253. Because the Plan has been substantially consummated, a finding that the instant appeal is equitably moot is warranted.

Third, the interests of third parties to the bankruptcy proceedings would be adversely affected if the Court were to grant the relief NLG requests. Importantly, those third parties consented to the Plan and "NLG's requested relief . . . would adversely affect all creditors who relied on the extinguishment of NLG's claim in agreeing to the [Plan]." *NLG, LLC*, 2019 WL 4541700, at *5 (detailing how the interests of third parties to the bankruptcy proceedings would be affected by NLG's requested relief). As the Eleventh Circuit found in affirming the district court's dismissal of the appeal:

> [B]ecause the Plan, which the parties had agreed to, included a provision disallowing NLG's claim -- and creditors, . . . "had [not] consented to the earlier disclosure statement which did not incorporate the disallowance of NLG's claim"
>
> -- a finding in favor of NLG would result in a modification of the Plan which would, in turn, deprive the parties of the benefit of the bargain to which they consented.

*In re Hazan*, 10 F.4th at 1254. The same adverse effects on the interests of third parties who consented to the Plan in the Bankruptcy Proceeding exist here were the Court to grant NLG's

requested relief. Thus, the adverse effects on third parties' interests also warrants finding the appeal equitably moot. After considering the relevant factors, the Court finds that NLG's appeal is equitably moot. As a result, the Court shall grant the Motion and dismiss the appeal. Appellee Lisa Hazan's Motion to Dismiss Appeal, [ECF No. 6], is **GRANTED**."

Rules of Bankruptcy Procedure 3022, and Local Rule 3022-1 that was previously granted filed by Liza Hazan on October 24, 2022. ECF No. 1361. The Trustee for NLG Mr. Alfred T. Giuliano didn't file an objection to Ms Hazan's Motion for Final Decree never filed a motion for Rehearing and refused to file a notice of appeal of the Final Decree despite Kosachuk's constant demands and requests from the Bankruptcy Court in Delaware which have been denied.

## LEGAL ARGUMENT

### A. Reopening a case is a decision left to a bankruptcy court's discretion based on the particular circumstances and equities of the case  and the moving party bears the burden to show a compelling reason to reopen a case.

"Section 350(b) of the Bankruptcy Code provides that '[a] case may be reopened ... to administer assets, to accord relief to the Debtor, or for other cause.'" *In re Mayhugh*, 427 B.R. 549, 551 (Bankr. S.D. Fla. 2010). The moving party bears the burden of demonstrating sufficient cause to reopen. *Diaz-Nieves v. Irizarry (In re Irizarry)*, No. 6:10-BK- 18876-KSJ, 2012 WL 592886, at *1 (Bankr. M.D. Fla. Feb. 17, 2012); *In re Winburn,* 196 B.R. 894, 897 (Bankr. N.D. Fla. 1996)). Moreover, "[t]he ability to reopen a bankruptcy case is not a[n] automatic right but instead is left to the sole discretion of the bankruptcy court on a case by case basis looking at the particular circumstances and equities of that specific case." *In re Mohorne*, 404 B.R. 571, 576 (Bankr. S.D. Fla.), *aff'd sub nom. Mohorne v. Beal Bank, S.S.B.*, 419 B.R. 488 (S.D. Fla. 2009); *accord In re Rodriguez*, No. 12-12043-BKC-LMI, 2020 WL 7240393, at *1 (Bankr. S.D. Fla. Nov. 25, 2020) ("'A decision to reopen a case under section 350(b) is based on "the particular circumstances and equities of each case.'") (quoting *In re Losada,* 557 B.R. 244, 248 (Bankr. S.D. Fla. 2016) (citations omitted)); *Mayhugh*, 427 B.R. at 552 (same); *see HDR Architecture, P.C. v. Maguire Grp. Holdings*, 523 B.R. 879, 886–87 (S.D. Fla. 2014) ("every appellate court to have considered the issue has held that a bankruptcy court's decision whether to reopen a case

pursuant to 11 U.S.C. § 350(b) is reviewed on an abuse of discretion standard.") (collecting cases). "'When deciding whether to reopen a closed case, courts generally consider the benefit to creditors, the benefit to the debtor, the prejudice to the affected party and other equitable factors.'" *Rodriguez*, 2020 WL 7240393, at *1 (quoting *Losada,* 557 B.R. at 248). But "[a] motion to reopen a bankruptcy case should be granted 'only where a compelling reason for reopening the case is demonstrated.'" *Mid-City Bank v. Skyline Woods Homeowners Ass'n (In re Skyline Woods Country Club, LLC)*, 431 B.R. 830, 835 (8th Cir. B.A.P. 2010) (quoting *In re Borer*, 73 B.R. 29, 31 (Bankr. N.D. Ohio 1987)). Moreover, if reopening would not benefit the debtor's estate or its creditors, a court may find that there is no reasonable basis upon which to reopen the case. *Rodriguez*, 2020 WL 7240393, at *1; *In re HBLS, L.P.*, 468 B.R. 634, 639 (Bankr. S.D.N.Y. 2012).

### B. Movants cannot meet their burden of showing a basis to reopen the case

Reopening the case will not benefit creditors, because all unsecured creditors have already been paid in full Ms. Hazan was granted a Discharge on December 7, 2018. [ECF No. 766]. and the secured creditors are being dealt with in State court and are secured by a multi million dollar property on Fisher Island, the richest Zip code in America, property worth more than $20 million dollars. All secured creditors obtained stay relief. Reopening the case will not benefit the Reorganized Discharged Debtor Ms. Hazan, who opposes the motion; In addition to not showing a benefit to either the creditors or the Reorganized Discharged Debtor Ms. Hazan, Movants fail to show that reopening the case will not prejudice the Reorganized Discharged Debtor. Ms. Hazan *See In re McHale*, 593 B.R. 670, 674 (Bankr. M.D. Fla. 2018), *amended in part,* 6:10-BK-02527-KSJ, 2018 WL 11206051 (Bankr. M.D. Fla. Aug. 7, 2018); *Losada,* 557 B.R. at 248. Again, reopening will harm the Reorganized Discharged Debtor Ms. Hazan by,

at a minimum, requiring her to respond to and defend the baseless frivolous Motion to Reopen *this case, for relief from the Discharge Order [Doc. 13   ] and Final Decree [Doc. 13  6], to declare the confirmed plan in default, to strike the Confirmation Order [Doc. 691], to dismiss this individual Chapter 11 bankruptcy case with prejudice and restore all parties to their respective prepetition status* (the "Motion to Reopen"), identical issues were raised and were repeatedly heard and denied by this Court. Reopening the Lead Case [ECF 1364], per Movants' own filing, will cause substantial harm to Ms. Hazan.

In analyzing prejudice, courts consider the administrative responsibilities imposed upon a debtor, including *inter alia*: (1) the requirement to provide notice and due process to the large number of bankruptcy parties that would not be required outside of bankruptcy; (2) the related requirement to obtain court approval for certain actions where none would be necessary outside of bankruptcy, including for the retention of professionals, and for the approval of for transactions involving discharged and reorganized debtor's property outside of the ordinary course of business; (3) the need to pay operating expenses not incurred outside of bankruptcy, such as U.S. Trustee fees; and (4) the obligation to file monthly operating reports that was waived by Judge Cristol. All of those concerns exist here, but none are addressed in Movants' Motion to Reopen. Movants thus fail to carry their burden on the issue of "prejudice" to the Reorganized Discharged Debtor Ms. Hazan.

## C. Granting Movants' Motions Would Impair the Reorganized Discharged Debtor's Fresh Start

Section 524(a)(2) provides that a discharge obtained in a chapter 11 case *511 "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is   waived[.]" As the Eleventh Circuit has stated, "[a] bankruptcy discharge and the concomitant injunction against subsequent actions [provided by

section 524(a) ] are designed to give the debtor a financial '**fresh start**.' " *Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.),* 883 F.2d 970, 972 (11th Cir.1989); *see also Walker v. Wilde (In re Walker),* 927 F.2d 1138, 1142 (10th Cir.1991) ("The intent of this post-discharge injunction is to protect debtors ... in their financial '**fresh start**' following discharge."). Section 524(a)(2) prevents a creditor from prosecuting a prepetition action to recover a debt as a personal liability of the debtor. *In re Jet Fla. Sys., Inc.,* 883 F.2d at 973 (The applicability of section 524(e) to the post- discharge injunction provided by section 524(a) hinges "upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in economic life."); *In re Walker,* 927 F.2d at 1142 (same). Moreover, courts have consistently held that "[a]ny economic loss" incurred by a debtor due to the post-discharge prosecution of a prepetition action would result in a violation of the section 524(a) injunction. *Perez v. Cumberland Farms, Inc.,* 213 R. 622, 624 (D.Mass.1997); *see also Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.),* 219 B.R. 716, 721 (Bankr.W.D.La.1998) (denying relief from the discharge injunction because the reorganized debtor would incur expenses). Thus, the fresh start policy embodied in the discharge injunction is very much at play here and relief must be denied.

**D. Res judicata, collateral estoppel and the law of the case bars Non creditors non interested parties NLG, uan Ramirez, r., Chris osachuk bar this motion to reopen.**

Res judicata, collateral estoppel and the law of the case are three distinct, but related court-created rules designed to **promote judicial efficiency and systemic consistency**. The Eleventh Circuit has laid out the test for each rule and the distinctions between them. Res judicata is frequently used to refer generically to the law of former adjudication. A former judgment can create two different types of bars to subsequent litigation, depending on whether the subsequent litigation arises from the same or a different cause of action. If the later litigation

arises from the same cause of action, then the judgment bars litigation not only of "every matter which was actually offered and received to sustain the demand, but also [of] every [claim] which might have been presented." ... [W]e refer to this strand of former adjudication as "claim preclusion." ... If, however, the subsequent litigation arises from a different cause of action, the prior judgment bars litigation only of "those matters or issues common to both actions which were either expressly or by necessary implication adjudicated in the first." ... We refer to this strand of former adjudication as "issue preclusion." Closely related to the doctrines of claim and issue preclusion is the doctrine of "law of the case." This is a rule of practice under which a rule of law enunciated by a federal court "not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which other courts owing obedience to it must, and which it itself will, normally, apply to the same issues in subsequent proceedings in the same case." ... While the law of the case does not bar litigation of issues "which might have been decided but were not,"... it does require a court to follow what has been decided explicitly, as well as by necessary implication, in an earlier proceeding, ... The distinction between law of the case and claim preclusion is that the former bars relitigation of legal rules while the latter bars relitigation of claims (i.e., legal rules applied to the facts of the case). In addition, law of the case bars only those legal issues that were actually, or by necessary implication, decided in the former proceeding, while claim preclusion bars relitigation not only of claims raised but also claims that could have been raised. Law of the case differs from issue preclusion in that the former applies only to proceedings within the same case, while the latter applies to proceedings in different cases. Wallis v. Justice Oaks II, Ltd., (In re Justice Oaks II, Ltd.), 898 F.2d 1544, 1550 n.3 (11th Cir. 1990) (citations omitted) (emphasis in original). Holding no standing in this case, Kosachuk, NLG, and its counsel Ramirez are barred from

moving to reopen and relief from confirmation, discharge, and Final Decree orders and dismiss the case that has been fully administered, a discharge was granted, and this Court's Final Judgment was upheld by the United States District Court Southern District of Florida and The United States Court of Appeals for the Eleventh Circuit. On September 1, 2021 the District Court Order dismissing of NLG's appeal of this Court's Final Judgment was affirmed by The United States Court of Appeals for the Eleventh Circuit (ECF 1047) ("the Opinion"). On October 25, 2021 The United States Court of Appeals for the Eleventh Circuit denied NLG's Motion for rehearing. NLG, Ramirez and Kosachuk filed a motion to dismiss raising the same identical issues and was denied [ECF No. 1060] and NLG's latest motion to dismiss was stricken by this court granting the Delaware Chapter 7 NLG trustee's motion to strike NLG's motion to dismiss as unauthorized. [ECF No. 1305, 1306]. Kosachuk's motion to dismiss was also denied [ECF 1221] and Judge Scola affirmed this Court's decision. The Eleventh Circuit also dismissed Kosachuk's appeal of Judge Scola's Order. The Court has already ruled on the same issues dismissing with prejudice NLG and Chris kosachuk's complaint to revoke Confirmation and Discharge Orders in Adv case 18-01492-AJC (ECF 35)]. NLG and Kosachuk never appealed this Courts' Order of dismissal of the adversary case. Judge Scola and Judge Martinez properly ruled that Kosachuk and NLG are not creditors and non interested parties in this case, and not "persons aggrieved" and lack standing to appear or be heard in this case.

### E. No equitable factors support reopening the case.

As to "other equitable factors," courts consider any delay in seeking reopening, and whether alternative forums are suitable to address the issues. *See McHale*, 593 B.R. at 674. Finally, and particularly applicable here, a court will not reopen a case "where it appears that to do so would be futile and a waste of judicial resources." *In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va.

1995); *Cadlerock Joint Venture L.P. v. Herendeen*, 531 B.R. 869, 872 (M.D. Fla. 2015) (affirming denial of motion to re-open case when bankruptcy court correctly found the relief sought by creditor was futile). All of those "equitable factors" also weigh against reopening the case.

**1. The Motion to Reopen should be denied because Movants could and should have filed the Motion to dismiss in this Court while the case was pending and filed numerous motions to dismiss and relief from discharge order and confirmation order and their attempts were repeatedly denied.**

Courts consider whether a motion to reopen was filed timely. *See V.I. Bureau of Internal Revenue v. St. Croix Hotel Corp.*, 60 B.R. 412, 414 (D.V.I. 1986), *aff'd*, 867 F.2d 169 (3d Cir. 1989). Courts also recognize that **laches** may apply to deny a motion to reopen. *See In re Delfino*, 351 B.R. 786, 789 (Bankr. S.D. Fla. 2006) (citing *In re Hunter,* 283 B.R. 353 (Bankr. M.D. Fla. 2002)). At bottom, a movant must demonstrate diligence in seeking to reopen the underlying case. *Delfino*, 351 B.R. at 789; *In re de la Rosa*, 00-18210BKC-RAM, 2006 WL 2871854, at *1 (Bankr. S.D. Fla. Apr. 5, 2006). Here, Movants' Motion to Reopen is untimely because the Court closed the Lead Case on November 17, 2022." two and one-half months before the Motion to Reopen was filed. But simply counting the months since closing is the wrong measure under "the particular circumstances and equities" of this case because Movants seek to reopen the case principally for the purpose of filing a motion to dismiss that could and should have been filed in this Court and was filed and denied before the case was ever closed. But on October 24, 2022, before the case was closed, Movants, knowing for more than a month that Reorganized Discharged Debtor Ms. Hazan was seeking closure, made the strategic choice to wait for Judge Cristol to retire. They chose instead to gamble that they were better off waiting for the new Judge replacing Judge Cristol. There is no equitable basis for Movants, having lost that strategic bet, to now come back to this Court to reopen the closed case so Movants can file a motion that

could and should have been filed while the case was open. In fact, NLG, Ramirez and Kosachuk filed a motion to dismiss raising the same identical issues and was denied [ECF No. 1060] and NLG's latest motion to dismiss was stricken by this court granting the Delaware Chapter 7 NLG trustee's motion to strike NLG's motion to dismiss as unauthorized. [ECF No. 1305, 1306]. Kosachuk's motion to dismiss was also denied [ECF 1221] and Judge Scola affirmed this Court's decision. There is no equity in allowing Movants to pursue a chosen litigation strategy the bankruptcy case was open and then to come back to this Court post-closing only because their strategic gambit failed. "A case should not be reopened 'to relieve a party of the consequences of his own mistake or ignorance [,]'" nor "is good cause established by mere inattention or neglect." *V.I. Bureau*, 60 B.R. at 414; *Skyline Woods*, 431 B.R. at 835. On December 19, 2022, Kosachuk filed an appeal of the Order Granting Final Decree Closing case. [ECF No. 1381] *See* case 22-cv-24116-JEM. NLG filed an unauthorized Notice of appeal of the Order granting Final Decree [ECF No. 1381]. On January 5, 2023, this Court dismissed Kosachuk's appeal of the Order granting Final Decree. [ECF No. 1391].  If Movants "needed" so desperately to have their motion heard, they could and should have filed the Prior Motion in this Court (or even earlier), before this case was closed, and they did and their motions to dismiss were either denied or stricken by this court and the Delaware chapter 7 trustee for NLG.

**.  The issues addressed in the Motion are pending in the state court proceedings, and those issues can and must properly be adjudicated only in that forum.**

There is no "equitable" basis for reopening a closed bankruptcy case solely for the purpose of considering a request to "strike" the Confirmation Order, the Discharge Order, the Final Decree and dismiss case. The Motion to Reopen fails.

**.  The Motion is meritless, so reopening the cases would be futile.**

The futility of reopening these cases to consider a Motion to dismiss that was already heard

and denied numerous times also bars the requested relief. Where a claim "is certain to fail upon a reopening of the proceedings, a bankruptcy court may properly deny the motion." *In re assover*, 448 B.R. 625, 631 (S.D.N.Y. 2011); *Cadlerock J.V.*, 531 B.R. at 872. This goes hand-in-hand with the notion that "a closed bankruptcy proceeding should not be reopened where it appears that to do so would be futile and a waste of judicial resources." *Redmond v. Fifth Third Bank*, 624 F.3d 793, 803 (7th Cir. 2010) (internal quotations omitted). "A case should not be reopened 'to relieve a party of the consequences of his own mistake or ignorance [,]'" nor "is good cause established by mere inattention or neglect." *V.I Bureau*, 60 B.R. at 414; *Skyline Woods*, 431 B.R. at 835. And, because it will be futile, the Court should deny the Motion to Reopen both for reasons of judicial economy and to protect the Reorganized Discharged Debtor Ms. Hazan from any harm occasioned by reopening the closed case.

### . *The Prior Motions were meritless when they were filed when the case was open*

The Motion to dismiss is substantially the same as the Prior Motion filed it fails and reopening the bankruptcy cases will be futile. A threshold matter that doomed the Prior Motion is still fatal today to any Motion. The Motion to reopen lacks merit and it does not justify reopening the bankruptcy case. In sum, the Motion to Reopen is nothing more than a way-too-late attempt to undo final judgments, final orders, entered years ago in this bankruptcy case, in the Selective Adversary, in the District Court, in the Eleventh Circuit Court of Appeals. 11 U.S.C. § 350(b) authorizes courts to reopen closed cases "to administer assets, **to accord relief to the debtor**, or for cause."  The statute does not define "cause" for reopening, and bankruptcy courts have broad discretion to determine whether cause exists to reopen a case.  *In re Easley-Brooks*, 487 B.R. 400, 406 (Bankr. S.D.N.Y. 2013); *In re Judson*, 586 B.R. 771, 772 (Bankr. C.D. Cal. 2018).  Factors courts consider include the length of time the case was closed, whether any parties would suffer prejudice by reopening, and whether it is clear that no relief would be forthcoming if the

case was reopened. *In re   im*, 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017). These factors weigh heavily against reopening the case. First, this case was closed more than three months ago in November 2022.   Second, Ms. Hazan would be severely prejudiced if the case was reopened. There are presently 1394 docket entries in this case, 411 entries in the Selective Adv case 16-01439-AJC, and scores of papers filed in numerous appeals. Essentially, starting over is an unjustified request for extraordinary relief given the scant cause articulated by the Movants. The last factor is the most compelling.   On this record, this Court will not, and could not, afford relief to the Movants on their Motion to Reopen, so reopening would be futile.   First, this Court has entered a Final Judgment against NLG on November 2017, confirmed a plan on June 2018, discharged Ms. Hazan from all of her prepetition debts in December 7, 2018, and on November 2022, entered a Final Decree Order closing case, all of the claims Movants seek to relitigate if their Motion to Reopen was granted.   Second, as discussed more fully above, there is no newly discovered fact for arguing again the same arguments that were repeatedly denied by this Court, the District Court and by the Eleventh Circuit Court provide no cause to grant the Motion to Reopen, for relief from orders and to dismiss case.

## CONCLUSION

WHEREFORE, For the foregoing reasons, Movants lacking standing have failed to carry their burden of showing that the bankruptcy case should be reopened. Reopening the case, particularly, would not provide any benefit to creditors or the Reorganized Discharged Debtor Liza Hazan a/k/a Elizabeth Hazan, and it would expose the Reorganized Discharged Debtor Liza Hazan a/k/a Elizabeth Hazan to potential administrative burdens and harm. Also, Movants cannot not obtain relief based on equitable considerations because they could and should have and did file their motion for relief and motion to dismiss when the case was open and repeatedly lost; NLG, Ramirez

and Kosachuk filed a motion to dismiss raising the same identical issues and was denied [ECF No. 1060] and NLG's latest motion to dismiss was stricken by this court granting the Delaware Chapter 7 NLG trustee's motion to strike NLG's motion to dismiss as unauthorized. [ECF No. 1305, 1306]. Kosachuk's motion to dismiss was also denied [ECF 1221] and Judge Scola affirmed this Court's decision. The Eleventh Circuit also dismissed Kosachuk's appeal of Judge Scola's Order. NLG's appeal of the Confirmation Order was dismissed by Judge Gayles and the trustee for NLG dismissed NLG's appeal of Judge Gayles' Dismissal order of the confirmation order in the Eleventh Circuit. This Court's Final Judgment against NLG in favor of Hazan and Selective disallowing NLG's claim was upheld by District Court Judge Smith and by the Eleventh Circuit Court. Thus, the fresh start policy embodied in the discharge injunction is very much at play here and relief must be denied. Granting Movants' Motions would Impair the Reorganized Discharged Debtor's Fresh Start. Res judicata, the law of the case and equitable mootness bar this instant motion. Finally, reopening the case would be futile, because there is no basis for dismissal or relief from final orders of this court that were upheld by the district courts of appeals and by the Eleventh Circuit Court of Appeals.

WHEREFORE, Liza Hazan is respectfully requesting this Court Deny Movants' Motion and Grant her Motion to Strike and grant any other relief the Court may deem just and proper.

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

Dated: February 6, 2023.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6h day of January 2023, I electronically filed this document with the Clerk of Court using CM/ECF system. I also certify that the document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filling.

Respectfully submitted,

**JOEL M. ARESTY, P.A.**

309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903

*S:/ Joel M. Aresty*
Joel M. Aresty, ESQ
Fla. Bar No. 197483
aresty@Mac.com

***Attorneys for Reorganized and Discharged Liza Hazan***

25

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**Case Number: 22-22781-CIV-MARTINEZ**

CHRIS KOSACHUK,

      Appellant,

vs.

LIZA HAZAN, a/k/a ELIZABETH HAZAN,

      Appellee.

_____/

## ORDER DISMISSING BANKRUPTCY APPEAL

**THIS CAUSE** came before the Court *sua sponte*. Appellant Chris Kosachuk appeals the bankruptcy court's order denying his motion to recuse Bankruptcy Judge A. Jay Cristol from the Chapter 11 voluntary proceedings in Case Number 16-10389 in the Southern District of Florida. (*See* ECF No. BK-ECF No. 1276).[1] As explained below, the Court dismisses this appeal based on Appellant's lack of standing.

The Court will not belabor over the facts here. Appellant is a frequent filer who has repeatedly, and over the course of several years, attempted to insert himself in the bankruptcy proceedings involving Ms. Hazan. Those attempts have been repeatedly denied. Ultimately, sanctions were entered against Mr. Kosachuk for his violation of numerous orders entered by Judge Cristol. (ECF No. BK-1341 at 2; *see also* ECF No. BK-1349). Before that sanctions order, however, Judge Cristol denied Mr. Kosachuk's motion to recuse, finding it "frivolous." (ECF No. BK-1276 at 3). Judge Cristol's order denying recusal stated that prior to the filing of the

---

[1] The Court will cite to docket entries filed in the bankruptcy proceedings with the notation "BK-ECF No." and will cite to docket entries in this case with the notation "ECF No."

bankruptcy proceedings, he had "never been aware of or heard of the existence of Chris Kosachuk, or the Debtor for that matter." (*Id.* at 2). Further, Judge Cristol noted that he "had no knowledge of Mr. Kosachuk's animus toward the Debtor and only learned of his apparent vendetta in this case in connection with the Debtor's stripping of a lien in this bankruptcy, a well as other legal activity in other judicial forums." (*Id.*).

Clearly, Mr. Kosachuk is unhappy with the how the bankruptcy proceedings have progressed. But that is neither here nor there—the Court will not reach the merits of Mr. Kosachuk's appeal in this case because he lacks standing. Standing to appeal a bankruptcy court order is limited "to those individuals who have a financial stake in the order being appealed." *In re Westwood Cmty. Two Ass'n, Inc.*, 293 F.3d 1332, 1335 (11th Cir. 2002). Under this principle— "the person-aggrieved doctrine"—a person is considered to have a financial stake in a bankruptcy-court order "when that order 'diminishes their property, increases their burdens or impairs their rights.'" *Id.* (citation omitted).

Mr. Kosachuk is not a creditor in the bankruptcy case, and he does not identify any tangible stake he has in the outcome or administration of the bankruptcy case. His dissatisfaction with the process does not, by itself, confer standing. More specifically, the bankruptcy court's denial of a meritless motion to recuse has no direct impact on Mr. Kosachuk—even though he was the movant. Mr. Kosachuk attempts to manufacture standing by claiming that the denial of the motion to recuse is "fairly traceable" to the sanction order. The Court does not agree. The "person aggrieved doctrine restricts standing more than Article III standing, as it allows a person to appeal only when they are directly and adversely affected pecuniarily by the order." *Id.* (emphasis added). Mr. Kosachuk fails to show how Judge Cristol's failure to recuse in Ms. Hazan's bankruptcy case, in which Mr. Kosachuk himself is not a creditor, had any direct or adverse impact on him

2

pecuniarily.  "Allowing appeals from parties who have suffered only an indirect harm or who hold interests outside the scope of the Bankruptcy Code," like Kosachuk, "would defeat the very purpose underlying [the Eleventh Circuit's] person aggrieved standard."  *In re Ernie Haire Ford, Inc.*, 764 F.3d 1321, 1326 (11th Cir. 2014).  Indeed, the Honorable Robert N. Scola has just recently dismissed an appeal from the bankruptcy proceedings due to Kosachuk's lack of standing.  *See Kosachuk v. Hazan*, Case No. 22-cv-21485-RNA (ECF No. 21) (S.D. Fla. Oct. 10, 2022).

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that this appeal is **DISMISSED** *sua sponte* for lack of standing.  *See In re Vick*, 233 F. App'x 897, 899 (11th Cir. 2007) (affirming *sua sponte* dismissal of bankruptcy appeal for lack of standing).  All pending motions are **DENIED AS MOOT**.  The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 31st day of January, 2023.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record



**ORDERED in the Southern District of Florida on February 9, 2023.**

Paul G. Hyman, Jr., Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                   Case No. 16-10389-PGH
                                                         Chapter 11

LIZA HAZAN,

      Debtor.

_____/

### ORDER GRANTING MOTION TO STRIKE

      This matter came before the Court upon the *Reorganized Discharged Liza Hazan Cross Motion to Strike Non-Creditors Non Interested [sic] Parties Disallowed Unauthorized Joint Motion to Reopen Case* [ECF No. 1396] (the "Motion to Strike") filed by Liza Hazan (the "Debtor"). The Debtor asks the Court to strike the *Joint Motion to Reopen Case, for Relief from Discharge Order and Final Decree, to Declare Confirmed Plan in Default, to Strike Confirmation Order, to Dismiss Case with Prejudice and Restore All Parties to Their Prepetition Status* [ECF No. 1394][1] (the "Motion to Reopen") filed by NLG, LLC; Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC (the

---

[1] The Court encourages all parties to strive for shorter motion titles.

"Association Members"); and Chris Kosachuk (together, the "Movants"). For the reasons stated below, the Movants lack standing. The Court will grant the Motion to Strike.

The Debtor filed a voluntary chapter 11 petition on January 11, 2016. The Court confirmed the Debtor's plan of reorganization on June 12, 2018. ECF No. 691. The Debtor received her discharge on December 7, 2018. ECF No. 766. The Court entered a Final Decree and closed this case on December 5, 2022. ECF No. 1376. Through the Motion to Reopen, the Movants ask the Court for a mulligan on seven years of litigation. The Debtor argues the Movants lack standing and requests the Court strike the Motion to Reopen.

11 U.S.C. § 1109(b) allows a "party in interest" to appear and be heard on any issue in a chapter 11 case. Section 1109(b) allows parties to participate in chapter 11 cases if the parties have a legal or pecuniary interest in the outcome of the case. *In re James Wilson Assocs.*, 965 F.2d 160, 169 (2d Cir. 1992). An entity's equity holders do not have an interest sufficient to support standing. *See In re Refco, Inc.*, 505 F.3d 109 (2d Cir. 2007). Under Florida law, the members of a homeowner's association generally cannot bring claims on behalf of the association. *See Collado v. Baroukh*, 226 So. 3d 924 (Fla. 4th DCA 2017).

Mr. Kosachuk and the Association Members did not file proofs of claim in this case. NLG filed a proof of claim, but the Court disallowed that claim. Adv. Pro. No. 16-01439-AJC, ECF No. 238. NLG appealed, the District Court dismissed the appeal, and the Eleventh Circuit affirmed the District Court's dismissal. ECF Nos. 386, 410. NLG and Mr. Kosachuk litigated, lost, and now whine for a redo. However, neither Mr. Kosachuk nor NLG have any pecuniary interest in this case. The Court has previously stated that Mr. Kosachuk lacks standing. ECF No. 1106. NLG also lacks standing. Adv. Pro. No. 18-01492-AJC, ECF No. 35.

The Association Members claim injury on the theory that the Debtor owes money to the Fisher Island Condominium Association, the Debtor has not paid the Association, and the Association Members are left holding the bag. However, the Association Members cannot

assert claims on behalf of the Association under Florida law. They are not the party with a direct pecuniary interest in the bankruptcy. They have no standing in this case.

The Movants lack standing to appear in this case. The Motion to Reopen makes this obvious. In the Motion to Reopen, the Movants complain about injuries solely to other parties. The Motion to Reopen appears to be filed solely for the improper purpose of harassing the Debtor. Revocation of discharge requires an adversary proceeding. NLG knows this because NLG filed a complaint to revoke the Debtor's discharge on December 18, 2018. Adv. Pro. No. 18-01492-AJC. The Court dismissed that adversary proceeding. Adv. Pro. No. 18-01492-AJC, ECF No. 35. That dismissal order notes that Mr. Kosachuk and NLG lack standing. Other Courts have also explained this to NLG and Mr. Kosachuk. *See, e.g.,* ECF Nos. 1331, 1397. No good faith basis exists for the Movants to have filed the Motion to Reopen.

For the foregoing reasons, it is ORDERED and ADJUDGED that the Motion to Strike [ECF No. 1396] is GRANTED and the Motion to Reopen [ECF No. 1394] is hereby STRICKEN.

###

Copy to:
Joel M. Aresty, Esq.

*Joel M. Aresty, Esq. is directed to serve a copy of this order on all appropriate parties and shall file a certificate of service with the Court.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                          Case No. 16-bk-10389-PGH

LIZA HAZAN a/k/a ELIZABETH HAZAN,               Chapter 11

            Debtor,

_____/

**JOINT MOTION FOR REHEARING AND RELIEF FROM**
**ORDER GRANTING MOTION TO STRIKE [ECF NO. 1400]**

NLG, LLC ("NLG"), Fisher Island Community Association ("FICA") Members, Roberto

Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC, through

undersigned counsel, and Chris Kosachuk ("Kosachuk"), *pro se,* (collectively "Movants") file this

Joint Motion for Rehearing and Relief From Order Granting Motion to Strike [ECF No. 1400] (the

"Order") pursuant to Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure

("FRBP") and Rules 59 and 60 of the Federal Rules of Civil Procedure ("FRCP"). Movants

respectfully state:

The Court summarily concluded that Movants "ask the Court for a mulligan on seven years

of litigation." [ECF No. 1400 p. 2]. That is incorrect. Movants are asking the Court to enforce

black letter bankruptcy law that a Debtor who fails to honor her own confirmed plan must suffer

the consequences. The confirmed plan required the Debtor to file post confirmation operating

reports, to pay United States Trustee fees, to pay her income taxes to the IRS, to pay her property

taxes to Miami-Dade County and to pay her creditors pursuant to her own confirmed plan. The

Debtor has done none of these, all of which were concealed by her failure to file the post

confirmation operating reports.

Joint Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 2 of 9

"Monthly reports and the financial disclosures contained within them 'are the life-blood of the Chapter 11 process' and are more than 'mere busy work.'" *In re Whetten*, 473 B.R. 380, 383 (Bankr. D. Colo. 2012) (citing *In re Berryhill*, 127 B.R. 427, 433 (Bankr. N.D. Ind. 1991)). "Monthly operating reports provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts." *ABCD Holdings, LLC v. Hannon (In re Hannon)*, 512 B.R. 1, 19 (Bankr. D. Mass. 2014) (citation omitted) (internal quotations omitted). "Without these reports, the [U.S. Trustee] and creditors cannot determine when a debtor is incurring additional losses, is rendered administratively insolvent, or is transferring assets without authorization." *In re Whetten*, 473 B.R. at 383. "The reporting requirements provide the primary means for monitoring the debtor's compliance with the Code's requirements and they serve as a litmus test for a debtor's ability to reorganize." *Id.* at 384. Consequently, "[r]efusal or inability to provide financial disclosure sounds the death knell of a Chapter 11 case." *In re Costa Bonita Beach Resort, Inc*., 513 B.R. at 199 (citations omitted) (internal quotations omitted). "The failure to file monthly operating statements . . . 'whether based on inability to do so or otherwise, undermines the Chapter 11 process and constitutes cause for dismissal or conversion of the Chapter 11 proceedings.'" *Id.* (citation omitted); *Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 173 (B.A.P. 1st Cir. 2016).  This debtor has never filed any post confirmation operating reports, never paid the UST any post confirmation fees and as such, it is axiomatic that this bankruptcy should be immediately dismissed. In fact, this Court should order the dismissal *sua sponte*.

The Order ignored all these confirmed plan defaults and summarily concluded that the Movants have no standing.  It does so by ignoring binding caselaw from the U.S. Supreme Court and the Eleventh Circuit Court of Appeals, as well as totally misreading Florida law. The Order

Joint Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 3 of 9

states: "Under Florida law, the members of a homeowner's association generally cannot bring claims on behalf of the association. *See Collado v. Baroukh*, 226 So. 3d 924 (Fla. 4th DCA 2017)." Attached hereto as Exhibit 1 is the *Collado* case.  The case does not endorse such a proposition. Actually, the word "standing" does not even appear in the case! *Collado* involved a derivative action brought by a condominium unit owner against the condominium association. After the trial court dismissed the complaint, the association argued on appeal that the complaint had been properly dismissed because the suit had been prematurely filed, improperly pled, and failed to state a cause of action. The Fourth District reversed the dismissal, implicitly finding that that association members actually have standing to prosecute such a complaint pursuant to Florida Statute 718.111(3).

The plain language of section 718.111(3) says nothing about designating the condominium association as the exclusive holder of the right to sue over the common elements. The statute merely confers on condominium associations the substantive "capacity" to sue. *Id.* Additionally, the statute contains an express reservation of rights clause: "This section does not limit any statutory or common-law right of any individual unit owner or class of unit owners to bring any action without participation by the association which may otherwise be available." § 718.111(3)(e). Likewise, Florida Rule of Civil Procedure 1.221 contains no exclusivity provision and has a similar reservation of rights clause.  This was made clear by the Florida Supreme Court in *Rogers & Ford Constr. Corp. v. Carlandia Corp,* 626 So. 2d 1350 (Fla. 1993):

> The history of these provisions reveals that the rights reserved to unit owners include the right of an individual unit owner to sue with respect to construction defects or deficiencies in the common areas or common elements. Early interpretations of the Condominium Act, originally adopted in chapter 63-35, Laws of Florida, held that individual unit owners did have standing to maintain actions arising over disputes about the common elements, and that condominium

Joint Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 4 of 9

> associations lacked standing to sue either in their individual capacity or as class representatives of similarly situated unit owners…

> The Legislature responded to these decisions by amending the statute in 1974 to enlarge the standing of condominium associations while reserving all the unit owners' statutory and common law rights that were available, **including standing**.

*Id.* at 1353-54. (footnote omitted, emphasis added).

Association members have always had standing to sue. In fact, the association's standing, sometimes referred to as "associational standing," is dependent on the members' standing. *See, e.g., N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 9, 108 S. Ct. 2225, 2232 (1988)(stating that "an association has standing to sue on behalf of its members when those members would have standing to bring the same suit."). This case relied upon *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333 (1977), which stated that "an association has standing to bring suit **on behalf of its members** when: (a) **its members would otherwise have standing to sue in their own right**; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 343 (emphasis added). This language was quoted with approval in *Palm Point Property Owners' Ass'n v. Pisarski,* 626 So. 2d 195, 197 (Fla. 1993). In fact, *Palm Point* ends the opinion stating that "on remand, the individual property owners, who joined in the third amended complaint **and who clearly have standing** to enforce the covenants, should be allowed to continue in the action." *Id.* at 197-98.

The Eleventh Circuit recently opined on the issue of bankruptcy standing in the case of *Breland v. the United States*, 989 F.3d 919 (11th Cir. 2021), which stated: "Existing standing doctrine requires a plaintiff to demonstrate (1) an actual (or imminent), concrete, and particularized injury-in-fact (2) that is fairly traceable to the defendant's challenged action and (3) that is likely

Joint Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 5 of 9

redressable by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)." *Id.* at 922. The Fisher Island Community Association members check each box, as does NLG.

Clearly the members of the Homeowners' Association have been harmed by the Debtor's failure to honor her own confirmed plan and pay the HOA fees. The dismissal of the bankruptcy will allow the members and the Association to recover its fees and will stop the Debtor from accumulating further fees, which accrue at the rate of almost $1,000 per week. Thus, there is no question that individual members have standing to seek dismissal of the bankruptcy case because they have been directly harmed by it and dismissal will correct the harm. In the absence of the association stepping up to the plate, the members have every right to seek redress.

The Court correctly concluded that this Debtor has left the association "holding the bag" which is the inescapable conclusion of what has happened since the plan was confirmed. By already concluding that Debtor has defaulted on the confirmed plan as it relates to the members of FICA, this Court must dismiss this bankruptcy for failure to comply with the confirmed plan.

Equally important: the United States Trustee has public interest standing in all bankruptcies. The United States Trustee has an overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See, United States Trustee v. Columbia Gas SYS., Inc.* (*In re Columbia Gas SYS., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgen Stern v. Revco D.S., Inc.* (*In re Revco D.S., Inc.*), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). The United States Trustee Program is the component of the Department of Justice responsible for overseeing the administration of bankruptcy cases and private trustees under 28 U.S.C. § 586 and 11 U.S.C. § 101, et seq. A national

Joint Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 6 of 9

program with broad administrative, regulatory, and litigation/enforcement authorities whose mission is to promote the integrity and efficiency of the bankruptcy system for the benefit of all stakeholders–debtors, creditors, and the public.  The Court should have heard from the UST before granting the motion to strike.

The Court next points out that Mr. Kosachuk and the Association members did not file proofs of claim.  While this may be true for Mr. Kosachuk because his company NLG did file a proof of claim [Claim #17], it is not true for the association.  FICA did file a proof of claim [Claim #18] and was to be paid through the confirmed plan with the first plan payment starting on June 12, 2018, in the amount of $46,555.   Thereafter the Debtor was to pay the quarterly HOA fees to FICA which total over $49,000 per year. [*See* Plan ECF No. 563 pages 12-13]   The Debtor failed to make the confirmation day payment to FICA and every payment thereafter.  Indeed, the Debtor has never paid FICA since she moved into Fisher Island in 2007.  During the entire time, she has lived in Fisher Island for free at the expense of other FICA members such as Movants, NLG, JP Morgan Chase Bank and the Valencia Estates HOA.

The Court then stated that "NLG and Mr. Kosachuk litigated, lost, and now whine for a redo. However, neither Mr. Kosachuk nor NLG have any pecuniary interest in this case".  Mr. Kosachuk and NLG are not whining for a redo and clearly have an interest in the case.  NLG is a secured creditor who was wiped out by the confirmed plan.  However, now that the Debtor has squandered her opportunity for a fresh start, defaulted repeatedly for the last five years on her confirmed plan and paid almost none of her creditors, the Debtor loses all the benefits of her confirmed plan. Critically, NLG is entitled to have its Final Judgment of Foreclosure, attached hereto as Exhibit 2, reinstated pursuant to Section 349 of the bankruptcy code.  The aim of § 349(b) is to return the parties, as far as practicable, to the financial positions they occupied before the case

Joint Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 7 of 9

was filed. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) (stating that a dismissal of the Chapter 11 case under 11 USC §1112(b) "typically 'revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case'—in other words, it aims to return to the prepetition financial status quo. §349(b)(3).")." *Id.* at 456. *See also* S. Rep. No. 95-989, at 49 (1978) ("The basic purpose of [§ 349(b)] is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *And see also HSBC Bank USA v. Blendheim (In re Blendheim)*, 803 F.3d 477, 487 (9th Cir. 2015) (noting that, upon dismissal of a Chapter 13 case, the "debtor loses any benefits promised in exchange for the successful completion of the plan— whether *in personam*, such as discharge, or *in rem*, such as lien voidance," and further asserting that, in effect, "dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies available to him"); 3 Collier on Bankruptcy ¶ 349.01[2], at 349-3 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017); *First Nat'l Bank of Oneida, N.A. v. Brandt*, 887 F.3d 1255, 1261 (11th Cir. 2018).

Respectfully, this Court erred when it concluded that NLG has no standing when it was the largest creditor and the cause of the filing of this bankruptcy.  This Debtor filed bankruptcy on January 11, 2012, the night before the Miami-Dade County Clerk was set to auction off the Fisher Island Property to the highest bidder pursuant to NLG's Final Judgment of Foreclosure.  [*See* Exh. 2].  Under *Breland, supra,* NLG has demonstrated (1) an actual, concrete, and particularized injury-in-fact (2) that is fairly traceable to the defendant's challenged action and (3) that is likely redressable by a favorable decision. There is no exception when the challenged action is the very cause of the plaintiff's injury-in-fact.

Joint Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 8 of 9

Because the Debtor has clearly defaulted on her own confirmed plan, she loses all the benefits of the confirmed plan. All the creditors and interested parties to this bankruptcy are worse off now than when this bankruptcy started, the complete opposite of what's supposed to happen in a successful chapter 11 bankruptcy. No creditor bargained to be flimflammed by the confirmed plan and pay for this Debtor's millionaire lifestyle on Fisher Island. NLG clearly has standing and in fact has the largest financial interest in this bankruptcy case, indisputable facts summarily ignored by this Court. NLG absolutely has standing to seek the enforcement of its Final Judgment of Foreclosure which is seven years overdue.

**WHEREFORE**, for the reasons set forth above, Movants respectfully request that the Court grant the Motion for Relief Order Granting Motion to Strike [ECF No. 1400], set NLG's prior Motion [ECF No. 1394] for immediate hearing and/or alternatively dismiss this case with a prejudice period of seven years to filing another petition under any section of the bankruptcy code.

Respectfully submitted,

| | |
|---|---|
| _____<br>Juan Ramirez, Jr.<br>ADR Miami, LLC<br>1331 Brickell Bay Dr. #708<br>Miami, FL 33131<br>(305) 667-6609<br>jr@adrmiami.com | _____<br>Chris Kosachuk<br>*Pro Se Movant*<br>854 Pheasant Run Rd.<br>West Chester, PA 19382-8144<br>(305) 490-5700<br>chriskosachuk@gmail.com |
| Attorney for Creditors NLG, LLC, FICA Members Roberto Viñas, Marta Yee and Robert Vole | |

Joint Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 9 of 9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of February 2023, a true and correct copy of

the foregoing was filed with the Court's CM/ECF system, which will electronically serve a copy

of the foregoing document on all parties of record.

_____
Juan Ramirez, Jr.
ADR Miami, LLC
1331 Brickell Bay Dr. #708
Miami, FL 33131
(305) 667-6609
jr@adrmiami.com

Attorney for Creditors NLG, LLC, FICA Members Roberto Viñas, Marta Yee and Robert Vole

## SERVICE LIST

***Served via CM/ECF***
All parties of record

# Exhibit 1

## Collado v. Baroukh

Court of Appeal of Florida, Fourth District

August 30, 2017, Decided

No. 4D16-2075

**Reporter**

226 So. 3d 924 *; 2017 Fla. App. LEXIS 12469 **; 42 Fla. L. Weekly D 1916; 2017 WL 3727049

ELENA COLLADO, Appellant, v. BRIGITTE BAROUKH, RICHARD ROSEN, MILDRED ZERBARINI, RONALD BUCHHOLZ, JESUS RODRIGUEZ, TARA DALU, NICK DAMASCENO, RAMBLEWOOD EAST REALTY HOLDING FNC, LLC, RAMBLEWOOD EAST REALTY HOLDINGS, LLC, and RAMBLEWOOD EAST CONDOMINIUM ASSOCIATION, INC., Appellees.

**Prior History:** [**1] Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael L. Gates, Judge; L.T. Case No. CACE15022331 (12).

**Counsel:** Joseph D. Garrity of Garrity Traina, PLLC, Coconut Creek, for appellant.

Karen M. Nissen and Andrea Sconzo of Vernis & Bowling of Palm Beach, P.A., North Palm Beach, and E.J. Generotti of Frank, Weinberg & Black, P.L., Plantation, for appellees.

**Judges:** MAY, J. GROSS and FORST, JJ., concur.

**Opinion by:** MAY

## Opinion

MAY, J.

[*926] A condominium unit owner appeals the dismissal with prejudice of her shareholder derivative suit against a condominium association (of which the owner is a shareholder), members of the association's board of directors, and two holding companies (collectively referred to as "defendants"). She argues the trial court erred in dismissing her complaint with prejudice. We agree with her in part and reverse in part.

Prior to filing suit, the owner emailed the association demanding to inspect the association's records, pursuant to section 607.07401(2), Florida Statutes (2016). The association's counsel responded that "the [a]ssociation is not incorporated under, and consequentially is not subject to, Chapter 607, Florida Statutes," and a demand under section 607.07401 was "legally invalid." By demand letter sent on October 7, 2015, the owner corrected the error by [**2] citing section 617.07401, Florida Statutes (2015), and demanded to inspect the association's records. The association responded that it would consider appointing an independent committee to investigate the owner's allegations at its next Board of Directors meeting.

On December 14, 2015, the owner filed a verified complaint, pursuant to section 617.07401, alleging: (1) breach of fiduciary duty; (2) negligence in failing to properly manage the association's funds and allowing its buildings to deteriorate; and (3) improper management of the association by the board of directors. The wherefore clause asked for relief from the "defendants" although the counts primarily made allegations only against the board members and the association.[1]

Following the filing of the verified complaint, the owner moved to enforce the condominium association bylaws, which provide term limits for board members of two, two-year terms. The motion claimed the bylaws prohibited the then-current members of the board from running again as each member had already served more than two terms.

The association and the three board members who had been served filed multiple motions to dismiss the complaint with [*927] prejudice, arguing: (1) the owner failed to properly comply with [**3] the statutorily required ninety-day waiting period prior to filing the derivative action; (2) the counts alleging breach of fiduciary duty and negligence against the association and its board of directors did not seek relief against the two holding companies; (3) the count seeking declaratory relief against all defendants did not make specific allegations against the holding companies; (4) the owner failed to properly form her pleadings; and (5) the association does not

---

[1] The trial court found that only three of the seven board members were served.

Collado v. Baroukh

have a fiduciary duty to its unit owners.

The trial court held a hearing on the owner's motion to enforce bylaws and the defendants' motions to dismiss. It denied the owner's motion to enforce and granted the defendants' motions to dismiss with prejudice. The owner moved for rehearing, which the trial court denied. From the dismissal order and the order denying the motion for rehearing, the owner now appeals.

The owner argues the trial court erred in dismissing the case *with prejudice without leave to amend* because the complaint clearly stated a cause of action and alleged all elements of the causes of action. The defendants respond the court correctly dismissed the verified complaint without leave to amend because the [**4] suit was prematurely filed, improperly pled, and failed to state a cause of action.

We have de novo review. *Haslett v. Broward Health Imperial Point Med. Ctr.*, 197 So. 3d 124, 127 (Fla. 4th DCA 2016).

Because the association is a not-for-profit Florida corporation, it is governed by Chapter 617. Section 617.07401(2), Florida Statutes, provides that a suit cannot be filed before the expiration of ninety days after "the date of the first demand." Here, the owner first made a demand for action by the association pursuant to Chapter 607. The association advised her that she had referenced the wrong chapter. The owner then corrected the demand to reflect the correct chapter in a letter to the association on October 7, 2015. The owner then filed suit on December 14, 2015.

As the trial court found, the owner's October 7, 2015 letter served as a new demand for action and marked the beginning of a new ninety-day waiting period. The ninety days expired on January 5, 2016, but the owner filed the verified complaint twenty-two days before the ninety days expired. The trial court properly dismissed the complaint. § 617.07401, Fla. Stat.

The trial court also correctly found the verified complaint failed to comply with section 617.07401 by failing to plead an exception to the ninety-day waiting period. The verified complaint failed to allege that the demand was "refused [**5] or ignored" by the association, that the demand was rejected in writing by the association prior to the ninety-day period, or that the waiting period would cause irreparable harm to the association. Noncompliance with the pre-suit requirements of section 617.07401 mandates dismissal of the suit. *See, e.g.*, *Sharma v. Ramlal*, 76 So. 3d 955, 957 (Fla. 2d DCA 2011) (LaRose, J., concurring).

Florida Rule of Civil Procedure 1.420(b) also provided a basis for dismissal of the complaint. It provides that an action may be dismissed for failure to comply with the Florida Rules of Civil Procedure. The rules provide that a complaint "shall contain . . . a short and plain statement of the ultimate facts showing that the pleader is entitled to relief." Fla. R. Civ. P. 1.110(b).

Commingling various claims against all defendants together may also warrant dismissal of a complaint. Fla. R. Civ. P. 1.110(f); [*928] *see also Aspsoft, Inc. v. WebClay*, 983 So. 2d 761, 768 (Fla. 5th DCA 2008) (commingling separate and distinct claims against multiple defendants warrants a dismissal of the complaint).

Here, the owner made blanket references to "defendants" throughout the complaint, specifically under counts two and three for negligence and improper management, respectively. By commingling separate and distinct claims against multiple defendants, the owner violated Rule 1.110(f) for failing to state in a separate count "[e]ach claim founded upon a separate [**6] transaction or occurrence." Fla. R. Civ. P. 1.110(f). Because the owner failed to comply with the Florida Rules of Civil Procedure, the action was properly dismissed under Rule 1.420(b).

The verified complaint also failed to clearly allege how each defendant caused the injury and damages alleged. Count two broadly mentions the board of directors and their alleged duty and breach, but does not allege a duty, breach, or wrongdoing on the part of the association as an entity. Count three likewise broadly mentions the association without specifying the wrong committed by each defendant.

Count one improperly alleged the association breached a fiduciary duty to its unit owners even though as a corporate entity, it does not have a duty to its unit owners. *See* § 718.111(1), Fla. Stat. (2016) (only officers and directors of a corporate entity have a fiduciary duty, not the corporate entity). In short, the trial court properly dismissed the breach of fiduciary claim against the association. And, while the holding companies are alleged to have title to apartments purchased by the association, there is no allegation that these entities either breached a fiduciary duty or were negligent.

Notwithstanding the failure to comply with the pre-suit notice requirement [**7] and the pleading requirements of the Florida Rules of Civil Procedure, Rule "1.190(a) provides that leave to amend 'shall be given freely when justice so requires.'" *Cousins Restaurant Assocs. ex rel. Cousins Mgmt. Corp. v. TGI Friday's, Inc.*, 843 So. 2d 980, 982 (Fla. 4th DCA 2003) (quoting Fla. R. Civ. P. 1.190(a)). "[L]eave to amend should not be denied unless the privilege has been abused, there is prejudice to the opposing party, or amendment would be futile." *Life Gen. Sec. Ins. Co. v. Horal*, 667 So. 2d 967, 969 (Fla. 4th DCA 1996).

Collado v. Baroukh

Here, the owner acknowledged some of the pleading deficiencies and requested leave to amend. Because this is not a case where the owner filed repetitive motions to amend and abused the privilege, and because there was no finding that an amendment would be futile, the trial court erred in dismissing the case with prejudice.

For this reason alone, we reverse and remand the case to the trial court for the owner to be given an opportunity to amend the verified complaint.

The owner also argued the trial court erred in denying her request to enforce the association bylaws. The owner maintained that the board members' inclusion on the ballot violated the association's by-laws, as amended in 1986 to impose board member term limits. The defendants responded that the 1986 amendments were invalid and had never been enforced. They further argued the issue was moot as the election [**8] took place before the hearing on the motion. The owner replied that the defendants' challenge to the 1986 amendment was barred by the statute of limitations.

 [*929]  We have de novo review of this issue. *Carlin v. State*, 939 So. 2d 245, 247 (Fla. 1st DCA 2006).

The owner's motion to enforce the bylaws sought to prevent the re-election of the board of directors then scheduled for February 22, 2016. The hearing on the motion took place in April, 2016. In denying the owner's motion, the trial court found the election of the same board of directors rendered the motion moot. This was a proper basis for dismissal given that the specific controversy that was the subject of the owner's motion, the inclusion of the board directors on the ballot, no longer existed. *See Godwin v. State*, 593 So. 2d 211, 212 (Fla. 1992) (defining mootness and articulating three exceptions to an otherwise moot case, but holding the issue in the case was not moot). Upon remand, the owner may address the eligibility of these board members in her amended complaint.

Because we are remanding to give the owner an opportunity to amend the verified complaint, we note the following pleading deficiencies raised by the various defendants. Count one alleged a breach of fiduciary duty against the association, a duty which does not exist. [**9]  *Towerhouse Condo., Inc. v. Millman*, 475 So. 2d 674, 676 (Fla. 1985).

The dismissal of the holding companies as to counts one and two appears to have been correct as they are not alleged to have breached any duty. The dismissal in favor of the three board members individually is correct as they may be allegedly liable only in their representative capacity for breach of their fiduciary duty as officers and directors. *See* § 617.0834, Fla. Stat. (2016).

Upon remand, the owner shall be given an opportunity to correct these pleading deficiencies.

*Affirmed in part; reversed in part; and remanded*.

GROSS and FORST, JJ., concur.

---

**End of Document**

EXHIBIT 2

CFN: 20150812181 BOOK 29902 PAGE 3737
DATE:12/24/2015 01:09:49 PM
HARVEY RUVIN, CLERK OF COURT, MIA-DADE C

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

NLG, LLC,

      Plaintiff

v.

GENERAL JURISDICTION DIVISION
CASE NO.: ~~2011-42270 CA~~ (02)
2011-42770 CA 01

ELIZABETH HAZAN; an individual;
UNKNOWN SPOUSE OF ELIZABETH HAZAN;
an individual; J.P. MORGAN CHASE BANK, N.A.;
a foreign Corporation, 6913 VALENCIA, LLC,
a Florida Limited Liability Corporation;
FISHER ISLAND COMMUNITY ASSOCIATION, INC.;
a Florida Non Profit Corporation; VALENCIA ESTATES
HOMEOWNERS ASSOCIATION, INC., a Florida
Non Profit Corporation; and JOHN DOE and
JANE DOE, individually, as unknown Tenants
in possession of the Subject Property

      Defendants



FILED
DEC 04 2015
CLERK CIRCUIT & COUNTY COURTS

_____/

## FINAL JUDGMENT OF FORECLOSURE
### (Pursuant to Administrative Order 09-09)

**THIS ACTION** was remanded for enforcement of Plaintiff NLG's mortgage on mandate from the Third District Court of Appeals on November 25, 2014;

**IT IS ORDERED AND ADJUDGED** that: FINAL JUDGMENT OF FORECLOSURE in favor of the Plaintiff is GRANTED against all Defendants. Service of process has been duly and regularly obtained over all Defendants in this action and this Court has jurisdiction over the parties in this action and the subject matter herein.

1.    **Amounts Due.** There is due and owing to the Plaintiff NLG, LLC the following from Defendant ELIZABETH HAZAN:

Principal due on the note secured by the mortgage foreclosed, as set forth in the Opinion of the Third District Court of Appeal:

**$1,618,071.29.**

Per diem interest from May 1, 2008 to December 3, 2015, also as set forth in the opinion of the Third District Court:

CFN: 20150812181 BOOK 29902 PAGE 3738

**$2,953,489.91**

(Per Diem interest accruing at the rate of $1,063.94 for each day after December 3, 2015 until the sale date of the property.)

Attorneys' fees prosecuting this action:

| | |
|---|---|
| Christopher David, Esq.: | $155,300 |
| Rafael Recalde, Esq.: | $25,714 |
| Jonathan Pollard, Esq.: | $7,500 |
| Megan Wells, Esq.: | $21,890 |
| Juan Ramirez, Jr, Esq.: | $137,661 |
| Title search expenses: | $150.00 |

**Court Costs:**

| | |
|---|---|
| Trial Court Filing Fee: | $1,906.00 |
| Appellate Court Filing Fee: | $300.00 |
| Service of Process: | $3,624.00 |

Less payments upon Final Judgment entered on the note dated April 28, 2008 in the action styled NLG, LLC v. Elizabeth Hazan with case number 2007-19532-CA-11:

($70,285.05)

Additional Costs:

Property Maintenance          $21,333.14

**GRAND TOTAL: $4,876,654.29**

2.      **In Rem Judgment.** This Final Judgment of Foreclosure is an **in rem judgment** against the Defendants.  With the exception that any deficiency is hereby taxed against Defendant ELIZABETH HAZAN, there are no in personam damages against said other Defendants.

3.      **Lien on Property.** Plaintiff, whose address is 854 Pheasant Run Road, West Chester, PA, 19382, holds a lien for the grand total sum specified in Paragraph 1 herein. The lien of the plaintiff is superior in dignity to any right, title, interest or claim of the Defendants, and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of

the defendants.  The plaintiff's lien encumbers the subject property located in Miami Dade County, Florida and described as:

> Lot 7, Block 2, of LINDISFARNE ON FISHER ISLAND SECTION 10, according to the Plat thereof, recorded in Plat Book 157, Page 64, of the Public Records of Miami-Dade County.

Property address: 6913 Valencia Dr., Fisher Island, FL 33109

4.     **Sale of Property.** If the grand total amount with interest at the rate described in Paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on ~~December~~ *January 12, 2016* ~~2015,~~ to the highest bidder for cash, except as prescribed in Paragraph 6, at: www.miamidade.realforeclose.com, the Clerk's website for on-line auctions at 9:00 a.m. after having first given notice as required by Section 45.031, Florida Statutes.

5.     **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

6.     **Right of Redemption.** On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

7.     **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale. During the sixty (60) days after the Clerk issues the certificate of disbursements, the Clerk shall hold the surplus, if any, pending further Order of this Court.

8.     **Right of Possession.** Upon filing of the Certificate of Title, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale

CFN: 20150812181 BOOK 29902 PAGE 3740

shall be let into possession of the property, subject to the provisions of the "Protecting Tenant At Foreclosure Act of 2009."

9.     **Attorney Fees.** The Court finds, based upon the affidavits presented and upon inquiry of counsel for the plaintiff, that 211.8 hours were reasonably expended by plaintiff's counsel, Juan Ramirez, Jr. and that an hourly rate of $650 is appropriate. The Court also finds that all other attorneys' fees incurred by NLG were necessary and reasonable because of the extensive litigation in this matter.

PLAINTIFF'S COUNSEL REPRESENTS THAT THE ATTORNEY FEE AWARDED DOES NOT EXCEED ITS CONTRACT FEE WITH THE PLAINTIFF.

The Court finds that there are no reduction or enhancement factors for consideration by the Court pursuant to Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).

10.    **NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST. (2006)**

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT. IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 140 WEST FLAGLER STREET, ROOM 908, MIAMI, FLORIDA**

CFN: 20150812181 BOOK 29902 PAGE 3741

**(TELEPHONE: (305) 375-5943), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT. IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE LEGAL AID SOCIETY AT THE DADE COUNTY BAR ASSOCIATION, 123 N.W. FIRST AVENUE, SUITE 214, MIAMI, FLORIDA, (TELEPHONE: (305) 579-5733), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

11.    **Jurisdiction.** The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

DONE AND ORDERED in Chambers at Miami-Dade County, Florida, on 12/04/15.

MONICA GORDO
CIRCUIT COURT JUDGE

CFN: 20150812181 BOOK 29902 PAGE 3742

**FINAL ORDERS AS TO ALL PARTIES**
**SRS DISPOSITION NUMBER   12**

THE COURT DISMISSES THIS CASE AGAINST ANY PARTY NOT LISTED IN THIS FINAL ORDER OR PREVIOUS ORDER(S). THIS CASE IS CLOSED AS TO ALL PARTIES.

**Judge's Initials   MG**

The parties served with this Order are indicated in the accompanying 11th Circuit email confirmation which includes all emails provided by the submitter.  The movant shall IMMEDIATELY serve a true and correct copy of this Order, by mail, facsimile, email or hand-delivery, to all parties/counsel of record for whom service is not indicated by the accompanying 11th Circuit confirmation, and file proof of service with the Clerk of Court.

Signed original order sent electronically to the Clerk of Courts for filing in the Court file.
**Copies furnished: Parties of record**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In Re:

LIZA HAZAN a/k/a ELIZABETH HAZAN,      Case No. 16-10389-AJC
                                           Chapter 11

      Debtor,

_____/

## LIZA HAZAN'S RESPONSE IN OPPOSITION TO:

### *OINT MOTION FOR REHEARING AND RELIEF FROM ORDER*
### *GRANTING MOTION TO STRI  E [ECF NO. 1     ]*

Reorganized Discharged Liza Hazan a/k/a Elizabeth Hazan ("Ms. Hazan" or "Reorganized Discharged Hazan"), by and through her undersigned counsel, hereby files her Response in opposition to non-parties in interest, non-creditors, disallowed sanctioned Chapter 7 Debtor NLG, LLC[1], ("NLG"), Fisher Island Community Association ("FICA") Members, Roberto Viñas, Marta Yee, Via Mia North America, LLC, 2215 Fisher Island Dr. LLC, and sanctioned Chris Kosachuk ("Kosachuk"), (collectively "Movants")'[2]s Joint Motion for Rehearing and Relief From Order Granting Motion to Strike [ECF No. 1400] (the "Order") [ECF No. 1402] ("Movants' Joint Motion")  pursuant to Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Rules 59 and 60 of the Federal Rules of Civil Procedure ("FRCP"). Ms. Hazan

---

[1] The filing of NLG's Motion for Rehearing and Relief from Order is unauthorized by the Trustee for the estate of NLG or the Delaware Court.

[2] NLG includes a self-serving and false title of "largest creditor in this bankruptcy case" to bolster its meritless paper.  In the Adversary Proceeding this Court previously found that NLG does not have any claim against the Hazan or estate property, secured or otherwise, and NLG lacks standing in Hazan's case – which would include the instant Motion to for Rehearing and Relief From Order Granting Motion to Strike.

respectfully moves the court to deny Movants' Joint Motion and in support, respectfully avers as follows:

## Introduction

The Court properly concluded that Movants "ask the Court for a mulligan on seven years of litigation." [ECF No. 1400 p. 2]" and Movants' motion to reopen "was filed in bad faith and for the sole purpose to harass Ms. Hazan."

NLG and Kosachuk's various appeals were dismissed by The District and the Eleventh Circuit Court of Appeals concluding their lack of standing in this case.

NLG is an entity without standing in Ms. Hazan's Bankruptcy Case following a trial in the Adversary case 16-01439-AJC (the "Adversary Proceeding" or "A.P.") held in July of 2017 before this Court which found that NLG lacks standing and does not have a claim and its proof of claim was completely disallowed. This Bankruptcy Court confirmed Hazan's plan and entered her discharge. NLG's appeal of The Final Judgment was dismissed by the District Court and the Eleventh Circuit Court of Appeals upheld the District Court's Order of dismissal. Sanctioned Kosachuk and Juan Ramirez, Jr.'s clients and Kosachuk's friends "Fisher Island Community Association ("FICA") Members, also lack standing as they never filed a proof of claim in this case. Movants lack standing to appear or be heard in this successfully reorganized, fully administered, and closed case. Movants, despite not having standing in the case, seek reconsideration and relief from the Order Granting Ms. Hazan's Motion to Strike Movants' Motion to reopen case. Movants' Motion for Rehearing and Relief from Order Granting Hazan's Motion to Strike is a repeat of the arguments previously addressed by this Court and should be denied.

## Factual Background

### I. *Movants Lack Standing in the Reorganized Discharged Debtor's Bankruptcy Case to Advance their Motion for Rehearing or any matter.*

2

1.      On August 21, 2016, Selective, joined by Hazan, commenced the Adversary Proceeding, case No. 16-01439-AJC, (the "Adversary Proceeding" or "A.P.") against NLG.  (BK A.P. ECF 1).

2.      In her Third Amended Complaint (January 3, 2017), Ms. Hazan brought three causes of action to resolve NLG's assertion of rights regarding her property: (i) Count I – to determine the extent, validity, and priority of NLG's claim of alleged lien; (ii) Count II – to avoid NLG's alleged security interest pursuant to § 544; and (iii) to Quiet Title (the "Counts") (BK A.P. ECF 48).

3.      The Court conducted a trial in the Adversary Proceeding on July 13, 2017.  (BK A.P. ECF 188).

4.      Following the trial, on November 1, 2017, the Bankruptcy Court entered the Judgment on Counts I, II and III in favor of Hazan.  ("the Final judgment") (BK A.P. ECF 238).

5.      The Final Judgment provides, in relevant part:

   a.      "NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that **NLG has no standing in this case** based upon the Note, Mortgage, claim or lien emanating therefrom." *Id.* at p. 13 (emphasis added).

   b.      "NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description: LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida
   have been satisfied and paid, and are deemed **SATISFIED OF RECORD**, and Debtor has good title to said Property against the claims or purported

3

claims by, through, under, or against it by NLG, LLC and **the title to the Property is forever quieted as to all claims of NLG, LLC**."

 c. "**NLG's Proof of Claim #17 is disallowed** and **NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order**." *Id.* at p. 14.

**II.** *Hazan confirmed a Plan of Reorganization, administratively closed the case, received her discharge, and was granted the Order Granting Final Decree closing case.*

 6. Based on the Final Judgment, the Reorganized Debtor proceeded to plan confirmation. On November 15, 2017, she filed her Fifth Amended Disclosure Statement (the "Disclosure Statement") (B.K. M.C. C.P. 562) and Fourth Amended Plan of Reorganization (the "Plan") (B.K. M.C. C.P. 563).

 7. At the Confirmation Hearing on the Plan the Court noted that the Unstayed Final Judgment remained unstayed. (BK M.C. C.P. 707 at pp. 6 - 8):

  **THE COURT** **Mr. Ramirez, do you agree there is no stay?**

  **MR. RAMIREZ** **There is no stay, Judge.**

  **THE COURT** **Okay.**

  **MR. RAMIREZ** **But I just want to correct that it's not the law of the case until the appellate case is decided.**

  **THE COURT** **Well, but if something happens in the interim, it may moot out the appeal, that's why it makes a big difference. If there's a stay, then nothing can happen until that matter is decided, but if there is no stay and things go along a track to where they're not reversible, then it possibly or probably would moot the issue**

 8. On June 12, 2018, the Bankruptcy Court entered the Confirmation Order (BK M.C. ECF No. 691).

9.      On June 13, 2018, the Bankruptcy Court entered an Agreed Order Granting Reorganized Debtor's Ore Tenus Motion to Administratively Close Individual Chapter 11 case. (B.K. M.C. ECF No. 692).

10.      On July 10, 2018, Thereafter, Hazan filed her Amended Motion to Reopen this Chapter 11 case to grant the Reorganized Debtor's Discharge and enter a Final Decree and to re-close the case [ECF No. 713] (the "Reopen and Discharge Motion").

11.      All of NLG's Motions to Stay the Unstayed Final Judgment were denied by this Court [A.P. ECF No. 309]; [Case No. 18-24272-CIV-Moreno ECF No. 11].

12.      On December 7, 2018, this Court entered the Order granting the Reopen and Discharge Motion [ECF No. 766] (the "Discharge Order") which, among other things, granted Hazan a discharge and reopened the bankruptcy case "for the sole purpose of approving the Final Report and entering the Reorganized Debtor's discharge consistent with the terms of this order" and "pending the final disposition of all motions herein and the outstanding appeals, after which the Court will direct the Clerk of Court to enter a Final Decree closing this case."

13.      On November 17, 2022, this Court granted Ms. Hazan's Motion for entry of Final Decree Closing this Chapter 11 Bankruptcy Case (ECF No. 1345), pursuant to Section 350(a) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure 3022, and Local Rule 3022-1 that was previously granted ECF No. 1361.

***Fisher island Proof of claim was completely disallowed by this Court and no payment through confirmed plan. Fisher Island Community Association Inc. was granted stay relief and lost in State Court.***

14.      Movants falsely state that "Fisher Island Community Association, inc.  (("FICA") did file a proof of claim [Claim #18] and was to be paid through the confirmed plan with the first plan payment starting on June 12, 2018, in the amount of $46,555.  Thereafter the Debtor was to

pay the quarterly HOA fees to FICA which total over $49,000 per year. [*See* Plan ECF No. 563 pages 12-13] The Debtor failed to make the confirmation day payment to FICA and every payment thereafter. Indeed, the Debtor has never paid FICA since she moved into Fisher Island in 2007." Fisher Island Community Association's proof of Claim No. 18 was completely disallowed. *See* Order Denying Motion to Deem Late-filed Proof of claim [ECF No. 142, 227], and was not to be paid through the confirmed plan with the first plan payment starting on June 12, 2018, no payment through plan.

15.      On February 16, 2018, Hazan and FICA entered into a Stipulation of Settlement of the Adversary Proceeding against and claim of Fisher Island Community Association, Inc. [ECF No.658 & 666], *See* Adv. Case 18-01008-AJC [ECF No. 10 & 11]; and no payment through plan. See [ECF No.142 & 227].

16.      The Stipulation of settlement between Hazan and FICA specifically state as follows:

> <u>Pre-Petition Assessments</u>. The Parties stipulate that FICA's claim for pre-petition assessments, if any, is only in rem. The Debtor is not personally liable for any pre-petition assessments. Any in rem liability on the pre-petition assessments only shall be determined in the Circuit Court for Miami-Dade County.
> <u>Post-Petition Assessments</u>. The Parties stipulate that FICA's claim for post-petition assessments shall be determined in the Circuit Court for Miami-Dade County. Post-Petition assessments are both collectible in rem and in personam, to the extent they are determined in the Circuit Court for Miami-Dade County.
>
> FICA shall withdraw its objection to, D.E. 598 pending in the main Case No. 16-10389. The Debtor hereby modifies her Fourth Amended Plan, D.E. 563 in Main Case, Case No. 16-10389, to remove any language concerning payment to FICA and to provide that all issues concerning FICA shall be resolved in the Circuit Court for Miami-Dade County. The Debtor will treat the secured portion of the alleged claim Direct, and Outside the Plan to the extent they are determined in the Circuit Court for Miami-Dade County.
>
> *See* [ECF No.658 & 666], *See* Adv. Case 18-01008-AJC [ECF No. 10 & 11].

17.     This Court granted FICA stay relief on November 23, 2016 [D.E. 305]. FICA and Hazan have stipulated with Hazan that it would not receive any payment through the confirmed plan.   Juan Ramirez, Jr. and movants should be sanctioned for making frivolous and false statements to the Court. Fisher Island withdrew its objection to the Hazan's confirmed Plan and didn't appeal from its confirmation.

18.     On July 1, 2019, after obtaining stay relief, FICA lost in state Court against Hazan. The State Court dismissed FICA pending state court action with prejudice. FICA never appealed the State Court's Order dismissing their action against Hazan.  See Dismissal Order Attached as **Exhibit "A".**

19.     Movants lack standing to raise objections affecting only the interests of third-party creditors that are not themselves raising such objections. *See   ane*, 843 F.2d at 644 ("Third-party standing is of special concern in the bankruptcy context where, as here, one constituency before the court seeks to disturb a plan of reorganization based on the rights of third parties who apparently favor the plan."); *In re Ocean Rig UDW Inc*., 585 B.R. 31, 37 (S.D.N.Y. 2018) ("Prudential standing is particularly important in a bankruptcy context where one party may seek to challenge the plan based on the rights of third parties who favor the plan."). As such, Movants lack standing to assert the interests of any third party in objecting to the Plan or Disclosure Statement.

20.     Non creditors, non-parties in interest, Kosachuk, NLG, Juan Ramirez, Jr. and Fisher Island Community Association ("FICA") Members, never filed a proof of claim, lack standing to appear or be heard in this case, have no claim against Hazan and are just continuing a pattern of never ending wasteful litigation.

*1.*     Because NLG, Kosachuk and the Fisher Island residents' entities lacked standing to object to the Plan and Disclosure Statement, and lacks standing to appeal from the Bankruptcy

Court's orders confirming the Plan and approving the Disclosure Statement, their argument are meritless.

***The Court repeatedly denied Kosachuk, NLG's Motions to compel reports. Final Orders Denying Kosachuk, Ramirez and NLG's various Motions to Compel Timely, Legible, and Complete Operating Report for une 1 and Post Confirmation Monthly and Quarterly Operating Reports Going Forward. Ms. Hazan paid in full the S Trustee fees.***

.      On January 2, 2019, the court entered a Final Order Denying Kosachuk, Ramirez and NLG's Motion to Compel. Timely, Legible, and *Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773). [D.E. 785]. This Order was never appealed by NLG therefore it is final and non-appealable.

> **THIS MATTER** came before the Court upon the Motion to Compel Timely, Legible, and *Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773). The Court has reviewed the Motion, as modified by movant at the hearing on the motion held December 27, 2018, and finds it is not only without merit, but is moot. The Chapter 11 Plan having been confirmed, the case having been administratively closed, and the Debtor having now received a discharge, it is ORDERED AND ADJUDGED that the *Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Reports Going Forward* (ECF 773) is DENIED.

.      Moreover, the United States Trustee Ms Johanna Armengol who was asked by NLG to join in this new Motion to compel responded by email on February 25, 2019, stating as follows:

> "Dear all- In light of Order **at ECF 785**, which we understand **is final and non-appealable**, **the United States Trustee will abide by the Court's ruling** and **will not seek to require Ms. Hazan to file Post-Confirmation Quarterly Reports."**

.      On March 19, 2019, NLG through Ramirez filed a *second Motion to Compel Timely, Legible, and Complete Operating Report for June 2018 and Post Confirmation Monthly Operating Report Going Forward* [ECF 828] that was also denied by this Honorable Court on May 10, 2019 [D.E. 895]. On May 19, 2021, the United States Trustee Mrs Adisley M. Cortez-Rodriguez also confirmed that she will abide by the final Order stating that Ms Hazan does not need to file **Post-**

**Confirmation Quarterly Reports.** "Joel, As you know, Ms. Hazan's case remains open with a final order saying the debtor does not need to file QORs...."

    *5.*    On May 10, 2019, the Court entered a Final Order Denying NLG's second Motion to Compel Quarterly Operating Report [D.E. 828].

> **THIS CAUSE came before the Court upon** *Secured Creditor NLG, LLG's [sic] Motion to Compel Timely, Legible and Complete Post Confirmation Quarterly Operating Reports And Compliance Going Forward* (ECF 828) and upon Debtor's response in opposition, wherein she requests sanctions against NLG for filing the motion to compel (ECF 835). Having reviewed the motions, the Court finds no basis to require the filing of post-confirmation quarterly operating reports in this case, where Debtor confirmed a Chapter 11 plan, which was not stayed, consummated the plan, and obtained a discharge.
>
>     The Court believes NLG has no standing to compel the Debtor to file such reports as it is not a creditor in this case, and the United States Trustee is not seeking to compel the filing of the operating reports. Accordingly, the Court finds no grounds to grant the relief requested.
>
>     Accordingly, it is **ORDERED AND ADJUDGED that** *Secured Creditor NLG, LLG's [sic] Motion to Compel Timely, Legible and Complete Post Confirmation Quarterly Operating Reports And Compliance Going Forward (ECF 828)* is **DENIED**.

    26.    Contrary to Movants' false statements, the US Trustee Office conceded that "Although the Judge may have ruled that Ms. Hazan is no longer obligated to file quarterly financial reports, the order did not likewise waive the UST fee requirement." Prior to the entry of the Order granting Final Decree closing Hazan's case, Hazan paid the US trustee's fees in full. On or about October 24, 2022, Hazan paid the remaining balance of $3,950 to the US Trustee Office in full and the US Trustee office has received confirmation of same.

27.     On November 17, 2022, the Court granted Hazan's motion for Final Decree closing

case. No allowed creditor opposed or appealed the entry of the Final Decree Order closing case

[ECF No. 1361].

> **III.     NLG is a Delaware Chapter 7 bankrupt entity. The Trustee for the estate of NLG**
> **Alfred T. Giuliano is the sole fiduciary for NLG and is responsible for**
> **prosecuting causes of action on behalf of the estate. The Motion to reopen and**
> **Motion for rehearing are unauthorized by the Delaware Trustee or the Delaware**
> **Court and should be denied.**

28.     On September 24, 2021, Kosachuk filed an involuntary petition for relief under

chapter 7 of title 11 of the Bankruptcy Code against NLG.

29.     On January 7, 2022, the Delaware Bankruptcy Court entered the Order for Relief

in an Involuntary Case ("Order for Relief"). On the same day, the United States Trustee

appointed Alfred T Giuliano as the interim chapter 7 trustee (the "Trustee"), which

appointment remains in effect.  The Trustee is now the sole fiduciary for NLG and is

responsible for recovering all assets of the estate and prosecuting causes of action on behalf

of the estate.

30.     On December 19, 2022, the Trustee for the estate of NLG filed the *Notice of*

*Change from Asset to No Asset* (the "Notice of No Asset") and the *Chapter    Trustee Report*

*of No Distribution* (the "Trustee's Final Report").  The Trustee's Final Report states, in part:

> I have neither received any property nor paid any money on
> account of this estate; that I have made a diligent inquiry into
> the financial affairs of the debtor(s) and the location of the
> property belonging to the estate; and that there is no property
> available for distribution from the estate over and above that
> exempted by law. Pursuant to Fed. R. Bank. P. 5009, I hereby
> certify that the estate of the above-named debtor(s) has been
> fully administered.  I request that I be discharged from any
> further duties as trustee.  Key information about this case as
> reported in schedules filed by the debtor(s) or otherwise found
> in the case record: This case was pending for 15 months.

Assets Abandoned (without deducting any secured claims):$ 0.00, Assets Exempt: Not Available, Claims Scheduled:$ 0.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge):$ 0.00.

The Trustee for NLG's *Notice of Change from Asset to No Asset* (the "Notice of No Asset") is attached as **Exhibit "B".**

31.     No response or opposition was filed to the Trustee's Final Report. The Trustee has determined that there are no assets for distribution, no litigation to prosecute, and has certified that the estate has been fully administered, The Delaware Bankruptcy Court concluded that "**the record, establishes that the Debtor NLG has no assets, nothing to reorganize, and nothing to distribute to creditors**." On February 16, 2023, The Delaware Bankruptcy Court denied Kosachuk's motion to abandon and motion to convert case to chapter 11 and dismissed Kosachuk and NLG's adversary cases. Opinions and Orders of the Delaware bankruptcy Court entered on February 16, 2023, are attached as **Exhibit "C" and "D".**

32.     The filing of this Motion for rehearing is unauthorized by the Delaware Trustee Alfred T. Giuliano or the Delaware Bankruptcy Court and should be denied on that basis alone.

33.      The Trustee for the estate of NLG and the Delaware Bankruptcy court have properly concluded that NLG has no assets, no claims and no assets for distribution and the Chapter 7 NLG case is now fully administered.

34.     On January 31, 2023, the Delaware Court held a status conference hearing. The Trustee for the estate of NLG attorney Jesse Harris argued as follows:

"**To be very clear, Your Honor, we no-asseted this case because we performed an exhaustive analysis of the underlying merits of this case** and not only us, but we did consult third party, sophisticated third-party counsel, contingency-fee counsel, that would be interested, potentially, in taking the case.  They declined, as well,

11

based on the merits.
And given that, and given the Court's desire to
have this case dismissed, we opted to go the without
prejudice route to preserve any claims that anybody thinks
exists in this case, which we don't believe are any.   **And we,
in fact, believe it would be a Rule 11 violation to purpose
this case any further given the obvious holdings and the
procedural history in these cases.**
And so, if dismissal is what this Court wants to
do, we would ask that it be done without prejudice so there
can be no appearance at all that the trustee is somehow
waiving any rights or releasing any claims and that *status
quo* be preserved.  Now, having said that, if the Court would
prefer that this case be converted to a Chapter 11 case or
that somebody else can intervene or that the claims be
abandoned, we don't take a position on that **because in our
view, there's nothing to abandon**.  **There's nothing to
intervene in**.  **And there's no assets to administer in a
Chapter 11 case."**

## STANDARD OF REVIEW

1       "The purpose of a motion for reconsideration is to correct manifest errors of law

or fact or to present newly discovered evidence." *Harsco Corp. v.   lotnicki,* 779 F.2d 906, 909 (3rd

Cir. 1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). A motion for

reconsideration should not be used as a vehicle to present authorities available at the time of the

first decision or to reiterate arguments previously made:

2       [It is an improper use of] the motion to reconsider to ask the Court to rethink what

the Court . . . already thought through — rightly or wrongly. . . . The motion to reconsider would

be appropriate where, for example, the Court has patently misunderstood a party, or has made a

decision outside the adversarial issues presented to the Court by the parties or has made an error

not of reasoning but of apprehension. A further basis for a motion to reconsider would be a

controlling or significant change in the law or facts since the submission of the issue to the Court.

Such problems rarely arise and the motion to reconsider should be equally rare. *Above the Belt,*

*Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101(E.D.Va. 1983); *Moog, Inc. v. United States,* No. 90-215E, 1991 WL 255371, at *1, 1991 U.S. Dist. LEXIS 17348, at *2 (W.D.N.Y. Nov. 21, 1991).

3      A motion for rehearing "must state with particularity each point of law or fact that the movant believes the district court . . . has overlooked or misapprehended and must argue in support of the motion." Fed. R. Bankr. P. 8022(a)(2). "Bankruptcy Rule 8022 (formerly 8015) is silent regarding the standard for granting a rehearing motion." *Tucker v. Mukamal*, Case No. 13-mc-23425-MARRA, 2015 WL 10986356, at *1 (S.D. Fla. Feb. 11, 2015).

4      However, courts in the Eleventh Circuit have applied the same standard applicable to motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure. *Id.*; *see also In re Steffen*, 405 B.R. 486, 488 (M.D. Fla. 2009). A motion for reconsideration requests the Court grant "an extraordinary remedy to be employed sparingly." *Burger ing Corp. v. Ashland Equities*, *Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). A party may not use a motion for reconsideration to "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)). "This prohibition includes new arguments that were 'previously available, but not pressed.'" *Id.* (quoting *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (per curiam)).

5      However, a court may grant reconsideration when there is (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice. *Hood v. Perdue*, 300 F. App'x. 699, 700 (11th Cir. 2008). Thus, a motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the Parties,

or has made an error not of reasoning but of apprehension." *apila v. *3 Grant Thornton, LLP*, No. 14-61194-CIV, 2017 WL 3638199, at *1 (S.D. Fla. Aug. 23, 2017)(quoting . . *Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (internal quotation marks omitted). A motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Hood*, 300 F. App'x at 700 (citation omitted).

6    Movants also disagree with the Court rejecting the arguments. The Court should determine that Movants' arguments for rehearing are improper. Movants are merely disagreeing with the Court's Order and has failed to indicate a point of law or fact that the Court misapprehended or overlooked. Despite Movants' arguments, they fail to point to any authority in the District or from the Eleventh Circuit in support of their motion for rehearing. Accordingly, the Court should deny their Motion.

## DISCUSSION

7    Movants assert that the Court erred in its original determination of the facts and law of this case. The Court should find that none are meritorious and deny their motion for rehearing.

8    Movants' Motion for Rehearing moves pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024 and Federal Rules of Civil Procedure 59 and 60; however, the Motion for Rehearing fails to identify any particular section which is applicable nor does it meet the burden required under those rules. Under Rule 59 and Rule 60 it is the movant's, in this case Movants, burden to establish the need for relief from an Order. *See Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006); *Rice v. Ford Motor Co.*, 88 F.3d 914, 919 (11th Cir. 1996); *United States v. aplan Univ.*, No. 09-20756-CIV, 2017 WL 4541420, at *1 (S.D. Fla. Oct. 10, 2017). By failing to identify the relevant section of the rules and establishing the requisite elements for relief,

14

Movants have failed to meet their burden under Federal Rules of Bankruptcy Procedure 9023 and 9024 and Federal Rules of Civil Procedure 59 and 60 and the Motion for Rehearing should be denied.

9       Standing cannot be waived and may be raised at any time. *See, e.g., Eldorado Canyon Prop., LLC v. JPMorgan Chase Bank, N.A. (In re Eldorado Canyon Prop., LLC)*, 505 B.R. 598, 599-600 (B.A.P. 1st Cir. 2014). Simply put, Movants do not have standing in this case, as established by the Final Judgment, the various Orders of the Court establishing that NLG and Kosachuk have no standing either and this Court should not entertain further drains on Ms. Hazan' resources with this most recent motion.

10      Additionally, Movants argue that this Court incorrectly ruled on issues that were already addressed ad nauseam by this Court at countless hearings and were addressed in the Final Judgment, the Discharge Order, the various Contempt Orders, the Order Granting the Final Decree Closing case that neither of those parties is objecting to the discharge, the Final Decree nor are they impacted by it.  Therefore, it is inappropriate for non-parties in interest, non-creditors NLG, Kosachuk and the Fisher Island Community Association ("FICA") Members to relitigate these issue under Rule 59 or as a substitute for an appeal under Rule 60.  *Michael Linet, Inc. v. Vill. of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (finding it improper to file a Rule 59 "motion to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."); *Burnside v. Eastern Airlines, Inc.,* 519 F.2d 1127, 1128 (5th Cir.1975) ("[t]he well-recognized rule ... precludes the use of a Rule 60(b) motion as a substitute for a proper and timely appeal.").  Additionally, all the allowed creditors received notice of the hearing on the Final Decree Closing case Motion and did not object nor have it challenged the confirmed plan or

15

the discharge in any manner. *See Notice of Hearing for Final Decree Closing Case Motion* [ECF No. 1348]. The Court correctly noted that in the Final Decree Order closing case. [ECF No. 1361].

11    The Court properly concluded that the Movants' motion to reopen was done in bad faith and for the sole purpose to harass debtor.

12    Moreover, the Court properly relied upon the Final Report at ECF 703 to find that Hazan satisfied the requirements for an early discharge which reflects the proper payments.

13    Accordingly, Movants' Motion for Rehearing should be denied.

WHEREFORE, as the Court properly stroke Movants' Motion to reopen and correctly concluded that the motion to reopen was done in bad faith and for the sole purpose to harass debtor, the Court should determine that Movants' arguments for rehearing are improper. Movants are merely disagreeing with the Court's Order and have failed to indicate a point of law or fact that the Court misapprehended or overlooked. Despite Movants' arguments, they fail to point to any authority in the district or from the Eleventh Circuit in support of their motion for rehearing. Accordingly, Reorganized Discharged Liza Hazan a/k/a Elizabeth Hazan respectfully requests this Court enter an order denying Movants' Motion for Rehearing and Relief from Order Granting Motion to Strike [ECF No. 1400] (ECF No. 1402); and granting such other and further relief as the Court deems appropriate.

February 21, 2023.

Respectfully submitted,

**JOEL M. ARESTY, P.A.**

309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903

_____ *S:/ Joel M. Aresty* _____

16

Joel M. Aresty,
ESQ Fla. Bar No.
197483
aresty@Mac.com

**_Attorneys for Reorganized and Discharged Liza Hazan_**

## CERTIFICATION PURSUANT TO LOCAL RULE 2090-1(A)

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida, and I am in compliance with the additional qualifications to practice in this court set forth in Local Rules 2090-1(A).

Dated: February 20, 2023.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16 day of February, 2023, I electronically filed this document with the Clerk of Court using CM/ECF.  I also certify that the document is being served this day on all counsel of record or pro se parties via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

Respectfully submitted,

**JOEL M. ARESTY, P.A.**

309 1st Ave S
Tierra Verde, FL 33715
Fax: 800-559-1870
Phone: (305) 904-1903

_____ _S:/ Joel M. Aresty_ _____
Joel M. Aresty,
ESQ Fla. Bar No.
197483
aresty@Mac.com

17

*Attorneys for Reorganized and Discharged Liza Hazan*

**EXHIBIT A**



CFN 2019R0490966
OR BK 31556 Pg 1332 (1Pgs)
RECORDED 08/05/2019 12:36:49
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

IN THE 11TH JUDICIAL CIRCUIT
COURT IN AND FOR MIAMI-DADE
COUNTY, FLORIDA

Case No: 08-004519 CA 42

FISHER    ISLAND    COMMUNITY
ASSOCIATION, INC.,
            Plaintiff,

v.

ELIZABETH HAZAN,
            Defendant.

_____/

**FILED**

JUL - 1 2019

CLERK, CIRCUIT & COUNTY COURTS

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND MOTION FOR PROTECTIVE ORDER

THIS CAUSE having come before the Court upon Defendant, ELIZABETH HAZAN'S

MOTION TO DISMISS AND MOTION FOR PROTECTIVE ORDER, the Court having

reviewed the file, and heard argument of counsel, it is hereby,

ORDERED AND ADJUDGED that Defendant's Motion is GRANTED/DENIED. It is

further;

ORDERED AND ADJUDGED _Motion ☒ to dismiss granted_

_with presvice as stated on the record._

DONE AND ORDERED in MIAMI-DADE COUNTY, Florida, this ___ day of

JUL - 1 2019 , 2019.

**CONFORMED COPY**

JUL 0 1 2019

JACQUELINE HOGAN SCOLA

Honorable Rodney Smith
Circuit Court Judge

_Jacqueline Hogan Scola_

Signed and Dated

Copies furnished:
Guy M. Shir, Esq., 2295 N.W. Corporate Blvd., Suite 140, Boca Raton, FL 33431Michael Mayer, Esq.,
PeytonBolin, PL, 3343 W. Commercial Blvd., Suite 100, Fort Lauderdale, FL  33309,
michael@peytonbolin.com; foreclosure@peytonbolin.com

**ORIGINAL**

JUL 0 1 2019

Judge Jacqueline Hogan Scola    JUDGE JACQUELINE HOGAN SCOLA

EXHIBIT

STATE OF FLORIDA, COUNTY OF DADE
I HEREBY CERTIFY that the foregoing is a true and correct copy of the
original on file in this office.
HARVEY RUVIN, Clerk of Circuit and County Courts
Deputy Clerk



Book31556/Page1332    CFN#20190490966                    Page 1 of 1

**EXHIBIT B**

## THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In Re:  NLG, LLC** | **:** | **Case No. 21-11269/JKS** |
| | **:** | **CHAPTER 7** |
| | **:** | |
| **Debtor.** | **:** | |

## <u>NOTICE OF CHANGE FROM ASSET TO NO ASSET</u>

### TO JOSEPH MCMAHON, ASSISTANT UNITED STATES TRUSTEE,

Alfred T. Giuliano, the Trustee in the above captioned matter, after due inquiry, having

discovered no assets hereby gives Notice that this is a No Asset case.

<u>December 19, 2022</u>          /s/ Alfred T. Giuliano, Trustee
Dated                              Alfred T. Giuliano, Trustee
                                   2301 E. Evesham Road
                                   Pavilion 800, Suite 210
                                   Voorhees, NJ 08043
                                   (856) 767-3000

**EXHIBIT C**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| NLG, LLC, | Case No. 21-11269 (JKS) |
| Debtor. | **Related D.I. 124** |

## <u>ORDER DENYING ABANDONMENT</u>

Upon consideration of Chris Kosachuk's *Expedited Motion to Abandon Pursuant to Section 554(b)* (the <u>"Abandomnent Motion"</u>) (D.I. 124) seeking entry of an order directing the estate's abandonment of the "Hazan Claims;"[1] and the Court having considered the response of Liza Hazan to the Abandonment Motion (D.I. 132); and the Court having jurisdiction to consider the Abandonment Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Abandonment Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the Abandonment Motion having been provided; and it appearing that no other or further notice need be provided; and a hearing having been held on January 31, 2023 to consider the relief requested in the Abandonment Motion; and upon consideration of the record and proceeding before the Court and after due deliberation, and sufficient cause appearing therefor; it is hereby

---

[1] The Hazan Claims include "the Final Judgment of Foreclosure and all pending litigation in all jurisdictions involving Elizabeth Hazan *a/kJa/* Liza Hazan, Seal Neil Meehan, Selective Advisor Group, LLC f/k/a Selective Advisors Group LLC ("Selective") and 9197-5094 Quebec, Inc. ("Quebec"). The Hazan Claims also include unfiled claims and causes of action against Elizabeth Hazan a/k/a Liza Hazan, Sean Neil Meehan, Selective and Quebec and any related parties or attorneys or law firms who have represented formally or informally any of the aforementioned parties both pre-petition and post-petition." D.I. 124 at 21.

**FOUND AND DETERMINED:**

A.      The Trustee is an independent fiduciary to the estate.[2]  The Trustee's powers and duties include pursuing the estate's causes of action.[3]

B.      The Trustee investigated NLG, LLC's ("NLG") claims against third parties and determined that NLG does not have any claims and there are no assets of this estate.[4]

C.      On December 19, 2022, after due inquiry, having discovered no assets, the Trustee marked NLG's case a "no asset" case.  D.I. 120 (Notice of Change from Asset to No Asset Case).  On the same date, the Trustee also filed the Chapter 7 Trustee's Report of No Distribution (the "Trustee's Final Report") stating that he "made a diligent inquiry into the financial affairs of the [debtor] and the location of the property belonging to the estate; and that there is no property available for distribution."  D.I. 122.

D.      No objections were filed to the Trustee's Final Report in accordance with Fed. R. Bankr. P. 5009(a).  Accordingly, there is a presumption that the estate is folly administered, and NLG has no assets (or claims) to "abandon."

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.  The Abandomnent Motion is **DENIED as moot.**

---

[2] On January 7, 2022, the Court entered an Order for Relief in an Involuntary Case, therein granting an order for relief under Chapter 7 of the Bankruptcy Code against the Debtor.  DJ, 7.  On the same day, the United States Trustee appointed the Alfred T. Giuliano as the interim Chapter 7 trustee (the "Trustee"), which appoinhnent remains in effect.  D.I. 8.

[3] *Kind Operations, Inc. v. Cadence Bank, N.A. (In re PA Co-Man, Inc.),* 644 B.R. 553,570 (Bankr. W.D. Pa. 2022).

[4] D.l. 141 (Tr. afHr'gJan, 31, 2023, 53:20-55:5).

2

2.      The Bankruptcy Court retains jurisdiction with respect to any disputes arising

from or other actions to interpret, administer, or enforce the terms and provisions of this Order

Denying Abandonment.


Dated: February 16, 2023

                                                       _____

                                                       J. Kate Stickles

                                                       Uni ed States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| NLG, LLC, | Case No. 21-11269 (JKS) |
| Debtor. | **Related D.I. 71, 92, 134, 135, and 136** |

## OPINION

Before the Court is Chris Kosachuk's ("Kosachuk") *Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case* (the "Conversion Motion")[1] pursuant to 11 U.S.C. § 706(a) and rule 1017 of the Federal Rules of Bankruptcy Procedure.  Having carefully reviewed the motion, the responses, the facts of this case, and arguments presented, for the reasons set forth below, the Conversion Motion will be denied.

## JURISDICTION

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Consideration of this matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A.      The Involuntary Bankruptcy Case

On September 24, 2021, Kosachuk filed an involuntary petition for relief under chapter 7 of title 11 of the Bankruptcy Code against NLG, LLC (the "Debtor" or "NLG").  Kosachuk, the

---

[1] D.I. 71.

founder of NLG, was the sole petitioning creditor.  NLG did not answer the involuntary petition.

No party objected to, moved to dismiss, or otherwise challenged the involuntary petition.  On

January 7, 2022, the Court entered the Order for Relief in an Involuntary Case ("Order for

Relief").[2]

On the same day, the United States Trustee appointed Alfred T. Giuliano as the interim

chapter 7 trustee (the "Trustee"), which appointment remains in effect.[3]  The Trustee is now the

sole fiduciary for NLG and is responsible for recovering all assets of the estate and prosecuting

causes of action on behalf of the estate.[4]

On February 9 and 10, 2022, the Trustee filed Debtor's Schedule of Assets and Liabilities

and Statement of Financial Affairs, respectively.[5]

On March 3, 2022, the Court entered an Order authorizing the Trustee to retain Fox

Rothschild LLP ("Fox Rothschild") as his counsel.[6]

On August 16, 2022, Kosachuk filed the Conversion Motion.[7]

---

[2] D.I. 10.

[3] D.I. 12.

[4] *Mini-Miners, Inc. v. Lansberry (In re Lansberry)*, 177 B.R. 49, 55 (Bankr. W.D. Pa. 1995) ("With his appointment, the chapter 7 trustee in the above cases became the sole representative of debtors' estates.  As trustee, he became the successor-in-interest to all pre-petition causes of action belonging to debtors." (citations omitted)). *See also Bauer v. Com. Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir. 1988) ("It is well settled that the right to pursue causes of action formerly belonging to the debtor—a form of property under the Bankruptcy Code—vests in the trustee for the benefit of the estate." (citations and quotation marks omitted)); *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1225 (8th Cir. 1987) ("Any of these actions that are unresolved at the time of filing then pass to the trustee as representative of the estate, who has the responsibility under Section 704(1) of asserting them whenever necessary for collection or preservation of the estate." (citations omitted)).

[5] *See* D.I. 24 and 27, respectively (collectively "Schedule and Statement").

[6] D.I. 39.

[7] The Conversion Motion was heard after the filing fee was paid and the motion scheduled by Order entered on December 19, 2022.  *See* D.I. 121.

On November 2, 2022, creditor Juan Ramirez ("Ramirez") filed a declaration in support of the Conversion Motion.[8]

On December 19, 2022, the Trustee filed the *Notice of Change from Asset to No Asset*[9] (the "Notice of No Asset") and the *Chapter 7 Trustee Report of No Distribution* (the "Trustee's Final Report").[10]   The Trustee's Final Report states, in part:

> I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed. R. Bank. P. 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered.  I request that I be discharged from any further duties as trustee.  Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 15 months. Assets Abandoned (without deducting any secured claims): $ 0.00, Assets Exempt: Not Available, Claims Scheduled: $ 0.00, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 0.00.[11]

No response or opposition was filed to the Trustee's Final Report.[12]

On January 24, 2023, three responses were filed to the Conversion Motion: (i) Liza Hazan ("Hazan"),[13] (ii) Selective Advisors Group, LLC ("Selective"), 9197-5904 Quebec, Inc.

---

[8]  *Declaration in Support of Creditor Juan Ramirez of Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case*, D.I. 92.

[9]  D.I. 120.

[10]  D.I. 122.

[11]  D.I. 122 (cleaned up).

[12]  Fed. R. Bankr. P. 5009 provides: "If in a chapter 7 . . . case the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered."

[13]  *Liza Hazan's Response to Motion to Convert*, D.I. 134.  Although the Court permitted Hazan to present argument, because Hazan is not a creditor of the Debtor and does not have standing in this proceeding the Court does not consider Hazan's argument in rending this Opinion. *Allen v. Joseph (In re Hawkins)*, 513 B.R. 634, 638 (D. Del. 2013), *aff'd*, 594 Fed. App'x 71 (3d Cir. 2015) (only persons whose rights or interests are directly, and

3

("Quebec"), and America Asset Management, LLC ("AAM") (Selective, Quebec and AAM are referred to as the "Objector(s)");[14] and (iii) Fox Rothschild, the holder of an administrative expense claim against the estate of NLG.[15]

On January 31, 2023, the Court heard oral argument on the Conversion Motion and took the matter under advisement.

**B.      The Adversary Proceedings in the Bankruptcy Case**

In 2002, Kosachuk formed NLG to facilitate the sale of real property located in Fisher Island, Florida (the "Property") to Hazan by which NLG lent money to Hazan in exchange for a promissory note and mortgage.  Soon thereafter, Hazan defaulted on the mortgage.

In 2012, in an unrelated matter, the Supreme Court for the State of New York in *9197-5904 Quebec, Inc. v. NLG, LLC*, Case No. 2012-101875, entered a judgment by confession against NLG in favor of Quebec (the "Quebec Judgment").  Litigation ensued when the Quebec Judgment was offset against the promissory note given by Hazan.[16]  This dispute has been the

---

adversary affected pecuniarily are a "person aggrieved" with standing); *In re AbitibiBowater Inc.*, No. 09-11296 KJC, 2010 WL 4823839, at *8 (Bankr. D. Del. Nov. 22, 2010) (matter must directly or adversely affect the pecuniary interests in order to have standing to object).  Even if Hazan has standing, the Court's decision would not be altered.

[14]  *Opposition by Selective Advisors Group, LLC, 9197-5904 Quebec, and American Asset Management, LLC to Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case*, D.I. 135.

[15]  *Response of Fox Rothschild LLP to Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case*, D.I. 136.

[16]  At the January 31, 2023, hearing on the Conversion Motion, counsel for Selective, Quebec, and AAM explained that Hazan was married to Mr. Meehan, who is a principal of Selective, Quebec, and AAM.  Adv. D.I. 141 (Tr. of Hr'g Jan. 31, 2023, 16:9-10 and 16:16-21).

4

subject of numerous lawsuits between the Debtor, Kosachuk, Hazan, Selective, and Quebec, in state and federal courts for more than a decade.[17]

The filing of the involuntary bankruptcy created yet another forum to continue what is essentially a two-party dispute.  Significantly, since the filing of this case, three separate adversary proceedings have been commenced in this Court challenging the Quebec Judgment: (i) in the first, Kosachuk asserts NLG's assets were misappropriated by Selective using the "sham" Quebec Judgment;[18] (ii) in the second, NLG seeks a declaratory judgment that the Quebec Judgment is a "sham" and a declaration that the Quebec Judgment be vacated, set aside, and stricken;[19] and (iii) in the third, Kosachuk seeks to cancel the indebtedness caused by the Quebec Judgment, *nunc pro tunc* to the date of entry January 22, 2012.[20]  In effect, the three adversary proceedings seek essentially the same relief -- namely, declarations that the Quebec Judgment, a judgment entered in 2012 by the New York state court, is void.

## C.      Proofs of Claim Filed in the Bankruptcy Case

Since the Order of Relief was entered, seven (7) proofs of claim have been filed in this case by four claimants, including: two claims filed by Ramirez for unpaid legal services provided

---

[17]  A comprehensive discussion of the state and federal litigation between NLG and/or Kosachuk and Hazan, Selective, and Quebec, including the various court rulings, is set forth in this Court's Opinion in *Kosachuk v. Selective Advisors Group, LLC, et al.*, Adv. Pro. No. 22-50421 (JKS), entered February 16, 2023.

[18]  *Kosachuk v. 9197-5904 Quebec, Inc.*, Adv. Pro. No. 21-51264.

[19]  *NLG, LLC v. Selective Advisors Group, LLC*, Adv. Pro. No. 22-50086.  This action was filed in 2018 in the United States District Court for the Southern District of Florida and transferred to this Court.  The parties have agreed to dismiss this adversary proceeding over the objection of non-parties Kosachuk and Ramirez.  Adv. Pro. No. 22-50086, Adv. D.I. 60.

[20]  *Kosachuk v. 9197-5904 Quebec, Inc. and Selective Advisors Group, LLC*, Adv. Pro. No. 22-50421.  This adversary is the subject of a pending motion to dismiss.

to NLG;[21] two claims filed by Kosachuk, one related to money loaned to NLG which was then loaned to Hazan and the other related to the foreclosure action against the Property;[22] one claim filed by Objector AAM, a judgment creditor;[23] and two claims filed by Grove Resolutions, LLC, for legal services provided to NLG.[24] No claims objections were filed; per the Trustee's Final Report, no claims will receive any distribution.

## THE PARTIES' ARGUMENT

Kosachuk seeks entry of an order under section 706(a) of the Bankruptcy Code converting NLG's chapter 7 bankruptcy case to a case under chapter 11 of the Bankruptcy Code. He argues that section 706(a) and case law give the Debtor a one-time absolute right of conversion because (1) the chapter 7 case has not been previously converted; and (2) the Debtor is eligible to be a chapter 11 debtor under section 101(9) of the Bankruptcy Code.[25] He seeks conversion so that "the Debtor may regain possession of its assets and estate, finalize its pending litigation in Florida and New York, where NLG's lawyers are better positioned and more familiar than the Trustee (and his lawyers) and restructure itself [through] . . . a chapter 11 proceeding, which will maximize value for the Debtor's creditors and the Debtor as a whole."[26] At oral argument, Kosachuk argued that "[conversion] will provide the highest possible return to all creditors of the estate of NLG, including the potential administrative claim...."[27]

---

[21] POC 4-1 and 5-1.

[22] POC 6-1 and 7-1.

[23] POC 2-1.

[24] POC 1-1 and 3-1.

[25] *See* 11 U.S.C. § 101(9). D.I. 71 at p. 9

[26] D.I. 71 at p. 9.

[27] D.I. 141 (Tr. of Hr'g, Jan. 30, 2023, 8:9-11).

In opposition to the Conversion Motion, the Objectors argue that NLG is ineligible to be a debtor under chapter 11.  Further, they argue a chapter 11 conversion would have all the hallmarks of a bad-faith filing because the Debtor has nothing to reorganize, uses bankruptcy as a litigation tactic and for forum shopping, is being used to resolve what is essentially a two-party dispute, and has few unsecured creditors.[28]  At oral argument, counsel for the Objectors argued that the real purpose for the conversion is to address the underlying two-party dispute between Kosachuk and Hazan.[29]

## APPLICABLE LAW

Section 706(a) of the Bankruptcy Code provides, in part, that "[t]he debtor may convert a case under this chapter to a case under chapter 11 … at any time, if the case has not been converted under section 1112 … of this title."

Under section 706(b) of the Bankruptcy Code, "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time."  "Section 706(b) does not provide guidance on what (or what not) to consider when reaching a decision."[30]  Courts have therefore concluded that a bankruptcy court has "broad discretion in exercising this power based on a determination of what 'will most inure to the benefit of all parties in interest.'"[31]  "Since there are no specific grounds for conversion, a

---

[28]  D.I. 135 at ¶ 10.

[29]  D.I. 141 (Tr. of Hr'g, Jan. 30, 2023, 16:16-21) ("This, really, from the beginning, was, essentially, a two-party dispute that was then brought to the Bankruptcy Court to try and find another forum to settle a dispute between Mr. Kosachuk and Ms. Hazan and certain entities owned by Mr. Meehan, that I represent.").

[30]  *Decker v. Off. of the United States Tr.*, 548 B.R. 813, 817 (D. Alaska 2015) (citation omitted).

[31]  *In re Parvin*, 549 B.R. 268, 271 (W.D. Wash. 2016) (citations omitted) ("*Parvin II*").

7

court should consider anything relevant that would further the goals of the Bankruptcy Code."[32]

Courts have considered a variety of factors in determining whether to convert a case from

chapter 7 to chapter 11 under section 706(b), depending on the circumstances of the case,

including: (1) the debtor's ability to repay the debt; (2) whether there are immediate grounds for

reconversion; (3) the likelihood of a chapter 11 plan's confirmation; and (4) whether the parties

in interest would benefit from conversion.[33]

The burden of proof is on the moving party to show that the case should be converted.[34]

## ANALYSIS

### A.     Kosachuk Does Not Have an Absolute Right to Convert the Case

Kosachuk's principal argument is that the Debtor has a one-time absolute right to convert

its chapter 7 case to a chapter 11 case under section 706(a) of the Bankruptcy Code.[35]

Kosachuk's argument fails under the plain language of the statute and the controlling law.

First, section 706(a) provides, in part, that "**the debtor may convert a case** under this

chapter to a case under chapter 11 … ."[36]  Here, the Debtor (or the Trustee who stands in the

shoes of the Debtor and is the fiduciary for the Debtor) is not seeking to convert the case.  Under

the plain language of the statute, section 706(a) applies to a debtor seeking conversion, not a

creditor or other party in interest.  Therefore, Kosachuk, a non-debtor, cannot seek conversion

---

[32] *Id.* (citations omitted).

[33] *Decker*, 548 B.R. at 817; *see also Parvin II*, 549 B.R. at 271-72 ("the debtor's ability to pay his creditors is typically the first consideration"); *Gebhardt v. Hardigan (In re Hardigan)*, 517 B.R. 379 (S.D. Ga. 2014).

[34] *In re Parvin ("Parvin I")*, 538 B.R. 96, 101 (Bankr. W.D. Wash. 2015).

[35] D.I. 71 at p. 11.

[36] 11 U.S.C. § 706(a) (emphasis added).

under section 706(a).[37]  On the other hand, section 706(b) empowers "a party in interest" other

than a debtor to seek conversion.  Although, Kosachuk did not seek relief under section 706(b),

the Court will address the issue below.

Second, even if Kosachuk could seek relief on behalf of the Debtor, section 706(a) does

not give the Debtor the absolute right to convert the chapter 7 case to a case under chapter 11.  In

*Marrama v. Citizen's Bank,* the Supreme Court held that a debtor's right to convert a chapter 7

case to another chapter is not absolute.[38]  Case law instructs that section 706(a) cannot be read in

isolation but rather must be read in conjunction with section 706(d).[39]  "Reading sections 706(a)

and 706(d) together operates to condition a debtor's right to convert under certain

circumstances."[40]

Conversion under section 706(a) is limited by the express language of section 706(d),

which provides that "a case may not be converted to a case under another chapter of this title

**unless the debtor may be a debtor under such chapter.**"[41]  Here, the Debtor's right to convert

is expressly conditioned on NLG satisfying the requirements of the destination chapter – chapter

---

[37] Kosachuk filed the Conversion Motion as a "*pro se* movant." *See* D.I. 71 and 141 (Tr. of Hr'g Jan. 31, 2023, 27-12-16).  *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) (citations omitted) ("It has been the law for the better part of two centuries … that a corporation may appear in the federal courts only through licensed counsel."); *In re 69 N. Franklin Tpk.*, LLC, 693 Fed. App'x 141, 144 (3d Cir. 2017) (citations omitted) ("It is well established that a corporate entity such as a limited liability company may not proceed *pro se* and must be represented by legal counsel.").  There is a distinction between Kosachuk and NLG – they are not one and the same, although they are in privity. *Burtch v. Opus, LLC (In re Opus E., LLC)*, 528 B.R. 30, 57 (Bankr. D. Del. 2015), *aff'd sub nom. In re: Opus E., LLC*, No. 09-12261, 2016 WL 1298965 (D. Del. Mar. 31, 2016), *aff'd sub nom. In re Opus E. LLC*, 698 F. App'x 711 (3d Cir. 2017) ("The corporate identity for single-member LLCs is also respected.").

[38] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372 (2007).

[39] *See Marrama,* 549 U.S. at 371; *In re Murray*, 377 B.R. 464, 468 (Del. Bankr. 2007).

[40] *In re Murray*, 377 B.R. at 468.

[41] 11 U.S.C. § 706(d) (emphasis added).

11.[42]  Kosachuk has failed to carry his evidentiary burden of proving entitlement to conversion under chapter 11.

A debtor may not qualify as a "debtor" under chapter 11, if pursuant to 11 U.S.C. § 1112(b)(1), "cause" exists for the court to convert a debtor's chapter 11 case to a chapter 7 case or dismiss it.  In deciding a contested motion to convert under section 706(a), with sections 706(d) and 1112(b)(4) in mind, courts consider the "totality of the circumstances," including the factors set forth in 1112(b)(4).[43]  The Court of Appeals for the Eleventh Circuit explained in *Daughtrey v. Rivera* (considering conversion from a chapter 7 to a chapter 11 case):

> A court "*shall* convert" a case under Chapter 11 to Chapter 7 or dismiss it, whichever is in the best interests of creditors and the estate, *for cause*. A *non-exhaustive* list of "causes" includes, among other things, substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, or a debtor's inability to effectuate substantial consummation of a confirmed plan.

> . . . Thus, § 706(d) "provides adequate authority" to deny a motion to convert to Chapter 11 when "cause" exists under § 1112(b)(4). If, as Debtors argue, conversion to Chapter 11 must occur before § 1112(b)(1) comes into play, it means that the bankruptcy court must go through the formality of granting conversion and then, in the next breath, dismiss the case or convert it to a Chapter 7. This would place form over substance and defy common sense.[44]

---

[42] *Marrama*, 549 U.S. at 372 (2007) (The broad description of the right to convert as "absolute" in Senate and House Committee Reports fails to give full effect to the express limitation of § 706(d), which provides that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." That text expressly conditioned Marrama's right to convert on his ability to qualify as a chapter 13 "debtor.").

[43] *Nimoityn v. Schubert (In re Nimoityn)*, No. 21-CV-02709, 2022 WL 523601, at *1 (E.D. Pa. Feb. 22, 2022) (considering converting a chapter 7 case to a case under chapter 11).

[44] *Daughtrey v. Rivera (In re Daughtrey)*, 896 F.3d 1255, 1275-76 (11th Cir. 2018) (emphasis supplied; citations and quotations marks omitted).

Here, at least two section 1112(b)(4) "causes" exist for denying conversion to chapter 11: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and "inability to effectuate substantial consummation of a confirmed plan."[45]

As described herein, the Debtor's Schedule and Statement reflect that NLG has no funds or any source of income. After investigation, the Trustee determined that NLG does not have property available for distribution to creditors and declared this chapter 7 case a "no asset" case.[46] The Trustee's findings are uncontested. Further, during this chapter 7 case the Debtor has experienced continuing loss having incurred an administrative expense claim for legal fees that it cannot pay.[47] Kosachuk claims that "finalizing litigation in Florida and New York" will lead to payment in full of all claimants.[48] The Court, however, is skeptical. Both the New York and Florida state courts and the Second and Eleventh Circuit Courts of Appeals have ruled that the Quebec Judgment is no longer subject to challenge.

The Debtor has no assets. The estate is administratively insolvent. The Debtor does not have the financial ability to fund a chapter 11 case or a plan process. The Debtor does not have any assets to distribute to creditors under a plan. The Debtor cannot be rehabilitated. As a result, this Court finds that it is unlikely the Debtor can confirm or consummate a feasible

---

[45] 11 U.S.C § 1112(b)(4)(A), (M).

[46] *See* D.I. 120 and 122.

[47] D.I. 136.

[48] *See* D.I. 71 at p. 9 and D.I. 141 (Tr. of Hr'g Jan. 31, 2023, 26:10-24).

chapter 11 plan.  Consequently, under section 706(d), the Debtor does not qualify as a chapter 11

debtor and the case cannot be converted to a case under chapter 11.

The request to convert under section 706(a) is denied.

**B.      Conversion is Inappropriate under Section 706(b)**

Although Kosachuk did not specifically seek relief under section 706(b), the Court will

consider whether conversion is appropriate under section 706(b) of the Bankruptcy Code.  The

Court considers the following factors:

**i.      The Debtor's Ability to Repay the Debt**

In deciding a motion to convert a case under chapter 7 to chapter 11 upon request of a

party in interest, the "debtor's ability to pay typically is a starting point in the analysis, … since

the whole reason for asking [for] a case to be converted is the assumption that creditors would

receive more in a chapter 11 than a chapter 7."[49]

After fifteen months in chapter 7 and due inquiry, having discovered no assets for

distribution, the Trustee, an independent fiduciary, declared this chapter 7 case a "no asset"

case.[50]  The Trustee's Final Report[51] states there is no property available from the estate to

distribute to creditors – this report was not contested.  Under Bankruptcy Rule 5009 there is a

presumption that the estate is fully administered.

---

[49]  *Parvin I,* 538 B.R. at 102 (citations omitted).  *See also In re Decker,* 535 B.R. at 839 (Bankr. D. Alaska 2015), *aff'd sub nom. Decker v. Off. of the United States Tr.,* 548 B.R. 813 (D. Alaska 2015) (the ability to pay "is an exceedingly relevant, if not necessary, factor and the obvious starting point for any analysis under § 706(b).").

[50]  *See* D.I. 120 and 122.

[51]  D.I. 122.

The Debtor's Schedule of Assets and Liabilities reflects that the Debtor does not have any real property, personal property, cash, cash equivalents, or financial assets, deposits or prepayments, accounts receivable, investments, inventory, furniture, fixtures and equipment or collectibles, machinery, equipment or vehicles, or intellectual property.[52]  The Statement of Financial Affairs reports that NLG has no income.[53]  The record is devoid of any evidence establishing that the Debtor is an operating business, has any source of income, or other assets from which to administer a chapter 11 case, fund a chapter 11 plan or make distributions to creditors.  Kosachuk has not provided any evidence that the Debtor can pay its debts.  In fact, the Trustee's Final Report states the Debtor cannot.

At the October 25, 2022 hearing on a proposed settlement between the Trustee and Hazan, the Trustee confirmed, following his investigation, what is contained in the Debtor's Schedule and Statement – there are no "meaningful assets."[54]  Following the fallout of the proposed settlement,[55] on December 19, 2022, the Trustee filed the Notice of No Asset, designating this case as a "no asset" case.

In addition, the Debtor's estate has accrued an administrative expense claim for legal fees in the chapter 7 case, in the approximate amount of $190,000.[56]  The estate has no funds, or

---

[52] D.I. 24.

[53] D.I. 27.

[54] D.I. 95 (Tr. Hr'g Oct. 25, 2022, 10:8-14)("A: I'm serving as the Chapter 7 bankruptcy trustee. At this point in time, I'm liquidating what little assets there are, and then we'll examine claims and file a final report. Q: Okay. And are there any other possible assets other than these potential claims? A: Not meaningful assets, no.").

[55] The Trustee explained that if the proposed settlement did not happen (which it inevitably did not), there would be "no money to pay professionals, to pay attorneys, so it will...end up as a no-asset case..." D.I. 95 (Tr. Hr'g Oct. 25, 2022, 15:19-24).

[56] D.I. 136.

potential income, from which to pay this administrative expense or creditor claims; the estate is administratively insolvent.

Kosachuk maintains that the estate assets spring from litigation and that the purpose of conversion would be to "finalize [NLG's] pending litigation in Florida and New York."[57] This argument fails. First, there are no estate resources to fund a chapter 11 bankruptcy process, let alone pursue litigation. Second, the litigation that Kosachuk wants the Debtor to pursue is essentially a two-party dispute involving non-bankruptcy, state law issues that have been adjudicated in various state and federal courts.

### ii.  Whether there are Immediate Grounds for Reconversion

As a practical matter, if this case were converted to a chapter 11 case, there would be no funds to pay (i) estate professionals and, under Delaware law, NLG would be required to retain counsel;[58] (ii) the quarterly United States Trustee fees imposed on all chapter 11 debtors under 28 U.S.C. § 1930; or (iii) any costs to administer the case. Consequently, there is a substantial likelihood of reconversion to chapter 7. Conversion would also add unnecessary layers of administrative procedure and costs on an estate that has no assets to administer and is administratively insolvent, and it would delay the final administration and closure of the chapter 7 estate. Conversion to chapter 11 would be futile.

---

[57] D.I. 71 at p. 9. As of the date of this Opinion, the Court is not aware of any litigation pending in either New York or Florida.

[58] *Rowland*, 506 U.S. at 201–02 (citations omitted); *In re 69 N. Franklin Tpk.*, LLC, 693 Fed. App'x at 144 (citations omitted).

In addition, in considering whether to reconvert a chapter 11 case to chapter 7, courts consider "cause," under section 1112(b)(4) of the Bankruptcy Code.[59]  As explained above, at least two section 1112(b)(4) "causes" exist for denying conversion to chapter 11: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and "inability to effectuate substantial consummation of a confirmed plan."[60]

First, there is continuing loss to the estate that is already insolvent.  Specifically, as noted above, the Debtor has incurred an approximate $190,000 administrative expense claim in the chapter 7 case for which the estate has no funds to pay.

Second, there are no funds to administer a chapter 11 case or to confirm and consummate a feasible plan.  There is nothing to distribute to creditors and, as a result, no reasonable likelihood of rehabilitation or confirmation and consummation of a plan.

### iii.    The Likelihood of a Chapter 11 Plan's Confirmation

Third, there are both practical and legal issues making it unlikely the Debtor could confirm or consummate a plan in this case.  Practically speaking, Kosachuk has not presented any evidence establishing that the Debtor has the financial wherewithal to finance a chapter 11 case or a plan process.  Indeed, the Schedule and Statement show no liquidity.  Legally, the record reflects that there are no assets to reorganize or distribute under a plan of reorganization or liquidation.  Kosachuk premises confirmation of a plan on litigation surrounding a 2012 New York state court judgment, however, the record establishes that NLG and/or Kosachuk have been

---

[59]  11 U.S.C. § 1112(b)(4); *see, e.g., S. River Cap., LLC v. Kane*, No. 21-CV-03493-WHO, 2022 WL 2905354, at *6 (N.D. Cal. July 22, 2022).

[60]  11 U.S.C § 1112(b)(4)(A), (M); *see, e.g., S. River Cap., LLC v. Kane*, No. 21-CV-03493-WHO, 2022 WL 2905354 at *7.

pursuing litigation related to the 2012 Quebec Judgment for more than a decade without success. There is no indication that continued or additional litigation would be successful or result in a financial recovery for the estate to fund a plan process and distributions to creditors.  In fact, the Trustee's determination, after investigation, that this is a no asset case is contrary to Kosachuk's unsubstantiated argument.  As the Third Circuit noted in *In re Am. Capital Equip., LLC,* this Court "is not bound to clog its docket with visionary or impracticable schemes for resuscitation."[61]

Moreover, in deciding whether to confirm a chapter 11 plan, the court is required to consider a plan's feasibility: whether confirmation "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor."[62]  Here, even if a plan were filed, it would not be feasible since there are no assets for distribution and it would likely be followed by liquidation.

### iv.    Whether the Parties in Interest Would Benefit from Conversion

Fourth, it is questionable whether any party in interest would benefit from conversion, other than possibly Kosachuk and Ramirez who want to continue to pursue litigation involving non-bankruptcy, state law issues that have been adjudicated in other state and federal forums.[63] Creditor AAM and litigation parties Quebec and Selective oppose conversion.  Fox Rothschild, an administrative claimant, does not take a position but points out that it must be paid under any confirmed chapter 11 plan.  Conversion to chapter 11 would be of no benefit to other creditors

---

[61] *In re Am. Capital Equip., LLC,* 688 F.3d 145, 162 (3d Cir. 2012) (citations omitted).

[62] *See* 11 U.S.C. § 1129(a)(11).

[63] *See* Opinion entered on February 16, 2023, in Adv. Pro. No. 22-50421 (JKS) addressing the two-party litigation.

16

and litigants as they would be required to continue to monitor a bankruptcy case with little, if any, upside.  The Court considers this factor neutral in its analysis.

> ### v.  Whether Conversion Would Abuse the Bankruptcy Process and Would Serve to Pervert, Rather Than Implement, Congressional Policy

In *Culp v. Stanziale*,[64] the Delaware District Court observed that the "Bankruptcy Court had power to deny conversion under Section 105(a) of the Bankruptcy Code to prevent an abuse of process" and, under section 105(a), empowers the Bankruptcy Court to "take any action or make any determination necessary or appropriate to prevent abuse of the bankruptcy process."[65] "A motion to convert can be abusive when it is filed to frustrate the bankruptcy process, rather than to implement the Congressional policy of repayment of creditors."[66]

Sixteen months ago, Kosachuk filed the involuntary petition against NLG "in order to stop the Miami-Dade County Sheriff from executing on NLG's assets"[67] (i.e., the Property).  He determined when signing the involuntary petition that NLG should proceed in a chapter 7 liquidation.  By filing the involuntary petition, Kosachuk created yet another forum to pursue litigation.  However, upon entry of the Order for Relief, the Trustee became the fiduciary for the Debtor and took over the prosecution of the prepetition lawsuits NLG had as of the date of

---

[64] *Culp v. Stanziale (In re Culp)*, 545 B.R. 827 (D. Del. 2016).

[65] *In re Culp*, 545 B.R. at 842 (quotation marks and internal modifications removed; citations omitted).

[66] *In re Murray*, 377 B.R. at 471.

[67] D.I. 71 at p. 2, ¶ 6.  Kosachuk takes the position that the Property is NLG's asset.  *See* D.I. 141 (Tr. of Hr'g Jan. 31, 2023, at 26:6-7 and 43:3-8).  However, the Bankruptcy Court for the Southern District of Florida and the Eleventh Circuit Court of Appeals found otherwise.  *NLG, LLC v. Horizon Hosp. Grp., LLC (In re Hazan)*, 10 F.4th 1244, 1247–48 (11th Cir. 2021) and *Hazan v. NLG, LLC (In re Hazan)*, Adv. Pro. 16-1439 (Bankr. S.D. Fla. 2016), Adv. D.I. 238.

filing.[68] Now that the Trustee has determined that there are no assets for distribution, no litigation to prosecute, and has certified that the estate has been fully administered, Kosachuk seeks to convert the case to chapter 11 so that the Debtor can "regain possession of its assets and estate, finalize its pending litigation in Florida and New York … ." The record, however, establishes that the Debtor has no assets, nothing to reorganize, and nothing to distribute to creditors. The record also reflects that NLG and/or Kosachuk and Hazan, Selective, and Quebec have a long history of litigation in multiple state and federal courts, including three adversary proceedings in this Court, challenging essentially the same state law issues. The Objectors argue the bankruptcy process is used as "a litigation tactic, a forum shopping device and/or to resolve what is essentially a two-party dispute."[69] The Court agrees.

The Supreme Court has identified two basic purposes of chapter 11: preserving the going concern value of debtor's business and maximizing property available to satisfy creditor claims.[70] NLG is unquestionably not an operating business, does not have any source of income or liquid assets; and therefore, has no going concern value to preserve in chapter 11 through reorganization or liquidation. Converting this case to chapter 11 to obtain tactical litigation advantages is not within the legitimate scope of bankruptcy laws and would be an abuse of the bankruptcy process.[71] The Bankruptcy Court is not a forum to litigate two-party, non-

---

[68] 11 U.S.C. § 704(1); *see also In re Bowker*, 245 B.R. 192 (Bankr. D.N.J. 2000) ("The primary duty of the chapter 7 trustee is to 'collect and reduce to money property of the estate....' This power includes the right of the trustee to take over the prosecution of any prepetition lawsuits the chapter 7 debtor had as of the date of filing.") (citations omitted).

[69] D.I. 135 at ¶ 10.

[70] *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999); *see also In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119 (3d Cir. 2004) (citing *203 N. LaSalle St. P'ship*).

[71] *In re Integrated Telecom Express, Inc.*, 384 F.3d 120.

bankruptcy, state court issues or to relitigate issues previously decided by other courts.[72]  Section

105(a) of the Code authorizes the Court to prevent this kind of abuse of the bankruptcy system

by denying a motion to convert.[73]

## CONCLUSION

For the reasons set forth herein, the Conversion Motion is denied.  An order will be

issued.

Dated: February 16, 2023

_____

J. Kate Stickles
United States Bankruptcy Judge

---

[72] *See, e.g., In re AMC Investors, LLC*, 406 B.R. 478, 488 (Bankr. D. Del. 2009) (citations omitted) ("Courts generally abstain in two-party disputes where relief is available in a non-bankruptcy forum.  Resolution of these disputes has the potential to transform the bankruptcy process into a collective device, which it is not.").

[73] *Marrama*, 549 U.S. at 375 (concluding that the authority granted to bankruptcy judges under § 105(a) to take any action necessary to prevent an abuse of process "is surely adequate to authorize an immediate denial of a motion to convert filed under § 706").

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| NLG, LLC, | Case No. 21-11269 (JKS) |
| Debtor. | **Related D.I. 71, 92, 134, 135, 136, and 143** |

## <u>ORDER</u>

For the reasons set forth in the Court's Opinion dated February 16, 2023, the *Motion to Convert Involuntary Chapter 7 Case to Voluntary Chapter 11 Case* (D.I. 71), filed on August 16, 2022, is **DENIED**.

Dated:  February 16, 2023

Kate Stickles
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:                                          Case No. 16-bk-10389-PGH

LIZA HAZAN a/k/a ELIZABETH HAZAN,               Chapter 11

      Debtor,

_____/

**JOINT REPLY TO OPPOSITION [ECF NO. 1403] TO MOTION FOR REHEARING
AND RELIEF FROM ORDER GRANTING MOTION TO STRIKE [ECF NO. 1400]**

      NLG, LLC ("NLG"), Fisher Island Community Association ("FICA") Members, Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC, through undersigned counsel, and Chris Kosachuk ("Kosachuk"), *pro se,* (collectively "Movants") file this Joint Reply to the Opposition [ECF No. 1403] to Motion for Rehearing and Relief From Order Granting Motion to Strike [ECF No. 1400] (the "Order") pursuant to Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure ("FRBP") and Rules 59 and 60 of the Federal Rules of Civil Procedure ("FRCP"). Movants respectfully reply:

      The Debtor's Opposition does not dispute that the Debtor failed to file post confirmation operating reports, failed to pay United States Trustee fees, failed to pay her income taxes to the IRS, failed to pay her property taxes to Miami-Dade County and failed to pay her creditors pursuant to her own confirmed plan. This Debtor is clearly not complying with the Bankruptcy Code.

      The Supreme Court has put squarely in front of each bankruptcy judge the duty to make sure that if a plan is confirmed, that plan complies with the Bankruptcy Code. Though the Debtor, Trustee, U.S. Trustee, creditors, nor parties in interest may raise the issue, the court has an independent duty to make certain that the requirements for confirmation have been met. *See United*

Joint Reply to Opposition to Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 2 of 4

*Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367, 1381 n.14, 176 L. Ed. 2d 158, 173 n.14 (2010); *see also In re Dynamic Brokers, Inc.*, 293 B.R. 489, 499 (9th Cir. B.A.P. 2003) (citing *Everett v. Perez (In re Perez)*, 30 F.3d 1209, 1213 (9th Cir. 1994)). A debtor does not have the luxury of proposing a plan with whatever terms they want and have it confirmed "by default" if no opposition is filed or the debtor has objected to the creditor's claim and asserts that the creditor is not allowed to raise any objection to the proceeding. *In re De La Salle*, No. 10-29678-E-7, 2011 Bankr. LEXIS 5621, at *19-20 (Bankr. E.D. Cal. Sep. 6, 2011).

The Court correctly concluded that this Debtor has left the association "holding the bag" which is the inescapable conclusion of what has happened since the plan was confirmed. By already concluding that Debtor has defaulted on the confirmed plan as it relates to the members of FICA, this Court must dismiss this bankruptcy for failure to comply with the confirmed plan. As of February 2023, this Debtor now owes $812,053.94 to the association, not what the association or its members bargained for in this confirmed plan.

The Debtor does not dispute that she filed bankruptcy on January 11, 2012, the night before the Miami-Dade County Clerk was set to auction off the Fisher Island Property to the highest bidder pursuant to NLG's Final Judgment of Foreclosure. The Debtor also does not dispute that under *Breland, supra,* NLG has demonstrated (1) an actual, concrete, and particularized injury-in-fact (2) that is fairly traceable to the defendant's challenged action and (3) that is likely redressable by a favorable decision. There is no exception when the challenged action is the very cause of the plaintiff's injury-in-fact and as such NLG has standing.

Because the Debtor has clearly defaulted on her own confirmed plan, she loses all the benefits of the confirmed plan. All the creditors and interested parties to this bankruptcy are worse off now than when this bankruptcy started, the complete opposite of what's supposed to happen in

Joint Reply to Opposition to Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 3 of 4

a successful chapter 11 bankruptcy.  No creditor bargained to be flimflammed by the confirmed plan and pay for this Debtor's millionaire lifestyle on Fisher Island. NLG clearly has standing and in fact has the largest financial interest in this bankruptcy case, indisputable facts summarily ignored by this Court.  NLG absolutely has standing to seek the enforcement of its Final Judgment of Foreclosure which is seven years overdue.

**WHEREFORE**, for the reasons set forth above, Movants respectfully request that the Court grant the Motion for Relief Order Granting Motion to Strike [ECF No. 1400], set NLG's prior Motion [ECF No. 1394] for immediate hearing and/or alternatively dismiss this case with a prejudice period of seven years to filing another petition under any section of the bankruptcy code.

Respectfully submitted,

| | |
|---|---|
| _____<br>Juan Ramirez, Jr.<br>ADR Miami, LLC<br>1331 Brickell Bay Dr. #708<br>Miami, FL 33131<br>(305) 667-6609<br>jr@adrmiami.com | _____<br>Chris Kosachuk<br>*Pro Se Movant*<br>854 Pheasant Run Rd.<br>West Chester, PA 19382-8144<br>(305) 490-5700<br>chriskosachuk@gmail.com |
| Attorney for Creditors NLG, LLC, FICA Members Roberto Viñas, Marta Yee and Robert Vole | |

Joint Reply to Opposition to Motion for Relief from Order Granting Motion to Strike
Case No. 16-bk-10389-PGH
Page 4 of 4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of February 2023, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will electronically serve a copy of the foregoing document on all parties of record.

_____
Juan Ramirez, Jr.
ADR Miami, LLC
1331 Brickell Bay Dr. #708
Miami, FL 33131
(305) 667-6609
jr@adrmiami.com

Attorney for Creditors NLG, LLC, FICA Members Roberto Viñas, Marta Yee and Robert Vole

## SERVICE LIST

**_Served via CM/ECF_**
All parties of record



**ORDERED in the Southern District of Florida on March 3, 2023.**

Paul G. Hyman, Jr., Judge
United States Bankruptcy Court

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                      Case No. 16-10389-PGH
                                                            Chapter 11
LIZA HAZAN,

      Debtor.
_____/

<u>**ORDER DENYING MOTION TO RECONSIDER**</u>

      This matter came before the Court upon the *Joint Motion for Rehearing and Relief from Order Granting Motion to Strike* [ECF No. 1402] (the "Motion for Rehearing") filed by NLG, LLC; Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC (the "Association Members"); and Chris Kosachuk (together, the "Movants"). Liza Hazan (the "Debtor") filed a Response [ECF No. 1403] and the Movants filed a Reply [ECF No. 1404]. The Movants request the Court vacate the *Order Granting Motion to Strike* [ECF No. 1400] (the "Order Striking") under Rules 59 and 60 of the Federal Rules of Civil Procedure, made applicable by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure. The Movants do not cite to particular provision of Rules 59 and 60 but generally argue the Court made errors of fact and law in the Order Striking. For the reasons stated

below, the Court did not err in concluding the Movants lacked standing to file the Joint Motion to Reopen [ECF No. 1394][1].

Mr. Kosachuk never filed a proof of claim in this case. The Court disallowed NLG's proof of claim. Adv. Pro. No. 18-01439-AJC, ECF No. 238. A party must have a legal or pecuniary interest in the outcome of a chapter 11 case for that party to have standing to be heard in that case. *In re James Wilson Assocs.*, 965 F.2d 160, 169 (2d Cir. 1992). NLG claims the Court erred because NLG is the largest creditor in this case. This completely ignores the fact that the Court disallowed NLG's claim. NLG and Mr. Kosachuk lack standing. This Court and others have repeatedly explained this. ECF No. 1106, 1331, 1397; Adv. Pro No. 18-01492-AJC, ECF No. 35. NLG twice appealed the disallowance of its claim, and both the District Court and Eleventh Circuit affirmed this Court's ruling. Adv. Pro. No. 18-01439-AJC, ECF Nos. 386, 410. The orders ruling that NLG and Mr. Kosachuk lack standing are final and non-appealable. Accordingly, the Court did not err in the Order Striking when the Court concluded NLG and Mr. Kosachuk lack standing.

As to the Association Members, the Court welcomes the opportunity to clarify its earlier ruling. The Association Members take issue with this Court's citation to *Collado v. Baroukh*, 226 So. 3d 924 (Fla. 4th DCA 2017) for the proposition that members of a homeowners' association generally do not have standing to pursue claims owed to the association. The Court cited to *Collado* for how that case arose: the appellant in that case had filed a derivative suit. The Association Members have the option of filing a derivative action in Florida state court if they believe the Fisher Island Community Association ("FICA") has failed to pursue Ms. Hazan for unpaid assessments. In the Order Striking, the Court ruled

---

[1] The full title of ECF No. 1394 is *Joint Motion to Reopen Case, for Relief from Discharge Order and Final Decree, to Declare Confirmed Plan in Default, to Strike Confirmation Order, to Dismiss Case with Prejudice and Restore All Parties to Their Prepetition Status.*

that the Association Members lack standing in this bankruptcy case, not that the Association Members lack standing generally to pursue any claims they may have against Ms. Hazan.

The Association Members also argue this Court erred under the reasoning of *Rogers & Ford Constr. Corp. v. Carlandia Corp.*, 626 So. 2d 1350 (Fla. 1993). That case holds that members of an association, in addition to the association, can sue to enforce restrictive covenants. The Court's ruling does not conflict. The Order Striking does not rule that the Association Members have no claim against Ms. Hazan in an appropriate forum. The Order Striking rules they do not have standing in this bankruptcy case. *Rogers & Ford* supports the possibility that the Association Members have a claim against Ms. Hazan, but the Association Members have not filed a proof of claim in this case. They have no standing here.

FICA filed a proof of claim. However, pursuant to a settlement between FICA and Ms. Hazan, "The Debtor hereby modifies her Fourth Amended Plan … to remove any language concerning payment to FICA and to provide that all issues concerning FICA shall be resolved in the Circuit Court for Miami-Dade County." ECF No. 658. The order approving that settlement is final and non-appealable. ECF No. 666. The Association Members claim injury because Ms. Hazan has failed to pay FICA. FICA and Ms. Hazan agreed to litigate those issues elsewhere. The Association Members do not have standing in this case to complain about non-payment of a claim that should have occurred outside of this case and Ms. Hazan's plan. They may seek relief elsewhere.

The Movants lack standing. The Court did not err in the Order Striking. If the Movants believe they have suffered an injury due to Ms. Hazan defaulting on her confirmed plan, they can pursue those claims in an appropriate forum. This is not the appropriate forum.

The District Court recently described Mr. Kosachuk as a "frequent filer who has repeatedly, and over the course of several years, attempted to insert himself in the

bankruptcy proceedings involving Ms. Hazan. Those attempts have been repeatedly denied. Ultimately, sanctions were entered against Mr. Kosachuk for his violation of numerous orders entered by Judge Cristol." ECF No. 1397. The Motion to Reopen and Motion for Rehearing are merely the Movants' latest effort to insert themselves in this case without any basis in fact and law. This is nothing more than an attempt to circumvent this Court's previous orders disallowing NLG's claim and approving the FICA settlement.[2]

For the foregoing reasons, the Motion for Rehearing [ECF No. 1402] is DENIED.

### 

Copy to:
Juan Ramirez, Jr., Esq.

*Juan Ramirez, Jr., Esq. is directed to serve a copy of this order on all appropriate parties and shall file a certificate of service with the Court.*

---

[2] The Movants also claimed the Court concluded that Ms. Hazan left them "holding the bag." This mischaracterizes the Order Striking. The beginning of that sentence is "The Association Members claim." The Court clearly did not make a conclusion when it summarized the Movants' argument.

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

In re:                                                    Case No. 16-10389-PGH

LIZA HAZAN a/k/a ELIZABETH HAZAN,          Chapter 11

      Debtor,

_____/

### NOTICE OF APPEAL

      NLG, LLC  ("NLG"), Fisher Island Community Association ("FICA") Members, Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC, through undersigned counsel, and Chris Kosachuk ("Kosachuk"), *pro se,* appeal under 28 U.S.C. § 158(a) to the United States District Court for the Southern District of Florida from the Order Granting Motion to Strike [Doc. 1400], filed on February 9, 2023 and entered on the docket on February 10, 2023 in this case (the "Striking Order"), and the Order Denying Motion to Reconsider [Doc. 1405] filed on March 3, 2023 and entered on the docket on March 6, 2023 in this case (the "Reconsideration Order"), copies of which are attached to this Notice of Appeal.

      In appealing from these Orders, Appellants appeal from all orders and decisions antecedent and ancillary thereto, including all interlocutory judgments, decrees, rulings, reports, recommendations and opinions that merged into and became part of the Orders, that shaped the Orders, that are related to the Orders and upon which the Orders are based.

      The names of all parties to the judgment, order or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

**Part 1. Identify the appellant:**

1. Names of Appellants:  NLG, LLC ("NLG"), Fisher Island Community Association ("FICA") Members, Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC, through undersigned counsel, and Chris Kosachuk, *pro se*.

2. Position of Appellant: Creditors and Interested Parties

| Appellants:<br>NLG and FICA Members Vinas, Yee, Via Mia North America, LLC & 2215 Fisher Island Dr. LLC | Attorneys |
| --- | --- |
| | Juan Ramirez, Jr.<br>ADR Miami, LLC<br>1331 Brickell Bay Dr. #708<br>Miami, FL 33131<br>(305) 667-6609<br>jr@adrmiami.com |
| Chris Kosachuk<br>854 Pheasant Run Road<br>West Chester, PA 19382 | Chris Kosachuk<br>Pro Se Appellant<br>854 Pheasant Run Road<br>West Chester, PA 19382 |

**PART 2. Identify the subject of this appeal:**

1. Describe the judgment, order or decree appealed from:

Order Granting Motion to Strike [Doc. 1400] and Order Denying Motion to Reconsider [Doc. 1405].

2. State the date on which the Order was entered on the docket: February 10, 2023 and March 6, 2023

**PART 3: Identify the other parties to the appeal**

| Party: Debtor/Appellee | Attorney |
|---|---|
| Liza Hazan a/k/a Elizabeth Hazan<br>6913 Valencia Drive<br>Fisher Island, FL 33109 | JOEL M. ARESTY, P.A.<br>309 1st Ave S<br>Tierra Verde FL 33715<br>Tel 305--904--1903<br>Fax 800--559--1870<br>E--mail Aresty@Mac.com |

March 16 2023.

Respectfully submitted,

| | |
|---|---|
| _____<br>Juan Ramirez, Jr.<br>ADR Miami, LLC<br>1331 Brickell Bay Dr. #708<br>Miami, FL 33131<br>(305) 667-6609<br>jr@adrmiami.com | _____<br>Chris Kosachuk<br>*Pro Se Appellant*<br>854 Pheasant Run Rd.<br>West Chester, PA 19382-8144<br>(305) 490-5700<br>chriskosachuk@gmail.com |
| Attorney for Appellant Creditors NLG, LLC, FICA Members Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of March 2023 a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will electronically serve a copy of the foregoing document on all parties of record.

Respectfully submitted,

_____

Juan Ramirez, Jr.
ADR Miami, LLC
1331 Brickell Bay Dr. #708
Miami, FL 33131
(305) 667-6609
jr@adrmiami.com

Attorney for Appellant Creditors NLG, LLC, FICA Members Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC

## SERVICE LIST

**_Served via CM/ECF or Email_**

All parties of record



**ORDERED in the Southern District of Florida on February 9, 2023.**

**Paul G. Hyman, Jr., Judge**
**United States Bankruptcy Court**

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                    Case No. 16-10389-PGH
                                                          Chapter 11
**LIZA HAZAN,**

     **Debtor.**

_____/

### ORDER GRANTING MOTION TO STRIKE

    This matter came before the Court upon the *Reorganized Discharged Liza Hazan Cross Motion to Strike Non-Creditors Non Interested [sic] Parties Disallowed Unauthorized Joint Motion to Reopen Case* [ECF No. 1396] (the "Motion to Strike") filed by Liza Hazan (the "Debtor"). The Debtor asks the Court to strike the *Joint Motion to Reopen Case, for Relief from Discharge Order and Final Decree, to Declare Confirmed Plan in Default, to Strike Confirmation Order, to Dismiss Case with Prejudice and Restore All Parties to Their Prepetition Status* [ECF No. 1394][1] (the "Motion to Reopen") filed by NLG, LLC; Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC (the

---

[1] The Court encourages all parties to strive for shorter motion titles.

"Association Members"); and Chris Kosachuk (together, the "Movants"). For the reasons stated below, the Movants lack standing. The Court will grant the Motion to Strike.

The Debtor filed a voluntary chapter 11 petition on January 11, 2016. The Court confirmed the Debtor's plan of reorganization on June 12, 2018. ECF No. 691. The Debtor received her discharge on December 7, 2018. ECF No. 766. The Court entered a Final Decree and closed this case on December 5, 2022. ECF No. 1376. Through the Motion to Reopen, the Movants ask the Court for a mulligan on seven years of litigation. The Debtor argues the Movants lack standing and requests the Court strike the Motion to Reopen.

11 U.S.C. § 1109(b) allows a "party in interest" to appear and be heard on any issue in a chapter 11 case. Section 1109(b) allows parties to participate in chapter 11 cases if the parties have a legal or pecuniary interest in the outcome of the case. *In re James Wilson Assocs.*, 965 F.2d 160, 169 (2d Cir. 1992). An entity's equity holders do not have an interest sufficient to support standing. *See In re Refco, Inc.*, 505 F.3d 109 (2d Cir. 2007). Under Florida law, the members of a homeowner's association generally cannot bring claims on behalf of the association. *See Collado v. Baroukh*, 226 So. 3d 924 (Fla. 4th DCA 2017).

Mr. Kosachuk and the Association Members did not file proofs of claim in this case. NLG filed a proof of claim, but the Court disallowed that claim. Adv. Pro. No. 16-01439-AJC, ECF No. 238. NLG appealed, the District Court dismissed the appeal, and the Eleventh Circuit affirmed the District Court's dismissal. ECF Nos. 386, 410. NLG and Mr. Kosachuk litigated, lost, and now whine for a redo. However, neither Mr. Kosachuk nor NLG have any pecuniary interest in this case. The Court has previously stated that Mr. Kosachuk lacks standing. ECF No. 1106. NLG also lacks standing. Adv. Pro. No. 18-01492-AJC, ECF No. 35.

The Association Members claim injury on the theory that the Debtor owes money to the Fisher Island Condominium Association, the Debtor has not paid the Association, and the Association Members are left holding the bag. However, the Association Members cannot

assert claims on behalf of the Association under Florida law. They are not the party with a direct pecuniary interest in the bankruptcy. They have no standing in this case.

The Movants lack standing to appear in this case. The Motion to Reopen makes this obvious. In the Motion to Reopen, the Movants complain about injuries solely to other parties. The Motion to Reopen appears to be filed solely for the improper purpose of harassing the Debtor. Revocation of discharge requires an adversary proceeding. NLG knows this because NLG filed a complaint to revoke the Debtor's discharge on December 18, 2018. Adv. Pro. No. 18-01492-AJC. The Court dismissed that adversary proceeding. Adv. Pro. No. 18-01492-AJC, ECF No. 35. That dismissal order notes that Mr. Kosachuk and NLG lack standing. Other Courts have also explained this to NLG and Mr. Kosachuk. *See, e.g.,* ECF Nos. 1331, 1397. No good faith basis exists for the Movants to have filed the Motion to Reopen.

For the foregoing reasons, it is ORDERED and ADJUDGED that the Motion to Strike [ECF No. 1396] is GRANTED and the Motion to Reopen [ECF No. 1394] is hereby STRICKEN.

### ###

Copy to:
Joel M. Aresty, Esq.

*Joel M. Aresty, Esq. is directed to serve a copy of this order on all appropriate parties and shall file a certificate of service with the Court.*



**ORDERED in the Southern District of Florida on March 3, 2023.**

Paul G. Hyman, Jr., Judge
United States Bankruptcy Court

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:                                                  **Case No. 16-10389-PGH**
                                                        **Chapter 11**

**LIZA HAZAN,**

      **Debtor.**

_____/

### ORDER DENYING MOTION TO RECONSIDER

      This matter came before the Court upon the *Joint Motion for Rehearing and Relief from Order Granting Motion to Strike* [ECF No. 1402] (the "Motion for Rehearing") filed by NLG, LLC; Roberto Viñas, Marta Yee, Via Mia North America, LLC and 2215 Fisher Island Dr. LLC (the "Association Members"); and Chris Kosachuk (together, the "Movants"). Liza Hazan (the "Debtor") filed a Response [ECF No. 1403] and the Movants filed a Reply [ECF No. 1404]. The Movants request the Court vacate the *Order Granting Motion to Strike* [ECF No. 1400] (the "Order Striking") under Rules 59 and 60 of the Federal Rules of Civil Procedure, made applicable by Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure. The Movants do not cite to particular provision of Rules 59 and 60 but generally argue the Court made errors of fact and law in the Order Striking. For the reasons stated

below, the Court did not err in concluding the Movants lacked standing to file the Joint Motion to Reopen [ECF No. 1394][1].

Mr. Kosachuk never filed a proof of claim in this case. The Court disallowed NLG's proof of claim. Adv. Pro. No. 18-01439-AJC, ECF No. 238. A party must have a legal or pecuniary interest in the outcome of a chapter 11 case for that party to have standing to be heard in that case. *In re James Wilson Assocs.*, 965 F.2d 160, 169 (2d Cir. 1992). NLG claims the Court erred because NLG is the largest creditor in this case. This completely ignores the fact that the Court disallowed NLG's claim. NLG and Mr. Kosachuk lack standing. This Court and others have repeatedly explained this. ECF No. 1106, 1331, 1397; Adv. Pro No. 18-01492-AJC, ECF No. 35. NLG twice appealed the disallowance of its claim, and both the District Court and Eleventh Circuit affirmed this Court's ruling. Adv. Pro. No. 18-01439-AJC, ECF Nos. 386, 410. The orders ruling that NLG and Mr. Kosachuk lack standing are final and non-appealable. Accordingly, the Court did not err in the Order Striking when the Court concluded NLG and Mr. Kosachuk lack standing.

As to the Association Members, the Court welcomes the opportunity to clarify its earlier ruling. The Association Members take issue with this Court's citation to *Collado v. Baroukh*, 226 So. 3d 924 (Fla. 4th DCA 2017) for the proposition that members of a homeowners' association generally do not have standing to pursue claims owed to the association. The Court cited to *Collado* for how that case arose: the appellant in that case had filed a derivative suit. The Association Members have the option of filing a derivative action in Florida state court if they believe the Fisher Island Community Association ("FICA") has failed to pursue Ms. Hazan for unpaid assessments. In the Order Striking, the Court ruled

---

[1] The full title of ECF No. 1394 is *Joint Motion to Reopen Case, for Relief from Discharge Order and Final Decree, to Declare Confirmed Plan in Default, to Strike Confirmation Order, to Dismiss Case with Prejudice and Restore All Parties to Their Prepetition Status.*

that the Association Members lack standing in this bankruptcy case, not that the Association Members lack standing generally to pursue any claims they may have against Ms. Hazan.

The Association Members also argue this Court erred under the reasoning of *Rogers & Ford Constr. Corp. v. Carlandia Corp.*, 626 So. 2d 1350 (Fla. 1993). That case holds that members of an association, in addition to the association, can sue to enforce restrictive covenants. The Court's ruling does not conflict. The Order Striking does not rule that the Association Members have no claim against Ms. Hazan in an appropriate forum. The Order Striking rules they do not have standing in this bankruptcy case. *Rogers & Ford* supports the possibility that the Association Members have a claim against Ms. Hazan, but the Association Members have not filed a proof of claim in this case. They have no standing here.

FICA filed a proof of claim. However, pursuant to a settlement between FICA and Ms. Hazan, "The Debtor hereby modifies her Fourth Amended Plan … to remove any language concerning payment to FICA and to provide that all issues concerning FICA shall be resolved in the Circuit Court for Miami-Dade County." ECF No. 658. The order approving that settlement is final and non-appealable. ECF No. 666. The Association Members claim injury because Ms. Hazan has failed to pay FICA. FICA and Ms. Hazan agreed to litigate those issues elsewhere. The Association Members do not have standing in this case to complain about non-payment of a claim that should have occurred outside of this case and Ms. Hazan's plan. They may seek relief elsewhere.

The Movants lack standing. The Court did not err in the Order Striking. If the Movants believe they have suffered an injury due to Ms. Hazan defaulting on her confirmed plan, they can pursue those claims in an appropriate forum. This is not the appropriate forum.

The District Court recently described Mr. Kosachuk as a "frequent filer who has repeatedly, and over the course of several years, attempted to insert himself in the

bankruptcy proceedings involving Ms. Hazan. Those attempts have been repeatedly denied. Ultimately, sanctions were entered against Mr. Kosachuk for his violation of numerous orders entered by Judge Cristol." ECF No. 1397. The Motion to Reopen and Motion for Rehearing are merely the Movants' latest effort to insert themselves in this case without any basis in fact and law. This is nothing more than an attempt to circumvent this Court's previous orders disallowing NLG's claim and approving the FICA settlement.[2]

For the foregoing reasons, the Motion for Rehearing [ECF No. 1402] is DENIED.

### ###

Copy to:
Juan Ramirez, Jr., Esq.

*Juan Ramirez, Jr., Esq. is directed to serve a copy of this order on all appropriate parties and shall file a certificate of service with the Court.*

---

[2] The Movants also claimed the Court concluded that Ms. Hazan left them "holding the bag." This mischaracterizes the Order Striking. The beginning of that sentence is "The Association Members claim." The Court clearly did not make a conclusion when it summarized the Movants' argument.

Page 1

1          UNITED STATES BANKRUPTCY COURT
2            SOUTHERN DISTRICT OF FLORIDA

3                          Case No.:  16-10389-AJC
                           Chapter 11
4
5   In Re:

6   LIZA HAZAN,

7        Debtor.
_____/
8

9

10

11                    ECF # 1255

12               November 8, 2022

13

14

15          The above-entitled cause came on for a

16   telephonic hearing before the HONORABLE

17   A. JAY CRISTOL, one of the Judges of the UNITED

18   STATES BANKRUPTCY COURT, in and for the SOUTHERN

19   DISTRICT OF FLORIDA, on Tuesday, November 8, 2022,

20   commencing at or about 3:30 p.m., and the following

21   proceedings were had:

22

23

24          Transcribed from a digital recording by:
              Helayne Wills, Court Reporter
25

Page 2

1   APPEARANCES VIA COURTSOLUTIONS:

2

          JOEL M. ARESTY, P.A., by
3         JOEL M. ARESTY, ESQ.,
          on behalf of the Debtor

4

5         HABER LAW, P.A., by
          REBECCA CASAMAYOR, ESQ.,
6         on behalf of Valencia Estates

7

          OFFICE OF THE UNITED STATES TRUSTEE, by
8         STEVEN D. SCHNEIDERMAN, ESQ.,
          on behalf of the U.S. Trustee

9

10        FOX ROTHSCHILD, by
          HEATHER L. RIES, ESQ.,
11        JESSE M. HARRIS, ESQ.,
          on behalf of Alfred Guiliano, Chapter 7 Trustee
12        in Delaware

13

          CHRIS KOSACHUK
14        Pro Se

15

          ALSO PRESENT VIA COURTSOLUTIONS
16        ECRO - Electronic Court Reporting Operator
          LIZA HAZAN - Listen Only

17

18

19

20

21

22

23

24

25

1           ECRO:  The next matter, Your Honor, is

2    Case Number 16-10389.  That's Liza Hazan.

3           I have Mr. Joel Aresty on the line.  If

4    you can state an appearance, sir.

5           MR. ARESTY:  Yes.  Good afternoon, Your

6    Honor.  Joel Aresty, A-R-E-S-T-Y, representing

7    Ms. Hazan.  And she is listening.

8           THE COURT:  Very well.  Anyone else

9    appearing?

10           ECRO:  Yes.  I have Jesse Harris on the

11    line.  If you can state an appearance, please.

12           MR. HARRIS:  Good afternoon, Your Honor.

13    Jesse Harris, H-A-R-R-I-S, on behalf of the Chapter

14    7 Trustee for NLG, LLC, the bankruptcy Trustee in

15    the Delaware case.

16           ECRO:  Thank you.

17           I have Heather Ries on the line.  If you

18    can state your appearance, please.

19           MS. RIES:  Good afternoon.  Heather Ries,

20    R-I-E-S, also on behalf of the Chapter 7 Trustee in

21    the NLG Delaware bankruptcy case.

22           ECRO:  Thank you.

23           I have Chris Kosachuk on the line.  If you

24    can state your appearance, sir.

25           MR. KOSACHUK:  Chris Kosachuk,

Page 4

1    K-O-S-A-C-H-U-K, on behalf of myself.

2              ECRO:  Thank you.

3              I have Rebecca Casamayor on the line.  If

4    you can state an appearance, please.

5              MS. CASAMAYOR:  Good afternoon.  Rebecca

6    Casamayor, C-A-S-A-M-A-Y-O-R, on behalf of Valencia

7    Estates.

8              ECRO:  Thank you.

9              I also have Mr. Steve Schneiderman on the

10   line.  If you can state an appearance, sir.

11             MR. SCHNEIDERMAN:  Good afternoon, Your

12   Honor.  Steven Schneiderman for the U.S. Trustee,

13   S-C-H-N-E-I-D-E-R-M-A-N.

14             THE COURT:  Very well.  Mr. Aresty, Court

15   Paper 1255, your emergency motion.  Tell us about

16   it.

17             MR. ARESTY:  Judge, if you recall, you

18   entered an order on November 1st, Docket Entry 1349,

19   on this motion, and continued the matter to a

20   hearing today.  In that order the Court made a

21   number of specific findings, including that Rule 70

22   would apply in this case, and making very specific

23   findings with regard to the title of the property

24   under Rule 70, which if the Court recalls, contains

25   title of the Court in situations like this to accept

1    titles to real estate.

2              In addition, Judge, you set over for today

3    the following issues:  You said that in today's

4    hearing the Court will determine the status of

5    Mr. Kosachuk's compliance with the Court's orders,

6    and whether the sanction has encouraged the

7    resolution of this matter, or whether the Court will

8    need to increase the sanction or consider

9    incarceration, and the Court will also consider the

10   U.S. Trustee's nomination of a disinterested person

11   to act in accordance with Rule 70.

12             Since that time, Judge, additionally, you

13   entered a judgment on November 7th on the previous

14   orders in the amount of $3,800.  That judgment has

15   been entered as a judgment on the docket.

16             So for today there's a couple of things

17   left over.  First of all, in accordance with the

18   Court's order setting a hearing for today, I would

19   report that the status of Mr. Kosachuk's compliance

20   with the Court orders remains zero.  Despite the

21   Court's encouragement of resolution and threats to

22   increase the sanction or consider incarceration,

23   Mr. Kosachuk has shown no interest in, or any

24   remorse or any mitigation of the (unintelligible)

25   and they remain for today's hearing.

1          What we would suggest is the following,

2    Judge:  Because as the Court also knows, we have an

3    application for final decree, which we believe is

4    overdue, which would to some extent allow us to exit

5    this case with the Court reserving jurisdiction over

6    the Kosachuk matters in accordance with its prior

7    orders.

8          We would ask the Court to raise the

9    sanction to $1,000 a day.  It's costing the debtor a

10   fortune in attorney's fees and lost opportunity

11   costs for financing, et cetera.  We think $100 a day

12   was overly generous as a sanction by the Court.

13   We'd ask the Court today to raise that to at least

14   $1,000 a day, or more, to really create a deterrent,

15   because the $100 a day obviously was not viewed

16   seriously enough by Mr. Kosachuk.

17         With regard to the Rule 70, we discussed

18   this matter with the U.S. Trustee, and appointing

19   someone raises as many issues as it may solve.

20   Officially, in view of the already significant Rule

21   70 decrees that you have in -- already in Court

22   Paper 1349, which amount to really a quieting of the

23   title of Ms. Hazan's homestead and her, as against

24   any claims by Mr. Kosachuk or any of his

25   representatives.  However, we are going to, as the

1    Court has already ordered, consider that also this

2    morning as part of the first matter on the calendar.

3              Thank you.

4              THE COURT:  Mr. United States Trustee, do

5    you have any input for this matter?

6              MR. SCHNEIDERMAN:  Your Honor, thank you

7    very much.

8              Your Honor, following up on Mr. Aresty's

9    comments, since Ms. Hazan has already received her

10   discharge and this case has already -- the plan has

11   been confirmed, and this is a post-confirmation

12   matter, Your Honor, the U.S. Trustee program really

13   doesn't have jurisdiction here to nominate anyone.

14   We would recommend that the debtor's counsel

15   nominate a responsible party to handle the matters

16   outlined in your order to remove the lis pendens.

17             THE COURT:  Thank you, Mr. Schneiderman.

18             All right.  Who else wishes to be heard?

19   No one else wishes to be heard?

20             MR. KOSACHUK:  Your Honor, Chris Kosachuk.

21             THE COURT:  Mr. Kosachuk, you have no

22   standing in this matter, and therefore, you may not

23   be heard.

24             Mr. Aresty, what's the status of the loan

25   application?  The Court is primarily concerned here

1    that there is a simple consummation of a loan which

2    will pay all the creditors in full in this case, and

3    is being held up by the actions of a party that is

4    not -- has no interest in this case, but who seems

5    to think that they can go on jerking all the other

6    parties along and not facing reality.  Ultimately

7    there will come some reality that may not be as

8    pleasant as others.

9              Nevertheless, what's the status of the

10   loan application?  Is it still there?

11             MR. ARESTY:  Judge, the application is

12   still there, but what we would ask the Court to do

13   is what we've got for today.  You've already entered

14   the Rule 70 orders, which are going to be taken to

15   title companies for vetting.  We would ask that the

16   Court keep jurisdiction over that by today's order,

17   also keep jurisdiction over possible -- the U.S.

18   Trustee's suggestion that Joel Aresty choose

19   somebody to act, if necessary.

20             I don't know that it's necessary yet, but

21   it may become necessary if the general Rule 70

22   decrees that are already in your order are not

23   enough for the title company, but what we would ask

24   the Court to do is to enter the final decree, which

25   we believe will help us to get that loan, or help us

Page 9

1    to sell the property.  Obviously, the case would be

2    removed from this Court as an active bankruptcy, and

3    that is creating as much of a problem as it is a

4    solution with regard to financing or sale.

5            So we would ask the Court in its

6    (unintelligible) release that from the first motion,

7    to reserve jurisdiction over the Rule 70 matters,

8    and under the contempt matters with Mr. Kosachuk.

9    We do encourage you to increase the sanction, and we

10   do encourage you to reconsider incarceration,

11   because the Court must be viewed as being able to

12   enforce its own orders.  You certainly have the

13   inherent and statutory power to do that for civil

14   contempt and under Rule 70.

15           Judge, we would ask the Court to, as the

16   second part of our motions today, to close the case

17   and solely administer.  We think that rule --

18   Section 350, 11 U.S.C. 350, requires the Court to

19   close the case, and language is mandatory in the

20   Code.  It says, "The Court shall close the case when

21   it's fully administered."

22           There's no appeals that have anything to

23   do with the substantive case.  It's just

24   Mr. Kosachuk's own appeal of his own personal

25   matters, and that certainly should not -- certainly

1  does not prevent full administration.  As a matter

2  of fact, if you read Rule 3022, which is the

3  bankruptcy rule on final decrease, it also says --

4  has mandatory language, that the Court shall enter a

5  final decree closing the case when it's fully

6  administered.

7           It also provides in the notes of the

8  advisory committee that a case should not be delayed

9  for final decree solely because either there's

10 payments that are due, or if there's other matters

11 that keep -- there's no reason to keep the case open

12 because of those.  Because the Court's jurisdiction

13 can be invoked in the future is not a good reason to

14 stop the final decree.

15           So we believe the best remedy is what

16 we've asked for, which is, you will keep

17 jurisdiction over the contempt, civil contempt, Rule

18 70 and Mr. Kosachuk's matters.  You will enter a

19 final decree closing the case and retaining

20 jurisdiction, as is needed.  And we think that will

21 help enhance us being able to accomplish everything

22 the Court is contemplating within the quickest

23 amount of time, and with the least amount of trouble

24 from the title companies.

25           THE COURT:  Thank you, Mr. Aresty.

(305) 358-8875

Page 11

1          Mr. United States Trustee, what is your

2   thought on entering a final decree, when we have a

3   number of entities who are entitled to be paid under

4   the plan, and who yet remain unpaid?

5          MR. SCHNEIDERMAN:  Your Honor, under the

6   facts and circumstances of this case, we have no

7   objection to the entry of the order in this case.

8   It was reopened.  I believe Mr. Aresty proffered

9   that the plan payments had been made.  I believe the

10  payment that remains outstanding is the payment to

11  the secured creditor, secured by the property that's

12  the subject of the refinancing.  And that party is

13  protected.

14          I believe that's the state of the

15  circumstances and (inaudible), Your Honor, we would

16  have no objection to the entry of a final decree.

17  Ms. Hazan has previously received her discharge, and

18  Your Honor's order stated that once the appeals were

19  completed, as Mr. Aresty has represented they have

20  been, the Court would enter the final decree.

21          That was the last remaining matter.  Those

22  substantive appeals, or I should say, those appeals

23  have now been resolved in the debtor's favor, and

24  there's no other appeals pending.  The only matters

25  that are pending are the orders regarding the civil

Page 12

```
 1   contempt matters that Mr. Aresty outlined.

 2              THE COURT:  Thank you, Mr. Schneiderman.

 3              Actually, I believe we have a mortgage and

 4   we have some homeowners association moneys that are

 5   due, all of which would be paid from the closing of

 6   the loan.  It makes me uneasy to think about

 7   entering a final decree when those matters are open

 8   and out there.

 9              Yes, sir, you were about -- someone was

10   about to say something.

11              MR. ARESTY:  This is Joel Aresty again,

12   Your Honor.

13              Judge, the best way to get them paid is to

14   stop giving Mr. Kosachuk a pulpit from which to

15   attack.  The only people that aren't paid have

16   secured credit.  They all have stay relief.  And

17   obviously, insofar as they are secured by the

18   homestead, they will get paid.

19              The plan provided for payment of all the

20   unsecured claims, and they kept those out.  And

21   since 2018, the case really, except for the appeals

22   and confirmation, which have all been cleared up,

23   and the Court has been upheld every step of the way

24   in all of the orders, in the adversaries and in the

25   substantive reorganization orders.
```

Page 13

1           There's no reason to keep the bankruptcy
2    case open.  The secured creditors are secured by
3    more equity cushion than I can even imagine in this
4    Fisher Island property.  They have all the state and
5    Federal law remedies outside of the Bankruptcy
6    Court.  So it's not like we're ignoring them.  We're
7    trying to facilitate a situation whereby Ms. Hazan
8    will be able to conduct her future business and this
9    refinancing or sale without interference.
10          Unfortunately -- really, a final decree is
11   the best way to handle it.  If this was a
12   pre-discharge case, Judge, we'd be able to invoke
13   things like 363(f), financing orders.  That's for
14   sales free and clear.  Those remedies exist for
15   debtors-in-possession and not for discharged
16   debtors.
17          We're thinking that your Rule 70 orders
18   have accomplished a lot, and we'd like to go back to
19   the title companies and everyone else, outside of
20   bankruptcy, because that gives title companies
21   pause, Judge, and with your Rule 70 orders in place.
22   We think that's the best way to pay all of the
23   secured creditors (unintelligible).  We share the
24   Court's desire, and we have what is our strategy to
25   be able to pay them.

1              Thank you.

2              MS. CASAMAYOR:  Your Honor --

3              THE COURT:  The attorney for the -- who's

4     speaking?

5              MS. CASAMAYOR:  This is Rebecca Casamayor

6     for Valencia Estates, the homeowners.  I don't know

7     if that's the order you asked about.

8              THE COURT:  Not yet, but eventually.

9              MS. CASAMAYOR:  Okay.

10             THE COURT:  What do you have?

11             MS. CASAMAYOR:  Well, Your Honor, I share

12    your concern and your uneasiness about entering a

13    final decree when there are outstanding amounts owed

14    and the plan is in default, in particular to

15    Valencia Estates, the homeowners association.

16    Because if the case is closed and that helps

17    Ms. Hazan get her refinancing and everyone is paid,

18    then great.

19             But my concern is, if the case is closed

20    and then the refinance never occurs to pay the

21    creditors, and there's no timeline or, you know,

22    ability to go back to the Court to ask for relief to

23    get this closed and get everyone paid, then we're

24    kind of left hanging.

25             I hear Mr. Aresty say that we have stay

1   relief and an equity cushion.  There may be an

2   equity cushion, but there's many, many creditors,

3   secured creditors, that were supposed to be paid

4   under the plan, that haven't been.  So if the case

5   is going to be closed and this refinance is actually

6   going to occur, then we wouldn't have an objection

7   to that, but I don't think there's any assurance

8   that it will actually occur if the case is closed.

9           For instance, I don't know if this idea

10  has been brought to the title company, if this is

11  something that they would accept if the Court were

12  to close the case.  Would this be sufficient?

13          If we could have verification on that,

14  then maybe it would make more sense, but to just say

15  we should close the case because we think that this

16  is what the title company would want to do the

17  refinance, it kind of leaves it to chance, which our

18  client has been waiting years and years to be paid

19  at this point.

20          THE COURT:  You mentioned there are a lot

21  of creditors besides your client, the homeowners and

22  the mortgage.

23          Who else is unpaid that would be paid out

24  of this financing?

25          MS. CASAMAYOR:  Well, I think Mr. Aresty

1   is probably better able to answer that.  I know

2   there's been filings by the IRS.  I know that there

3   is a mortgage.  There is also another neighborhood

4   association, the Fisher Island Community

5   Association, which I think is not being treated

6   under this plan, but also has probably close to --

7   several hundred thousand, if not close to a million

8   dollars due.  So Mr. Aresty (inaudible) provided for

9   in the refinance.

10           MR. ARESTY:  Yes, Judge.  I'd be happy to

11  help with that.

12           The Court has received documents in camera

13  with regard to the title, and including the Chase

14  mortgage, in which there is a substantial discount

15  being offered, Chase has stay relief and is

16  proceeding in the state court with a declaratory

17  action.  So Chase is certainly on the list, because

18  you can't clear title without paying the mortgages.

19           The IRS has some lien left.  A lot of it

20  has already disappeared by reason of their own

21  actions.  But they're on the list.  Fisher Island

22  got stay relief.  They went back to court and the

23  Court denied them relief of (unintelligible).  So

24  that's an interesting situation, but there's

25  actually zero amount owed today on that claim.  I

Page 17

1   suppose they could -- it could be said that they

2   have a statutory claim by reason of -- I guess

3   that's the (unintelligible) Company.

4          So, Judge, there are these secured

5   creditors.  All of them were contemplated back since

6   2018.  They were all being paid, some in the plan,

7   some payments fell behind.

8          There's no question that the COVID years

9   wreaked havoc on the real estate, hospitality

10  business that Ms. Hazan is engaged in personally.

11  And her level of business plummeted when all of

12  these hotels and restaurants were closed.  But she's

13  making her way back.  She has things on the horizon.

14         But in addition to that, Judge, we're not

15  talking about a 5 percent or 10 percent equity

16  cushion.  We're talking about a property that's

17  worth $20 million.  And the total claims are in the

18  9- or $10 million range.  So even though it seems

19  like a lot of money that's owed, it's almost a

20  100 percent equity cushion.  She has the best

21  brokers in town, The Jills, and Sothebys, both

22  retained on the case.

23         The title companies are very reluctant to

24  get involved in bankruptcy.  They don't understand

25  post-discharge bankruptcy.  They do understand Your

1    Honor's Rule 70 orders.  And they understand if

2    somebody is not in bankruptcy as opposed to somebody

3    who's in bankruptcy.

4              So we reiterate with regard to

5    Ms. Casamayor's client -- and they've been fully

6    patient.  They're in state court, and they're

7    arguing about things in state court, but they have

8    all of their state court rights already.  They have

9    complete stay relief.  They can, you know --

10   theoretically, they could foreclose on the unit,

11   take it back.  They have complete stay relief.

12             So I don't think that they're being

13   disadvantaged by a final decree in this case.  I

14   think they're being advantaged, because the

15   creditworthiness and the title worthiness of

16   Ms. Hazan, a debtor, with the Rule 70 and with the

17   final decree combination that we're asking the Court

18   to approve today.

19             And, Judge, again, there's no question the

20   case has been fully administered.  You know, every

21   Chapter 11 that comes down the road here, when they

22   make the first payment -- they don't finish the

23   payments, they make the first payment and they get

24   their final decree.  That is the status in 2018, and

25   Your Honor entered an order -- a transcript is filed

1   with the motion at Doc 1345.

2                October 24, 2022, you said you believe

3   it's appropriate to enter a final decree.  You said,

4   and I quote, "I think it's clear that that should be

5   entered."

6                So I think that that's past due.  I think

7   it's mandatory under the Code and the rule, and we

8   should go to the next step in this case.  And you'll

9   retain jurisdiction.  If someone needs to interrupt

10  the Court for any matter, they can address the

11  Court.

12               Thank you.

13               THE COURT:  Thank you, Mr. Aresty.

14               I was about to ask the attorneys

15  representing the Trustee in the northern bankruptcy,

16  did you have anything to add?

17               MR. HARRIS:  Good afternoon, Your Honor.

18  This is Jesse Harris on behalf of the Chapter 7

19  Trustee in the Delaware bankruptcy case.

20               Just by way of an update, we were able to

21  reach an agreement with Ms. Hazan in this case, and

22  we did file a 9019 motion with the Court in

23  Delaware, which is currently pending.  There was a

24  hearing on that, due to objections filed by

25  Mr. Kosachuk and NLG's former pre-petition counsel.

1    There was a contested hearing on that 9019 motion,

2    and we believe that a decision is forthcoming with

3    respect to that.

4              Part of that settlement agreement would

5    include releases with respect to claims that were

6    held by NLG, if any, against Ms. Hazan, to the

7    extent that the proposed settlement sum is

8    ultimately paid to the Trustee within one year.

9              So we're kind of in a holding pattern

10   right now waiting for a decision on that.  We're

11   hopeful that we will get that approved, but it is

12   subject to objection by both Mr. Kosachuk and NLG's

13   pre-petition counsel.

14             THE COURT:  Thank you, sir.

15             Is there anyone entitled to be heard that

16   has not yet been heard?

17             MR. SCHNEIDERMAN:  Your Honor, Steven

18   Schneiderman for the U.S. Trustee.

19             THE COURT:  Yes, Mr. Schneiderman.

20             MR. SCHNEIDERMAN:  I would just, in

21   referencing the order that I mentioned earlier,

22   which was at Docket Entry 766, where the discharge

23   was granted, the final report was approved already,

24   Your Honor.

25             As you recall, I inherited this case when

1   Ms. Armengol left, and then Ms. Cortez-Rodriguez

2   left, and now I am assigned to it.  But in reviewing

3   the file I see this order Your Honor entered, which

4   was an order entered in December of 2018 at Docket

5   Entry 766, discharging the debtor, approving the

6   final report.

7           Paragraph 7 says, "The case shall remain

8   open pending the final disposition of all motions

9   herein and the outstanding appeals, after which the

10  Court will direct the Clerk of Court to enter a

11  final decree closing the case."

12          THE COURT:  Where does that leave us?  Am

13  I in a position to enter a final decree or does that

14  order prevent me from doing so?

15          MR. ARESTY:  Well, Judge, that order is

16  the blueprint to enter the final decree.

17          This is Joel Aresty, Your Honor.

18          The Court is absolutely in a procedural

19  position to enter the final decree, and we think --

20  and the U.S. Trustee doesn't object.  Really, the

21  only people objecting are secured creditors who may

22  not appreciate the fact that the creditworthiness

23  and the title worthiness of the estate are enhanced

24  by the entry of that final decree and the Rule 70

25  order.

1          So we encourage you to enter the final

2    decree.  We think it's absolutely mandatory, and the

3    best thing for everybody now.

4          THE COURT:  Thank you.

5          Very well.  The Court is very reluctant to

6    use incarceration as a tool to encourage someone to

7    follow a court order, but there is an end to the

8    line, and the end of that line is somewhere around

9    the 1st of December.

10         What I will do is enter these orders

11   today:  One, Mr. Aresty, based on what we've heard

12   on the record today, I will grant the motion to

13   enter the final decree and you may prepare it.

14         Two, we will enter a further sanction

15   order against Mr. Kosachuk, this time in the amount

16   of $800 a day, to encourage him to carry out the

17   instructions that he's already received and ignored.

18   As I say, I'm really very reluctant to use the power

19   of the court in civil contempt to incarcerate

20   someone that -- I guess some people have the ability

21   to bring me to the end of my concern on that issue.

22   So it's those two matters, the additional contempt

23   sanction, the final decree.

24         The U.S. Trustee suggested that you might

25   wish to nominate someone to deal with the matters

Page 23

1    concerning the title company, although Rule 70 seems

2    to do it.  That doesn't mean that because it seems

3    to do it, that we can compel the title company to

4    accept that.

5              Anything further, Mr. Aresty?

6              MR. ARESTY:  Judge we would just ask the

7    Court to retain jurisdiction on that, because I

8    agree with the Court.  It may not be necessary, and

9    if it becomes necessary we'll come back and we'll

10   suggest -- I feel sorry for whoever that is.  We

11   certainly --

12             THE COURT:  It doesn't mean they're going

13   to be appointed.  According to the simple reading of

14   Rule 70, it seems like the order of this Court is

15   sufficient to accomplish that purpose.

16             MR. ARESTY:  Yes.

17             THE COURT:  But if that doesn't satisfy

18   the title company then we have a further matter.  So

19   we certainly will retain jurisdiction on everything,

20   so that we can hopefully bring this matter to a

21   happy ending and a successful conclusion for all

22   parties.

23             MR. ARESTY:  I'm not sure I understood

24   your order, Judge, on the contempt.  What happens

25   December 1st?  Is he automatically --

1          THE COURT:  (Inaudible) back in and

2     determine whether the gentleman has been induced to

3     cooperate, and bring this matter to a conclusion.

4     If he has, that's a happy ending and everyone should

5     live happily ever after.  If he has not, then the

6     Court will enter a final judgment against him in the

7     amount that has accrued over that period of time.

8          We'll consider entering a confinement

9     order, which as I said, the Court is very negatively

10    disposed to do, but sometimes I guess you get to a

11    point where you have no other choice.

12          MR. ARESTY:  Thank you, Your Honor.

13          THE COURT:  Anything else, Mr. Aresty?

14          MR. ARESTY:  No, Judge.  Thank you.

15          MR. SCHNEIDERMAN:  Your Honor, Steven

16    Schneiderman for the U.S. Trustee.

17          In the order Mr. Aresty is preparing, if

18    he could include a sentence relieving the U.S.

19    Trustee of the obligation to nominate somebody under

20    your Rule 7070 under your prior order.  We

21    appreciate that provision to be included in the

22    order.

23          MR. ARESTY:  No problem.

24          THE COURT:  It's appropriate.  You can

25    state in the order that the U.S. Trustee doesn't

Page 25

1    believe it has jurisdiction to carry out that

2    instruction, and therefore, it's eliminated from the

3    order.

4             Anything else, Mr. Schneiderman?

5             MR. SCHNEIDERMAN:  No, Your Honor.  Thank

6    you for that consideration.

7             THE COURT:  Anything else, Mr. Aresty?

8             MR. ARESTY:  No, Judge.  Thank you very

9    much, as always.

10            THE COURT:  Okay.  I wish everyone a safe

11   and secure and healthy period of time between now

12   and around December the 1st.

13            Susan, what do you have as a date around

14   December the 1st?

15            ECRO:  Your Honor, we actually do have

16   available December 1st in the afternoon.  If not,

17   then the next available date will be on

18   December 6th.

19            THE COURT:  Let's go for the afternoon of

20   December 1.

21            At what time, 2 o'clock?

22            ECRO:  2 o'clock, Your Honor.

23            THE COURT:  Okay.  You can use that date,

24   Mr. Aresty.

25            MR. ARESTY:  Yes.  Thank you very much,

1    Judge.

2            THE COURT:  Thank you all, and we'll

3    adjourn this hearing.

4            (Thereupon, the hearing was concluded.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

CERTIFICATION

1

2

3 STATE OF FLORIDA:

4 COUNTY  OF  DADE:

5

6              I, HELAYNE F. WILLS, Shorthand

7 Reporter and Notary Public in and for the State of

8 Florida at Large, do hereby certify that the

9 foregoing proceedings were taken by electronic

10 recording at the date and place as stated in the

11 caption hereto on Page 1; that the foregoing

12 computer-aided transcription is a true record of my

13 stenographic notes taken from said electronic

14 recording.

15              WITNESS my hand this 17th day of

16 November, 2022.

17

18

19              _____

                        HELAYNE F. WILLS
20              Court Reporter and Notary Public
               In and For the State of Florida at Large
21             Commission No:  HH157788  Expires 8/2/2025

22

23

24

25