

**ORDERED in the Southern District of Florida on October 31, 2017.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

In re:

| | |
|---|---|
| LIZA HAZAN, | CASE NO. 16-10389-BKC-AJC |
| a/k/a ELIZABETH HAZAN | |
| Debtor. | CHAPTER 11 |

_____/

| | |
|---|---|
| LIZA HAZAN a/k/a ELIZABETH HAZAN | |
| and SELECTIVE ADVISORS GROUP, LLC, | ADV. NO. 16-1439-BKC-AJC-A |
| Plaintiffs, | |
| vs. | |
| NLG, LLC | |
| Defendant. | |

_____/

### FINAL JUDGMENT ON COUNTS I, II AND III OF PLAINTIFFS' THIRD AMENDED COMPLAINT DETERMINING VALIDITY, PRIORITY AND EXTENT OF LIENS AND SETTING TRIAL ON COUNTS IV THROUGH IX

**THIS CAUSE** came before the Court for trial on July 13, 2017 at 10:00 a.m., upon

Plaintiffs, Selective Advisors Group, LLC ("Selective") and Liza Hazan a/k/a Elizabeth Hazan's Third Amended Complaint and Defendant, NLG, LLC's Counterclaim.  Selective commenced this Adversary Proceeding against NLG, LLC ("NLG") on August 21, 2016, seeking a determination of the nature and extent of its claimed lien, if any. Debtor joined the adversary proceeding against NLG on October 21, 2016. The Third Amended Complaint was deemed the operative Complaint by Order entered January 23, 2017, and NLG filed an Amended Answer and Counterclaim on May 17, 2017.  In its Counterclaim, NLG also seeks a determination of the nature and extent of its claimed lien and that its late filed claim be allowed as a timely filed claim.  Plaintiffs seek a determination that NLG has no remaining claim against this Debtor and no standing to participate in this case.

The Court having reviewed the file, the documentary evidence and exhibits, having heard the testimony of witnesses and argument of counsel, finds and concludes as follows.

**A. <u>Background</u>**

Ms. Hazan is the owner of her homestead residence located at 6913 Valencia Drive, Fisher Island, Florida (the "Property").  She purchased the Property on March 7, 2007 from NLG.  Chris Kosachuk is the manager and representative of NLG. For nearly a decade, Kosachuk and NLG have litigated with Debtor in multiple courts and in several jurisdictions.  The various courts have entered final orders setting forth the rights and obligations of Ms. Hazan, NLG, and Selective.

All interested parties to the various controversies are now before this Court and subject to its jurisdiction.  This Court is not an appellate court for any of the other courts; thus, full faith and credit must be given to all of the final judgments and orders entered in the other courts as those judgments have become final and not subject to appeal.

There have been claims or assertions that some of these other court decisions are erroneous.

However, when the decisions or judgments of those courts became final and not subject to further appeal, those decisions or judgments became the law of the respective case and not subject to further review by this Court. While arguments have been made to accept one or more of the prior judgments and ignore others, those arguments are not persuasive and this Court will attempt to determine the rights of the parties by giving full faith and credit to all of the final orders and judgments.

## State Court Proceedings

NLG's claim against Debtor arises from a promissory note (the "Note") (Exhibit 1) and mortgage (the "Mortgage") (Exhibit 2) on the Property, recorded in April 2007 in the original amount of $1,275,000.00.  In June 2007, NLG sued Debtor for an alleged breach of the Note, in Miami-Dade Circuit Court, Case No. 07-19532 CA 11 (Exhibit 3). On April 28, 2008, Circuit Judge Robert N. Scola Jr. entered a Default Final Judgment on the Note (the "Scola Judgment") against Ms. Hazan in the amount of $1,618,071.29 with 11% interest per annum (Exhibit 4).  NLG moved to domesticate the Scola Judgment in New York and litigation followed in the New York Supreme Court.

In December 2011, NLG filed a second lawsuit, Case No. 11-42770 CA (01), in Miami–Dade Circuit Court seeking to foreclose on the Mortgage (Exhibit 5). On February 8, 2013, the trial court judge, Judge Spencer Eig, ruled that NLG had made an election of remedies by first suing on the alleged breach of the Note, and obtaining a judgment thereon.  As such, Judge Eig precluded NLG from foreclosing on the Mortgage (Exhibit 6).  NLG appealed that decision to the Third District Court of Appeal.

On April 30, 2014, while the Eig Order was on appeal to the Third District Court of Appeal, Plaintiff Selective acquired a 2012 New York judgment against NLG [and in favor of 9197-5904 Quebec, Inc.] and recorded the foreign judgment in Miami-Dade County, Florida in Case No.14-10475 CA (10) assigned to Circuit Court Judge Peter Lopez (the "Quebec Judgment").  NLG filed a

Motion to Quash the recording of the New York judgment against it in Florida.  However, after NLG failed to post a bond as ordered, Judge Lopez denied NLG's motion to quash on June 16, 2014, finding that Plaintiff Selective has the right to enforce and collect on their foreign judgment, the $5,000,225.00 Quebec Judgment.

Thereafter, on July 2, 2014, Selective, as owner of the then-domesticated foreign judgment, the Quebec Judgment, brought proceedings supplementary in Case No.14-10475 CA (10) specifically to seize and attach NLG's judgment against Hazan (the Scola Judgment) for the purpose of partially satisfying the Quebec Judgment. Circuit Judge Lopez heard the Proceedings Supplementary Motion on August 12, 2014 and August 15, 2014, and entered an Order on August 20, 2014, judicially assigning to Selective the Scola Judgment against Debtor (the "Lopez Assignment Order"). The Lopez Assignment Order states in pertinent part:

> 1.    The Court orders that the Hazan Final Judgment held by NLG, LLC, against Elizabeth Hazan, ("Hazan Final Judgment") and all of NLG, LLC's rights, claims and benefits held against Elizabeth Hazan are hereby judicially assigned to the Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC, a Delaware Limited Liability Company.
>
> 2.    Plaintiff-Assignee, SELECTIVE ADVISORS GROUP, LLC shall stand in the shoes of NLG, LLC with respect to all claims, rights, and benefits held by NLG, LLC so as to entitle it to recover all proceeds attributable to said judgment against additional Defendant, Elizabeth Hazan, with NLG, LLC receiving credit for all sums so received.
>
> 3.    Plaintiff, SELECTIVE ADVISORS GROUP, LLC shall give a credit to Defendant NLG, LLC in the sum of $2,746,953.34 which amount includes principal and interest through August 31, 2014 at the 11% judgment amount **without prejudice to Defendant establishing at further hearing why the credited amount should be greater**.

Exhibit 8 (emphasis added).

At trial, NLG argued that the Scola Judgment was the subject of an appeal at the time of the assignment, and therefore could not have been judicially assigned by Judge Lopez.  However, Judge

Lopez actually addressed and dismissed that argument when he denied NLG's motion to reconsider the Order of assignment of the Scola Judgment to Selective:

> Okay, so I assigned your interest in it to them (Selective), which had nothing to do with what's going on up on appeal. . . .
>
> That judgment that I assigned to them (Selective) or that interest in that judgment was up on appeal.  I didn't affect the validity of what's up on appeal. I just said, if you win or lose, whatever happens, now, these people own it instead of you. The Third came back and said, too bad, you get to foreclose, they now own that judgment or note if that's what merged into it, they (Selective) get to go and foreclose.

Exhibit 22, Tr page 24 lines 3-5; Tr page 26 Lines 3-12.  Judge Lopez's Orders are final.

**Satisfaction and Payment of the Scola Judgment**

On August 20 and 21, 2014, Selective filed a satisfaction of the Scola Judgment and the Mortgage (Exhibit 9).  Selective gave credit to NLG towards the Quebec Judgment. According to the Electronic Judgment Lien Amendment Statement filed on September 5, 2014 with the Florida Secretary of State (Exhibit 14), it appears NLG was given credit in the amount of the Scola Judgment, or $1,618,071.29, without credit for interest thereon.   The Lopez Assignment Order specifically determined that $2,746,953.34 was the correct sum to be credited to NLG for the Scola Judgment, as that amount includes interest from April 28, 2008 through August 31, 2014. **The Lopez Assignment Order also left open the possibility of an increase in that amount, should same be proven at a further hearing**.

The Lopez Assignment Order was never vacated or set aside, and the decision remains the law of the case.

In the New York lawsuit by NLG against the Debtor, Selective proceeded to intervene.  Judge Barbara Jaffe of the New York Supreme Court entered a Decision and Order on October 30, 2014 recognizing Selective's assignment of the Scola Judgment pursuant to the Lopez Assignment Order. In that case, the court ordered the caption of the New York case be changed to reflect the substitution

of Selective Advisors Group, LLC as the proper party, in place of NLG, LLC (Exhibit 18). The court also directed the Clerk to accept for filing the Order of assignment "judicially assigning the underlying Florida judgment from plaintiff to Selective", and strike all NLG's judgments of record against Ms. Hazan. On November 13, 2014, Judge Jaffe dismissed NLG's lawsuit against Elizabeth Hazan, ruling as follows:

> Given the satisfaction of Judgment in the underlying action under index #101288/2013, as reflected in my Decision and Order dated October 30, 2014, defendant's motion to dismiss the proceeding is granted and the proceeding is dismissed. The clerk is directed to enter judgment accordingly.

Exhibit 19.

**The Third District Court of Appeal Opinion and the Gordo Foreclosure Judgment**

On September 3, 2014, the Third District Court of Appeal reversed Judge Eig on the issue of election of remedies and held that foreclosure could proceed on the Mortgage (Exhibit 12). Circuit Judge Monica Gordo, by that time having replaced Judge Eig in the division, then entered a foreclosure judgment in favor of NLG, despite the judicial assignment of NLG's interests in the Note and Mortgage to Selective (the "Gordo Foreclosure Judgment"). Notwithstanding the various court rulings recognizing the judicial assignment of the Scola Judgment to Selective, Judge Gordo entered a Final Judgment of Foreclosure in favor of NLG on December 4, 2015 (Exhibit 21).  The Gordo Foreclosure Judgment determined NLG, LLC was entitled to the grand total sum of $4,876,654.29 and set a sale for January 12, 2016.

However, on January 11, 2016, the Debtor filed for Chapter 11 bankruptcy protection and the sale was stayed.

**B.  Legal Analysis**

Plaintiffs contend that Judge Lopez judicially assigned to Selective the Scola Judgment, together with all the rights and claims thereunder, which includes the right to enforce the Mortgage,

leaving NLG with no enforceable mortgage, lien, or claim in this bankruptcy case.  NLG takes the position that, notwithstanding the judicial assignment of the Scola Judgment on the Note, NLG retained the right to foreclose on the Mortgage. NLG asks the Court to limit its review to only one out of the many rulings entered in the ten-year history of litigation between the parties.  It asks the Court to look only to the Gordo Foreclosure Judgment, contending that Judge Gordo resolved all issues in NLG's favor.

After reviewing the history of the proceedings between the parties, it is evident the Gordo Foreclosure Judgment does not resolve all issues in NLG's favor. The Scola Judgment, the Lopez Assignment Order, and the Gordo Foreclosure Judgment all control this Court's decision going forward.  The Scola Judgment established Debtor's liability to NLG on the Note.  The Scola Judgment, and consequently the Mortgage, were assigned to Selective by the Lopez Assignment Order, and were thereafter satisfied.  Finally, by the Gordo Foreclosure Judgment, NLG, LLC established its entitlement to a greater credit for the judicial assignment of the Note and Mortgage. Moreover, any interest NLG may have had in the Mortgage by virtue of the Gordo Foreclosure Judgment is/was extinguished upon redemption by the Debtor and satisfaction.

The Scola Judgment awarded NLG, LLC $1,618,071.29 against the Debtor for Debtor's breach of the Note.

In 2014, after entry of the Scola Judgment, Selective acquired a $5,000,225 judgment against NLG, LLC, the Quebec Judgment.  (Although NLG argued that the Quebec Judgment was erroneous or invalid, it is a final judgment not subject to appeal.)  Selective domesticated the Quebec Judgment in state court, before Judge Lopez, and the order domesticating the judgment has become final and non-appealable.  Thereafter, the Lopez Assignment Order was entered, judicially assigning the Scola Judgment to Selective [in partial satisfaction of the Quebec

Judgment] and determining the value of the Scola Judgment to be $2,746,953.34, inclusive of interest. The Lopez Assignment Order judicially assigns the Scola Judgment to Selective, together with all the rights and claims thereunder.

Because ownership of the Mortgage follows the Note, in the absence of a contrary intention, Selective, who owns and holds the Note, therefore has standing to foreclose the Mortgage.

> It has frequently been held that a mortgage is but an incident to the debt, the payments of which it secures, and its ownership follows the assignment of the debt. If the note or other debt secured by the mortgage be transferred without any formal assignment of the mortgage, or even a delivery of it, the mortgage in equity passes as an incident to the debt, unless there be some plain and clear agreement to the contrary, if that be the intention of the parties.

*Taylor v. Bayview Loan Servicing, LLC*, 74 So.3d 1115, 1117-18 (Fla. 2d DCA 2011). Under Florida law, "[a] crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose" [the subject note and subject mortgage when the complaint is filed]. *McLean v. JPMorgan Chase Bank Nat'l Ass'n*, 79 So.3d 170, 173 (Fla. 4th DCA 2012). "Standing may be established by either an assignment or an equitable transfer of the mortgage prior to the filing of the complaint." *Id.* NLG has not demonstrated that it owns and holds the Note and Mortgage in question. *Verizzo v. Bank of N.Y.*, 28 So.3d 976, 978 (Fla. 2d DCA 2010). Here, NLG's interest in the Note, as evidenced by the Scola Judgment, was assigned by Judge Lopez to Selective. NLG no longer holds the right to enforce the Note or the Scola Judgment entered on the Note. See, Trial Transcript Page 27 lines 3-11. There being no evidence presented to support the position that the parties did not intend for the Mortgage to follow the Note, the Mortgage did indeed follow the assignment of the Note in this case. The Note having been judicially assigned to Selective, Selective has standing to foreclose the Mortgage and, upon assignment, NLG had no further right to foreclose the Mortgage. When Judge Lopez assigned the Scola Judgment to

Selective, Selective stepped into the shoes of NLG, acquiring standing to foreclose on the Note and Mortgage.

The public records for Miami-Dade County, Florida reflect that the Scola Judgment and the Mortgage were both satisfied in August 2014.  NLG was given credit by Selective for the debt remaining under the Scola Judgment and Mortgage, in partial satisfaction of the domesticated Quebec Judgment.  It appears that credit may not have been finally determined, as discussed further herein.

Notwithstanding the judicial assignment to Selective and subsequent satisfactions, in November 2014, the Third District Court of Appeal, presumably unaware of the assignment and satisfactions, entered an opinion reversing the Eig Order and permitting foreclosure of the Mortgage. Following the mandate, Judge Gordo entered the Gordo Foreclosure Judgment in December 2015. The Gordo Foreclosure Judgment determined NLG is entitled to $4,876,654.29 under the Note and Mortgage. The Court is advised Selective tried to intervene in the case but Judge Gordo did not allow intervention.  This Court was not informed as to why Selective did not otherwise intervene in the appeal of the Eig Order and advise the Third District Court of Appeal that Selective was assigned the Note and Mortgage and that the Note and Mortgage were satisfied months before the Third District Court Appeal issued its opinion reversing the Eig Order.

Thus, it initially appears there may be a conflict between the Lopez Assignment Order, assigning ownership of the Note and Mortgage on the Property to Selective, and the Gordo Foreclosure Judgment, granting foreclosure of the Property in favor of NLG as Plaintiff instead of in favor of Selective.  However, this conflict has been overcome by events.

Giving full faith and credit to the Lopez Assignment Order, NLG's rights in the Scola Judgment were assigned to Selective, after Judge Lopez concluded that the assignment of the Scola

Judgment to Selective had no relevance to the issues on appeal. (Exhibit 22, Tr. 26:3-11). The Lopez Assignment Order establishes that NLG, LLC is entitled to $2,746,953.34 for the assignment, "which amount includes principal and interest [on the Note] through August 31, 2014 at the 11% judgment amount *without prejudice to [NLG] establishing at further hearing why the credited amount should be greater*." (Emphasis added.)   Giving full faith and credit to the Gordo Foreclosure Judgment, NLG established its entitlement to a greater credit than that in the Lopez Assignment Order, in the grand total sum of $4,876,654.29. The Gordo Foreclosure Judgment also granted NLG the right to foreclose, but allowed the Debtor to redeem the Property up until the time of the sale.  Thus, notwithstanding the right to foreclose, no sale took place, and the Debtor's right to redeem remains alive and well.

NLG argued at trial that Selective is collaterally estopped from asserting its interest in the Mortgage.  "However, in collateral estoppel the 'precise fact' or 'every point and question' on the issue must have been decided". *Chandler v. Chandler,* 226 So.2d 697 (Fla. 4th DCA 1969) citing *Gordon v. Gordon*, 59 So.2d at 45 (Fla.1952).  Here, Selective sought to intervene in the Gordo foreclosure lawsuit to raise its unique issues of law and fact relative to the assignment of the Mortgage rights and the right to intervene was denied to Selective.  "[I]f there is any doubt as to whether a litigant has had his day in court such doubt must be resolved in favor of the full consideration of the substantive issues of the litigation". *Brown v. R.J. Reynolds Tobacco Co*., 611 F.3d 1324 (11th Cir. 2010).  The evidence and testimony presented at trial demonstrate that Selective was not a party to the Gordo case and therefore is not barred by res judicata or collateral estoppel from asserting its rights under the Note and Mortgage.

However, even assuming that the Gordo Foreclosure Judgment authorized NLG, *and not Selective*, to foreclose the Mortgage, the foreclosure sale never took place because Debtor filed

this bankruptcy case, staying the sale pursuant to 11 U.S.C. §362.  The Debtor redeemed the Property prior to a foreclosure sale being conducted and certificate of sale being issued, thereby satisfying the Gordo Foreclosure Judgment. In paragraph 4 of the Gordo Foreclosure Judgment, the state court judge set a foreclosure sale date, subject to paragraph 6 therein.  Paragraph 6 of the Gordo Foreclosure Judgment states:

> **Right of Redemption.**  On filing of the Certificate of Sale, defendant's right of redemption as proscribed by Florida Statute, Section 45.0315 shall be terminated.

Section 45.0135, Fla. Stats., provides:

> At any time before the later of the filing of a certificate of sale by the clerk of the court or the time specified in the judgment, order, or decree of foreclosure, the mortgagor or the holder of any subordinate interest may cure the mortgagor's indebtedness and prevent a foreclosure sale by paying the amount of moneys specified in the judgment, order, or decree of foreclosure, or if no judgment, order, or decree of foreclosure has been rendered, by tendering the performance due under the security agreement, including any amounts due because of the exercise of a right to accelerate, plus the reasonable expenses of proceeding to foreclosure incurred to the time of tender, including reasonable attorney's fees of the creditor. Otherwise, there is no right of redemption.

Until the certificate of sale issued, the Debtor retained her right of redemption, regardless of the identity of the mortgagee.  Consistent with her rights under the Gordo Foreclosure Judgment and as provided by statute, the Debtor in fact redeemed the Property prior to a foreclosure sale, by satisfying the Note and Mortgage, and by Selective providing NLG credit for payment of the Note and Mortgage to partially satisfy NLG's debt to Selective by virtue of the Quebec Judgment.

The amount of the credit provided to NLG should be the greater amount established by the Gordo Foreclosure Judgment.  Although the Scola Judgment determined the debt on the Note to be $1,618,071.29, the Lopez Assignment Order increased the amount owed to NLG by the Debtor to $2,746,953.34.  The Gordo Foreclosure Judgment ultimately established that NLG was entitled to $4,876,654.29 for the Note and Mortgage.  While the $4,876,654.29 amount may be disputed, the

Court must give full faith and credit to the Gordo Foreclosure Judgment and will therefore view the amount determined in that judgment to be the greater amount NLG established it was owed on account of the Note and Mortgage, *as the Lopez Assignment Order allowed*.

It appears from the Electronic Judgment Lien Amendment Statement (Exhibit 14) that NLG was given credit only for the amount indicated in the Scola Judgment, or $1,618,071.29.  It was not credited with the amount indicated in the Lopez Assignment Order of $2,746,953.34 (which included interest on the Scola Judgment), nor was it credited with the amount indicated in the Gordo Foreclosure Judgment, $4,876,654.29.  However, at the time of trial, the parties' rights were already determined by all those orders.  Before any credits, Selective was owed $5,000,225.00 from NLG on account of the Quebec Judgment, and NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage pursuant to the Gordo Final Judgment. Honoring the Gordo Foreclosure Judgment, NLG must be credited for the full amount of the judgment, $4,876,654.29, whether that amount is lesser or not, for the assignment of the Note and Mortgage and satisfactions, leaving the Mortgage redeemed and Selective with a judgment against NLG in the remaining amount of $123,570.71.  Whether the various satisfactions and other documents filed by Selective waive Selective's right to collect any further balance is an issue between Selective and NLG.

**Conclusion**

The Scola Judgment obtained by NLG against the Debtor, and all rights, claims and benefits held by NLG against Debtor related to said judgment, were judicially assigned to Selective pursuant to the Lopez Assignment Order, and the right to foreclose the Mortgage securing the debt traveled to the assignee Selective. Although NLG's right to foreclose against Hazan, as established by the Third District Court of Appeal, had been assigned to Selective, the Gordo Foreclosure Judgment granted NLG the right to foreclose.  Assuming the validity of the Gordo Foreclosure

Judgment, the Debtor exercised her right to redeem the Property by satisfying said judgment prior to the foreclosure sale. Satisfactions of the Note and Mortgage are recorded in the official records and several courts have recognized that Debtor's debt to NLG has been paid, including the New York State Supreme Court, wherein Judge Jaffe found that NLG's judgment on the Note, the Scola Judgment, was judicially assigned to Selective and was thereafter satisfied. Upon satisfaction, NLG was credited by Selective for the Scola Judgment and Mortgage to partially satisfy NLG's debt to Selective under the domesticated Quebec Judgment.

The Court believes that credit should, however, be adjusted to reflect the amounts determined to be due and owing by the Gordo Foreclosure Judgment. NLG was owed $4,876,654.29 from Hazan on account of the Note and Mortgage, pursuant to the Gordo Final Judgment. Giving full faith and credit to the Gordo Foreclosure Judgment and viewing the amount determined in the judgment to be the greater amount NLG established it was owed for the Note and Mortgage pursuant to the Lopez Assignment Order, Selective should give credit to NLG for $4,876,654.29, which credit will leave the Mortgage redeemed.

This Court concludes that NLG has no further rights to any claims against Debtor with respect to the Note and Mortgage, as the public records of Miami-Dade County reflect that the Scola Judgment and consequently the Mortgage were assigned and satisfied, and the Property fully redeemed prior to foreclosure sale, as provided in the Gordo Foreclosure Judgment. NLG's Proof of Claim #17, having been filed after the bar date, it is disallowed and the Court finds that NLG has no standing in this case based upon the Note, Mortgage, claim or lien emanating therefrom. Accordingly, it is

ORDERED and ADJUDGED that Counts I, II and III of Plaintiffs' Third Amended Complaint and NLG's Amended Counterclaim are **GRANTED IN PART** and **DENIED IN PART**

as follows:

1.     NLG, LLC's judgment on the promissory note, the Scola Judgment, recorded at Book 26406, Page 3259-3260, CFN2008R0446831, also recorded at Book 26357 Pages 3948-3949 CFN20080361591, the Note and the Mortgage recorded at Book 25559 Pages 4266-4272 CFN2007R0410013, NLG, LLC's foreclosure Judgment entered in favor of NLG and against Elizabeth Hazan on December 4, 2015, the Gordo Foreclosure Judgment, recorded at Book 29902 Pages 3737-3742 CFN 20150812181 affecting Debtor's homestead Property known as 6913 Valencia Drive, Miami, Florida 33109 with the following legal description:

> LOT 7, Block 2, LINDISFARNE ON FISHER ISLAND SECTION 10 according to the Plat thereof, recorded in PLAT Book 157, Page 64, of the Public Records of Miami-Dade County, Florida

have been satisfied and paid, and are deemed **SATISFIED OF RECORD**, and Debtor has good title to said Property against the claims or purported claims by, through, under, or against it by NLG, LLC and the title to the Property is forever quieted as to all claims of NLG, LLC.

2.     Selective shall give credit to NLG, LLC in the amount of $4,876,654.29 toward NLG's outstanding debt due to Selective pursuant to the Quebec Judgment.

3.     NLG's Proof of Claim #17 is disallowed and NLG, LLC has no claim against the Debtor, Liza Hazan a/k/a Elizabeth Hazan, under the Note, Mortgage or any court order.

4.     Counts IV, V, VI, VII, VIII, and IX of Plaintiff's Third Amended Complaint are set for trial by separate order.

# # #

Copy to:
DAVID W. LANGLEY
*Attorney for Debtor*
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Telephone: 954-356-0450
Facsimile: 954-356-0451

Email: dave@flalawyer.com
Florida Bar No. 348279

Attorney Langley is directed to serve a copy of this Final Judgment on all interested parties and to file a Certificate of Service with the Court.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 18-24272-CIV-SMITH

NLG, LLC,

              Appellant/Defendant,

vs.

LIZA HAZAN and
SELECTIVE ADVISORS GROUP, LLC,

              Appellees/Plaintiffs.

_____/

### ORDER GRANTING MOTION TO DISMISS APPEAL

      This matter is before the Court on Appellees/Plaintiffs Liza Hazan and Selective Advisors Group, LLC's Motion to Dismiss Appeal [DE 22], Appellant/Defendant NLG, LLC's response [DE 29], and Appellees/Plaintiffs' reply [DE 30]. This is an appeal from an order entered by the Bankruptcy Court in Liza Hazan's (Hazan) Chapter 11 proceedings. Hazan and Selective Advisors Group, LLC (Selective) move to dismiss the appeal pursuant to the equitable mootness doctrine. For the reasons set forth below, the Motion to Dismiss Appeal is granted.

### I.    BACKGROUND

      In 2007, Hazan purchased a home on Fisher Island in Miami Beach, Florida (the Property) from NLG. As part of the sale, NLG retained a mortgage and a note from Hazan. Almost from the time of the purchase, Hazan and NLG have been litigating over the mortgage and note. As a result, there are numerous state court judgments relating to the mortgage and note and the parties' liabilities to each other. The state court judgments at issue all predate the filing of Hazan's Chapter 11 filing.

NLG, LLC (NLG) appeals from the Bankruptcy Court's Final Judgment on Counts I, II, and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV through IX.  Count I sought a determination of the extent, validity, and priority of NLG's claim of lien; Count II sought to avoid NLG's security interest pursuant to 11 U.S.C. § 544; and Count III sought to quiet title to the Property pursuant to Florida Statutes §§ 65.081 and 65.011.  The Bankruptcy Court's order sought to reconcile all of the state court judgments and determine the parties' rights to the Property.  Thus, an understanding of the state court proceedings and Bankruptcy Court proceedings is necessary.

***State Court Proceedings***

In April 2008, NLG sued Hazan for breach of the terms of the promissory note in Miami-Dade Circuit Court.  The trial court entered a default final judgment against Hazan (the Scola Judgment).  The Scola Judgment awarded NLG $1.6 million in monetary damages but did not order foreclosure on the Property.  In December 2011, NLG filed a second action in Miami-Dade Circuit Court seeking to foreclose on the mortgage (Foreclosure Action).  In February 2013, the court ruled that NLG had made an election of remedies in its previous action and, therefore, was precluded from foreclosing on the mortgage (the Eig Order).  NLG appealed the Eig Order to the Third District Court of Appeal.

While all of this was going on, in February 2012, 9197-5904 Quebec, Inc. (Quebec, Inc.) obtained a judgment by confession against NLG in New York Supreme Court in the amount of $5 million (the Quebec Judgment).  Quebec, Inc. assigned the Quebec Judgment to Selective[1] and Selective filed to domesticate the Quebec Judgment in Florida (the Domestication Case).  In July

---

[1] The principal of Selective is Hazan's husband, Sean Meehan.

2014, Selective filed proceedings supplementary in the Domestication Case to seize and attach the Scola Judgment for purposes of partially satisfying the Quebec Judgment.  On August 20, 2014, an order was entered in the Domestication Case assigning the Scola Judgment to Selective as well as "all of NLG, LLC's rights, claims and benefits held against Elizabeth Hazan" (the Lopez Order). The Lopez Order also determined that $2.7 million was the correct sum to be credited to NLG for the Scola Judgment because of interest on the $1.6 million original judgment amount.  The Lopez Order also noted that the amount that should be credited to NLG could be adjusted at a further hearing.  On August 20, 2014, Selective filed a satisfaction of the Scola Judgment and the mortgage.

In a lawsuit filed by NLG against Hazan in New York Supreme Court to domesticate the Scola Judgment in New York, Selective sought to intervene.  On October 30, 2014, the New York Supreme Court entered an order recognizing the assignment of the Scola Judgment to Selective under the Lopez Order and substituted Selective for NLG in the New York action (the Jaffe Order). On November 13, 2014, the New York judge dismissed the case based on the satisfaction of judgment in the underlying action.

On November 25, 2014, the Third District Court of Appeal, holding that NLG's prior suit for breach of the promissory note was not an election of remedies precluding a foreclosure action, issued its mandate reversing and remanding the Foreclosure Action.  On remand of the Eig Order, the trial court entered a final foreclosure judgment in favor of NLG (the Gordo Judgment).  The Gordo Judgment found that NLG was a secured creditor with a valid interest in the Property and was entitled to a foreclosure judgment in the amount of $4.8 million.  An order of foreclosure was entered and the foreclosure sale was set for January 12, 2016.  Hazan appealed the Gordo Judgment but later voluntarily dismissed the appeal.

3

***Bankruptcy Court Proceedings***

On January 11, 2016, the day before the scheduled foreclosure sale, Hazan filed for Chapter 11 protection staying the foreclosure sale. As part of the bankruptcy proceedings, NLG filed a proof of claim against the Property in the amount of the Gordo Judgment. On August 21, 2016, Selective initiated an adversary proceeding against NLG seeking a determination of the nature and extent of the proof of claim. Hazan joined the adversary proceeding. In the adversary proceeding, Selective and Hazan argues that NLG had no remaining claim against Hazan or the Property based on the state court orders and judgments.

On October 31, 2017, the Bankruptcy Judge issued his Final Judgment on Counts I, II, and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV through IX (the Bankruptcy Judgment). The Bankruptcy Judgment acknowledged all of the state court orders and judgments and noted that full faith and credit must be given to all of the state court judgments. The Bankruptcy Judgment determined that, based on all of the state court orders and judgments, NLG did not have a valid lien on the Property because the note and mortgage had been satisfied. The Bankruptcy Judgment, therefore, disallowed NLG's proof of claim. Finally, the Bankruptcy Judgment ordered that Selective give credit to NLG in the amount of $4.8 million, as awarded by the Gordo Judgment.

NLG appealed the Bankruptcy Judgment. After entry of the Bankruptcy Judgment, Hazan filed an amended disclosure statement and an amended plan of reorganization. The disclosure statement recognized several valid claims against the Property but, as a result of the Bankruptcy Judgment, did not recognize NLG's claim. The reorganization plan specifically dealt with the other claims. According to the disclosure statement, Chase Bank agreed to withdraw its objections to the proposed reorganization plan. The disclosure statement recognized that Chase Bank had a

4

first-priority security interest that would have adequate protection from other creditors in the form of an equity cushion on the Property. Another creditor with a valid claim against the Property, 6913 Valencia, LLC, agreed to subordinate its claim until the claims with higher priority, including Chase Bank's claim, were satisfied. Another creditor, Valencia Estates Community Association, Inc., settled its claim against the Property and withdrew its objections to the reorganization plan. The Internal Revenue Service also held a secured claim and was to be paid out over ten years. The disclosure statement also noted that the equity in the Property would support a refinancing, which could be used to support funding a plan if necessary.

On December 13, 2017, the Bankruptcy Court approved the disclosure statement. On May 30, 2018, the Bankruptcy Court held a confirmation hearing on Hazan's proposed reorganization plan. At the hearing, NLG advised the Bankruptcy Court that an appeal of the Bankruptcy Judgment was pending before Judge Gayles. NLG's counsel agreed that there was no stay in place and the Bankruptcy Judge warned NLG that if plan confirmation and consummation occur "it may moot out the appeal . . . If there's a stay, then nothing can happen until that matter is decided . . ." NLG did not raise any objections to entry of the confirmation order nor did it seek a stay. On June 12, 2018, the Bankruptcy Court entered an order approving Hazan's plan of reorganization. Accordingly, Hazan began making payments under the plan. On August 18, 2018, NLG filed a motion to stay the bankruptcy proceedings until the appeal was filed. The Bankruptcy Court denied the motion to stay.

On August 23, 2018, Judge Gayles dismissed NLG's appeal of the Bankruptcy Judgment on the grounds that it was not a final order and NLG had failed to obtain a certificate of appealability. NLG then sought certification from the Bankruptcy Court, which, on October 11, 2018, certified its judgment as final. On October 17, 2018, NLG filed its Notice of Appeal in the

5

instant case.  On the same day, NLG also filed a motion to stay the instant case and a few days later NLG filed an amended motion to stay, both of which were denied by the previously assigned district judge.  On December 6, 2018, the Bankruptcy Court entered an order discharging Hazan.

## II.   DISCUSSION

Hazan and Selective seek to dismiss this appeal based on the doctrine of equitable mootness.  NLG argues that before this Court can dismiss the appeal based on equitable mootness, it must first determine whether the Bankruptcy Court, pursuant to the *Rooker-Feldman* doctrine, lacked jurisdiction to hear the issues raised by the Third Amended Complaint.  The Court will first address whether *Rooker-Feldman* prevented the Bankruptcy Court from considering the issues raised by the Third Amended Complaint.  Then the Court will address whether the appeal should be dismissed under equitable mootness.

### A.   *Rooker-Feldman Is Not Applicable*

NLG maintains that, under the *Rooker-Feldman* doctrine, the Bankruptcy Court lacked jurisdiction to hear the issues raised in the Third Amended Complaint because it relitigated the same issues that had been rejected by the state court judge in the foreclosure action.  Under *Rooker-Feldman* a party losing in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923).  The Supreme Court has reiterated that *Rooker-Feldman* applies only in narrow circumstances, specifically in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus.*

*Corp.*, 544 U.S. 280, 284 (2005).   Thus, *Rooker-Feldman* does not apply when the parties to the cases are not the same. *Johnson v. De Gandy*, 512 U.S. 997, 1006 (1994); *Roe v. State of Ala. by and Through Evans*, 43 F.3d 574, 580 (11th Cir. 1995) (holding *Rooker-Feldman* does not apply because plaintiffs were not parties to state court action).   Those narrow circumstances are not present in the instant case.

First, the parties in the Bankruptcy case and the state foreclosure action are not the same because Selective was not a party to the state court foreclosure action.  While NLG argues in its Initial Brief on Appeal [DE 6] that Selective had numerous opportunities to raise its claims in state court, NLG does not dispute that Selective was not a party to the foreclosure action and, in fact, Selective's attempt to become a party through intervention was denied.  Second, neither Hazan nor Selective sought to overturn the state foreclosure judgment or have it declared null and void and neither argues that the state court foreclosure judgment violated their federal rights.  Thus, NLG has not shown that the narrow circumstances under which *Rooker-Feldman* applies have been established in the instant case.  Additionally, NLG admitted, in its Answer to Hazan and Selective's Third Amended Complaint, that the Bankruptcy Court had jurisdiction over the claims in the Third Amended Complaint.  Accordingly, *Rooker-Feldman* did not bar Hazan and Selective's claims in the Bankruptcy proceedings.

**B.   NLG's Appeal is Equitably Moot**

Hazan and Selective argue that NLG's appeal should be dismissed under the doctrine of equitable mootness.  In the bankruptcy context, the doctrine of equitable mootness permits a court to dismiss an appeal based on its lack of power to rescind certain transactions. *In re Winn Dixie Stores, Inc.*, 286 F. App'x 619, 623 (11th Cir. 2008).  "Central to a finding of mootness is a determination by an appellate court that it cannot grant effective relief.  Put another way, the court

7

must determine whether the 'reorganization plan has been so substantially consummated that effective relief is no longer available.'" *In re Club Assocs.*, 956 F.2d 1065, 1069 (11th Cir. 1992) (quoting *Miami Ctr. Ltd. P'ship v. Bank of N.Y.*, 820 F.2d 376, 379 (11th Cir. 1987)). The test for mootness attempts to strike "the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court order adversely affecting him." *In re Club Assocs.*, 956 F.2d at 1069.

To determine whether a confirmation plan has progressed to a point where effective judicial relief is no longer a viable option, a reviewing court should consider:

Has a stay pending appeal been obtained and if not, why not?

Has the plan been substantially consummated? If so, what kind of transactions have been consummated?

What type of relief does the appellant seek on appeal?

What effect would granting the relief have on interests of third-parties not before the court?

Would relief affect the re-emergence of the debtor as a revitalized entity?

*Id.* at 1069 n.11. Further, a court should not allow a piecemeal dismantling of a reorganization plan. *Miami Ctr. Ltd. P'ship v. Bank of N.Y.*, 838 F.2d 1547, 1555 (11th Cir. 1988).[2]

Hazan and Selective argue that the answers to most of these questions weigh in favor of a finding that Hazan's confirmation plan has progressed beyond a point where effective judicial relief is available. Specifically, Hazan and Selective argue: NLG failed to timely seek a stay of

---

[2] NLG cites several Third Circuit cases that question and limit the application of the equitable mootness doctrine. None of these cases are binding on this Court. Moreover, the Eleventh Circuit, as recently as August 2018, has recognized the doctrine as applying in the Chapter 11 reorganization context. *See Bennett v. Jefferson Cty., Ala.*, 899 F.3d 1240, 1242 (11th Cir. 2018).

the Bankruptcy Judgment on appeal; Hazan's reorganization plan has been substantially consummated; and modification of the plan would unfairly impact innocent third-parties and Hazan's reorganization.

Failure to obtain a stay weighs in favor of finding an appeal moot. *In re Winn Dixie*, 286 F. App'x at 623. This is because of "the important policy of bankruptcy law that court-approved reorganization plans be able to go forward based on court approval unless a stay is obtained." *Miami Ctr.*, 838 F.2d at 1555. Here, NLG did not timely seek a stay and, as a result, NLG's motions to stay were denied. The Bankruptcy Judgment was issued on October 31, 2017. NLG filed its first appeal of the judgment on November 9, 2017.[3] NLG did not seek a stay. At the May 30, 2018 Confirmation Hearing, NLG's counsel agreed that there was no stay in place and the Bankruptcy Judge warned NLG that if the plan confirmation and consummation occur "it may moot out the appeal . . . If there's a stay, then nothing can happen until that matter is decided . . ." NLG eventually sought a stay on August 8, 2018, over nine months after the Bankruptcy Judgment was entered, almost three months after the confirmation hearing, and nearly two months after the entry of the Confirmation Order. On August 22, 2018, the Bankruptcy Court denied the motion to stay as untimely. This appeal was filed on October 17, 2018 and NLG sought a stay immediately, which the previously assigned district judge denied. By that time, however, nearly a year had passed since the Bankruptcy Judgment had been issued, the plan had been confirmed, and substantially consummated. Thus, NLG did not timely seek a stay.

---

[3] As noted in the Background section, on August 23, 2018, this initial appeal was dismissed because, at that time, the Bankruptcy Judgment was not an appealable final order.

Hazan and Selective next argue that Hazan's reorganization plan has been substantially consummated as claims have been settled and funds have been disbursed.  Under the Bankruptcy Code, "substantial consummation" means:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).  First, Hazan and Selective contend that all of the property proposed by the plan to be transferred has been transferred.  Specifically, the Plan called for all pre-petition property of the estate to re-vest in the Reorganized Debtor and that has happened.  Second, Hazan has assumed all obligations and management of all property dealt with by the Plan.  Third, Hazan has commenced distributions under the Plan, has made payments under the Plan, and has substantially completed distributions to unsecured creditors under the Plan.  Hazan has made more that $500,000 in distributions.  After the filing of the instant motion to dismiss, Hazan was granted a discharge in her bankruptcy.

NLG does not contest that the Plan has been substantially consummated; instead, it argues that the relief it seeks would affect only the Property and, thus, other creditors would not be affected.  This, however, amounts to a piecemeal dismantling of the Plan, which the Eleventh Circuit has warned against.  *See Miami Ctr. Ltd. P'ship*, 838 F.2d at 1555.  Moreover, NLG fails to recognize that other creditors settled their claims or agreed to subordinate their claims to other secured creditors based on the Bankruptcy Judgment determining that Selective had satisfied its lien against Hazan and that NLG's lien had been extinguished.

NLG was not the only creditor with a security interest in the Property; the Internal Revenue Service, Chase Bank, Valencia Estates Community Association, Inc., and 6913 Valencia, LLC also had security interests in the Property.  These creditors supported the Hazan's plan, which included the disallowance of NLG's claim. With the disallowance of NLG's claim, these creditors were afforded an equity cushion securing Hazan's debts to them.  If NLG's claim were reinstated, these creditors would lose this security.[4]  Neither Chase Bank nor 6913 Valencia, LLC had consented to the earlier disclosure statement which did not incorporate the disallowance of NLG's claim.  Thus, modifying the reorganization plan, as NLG's requested relief would do, would adversely affect all creditors who relied on the extinguishment of NLG's claim in agreeing to the reorganization plan.  *See In re Winn-Dixie*, 286 F. App'x at 623-24 (concluding that appellants' appeal was equitably moot because granting the relief sought – an order reinstating appellants' extinguished claims and awarding appellants with shares held in reserve pursuant to the terms of the plan – would affect a material component of the reorganization plan as other creditors agreed to the plan on the basis that no additional shares would be paid out); *see also Miami Center Ltd. P'ship*, 820 F.2d at 380 (dismissing appellant's claim as equitably moot because "the impact of the proposed relief on the organization plan and innocent creditors would be significant."). Furthermore, non-secured creditors may have also relied on the disallowance of NLG's claim because the disclosure statement noted that the equity in the Property would support a refinancing,

---

[4] At first glance it would appear that Chase Bank would not be affected because it holds a first priority mortgage.  However, in the Adversary Proceeding, NLG asserted that Chase Bank lost its priority position.  Thus, if NLG's claim were reinstated, a determination as to the priority of the two liens would need to be made and, depending on the outcome, Chase Bank could be adversely affected.

which could be used to support funding a plan if necessary. Reinstatement of NLG's claim would reduce or wipe-out that equity.

    Having considered the factors relevant to a finding of equitable mootness, the Court finds that NLG failed to timely seek a stay of the Bankruptcy Judgment, despite warning from the Bankruptcy Judge that failure to do so could make NLG's appeal moot; Hazan has substantially consummated the Plan and has been discharged; the relief requested by NLG would require a piecemeal dismantling of the Plan; and the relief requested by NLG would adversely affect innocent third-party creditors who relied on the disallowance of NLG's claim in supporting the Plan. Consequently, NLG's appeal is equitably moot.

    Accordingly, it is

    **ORDERED** that Appellees/Plaintiffs Liza Hazan and Selective Advisors Group, LLC's Motion to Dismiss Appeal [DE 22] is **GRANTED:**

a) This appeal is **DISMISSED.**

b) All pending motions not otherwise ruled upon are **DENIED as moot.**

c) This case is **CLOSED.**

**DONE AND ORDERED** in Fort Lauderdale, Florida, this _18_ day of September, 2019.

                      **RODNEY SMITH**
                      **UNITED STATES DISTRICT JUDGE**

cc:    All counsel of record

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

FILED BY_____AP_____D.C.

Nov 23, 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

November 23, 2021

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  19-14049-AA
Case Style: NLG, LLC v. Horizon Hospitality Group, LLC, et al
District Court Docket No: 1:18-cv-24272-RS
Secondary Case Number: 16-bkc-10389-AJC

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to:  Lois Tunstall
Phone #:  (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

# UNITED STATES COURT OF APPEALS
### For the Eleventh Circuit

_____

No. 19-14049

_____

District Court Docket No.
1:18-cv-24272-RS,
Bkcy No. 16-bkc-10389-AJC

In re: LIZA HAZAN

Debtor.

_____

NLG, LLC,

Plaintiff - Appellant,

versus

HORIZON HOSPITALITY GROUP, LLC,
SELECTIVE ADVISORS GROUP, LLC,
LIZA HAZAN,

Defendants - Appellees.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is
entered as the judgment of this Court.

Entered: September 01, 2021
For the Court: DAVID J. SMITH, Clerk of Court
By: Djuanna H. Clark

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14049

_____

D.C. Docket No. 1:18-cv-24272-RS,
Bkcy No. 16-bkc-10389-AJC

In re: LIZA HAZAN,

                                        Debtor.

_____

NLG, LLC,

                                        Plaintiff - Appellant,

versus

HORIZON HOSPITALITY GROUP, LLC,
SELECTIVE ADVISORS GROUP, LLC,
LIZA HAZAN,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 1, 2021)

Before WILLIAM PRYOR, Chief Judge, JORDAN and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This bankruptcy case began in 2007, when NLG, LLC ("NLG") sold a home on Fisher Island (the "Property") to Liza Hazan ("Hazan") for $5,100,000, receiving a purchase money note (the "Note") and mortgage (the "Mortgage") on the residence from Hazan.  The Property would turn out to be the subject of years of protracted litigation before at least six judges and in two states.  The upshot of this was a series of orders addressing the rights of NLG, Hazan, and Selective Advisors Group, LLC ("Selective"), a company owned and controlled by Hazan's husband, concerning the Property, the Note, and the Mortgage.  On January 11, 2016, one day before the property was to be sold, Hazan filed for relief under Chapter 11 of the Bankruptcy Code in the Southern District of Florida.  Not surprisingly, NLG filed a proof of claim against the Property.  In response, Hazan and Selective began adversary proceedings asserting that NLG no longer retained any rights or claims to the Property, and the bankruptcy court agreed.

NLG appealed the bankruptcy court's decision to the district court, claiming that the Rooker-Feldman doctrine prevented the bankruptcy court from considering any of the issues raised during the adversary proceedings.  The district court concluded, however, that the Rooker-Feldman doctrine was inapplicable.  It then

dismissed NLG's claims on the ground of equitable mootness.  NLG now appeals the district court's order.  We affirm the judgment of the district court.

I.

These are the essential facts necessary to understanding the instant appeal:

**A.  *Litigation in the Florida courts.***

Litigation began in 2007 shortly after Hazan purchased the Property when NLG sued Hazan for breach of the purchase money promissory note.  In April 2008, Judge Robert N. Scola of Florida's Eleventh Judicial Circuit in Miami-Dade County entered a default final judgment (the "Scola Judgment") against Hazan and in favor of NLG in the amount of $1,618,071.29 with 11% interest per annum.

NLG sued Hazan again in 2011, in the same state court, this time seeking to foreclose on the Mortgage.  In February 2014, Circuit Judge Spencer Eig issued an order finding, however, that NLG could not foreclose on the Property.  Rather, it could only recover the monetary Scola Judgment since it had elected a monetary remedy instead of foreclosure in its previous action (the "Eig Order").  NLG appealed this decision to Florida's Third District Court of Appeal.

While all of this was happening, back in 2012, a foreign corporation called 9197-5904 Quebec, Inc. obtained a $5 million judgment against NLG in a wholly unrelated litigation in New York Supreme Court (the "Quebec Judgment").  Selective acquired the Quebec Judgment against NLG from 9197-5904 Quebec

and recorded the judgment in the Circuit Court in Miami-Dade County. This case was assigned to Judge Peter Lopez. Judge Lopez assigned NLG's interest in the Scola Judgment -- and all of its rights and claims against Hazan -- to Selective for the purpose of partially satisfying the Quebec Judgment, which NLG now owed to Selective (the "Lopez Assignment Order").[1] In August 2014, Selective filed a satisfaction of the Scola Judgment and the Mortgage in the Circuit Court, giving credit to NLG towards satisfying the Quebec Judgment.

After the Lopez Assignment Order, the Eig Order was reversed on appeal by Florida's Third District Court of Appeal. NLG, LLC v. Hazan, 151 So. 3d 455, 456–57 (Fla. Dist. Ct. App. 2014). On remand, and despite the fact that the Lopez Assignment Order assigned all of NLG's rights and claims against Hazan to Selective, Judge Monica Gordo (who had taken over the case from Judge Eig), entered a foreclosure judgment in favor of NLG in December 2014 (the "Gordo Foreclosure Judgment"). Selective unsuccessfully moved to intervene in this proceeding. The Gordo Foreclosure Judgment determined that NLG was entitled to more than $4.8 million, and set the Property for sale on January 12, 2016. The

---

[1] Following entry of the order, NLG moved the court to reconsider the Order of Assignment, asserting that because the Scola Judgment was the subject of an ongoing appeal, it could not be judicially assigned. Judge Lopez denied NLG's motion, ruling that the assignment of the interest to Selective did not "affect the validity of what's up on appeal." He clarified that, "win or lose [the appeal], whatever happens, now [Selective] own[s] it instead of [NLG]."

court also ruled that Hazan was entitled to a right of redemption pursuant to Fla. Stat. § 45.0315 -- that is, she could avert the sale before it took place by paying the $4.8 million judgment amount to NLG.

In sum, the Scola Judgment awarded NLG approximately $1.6 million for breach of the Note. The Eig Order concluded that NLG could not foreclose on the Property because it had made an election of remedies in the previous action before Judge Scola. The Lopez Assignment Order then assigned NLG's interest in the Scola Judgment and all of its rights and claims against Hazan to Selective. Lastly, the Gordo Foreclosure Judgment reversed the Eig Order, entered a foreclosure judgment in favor of NLG, set a date for the sale of the Property, and found that NLG was entitled to a foreclosure judgment in the amount of $4.8 million.

## B. *Hazan's Bankruptcy.*

On January 11, 2016, one day before the scheduled foreclosure of her home, Hazan filed for relief under Chapter 11 of the Bankruptcy Code, staying the sale. As part of the bankruptcy proceedings, NLG filed a proof of claim against the Property in the amount of the Gordo Foreclosure Judgment. In response, Selective initiated an adversary proceeding against NLG seeking a determination of the nature and extent of the proof of claim, which Hazan joined. Selective and Hazan argued that NLG had no remaining claim against either Hazan or the Property based on the state court orders and judgments -- in particular, the Lopez

Assignment Order which had assigned all of NLG's rights and claims against Hazan to Selective.

On October 31, 2017, the bankruptcy court entered Final Judgment on Counts I, II, and III of Plaintiffs' Third Amended Complaint Determining Validity, Priority and Extent of Liens and Setting Trial on Counts IV Through IX (the "Bankruptcy Judgment").[2] Noting the apparent conflict between the Lopez Assignment Order and the Gordo Foreclosure Judgment, the court set about to determine the rights of the parties. It then reconciled the state court judgments. The bankruptcy court concluded that Hazan had effectively exercised her right to redeem the Property, because her debt to NLG had been paid: Selective had applied the Note (in the form of the Scola Judgment) and the Mortgage in partial satisfaction of the Quebec Judgment NLG owed, leaving NLG with no further rights or claims to the Property. But in order to give full faith and credit to the Gordo Foreclosure Judgment, the bankruptcy court determined that NLG should be credited $4.8 million (the amount of the Gordo Foreclosure Judgment), rather than the $1.6 million awarded in the Scola Judgment, towards its satisfaction of the $5 million Quebec Judgment owed to Selective. NLG appealed the judgment of the bankruptcy court to the district court.

---

[2] Hazan subsequently moved to withdraw Counts IV through IX, which the bankruptcy court granted.

Following entry of the Bankruptcy Judgment, Hazan filed an amended disclosure statement (the "Disclosure Statement") and an amended plan of reorganization (the "Plan"). The Disclosure Statement recognized several valid claims against the Property but, as a result of the Bankruptcy Judgment, did not recognize NLG's claim. The Plan specifically dealt with the other claims. According to the Disclosure Statement, JPMorgan Chase Bank, N.A. ("Chase Bank") agreed to withdraw its objections to the Plan. The Disclosure Statement recognized that Chase Bank had a first-priority security interest that would have adequate protection from other creditors in the form of an equity cushion on the Property. Another creditor with a valid claim against the Property, 6913 Valencia, LLC, agreed to subordinate its claim until the claims with higher priority, including Chase Bank's claim, were satisfied. Still another creditor, Valencia Estates Community Association, Inc., settled its claim against the Property and withdrew its objection to the Plan. The Internal Revenue Service also held a secured claim and was to be paid out over ten years. The Disclosure Statement also noted that the equity in the Property would support a refinancing, which could be used to support a funding plan if necessary.

The bankruptcy court held a confirmation hearing on the Plan on May 30, 2018. At the hearing NLG advised the bankruptcy court that it had an appeal

pending in district court.[3]  NLG also confirmed that there was no stay in place.

The bankruptcy court expressly warned NLG that if Plan confirmation and

consummation occurred it could "moot out the appeal . . . ."  Notably, NLG raised

no objection to the entry of the confirmation order, nor did it seek a stay during the

hearing.  The bankruptcy court then entered an order approving Hazan's Plan on

June 11, 2018.  Thereupon, Hazan began making payments under the Plan.  On

August 8, 2018, NLG finally moved the bankruptcy court to stay the proceedings

until the appeal in the instant case was filed.  The bankruptcy court denied the

motion.

## C. *The instant appeal.*

On October 17, 2018, NLG filed a notice of the instant appeal -- its second

appeal of the Bankruptcy Judgment -- this time claiming that the bankruptcy

court's order violated the Rooker-Feldman doctrine.[4]  NLG also moved the district

---

[3] The district court dismissed this appeal on standing grounds because a receiver assigned to act on behalf of NLG had not consented to the appeal in advance of filing.  See NLG, LLC v. Selective Advisors Grp., LLC, No. 17-cv-24127-GAYLES, 2018 WL 638349 (S.D. Fla. Jan. 31, 2018).

[4] On December 6, 2018, while NLG's appeal was pending, the bankruptcy court entered an order discharging Hazan.  NLG then filed an adversary proceeding seeking revocation of the confirmation and discharge orders.  On March 12, 2019, the bankruptcy court dismissed the adversary proceeding with prejudice, observing that "Hazan's plan has been substantially consummated and that NLG failed to timely seek a stay" and holding, "[a]fter considering the balance of the equities," that NLG's "claims for revocation [were] equitably moot."  NLG did not appeal this order.

court to stay the judgment pending the disposition of the appeal and then filed an amended motion to stay; both motions were denied.

On September 18, 2019, the district court dismissed NLG's appeal.  The court first addressed whether the Rooker-Feldman doctrine prevented the bankruptcy court from considering the issues raised by Hazan and Selective.  It concluded that the doctrine was inapplicable because Selective was not a party to the state court foreclosure action and neither Hazan nor Selective sought to overturn a state court judgment in federal court.  The district court then granted Hazan's and Selective's motion to dismiss the appeal on the ground of equitable mootness, finding: (1) NLG had failed to timely seek or obtain a stay, waiting "over nine months after the Bankruptcy Judgment was entered, almost three months after the confirmation hearing, and nearly two months after the entry of the Confirmation Order" to move for a stay, despite having been warned that failing to obtain a stay would likely result in equitable mootness; (2) the Plan had been substantially consummated; and (3) "modifying the reorganization plan . . . would adversely affect all creditors who relied on the extinguishment of NLG's claim in agreeing to the reorganization plan."

This timely appeal followed.

II.

We first address whether the bankruptcy court had jurisdiction to consider the issues raised by Hazan and Selective.  NLG claims that the issues litigated in bankruptcy court were the same issues rejected by the state court judge in the foreclosure action before Judge Gordo and, therefore, the bankruptcy court's order violated the Rooker-Feldman doctrine.  Under Rooker-Feldman, a losing party in state court is barred from seeking what in substance would be appellate review of the state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.  See D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Tr. Co., 263 U.S. 413, 416 (1923).  The Rooker-Feldman doctrine applies only in a narrow set of "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).  Rooker-Feldman does not apply when the parties to the federal case are not the same as the parties to the state case.  Johnson v. De Grandy, 512 U.S. 997, 1006 (1994) (holding that because the United States was not a party to the state court action, Rooker-Feldman was not a bar to its federal claims); Lance v. Dennis, 546 U.S. 459, 466 (2006) ("The Rooker-Feldman doctrine does not bar actions by nonparties to the

earlier state-court judgment [even where] they could be considered in privity with a party to the judgment."); Roe v. Alabama ex rel. Evans, 43 F.3d 574, 580 (11th Cir. 1995) (holding Rooker-Feldman did not apply because the plaintiffs were not parties in the state court action).  We review a district court's determination about the applicability of Rooker-Feldman de novo.  Lozman v. City of Riviera Beach, 713 F.3d 1066, 1069 (11th Cir. 2013).

We agree with the district court that the Rooker-Feldman doctrine does not apply.  First, the parties in the state court foreclosure action and the bankruptcy case were not the same -- Selective was not a party to the state court proceedings. While NLG contends that Selective was a "de facto" party under Florida law, there is no evidence that Selective exerted influence over Hazan's legal strategy in the state court foreclosure action.  Lage v. Blanco, 521 So. 2d 299, 300 (Fla. Dist. Ct. App. 1988) (finding a third party to be a de facto party where it "ha[d] such control . . . as to be entitled to direct the course of [the] proceedings . . . .") (quotation omitted); see also Visoly v. Sec. Pac. Credit Corp., 768 So. 2d 482, 485, 489 (Fla. Dist. Ct. App. 2000) (finding that delaying foreclosure through "9 years of vexatious litigation" and "generat[ing] unnecessary litigation expenses" rendered a

third party a de facto party to the litigation).  Selective's actions do not make it a

"de facto" party under Florida law.[5]

Second, neither Hazan nor Selective sought to have the bankruptcy court

overturn the Gordo Foreclosure Judgment.  Rather, Hazan and Selective just asked

the bankruptcy court to determine the rights of NLG, Hazan, and Selective based

on, not in spite of, the previously rendered judgments.  And that is exactly what the

bankruptcy court did.  The Bankruptcy Judgment recognized that all of the rights,

claims, and benefits held by NLG against Hazan were judicially assigned to

Selective by the Lopez Assignment Order.  It also recognized that the Gordo

Foreclosure Judgment granted NLG, and not Selective, the right to foreclose, but

found that Hazan exercised her right to redeem the Property by satisfying the

judgment before the foreclosure sale and, therefore, NLG held "no further rights to

any claims against [Hazan] with respect to the Note and Mortgage."  Finally,

"[g]iving full faith and credit to the Gordo Foreclosure Judgment," the bankruptcy

court determined that "NLG established its entitlement to a greater credit than that

in the Lopez Assignment Order, in the grand total sum of $4,876,654.29."  The

---

[5] NLG also argues that issue preclusion bars re-litigation of the foreclosure because Selective did not appeal the order denying its motion to intervene in the proceedings before Judge Gordo.  We are unpersuaded.  In order for issue preclusion to apply, both cases must involve the same parties or their privies.  See Topps v. State, 865 So. 2d 1253, 1255 (Fla. 2004); Pearce v. Sandler, 219 So. 3d 961, 965 (Fla. Dist. Ct. App. 2017).  Since the parties in the state court proceedings were not the same as the parties in the bankruptcy court proceedings and Selective was not in privity with Hazan, this appeal is not barred by issue preclusion.

bankruptcy court neither found the foreclosure judgment wrongful, nor did it overturn the state court order; rather, it determined the rights of the parties in light of the state court judgments.

The bankruptcy court was not barred from considering the issues raised by Hazan and Selective.

## III.

We turn then to the question of whether the district court properly dismissed the appeal for equitable mootness. NLG claims that it was error for the district court to apply equitable mootness, arguing that the doctrine applies only in cases involving large corporate bankruptcies, not in individual bankruptcies. NLG also says that there are no transactions that would have to be rescinded if we were to reverse the Bankruptcy Judgment since the debtor has only one asset, the Fisher Island Property, which Hazan claimed was exempt under 11 U.S.C. § 522(b)(3).

The equitable mootness "doctrine provides that reviewing courts will, under certain circumstances, reject bankruptcy appeals if rulings have gone into effect and would be extremely burdensome, especially to non-parties, to undo." Bennett v. Jefferson County, 899 F.3d 1240, 1247 (11th Cir. 2018). Although the word "mootness" is used to describe the doctrine, in fact it "does not reference actual mootness at all." Id. Rather, the doctrine "turns on equitable and prudential concerns which focus on whether it is reasonable to entertain the contentions of the

parties challenging an order of the bankruptcy court." Id. (citing William L. Norton, Jr. & William L. Norton III, 8 Norton Bankruptcy Law & Practice § 170:87 (3d ed. 2018)).

While equitable mootness often arises in appeals from orders confirming plans of reorganization, we have held that it is also applicable in appeals that effectively "seek[] to modify or amend [a plan's] provisions." Smith v. United States (In re Holywell Corp.), 911 F.2d 1539, 1543 (11th Cir. 1990), rev'd on other grounds sub nom. Holywell Corp. v. Smith, 503 U.S. 47 (1992). This is because a plan is "a consensual arrangement arrived at through lengthy negotiation" and modifying a portion of the plan on appeal "would amount to imposing a different plan of reorganization on the parties" than the one for which they bargained. See In re Specialty Equip. Cos., Inc., 3 F.3d 1043, 1049 (7th Cir. 1993). We review a district court's determination of equitable mootness de novo. Bennett, 899 F.3d at 1246 n.2. We have applied the doctrine in a variety of circumstances, including in a Chapter 13 individual bankruptcy, see id. at 1242 (citing Hope v. Gen. Fin. Corp. of Ga. (In re Kahihikolo), 807 F.2d 1540, 1543 (11th Cir. 1987)), and we can discern no reason to find the doctrine inapplicable in this case.

"The facts will weigh in favor of finding equitable mootness when allowing an appeal to go forward will impinge upon actions taken to one's detriment in good faith reliance on a final and unstayed judgment." Id. at 1248 (quotation omitted

14

and cleaned up).  Among the factors a court should consider in deciding whether to dismiss an appeal for equitable mootness are whether the appellant has obtained a stay pending appeal, whether the plan has been substantially consummated, and whether third parties' rights or the debtor's ability to successfully reorganize would be adversely affected by granting the relief sought by the appellant.  First Union Real Est. Equity & Mortg. Invs. v. Club Assocs. (In re Club Assocs.), 956 F.2d 1065, 1069 n.11 (11th Cir. 1992).  Whether a stay is in place and whether the plan has been substantially consummated are especially important.  See, e.g., Bennett, 899 F.3d at 1252–53 (dismissing an appeal on the ground of equitable mootness where the debtor and others had "taken significant and largely irreversible steps in reliance on the unstayed plan confirmed by the bankruptcy court.").  The failure to timely obtain a stay is critical because it is an "important policy of bankruptcy law that court-approved reorganization plans be able to go forward based on court approval unless a stay is obtained."  Miami Ctr. Ltd. P'ship v. Bank of N.Y., 838 F.2d 1547, 1555 (11th Cir. 1988).  Substantial consummation of the plan also is an important marker because "[f]or the general bankruptcy enterprise, inability to rely on a plan before exhaustion of all appeals would entail delay that would often impair or kill the most beneficial opportunities.  The debtor's chance for a 'fresh start' could be seriously impaired."  13B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.2.3 (3d ed. 2021).

We turn, then, first to whether NLG unreasonably delayed or failed to obtain a stay.  See Bennett, 899 F.3d at 1249, 1251 (noting that an unreasonable delay or failure to obtain a stay weighs in favor of finding an appeal equitably moot).  The Bankruptcy Judgment was issued on October 31, 2017 but NLG did not seek a stay until August 8, 2018.  Not only did NLG's counsel confirm that there was no stay in place, but, in this case, the bankruptcy court warned NLG at the May 30, 2018 Confirmation Hearing that if the plan confirmation and consummation occurred it could "moot out the appeal . . . . If there's a stay, then nothing can happen until the matter is decided . . . ."  Nonetheless, NLG waited more than two months after the confirmation hearing, and approximately nine months after the Bankruptcy Judgment was first entered, to seek a stay.

In the face of this substantial delay, the bankruptcy court denied the motion as untimely on August 22, 2018.  NLG again sought a stay on October 17, 2018 immediately after this appeal was filed, but this application was denied as well.  By the time the second motion to stay was filed in bankruptcy court, nearly a year had passed since the Bankruptcy Judgment had issued, the Plan had been confirmed, and, as we discuss further, the Plan had been substantially consummated.  NLG claims that even though no stay had been granted, this was not for "lack of trying." The record says otherwise.  NLG's delay in seeking a stay was unreasonable.

16

Second, and closely related to the stay inquiry, this Plan has been substantially consummated.  "When a reorganization has been 'substantially consummated,' as that term is defined in the Bankruptcy Code, see 11 U.S.C. § 1101(2),[6] there is a 'strong presumption' that an appeal of an unstayed order is moot."  In re Delta Air Lines, Inc., 374 B.R. 516, 522 (S.D.N.Y. 2007) (citation omitted); see also Miami Ctr., 838 F.2d at 1557 (noting that when "the plan had been substantially consummated and . . . its fairness, feasibility, and propriety had been verified, and . . . it had become legally and practically impossible to unwind the consummation . . . [t]he district court was required to dismiss the appeal as moot.").

NLG claims, however, that the Plan was not substantially consummated since "no property was transferred."  This is belied by the facts and the evidence presented to the bankruptcy court.  As the district court observed, "the Plan called for all pre-petition property of the estate to re-vest in the Reorganized Debtor and

---

[6] "[S]ubstantial consummation" of a plan of reorganization is defined by statute this way:

(A)   transfer of all or substantially all of the property proposed by the plan to be transferred;

(B)   assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C)   commencement of distribution under the plan.

11 U.S.C. § 1101(2).

that has happened." The district court also found that Hazan had assumed the management of all of the property, and the parties do not dispute that Hazan has commenced distribution under the Plan.[7] The Plan has been substantially consummated.

Third, we consider "whether relief granted by the court could implicate or have an adverse effect on [third party] creditors and will affect the re-emergence of the debtor as a revitalized entity." Miami Ctr., 838 F.2d at 1555 (noting that creditors voting in favor of a plan consent to the plan as a whole and we do not "allow a 'piecemeal dismantling' of a reorganization plan."); see also Specialty Equip., 3 F.3d at 1049 (holding that a plan was "a consensual arrangement arrived at through lengthy negotiation" and that excising a provision "would amount to imposing a different plan of reorganization on the parties" than the plan to which they agreed); Aurelius Cap. Master, Ltd. v. Tousa Inc., Nos. 08-61317-CIV, 08-61335-CIV, 2009 WL 6453077, at *9 (S.D. Fla. Feb. 6, 2009) (finding appeal equitably moot because "the piecemeal excision of specific provisions integral to the negotiated whole undermines the requisite consent").

---

[7] NLG claimed that the record does not support the district court's determination that more than $500,000 has been distributed under the Plan. Because the statutory definition of "substantial consummation" just requires "commencement of distribution," 11 U.S.C. § 1101(2)(C), and because the parties do not dispute that Hazan did in fact commence distribution, this dispute does not change our analysis.

NLG argues that the third parties would not be affected because Hazan's Plan did not call for the exempt Fisher Island Property to be used to pay any creditors. It also claims there is no evidence to indicate that any unsecured creditor would be affected by a reversal. As for the secured creditors, and specifically, Chase Bank, NLG says that Chase Bank never relied on the Bankruptcy Judgment.

We disagree. For starters, the Disclosure Statement provided that the equity in the Property would support a refinancing, which could be used to support a funding plan, if necessary. There is no merit to the claim that granting NLG relief would not affect creditors, because Hazan's retention of equity in the Property was integral to executing the Plan. If she failed to retain equity, one of the Plan's critical funding options would be lost. In the second place, the Plan provided that while secured creditor Chase Bank's claim is adjudicated in state court, Chase "shall have adequate protection in the form of an equity cushion that exceeds the amount of the loan." But if the Plan were modified as a result of a reinstatement of NLG's claimed first position mortgage, Chase Bank's equity cushion would be eliminated. Third, because the Plan, which the parties had agreed to, included a provision disallowing NLG's claim -- and creditors, including Chase Bank, "had [not] consented to the earlier disclosure statement which did not incorporate the disallowance of NLG's claim" -- a finding in favor of NLG would result in a modification of the Plan which would, in turn, deprive the parties of the benefit of

the bargain to which they consented.  See <u>Miami Ctr.</u>, 838 F.2d at 1556 (finding

equitable mootness supported because successful appeal would deprive secured

creditor of the benefit of the bargain based on which it supported the plan).

Accordingly, we affirm the judgment of the district court dismissing this

appeal.[8]

**AFFIRMED.**

---

[8] We note in passing that a separate motion to dismiss the appeal was filed on Appellees' behalf. The motion, however, was filed by an individual who had not filed an Appearance of Counsel Form.  11th Cir. R. 46-5 ("Every attorney . . . must file an Appearance of Counsel Form in order to participate in a case before the court.").  Because the motion to dismiss was filed by someone other than Appellees' counsel of record and was not otherwise signed by Appellees, we find the motion procedurally deficient and decline to consider the motion's contents.  See Fed. R. App. P. 32(d) ("Every brief, motion, or other paper filed with the court must be signed by the party filing the paper or, if the party is represented, by one of the party's attorneys."); <u>see also</u> <u>United States v. Aleman</u>, 832 F.2d 142, 146 n.7 (11th Cir. 1987) (noting that the district court "was not required to consider the contents of a motion . . . submitted by someone not officially representing [the party].").

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 01, 2021

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  19-14049-AA
Case Style:  NLG, LLC v. Horizon Hospitality Group, LLC, et al
District Court Docket No:  1:18-cv-24272-RS
Secondary Case Number:  16-bkc-10389-AJC

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing, are available at www.ca11.uscourts.gov.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call T. L. Searcy, AA at (404) 335-6180.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs